**EXHIBIT 6**

 Cited

As of: February 12, 2022 3:24 AM Z

# *Little v. Keystone Continuum, LLC*

United States District Court for the Middle District of Tennessee, Nashville Division

July 22, 2008, Filed

Case No. 3:07-0241

**Reporter**

2008 U.S. Dist. LEXIS 56910 *; 2008 WL 2901854

ANN M. LITTLE, Plaintiff, v. KEYSTONE CONTINUUM, LLC, d/b/a, MOUNTAIN YOUTH ACADEMY, Defendant.

## Core Terms

alleges, License, summary judgment, regulation, rent, misrepresentation, cabin, Teachers, terminated, nonmoving party, arrived, unlawful retaliation, log cabin, credentials, responded, genuine

**Counsel:** [*1] For Ann M. Little, Plaintiff: James L. Harris, LEAD ATTORNEY, Nashville, TN.

For Keystone Continuum, LLC, doing business as Mountain Youth Academy, Defendant: Mary Dohner Smith, Teresa Rider Bult, LEAD ATTORNEYS, Constangy, Brooks & Smith, Nashville, TN.

**Judges:** ALETA A. TRAUGER, United States District Judge.

**Opinion by:** ALETA A. TRAUGER

## Opinion

### MEMORANDUM

The defendant has filed a Motion for Summary Judgment (Docket No. 36), to which the plaintiff has responded (Docket No. 42), and the defendant has replied (Docket No. 46). For the reasons discussed herein, the defendants' motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Ann M. Little, worked for the defendant, Mountain Youth Academy, for four days. [1] On the fourth

--------------------------------

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint (Docket No. 1), the plaintiff's Response to the defendants' Motion for Summary Judgment [*2] (Docket No. 42), and the plaintiff's Response to the defendants' Statement of Undisputed Material Facts (Docket No. 38), in accordance with the court's task in analyzing a motion for summary judgment to determine whether the "nonmoving party [has] come forward with 'specific facts showing that there is a *genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (quoting *Fed. R. Civ. P. 56(e)* (emphasis added)); *see also* Advisory Committee Note to 1963 Amendment of *Fed. R. Civ. P. 56(e)*, 28 U.S.C. App., p. 626 (the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the plaintiff's proof does not adequately rebut the proof provided by the defendants, the court so notes this deficiency by adopting the defendant's fact and citing to the defendant's pleading, affidavit, or other document. However, where the plaintiff has admitted a fact

day Ms. Little was fired. Ms. Little alleges that she was terminated in retaliation for whistle-blowing activity protected under Tennessee law. The defendant alleges that Ms. Little was terminated because she did not have the requisite license for the job and could not perform one of its necessary functions.

In October, 2006, Ms. Little applied to be [*3] the Director of Youth Education at Mountain Youth Academy, a psychiatric residential treatment center for adolescents located in Mountain City, Tennessee. At the time, Ms. Little was working as a teacher for the Keys of Carolina, in Monroe, North Carolina, a sister-organization of Mountain Youth Academy. First, Ms. Little made an initial call to Patsy Laws, the defendant's Director of Human Resources. Ms. Little remembers very little of this conversation, except that it was short and that Ms. Laws told her to send a resume and application. (Docket No. 36, Ex. 1, p. 8) Ms. Laws alleges that she told Ms. Little that the position required a valid Tennessee Teachers License. (Docket No. 36, Ex. 5 at p. 2) According to Ms. Laws, the plaintiff responded that she had an expired North Carolina Teachers License but could renew it quickly and without difficulty, to which Ms. Laws responded that the plaintiff should renew her North Carolina license so that she could transfer the license to Tennessee when she was hired. (*Id.*) Ms. Little alleges only that, during the application process, she was clear about her credentials and that the defendant did not consider them to be a problem. (Docket No. [*4] 43 at p. 2)

In October 2006, Larry Morrisett, the CEO of Mountain Youth Academy, offered Ms. Little a position as Director of Education at the Mountain City, Tennessee facility. When he made the offer, Mr. Morrisett also told Ms.

Little that he would help her find a place to stay in Mountain City when she arrived. Specifically, Mr. Morrisett said that he had rented a log cabin for $ 700 per month and that he could find the plaintiff a log cabin to rent for that price. (Docket No. 36, Ex. 2 at p. 4) Ms. Little accepted the position and began work on November 27, 2006.

When Ms. Little arrived in Mountain City, she learned that the log cabin Mr. Morrisett had previously rented had, in the interim, been sold to a new owner, who was asking $ 1,560 per month. (*Id.*) Ms. Little alleges that she learned, through another teacher, that Mr. Morrisett had not taken any action to learn about the increase in rent until just before her arrival. (*Id.* at p. 4-5) Because Ms. Little had no place to stay, the defendant paid for her room at a bed-and-breakfast for two nights and put Ms. Little in touch with a real estate agent. (*Id.*) The real estate agent was able to locate a different log cabin that was [*5] available for $ 600 per month. (*Id.* at p. 5) Ms. Little moved into that log cabin on her third day in Mountain City. (*Id.*)

Shortly after her employment began, Ms. Little began observing improper conduct at the facility. Ms. Little alleges that she observed a "great lack of professionalism in general" and that Mr. Morrisett had exhibited "a basic lack of supervisory skills." (Docket No. 1 at p. 3) For instance, Ms. Little observed Mr. Morrisett restrain a student "in a non-therapeutic hold." (*Id.*) In addition, Ms. Little observed two girls roughhousing by "pinching each other's nipples." (Docket No. 36, Ex. 1 at p. 12) Ms. Little handled this situation herself by taking the two girls out of class. (*Id.*) Ms. Little observed that students were permitted to stay in class "no matter how disrespectful they were," such as by screaming or exhibiting other disrespectful behaviors. (*Id.* at p. 13) She also observed children in the computer room listening to loud rap music, in violation of an internal policy. (*Id.*) Ms. Little made known her objection to the

alleged by the defendants, the court merely draws this fact from the plaintiff's admission, and does not cite to the defendants' pleading, affidavit, or other document.

music and it was turned off. (*Id.*)

Ms. Little also observed students sitting in "dayrooms alone without line-of-sight staff available" and students [*6] watching movies "in a sexually charged environment" without proper supervision. (Docket No. 1, Ex. 4) Children in the twelve-and-under age group were placed in coed units which, according to Ms. Little, is a "highly suspect procedure" because the students at Mountain Youth Academy were prone to "sexually acting out behaviors." (*Id.*)

On her fourth day of work and approximately one hour before she was terminated, Ms. Little told Chief Operating Officer Beatty about her objections to the conduct at the facility. (*Id.,* Ex. 2 at p. 1) Ms. Little did not make reports of any improper conduct to any other individual at Mountain Youth Academy. (Docket No. 44 at P 2) Ms. Little has no information that Mr. Beatty told anyone else about her complaints. (Docket No. 36, Ex. 2 at p. 1) Ms. Little did observe Mr. Beatty speaking with Mr. Morrisett and Ms. Laws shortly before she was terminated; however, Ms. Little was unable to hear any of this conversation. (*Id.*)

On December 1, 2006, Ms. Little was terminated. The defendant alleges that Ms. Little was fired because she did not have the requisite teaching certificate and could not gain one without additional schooling, and because she was unable to [*7] write Individual Education Plans ("IEPs"), a necessary job function. Under the Individuals with Disabilities Education Act ("IDEA"), schools classified as Local Education Agencies must write and maintain IEPs for each special education student in order to receive federal funding. Ms. Little's prior institution, the Keys of Carolina, was not a Local Education Agency and, according to Crystal Whitley, the Director of Education at the Keys of Carolina, has never written or maintained IEPs for its students. (Docket No. 36, Ex. 2 at p. 18) The plaintiff alleges that, although she did not write IEPs as defined in the IDEA at the Keys of Carolina, she did write functionally equivalent individual education plans for her students. (*Id.,* Ex. 1 at p. 6) ("We don't write the IEPs that are based on the IDEA, but we write--when a student comes in and you have your students, you write an Individual Education Plan for that student.").

According to the defendant, Ms. Little's personnel file did not arrive at Mountain Youth Academy until a few days before Ms. Little was scheduled to start work, and Ms. Laws was unable to review the file at that time because Ms. Laws was away from the office for the Thanksgiving [*8] holiday. (*Id.,* Ex. 5 at p. 2) Meanwhile, according to the defendant, Beckye Glasner, the Director of Education at another sister-facility of Mountain Youth Academy, met with the plaintiff on her first day of work to orient her as the Director of Education for the defendant. (*Id.,* Ex. 7 at p. 2) According to Ms. Glasner, it soon became apparent to her that the plaintiff did not know how to write IEPs. (*Id.* at p. 3) Ms. Glasner has stated that she then asked the plaintiff about her credentials, to which the plaintiff responded, "don't tell *them,* but I don't have a license." (*Id.*) Ms. Glasner then responded, "I am one of *them,*" and told the plaintiff that she had no option but to give Mr. Morrisett this information. (*Id.*)

According to the defendant, when Ms. Laws was finally able to review the personnel file, she did not find an expired Teachers License but, instead, found a Temporary Permit. (*Id.,* Ex. 5 at p. 3) Temporary Permits, according to the defendant, are typically issued when an individual has not yet met the academic requirements necessary to get a license, but is expected to meet those requirements. (*Id.,* Ex. 6 at p. 2) In order to be awarded a Teachers License, according to [*9] the defendant, an individual with a Temporary Permit must still complete the required course work within a specified time period and go through an

application process. (*Id.*) The defendant alleges that, when Ms. Laws spoke to the plaintiff about this issue, the plaintiff simply referred Ms. Laws to the Temporary Permit which, Ms. Laws explained, was not a Teachers License. Subsequently, according to the defendant, Mr. Morrisett reviewed the plaintiff's personnel file and was troubled by other discrepancies between the file and representations that, according to the defendant, the plaintiff made during the interview process. (*Id.,* Ex. 6 at p. 6)

Mr. Morrisett, in his declaration, has stated that, despite these discrepancies, he asked Ms. Glasner to investigate whether the plaintiff could get a Tennessee Teachers License with her present credentials and keep her job. (*Id.*) Ms. Glasner alleges that she faxed the plaintiff's credentials to the State of Tennessee Licensing Department and learned that the plaintiff could not obtain the license. (*Id.,* Ex. 3 at p. 4-5) According to the defendant, Mr. Morrisett fired the plaintiff for that reason. (*Id.,* Ex. 6 at p. 7) The plaintiff alleges that, **[*10]** at all times, she told Mr. Morrisett, Ms. Laws, and anyone else who asked that she had a Temporary Permit and not any other kind of license, and that she was completely honest about her other credentials as well. (Docket No. 43 at p. 2) At her deposition, the plaintiff testified that she now has a valid North Carolina Teachers License. (Docket No. 36, Ex. 1 at p. 12)

On February 26, 2007, Ms. Little filed this action, alleging (1) unlawful retaliation in violation of the Tennessee Public Protection Act, (2) unlawful retaliation in violation of the common law of the State of Tennessee, and (3) negligent misrepresentation. On January 14, 2007, the defendants moved for summary judgment. (Docket No. 36)

## ANALYSIS

### I. Summary Judgment Standard

*Federal Rule of Civil Procedure 56(c)* provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. To prevail, the moving party must demonstrate the absence of a genuine issue of material fact **[*11]** as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001)*.

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*; *McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000)*. Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))*.

If the nonmoving party fails to make a sufficient showing on an essential element of the case--provided that the nonmoving party bears the burden for that element--the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999)*. To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come **[*12]** forward with specific facts to

demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002)*. And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003)* (quoting *Anderson, 477 U.S. at 252*). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson, 477 U.S. at 249-52*. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999)* (citing *Anderson, 477 U.S. at 247-49*).

## II. The Plaintiff's Tennessee Public Protection Act Claim

The Tennessee Public Protection Act ("TPPA") states: "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, [*13] illegal activities." *Tenn. Code Ann. § 50-1-304(a)*. A cause of action under the TPPA requires the following four elements: "(1) [t]he plaintiff's status as an employee of the Defendant; (2) [t]he plaintiff's refusal to participate in, or to remain silent about, illegal activities; (3) [t]he employer's discharge of the employee; and (4) [a]n exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee." *Darnall v. A+ Homecare, Inc., No. 01-A-01-9807-CV-00347, 1999 Tenn. App. LEXIS 339, 1999 WL 346225 at *5 (Tenn. App. 1999)*; *see also Griggs v. Coca-Cola Employees' Credit Union, 909 F. Supp. 1059, 1063 (E.D. Tenn. 1995)*.

The TPPA defines "illegal activities" as "activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Tenn. Code Ann. § 50-1-304(b)*. Accordingly, under the fourth element, the TPPA extends only "to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997)*.

The [*14] plaintiff has failed to show that she had reasonable cause to believe that a law, regulation, or rule had been violated or would be violated by the defendant. The plaintiff alleges that she was fired because she voiced objections to conduct at the defendant's facility, but the plaintiff has failed to link any of that conduct with any criminal or civil code or any regulation. In fact, at her deposition, the plaintiff repeatedly admitted that the conduct to which she objected violated only her ideas about how the facility should be run, that is, her internal policy concerns. (*See* Docket No. 36, Ex. 1 at p. 13-16) In addition, the plaintiff fails to dispute that nobody at Mountain Youth Academy instructed her to do anything illegal or prohibited her from reporting anything that was illegal. (Docket No. 44 at P 5)

Examining the plaintiff's specific allegations of misconduct makes clear that she has failed to allege any illegal conduct on the part of the defendant. First, the plaintiff alleges that she observed a general lack of professionalism and, on Mr. Morrisett's part, a lack of supervisory skills. These allegations do not implicate any specific statute rule, or regulation: Next, Ms. [*15] Little alleges that Mr. Morrisett restrained a student in a non-therapeutic hold. However, Ms. Little has not located any statute, rule, or regulation that requires students with behavioral problems to be restrained in any specific way. (Docket No. 36, Ex. 1 at

p. 15) Certainly, there are laws against battery, but Ms. Little has not alleged that a battery occurred. It is undisputed that Mountain View Academy treated children with severe behavioral issues, some of whom were, from time to time, restrained. (*Id.*)

Ms. Little observed children roughhousing and screaming in class. These allegations fail to implicate any statutes or regulations. The very fact that children were misbehaving does not entail a legal violation on the part of the defendant. Similarly, the plaintiff has designated no statute or regulation forbidding children from watching movies together in the dark, playing loud rap music at computer stations, or being placed in coeducation units. Although Ms. Little may have had valid criticisms about how the school was being run, she has simply failed to allege any illegal conduct. The court will grant summary judgment on the plaintiff's TPPA claim.

### III. The Plaintiff's Common  [*16] Law Claims for Unlawful Retaliation

A cause of action for unlawful retaliation under Tennessee common law requires the plaintiff to show "(1) that an employment-at-will relationship existed; (2) that [s]he was discharged; (3) that the reason for h[er] discharge was that [s]he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge h[er] was h[er] exercise of protected rights or h[er] compliance with clear public policy." *Franklin v. Swift Transp. Co., Inc., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)*; *see also Crews v. Buckman Laboratories Intern., Inc., 78 S.W.3d 852, 862 (Tenn. 2002)*.

The plaintiff's cause of action fails under the third prong. The plaintiff provides no evidence that she was discharged for exercising a legal right or for any other reason that violates a constitutional, statutory, or regulatory provision. The common law retaliatory discharge cause of action "is applicable only 'in limited circumstances, [where] certain well-defined, unambiguous principles  **[*17]** of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination.'" *Franklin, 210 S.W.3d at 530-31* (quoting *Stein v. Davidson Hotel, 945 S.W.2d 714, 717 (Tenn. 1997)*. In order to satisfy this requirement, a plaintiff must go further than to show a statutory or regulatory violation; the plaintiff must also show that the violation implicates an important policy interest. *Id.* (recognizing that it is "not enough for the plaintiff to simply show that the employer violated a law or regulation") (citing *Guy v. Mutual of Omaha Ins. Co., 79 S.W.3d 528, 538 (Tenn. 2002)* ("Our inquiry . . . is not limited to whether a particular law or regulation has been violated; rather, our inquiry focuses on whether some *important* public interest embodied in the law has been furthered by the whistleblowing activity.") (emphasis added) (internal quotations omitted)).

As discussed above, the plaintiff has failed to proffer evidence that the defendant violated any law or regulation, much less evidence of an infraction that implicates "fundamental public policy concerns." *Franklin, 210 S.W.3d at 533*. Although there are many important public interests  **[*18]** embodied in the IDEA, the plaintiff has at no time alleged any infractions of that Act. The plaintiff's concerns, at most, related to *internal* policy disputes about how best to run the defendant's institution. Each minute pedagogical decision made by the defendant--such as whether to allow misbehaving children to remain in class, or whether to allow children to play rap music in computer rooms--is not a

fundamental public policy concern. *C.f. Bright v. MMS Knoxville, Inc., 2007 Tenn. App. LEXIS 510, 2007 WL 2262018 at *5 (Tenn. Ct. App. 2007)* (finding that "a well-intentioned employee who sought to avoid legal responsibility for a potentially hazardous situation" involving smoking regulations at a hospital "simply does not fall within the scope of the protection provided by the statutory or common-law actions for retaliatory discharge"). The court will grant summary judgment on the plaintiff's Tennessee common law claim for unlawful retaliation.

## IV. The Plaintiff's Negligent Misrepresentation Claim

Finally, the court turns to the plaintiff's claim for negligent misrepresentation. The Tennessee courts have formulated the elements for negligent misrepresentation as follows: "One who, in the course of his business, [*19] profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *McElroy v. Boise Cascade Corp., 632 S.W.2d 127, 129 (Tenn. Ct. App. 1982)* (quoting *Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976))*; *see also Jasper Aviation, Inc. v. McCollum Aviation, Inc., 497 S.W.2d 240, 242 (Tenn. 1972)*.

Of particular importance to the plaintiff's negligent misrepresentation claim is the requirement under Tennessee law that "[t]he misrepresentation must consist of a statement of a material past or present fact" and, accordingly, "statements of opinion or intention are not actionable." *McElroy, 632 S.W.2d at 129*, *see also Fowler v. Happy Goodman Family, 575 S.W.2d 496,*

*499 (Tenn. 1978)* ("[T]he rule established by the cases in this state has been that a misrepresentation of intention or a promise without intent to perform is legally insufficient to support [*20] a claim for rescission or damages."). [2] The plaintiff alleges that Mr. Morrisett (1) told her that he had rented a cabin for $ 700, and (2) promised to help her rent a cabin for that amount when she arrived in Mountain City. The representations involving Mr. Morrisett's own rental history were statements of a material past or present fact (although they were, as will be discussed further, not false); however, Mr. Morrisett's promise to help the plaintiff rent a cabin in the future was plainly a statement of opinion or intention, and cannot itself support an action for negligent misrepresentation.

Another requirement for any misrepresentation claim is that the statements at issue must be false. The plaintiff has not alleged any false statements. The plaintiff does not deny that Mr. Morrisett did, in fact, rent a cabin for $ 700 a month at some point in the past. Further, the record shows that Mr. Morrisett did, in fact, help the

_____

[2] Tennessee courts have adopted a cause of action for promissory fraud "when it can be established through competent evidence that the promise of future conduct was made with an intent not to perform." *Ray v. Williams, No., 2002 Tenn. App. LEXIS 345, 2002 WL 975671 at *4 (Tenn. Ct. App. 2002)*. However, the plaintiff has not pled a cause of action for promissory fraud or intentional misrepresentation, but rather a cause of action for negligent misrepresentation. (*See* Docket No. 1, p. 4-5) Further, the plaintiff has presented no evidence as to Mr. Morrisett's state of mind at the time he made the representations at issue, [*21] nor any other evidence that Mr. Morrisett made those representations "with an intent not to perform." *Id.; see also Farmers & Merch. Bank v. Petty, 664 S.W.2d 77, 81 (Tenn. Ct. App. 1983)* (defendant's lack of present intent must be shown "by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee").

plaintiff to rent a cabin. Although the cabin that Mr. Morrisett originally had in mind was no longer available for $ 700 a month, there is no evidence in the record that Mr. Morrisett promised the plaintiff a specific cabin. It is undisputed that, when the plaintiff arrived in Mountain City, Mr. Morrisett did help her find a cabin, first by calling the previous owner of the cabin in which he had stayed, and, second, by calling the new owner. And, in fact, by referring her to a real estate agent, the defendant [*22] was ultimately able to find the plaintiff a cabin to rent for $ 600. This process took approximately three days, during which the plaintiff was lodged at a bed-and-breakfast at the defendant's expense. The court can find no false statement in this narrative.

Finally, the plaintiff has failed to allege any pecuniary loss. The plaintiff ultimately paid $ 100 less per month in rent than she expected to pay. Although the plaintiff spent her first two nights in Mountain City without an official residence, she slept, on both nights, in a bed-and-breakfast paid for by the defendant. There is simply no evidence that the plaintiff suffered any injuries as a result of Mr. Morrisett's representations. The court will grant summary judgment on the defendant's negligent misrepresentation claim. [3]

---

[3] On September 5, 2007, the plaintiff moved to certify the question of whether, under Tennessee law, a plaintiff "may bring a claim for negligent misrepresentation in an employer/employee discharge context." (Docket No. 19). On October 23, 2007, the court denied the plaintiff's motion without prejudice, finding that it was not clear that the question would be "determinative of the cause." (Docket No. 24) In [*23] *Shelby v. Delta Air Lines, Inc., 842 F. Supp. 999, 1015 (M.D. Tenn. 1993)*, Judge Echols, of this district, in a scholarly opinion, found that the negligent misrepresentation tort could not be applied in employment cases. Relying in part on the fact that Tennessee courts have never applied the negligent misrepresentation tort to employment contracts, as opposed to commercial transactions, and in part on construction of

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Summary Judgment will be granted.

An appropriate order will enter.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

## ORDER

For the [*24] reasons expressed in the accompanying Memorandum, the Motion for Summary Judgment (Docket No. 36) filed by defendant is **GRANTED.** This case is **DISMISSED.**

It is so ordered.

Enter this 22nd day of July 2008.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

---

End of Document

---

Section 552 of the Restatement of Torts, Judge Echols held that Tennessee law provided no such cause of action. *Id.* As the plaintiff points out, there is no Tennessee authority directly addressing this question. However, because the plaintiff relies primarily on statements of intention, because none of the statements at issue were false, and because the plaintiff has not shown any damages, this is not the proper case for certifying the issue. This court was correct in predicting that the proposed question would not be "determinative of the cause." (Docket No. 24)