EXHIBIT 7

No *Shepard's* Signal™

As of: February 12, 2022 3:32 AM Z

# Grissim v. Powell Constr. Co., Inc.

Court of Appeals of Tennessee, Eastern Section, At Knoxville

June 25, 1999, Filed

NO. 03A01-9807-CV-00222

### Reporter

1999 Tenn. App. LEXIS 413 *; 15 I.E.R. Cas. (BNA) 766

KENNETH GRISSIM, Plaintiff/Appellant v. POWELL CONSTRUCTION COMPANY, INC., Defendant/Appellee

**Prior History:** [*1] CIRCUIT COURT. WASHINGTON COUNTY. HON. THOMAS J. SEELEY, JR., JUDGE. (No. 18506).

**Disposition:** AFFIRMED.

### Core Terms

estimated, profits, projection, percent, trial judge, misrepresentation, construction company, variance

### Case Summary

#### Procedural Posture

Plaintiff appealed decision from the Circuit Court, Washington County (Tennessee) which granted defendant's motion for a directed verdict. Plaintiff sought damages pursuant to *Tenn. Code Ann. § 50-1-102*, alleging that he was induced by false or deceptive statements to accept employment by defendant. Plaintiff had successfully sought damages for wrongful discharge from employment, and that was not an issue on appeal.

#### Overview

Plaintiff sought review of decision that granted defendant construction company's motion for a directed verdict in plaintiff's action alleging he was induced by false or deceptive statements to accept employment by defendant. Plaintiff sought damages pursuant to *Tenn. Code Ann. § 50-1-102*. Plaintiff, experienced in construction field, was shown a statement reflecting anticipated profits for defendant prior to employment. Plaintiff alleged defendant had represented that plaintiff would be paid five percent of estimated profit plus salary. Defendant's directed verdict was granted. On appeal, the court determined that plaintiff understood the statement reflected anticipated profit and plaintiff was aware that actual profits could not be determined until the end of the year. The court found that plaintiff did not allege negligent misrepresentation or present it at trial, therefore, it could not be raised on appeal. The court determined the misrepresentation was not material. Further, the court concluded there was no evidence defendant ever represented the statement to be more than a mere projection of profit. The lower court's judgment for defendant was affirmed.

#### Outcome

Directed verdict for defendant was affirmed. The court found that the reduction in the 1992 financial statement would not have affected the plaintiff's decision to accept

defendant's offer and was thus immaterial.

## LexisNexis® Headnotes

Civil Procedure > Trials > Judgment as Matter of Law > Directed Verdicts

Civil Procedure > Trials > Judgment as Matter of Law > General Overview

*HN1*[ ] Judgment as Matter of Law, Directed Verdicts

In ruling on a motion for directed verdict, a trial judge must take the strongest legitimate view of evidence in favor of the non-moving party, allow all reasonable inferences from that evidence in the non-moving party's favor, discard all countervailing evidence, and grant a directed verdict if reasonable minds could draw but one conclusion. However, if a dispute exists as to any material fact or if there is any doubt as to the conclusions to be drawn from the evidence, the motion must be denied.

Torts > ... > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview

*HN2*[ ] Fraud & Misrepresentation, Negligent Misrepresentation

See *Tenn. Code Ann. § 50-1-102*.

Torts > ... > Fraud & Misrepresentation > Negligent Misrepresentation > Elements

Torts > ... > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview

*HN3*[ ] Negligent Misrepresentation, Elements

When plaintiff does not allege negligent misrepresentation, and does not present this issue to the trial court, he cannot raise the issue on appeal.

Torts > ... > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview

*HN4*[ ] Fraud & Misrepresentation, Negligent Misrepresentation

At common law, an action for fraudulent misrepresentation requires that it be so material as to determine the conduct of the parties, and the materiality of a misrepresentation, if one is found, is a question of law for the court.

**Counsel:** James H. Price, Knoxville, for Appellant.

Rick J. Bearfield, Johnson City, for Appellee.

**Judges:** William H. Inman, Senior Judge. CONCUR: Herschel P. Franks, Judge, Charles D. Susano, Jr., Judge.

**Opinion by:** William H. Inman

## Opinion

OPINION

INMAN, Senior Judge

In this jury case the plaintiff successfully sought damages for wrongful discharge from employment, and this is not an issue on appeal.

The plaintiff also sought damages pursuant to *T.C.A. § 50-1-102*, alleging that he was induced by false or deceptive statements to accept employment by the

defendant. This theory of recovery was the subject of a motion for a directed verdict which was granted. The issue for determination is the propriety of a directed verdict.

HN1[↑] In ruling on a motion for directed verdict, a trial judge must take the strongest legitimate view of evidence in favor of the non-moving party, allow all reasonable inferences from that evidence in the non-moving party's favor, discard all countervailing evidence, and grant a directed verdict if reasonable minds could draw but one conclusion. _Bland v. Allstate Ins._ [*2] _Co., 944 S.W.2d 372 (Tenn. App. 1996)_. However, if a dispute exists as to any material fact or if there is any doubt as to the conclusions to be drawn from the evidence, the motion must be denied. _Arcata Graphics Co. v. Heidelberg Harris, Inc., 874 S.W.2d 15, 21 (Tenn. App. 1993)_, citing _Country Maid Dairy, Inc. v. Hunter, 57 Tenn. App. 138, 416 S.W.2d 367, 372 (Tenn. App. 1967)_. HN2[↑] _T.C.A. § 50-1-102_ provides, in pertinent part, as follows:

§ 50-1-102. **False or deceptive representations, false advertising or false pretenses; damages:**

(a)(1) It is unlawful for any person to induce, influence, persuade or engage workers to change from one (1) place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike, or other trouble pending between employer and employees, at the [*3] time of or prior to such engagement.

The evidence offered by the plaintiff revealed that on August 19, 1992, he met with the President of Powell Construction Company (PCC) to discuss employment. He testified that he was offered a contract, which he accepted, for a stipulated salary plus annual bonuses of five percent of the profits of the Utility Division of PCC.

The method of accounting by construction companies is not disputed. Because construction jobs may span two or more years with potentially large profits (or losses), the Internal Revenue Service requires a construction company to recognize profit (or loss) from that job each fiscal year, even though the job is not complete at the end of the year. To accomplish this, contractors prepare what are known in the industry as "over/under statements" to show the anticipated profit (or loss) for each job. The over/under statement is generally prepared on a monthly basis, but the profit or loss shown on the over/under for the last month of the fiscal year is the profit or loss that is recognized for that tax year.

When the first over/under statement for a job is prepared, it will show the estimated profit at the time the job was bid [*4] because nothing has altered that original projection. As the job progresses, the estimated profit or loss will be adjusted as various factors dictate, as for instance, if cost of materials increase or construction delays occur in a given month, the ensuing over/under statement will change to reflect the increased expenses and lower estimated profit. This method of accounting necessarily requires that profits and costs be estimated, and they fluctuate significantly over the course of the contract. But, a construction company has a very real incentive to accurately predict profit and loss and to recognize its losses as soon as it knows of them, because failure to do so causes the company to pay income tax on anticipated profit that will never be realized.

Plaintiff, long experienced in the construction field,

testified that he was shown a July 1992 over/under statement for the Powell Utility Division at the time he met representatives of PCC to discuss employment in August, 1992. He knowledged that he understood that the over/under statement given to him during his interview showed only projected or anticipated profits for the Division. Specifically, he testified:

Q: So are you telling [*5] the jury that Mr. Powell promised to pay you five percent of [the estimated profit on the July 1992 over/under statement] $ 4,854,852.00?

A: If all of these jobs projected out as the projection showed, that would be it, yes, sir.

After some discussion, the parties agreed that $ 3,849,499.00 was the estimated profit on the July 1992 over/under statement.

Q: Okay. Are you telling this jury that Mr. Powell promised that he's give you five percent of $ 3,849,499.00?

A: We never discussed what the profits were at that date. This was handed to me and showed me and told me that he would give me five percent of a net profit of the organization at the end of that year.

Q: . . . I want you to tell the jury, if you can, what that something is that you're asking them to give you five percent of?

A: Sir, the only think I can do is ask the jury to say that I was expected to get five percent of the profits earned for that year, which this [over/under statement] does not disclose. This only discloses up to July.

Q: . . . I'm asking you about July. Do you have any evidence . . .

A: I do not.

Q: . . . that when this [over/under statement] was made in July that it was untrue at the [*6] time it was made?

A: I'll have to say no because that was the only thing I had.

Q: Okay. And it's the only thing you have today, isn't it?

A: As far as I'm concerned.

Q: Okay. And it's true, isn't it, that the only basis for your claim under the statute 50-1-102 - the only basis, the only false thing that you're contending was said to you was the profit and loss statement - the over and under. Isn't that right?

A: I'm not saying today that it was false at that time. But it turned out to be that it was probably a false statement that I was shown.

Q: Well, it changed, didn't it?

A: It changed.

Q: That's different than being false, isn't it?

A: Well, yes, it is.

Q: It changed?

A: It changed.

The plaintiff's testimony indicates that he understood the July 1992 over/under statement to be only a projection of anticipated profit, and that he was cognizant of the fluctuating nature of over/under statements. He further conceded that PCC never represented the July 1992 over/under statement to be a statement of actual profits, which could not be determined until the end of the year.

A former employee of PCC, Bruce Hawks, testified that the July, 1992 over/under statement contained [*7] inaccurate information which inflated the estimated profit of the Utility Division. He testified that the estimated profit on the Rockfish Job should have been about $

650,000.00 rather than $ 893,000.00 as shown by the July statement. As it developed, the Rockfish Job eventually resulted in a loss in excess of one million dollars, thus depriving the plaintiff of a bonus.

Recognizing that the testimony of Mr. Hawks created a factual dispute as to the accuracy of the July, 1992 statement, the trial judge discussed the significance, as a matter of law, of the variance. He found

If you subtract $ 184,852.00, the amount that Mr. Hawks said was profit that should not have been recognized on Rockfish Creek, you come up with a figure of $ 4,670,000.00 . . . The revised estimated figure that Mr. Grissim should have been looking at would have been $ 4,670,000.00 instead of $ 4,854,852.00. That's a variance of point .038; in other words, it's a variance of less than 4 percent. That is not a significant variance . . . It's just a relatively small amount when considered as part of the total revised estimated profit figure. The Court finds that no reasonable mind would find that Mr. Grissim [*8] would have looked at $ 4,670,000.00 and come to any other conclusion than the one he came to at the time, was that it would be better for him to go to work for Powell Construction Company.

By adjusting the July, 1992, estimated profit downward according to Mr. Hawks' testimony, the trial judge acknowledged that he had taken the strongest legitimate view of the evidence in favor of Mr. Grissim, reasoning that a $ 184,852.00 reduction in the July 1992 estimated profits, a variance of less than 4 percent, would not have affected Mr. Grissim's decision to accept PCC's offer.

The appellant argues that T.C.A. § 50-1-102 does not require that any misrepresentation be a material one, and that a material misrepresentation is not required to state a claim for negligent misrepresentation. As to the latter insistence, suffice to state that the HN3[↑] plaintiff did not allege negligent misrepresentation, and did not present this issue to the trial court. He cannot raise the issue on appeal. Simpson v. Frontier C. C. Union, 810 S.W.2d 147 (Tenn. 1991).

HN4[↑] At common law, an action for fraudulent misrepresentation requires that it be so material as to determine the conduct of the parties, Atkins v. [*9] Kirkpatrick, 823 S.W.2d 547 (Tenn. App. 1993), and the materiality of a misrepresentation, if one is found, is a question of law for the court. Bauer v. Mutual of Omaha, 62 Tenn. App. 189, 460 S.W.2d 366 (Tenn. App. 1969).

The appellant argues that since the Legislature did not provide that any false representation proscribed by T.C.A. § 50-1-102(a)(1) must be a material one, it follows that the lack of materiality as found by the trial judge is an impermissible engraftment on the statute. The appellee responds by arguing that the courts should not displace common law more than is necessarily required for statutory construction and should take care neither to restrict the coverage of the statute nor expand its scope, citing Nichols v. Atnip, 844 S.W.2d 655 (Tenn. App. 1992). The materiality of any fact in a contested proceeding is basic to our judicial system, and we agree with the trial judge that from the plaintiff's best perspective, the reduction in the July, 1992 statement would not have affected the plaintiff's decision to accept PCC's offer and was thus immaterial.

The appellant does not respond to the argument of the appellee that he cannot prevail for yet another [*10] reason: that fraud cannot be based on erroneous projections and representations as to the future success of a business or corporation. This principle was alluded to in Waring v. Polymer Materials, Inc., 1997 Tenn. App. LEXIS 52, 1997 WL 32736, Tenn. App. 1997, citing Zar v. Omni Industries, 813 F.2d 689 (5th Cir. 1987), Sharp v. Idaho Invest. Corp., 95 Idaho 113, 504

P.2d 386 (Idaho 1972), Dorr v. Janssen, 233 Ore. 505, 378 P.2d 999 (Oregon 1963) and Evans v. Gray, 215 So. 2d 40 (Fla. App. 1968). The record reflects no evidence that PCC ever represented the over/under statement to be more than a mere projection of profit. A projection is simply an informed estimate, but we are not disposed to hold that, as an absolute, fraud cannot be based on incorrect projections. In the case at Bar, however, the principle announced in *Waring* is apropos in light of the testimony of the plaintiff.

The trial judge ruled that the plaintiff was not entitled to recover because there was no proof of a material misrepresentation in projected profits for 1992 and no proof of profits for 1993 and 1994. The only proof offered concerned the Rockfish project, which, had it not lost a million dollars plus, would **[*11]** have shown profit for 1993. But the plaintiff admitted that he had no idea of the profits for the years in question, and, as found by the trial judge, "there is no proof in the record as to what, if any, profits PCC had in those three years."

The judgment is affirmed at the costs of the appellant.

William H. Inman, Senior Judge

CONCUR:

Herschel P. Franks, Judge

Charles D. Susano, Jr., Judge

End of Document