**EXHIBIT 9**

 Positive

As of: February 12, 2022 5:07 AM Z

# *Wright v. Wacker-Chemie AG*

United States District Court for the Eastern District of Tennessee At Chattanooga

August 1, 2014, Decided; August 1, 2014, Filed

No. 1:13-cv-331

**Reporter**

2014 U.S. Dist. LEXIS 105337 *; 2014 WL 3810584

JUSTIN WRIGHT, Plaintiff, v. WACKER-CHEMIE AG, et al., Defendants.

## Core Terms

promise, misrepresentation, promissory estoppel, alleges, promissory fraud, breach of contract, motion to dismiss, at-will, polysilicon, cases, fraudulent, representations, intentional misrepresentation, trial court, terminate, courts, employment relationship, implied in law, parties, offers, fraudulent inducement, employment contract, training program, contract claim, induced, vague, misrepresentation claim, fraudulent concealment, general description, reasonably rely

## Case Summary

### Overview

HOLDINGS: [1]-Where plaintiff entered defendants' training program based upon assurances that he would receive a position at defendants' planned polysilicon facility, allegation that defendants made a knowing, false representation that it had pre-sold all of the polysilicon that could be produced at the facility through 2015 was a concrete enough misrepresentation to satisfy plaintiff's pleading requirements for his intentional misrepresentation claim; [2]-Plaintiff failed to adequately plead a promissory fraud claim because he had not

alleged defendants made promises without the present intent to perform; [3]-Plaintiff sufficiently alleged a promissory estoppel claim because the allegations contained affirmative representations that plaintiff would begin his employment on a specific date, and the start date was set in concrete and would not change barring some horrible natural disaster.

### Outcome

Motion to dismiss granted in part and denied in part.

## LexisNexis® Headnotes

Civil Procedure > Pleading & Practice > Motion Practice > Opposing Memoranda

*HN1*[⬇] Motion Practice, Opposing Memoranda

See E.D. Tenn. R. 7.2.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Require

Daniel Crowell

ments for Complaint

*HN2*[↓] **Motions to Dismiss, Failure to State Claim**

A *Fed. R. Civ. P. 12(b)(6)* motion should be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. For purposes of this determination, the court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. The same deference does not extend to bare assertions of legal conclusions, however, and the court is not bound to accept as true a legal conclusion couched as a factual allegation. The court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. Although a complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, this statement must nevertheless contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN3*[↓] **Motions to Dismiss, Failure to State Claim**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Plausibility is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

Torts > ... > Fraud & Misrepresentation > Actual Fraud > Elements

*HN4*[↓] **Actual Fraud, Elements**

The terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. To establish fraudulent or intentional misrepresentation, a plaintiff most show (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

Torts > ... > Fraud & Misrepresentation > Actual Fraud > Elements

*HN5*[↓] **Actual Fraud, Elements**

Under Tennessee law, there is not a separate cause of action for intentional misrepresentation; rather, intentional misrepresentation is an element of a cause of action for fraud rather than an independent cause of action.

Torts > ... > Fraud & Misrepresentation > Constructive Fraud > Elements

*HN6*[↓] **Constructive Fraud, Elements**

To state a fraudulent inducement claim, the plaintiff must allege the defendants (1) made a false statement concerning a fact material to the transaction, (2) with knowledge of the statement's falsity or utter disregard for its truth, (3) with the intent of inducing reliance on the statement, (4) that the statement was reasonably relied upon, and (5) that an injury resulted from this reliance. Further, where a claim for fraudulent inducement rests on false promises made without the present intent to perform, or promissory fraud, the plaintiff must prove more than a subsequent failure to keep the promise. The plaintiff must prove the defendant had no intention of carrying out the promise at the time the promise was made.

Torts > ... > Fraud & Misrepresentation > Actual Fraud > Elements

*HN7*[⬇] **Actual Fraud, Elements**

Alleging that a defendant did not have the present intent to carry out a promise is sufficient to meet the pleading standard for a fraudulent inducement claim.

Torts > ... > Fraud & Misrepresentation > Constructive Fraud > Elements

*HN8*[⬇] **Constructive Fraud, Elements**

Tennessee's promissory fraud action requires a plaintiff show the promisor had an actual present intent not to fulfill the promise.

Labor & Employment Law > Employer Liability > General Overview

*HN9*[⬇] **Labor & Employment Law, Employer Liability**

*Tenn. Code Ann. § 50-1-102(c)(1)* creates a cause of action for workers who are influenced, induced, or persuaded to come into the state of Tennessee to work or go from one place to another within the state by false or deceptive representations, false advertising, or false pretenses. However, all four types of misrepresentation detailed in *Tenn. Code Ann. § 50-1-102* pertain to conditions of actual employment and do not extend to misrepresentations where work is not actually begun.

Torts > ... > Fraud & Misrepresentation > Nondisclosure > Elements

*HN10*[⬇] **Nondisclosure, Elements**

To establish fraudulent concealment, a plaintiff must show (1) the defendant had a duty to disclose a known fact or condition; (2) the defendant failed to disclose it; (3) the plaintiff reasonably relied upon the resulting misrepresentation; and (4) the plaintiff consequently suffered injury. The duty to disclose arises when (1) there is a fiduciary relationship between the parties; (2) one of the parties has expressly reposed trust and confidence in the other; or (3) the contract is intrinsically fiduciary and calls for perfect good faith.

Torts > ... > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview

*HN11*[⬇] **Fraud & Misrepresentation, Negligent Misrepresentation**

A negligent misrepresentation tort does not extend to the employment context.

Business & Corporate Compliance > ... > Breach > Breach of Contract Actions > Elements of Contract Claims

*HN12*[⬇] **Breach of Contract Actions, Elements of Contract Claims**

To establish a breach of contract, a plaintiff must show (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract.

> Labor & Employment Law > Employment Relationships > At Will Employment > Duration of Employment

> Labor & Employment Law > Employment Relationships > At Will Employment > General Overview

*HN13*[⬇] **At Will Employment, Duration of Employment**

In Tennessee, the doctrine of employment-at-will is a long standing rule which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. Accordingly, an employer cannot be liable for breach of contract when it terminates an employee, if the employment relationship was at will. A contract for employment for an indefinite term is a contract at will and may be terminated by either party at any time without cause.

> Labor & Employment Law > Employment Relationships > At Will Employment > Duration of Employment

*HN14*[⬇] **At Will Employment, Duration of Employment**

In Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract

because there is no contractual right to continued employment. Regardless, in Tennessee, a contract for permanent employment is considered an indefinite hiring terminable at the will of either party. Tennessee courts have interpreted contracts for the long term as being contracts for permanent employment, and thus at-will contracts.

> Contracts Law > Remedies > Equitable Relief > Quantum Meruit

*HN15*[⬇] **Equitable Relief, Quantum Meruit**

A contract implied in law is created by law without the assent of the party bound, on the basis that it is dictated by reason and justice. A contract implied in law is also referred to as a quasi-contract or an action for quantum meruit. A claim for contract implied at law requires a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement for a recovery is that the enrichment to the defendant must be unjust.

> Contracts Law > Remedies > Equitable Relief > Quantum Meruit

*HN16*[⬇] **Equitable Relief, Quantum Meruit**

Tennessee courts have held, absent evidence of underpayment, past services are insufficient "benefit" to support a quasi-contract claim.

> Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

**HN17** [⬇] **Complaints, Requirements for Complaint**

Under the Federal Rules, the plaintiff's complaint must contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Contracts Law > Remedies > Equitable Relief > Quantum Meruit

**HN18** [⬇] **Equitable Relief, Quantum Meruit**

A contract implied in fact is similar to an express contract, in that it arises under circumstances which show mutual intent or assent to contract, and it must be supported by consideration and lawful purpose.

Business & Corporate Compliance > ... > Contract Formation > Consideration > Promissory Estoppel

**HN19** [⬇] **Consideration, Promissory Estoppel**

In Tennessee, promissory estoppel is available when the defendant makes a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance. Plaintiffs must show (1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment. However, promissory estoppel is an equitable doctrine and it is not liberally applied in Tennessee. To the contrary, Tennessee limits application of the doctrine to exceptional cases. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the promisee's action in reliance was unreasonable or unjustified by the promise. The limits of

promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.

Business & Corporate Compliance > ... > Contract Formation > Consideration > Promissory Estoppel

Labor & Employment Law > ... > At Will Employment > Exceptions > General Overview

**HN20** [⬇] **Consideration, Promissory Estoppel**

While a plaintiff may file a claim for promissory estoppel that is based upon an at-will employment relationship, the plaintiff will only prevail under exceptional circumstances. In particular, the nature of the employment relationship makes it very difficult to establish reasonable reliance in this context.

Business & Corporate Compliance > ... > Contract Formation > Consideration > Promissory Estoppel

Labor & Employment Law > ... > At Will Employment > Exceptions > Tort Exceptions

**HN21** [⬇] **Consideration, Promissory Estoppel**

Tennessee courts have limited the application of promissory estoppel in the at-will employment context to exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud.

**Counsel:** [*1] For Justin Wright, Plaintiff: Pamela R O'Dwyer, LEAD ATTORNEY, Paty, Rymer and Ulin, PC, Chattanooga, TN; John W Chandler , Jr, Law Office of

Morgan G. Adams, Chattanooga, TN.

For Wacker-Chemie Achte Venture GmbH, Inc., Wacker Polysilicon North America, LLC, Erika Burk, Jeff Zierenberg, Defendants: Justin L Furrow, J Bartlett Quinn, Chambliss, Bahner & Stophel, PC, Chattanooga, TN.

For Wacker-Chemie AG, Defendant: J Bartlett Quinn, LEAD ATTORNEY, Chambliss, Bahner & Stophel, PC, Chattanooga, TN.

**Judges:** CURTIS L. COLLIER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CURTIS L. COLLIER

# Opinion

## MEMORANDUM

Before the Court is a motion to dismiss filed by Defendants Wacker-Chemie AG, Wacker-Chemie Achte Venture Gmbh, Inc., Wacker Polysilicone North America, LLC, Erika Burk, and Jeff Zierenberg (collectively, "Defendants") (Court File No. 26).[1] Plaintiff Justin Wright ("Plaintiff") responded in opposition (Court File No. 29),[2] and Defendants replied (Court File No.

---

[1] Defendants previously filed motions to dismiss, which were superseded by an amended complaint and a second amended complaint. Defendants' initial motions to dismiss will be **DENIED** as **MOOT** (Court File No. 4, 10, 23). Additionally, Plaintiff's motions for an extension of time to respond to the motions to dismiss will also be **DENIED** as **MOOT** (Court File No. 12, 20).

[2] The Court notes that Plaintiff filed a thirty-five page response brief, well in excess of the limits in the local rules, without seeking leave of the Court to exceed the page limits. The Court cautions counsel to comply with the local rules.

16). The Court reads Plaintiff's response to concede that a number of the claims should be dismissed, as he only requests the Court deny Defendants' motion with regard to "his claims of intentional misrepresentation, promissory fraud, breach of express employment [*2] contract, breach of contract implied in law, and promissory estoppel."[3]

This case is similar to a number of cases removed from state court beginning [*3] in September 2013. All the cases, including this one, involve a training program at Chattanooga State Community College ("Chattanooga State") sponsored by Defendants Wacker-Chemie AG and Wacker Polysilicon North America, LLC, both foreign entities. The plaintiffs' points of contact were two individual defendants, Erika Burk ("Burk") and Jeff Zierenberg ("Zierenberg"), both of whom are residents of Tennessee. Defendants removed all of the cases, alleging Burk and Zierenberg were fraudulently joined in order to defeat diversity jurisdiction and the Court otherwise had subject matter jurisdiction over the remaining parties. The Court disagreed and remanded the cases to state court. However, this case and one other were brought by non-resident plaintiffs; the presence of Burk and Zierenberg thus does not defeat diversity.[4]

---

[3] See *Notredan, LLC v. Old Republic Exchange Facilitator Co., 531 F. App'x 567, 569 (6th Cir. 2013)* ("Notredan's response to the motion to dismiss did not address th[e] argument [Notredan's complaint failed to state a claim for breach of fiduciary duties]. This failure amounts to a forfeiture of the fiduciary-duty claim."); see also *E.D. Tenn. L.R. 7.2* ("*HN1*[↑]] Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

[4] As the Court noted in its Order remanding the related cases, removal of this case violated the forum-defendant rule. Plaintiff, however, did not move to remand within the thirty days provided by *28 U.S.C. § 1447(c)*.

Plaintiff, like the plaintiffs in the remanded cases, alleges a number of fraud and contract claims related to the training program. Namely, Plaintiff entered **[*4]** the training program based upon assurances that he would receive a position at Defendants' planned polysilicon facility, assurances he alleges were fraudulent and created a contract between the parties. Defendants argue these assurances created no employment contract and involved no misrepresentations. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss (Court File No. 26). The Court will **DISMISS** all of Plaintiff's claims except for his intentional misrepresentation and promissory estoppel claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2009, the State of Tennessee offered Wacker-Chemie AG an incentive package worth between $75 and $100 million, including infrastructure improvements, tax credits, and job training grants so Wacker-Chemie would build a polysilicon factory in Tennessee. On February 26, 2009, Dr. Rudolf Staudigl, President and CEO of Wacker-Chemie AG, and Dr. Ingomar Kovar, President and CEO of Wacker NA, announced their plans to construct a manufacturing facility in Bradley County, Tennessee. Present at the announcement were some three hundred people, including then-Governor Phil Bredesen. The companies expected an estimated **[*5]** $1 billion initial investment that would create approximately five-hundred jobs to produce a kind of silicon used in the solar energy and electronics industries. Many months later, in December 2010, Dr. Staudigl announced the expected capital investment would increase from $1 billion to $1.45 billion, the factory would employ six-hundred-and-fifty people, and the facility would be completed in 2013.

In 2011, Wacker-Chemie NA partnered with Chattanooga State and agreed to donate $3 million to fund the "Wacker Institute" on Chattanooga State's campus. The institute would open in June 2011 and students would take a number of specialized courses over four semesters to graduate with an Associate's Degree and the opportunity to work at Wacker's Bradley County facility. Chattanooga State advertised the Wacker Institute, noting students could expect to start their careers with a salary in the high $30,000s or low $40,000s, to be provided opportunities for overtime, and to receive full benefits. A later advertisement raised the expected salary to the high $40,000s or low $50,000s.

Plaintiff initially learned of the training program in early 2011 from a radio advertisement and later the Wacker-Chemie **[*6]** NA website, through which he submitted an application. In April 2011, Plaintiff received an email from Zierenberg, informing him he had not been selected for the Lead Chemical Operator position but he would be a "great candidate" for the Chemical Operator position. Zierenberg encouraged Plaintiff to enroll in the Wacker Institute. Plaintiff then attended an information session that described the expected salaries for the various positions. He was informed that he could expect to be hired for the Chemical Operator position if he maintained at least a 3.0 grade point average upon graduation. He was also informed that Wacker had sold all the polysilicon the new facility would be able to make for at least the next two years. Based upon these representations, Plaintiff enrolled in the Wacker Institute at Chattanooga State.

In August 2011, Plaintiff received a letter from Burk, Wacker's Director of Human Resources, explaining that students who graduate on time with a B average or better and who pass a physical, drug screen, and background check were guaranteed interviews. The next month Burk also announced Wacker-Chemie NA would interview for approximately sixty lead and supervisory positions, **[*7]** which would require training in Germany. Plaintiff received notice in November 2011

that he would be interviewed for a position and he was interviewed by Zierenberg.

During a meeting on December 16, 2011, Plaintiff and other students were informed they had "passed" their job interviews and would be receiving conditional job offers for either the Lead Chemical Operator or Chemical Operator position at a job offer ceremony. At this meeting, Burk also discussed the company and claimed Wacker had the largest market share of polysilicon and its share was growing. She also informed Plaintiff that Wacker hoped to accelerate construction of the plant but the company was awaiting board approval. She stated, however, the delay could help them "fine tune" the employees' start dates to January or April 2013. In a January 2012 press release, the Wacker Institute's grand opening was announced. Burk described the Chattanooga State program as a "great opportunity" and stated it was Wacker's priority "to hire as many people from the Tennessee Valley as possible."

Plaintiff attended the job offer ceremony in February 2012, and Burk provided the prospective employees, including Plaintiff, written offers [*8] of employment, which quoted a starting wage, described Wacker's benefits program, and discussed the terms of a signing bonus. The students were given a deadline to accept the position, but the offer was contingent upon successfully completing the program with a 3.0 grade point average; proper work authorization; passing a physical, drug test, and background check; completing an intellectual property disclosure; and agreeing to the terms and conditions of employment. At the ceremony, Burk emphasized Wacker's commitment to the Chattanooga State program and its students and stressed that the job offers were a recognition of Wacker's commitment. Plaintiff signed the response form accepting the position of Chemical Operator beginning April 1, 2013. Plaintiff completed the spring

semester at the Wacker Institute on May 5, 2012.

During the summer, conditional offers were extended to thirteen additional students, and Burk again stated the offers were a recognition of Wacker's commitment to them. Burk even sent a letter to those who had previously accepted offers, encouraging them to refer friends to the program in exchange for a $50 gift card. Plaintiff also attended meetings over the summer [*9] at which Zierenberg discussed the progress at the construction site and reiterated that the facility had pre-sold the product it was capable of producing through 2015. In August 2012, Plaintiff completed his summer semester and began his fall semester.

Everything changed in October 2012. Burk sent a personnel announcement to the students who had accepted offers informing them "the past 18 months have marked dynamic change for the global polysilicon market" and "Wacker must adapt to the fluctuating prices and overcapacity within the supply chain." In order to adapt to these fluctuations, Burk notified the students, including Plaintiff, that the factory's opening, and thus the commencement of their employment, would be delayed. At a meeting, Burk and Zierenberg informed the prospective employees that their employment would be postponed to October 2015, over two years after they had initially anticipated starting.

After Plaintiff graduated from the program in December 2012 he attempted to find employment using his degree without success. He filed the instant suit in September 2013. In his amended complaint, Plaintiff alleges Defendants are liable for intentional misrepresentation, fraudulent [*10] inducement, false or deceptive representations or pretenses in violation of *Tenn. Code Ann. § 50-1-102*, fraudulent concealment or non-disclosure, negligent misrepresentation, breach of contract, breach of contract implied in law, breach of

Daniel Crowell

contract implied in fact, and promissory estoppel.[5]

## II. STANDARD OF REVIEW

*HN2*[↑] A *Rule 12(b)(6)* motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998)*. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc., 484 F.3d 855, 859 (6th Cir. 2007)*. The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion [*11] couched as a factual allegation." *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)*.

The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman, 484 F.3d at 859*. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Fed. R. Civ. P. 8(a)(2)*), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "*HN3*[↑] [T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 556*). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint [*12] has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id. at 679* (quoting *Fed. R. Civ. P. 8(a)(2)*).

## III. DISCUSSION

Plaintiff brings a number of state law claims against Defendants related to his delayed start date: intentional misrepresentation, fraudulent inducement, false or deceptive representations or pretenses in violation of *Tenn. Code Ann. § 50-1-102*, fraudulent concealment or non-disclosure, negligent misrepresentation, breach of contract, breach of contract implied in law, breach of contract implied in fact, and promissory estoppel. As noted above, Plaintiff has not expressed opposition to dismissal of the *Tenn. Code Ann. § 50-1-102*, fraudulent concealment or non-disclosure, negligent misrepresentation, or breach of contract implied in fact claims, and the Court takes Plaintiff's silence on these claims as a waiver of opposition to their dismissal. The Court will consider each claim in turn, but will split the claims into two categories: fraud claims and contract claims.

### A. Fraud Claims

### 1. Intentional Misrepresentation

Plaintiff alleges Defendants made a number of

---

[5] Although the fraud claims are asserted against all of the defendants, Plaintiff only brings his contract claims against the corporate defendants, Wacker-Chemie AG, Wacker-Chemie Achte Venture Gmbh, Inc., Wacker Polysilicone North America, LLC.

misrepresentations. He alleges Defendants misrepresented that (1) they had sold all the [*13] polysilicon that could be manufactured at the facility through 2015; (2) there was a rising demand for polysilicon, the solar industry was one of the fastest growing industries in the world, and Wacker had the largest market share in polysilicon in the world and it was growing; (3) Plaintiff was given a great opportunity to obtain a rewarding career through the Wacker Institute; (4) Wacker was committed to the Wacker Institute students; (5) the start date was "set in concrete" and would only be postponed in the event of "some horrible natural disaster"; and (6) the job was Plaintiff's to lose. Plaintiff alleges each of these representations was false and was made with either knowledge of its falsity, without believing in its truth, or with reckless disregard for its truth or falsity.

HN4[↑] "[T]he terms 'intentional misrepresentation,''fraudulent misrepresentation,' and 'fraud' are synonymous." *Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)*; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012)* (quoting *Concrete Spaces*).[6] To establish fraudulent or intentional misrepresentation, a plaintiff [*14] most show

    (1) the defendant made a representation of an

existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*PNC, 387 S.W.3d at 548* (citing *Walker v. Sunrise Pontiac—GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008)*). Defendants argue Plaintiff has not identified any actionable misrepresentations because the allegations are "too vague to constitute enforceable promises."

First, Defendants describe the representations as "general descriptions of the market." In *Chavez v. Broadway Electric Service Corp.*, the plaintiffs were employed as electricians by the U.S. Department of Energy ("DOE") at a facility that was to be permanently shut down. *245 S.W.3d 398, 399-400 (Tenn. Ct. App. 2007)*. One of the plaintiffs was informed about an employment opportunity with a contracting firm at DOE facilities in Oak Ridge, Tennessee. The plaintiff saw a flyer describing the pay rate and indicating "[t]here is lots of work in Oak Ridge and BESCO has contracts at all three Oak Ridge Sites." *Id. at 400*. The flyer continued, "Our company has been in business in this area and on the DOE sites more than 50 years. Anyone with [appropriate security clearance levels] will not have a problem finding work in this area. There is always a need for cleared personnel by all the Oak Ridge Companies with DOE contracts." *Id.* The plaintiff contacted the superintendent who offered him a position. The plaintiff then visited the facilities at which the superintendent told him there was enough work for "ten years." *Id.* The plaintiff accepted the position, quit his current [*16] employment, and moved his family from Colorado to Tennessee. Shortly after he started work, the contracting firm lost many of its DOE contracts

---

[6] That is to say, "HN5[↑] under Tennessee law, there is not a separate cause of action for intentional misrepresentation"; rather, "intentional misrepresentation is an element of a cause of action for fraud rather than an independent cause of action." *Parks v. Fin. Fed. Sav. Bank, 345 F. Supp. 2d 889, 895 (W.D. Tenn. 2004)*; *PNC, 387 S.W.3d at 547-48*. The Court will use the term "intentional misrepresentation" to keep its terminology consistent with Plaintiff's, terminology the Court assumes was used to distinguish this claim from [*15] the other fraud claims.

and the plaintiff was furloughed. He took a job paying much less than the one he had hoped for but eventually obtained a position with another contracting firm. The other plaintiff had a similar story, having seen one of the flyers, contacted a representative of the contracting firm who told him there was ten years or more of work left, and relocated to Tennessee only to be furloughed.

The plaintiffs sued, bringing many of the same claims Plaintiff brings here. The trial court, after a bench trial, found in favor of the defendant on the plaintiffs' breach of contract claims and found that the defendant had not made any misrepresentation or false statement. The trial court did, however, find in the plaintiffs' favor on promissory estoppel. On appeal, the Tennessee Court of Appeals reversed the trial court on the question of promissory estoppel. The descriptions of the construction market, the court held, were "not fairly characterized" as promises and were "more accurately described as general descriptions of the job market." *Id. at 405*. Moreover, **[*17]** the trial court had affirmatively found that the defendant did not promise to employ the plaintiffs for a period of ten years, but stated there was "probably" ten years worth of work. *Id.* The trial court had also taken evidence demonstrating the unpredictability of the market downturn leading to the plaintiffs' furlough, which indicated the defendant had made no misrepresentation about the market. *Id. at 406*. The Tennessee Court of Appeals held that the representations were "vague and general descriptions of the job market" that could not "reasonably be parlayed into enforceable 'promises' supporting an action for damages." *Id. at 407-08*.

The Court fails to see the relevance of this case to Plaintiff's misrepresentation claims. In *Chavez*, the trial court held against the plaintiffs on their misrepresentation claims and the matter was not discussed on appeal. Defendants argue this case demonstrates they made no "enforceable promises."

But for the purposes of Plaintiff's misrepresentation claim they need not have made an enforceable promise. Rather, Plaintiff need only plead Defendants knowingly or recklessly made a false representation of a material fact that induced Plaintiff to reasonably **[*18]** rely on the representation, thereby causing him damage. *PNC, 387 S.W.3d at 548*. Thus *Chavez* does not suggest Plaintiff's misrepresentation claim should be dismissed.

Defendants also argue many of the alleged misrepresentations constitute mere "puffing" or "sales talk." Defendants point to *Bennett v. CMH Homes, Inc., 3:08-cv-01212, 2012 U.S. Dist. LEXIS 33314, 2012 WL 859580, at *7-8 (M.D. Tenn. Mar. 13, 2012)*, in which the court concluded that a builder's remarks were "non-actionable statements of opinion." Similarly, Defendants claim many of the alleged statements in this case were simply "informal expressions of goodwill." *See Weeks v. Samsung Heavy Indus. Co., Inc., 126 F.3d 926 (7th Cir. 1997)*.

However, the Court concludes at least one alleged misrepresentation prevents dismissal here. Plaintiff alleges Defendants, on multiple occasions, stated they had pre-sold all of the polysilicon that could be produced at the Bradley County facility through 2015. Defendants, although they acknowledge this alleged misrepresentation, do not contend with it head-on. This misrepresentation is hardly "puffing" or an "informal expression[] of goodwill"; according to the complaint, Defendants claimed they had already sold a significant **[*19]** amount of polysilicon when they, in fact, had not. Moreover, this representation makes this case distinguishable from *Chavez*, not only because *Chavez* was a promissory estoppel case but also because Defendants here did not say there was "probably" two years worth of work, but stated affirmatively that two years worth of product had already been sold.

Plaintiff alleges this representation was false at the time

Defendants made it and they either knew it was false or made the representation with reckless disregard for the truth. As a result of this misrepresentation, Plaintiff enrolled in the Wacker Institute program, ceased in obtaining income from another source, and incurred other expenses. This strikes the Court as affirmative and concrete enough a misrepresentation to satisfy Plaintiff's pleading requirements for his intentional misrepresentation claim. Accordingly, the Court will **DENY** Defendants' motion on this claim.

### 2. Fraudulent Inducement/Promissory Fraud

Plaintiff brings a "fraudulent inducement/promissory fraud" claim as well. *HN6*[⬆] To state a fraudulent inducement claim, Plaintiff must allege Defendants

(1) made a false statement concerning a fact material to the transaction[,]

(2) with **[*20]** knowledge of the statement's falsity or utter disregard for its truth[,]

(3) with the intent of inducing reliance on the statement,

(4) that the statement was reasonably relied upon, and

(5) that an injury resulted from this reliance.

*Regions Bank v. Bric Constructors, LLC, 380 S.W.3d 740, 763 (Tenn. Ct. App. 2011)*. Further, "[w]here a claim for fraudulent inducement rests on false promises made without the present intent to perform, or 'promissory fraud,' the plaintiff must prove more than a 'subsequent failure to keep the promise.'" *Kelly v. Int'l Capital Resources, Inc., 231 F.R.D. 502, 517 (M.D. Tenn. 2005)* (quoting *Lowe v. Gulf Coast Development, Inc., No. 01-A-019010CH00374, 1991 Tenn. App. LEXIS 860, 1991 WL 220576, *7 (Tenn. Ct. App. Nov. 1, 1991)*). The plaintiff must prove the defendant had no

intention of carrying out the promise at the time the promise was made. *Id.*; *Carter v. Patrick, 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004)* (noting "if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise") (internal quotations omitted).

Defendants argue Plaintiff has not properly pleaded the elements of a promissory **[*21]** fraud claim because he has not alleged Defendants made promises without the present intent to perform.[7] Namely, Defendants contend "the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent." *Am. Cable Corp. v. ACI Mgmt., Inc., No. M1997-00280-C0A-R3-CV, 2000 Tenn. App. LEXIS 615, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000)*. However, *HN7*[⬆] alleging that a defendant did not have the present intent to carry out a promise is sufficient to meet the pleading standard for this claim. *FIMCO Services, LLC v. FirstMerit Bank, N.A., No. 1:10-cv-72, 2011 U.S. Dist. LEXIS 112282, 2011 WL 4565515, at *4 (E.D. Tenn. Sept. 29, 2011)*.

Plaintiff does allege Defendants made a number of promises when "they knew that the Wacker Corporate Defendants did not have the present intention to carry out those promises." But Defendants take issue with the fact that this allegation is **[*22]** followed by "or made the above-described specific material misrepresentations with utter disregard for the truth." Because of the disjunctive "or," Defendants fault Plaintiff for attempting to prove his promissory fraud claim without proving

---

[7] Defendants also argue, as they did with respect to Plaintiff's intentional misrepresentation claim, the alleged misrepresentations are not "enforceable representations of fact." This is not, however, an aspect of the claim Plaintiff must prove, but appears to be an attempt to import contract principles into a fraud claim.

Defendants acted without present intent to fulfill the promise. In response, Plaintiff argues he need not prove Defendants lacked the present intent to perform at the time the promise was made. Plaintiff stresses the promises at issue were made on behalf of corporate entities and he can still make out a promissory fraud claim even if the agents of the corporate defendants did not know the promises were false when they made them.

Plaintiff points to two provisions of the Restatement (Second) of Torts and one Tennessee Court of Appeals case for support. With respect to the Restatement, Plaintiff cites *§ 530*,[8] which provides that, while "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention," "[a] representation of the intention of a *third person* is fraudulent under the conditions stated in *§ 526*." *Restatement (Second) of Torts § 530* (emphasis added). According to to *§ 526*, **[*23]** a misrepresentation is fraudulent if the maker "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." The comments to *§ 526* provide further context:

> In order that a misrepresentation may be fraudulent *it is not necessary that the maker know the matter is not as represented*. Indeed, it is not necessary

---

[8] In discussing the tort of promissory fraud, the Tennessee Supreme Court cited *§ 530* as one of many recitations of the "majority view" that, "in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform. A statement of intention must be false and the intention not actually held." *Fowler v. Happy Goodman Family, 575 S.W.2d 496, 499 (Tenn. 1978)*.

that he should even believe this to be so. It is enough that being conscious that he has neither knowledge nor belief in the existence of the matter he chooses to assert it as a fact. Indeed, since knowledge implies a firm conviction, a misrepresentation of a fact so made as to assert that the maker knows it, is fraudulent if he is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented. *This is often expressed by saying that fraud is proved if it is shown that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false.*

*Id.* **[*24]** at *§ 526 cmt. e* (emphasis added). Plaintiff thus argues a plaintiff making out a promissory fraud claim in which the speaker misrepresents the intentions of a third party need only show the speaker made the promise with reckless disregard for the truth.

Plaintiff also points to *Ray v. Williams, No. W2000-03000-COA-R3-CV, 2002 Tenn. App. LEXIS 345, 2002 WL 974671 (Tenn. Ct. App. May 9, 2002)*. In *Ray*, the plaintiff owned a service station and was approached by a U-Haul representative who asked the plaintiff to become a U-Haul dealer in the area. *2002 Tenn. App. LEXIS 345, [WL] at *1*. The plaintiff agreed and signed a dealership contract, which provided either party the right to terminate the agreement with thirty-days written notice. *Id.* The plaintiff spent years building up his business, **[*25]** including making improvements to his existing service station in order to accommodate his dealership. *Id.* The plaintiff later learned U-Haul was considering opening a second dealership in the area and he terminated his agreement with U-Haul. *Id.* He then sued U-Haul on a number of grounds, including promissory fraud. He alleged the U-Haul representatives

promised him his dealership would operate exclusively in the area and he was therefore fraudulently induced to enter the agreement. U-Haul, for its part, denied making this representation. The trial court, however, found U-Haul's agents did make such a representation, which induced the plaintiff to enter into the agreement. The trial court found the representation was "false and made with an utter disregard for the truth" because the agents admitted they did not have the authority to make such a representation. *2002 Tenn. App. LEXIS 345, [WL] at *2*. The court awarded the plaintiff appropriate damages.

On appeal, U-Haul argued the trial court erred when it found the defendants had committed promissory fraud. The court noted the plaintiff "must show that the false statements were made 'without the present intention to carry out the promise.'" *2002 Tenn. App. LEXIS 345, [WL] at *3* (quoting *Shahrdar v. Global Hous., Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998))*. **[*26]** U-Haul argued the plaintiff did not satisfy his burden because "the evidence was insufficient to show that the statements were made with the intent not to perform." *2002 Tenn. App. LEXIS 345, [WL] at *4*. The court disagreed and Plaintiff in this case highlights the following statement.

> The U-Haul agents who testified at trial both denied making the statements regarding exclusivity. The U-Haul agents also testified that they would not have had the authority to make such statements. Other witnesses, including Ray, testified that the statements were made. Thus, if either of the U-Haul representatives had made statements regarding exclusivity, then the statements must have been made with at least reckless disregard as to whether the promise could be kept. Under these circumstances, the trial court's finding that U-Haul committed promissory fraud is supported in the record.

*Id.* After considering U-Haul's other arguments, the court

affirmed the trial court in part, including the finding of promissory fraud.

Notwithstanding *Ray*, the Court concludes *HN8*[⬆] Tennessee's promissory fraud action requires a plaintiff show the promisor had an actual present intent not to fulfill the promise. Although Plaintiff points to the Restatement **[*27]** and its citation in *Fowler v. Happy Goodman Family*, that case explicitly *declined* to recognize a promissory fraud action, under either the majority or minority view of the tort, although the court reiterated that it might recognize such an action "in a proper case where justice demands." *575 S.W.2d 496, 499 (Tenn. 1978)* (quoting *Bolan v. Caballero, 220 Tenn. 318, 417 S.W.2d 538 (Tenn. 1967))*. Tennessee courts have subsequently recognized the action, but have identified the limitation at issue here, extending the promissory fraud tort "to those cases where the statement of intention is shown to be false when made (i.e., *a misrepresentation of actual present intention*) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers & Merchants Bank v. Petty, 664 S.W.2d 77, 80-81 (Tenn. Ct. App. 1983)* (emphasis added); *see also id. at 82* (Conner, J., concurring) ("I must agree with the majority's finding that the supreme court has indicated an unwillingness to apply the doctrine except in those cases where there is direct proof of a misrepresentation of actual *present* intention.") (emphasis in original). Thus, although Tennessee recognizes **[*28]** a promissory fraud action like the kind embodied in the Restatement, it has fashioned a narrower tort that requires the plaintiff establish the promisor misrepresented his actual present intent.

Indeed, some courts have listed the elements of promissory fraud as follows: "(1) a promise of future conduct, (2) that was material, (3) made with the intent not to perform, (4) that plaintiff reasonably relied upon,

and (5) to plaintiff's injury." *Regions Bank v. SoFHA Real Estate, Inc., No. 2:09-CV-57, 2010 U.S. Dist. LEXIS 87878, 2010 WL 3341869, at *5 (E.D. Tenn. Aug. 25, 2010)* (quoting *Noblin v. Christiansen, No. M2005-01316-COA-R3-CV, 2007 Tenn. App. LEXIS 354, 2007 WL 1574273, at *9 (Tenn. Ct. App. 2007)*). Others have stated the inquiry more bluntly: "[Tennessee] recognize[s] promissory fraud, that is entering into contract with no present intent to perform." *Taylor v. UnumProvident Corp., No. 1:03-cv-1009, 2008 U.S. Dist. LEXIS 73660, 2008 WL 4415601, at *3 (E.D. Tenn. Sept. 24, 2008). See also Kandel v. Ctr. for Urological Treatment & Research, No. M2000-02128-COA-R3-CV, 2002 Tenn. App. LEXIS 260, 2002 WL 598567, at *8 (Tenn. Ct. App. Apr. 17, 2002)* ("To establish a claim for promissory fraud, a claimant must show that, at the time the promise was made, the person making the promise had no intention **[*29]** to perform."). And a number of Tennessee courts have engaged in extensive analyses of a plaintiff's burden to demonstrate *fraudulent intent*, which hardly leaves room for Plaintiff's reading of the tort, which would only require he show recklessness. *See Noblin, 2007 Tenn. App. LEXIS 354, 2007 WL 1574273, at *9-10* (quoting *Am. Cable Corp., 2000 Tenn. App. LEXIS 615, 2000 WL 1291265, at *4-5*).

Accordingly, the Court concludes Plaintiff has failed to adequately plead his promissory fraud claim. Although the Court may not look so harshly upon the disjunctive "or" in all cases, Plaintiff indicates that he seeks to pursue this claim by only demonstrating the alleged fraudulent promises were made with utter disregard for the truth. As the Court understands Tennessee law, this is insufficient. *Ray* does support Plaintiff's view of the law in this area, but the Court concludes it is an anomaly among Tennessee courts and declines to extend it. The Court will therefore **GRANT** Defendants' motion to dismiss this claim.

### 3. *Tenn. Code Ann. § 50-1-102*

Plaintiff also alleges Defendants violated *Tenn. Code Ann. § 50-1-102*. "*HN9*[↑] *Section] 50-1-102(c)(1)* creates a cause of action for workers who are 'influenced, induced, or persuaded' to come into the state of Tennessee **[*30]** to work or go from one place to another within the state by false or deceptive representations, false advertising, or false pretenses." *Brewer v. United Wisconsin Ins. Co., 972 F. Supp. 2d 1044, 1047 (M.D. Tenn. 2013)* (quoting *Tenn. Code Ann. § 50-1-102(c)(1)*). However, as Defendants note, "[a]ll four types of misrepresentation detailed in *Tenn. Code Ann. § 50-1-102* pertain to conditions of actual employment" and do not extend to misrepresentations where work is not actually begun. *Id. at 1047-48* (citing *Risher v. Cherokee Buick-Pontiac-Oldsmobile-GMC Truck, LLC, No. E2002-1644-COA-R3-CV, 2003 Tenn. App. LEXIS 519, 2003 WL 21755055 (Tenn. Ct. App. July 28, 2003)*).

Plaintiff has not responded to Defendants' motion on this ground. The Court will construe Plaintiff's silence as a waiver of opposition to dismissal of this claim. Accordingly, the Court will **GRANT** Defendants' motion to dismiss this claim.

### 4. Fraudulent Concealment

*HN10*[↑] To establish fraudulent concealment, a plaintiff must show (1) the defendant had a duty to disclose a known fact or condition; (2) the defendant failed to disclose it; (3) the plaintiff reasonably relied upon the resulting misrepresentation; and (4) the plaintiff consequently suffered injury. **[*31]** *Chrisman v. Hill Home Dev., Inc., 978 S.W.2d 535, 538-39 (Tenn. 1998)*. "The duty to disclose arises when (1) there is a fiduciary relationship between the parties; (2) one of the parties has expressly reposed trust and confidence in

Daniel Crowell

the other; or (3) the contract is intrinsically fiduciary and calls for perfect good faith." *Gurley v. Hickory Withe Partners, L.P., No. W200202050COAR3CV, 2003 Tenn. App. LEXIS 674, 2003 WL 22204520, at \*4 (Tenn. Ct. App. Sept. 10, 2003)* (quoting *Macon Cnty. Livestock Mkt., Inc. v. Kentucky State Bank, Inc., 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986))*.

Defendant argues Plaintiff has not successfully pleaded that a fiduciary relationship existed between the parties when the fact or condition was allegedly concealed or not disclosed. Plaintiff did not respond to Defendants' motion to dismiss this claim, which the Court construes as waiver of any opposition to dismissal. Accordingly, the Court will **GRANT** Defendants' motion to dismiss Plaintiff's fraudulent concealment claim.

## 5. Negligent Misrepresentation

Plaintiff also brings a negligent misrepresentation claim. However, as the Court has concluded in other cases, HN11[↑] this tort does not extend to the employment context. *See Moore v. Alstom Power Turbomachines, LLC, No. 1:12-cv-292, 2013 U.S. Dist. LEXIS 32215, 2013 WL 915555, at \*6-7 (E.D. Tenn. Mar. 7, 2013)*. [\*32] Plaintiff also failed to respond to Defendants' motion to dismiss this claim, which the Court construes as waiver of opposition to dismissal. Accordingly, the Court will **GRANT** Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim.

## B. Contract Claims

## 1. Breach of Contract

Plaintiff alleges an employment contract was formed between the parties and the corporate defendants breached that contract when they delayed his start date.

HN12[↑] ] To establish a breach of contract, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co., 410 S.W.3d 810, 816-17 (Tenn. Ct. App. 2011)* (internal quotation marks omitted).

HN13[↑] In Tennessee, "[t]he doctrine of employment-at-will is a long standing rule . . . which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." *Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997)*. [\*33] Accordingly, an employer cannot be liable for breach of contract when it terminates an employee, if the employment relationship was at will. *See Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994)* (holding a procurement of a breach of contract claim failed because "[i]n Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract because there is no contractual right to continued employment."). Important to this case, "a contract for employment for an indefinite term is a contract at will and may be terminated by either party at any time without cause." *See Plumley Rubber Co. v. Alexander, 1989 Tenn. App. LEXIS 598, 1989 WL 105631, at \*2 (Tenn. Ct. App. Sept. 12, 1989)* (citing *Graves v. Anchor Wire Corp. of Tenn., 692 S.W.2d 420 (Tenn. Ct. App. 1985)*; *Bringle v. Methodist Hosp., 701 S.W.2d 622 (Tenn. Ct. App. 1985))*; *see also Brown v. City of Niota, Tenn., 214 F.3d 718, 722 (6th Cir. 2000)*. *But See Freeze v. City of Decherd, Tenn., No. 12-6160, 753 F.3d 661 , 2014 U.S. App. LEXIS 10351, 2014 WL 2483577, at \*7 (6th Cir. June 4, 2014)*.

Plaintiff concedes that there was no term assigned to his employment. However, Plaintiff argues the

employment relationship **[*34]** in this case was not at will in light of the many assurances Defendants made to him and the effort he expended to meet the conditions for employment. He was told on multiple occasions he was starting a "career" and informed of the starting salary and benefits package he would receive if he met the employment criteria. He received a written offer of employment that did not indicate the employment was at will. Specifically, he alleges he was told he would have a career with "lots of opportunity for upward mobility" and these "oral representations" transformed his employment relationship from "at will" to only terminable "for cause."

The Court disagrees. Simply put, "*HN14*↑] [i]n Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract because there is no contractual right to continued employment." *Forrester, 869 S.W.2d at 330*. Plaintiff claims he had an agreement for long-term "career" employment. Regardless, "[i]n Tennessee, a contract for permanent employment is considered an indefinite hiring terminable at the will of either party. Tennessee courts have interpreted contracts for the 'long term' **[*35]** as being contracts for permanent employment, and thus at-will contracts." *Nordahl v. Studer Revox Am., Inc., No. 94-6336, 1996 U.S. App. LEXIS 6105, 1996 WL 99782, at *5 (6th Cir. Mar. 5, 1996)* (citing *Whittaker v. Care-More, Inc., 621 S.W.2d 395, 396 (Tenn. Ct. App. 1981)*; *D'Andrea v. Plough Sales Corp., No. 1118, 1987 Tenn. App. LEXIS 2864, 1987 WL 15852 (Tenn. Ct. App. 1987))* (internal citation omitted). Even if Plaintiff rightly construed the agreement as being for permanent or long-term employment, he was still an at-will employee and the delay would have breached no contract.

Plaintiff also argues his efforts to meet the hiring criteria—enrolling in the Wacker Institute, maintaining a decent GPA—constitute consideration binding

Defendants to a "for cause" employment relationship. Plaintiff relies heavily on the Court's ruling in *Moore v. Alstom Power Turbomachines, LLC*. There, a plaintiff had been fired for removing scrap materials from his work site and selling them, which he did with the apparent approval of his immediate supervisor. *2013 U.S. Dist. LEXIS 32215, 2013 WL 915555, at *1-2*. When his employer learned of this, the plaintiff was suspended and the employer requested he return the proceeds of the scrap materials. *Id.* The plaintiff alleged his employer **[*36]** promised he would not be terminated if he returned the funds. *Id.* After he turned over $16,443, the plaintiff was fired. *Id.* He then sued his employer for, among other things, breach of contract. The defendant, his employer, moved to dismiss the claim arguing that the plaintiff was an at-will employee because he was employed for an indefinite term.

Although the plaintiff was employed for an indefinite term, the Court denied the defendant's motion. The Court concluded the exchange of more than $16,000 to secure a promise not to terminate the plaintiff was significant enough to preclude dismissal. Under certain circumstances, the Court noted, the exchange of consideration can create an interest in continued employment. *2013 U.S. Dist. LEXIS 32215, [WL] at *5* (citing *Baldwin v. Pirelli Armstrong Tire Corp., 3 S.W.3d 1, 5 (Tenn. Ct. App. 1999)*; *Plumley Rubber Co. v. Alexander, 1989 Tenn. App. LEXIS 598, 1989 WL 105631, at *2 (Tenn. Ct. App. Sept. 12, 1989)*; *Copeland v. Ferro Corp., No. 97-5287, 1998 U.S. App. LEXIS 6030, 1998 WL 152948, at *2 (6th Cir. 1998))*. Important to the Court's analysis "[t]he contours of this agreement [we]re unknown to the Court at th[e] time [it ruled on the motion to dismiss], but on a motion to dismiss the Court must construe Plaintiff's allegations **[*37]** in his favor." *Id.* The Court went on to clarify, "[a]lthough Defendant is correct that employment for an indefinite term renders an employment relationship at will, here Plaintiff alleges

he exchanged over $16,000 for a promise not to terminate his employment. Whether that promise contained terms that prevented application of the at-will doctrine is a question the Court will provide Plaintiff the opportunity to answer with evidence." *Id.*

This case is much different. There is no uncertainty about the agreement at this stage. The Court is aware of all the terms and provisions of the "agreement" between the parties, none of which prevents application of the at-will employment doctrine. No money changed hands. There was no separate agreement, as there was in *Moore*, beyond the employment relationship. Plaintiff was an at-will employee, terminable at any time for any reason, and he has failed to state a breach of contract claim. Accordingly, the Court will **GRANT** Defendants' motion to dismiss this claim.

## 2. Breach of Contract Implied in Law

Plaintiff also alleges the existence of a contract implied in law. "[*HN15*[↑]] A] contract implied in law is 'created by law without the assent of the party bound, [*38] on the basis that [it is] dictated by reason and justice.'" *See ICG Link, Inc. v. Steen, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011)* (quoting *Ferguson v. Nationwide Prop. & Cas. Ins. Co., 218 S.W.3d 42, 50 (Tenn. Ct. App. 2006))*. "A contract implied in law is also referred to as a 'quasi-contract' or an action for 'quantum meruit.'" *Id.* (quoting *Jones v. LeMoyne—Owen College, 308 S.W.3d 894, 905 (Tenn. Ct. App. 2009))*. "A claim for contract implied at law requires '[a] benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement for a recovery . . . is that the enrichment to the defendant must be unjust.'" *Le-Jo Enters., Inc. v.*

*Cracker Barrel Old Country Store, Inc., No. M2013-01014-COA-R3CV, 2013 Tenn. App. LEXIS 753, 2013 WL 6155622, at *7 (Tenn. Ct. App. Nov. 20, 2013)* (quoting *Haynes v. Dalton, 848 S.W.2d 664, 666 (Tenn. Ct. App. 1992))*.

Defendants argue Plaintiff has failed to identify any benefit he conferred upon them. The only benefit Plaintiff alleges is that he and the other prospective [*39] employees "provided Wacker with a 'pipeline' of 'highly skilled' and 'fully trained' persons necessary to operate their new facility in Charleston, Tennessee, when Wacker was ready to open that facility." However, *HN16*[↑]] Tennessee courts have held, absent evidence of underpayment, past services are insufficient "benefit" to support a quasi-contract claim. *See Wilson v. Smythe, No. M2003-00645-COA-R3-CV, 2004 Tenn. App. LEXIS 833, 2004 WL 2853643, at *9 (Tenn. Ct. App. Dec. 10, 2004)*; *see also Aldridge v. City of Memphis, No. 05-2966 B, 2007 U.S. Dist. LEXIS 94472, 2007 WL 4570881, at *5 (W.D. Tenn. Dec. 27, 2007)*. In this case, there could be no underpayment because Plaintiff never actually performed services for Defendants. Thus Plaintiff's purported benefit—hypothetical *future* services—is even less substantial than the past services in *Wilson* and *Aldridge*. Nor is it clear what the value of this benefit would be such that the Court could divest Defendants of it.

Plaintiff has not addressed these issues. Rather, Plaintiff simply argues the Court should let this one by, given that the case is merely at the pleading stage. However, *HN17*[↑]] under the Federal Rules, Plaintiff's complaint must contain "factual content that allows the court to draw the reasonable [*40] inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 677-78*. Plaintiff has failed to identify a benefit of any value he conferred upon Defendants. And the case on which he relies, *EnGenius Entertainment, Inc v. Herenton, 971 S.W.2d 12 (Tenn. Ct. App. 1997)*,

demonstrates the inadequacy of Plaintiff's complaint. In that case, the court specifically noted that the complaint alleged the plaintiff provided the defendants with "valuable information" and a "creative concept." *Id. at 19*. In this case, on the other hand, Plaintiff does not allege he provided Defendants anything beyond hypothetical future services that were never rendered.

Accordingly, the Court concludes Plaintiff has failed to plead a breach of a contract implied in law and will **GRANT** Defendants' motion to dismiss this claim.

### 3. Breach of Contract Implied in Fact

Plaintiff also brings a breach-of-contract-implied-in-fact claim, which is a corollary to the implied-in-law claim. "*HN18*[↑] A contract implied in fact is similar to an express contract, in that it 'arises under circumstances which show mutual intent or assent to contract,' and 'it must be supported by . . . consideration and lawful purpose.'" **[\*41]** *ICG Link, Inc., 363 S.W.3d at 543* (quoting *Jones, 308 S.W.3d at 905*). Here, Plaintiff has alleged the parties entered into an implied contract to a "for cause" relationship. However, Plaintiff merely alleges the relationship was not "at will" given Defendants' representations and the fact that they did not indicate the employment would be at will. Thus Plaintiff has not pleaded mutual assent to this term. Moreover, Plaintiff failed to respond to Defendants' motion on this claim, which the Court construes as waiver of any opposition to its dismissal. Accordingly, the Court will **GRANT** Defendants' motion to dismiss this claim.

### 4. Promissory Estoppel

Plaintiff also brings a promissory estoppel claim. *HN19*[↑] In Tennessee, promissory estoppel is available when the defendant makes "[a] promise which the

promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." *Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982)* (quoting *Restatement (First) of Contracts § 90*). Plaintiffs must show "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably **[\*42]** relied upon the promise to their detriment." *Chavez, 245 S.W.3d at 404*.

However, promissory estoppel is an equitable doctrine and it is not liberally applied in Tennessee. *Id. at 406*. "To the contrary, [Tennessee] limits application of the doctrine to exceptional cases." *Id.* (quoting *Barnes & Robinson Co. v. OneSource Facility Servs., Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006)).*

> The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the . . . promisee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.

*Barnes & Robinson, 195 S.W.3d at 645* (quoting *Calabro v. Calabro, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999))* (emphasis omitted).

Defendants argue Plaintiff's promissory estoppel claim is wholly "barred" by the at-will employment doctrine. And, to be **[\*43]** fair, a number of courts have stated that promissory estoppel does not overcome the presumption of at-will employment. *See, e.g., Adcox v.*

*SCT Prods., No. 01A01-9703-CV-00123, 1997 Tenn. App. LEXIS 703, 1997 WL 638275, at \*4 n.1 (Tenn. Ct. App. Oct. 17, 1997)* ("We likewise conclude that the Employees' allegations of promissory estoppel and fraudulent inducement are insufficient to overcome the presumption of at-will employment."); *see also, e.g., Coker v. Carrier Corp., Inc., No. 4:05-CV-51, 2006 U.S. Dist. LEXIS 33234, 2006 WL 1491247, at \*4 (E.D. Tenn. May 24, 2006)* ("Tennessee courts, however, have rejected the application of promissory estoppel to overcome the presumption of at-will employment.") (citing *Adcox, 1997 Tenn. App. LEXIS 703, 1997 WL 638275, at \*4 n.1*). However, the Court agrees with Plaintiff that Tennessee does not have such a bright-line rule.

The Court finds guidance in a relatively recent recitation of this area of the law in *Chapman v. S. Natural Gas Co., No. 3:09-CV-224, 2011 U.S. Dist. LEXIS 25129, 2011 WL 883918 (E.D. Tenn. Mar. 11, 2011)*. The court there was faced with a promissory estoppel claim in the employment context and the defendant made a similar argument: promissory estoppel is simply unavailable to a plaintiff in the at-will employment context. "Tennessee courts **[\*44]** have recognized that it is very difficult to establish a claim for promissory estoppel in the context of an at-will employment relationship." *2011 U.S. Dist. LEXIS 25129, [WL] at \*5*. However, the court analyzed precedent, including *Chavez v. Broadway Electric Service Corp*, and concluded, "*HN20* [↑] [w]hile a plaintiff may file [a] claim for promissory estoppel that is based upon an at-will employment relationship, the plaintiff will only prevail under exceptional circumstances. In particular, the nature of the employment relationship makes it very difficult to establish 'reasonable reliance' in this context." *2011 U.S. Dist. LEXIS 25129, [WL] at \*6*. The court ultimately held there was no enforceable promise or reasonable reliance and dismissed the claim.

In *Chavez*, discussed above in the context of Plaintiff's intentional misrepresentation claim, the Tennessee Court of Appeals discussed what a plaintiff must demonstrate to establish a promissory estoppel claim in the at-will employment context. As noted, the court held the defendant's representations "that the Oak Ridge construction market was strong and solid, that there was years of work to be done, that overtime would be plentiful, and that anyone with a security clearance would have no difficulty **[\*45]** finding work in Oak Ridge" were "too ambiguous, vague, and nonspecific" to enforce. *Chavez, 245 S.W.3d at 405*. Further, *HN21* [↑] Tennessee courts have limited "the application of promissory estoppel to exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Id. at 407* (internal quotation marks omitted). The facts in *Chavez* did not rise to that level because "there was no proof presented that BESCO was guilty of any conduct that verged on actual fraud, that it acted from improper motive, or that it gained an unconscionable advantage from its actions." *Id*. The trial court had specifically found that none of the misrepresentations was "intentionally false." Considering the record, the Tennessee Court of Appeals concluded,

> [t]he representations upon which the Plaintiffs relied were vague and general descriptions of the job market in Oak Ridge for electricians at the time, and we believe they cannot reasonably be parlayed into enforceable "promises" supporting an action for damages for BESCO's failure to employ the Plaintiffs for an extended period of time. During the parties' employment discussions, BESCO agreed to **[\*46]** employ the Plaintiffs, which it did, although admittedly for a very short period of time in Mr. Davy's case. But as we have discussed, nothing in the facts and equities presented by this case

justifies applying the promissory estoppel doctrine in derogation of both the statute of frauds and Tennessee's at-will employment doctrine. We therefore reverse the judgment of the trial court awarding Mr. Chavez and Mr. Davy damages under the promissory estoppel doctrine.

*Id. at 407-08*.

Here, after considering the allegations in the amended complaint, the Court concludes Plaintiff has pleaded a promissory fraud claim. Unlike *Chavez*, the promises here were not "vague and general descriptions of the job market." Rather, the allegations in the complaint contain affirmative representations that Plaintiff would begin his employment on a specific date, he would be paid a specific amount, and the start date was "set in concrete" and would not change barring "some horrible natural disaster." And, unlike *Chavez*, Defendants in this case did not simply post a flyer seeking prospective employees and then embellish the quality of the market. Defendants in this case created an institute at Chattanooga State, **[*47]** complete with significant public investment, and heralded their program multiple times in local media. They sought out potential employees whom they directed to the Wacker Institute and then met with them on multiple occasions "guaranteeing" them interviews, offering them positions, and holding a ceremony to commemorate their future employment. In order to obtain the positions, these prospective employees enrolled in a narrow and specific degree program that is, according to the complaint, "of absolutely no value to [them] in finding a job in [the] job market."[9] They offered incentives for these employees, including Plaintiff, to refer others to the program. They

allegedly (and repeatedly) misrepresented that the company had already sold two years worth of polysilicon. These were hardly the "vague and general descriptions of the job market" Defendants now claim they were.

Even if these representations were not sufficient, however, Plaintiff also alleges Defendants engaged in fraud and made representations that were "intentionally **[*48]** false." The amended complaint in this case therefore contains allegations of precisely the sort of conduct the *Chavez* court suggested would "justif[y] applying the promissory estoppel doctrine in derogation of . . . Tennessee's at-will employment doctrine." *Id. at 405* (noting "there was no proof presented that BESCO was guilty of any conduct that verged on actual fraud, that it acted from improper motive, or that it gained an unconscionable advantage from its actions").

The Court therefore rejects Defendants' argument that promissory estoppel is unavailable to plaintiffs in the at-will employment context. Moreover, this case involves the sort of allegation Tennessee courts have held may overcome the at-will employment doctrine: intentional, fraudulent conduct. The Court will **DENY** Defendants' motion to dismiss Plaintiff's promissory estoppel claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss (Court File No. 26). The Court will **DISMISS** all of Plaintiff's claims except for his intentional misrepresentation and promissory estoppel claims.

An order shall enter.

/s/ Curtis L. Collier

**CURTIS L. COLLIER**

---

[9] Unlike many of the other prospective employees, Plaintiff sought work in Mississippi following graduation because he was caring for his ill father, who resides there.

Daniel Crowell

UNITED STATES DISTRICT [*49] JUDGE

ORDER

Before the Court is a motion to dismiss filed by Defendants Wacker-Chemie AG, Wacker-Chemie Achte Venture Gmbh, Inc., Wacker Polysilicone North America, LLC, Erika Burk, and Jeff Zierenberg (collectively, "Defendants") (Court File No. 26).[1] Plaintiff Justin Wright ("Plaintiff") responded in opposition (Court File No. 29), and Defendants replied (Court File No. 30). The Court reads Plaintiffs' response to concede that a number of the claims should be dismissed, as he only requests the Court deny Defendants' motion with regard to "his claims of intentional misrepresentation, promissory fraud, breach of express employment contract, breach of contract implied in law, and promissory estoppel."

This case is similar to a number of cases removed from state court beginning in September 2013. All the cases, including this one, involve a [*50] training program at Chattanooga State Community College ("Chattanooga State") that was sponsored by Defendants Wacker-Chemie AG and Wacker Polysilicon North America, LLC, both foreign entities. The plaintiffs' points of contact were two individual defendants, Erika Burk ("Burk") and Jeff Zierenberg ("Zierenberg"), both of whom are residents of Tennessee. Defendants removed all of the cases, alleging Burk and Zierenberg were fraudulently joined in order to defeat diversity jurisdiction and the Court otherwise has subject matter jurisdiction

over the remaining parties. The Court disagreed and remanded the cases to state court. However, this case and one other were brought by non-resident plaintiffs and the presence of Burk and Zierenberg does not defeat diversity.

Plaintiff, like the plaintiffs in the remanded cases, alleges a number of fraud and contract claims related to the training program. Namely, Plaintiff entered the training program based upon assurances that he would receive a position at Defendants' planned polysilicon facility. Defendants argue that these assurances created no employment contract and involved no misrepresentations. For the reasons discussed in this Order's [*51] accompanying memorandum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (Court File No. 26). The Court **DISMISSES** all of Plaintiff's claims except for his intentional misrepresentation and promissory estoppel claims.

SO ORDERED.

ENTER:

/s/ CURTIS L. COLLIER

UNITED STATES DISTRICT JUDGE

End of Document

---

[1] Defendants previously filed motions to dismiss, which was superseded by an amended complaint and a second amended complaint. Defendants' initial motions to dismiss are **DENIED** as **MOOT** (Court File No. 4, 10, 23). Additionally, Plaintiff's motions for an extension of time to respond to the motions to dismiss are also **DENIED** as **MOOT** (Court File No. 12, 20).