EXHIBIT 20

 Caution

As of: February 12, 2022 3:33 AM Z

# Metro. Prop. & Cas. Ins. Co. v. Bell

United States Court of Appeals for the Sixth Circuit

August 17, 2005, Filed

File Name: 05a0720n.06

No. 04-5965

**Reporter**

2005 U.S. App. LEXIS 17825 *; 2005 FED App. 0720N (6th Cir.)

METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, Plaintiff / Counter-Defendant-Appellee, v. TOMMYE BELL, Defendant / Counter-Plaintiff / Third-Party-Plaintiff-Appellant, v. WILLIAM CANTRELL, d/b/a REPUBLIC INSURANCE COMPANY, Third-Party Defendant-Appellee.

**Notice:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE.

## Core Terms

questions, insured, misrepresentation, answers, risk of loss, insurance application, false answer, cancellation, void, argues, filled

## Case Summary

**Procedural Posture**

In a suit brought by plaintiff insurer against defendant insured, seeking a declaration that a homeowner's insurance policy was void under Tenn. Code Ann. § 56-7-103 due to material misrepresentations on the insurance application, the insured appealed from a decision of the United States District Court for the Middle District of Tennessee, which entered summary judgment in favor of the insurer.

**Overview**

The insurer contended that the insured's application materially misrepresented her loss and insurance-cancellation history and that the insurer would not have issued a policy if it had known the truth about the insured's claim history. On appeal from the district court's grant of summary judgment in favor of the insurer, the court held that the district court's ruling was correct because the insured admittedly signed an application with false answers to two questions and nothing suggested that the insurer or its agent told the insured that her false answers were irrelevant. The court found: (1) the insurer reasonably relied upon the application form prior to issuing the policy, even though it was only partially completed; (2) the script on the form was of a readable size and the questions were

prominently placed and, thus, a person of ordinary experience and intelligence would recognize that the questions about the claim and cancellation history were material; and (3) even if the agent mishandled the processing of the form, the insurer would not be precluded from avoiding the policy because the insured attested to the accuracy of her answers when she signed the application.

## Outcome

The court affirmed the district court's decision.

## LexisNexis® Headnotes

Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > Materiality

Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > Warranties

**HN1**[ ] **Claim, Contract & Practice Issues, Policy Cancellation, Denial & Nonrenewal**

See Tenn. Code Ann. § 56-7-103.

Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > Fraudulent Intent

Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > General Overview

**HN2**[ ] **Disclosure Obligations by Insureds, Fraudulent Intent**

Under Tenn. Code Ann. § 56-7-103, an insurer may show either that a misrepresentation was made with the intent to deceive or that the misrepresentation increased the risk of loss.

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

**HN3**[ ] **Jury Trials, Province of Court & Jury**

Whether a misrepresentation increases the risk of loss is a question of law for the court.

Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

**HN4**[ ] **Claim, Contract & Practice Issues, Policy Cancellation, Denial & Nonrenewal**

Under Tennessee law, prior loss history and cancellation of other insurance count as factors that affect the risk of loss.

Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial &

Nonrenewal > General Overview

[HN5][] Claim, Contract & Practice Issues, Policy Cancellation, Denial & Nonrenewal

By signing an insurance application and attesting to its truthfulness, an insured is generally bound to everything the application contains.

> Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

> Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > General Overview

[HN6][] Claim, Contract & Practice Issues, Policy Cancellation, Denial & Nonrenewal

An insurer is entitled to rescind coverage for misrepresentations that increase its risk of loss regardless of whether its agent played a role in the misrepresentation. There can be no recovery on a policy where an insured, failing to read the application, affirms the accuracy of the statements therein contained.

> Contracts Law > ... > Affirmative Defenses > Fraud & Misrepresentation > General Overview

> Contracts Law > Defenses > Ambiguities & Mistakes > General Overview

[HN7][] Affirmative Defenses, Fraud & Misrepresentation

If, without being the victim of fraud, an insured fails to read an insurance contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.

> Contracts Law > ... > Affirmative Defenses > Fraud & Misrepresentation > General Overview

> Insurance Law > Claim, Contract & Practice Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

> Insurance Law > Liability & Performance Standards > Disclosure Obligations by Insureds > General Overview

[HN8][] Affirmative Defenses, Fraud & Misrepresentation

Any misrepresentation that naturally and reasonably influences the judgment of an insurer in making an insurance contract is within the statutory words, "increases the risk of loss," under [Tenn. Code Ann. § 56-7-103]. It is not necessary to find that the policy would not have been issued if the truth had been disclosed.

> Business & Corporate Law > ... > Duties & Liabilities > Knowledge & Notice > Agent Knowledge

> Business & Corporate Law > ... > Duties & Liabilities > Knowledge & Notice > General Overview

[HN9][] Knowledge & Notice, Agent Knowledge

Information known to an agent is imputable to the principal.

> Insurance Law > Claim, Contract & Practice

Issues > Policy Cancellation, Denial & Nonrenewal > General Overview

HN10[↓] **Claim, Contract & Practice Issues, Policy Cancellation, Denial & Nonrenewal**

An insurance applicant is bound by a signature on a completed application that attests to the accuracy of the contents of the application.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > Fraud Claims

Torts > Business Torts > Unfair Business Practices > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

HN11[↓] **Consumer Protection, Deceptive & Unfair Trade Practices**

Allegations of fraud must be pleaded with specificity under *Fed. R. Civ. P. 9(b)*. This requirement applies to allegations of unfair and deceptive acts under *Tenn. Code Ann. § 47-18-109*.

**Counsel:** For METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff - Appellee: Michael P. Mills, Mills & Cooper, Nashville, TN.

For TOMMYE BELL, Defendant - Appellant: William Kennerly Burger, Burger, Siskin, Scott & McFarlin, Murfreesboro, TN.

For WILLIAM CANTRELL dba Republic Insurance Company, Third party - Appellee: Marcia M. Eason, Richard C. Rose, William A. Hullender, Miller & Martin, Chattanooga, TN.

**Judges:** Before: ROGERS and SUTTON, Circuit Judges; FORESTER, District Judge.[*]

**Opinion by:** Sutton

# Opinion

SUTTON, Circuit Judge. Tommye Bell appeals the district court's grant of summary judgment to Metropolitan Property and Casualty [*2] Insurance Company (Metropolitan) and its agent, William Cantrell, a judgment that had the effect of permitting Metropolitan to void Bell's homeowner's insurance policy due to material misrepresentations on her insurance application. Because Bell admittedly signed an application with false answers to two questions and because nothing suggests that Metropolitan or its agent told Bell that those false answers were irrelevant, we affirm.

I.

In 1995, Tommye Bell purchased a house at 607 Hodges Road in Smithville, Tennessee, and acquired homeowner's insurance for her residence from the Farm Bureau. Between 1999 and 2001, Bell filed three insurance claims--two claims arising out of fires relating to lightning strikes and one arising out of a theft--with the Farm Bureau. After Bell filed her second lightning-related claim for damages (and her third claim overall), the Farm Bureau informed her in August of 2001 that it would terminate her policy effective September 1, 2001.

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

After receiving the Farm Bureau's cancellation notice, Bell contacted several local insurance agents to obtain new homeowner's insurance coverage. One of the insurance agents that she contacted, William Cantrell, gave [*3] Bell a quote for homeowner's insurance through Metropolitan. Bell found the quote acceptable and arranged a meeting.

On August 29, 2001, Bell and Cantrell met at Cantrell's office, where Cantrell either completed an insurance application for Bell as she gave him the appropriate information or provided her with a completed application filled out with information she had previously given him over the telephone. The application contained questions about Bell's loss history and insurance cancellation history for the prior three years. *See* JA 59 (copy of the application form with the following question: "Any coverage declined, cancelled or non-renewed during the last 3 years?"); *id.* (listing as another question: "Any losses, whether or not paid by insurance, during the last 3 years at this or at any other location?"). Responding for Bell, Cantrell checked the "No" box beside each of these questions. He left many of the questions--such as whether the property had been inspected, whether it was occupied and other similar questions, none of which are specifically relevant to this case--unanswered.

Bell then read and signed the form, declaring "that the information provided in [it] [*4] is true, complete and correct to the best of [her] knowledge and belief," JA 59, and made an initial payment toward her policy premium. *See also* JA 43 (text of the general conditions of the contract, noting that "this policy is void . . . if [the insured] intentionally conceals or misrepresents any material fact or circumstance or makes false statements or engages in fraudulent conduct relating to this insurance, either before or after a loss").

The responses to the loss-history and insurance-cancellation questions, the parties agree, were incorrect, but the parties disagree over how those errors made their way into the application. According to Bell, she told Cantrell about the cancellation of her Farm Bureau insurance and her lightning-related losses at some point during their interactions, and she did not notice the incorrect responses when she signed the application. Cantrell, by contrast, cannot remember any conversation about the Farm Bureau cancellation.

After the application had been completed, Cantrell may have transmitted the information in the application to Metropolitan via computer. (He cannot remember whether he also sent a signed application to Metropolitan. [*5] ) At Metropolitan, Mary Liggio, a senior underwriter, reviewed the application, did not object to the fact that it was only partially completed and approved it. Metropolitan, through MetLife, issued an insurance policy that became effective on September 1, 2001.

The MetLife policy was in effect on January 6, 2002, when a fire broke out in and damaged Bell's home. Bell submitted a claim in the amount of $ 455,118.36. While investigating the loss, Metropolitan took a sworn statement from Bell, during which it learned of Bell's prior claims and insurance history. Concluding that Bell had failed to complete her insurance application truthfully, Metropolitan terminated the policy and returned Bell's premiums.

On May 23, 2002, Metropolitan filed this declaratory-judgment action, asserting that Bell's insurance application materially misrepresented her loss and insurance-cancellation history and that Metropolitan would not have issued an insurance policy had it known the truth about Bell's claim history. Bell responded by asserting her right to recover under the terms of the policy for the total fire loss and by filing a third-party complaint against Cantrell. The parties agreed to allow [*6] a magistrate judge to preside over the merits

of the case. On February 3, 2004, the magistrate judge granted summary judgment for Metropolitan and Cantrell.

II.

Under Tennessee law: HN1[↑]

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefore, by the insured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, [1] unless such misrepresentation or warranty was made with actual intent to deceive, or [2] unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103; see also id. § 56-6-147 ("Every insurance agent . . . [shall] be regarded as the agent of the insurer and not the insured or the insured's beneficiary."); State Farm General Ins. Co. v. Wood, 1 S.W.3d 658, 661 (Tenn. Ct. App. 1999) (noting that HN2[↑] an insurer may show *either* that the misrepresentation was made with the intent to deceive *or* that the misrepresentation increased the risk of loss). HN3[↑] "Whether a misrepresentation increased the risk of loss . . . is a question of law for the court. [*7] " Id. at 661 n.5; Loyd v. Farmers Mut. Ins. Co., 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992); Womack v. Blue Cross & Blue Shield of Tennessee, 593 S.W.2d 294, 295 (Tenn. 1980). HN4[↑] Under Tennessee law, prior loss history and cancellation of other insurance count as factors that affect the risk of loss. See Wood, 1 S.W.3d at 662; Medley v. Cimmaron Ins. Co., 514 S.W.2d 426, 428 (Tenn. 1974).

HN5[↑] By signing an insurance application and attesting to its truthfulness, an insured is generally bound to everything the application contains. See Beasley v. Metro. Life Ins. Co., 190 Tenn. 227, 229 S.W.2d 146, 147 (Tenn. 1950) (holding that an insured's beneficiary was bound by the application when "the agent read out the questions and [the insured] answered them truthfully, but that without her knowledge the agent changed the answers to the questions" and the insured "signed the false application but did not read it"); id. at 148 ("The foregoing authorities deal with the phase of the law of contracts where one who has negligently signed a contract without reading it, seeks to avoid his obligation, [*8] but clearly the converse would be even more unjust and unreasonable,--that the Courts should impose an obligation, on an innocent Defendant who was led to make the contract on the careless misrepresentation of the [insured]."); McPherson v. Fortis Ins. Co., No. M2003-00485-COA-R3-CV, 2004 Tenn. App. LEXIS 18, at *18-19 (Tenn. Ct. App. Jan. 12, 2004) HN6[↑] ("An insurer is entitled to rescind coverage for misrepresentations that increase its risk of loss regardless of whether the agent played a role in the misrepresentation. . . . There can be no recovery on the policy where the insured, failing to read the application, affirms the accuracy of the statements therein contained."); Giles v. Allstate Ins. Co., 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) HN7[↑] ("If, without being the victim of fraud [the insured] fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.") (quoting Beasley, 229 S.W.2d at 148); Hardin v. Combined Ins. Co., 528 S.W.2d 31, 37 (Tenn. Ct. App. 1975) [*9] (same); compare Cook v. Life Investors Ins. Co. of Am., 126 Fed. Appx. 722, 2005 U.S. App. LEXIS 5251, at *12 (6th Cir. 2005) (noting that, under Kentucky law, "an insurance applicant who had not read her application before signing it was not responsible for the false answers inserted by an agent").

Bell admits that her application contained a misrepresentation that increased Metropolitan's risk of loss, but nevertheless argues that Metropolitan could not void her policy under § 56-7-103 in this instance.

Bell first argues that Metropolitan could not reasonably rely on the partially completed application form prior to issuing the policy because (1) the omissions of answers to some of the questions on the application form placed Metropolitan on notice that the entire application form was inaccurate, (2) Metropolitan never established that Cantrell sent it a signed version of Bell's application and (3) Metropolitan should have discovered Bell's insurance history from a "prior claims" database. As to the last argument, Bell adds that Cantrell indicated that Metropolitan could have received information about her prior claims from a database called "CLUE," and thus [*10] must have known about her Farm Bureau claims prior to approving and issuing the policy.

As an initial matter, it is far from clear under Tennessee law that an insurer must show that it relied on an individual's answers in her application. See Loyd, 838 S.W.2d at 545 HN8[] ("Any misrepresentation which naturally and reasonably influenced the judgment of the insurer in making the contract is within the statutory words, 'increases the risk of loss.' . . . It is not necessary to find that the policy would not have been issued if the truth had been disclosed.") (citations omitted). But even if one assumes that a reliance requirement exists, the fact that the application does not record Bell's answers to all of the stated questions does not mean that Metropolitan could not reasonably rely on the questions that Bell did answer. Nor does the fact that Metropolitan did not receive a signed version of Bell's application mean that it could not rely on the computer-transmitted answers that Bell gave on that application and Cantrell's assurances that Bell had signed the application. Cf. Griffith Motors, Inc. v. Parker, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982) HN9[] (information [*11] known to an agent is imputable to the principal). Neither does Bell's speculation that Metropolitan could have discovered her prior claims through a database before granting her policy excuse her failure to tell the truth on her application.

Bell next argues that the questions on the insurance application were in fine print that is so obscure in form and structure as to be nonbinding. In Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc., 730 S.W.2d 634 (Tenn. Ct. App. 1987), the Tennessee Court of Appeals invalidated a "fine-print" exculpatory clause that purported to release a repair shop from any liability if the shop left the plaintiff's vehicle in an unattended area and the car was stolen. In finding the clause nonbinding, the court stated that "there is no indication in the record that the provision contained in the fine print was pointed out to the appellee or that a person of ordinary intelligence and experience would expect that the signed writing relieved the appellant of all liability for damages which might occur while the automobile was in its possession." Id. at 638. A cursory review of the application in this case reveals that the [*12] script is of a readable size and the questions are prominently placed. Here, unlike in Parton, a "person of ordinary intelligence and experience" would recognize that the questions about claim and cancellation history were material.

In the same section of her brief, Bell also relies on Griffin v. Shelter Mutual Insurance Co., 18 S.W.3d 195 (Tenn. 2000), and Osborne v. Mountain Life Insurance Co., 130 S.W.3d 769 (Tenn. 2004). But the familiar principle that these cases follow--that courts should construe an ambiguous insurance contract against its drafter--is inapplicable here, as Bell herself concedes that the relevant questions were unambiguous.

In a variation on these themes, Bell argues that her failure to initial the policy beside the loss-history question rendered the answer to the question

incomplete and thus nonbinding. Under *Provident Life & Accident Insurance Co. v. Rimmer*, 157 Tenn. 597, 12 S.W.2d 365 (Tenn. 1928), and *Phoenix Mutual Life Insurance Co. v. Raddin*, 120 U.S. 183, 30 L. Ed. 644, 7 S. Ct. 500 (1887), Bell notes, "where upon the face of [an insurance] application, a question appears to be not answered at all, or to be imperfectly [*13] answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial," *id. at 190*. But here Bell's answers to the material questions were complete and false, and her signature at the bottom of the application ratified the error. Under these circumstances, Bell cannot claim that Metropolitan relied on an incomplete answer in voiding the policy simply because the loss-history question lacked her initials. Nor, at any rate, could this argument (even if successful) tenably affect the judgment in this case given that the other false answer (concerning Bell's cancellation-of-insurance history) did not have an "initials" requirement.

Bell next argues that Cantrell's mishandling of the processing of the form precludes Metropolitan from avoiding the policy. Under Tennessee law, a principal may be estopped in some circumstances from relying on errors or misrepresentations in an application that its agent completed. In *Bland v. Allstate Insurance Co.*, 944 S.W.2d 372 (Tenn. Ct. App. 1996), an insurance agent presented a blank application to the insured, who [*14] signed the form and returned it to the agent for completion. The court held that "an applicant who innocently signs an application in blank, trusting the agent to fill in the correct information, is not responsible for misrepresentations made by the agent, even if those misrepresentations increase the risk of loss on the policy for the insurance company." *Id. at 375*; see also *Ray v. Tenn. Farmers Mut. Ins. Co.*, No. W1999-00698-COA-R3-CV, 2001 Tenn. App. LEXIS 70, at *14 (Tenn. Ct. App. Feb. 1, 2001) (holding that policy could not be voided when applicant told the truth to the agent, the agent assured him that he did not need to disclose previous fire losses and the agent filled out the application with false answers). But *Bland* also recognized that an applicant would be responsible if "the applicant told the truth to the agent, the agent then filled out the application with false answers, and the applicant signed the application containing the misrepresentations without reading it." 944 S.W.2d at 378. And in finding that an insurance company could not void a policy, *Ray* specifically distinguished cases in which "the applicant told [*15] the truth to the agent; the agent filled out the application with false answers; and the applicant signed the application without reading it," 2001 Tenn. App. LEXIS 70, at *15, circumstances that are present here. Bell has alleged neither that she signed a blank form that Cantrell later completed, nor that Cantrell assured her that she could submit incorrect answers to the relevant questions. See *Osborne, 130 S.W.3d at 774*. Her claim thus falls within Tennessee's general rule that HN10[↑] an insurance applicant is bound by a signature on a completed application that attests to the accuracy of the contents of the application. See *Beasley, 229 S.W.2d at 147*; *McPherson, 2004 Tenn. App. LEXIS 18, at *18-19*; *Giles, 871 S.W.2d at 156*; *Hardin, 528 S.W.2d at 37*. And, for similar reasons, Bell cannot bring a negligence claim directly against Cantrell. See *McPherson, 2004 Tenn. App. LEXIS 18, at *13-14*.

Bell, lastly, argues that Cantrell's handling of the partially completed application raises a claim under the *Tennessee Consumer Protection Act* as an "unfair or deceptive act or practice. [*16] " See *Tenn. Code Ann. § 47-18-109*. But Bell has at most suggested in her pleadings and on appeal that Cantrell acted negligently in completing her application and that Metropolitan wrongly rejected her claim. Because HN11[↑]

allegations of fraud must be pleaded with specificity, see, e.g., Fed. R. Civ. P. 9(b), because that requirement applies to allegations of unfair and deceptive acts under § 47-18-109, see Harvey v. Ford Motor Credit Co., 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999), and because Bell has not satisfied this pleading requirement, this claim also fails as a matter of law.

III.

For these reasons, we affirm.

End of Document