UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:21-cv-00923 |
| | ) |
| v. | ) District Judge Richardson |
| | ) |
| THE LAMPO GROUP, LLC, et al, | ) Magistrate Judge Holmes |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF
### SECOND MOTION TO DISMISS BY DEFENDANT, THE LAMPO GROUP, LLC

Defendant, The Lampo Group, LLC, ("Lampo") by and through the undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.01, files this memorandum of law in support of its Second Motion to Dismiss (Doc. #30).

**I.     INTRODUCTION**

This is an employment case. Plaintiff has sued his former employer, Lampo, and its CEO, Dave Ramsey ("Ramsey"). Plaintiff's First Amended Complaint (Doc. #21) represents his *fourth* attempt to assert claims against Defendants.[1] As Lampo reasonably interprets the First Amended Complaint, Plaintiff asserts the following claims against the company:

- Count I – Retaliatory discharge in violation of the Tennessee Public Protection Act, T.C.A. §50-1-304, ("TPPA")

- Count II – Religious discrimination in violation of Title VII of the Civil Rights

---

[1] On April 15, 2021, Plaintiff filed an original complaint against Defendants in the Chancery Court for Williamson County, Tennessee. On June 28, 2021, Plaintiff filed an amended complaint against Defendants in the Chancery Court for Williamson County, Tennessee, which he later voluntarily dismissed on August 24, 2021. On December 13, 2021, Plaintiff filed another complaint (Doc. #1) against Defendants in this Court. And on March 4, 2022, Plaintiff filed the First Amended Complaint presently before the Court.

Act of 1964, 42 U.S.C. §2000e, *et seq.*, ("Title VII")

- Count III – Religious discrimination in violation of the Tennessee Human Rights Act, T.C.A. §4-21-101, *et seq,* ("THRA")
- Count IV – Fraud
- Count V – Promissory estoppel
- Count VI – Deceptive representations and false pretenses in violation of T.C.A. §50-1-102

(First Amended Complaint at ¶¶ 330-380). All of these claims should be dismissed.

## II. LEGAL STANDARD

The Court recently restated the legal standard for a motion to dismiss under Rule 12(b)(6) in *Hasting v. First Community Mortgage*:

> "[T]he Court must take all of the factual allegations in the complaint as true. [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.* at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz*). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.
>
> In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 , 127 S. Ct. 1955 , 167 L. Ed. 2d 929 (2007), it may be appropriate to 'begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.' *Iqbal*, 556 U.S. at 680 . Identifying and

2

setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include 'bare assertions,' formulaic recitation of the elements, and 'conclusory' or 'bald' allegations. *Id.* at 681. The question is whether the remaining allegations — factual allegations, i.e., allegations of factual matter — plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683."

2018 U.S. Dist. LEXIS 189742 at *4-6 (M.D. Tenn. Nov. 6, 2018).[2]

### III.  PLAINTIFF'S CLAIMS AGAINST LAMPO SHOULD BE DISMISSED

Plaintiff's First Amended Complaint fails to state a claim against Lampo and should be dismissed. Lampo will address each of Plaintiff's claims below, in turn.

#### A.  Count I – Tennessee Public Protection Act

Plaintiff claims that Lampo terminated his employment in violation of the TPPA because he "refused to participate in and/or refused to remain silent about Lampo's requiring non-essential workers to be present in their office against state-mandated COVID-19 'stay at home', mask, and social distancing precautions." (First Amended Complaint at ¶¶ 330-333).

The TPPA codified, abrogated, and superseded Tennessee's common law theory of retaliatory discharge. T.C.A. §50-1-304(g). Under the TPPA, "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. §50-1-304(b). Termination for refusal to participate and termination for refusal to remain silent are distinct claims under the TPPA. Plaintiff has pled both.

##### 1.  *No Illegal Activity*

Plaintiff's entire TPPA claim should be dismissed because he has not alleged that Lampo engaged in any illegal activities or activities that he reasonably believed to be illegal. *See, e.g.,*

---

[2] Lampo has attached a copy of this unpublished decision as Exhibit 1.

3

*Richmond v. Vanguard Healthcare Servs., LLC,* 2016 Tenn. App. LEXIS 66 at *16-27 (Tenn. Ct. App. Jan. 29, 2016).[3]

The section of Plaintiff's First Amended Complaint primarily devoted to Lampo's COVID-19 response contains many criticisms, but no allegations of actual or reasonably perceived violations of law:

- Lampo spoke "against other actors taking preventative COVID-19 measures." (First Amended Complaint at ¶128).

- Lampo hosted "an on-site all employee meeting despite Governor Lee's Executive Order #14 *discouraging* events of 250 people or more." (Id. at ¶133) (emphasis added).

- Lampo declined "to implement any of Governor Lee's or the Center for Disease Control's *recommended* COVID-19 precautions…." (Id. at ¶159) (emphasis added).

- Lampo refused "to follow COVID-19 mask and social distancing *guidelines*." (Id. at ¶321) (emphasis added).

Indeed, to the contrary, Plaintiff's First Amended Complaint describes Lampo as very deliberately staying within bounds:

- In response to Governor Lee's March 20, 2020 stay-at-home order, Lampo announced that "the entire company would be working from home until further notice due to federal and state regulations." (Id. at ¶¶ 167-168).

- Lampo exploited a "loophole in order to force the documentary team to work onsite." (Id. at ¶¶ 171-175).

---

[3] Lampo has attached a copy of this unpublished decision as Exhibit 2.

- After Governor Lee's stay-at-home order expired on April 30, 2020, "Lampo employees were encouraged to begin working at the office again." (Id. at ¶252).
- All employees were required to return to the office starting May 4, 2020. (Id. at ¶253).
- Lampo moved a large event from Orlando, Florida to Franklin, Tennessee because Orlando had a mask mandate, Franklin did not, and Lampo wanted the event to be mask-free. (Id. at ¶¶ 276-281).

Without supporting allegations of actual or reasonably perceived violations of law, Plaintiff's entire TPPA claim should be dismissed.

### 2. *Refusal to Remain Silent*

Plaintiff's "refusal to remain silent" TPPA claim should be dismissed because he failed to report out. To maintain a TPPA claim under a "refusal to remain silent" theory, it is well established that Plaintiff must have reported his concerns regarding "Lampo's requiring non-essential workers to be present in their office against state-mandated COVID-19 'stay at home', mask, and social distancing precautions" to someone outside the company. *See, e.g., Haynes v. Formac Stables, Inc.,* 463 S.W.3d 34, 40-41 (Tenn. 2015). Plaintiff did not do that.

### 3. *Refusal to Participate*

Plaintiff's "refusal to participate" TPPA claim should also be dismissed because he was motivated by a private rather than public purpose. The TPPA protects employees who refuse to participate in activities that they reasonably believe to be illegal, so long as their refusal to participate implicates a public purpose that should be protected and not just their own private interests. *See, e.g., Williams v. Greater Chattanooga Pub. TV Corp.,* 349 S.W.3d 501, 515 (Tenn. Ct. App. 2011); *Murden v. Wal-Mart,* 2021 U.S. Dist. LEXIS 42748 at *8-10 (W.D.

Tenn. March 8, 2021)[4]; *Hayes v. Elmington Prop. Mgmt.,* 2019 U.S. Dist. LEXIS 226377 at *29-32 (W.D. Tenn. Dec. 20, 2019)[5]; *Hall v. Wal-Mart Stores, Inc.,* 2017 U.S. Dist. LEXIS 75208 at *6-11 (M.D. Tenn. May 16, 2017).[6]

Plaintiff began working from home on or about March 17, 2020, purely out of private concerns regarding his family's health and approximately two weeks before Governor Lee closed nonessential businesses via Executive Orders No. 22 and 23 on March 30, 2020 and April 2, 2020 respectively. (First Amended Complaint at ¶¶ 130-193). Plaintiff's actions, based on private concerns regarding his own health, his family's health, and his religious and other beliefs, cannot form a TPPA claim. *See, e.g., Hayes* at *30-31 (employee who reported marijuana use because it was illegal and against his morals and health was motivated by private concerns, not public interest).

### B. Count II – Title VII & Count III – THRA

Plaintiff has asserted a religious discrimination claim against Lampo under Title VII and the THRA[7]. There are two types of religious discrimination claims available under Title VII— general religious discrimination claims and religious accommodation claims. The Court recently explained the differences between them in *EEOC v. Publix Super Mrkts., Inc.,* 481 F. Supp. 3d 684 (M.D. Tenn. 2020). General religious discrimination and religious accommodation claims share the first two elements: (1) the plaintiff holds a sincere religious belief that conflicts with an

---

[4] Lampo has attached a copy of this unpublished case as Exhibit 3.

[5] Lampo has attached a copy of this unpublished case as Exhibit 4.

[6] Lampo has attached a copy of this unpublished case as Exhibit 5.

[7] Religious discrimination claims under Title VII and the THRA are analyzed the same way, *see, e.g., Burdette v. Fed. Express Corp,* 367 Fed. Appx. 628, 632 (6th Cir. 2010), so Counts II and III of Plaintiff's First Amended Complaint should be dismissed for the same reasons.

6

employment requirement and (2) the plaintiff informed the employer about the conflict. *Id.* at 692-693. While it is not clear from the First Amended Complaint whether Plaintiff is asserting a general religious discrimination claim or religious accommodation claim against Lampo, for purposes of this Motion to Dismiss, it is irrelevant because either claim fails for the same reasons.

Title VII prohibits discrimination because of religious belief, not mere conduct. In *Pedreira v. Ky. Baptist Homes for Children, Inc.*, the employer terminated a lesbian's employment because she violated the employer's prohibition against homosexuality. 579 F.3d 722 (6th Cir. 2009). There was no dispute that the employer prohibited homosexuality for religious reasons nor that the employee was terminated for being a lesbian. *Id.* at 727-28. The Sixth Circuit distinguished, however, between the employee's sexual orientation and religious beliefs regarding homosexuality. *Id.* The court refused to charge the employer with knowledge that the employee's conduct and religious beliefs were aligned. *Id.*

In *EEOC v. Abercrombie & Fitch Stores, Inc.*, the Supreme Court explained that the focus of a religious discrimination case under Title VII should be the employer's motive. 575 U.S. 768, 772 (2015). The Court held that while a *per se* knowledge requirement cannot be added to the statutory language requiring only "motive," the motive requirement arguably cannot be met "unless the employer at least suspects that the practice in question is a religious practice…." *Id.* at FN 3. In Justice Alito's concurring opinion, he noted that "an employer cannot be held liable for taking an adverse action because of an employee's religious practice unless the employer knows that the employee engaged in the practice for a religious reason." *Id.* at 777.

In this case, Plaintiff describes his sincerely held religious beliefs as (1) Christian, (2) "caring for family and doing unto others as you would have them do unto you," (3) "possess[ing]

7

a religious devotion to maintaining the health, safety, and wellbeing of his children and wife," and (4) "a respectful treatment for the safety of others and his community." (First Amended Complaint at ¶¶ 15-16, 35-36). Plaintiff further alleges that he "expressed his religious devotion to these values during the interview process" when he was applying for employment with Lampo. (Id. at ¶38). Plaintiff alleges that his religious beliefs required him to "heed the advice of science to protect his family from a deadly disease" though he does not allege that he expressed this particular belief to Lampo. (Id. at ¶155). Plaintiff also alleges that "[d]espite the growing public concern for safety and need to exercise COVID-19 precautions, [Lampo leaders] continued to express their belief that these measures were not aligned with the religious principles held by Ramsey Solutions." (Id. at ¶128). For the first time, Plaintiff alleges in the First Amended Complaint that during several unspecified meetings during and after March 2020 he expressed that Lampo's "current COVID-19 policies were at odds with his religious beliefs and created strife in his family life." (Id. at ¶248). Plaintiff's religious discrimination claim is summarized in Paragraph 345 of the Complaint: "Lampo's termination of Plaintiff was motivated by his refusal to adhere to Lampo's particular religious views and abandon his own on COVID…."

    Like the employee in *Pedreira*, Plaintiff failed to give Lampo notice of his sincerely held religious belief with respect to COVID-19. Instead, he simply alleges that he told Defendant that its policies on COVID-19 were contrary to his unspecified religious beliefs. Without more, Plaintiff's contrary views on COVID-19 could have been based on his scientific views, political views, or simple desire to work at home rather than the office. Plaintiff alleges only that during meetings in March 2020 and afterward, he made bald statements that Lampo's COVID-19 policies were at odds with his religious beliefs. After filing four iterations of complaints against

8

Lampo, Plaintiff has still not alleged that he put Lampo on notice of a specific *sincerely held religious belief* that was at odds with Lampo's COVID-19 policies. Whatever sincere religious beliefs Plaintiff held, it certainly was not obvious that his divergent views on Lampo's COVID-19 policies were based on religious rather than secular considerations. *See e.g. Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) (holding that the timing of an employee's religious pilgrimage was not part of her sincerely held religious belief and that Title VII protection does not extend to secular preferences). Lampo could not have known whether Plaintiff's COVID-19 concerns were secular or religious without some further explanation from Plaintiff which did not happen. If after four complaints, Plaintiff's sincerely held religious belief is still not obvious, it could not have been obvious to Lampo in 2020.

Plaintiff has failed to plead any allegations that he (1) held a sincere religious belief that conflicted with a requirement of Lampo or (2) informed Lampo about the conflict as required by this Court in *Publix* and the Sixth Circuit in *Bolden v. Lowes Home Centers, LLC,* 783 Fed. Appx. 589, 597 (6th Cir. 2019). Thus, Plaintiff fails to state a claim for religious discrimination under Title VII and the THRA and those claims should be dismissed.

### C. Count IV – Fraud

Plaintiff has accused Lampo of fraud. Fraud is synonymous with intentional or fraudulent representation, *see, e.g., Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 FN1 (Tenn. 1999), and consists of the following six elements:

1. A representation made of an existing or present fact;
2. The representation was false when made;
3. The representation was in regard to a material fact;
4. The false representation was made knowingly or recklessly without regard for its

9

truth;

5. Plaintiff reasonably relied upon the misrepresented material fact; and

6. Plaintiff suffered damage as a result of the misrepresentation.

*See, e.g., PNC Multifamily Capital Institutional Fund XXVI LP v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

Plaintiff claims that Lampo made the following fraudulent misrepresentations:

- Statement No. 1: "Plaintiff would edit features and help create their new film department."

- Statement No. 2: "[Lampo] was [sic] not 'cult like' in the way they operated."

- Statement No. 3: "[Lampo] operated a 'drama free' workplace."

- Statement No. 4: "Lampo had been voted 'best place to work' for over 10 years in a row by their own employees without interference from management."[8]

- Statement No. 5: "[Lampo] was family friendly and would allow Plaintiff to spend time with his family without interference from Defendants."

- Statement No. 6: Plaintiff could work from home without adverse employment action.

(First Amended Complaint at ¶¶ 357, 360). There are several independent bases for dismissing Plaintiff's fraud claims against Lampo.

### 1. *Time-Barred*

First, Plaintiff's fraud claims should be dismissed because they are time-barred. In

---

[8] Plaintiff attributes this statement to both Ramsey and Lampo. Plaintiff alleges that Ramsey made this statement "on many occasions on his radio show and in other media outlets." (First Amended Complaint at ¶47). Apparently, Ramsey made these statements *before* Plaintiff's employment with Lampo because Plaintiff claims to have "inquired about [them] during the interview process." (Id. at ¶48).

10

Tennessee, the statute of limitations for fraud depends on the nature of the damage claimed—one year for personal injury, three years for property injury. *See, e.g., Evans v. Walgreen Co.,* 813 F. Supp. 2d 897, 934-35 (W.D. Tenn. 2011); T.C.A. §§ 28-3-104, 28-3-105. Plaintiff's fraud claims against Lampo are based on alleged statements (i) about his at-will employment with the company, (ii) made before or during his employment with the company, (iii) that he discovered to be untrue during his employment with the company. Tennessee does not recognize a property interest in at-will employment, so Plaintiff's fraud claims against Lampo describe personal injuries subject to a one-year statute of limitations. *See, e.g., Evans* at 934-35; T.C.A. §28-3-104.

Tennessee has adopted the discovery rule to determine when fraud claims accrue. *See, e.g., Chunn v. Southeast Logistics, Inc.,* 2018 U.S. Dist. LEXIS 217361 at *4-6 (W.D. Tenn. Dec. 28, 2018).[9] Per the discovery rule, the statute of limitations associated with each of the six statements cited in Plaintiff's First Amended Complaint began to run when he discovered or should have discovered that the statement was false. *Id*. Plaintiff did not need to know the full extent of each fraudulent statement to trigger its statute of limitations, only that some wrong had occurred. *Id*. Moreover, where a fraud claim is based on multiple misrepresentations that give rise to different injuries, the timeliness of each misrepresentation must be assessed individually. *Alsbrook v. Concrode Career Colls., LLC*, 469 F. Supp. 3d 805 (W.D. Tenn. 2020). A fraud claim may be time-barred with respect to some misrepresentations and timely with respect to others. *Id*.

Plaintiff's fraud claims against Lampo are time-barred. Accepting Plaintiff's allegations in the First Amended Complaint as true, he discovered or should have discovered that all six

---

[9] Lampo has attached a copy of this unpublished case as Exhibit 6.

statements comprising his fraud claims against Lampo were false before April 8, 2020[10]:

- **Statement No. 1: "Plaintiff would edit features and help create their new film department."**
    - Plaintiff alleges that Lampo made this statement before his employment began on August 12, 2019. (First Amended Complaint at ¶¶ 357-359).
    - However, Plaintiff alleges that Lampo informally demoted him from Senior Editor to Assistant Editor on March 20, 2020, and then ignored him until April 9, 2020. (Id. at ¶¶ 154-181).
- **Statement No. 2: "[Lampo] was [sic] not "cult like" in the way they operated."**
    - Plaintiff alleges that Lampo made this statement before his employment began on August 12, 2019. (Id. at ¶¶ 30-33, 42, 50, 357-359).
    - However, Plaintiff alleges that Lampo "maintained a cult-like attitude regarding Mr. Ramsey" throughout his entire employment with the company. (Id. at ¶316).
    - Plaintiff also alleges that he was "indoctrinated" by Lampo during onboarding, which took place during his first three days of employment in August 2019. (Id. at ¶¶ 54-66).
- **Statement No. 3: "[Lampo] operated a 'drama free' workplace."**
    - Plaintiff alleges that Lampo made this statement before his employment began on August 12, 2019. (Id. at ¶¶ 50, 298, 357-359).
    - However, Plaintiff alleges that Lampo "consistently provided a dramatic workplace atmosphere…." (Id. at 299).

---

[10] Plaintiff and Lampo entered into a tolling agreement effective April 8, 2021, which remained in effect until Plaintiff filed his original complaint in the Chancery Court for Williamson County, Tennessee, on April 15, 2021.

- **Statement No. 4: "Lampo had been voted 'best place to work' for over 10 years in a row by their own employees without interference from management."**
    - Plaintiff alleges that Lampo made this statement before his employment began on August 12, 2019. (Id. at ¶¶ 50, 357-359).
    - The First Amended Complaint does not allege when Plaintiff discovered this statement to be false. However, Lampo notes that Inc. Magazine required employees to complete the 2020 Best Workplaces survey by February 18, 2020.[11] So, if Lampo interfered with employees' completion of that survey, it must have occurred on or before February 18, 2020. Lampo asks the Court to exercise its discretion to take judicial notice of this date per Rule 201 of the Federal Rules of Evidence. *See, e.g., Schuh v. HCA Holdings, Inc.,* 947 F. Supp. 2d 882, 885 FN2 (M.D. Tenn. 2013).
- **Statement No. 5: "[Lampo] was family friendly and would allow Plaintiff to spend time with his family without interference from Defendants."**
    - Plaintiff alleges that Lampo made this statement before his employment began on August 12, 2019. (First Amended Complaint at ¶¶ 43-45, 50, 327).
    - However, after his employment began, Plaintiff alleges that Lampo "constantly harassed him about his home life" and "consistently told him he needed to get his wife 'on the same page.'" (Id. at ¶¶ 328-329).
- **Statement No. 6: "Defendants knowingly made false statements about Plaintiff's**

---

[11] https://events.inc.com/bwp2020. This web page was active as of March 15, 2022. However, Lampo has attached a pdf version as Exhibit 7 in case the web page or that link are subsequently taken down.

**ability to work from home without adverse employment action."**

- o Plaintiff alleges that Lampo made these statements on March 17, 2020. (Id. at ¶¶ 160-163).

- o However, on March 20, 2020, Plaintiff alleges that Lampo contradicted its earlier position, expressed opposition to him working from home and a preference that he work in the office instead, and demoted him for his decision to continue working from home. (Id. at ¶¶ 167-180).

Even accepting Plaintiff's allegations regarding the six statements as true, Plaintiff clearly knew or should have known that they were false before April 8, 2020.

### 2. *Materiality*

Second, Plaintiff's fraud claims should be dismissed because none of the six statements were sufficiently material to be actionable. To be material, a misrepresentation must have been so significant that it determined the conduct of the party seeking relief. *See, e.g., Grissim v. Powell Constr. Co.,* 1999 Tenn. App. LEXIS 413 at *8-9 (Tenn. Ct. App. June 25, 1999)[12]; *Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705, 709-10 (Tenn. Ct. App. 1953). The materiality of a misrepresentation is a question of law for the Court. *Grissim* at *8-9.

All six statements identified by Plaintiff were vague, subjective, and/or collateral to the primary terms and conditions of his employment with Lampo. Nor were any of the statements a guarantee of future circumstances. As an at-will employee of Lampo, Plaintiff's employment was subject to termination by Lampo at any time for any or no reason. *See, e.g., Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 716 (Tenn. 1997). So, it is simply not plausible for Plaintiff to argue that those six statements were sufficiently material to be outcome

---

[12] Lampo has attached a copy of this unpublished case as Exhibit 8.

determinative.

### 3. Reasonable Reliance

Third and for similar reasons, Plaintiff's fraud claims should be dismissed because none of the six statements could have possibly induced reasonable reliance. Tennessee's strong presumption in favor of at-will employment and the inherently changeable nature of at-will employment make it extremely difficult for employees to maintain materiality and reasonable reliance-based claims like fraudulent misrepresentation and promissory estoppel. *See, e.g., Koch v. Lightning Transp., LLC*, 2015 U.S. Dist. LEXIS 707 at *22-23 (M.D. Tenn. Jan. 6, 2015)[13]; *Wright v. Wacker-Chemie AG*, 2014 U.S. Dist. LEXIS 105337 at *43-45 (E.D. Tenn. Aug. 1, 2014)[14]; *Chapman v. Southern Natural Gas Co.,* 2011 U.S. Dist. LEXIS 25129 at *13-15 (E.D. Tenn. Mar. 11, 2011).[15] A reasonable person would not have relied upon those six statements to make the weighty decision to relocate his entire family from California to Tennessee for an at-will position that paid $150,000 less than his job in California.

### D. Count V – Promissory Estoppel

Plaintiff has also asserted promissory estoppel claims against Lampo alleging that "Lampo made promises to [him] regarding the conditions of his future employment including limited interference with [his] family time and a strict 40-hour work week." (First Amended Complaint at ¶354). These claims should be dismissed for two independent reasons.

First, Plaintiff's promissory estoppel claims are time-barred. The statute of limitations for

---

[13] Lampo has attached a copy of this unpublished case as Exhibit 9.

[14] Lampo has attached a copy of this unpublished case as Exhibit 10.

[15] Lampo has attached a copy of this unpublished case as Exhibit 11.

15

promissory estoppel varies depending on the gravamen of the claim. *See, e.g., Precision Tracking Sols., Inc. v. Spireon, Inc.,* 2014 U.S. Dist. LEXIS 92255 at *11-16 (E.D. Tenn. July 7, 2014).[16] Here, Plaintiff's promissory estoppel claims center around at-will employment and the same allegations as his fraud claims, so the gravamen is fraud and the applicable statute of limitations is one year. After Plaintiff started working at Lampo, Plaintiff alleges that the company "constantly harassed him about his home life" and "consistently told him he needed to get his wife 'on the same page.'" (First Amended Complaint at ¶¶ 328-329). Accepting Plaintiff's allegations as true, it appears that his promissory estoppel claims accrued from the inception of his employment, but certainly well before April 8, 2020.

Second, Plaintiff's promissory estoppel claims are completely foreclosed by Tennessee's presumption of at-will employment. Tennessee courts disagree over whether an at-will employee can ever assert promissory estoppel given the need for reasonable reliance. *Wright* at *40-43. Even supportive courts acknowledge that promissory estoppel can only be applied to at-will employment relationships in exceptional circumstances, like where an enforceable promise has been made and failure to enforce that promise would effectively perpetuate a fraud upon the employee and/or confer an unconscionable advantage upon the employer. *See, e.g., Id.*; *Chavez v. Broadway Electric Serv. Corp.*, 245 S.W.3d 398, 404-408 (Tenn. Ct. App. 2007). Promises of limited interference with family time and a strict 40-hour work week are simply not cognizable under even the most basic formulation of promissory estoppel, much less the narrower version applicable to at-will employment.

### E. Count VI – Deceptive Representations and False Pretenses

Lastly, Plaintiff claims that Lampo violated T.C.A. §50-1-102. This relatively obscure

---

[16] Lampo has attached a copy of this unpublished case as Exhibit 12.

statute makes it "unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement." T.C.A. §50-1-102(a)(1); *see also Gillinsky v. Marcus & Millichap Real Estate Inv. Servs. of Seattle,* 2021 U.S. Dist. LEXIS 128263 at *48-51 (M.D. Tenn. July 9, 2021).[17]

The Tennessee Court of Appeals has characterized T.C.A. §50-1-102 as functionally equivalent to fraudulent inducement, *i.e.,* an employer fraudulently inducing an employee to quit his/her current job and come work for them. *Shipp v. Ditch Witch Equip. of Tenn., Inc.,* 2007 Tenn. App. LEXIS 123 at *6 (March 7, 2007).[18] As statutory fraud, T.C.A. §50-1-102 claims are subject to the same heightened pleading standards, materiality standards, and statutes of limitations as common law fraud claims. *Block v. Meharry Med. College,* 2016 U.S. Dist. LEXIS 69485 at *3-4 (M.D. Tenn. May 26, 2016) (statute of limitations)[19]; *Grissim* at *9-11 (June 25, 1999) (materiality); *see Metro. Prop. & Cas. Ins. Co. v. Bell,* 2005 U.S. App. LEXIS 17825 at *15-16 (6th Cir. Aug. 17, 2005) (applying Rule 9 to TCPA claims).[20]

Plaintiff's specific allegations in Count VI merely recite the claim's basic elements. But

---

[17] Lampo has attached a copy of this unpublished case as Exhibit 13.

[18] Lampo has attached a copy of this unpublished case as Exhibit 14.

[19] Lampo has attached a copy of this unpublished case as Exhibit 15.

[20] Lampo has attached a copy of this unpublished case as Exhibit 16.

considering the nature of this claim and entirety of Plaintiff's First Amended Complaint, Count VI is effectively a statutory rehash of his fraud claim in Count IV and fails for the same reasons.

Respectfully submitted,

/s/Daniel Crowell
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
**JACKSON LEWIS P.C.**
CitySpace
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
leslie.sanders@jacksonlewis.com
daniel.crowell@jacksonlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that, on March 16, 2022, I caused the foregoing *Memorandum of Law in Support of Second Motion to Dismiss by Defendant, The Lampo Group, LLC,* to be filed via the Court's electronic filing system, which will automatically notify and send a copy of the filing to:

Jonathan A. Street
Brandon Hall
Cullen Hamelin
Lauren Irwin
THE EMPLOYMENT LAW AND CONSUMER LAW GROUP
street@eclaw.com
bhall@eclaw.com
chamelin@eclaw.com
lauren@eclaw.com

*Attorneys for Plaintiff*

                         /s/Daniel Crowell
                         Daniel Crowell (TN #31485)
                         *Attorney for Defendants*