**EXHIBIT 2**

 Positive

As of: March 16, 2022 10:53 AM Z

## *Richmond v. Vanguard Healthcare Servs., LLC*

Court of Appeals of Tennessee, At Nashville

October 13, 2015, Session; January 29, 2016, Filed

No. M2014-02461-COA-R3-CV

**Reporter**

2016 Tenn. App. LEXIS 66 *; 2016 WL 373279

DANIEL RICHMOND V. VANGUARD HEALTHCARE
SERVICES, LLC ET AL.

**Subsequent History:** Appeal denied by *Richmond v.
Vanguard Healthcare Servs., LLC, 2016 Tenn. LEXIS
873 (Tenn., Nov. 16, 2016)*

**Prior History:** *Tenn. R. App. P. 3* **[*1]** Appeal as of
Right; Judgment of the Circuit Court Affirmed. Appeal
from the Circuit Court for Bedford County. No. 2013-CV-
12702. Franklin L. Russell, Judge.

**Disposition:** Judgment of the Circuit Court Affirmed.

## Core Terms

bandage, illegal activity, neglect, terminated, retaliatory
discharge, sock, wound, public policy, common law,
remain silent, patient, refuse to participate, reasonable
cause, foot, summary judgment, ankle, adult, trial court,
cases, prima facie case, regulation, reporting,
undisputed, abuse and neglect, allegations, bottom,
soiled, necessary to maintain, common law claim,
majority opinion

## Case Summary

### Overview

**HOLDINGS:** [1]-The trial court properly dismissed an
employee's claim for retaliatory discharge under the
Tennessee Public Protection Act (TPPA), *Tenn. Code
Ann. § 50-1-304*, because the employee could not
establish that he refused to participate in or remain
silent about illegal activity, and thus, he failed to
establish a prima facie case; [2]-Leaving a bandage in a
sock, where a patient's wound was otherwise sufficiently
bandaged, was not illegal activity under the TPPA, *§ 50-
1-304(a)(3)*, and leaving the bandage in the sock was
not abuse and neglect as defined in the Tennessee
Adult Protective Act, *Tenn. Code Ann. § 71-6-102(1)(A)*;
[3]-The employee did not have reasonable cause to
believe that the employer's acts or omissions constituted
illegal activities, and thus, he failed establish the second
essential factor to establish a prima facie case for
retaliatory discharge under the TPPA.

### Outcome

Summary judgment affirmed.

## LexisNexis® Headnotes

Family Law > Family Protection &
Welfare > Dependent & Disabled Adults > Abuse,
Endangerment & Neglect

Daniel Crowell

Public Health & Welfare

Law > Healthcare > Services for Disabled & Elderly Persons > Protection From Abuse & Neglect

Family Law > Family Protection & Welfare > Elderly Persons > Abuse, Endangerment & Neglect

*HN1*[⤓] **Dependent & Disabled Adults, Abuse, Endangerment & Neglect**

See the Tennessee Adult Protective Act, *Tenn. Code Ann. § 71-6-103(b)(1)*.

Family Law > Family Protection & Welfare > Dependent & Disabled Adults > Abuse, Endangerment & Neglect

Public Health & Welfare

Law > Healthcare > Services for Disabled & Elderly Persons > Protection From Abuse & Neglect

Family Law > Family Protection & Welfare > Elderly Persons > Abuse, Endangerment & Neglect

*HN2*[⤓] **Dependent & Disabled Adults, Abuse, Endangerment & Neglect**

The reporting obligation of the Tennessee Adult Protective Act, *Tenn. Code Ann. § 71-6-103(b)(1)*, can be satisfied by: (1) reporting the abuse or neglect directly to Tennessee Department of Human Service (DHS), or (2) by internally reporting pursuant to specific company procedures that have been approved by DHS.

Healthcare Law > ... > Employment Issues > Wrongful Termination > Retaliatory Discharge

*HN3*[⤓] **Wrongful Termination, Retaliatory Discharge**

The Tennessee Adult Protective Act provides a civil cause of action for any person who suffers a detrimental change in their employment status by reason of making a qualifying report. *Tenn. Code Ann. § 71-6-105*.

Labor & Employment Law > Employment Relationships > At Will Employment > Duration of Employment

Labor & Employment Law > Employment Relationships > At Will Employment > Exceptions

*HN4*[⤓] **At Will Employment, Duration of Employment**

The employment-at-will doctrine is a bedrock of Tennessee common law and is a fundamental principle controlling the employer-employee relationship. Under the doctrine, employment for an indefinite period of time may be terminated by either the employer or the employee at any time and for any reason. This doctrine, however, is not absolute, and some restrictions have been imposed on the right of an employer to discharge an employee. Two of the recognized exceptions to the employment at-will doctrine are: (1) the Tennessee Public Protection Act, and (2) the Tennessee common law.

Business & Corporate

Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment

Law > Discrimination > Retaliation > Burdens of Proof

Labor & Employment

Law > Discrimination > Retaliation > Elements

HN5[⬇]  Whistleblower Protection Act, Protected Activities

The Tennessee Public Protection Act (TPPA) creates a cause of action for employees that are discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities. *Tenn. Code Ann. § 50-1-304(b)-(c)*. In cases of retaliatory discharge under the TPPA, courts apply a burden-shifting analysis similar to the one used in federal courts under McDonnell Douglas. *Tenn. Code Ann. § 50-1-304(f)*.

Labor & Employment
Law > Discrimination > Retaliation > Burdens of Proof

HN6[⬇]  Retaliation, Burdens of Proof

See the Tennessee Public Protection Act, *Tenn. Code Ann. § 50-1-304(f)*.

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment
Law > Discrimination > Retaliation > Burdens of Proof

HN7[⬇]  Summary Judgment, Burdens of Proof

In cases accruing on or after June 10, 2011, the burden-shifting framework of the Tennessee Public Protection Act applies at all stages of litigation, including motions for summary judgment. *Tenn. Code Ann. § 50-1-304(f)*.

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment
Law > Discrimination > Retaliation > Burdens of Proof

HN8[⬇]  Evidence, Burdens of Proof

The analytical framework set forth in the amended Tennessee Public Protection Act is virtually indistinguishable from the McDonnell Douglas approach.

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment
Law > Discrimination > Retaliation > Burdens of Proof

HN9[⬇]  Summary Judgment, Burdens of Proof

After the amendment to the Tennessee Public Protection Act, *Tenn. Code Ann. § 50-1-304*, in cases of retaliatory discharge courts will have to apply the federal burden-shifting standard of McDonnell Douglas at all stages of the case, including summary judgment.

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment
Law > Discrimination > Retaliation > Burdens of Proof

Labor & Employment

Law > Discrimination > Retaliation > Elements

*HN10*[↓] **Evidence, Burdens of Proof**

At the first stage of the McDonnell Douglas analysis, a plaintiff employee bears the burden of presenting evidence to establish a prima facie case of retaliatory discharge. A plaintiff who asserts a claim under the Tennessee Public Protection Act must establish: (1) that he was an employee of the defendant, (2) that he or she refused to participate in or remain silent about "illegal activities" as defined by the statute, (3) he or she was terminated, and (4) an exclusive causal relationship existed between his or her refusal to participate in or remain silent about illegal activities and his or her termination.

Labor & Employment

Law > ... > Retaliation > Elements > Causation

*HN11*[↓] **Elements, Causation**

To establish the requisite causal relationship under the Tennessee Public Protection Act, a plaintiff must show that his or her refusal to remain silent was the sole reason for the discharge.

Business & Corporate

Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment

Law > Discrimination > Retaliation > Elements

*HN12*[↓] **Whistleblower Protection Act, Protected Activities**

The Tennessee Public Protection Act defines "illegal

activities" as activities that are in violation of the criminal or civil code of the State or the United States or any regulation intended to protect health, safety, or welfare. *Tenn. Code Ann. § 50-1-304(a)(3)*.

Family Law > Family Protection & Welfare > Dependent & Disabled Adults > Abuse, Endangerment & Neglect

Public Health & Welfare

Law > Healthcare > Services for Disabled & Elderly Persons > Protection From Abuse & Neglect

Family Law > Family Protection & Welfare > Elderly Persons > Abuse, Endangerment & Neglect

*HN13*[↓] **Dependent & Disabled Adults, Abuse, Endangerment & Neglect**

The Tennessee Adult Protective Act defines "abuse and neglect" in the context of elder care as the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or obtain the services that are necessary to maintain that person's health or welfare. *Tenn. Code Ann. § 71-6-102(1)(A)*.

Labor & Employment

Law > Discrimination > Retaliation > Elements

*HN14*[↓] **Retaliation, Elements**

The Tennessee Public Protection Act's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof

*HN15*[⬇] **Whistleblower Protection Act, Protected Activities**

An employee has to meet a "formidable burden" in establishing the "reasonable cause" element of the whistleblower statute. An employee cannot meet this burden simply by claiming that he or she believed his or her employer's actions were "wrong" or against "public policy."

Labor & Employment Law > Wrongful Termination > Public Policy

*HN16*[⬇] **Wrongful Termination, Public Policy**

In order for the plaintiff-employee to prevail on a wrongful discharge claim, he or she must point to a clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision.

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof

*HN17*[⬇] **Evidence, Burdens of Proof**

A plaintiff must identify the law and policy that he or she contends was contravened and must be able to substantiate these allegations to some degree.

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

*HN18*[⬇] **Entitlement as Matter of Law, Appropriateness**

The court is not permitted to draw an inference against the nonmoving party at the summary judgment stage. The court must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor.

Labor & Employment Law > ... > Exceptions > Tort Exceptions > Public Policy Violations

*HN19*[⬇] **Tort Exceptions, Public Policy Violations**

There is a public policy exception to the employment-at-will doctrine affording protection under the common law to employees who refuse to participate in illegal activities or remain silent about them.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > Discrimination > Retaliation > Elements

*HN20*[⬇] **Whistleblower Protection Act, Protected**

Daniel Crowell

## Activities

The essential elements of a common law retaliatory discharge claim are as follows: (1) that an employment-at-will relationship existed, (2) that he or she was discharged, (3) that the reason for his or her discharge was that he or she attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, and (4) that a substantial factor in the employer's decision to discharge him or her was his or her exercise of protected rights or his or her compliance with clear public policy. These elements are similar to the requirements for a Tennessee Public Protection Act claim which, as noted earlier, are: (1) that the plaintiff was an employee of the defendant, (2) that he or she refused to participate in or remain silent about "illegal activities" as defined by the statute, (3) he or she was terminated, and (4) an exclusive causal relationship existed between his or her refusal to participate in or remain silent about illegal activities and his or her termination.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > ... > Retaliation > Elements > Protected Activities

Labor & Employment Law > Wrongful Termination > Public Policy

*HN21*[⤓] **Whistleblower Protection Act, Protected Activities**

Under the Tennessee Public Protection Act (TPPA), the plaintiff must establish that he or she refused to participate in or remain silent about "illegal activities" as defined by the statute common law, *Tenn. Code Ann. § 50-1-304(b)*, while under the common law the plaintiff must establish that the reason for his or her discharge was that he or she attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. The other difference between the common law and statutory retaliatory discharge claims is whether the employee's refusal was the sole reason or merely a substantial factor in his or her discharge. To benefit from statutory protection, an employee must demonstrate that his or her refusal was the sole reason for his or her discharge. On the other hand, a plaintiff asserting a common law retaliatory discharge claim need only show that the protected action was a substantial factor in the employer's decision. The legislature has chosen to enact a stringent standard for recovery under a retaliatory discharge claim pursuant to the TPPA.

Family Law > Family Protection & Welfare > Dependent & Disabled Adults > Abuse, Endangerment & Neglect

Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > Protection From Abuse & Neglect

Family Law > Family Protection & Welfare > Elderly Persons > Abuse, Endangerment & Neglect

*HN22*[⤓] **Dependent & Disabled Adults, Abuse, Endangerment & Neglect**

See the Tennessee Adult Protection Act, *Tenn. Code Ann. § 71-6-101(b)(1)*.

Daniel Crowell

Family Law > Family Protection & Welfare > Dependent & Disabled Adults > Abuse, Endangerment & Neglect

Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > Protection From Abuse & Neglect

Family Law > Family Protection & Welfare > Elderly Persons > Abuse, Endangerment & Neglect

*HN23*[↧] **Dependent & Disabled Adults, Abuse, Endangerment & Neglect**

A condition precedent to the duty to report is that one must have reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation. Tennessee Adult Protection Act, *Tenn. Code Ann. § 71-6-103(b)(1)*. The statute does not require the reporting of an act or omission that does not violate a clear public policy or statutory or regulatory provision.

**Counsel:** Brian Christopher Winfrey, Nashville, Tennessee, for the appellant, Daniel Richmond.

Benjamin Henry Bodzy and Megan Michelle Sutton, Nashville, Tennessee, for the appellees, Vanguard Healthcare Services, LLC and Glen Oaks Health and Rehabilitation.

**Judges:** FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. J. STEVEN STAFFORD, P.J., W.S., filed a dissenting opinion.

**Opinion by:** FRANK G. CLEMENT, JR.

# Opinion

The former administrator of an assisted living facility appeals the summary dismissal of his claim for retaliatory discharge under the Tennessee Public Protection Act ("TPPA"), *Tenn. Code Ann. § 50-1-304*, and common law. Plaintiff contends he was fired in retaliation for initiating an internal investigation and submitting an internal report to his supervisors concerning an incident that arose when the son of an elderly resident observed an old bandage stuck to the bottom of his mother's foot, which was revealed when her sock was removed in order to check the dressing for a wound on her **[*2]** ankle. Defendants contend Plaintiff's claims are legally deficient because there was no neglect or illegal activity to report, and that Plaintiff grossly overreacted after being informed that an old bandage was found on the ball of a resident's foot in a sock when the resident's wound, which was on her ankle, was properly dressed and bandaged. Defendants also rely on the fact that Plaintiff did not file a qualifying internal or external report of neglect until after he was fired. The trial court summarily dismissed the TPPA claim stating "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not 'abuse and neglect' as defined in the statute." The court dismissed the common law whistleblower claim because Plaintiff did not show that Defendants engaged "in illegal conduct or in any way . . . posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock." Plaintiff appeals the summary dismissal of his claims under the TPPA and common law. We affirm.

## OPINION

Daniel Richmond ("Plaintiff") was hired **[*3]** in 2012 by Vanguard Healthcare Services, LLC, as the Nursing Home Administrator of Glen Oaks Health and Rehabilitation in Shelbyville, Tennessee, an assisted living, rehabilitation, and nursing home facility owned

and operated by Vanguard Health Services. Plaintiff's primary responsibility was to oversee the day-to-day operations of Glen Oaks.

Willar Grace Harris, an elderly resident at Glen Oaks, had a persistent wound on her ankle that required daily monitoring at the facility as well as weekly visits to the Wound Care Clinic for treatment. Richard Sanders, the son of Ms. Harris, was with his mother when she went to the Wound Care Clinic on September 4, 2013, for a routine, weekly examination of the wound on her ankle. When an attendant removed her sock to examine the wound on the ankle there was an old bandage on the bottom of Ms. Harris' foot. The bandage, which was dated "8/11/2013," was given to Mr. Sanders.

When his mother's visit at the Wound Care Clinic was completed, Mr. Sanders travelled directly to Glen Oaks to register a formal complaint about his mother's care. When he arrived at Glen Oaks, Mr. Sanders, who was visibly upset and angry, confronted Mary Beth Bayman, the Director [*4] of Nursing who was primarily responsible for Ms. Harris' care. Ms. Bayman then escorted Mr. Sanders to Plaintiff's office where the three of them discussed Mr. Sanders' concerns. Ms. Bayman explained that it was not necessary to fully remove the sock to examine, dress and bandage the wound on Ms. Harris' ankle; instead, she would pull the sock down far enough to determine that the ankle was appropriately dressed and bandaged. Plaintiff informed Mr. Sanders that an internal investigation would be initiated immediately. Plaintiff prepared a written report of the incident, submitted it to his supervisors, and gave Mr. Sanders a copy of the internal report.[1]

Two days later, on September 6, 2013, Plaintiff's employment was terminated. Plaintiff states that he was terminated in retaliation for reporting the incident concerning Ms. Harris. Vanguard Healthcare Services, LLC, and Glen Oaks Health and Rehabilitation ("Defendants") insist his employment was terminated for several reasons, including his overreaction to and improper [*5] handling of the incident concerning Ms. Harris and Plaintiff's history of overreacting to routine matters, which resulted in clashes with staff at Glen Oaks and with Plaintiff's supervisor, Mark Miller. Plaintiff counters stating he had never been issued a formal written reprimand prior to his termination.

After his termination, Plaintiff submitted a written report to DHS concerning the alleged neglect of Ms. Harris.[2]

On October 13, 2013, Plaintiff commenced this action asserting a claim for retaliatory discharge in violation of the Tennessee Adult Protective Act ("TAPA"), *Tenn. Code Ann. § 71-6-105*; the Tennessee Public Protection Act ("TPPA"), *Tenn. Code Ann. § 56-1-304*; and Tennessee common law. Defendants filed an answer denying any liability. Thereafter, discovery was taken, including the deposition of Plaintiff and representatives of Defendants.

Defendants subsequently moved for summary judgment seeking the dismissal of all claims. Defendants asserted that Plaintiff's retaliation claim for violation of the TAPA should be summarily dismissed because he failed to report the [*6] alleged neglect in the manner required by the statute.[3] As for the TPPA and common law

---

[1] The internal report was given to Mr. Sanders and submitted to Plaintiff's supervisors on the same day as Ms. Harris' visit to the Wound Care Clinic, September 4, 2013.

[2] No report was submitted to the Tennessee Department of Human Service ("DHS") or anyone outside of Plaintiff's chain of command until after Plaintiff was terminated.

[3] The TAPA provides that *HN1*[⬆] ] "[a]ny person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility

Daniel Crowell

claims, Defendants asserted that they fail because (1) Defendants were not engaged in illegal activity; and (2) Plaintiff did not timely report the alleged neglect to anyone other than Defendants. Further, Defendants also asserted that the TPPA claim fails because Plaintiff is unable to establish that his refusal to remain silent about illegal activities was the sole cause of his termination.

Pursuant to a Memorandum Opinion entered on November 26, 2014, the trial court summarily dismissed all claims; it reads in pertinent part:

> The case was filed as a claim under the [TPPA], the [TAPA], and as a unlawful termination claim under Tennessee common law arising from the termination of Plaintiff Daniel Richmond ("Employee") from his employment as Chief Licensed Nursing Home Administrator at Defendant Glen Oaks Health and Rehabilitation ("Glen Oaks"), owned by Defendant Vanguard Healthcare. For the reasons set out below, summary judgment will be granted.

> On September 4, 2013, the son of a patient at Glen Oaks complained that the Director of Nursing at Glen Oaks' facility in Shelbyville, Mary Beth Bayman, had not properly cared for a patient. The specific allegation is that a bandage was found in one of the patient's socks beneath her foot after the bandage had previously been on the ankle of the patient. The injury for which the bandage had originally been placed on the patient was, at the time of discovery of the old bandage, covered by a fresh bandage. There is no sworn expert evidence before this trial court that the presence of the old bandage was in any way detrimental [*8] to the health and safety of the patient.

> The employment of the Employee was terminated two days later, on September 6, 2013, after the Employee had reported internally the alleged poor care provided by Ms. Bayman, that is, to individuals on the Defendants' payroll, initiating an investigation of the incident. The Complaint alleges that the Defendants "expressed their disdain" and "expressed their hostility" toward and "ultimately terminated" the Plaintiff Employee because he "refused to keep the incident quiet or diffuse the allegations". . . . There is no mention in the Complaint of any allegation that the Employee was terminated because he refused to participate in any illegal activity. It is uncontroverted that the Plaintiff Employee did not report the alleged abuse to anyone outside of the Defendants until after his termination. It is also undisputed that the Defendants have a policy for reporting patient abuse, but it is undisputed that the policy had never been submitted to the Tennessee Department of Human Services for approval.

> . . .

> As to the TAPA claim, the Employee would have had to report the abuse either to the Department of Human Services, or if, and only if, DHS had approved [*9] Glen Oaks' internal reporting scheme, the Employee would have had to report the alleged abuse following the internal procedures in order to be entitled to protection. In this case it is

---

employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation, shall report [such abuse]." *Tenn. Code Ann. § 71-6-103(b)(1). HN2*[⬆] This reporting obligation can be satisfied by: (1) reporting the abuse or neglect directly to DHS; or (2) by internally reporting pursuant to specific company procedures that have been approved by DHS. *Wynn v. Five Star Quality Care Trust, No. 3:13-cv-01338, 2014 U.S. Dist. LEXIS 144412, 2014 WL 5107057, at *3 (M.D. Tenn., Oct. 10, 2014). HN3*[⬆] TAPA provides a civil cause of action for any person who suffers a detrimental change in their employment status by reason of making a qualifying [*7] report. *Tenn. Code Ann. § 71-6-105.*

undisputed that the internal Glen Oaks procedure had not been approved by DHS before being fired. The Defendants are entitled to summary judgment as to the TAPA claim.

In order to establish a claim under TPPA, the Employee would have to prove, among other things, that he had refused to participate in or remain silent about illegal activities and that the refusal to participate in or remain silent about illegal activities was the sole cause of his termination. First, there is not in the Complaint any allegation of a refusal to participate in illegal activity, and there is no evidence in the sworn record that the Employee did so. Secondly, leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not "abuse and neglect" as defined in the statute.

. . .

As to the common law whistleblower claim, the Employee must prove that a substantial factor in the discharge was his speaking out about [*10] illegal activities if an important public policy interest of the State has been embodied in the law. As explained above, Glen Oaks is not shown to have been engaged in illegal conduct or in any way to have posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock. No reasonable fact finder could find that Glen Oaks was engaged in illegal conduct.

Summary judgment will be granted in favor of the Defendants.

On appeal, Plaintiff contends the trial court erred by summarily dismissing his TPPA and common law claims based on its finding that Defendant was not shown to

have engaged in illegal activity.[4] Plaintiff contends it was error to dismiss these claims because he had reasonable cause to believe that the reported incident constituted illegal activity. Further, Plaintiff insists he had a mandatory duty to report all "suspected" cases of neglect; therefore, his actions are protected regardless of whether the reported incident is proven to meet the statutory definition of neglect.[5]

## ANALYSIS

HN4[↑] ] The employment-at-will doctrine is "a bedrock of Tennessee common law" and is a fundamental principle controlling the employer-employee relationship. *Williams v. City of Burns, 465 S.W.3d 96, 108 (Tenn. 2015)* (quoting *Franklin v. Swift Tranp. Co., 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006))*. Under the doctrine, employment for an indefinite period of time may be terminated by either the employer or the employee at any time and for any reason. *Id.* This doctrine, however, is not absolute, and some restrictions have been

---

[4] Plaintiff does not challenge the summary dismissal of his TAPA claim.

[5] Plaintiff articulated two additional issues; we believe the issue identified [*11] above incorporates Plaintiff's challenges to the trial judge's rulings. The other two issues read:

1. Under the TPPA and common law, must an employee conclusively prove that the reported incident was an actual violation of the law in order to satisfy the "illegal activity" element of a retaliatory discharge cause of action?

2. Under the TPPA and common law, is an employee terminated for making a well-founded good faith report of neglect protected from retaliatory discharge if a trial court later finds that the reported incident was not proven by the employee to meet the statutory definition of neglect at summary judgment?

imposed on the right of an employer to discharge an employee. *Id.* At issue in this appeal are Plaintiff's claims under two of the recognized exceptions to the employment at-will **[*12]** doctrine: (1) the Tennessee Public Protection Act; and (2) the Tennessee common law. *See Williams v. Greater Chattanooga Public Television Corp., 349 S.W.3d 501, 513 (Tenn. Ct. App. 2011).* We shall first discuss the TPPA claim.

## I. THE TENNESSEE PUBLIC PROTECTION ACT

*HN5*[↑] The TPPA creates a cause of action for employees that are "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann. § 50-1-304(b)-(c).* In cases of retaliatory discharge under the TPPA, courts apply a burden-shifting analysis similar to the one used in federal courts under *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).*[6] *See Tenn. Code Ann. § 50-1-304(f); Williams, 465 S.W.3d at 111.* Tennessee's burden-shifting framework operates as follows:

> *HN6*[↑] In any civil cause of action for retaliatory discharge brought pursuant to this section, or in any civil cause of action alleging retaliation for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of

production and not persuasion. If the defendant produces such evidence, the presumption of **[*13]** discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. . . . The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

*Tenn. Code Ann. § 50-1-304(f).* *HN7*[↑] In cases accruing on or after June 10, 2011, this burden-shifting framework applies at all stages of litigation, including motions for summary judgment. *See Tenn. Code Ann. § 50-1-304(f).*[7]

---

[7] In *Kinsler v. Berkline, LLC, 320 S.W.3d 796, 800 (Tenn. 2011)* and *Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010),* the Tennessee Supreme Court held that the summary judgment analysis is to be applied in retaliatory discharge actions in the same way as in other cases, and rejected the federal *McDonnell Douglas* framework of allocations of burdens and order of presentation of each party. *Sykes v. Chattanooga Hous. Auth., 343 S.W.3d 18, 26 (Tenn. 2011).* However, an amendment to *Tenn. Code Ann. § 50-1-304*, applicable to causes of action accruing on or after June 10, 2011, functionally overrules the retaliatory discharge summary **[*14]** judgment analysis of *Kinsler* and *Gossett*. *Williams, 465 S.W.3d at 111 n.15* ("In 2011, the Legislature amended *Section 50-1-304* to add a *subsection (g)*, that set forth a statutory burden-shifting framework to be applied to all claims under the TPPA, both for summary judgment motions and for trial."). The cause of action in the instant case accrued in 2013; thus, the burden-shifting framework under the statute applies to Defendants' motion for summary judgment. *See* Andrée Sophia Blumstein, *Bye Bye Hannan? What A Difference Two Little Words, at Trial, Can Make in the Formulation of Tennessee's Summary Judgment Standard*, TENN. B.J., August 2011, at 17 (noting that

---

[6] The Tennessee Supreme Court has noted that *HN8*[↑] the analytical framework set forth in the amended TPPA is "virtually indistinguishable" from the *McDonnell Douglas* approach. *Williams, 465 S.W.3d at 113 n.15.*

HN10[↑] At the first stage of the *McDonnell Douglas* analysis, a plaintiff employee bears the burden of presenting evidence to establish a prima facie case of retaliatory discharge. *Williams, 465 S.W.3d at 113*. A plaintiff who asserts a claim under the TPPA must establish: (1) that he was an employee of the defendant; (2) that he refused to participate in or remain silent about "illegal activities" as defined by the statute; (3) he was terminated; and [*15] (4) an exclusive causal relationship existed between his refusal to participate in or remain silent about illegal activities and his termination.[8] *Franklin, 210 S.W.3d at 528*.

HN12[↑] The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect health, safety, or welfare." *Tenn. Code Ann. § 50-1-304(a)(3)*. The alleged illegal activity at issue here was neglect in the care of Ms. Harris in violation of the Tennessee Adult Protection Act. HN13[↑] The TAPA defines "abuse and neglect" in the context of elder care as "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or obtain the services that are necessary to maintain that person's health or welfare." *Tenn. Code Ann. § 71-6-102(1)(A)*.

In their motion for summary judgment, Defendants argued that Plaintiff failed to establish a prima facie case under the TPPA because he did not and could not establish that he refused to participate in or remain [*16] silent about "illegal activities" as defined by the statute. In support of their motion, Defendants' relied on Plaintiff's deposition testimony wherein Plaintiff acknowledged that the "neglect" at issue concerned an outdated bandage that was found on the ball of Ms. Harris' foot, although the wound was on her ankle. Defendants argued that because "the bandage was not found touching Ms. Harris' wound and there is no evidence that the bandage caused harm to Ms. Harris," the activities leading to Plaintiff's claim "in no way [rise] to the level of 'abuse and neglect' under [*Tenn. Code Ann. § 71-6-102*]." Generally stated, Defendants argued that this case arises from Plaintiff's "overreaction" to their being a small bandage on the bottom of a resident's foot, when the resident's wound, which was on her ankle, was properly dressed and bandaged.

Although he did not dispute the fact that the bandage was found on Ms. Harris' foot while her injury was located on her ankle, Plaintiff argued that the outdated bandage was evidence that the caretakers failed to sufficiently monitor and care for Ms. Harris and that this deprivation satisfies the statutory definition of neglect.

After reviewing the undisputed material facts, [*17] the trial court held that "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged is not illegal activity. . . [and] is not 'abuse and neglect' as defined in the statute." Based on this holding, the trial court summarily dismissed Plaintiff's TPPA claim.

On appeal, Plaintiff insists the trial court's holding was error because he is not required "to conclusively prove that the reported incident was illegal"; instead, he insists that "reasonable cause" for suspecting illegal activity is the standard. Further Plaintiff insists that summary judgment was not appropriate because "a disputed issue of fact remains about whether the reported

---

HN9[↑] after the amendment, in cases of retaliatory discharge courts will have to apply the federal burden-shifting standard of *McDonnell Douglas* at all stages of the case, including summary judgment).

[8] HN11[↑] To establish the requisite causal relationship under the TPPA, a plaintiff must show that "his or her refusal to remain silent was the sole reason for the discharge." *Haynes v. Forman Stables, Inc., 463 S.W.3d 34, 37 (Tenn. 2015)*.

incident of neglect meets the statutory definition of neglect," and "the question of whether the caretaker's misfeasance meets the statutory definition of neglect should have been left to the jury."

As Plaintiff correctly asserts, whether the alleged neglect of Ms. Harris constituted illegal activity as a matter of law is not dispositive of whether Plaintiff can establish a prima facie case of retaliatory discharge under the TPPA. As our Supreme Court has explained, HN14[↑] "the [TPPA's] protection extends to employees who **[*18]** have *reasonable cause* to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997)* (emphasis added).

We have discussed the "reasonable cause" requirement in several cases. In *Sanders v. Henry County*, an employee was terminated after he reported that his supervisor was "using the computer at his office to view personal, non-work-related emails containing what [the employee] considered to be inappropriate or pornographic pictures." *Sanders v. Henry County, No. W2008-01832-COA-R3-CV, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *8 (Tenn. Ct. App. Apr. 21, 2009)*. When he sued his employer for retaliatory discharge, the trial court granted the employer's motion for summary judgment, finding that the supervisor's actions were not "illegal activities" within the meaning of the TPPA; thus, the employee was unable to establish that he reported or remained silent about an "illegal activity." *2009 Tenn. App. LEXIS 156, [WL], at *4*. On appeal, the employee argued that regardless of the legality or illegality of his supervisor's actions, he could maintain a claim under the TPPA so long as he reasonably believed that his supervisor's actions were illegal. In addressing this argument, we stated:

> Plaintiff does not claim that he was aware of any law, regulation, or rule **[*19]** which he believed [his

supervisor] was violating. Plaintiff simply argues that "all that is required" is that he had a reasonable belief that the actions were "illegal." Plaintiff claims that he reported "what [he] perceived as illegal activities in the work place." He basically claims that he thought [his supervisor's] actions were wrong, and his brief attempts to support his assertion with a discussion of taxpayers' rights, cases dealing with pornography and obscenity, and a reference to [the city mayor's] statement that it is not "good practice" to view non-work-related material while working. However, we find that the Court's statement in *Mason* does not extend to the lengths urged by Plaintiff. Plaintiff did not establish the essential elements of his claim for statutory retaliatory discharge simply by claiming that he thought [his supervisor's] actions were wrong.

As stated above, HN15[↑] ] an employee has to meet a "formidable burden" in establishing this element of the whistleblower statute. *Hill, 2001 Tenn. App. LEXIS 452, 2001 WL 694479, at *5*; *Darnall, 1999 Tenn. App. LEXIS 339, 1999 WL 346225, at *5*. From our review of the cases applying the statute, an employee cannot meet this burden simply by claiming that he believed his employer's actions were "wrong" or against "public policy."

*Sanders, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *8-9*. We then **[*20]** provided several examples to further illustrate what is required to establish "reasonable cause":

> In *Stein, 945 S.W.2d at 716*, the Supreme Court considered an employee's claim that she was wrongfully discharged "in violation of public policy.". . . The Court held that HN16[↑] ] in order for the plaintiff-employee to prevail, he or she must point to a "clear mandate of public policy, evidenced by an

unambiguous constitutional, statutory, or regulatory provision[.]" *Id.*

In *Gager v. River Park Hospital, No. M2007-02470-COA-R3-CV, 2009 Tenn. App. LEXIS 43, 2009 WL 112544, at *1 (Tenn. Ct. App. Jan.14, 2009)*, a nurse practitioner sued her former employer, a hospital, for common law and statutory retaliatory discharge, claiming she was terminated as a result of her "refusal to remain silent" about an "illegal and ill-advised policy" implemented by the hospital regarding when nurses could call physicians. *2009 Tenn. App. LEXIS 43, [WL] at *1*. Specifically, the nurse practitioner alleged that the hospital policy "served not only to endanger the health of patients but also [was] in contravention of Tennessee statutory, common and regulatory law and Tennessee's explicit public policy." *2009 Tenn. App. LEXIS 43, [WL] at *4*. The trial court granted summary judgment to the hospital, and the Court of Appeals affirmed, explaining:

> Ms. Gager has failed to identify the law and policy **[*21]** that she contends was contravened . . . or what activities of River Park were illegal; the quoted provisions from her affidavit reveal only a policy implemented by River Park with which Ms Gager disagreed. . . . [Allegations of illegal activity] must be substantiated to some degree. . . . Without more than mere assertions by Plaintiff, the claim must fail . . . .

In *Collins v. AmSouth Bank, 241 S.W.3d at 881-82*, a bank employee was fired after a heated argument with her supervisor about placing money in a night deposit drop box. The bank employee filed a suit for retaliatory discharge against the bank and claimed that she was unsure of whether her supervisor violated federal banking regulations and bank policy

by instructing her to put the cash in the night deposit drop box. *Id. at 882*. The employee cited a federal statute and regulation as support for her belief that the supervisor's request was illegal. *Id. at 885-86*. However, on appeal, we found that the statute and regulation provided "no legal basis" for the employee's assertion that the supervisor's actions were illegal, and we affirmed summary judgment in favor of the bank. *Id. at 886 n.4*.

. . .

In several other statutory retaliatory discharge cases, we have affirmed summary judgment in favor of employers where **[*22]** employees were terminated after making complaints against their employers for activities that did not rise to the level of "illegal activities" under the statute. *See, e.g., Bridgestone/Firestone, Inc. v. Orr, No. M2006-2638-COA-R3-CV, 2008 Tenn. App. LEXIS 5, 2008 WL 80200, at *4 (Tenn. Ct. App. W.S. Jan. 7, 2008)* *perm. app. denied* (Tenn. Jun. 23, 2008) (finding that the employee's refusal to remain silent about tire failures did not involve illegal activities); *Forrest v. City of Ridgetop, No. M2002-01176-COA-R3-CV, 2003 Tenn. App. LEXIS 574, 2003 WL 21954195, at *6 (Tenn. Ct. App. Aug. 15, 2003)* (stating that a police officer's complaints regarding his employer's practices such as "ticket fixing" did not constitute illegal activities within the meaning of the statute); *Robins v. Flagship Airlines, Inc., 956 S.W.2d 4, 6-7 (Tenn. Ct. App. 1997)* (concluding that an airline employee's report to the company president regarding perceived problems with the maintenance department did "not even approach the subject of statutory or regulatory violations").

*Sanders, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *9-10*.

Here, Plaintiff insists that he reasonably believed that

Ms. Harris was neglected. However, as described above, to satisfy the standard set forth in *Mason*, HN17[↑] Plaintiff must "identify the law and policy that [he] contends was contravened" and must be able to substantiate these allegations to some degree. *See Sanders, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *10* (quoting *River Park, 2009 Tenn. App. LEXIS 43, 2009 WL 112544, at *8*).

To determine whether Plaintiff has met this burden, or whether [*23] a genuine issue exists which would preclude summary judgment, we must review the material facts. In this case, Ms. Harris, an elderly resident at Glen Oaks, had a persistent wound on her ankle that required daily monitoring at the facility as well as weekly treatment at the Wound Care Clinic. During a routine examination of the wound on her ankle on September 4, 2013, when an attendant at the Wound Care Clinic removed Ms. Harris' sock to examine the wound on the ankle, there was a bandage on the bottom of her foot that was dated "8/11/2013." At the conclusion of this routine visit, the old bandage was given to Richard Sanders, Ms. Harris' son, who drove his mother back to Glen Oaks. Upon arriving, Ms. Sanders, who was angry and visibly upset, met with Plaintiff to register a complaint concerning the old bandage being found on his mother's foot.

Although finding an old bandage on the bottom of Ms. Harris's foot was understandably disconcerting, we do not believe that such a discovery could reasonably lead to the conclusion that Ms. Harris was subject to elder neglect. We find it significant that the wound on her ankle was dressed appropriately on September 4 and the parties' respective [*24] statements of undisputed facts make no reference to any maladies or infirmities attributed to the old bandage being on the bottom of the foot of Ms. Harris. It is also significant that there is nothing in the statements of undisputed facts to indicate that the old bandage, which was dated "8/11/2013," or

the same sock had been on the foot of Ms. Harris for the three weeks that had transpired since August 11.[9]

Further, as was the case in *Sanders*, Plaintiff has failed to clearly identify the law and policy that he alleges was contravened and has not substantiated his allegations to a sufficient degree. *See Sanders, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *8-10*. Like the employee in *Collins*, who filed suit for retaliatory discharge claiming that she was unsure of whether her supervisor violated federal bank regulations, Plaintiff acknowledges that he began his internal investigation unsure of whether there had been a violation of the Tennessee Adult Protection Act. Therefore, no reasonable jury could conclude that Plaintiff had reasonable cause to believe that these acts or

_____

[9] Because the wound on the ankle was properly bandaged when Ms. Harris went to the Wound Care Clinic for her weekly visit on September 4, and all bandages on her ankle would have been removed and replaced on each of her weekly visits since August 11, the logical and reasonable inference to make is that the "8/11/15" bandage came off of her ankle during the following week but remained in the sock when the sock was removed. This is a reasonable inference because there is no evidence that Ms. Harris was not bathed properly between August 11 and September 4, which would have required removing the sock. In any event, a fresh bandage would have been placed on Ms. Harris' ankle during her next weekly visit to the clinic, which was on or about August 18, and on each weekly visit thereafter [*25] until she returned on September 4. Furthermore, we note that Plaintiff initially advanced the theory that the bandage was simply washed in Ms. Harris' sock and inadvertently placed back on her foot. Although these inferences are logical, HN18[↑] the court is not permitted to draw an inference against the nonmoving party at the summary judgment stage. *See Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 84 (Tenn. 2008)* (We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor).

omissions constituted illegal activities.

As described above, in an action for **[*26]** retaliatory discharge under the TPPA for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. *Tenn. Code Ann. § 50-1-304(f)*. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. *Id.*

In this case, we have affirmed the trial court's holding that "leaving a bandage in a sock, where a patient's wound is in fact otherwise sufficiently bandaged, is not illegal activity as defined by the statute. Leaving the bandage in the sock is not 'abuse and neglect' as defined in the statute." We have also concluded that Plaintiff did not have reasonable cause to believe that Defendants' acts or omissions constituted illegal activities. Therefore, Plaintiff cannot establish the second essential factor in order to establish a prima facie case for retaliatory discharge under the TPPA. Because Plaintiff cannot establish the second essential factor of a TPPA retaliatory discharge claim, that he refused to participate in or remain silent about illegal activity, he failed to establish **[*27]** a prima facie case; thus, burden of persuasion never shifted and our inquiry concerning Plaintiff's TPPA claim ends here. Accordingly, summary dismissal of Plaintiff's TPPA claim was proper.[10]

_____

[10] Defendants asserted two additional grounds in their motion for summary judgment that the trial court did not address in its ruling. On appeal, Defendants state that we may affirm the dismissal of the TPPA claim on these grounds as well as the trial court's finding that the acts or omissions did not constitute illegal activities. Because we have affirmed the summary dismissal of the TPPA grounds for reasons stated in this opinion, it is not necessary for us to consider the additional

## II. THE COMMON LAW CLAIM

Plaintiff also asserted a claim for relief under the Tennessee common law for retaliatory discharge. In *Chism v. Mid-South Milling Co., Inc., 762 S.W.2d 552 (Tenn. 1988)*, the Tennessee Supreme Court adopted **HN19**[⬆] a public policy exception to the employment-at-will doctrine "afford[ing] protection under the common law to employees who refuse to participate in illegal activities or remain silent about them." *Williams, 465 S.W.3d at 109* (citing *Chism, 762 S.W.2d at 555-57*).[11]

**HN20**[⬆] The essential elements of a common law retaliatory discharge claim are as follows: (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory

_____

grounds that were not considered by the trial court.

[11] Two years later, the General Assembly enacted the TPPA which "essentially codified the common-law cause of **[*28]** action for retaliatory discharge articulated in *Chism.*" *Williams, 465 S.W.3d at 109-10*. However,

> "[e]ffective July 1, 2014, the TPPA was amended to specifically 'abrogate[ ] and supersede[ ] the common law with respect to any claim that could have been brought under this section.' *Tenn. Code Ann. § 50-1-304(g)* (2014). Accordingly, under the statute as amended in 2014, in cases in which the plaintiff alleges retaliatory discharge for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief."

*Williams, 465 S.W.3d at 109 n.11*. This case accrued prior to July 1, 2014; thus the common law retaliatory discharge claim is still viable.

Daniel Crowell

provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy. *Collins v. AmSouth Bank, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007)*.

These [*29] elements are similar to the requirements for a TPPA claim which, as noted earlier, are: (1) that the plaintiff was an employee of the defendant; (2) that he refused to participate in or remain silent about "illegal activities" as defined by the statute; (3) he was terminated; and (4) an exclusive causal relationship existed between his refusal to participate in or remain silent about illegal activities and his termination. *Franklin, 210 S.W.3d at 528*.

There are two important differences in the two claims, however, which may or may not be significant depending on the facts at issue. *HN21*[↑] Under the TPPA, the plaintiff must establish that he refused to participate in or remain silent about "*illegal activities*" as defined by the statute common law, *see Tenn. Code Ann. § 50-1-304(b)*, while under the common law the plaintiff must establish that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. *See Collins, 241 S.W.3d at 884*. The other difference between the common law and statutory retaliatory discharge claims is whether the employee's refusal was the sole reason or merely a substantial [*30] factor in his or her discharge. "[T]o benefit from statutory protection, an employee must demonstrate that his or her refusal was the sole reason for his or her discharge." *Collins, 241 S.W.3d at 884*; *see also Haynes v. Forman Stables, Inc., 463 S.W.3d 34, 37 (Tenn. 2015)*. On the other hand, a plaintiff asserting a common law retaliatory discharge claim

need only show that the protected action was a substantial factor in the employer's decision. *Williams, 465 S.W.3d at 111*; *see also Sykes v. Chattanooga Hous. Auth., 343 S.W.3d 18, 28 (Tenn. 2011)* ("[T]he legislature has chosen to enact a stringent standard . . . for recovery under a retaliatory discharge claim pursuant to the [TPPA].").

Accordingly, we now consider whether Plaintiff has established, or for purposes of summary judgment created a dispute of fact, that a substantial reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision, as distinguished from whether he reasonably believed that the acts or omissions he reported were "illegal activities."

Without question, the abuse or neglect of an elder adult violates the public policy of Tennessee. This public policy is embodied by the Tennessee Adult Protection Act. *See Tenn. Code Ann. § 71-6-101(b)(1)* (*HN22*[↑] "The purpose of this [*31] part is to protect adults coming within this part from abuse, neglect, or exploitation by requiring reporting of suspected cases by any person having cause to believe that such cases exist."). However, we have already concluded that the acts or omissions reported by Plaintiff could not reasonably be believed to constitute abuse or neglect under TAPA. *See Tenn. Code Ann. § 71-6-102* (defining "abuse and neglect" in the context of elder care as "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or obtain the services that are necessary to maintain that person's health or welfare."). Thus, we similarly conclude that the acts reported by Plaintiff could not reasonably be believed to constitute a violation of Tennessee public policy. Accordingly, the trial court

correctly held that "[Defendant] is not shown to have been engaged in illegal conduct or in any way to have posed a threat to an important public policy of the State when all that was done was to leave an old bandage in a patient's sock."

The foregoing notwithstanding, Plaintiff insists that he is entitled to the protection afforded under **[*32]** the common law because he believed he was under a mandatory statutory duty to report the incident. We respectfully disagree with this assertion because *HN23*[↑] a condition precedent to the duty to report is that *one must have reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation.*[12] See *Tenn. Code Ann. § 71-6-103(b)(1)*. The statute does not require the reporting of an act or omission that does not violate a clear public policy or statutory or regulatory provision. Therefore, because no reasonable person could believe that these acts or omissions violate a public policy, the reporting of these acts does not afford Plaintiff the remedies available under *Tenn. Code Ann. § 71-6-103* or the common law. Accordingly, summary dismissal of Plaintiff's common law claim was appropriate.

IN CONCLUSION

The judgment of the trial court is affirmed, **[*33]** and this matter is remanded with costs of appeal assessed against the appellant, Daniel Richmond.

_____

[12] The TAPA states, in pertinent part: "Any person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having *reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation*, shall report or cause reports to be made in accordance with this part." *Tenn. Code Ann. § 71-6-103(b)(1)* (emphasis added).

FRANK G. CLEMENT, JR., JUDGE

**Dissent by:** J. STEVEN STAFFORD

# Dissent

J. STEVEN STAFFORD, DISSENTING.

The majority Opinion concludes that a reasonable juror (1) could not find that Mr. Richmond had reasonable cause to believe the presence of the soiled bandage was connected to "illegal activity," as required by the Tennessee Public Protection Act ("TPPA"), and (2) could not find that Mr. Richmond could demonstrate that his termination for reporting the incident violated any clear public policy under his common law claim. Because I conclude that a reasonable juror could conclude that Mr. Richmond had reasonable cause to believe that the presence of the soiled bandage stemmed from neglect of the patient, I must respectfully dissent.

To prevail under the TPPA, *Tennessee Code Annotated Section 50-1-304*, the plaintiff must establish:

(1) his status as an employee of the defendant employer;

(2) **his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act**;

(3) his termination; and

(4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination.

*Tenn. Code Ann. § 50-1-304* (emphasis **[*34]** added); *Franklin v. Swift Transp. Co., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)*. Of the four required elements, the majority Opinion concludes that element two is dispositive because the conduct alleged to be illegal in

Daniel Crowell

this case simply does not rise to the level of "illegal activities" as required by the statute.[1]

As discussed by the majority Opinion, "illegal activities" are defined as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." _Tenn. Code Ann. §50-1-304(a)(3)._ Our Supreme Court, in _Mason v. Seaton, 942 S.W.2d 470 (Tenn.1997)_, held that the TPPA's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated. _Mason, 942 S.W.2d at 472_ (citing _Melchi v. Burns Int'l Security Servs., Inc., 597 F.Supp. 575, 583 (E.D. Mich. 1984))._ Accordingly, Mr. Richmond must show only that he had reasonable cause to believe that illegal activities were occurring. In addition, although the case relied upon by the majority on this issue [*35] indicates that plaintiffs face a "formidable burden" in establishing this element of the claim of retaliatory discharge, _see Sanders v. Henry Cnty., No. W2008-01832-COA-R3-CV, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916 (Tenn. Ct. App. Apr. 21, 2009)_,[2]

———————————————

[1] This dissent only addresses the issue of whether the alleged wrongful activity constitutes illegal activitiy under the statute. I express no Opinion regarding whether Plaintiff refused to participate or be silent in such activity, or whether any of the other essential elements of a statutory retaliation claim are met.

[2] The majority Opinion includes a discussion of the cases in _Sanders_ in which a plaintiff's belief that illegal activity was occurring was determined to be unreasonable, but omits the two cases discussed in which the court determined that the plaintiffs' belief were reasonable. _See Sanders, 2009 Tenn. App. LEXIS 156, 2009 WL 1065916, at *8, 10_ (citing _Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997)_ (holding that employee was able to satisfy the "illegal activity" element of a retaliatory discharge claim where she had reasonable cause to

the Tennessee Supreme Court has more recently held that "the burden to establish a prima facie case [under the TPPA] is **not onerous**." _Williams v. City of Burns, 465 S.W.3d 96, 113 (Tenn. 2015)_ (emphasis added) (citing _Lin v. Metro. Gov't of Nashville & Davidson Cnty., No. M2008-00212-COA-R3-CV, 2008 Tenn. App. LEXIS 609, 2008 WL 4613559, at *5 (Tenn. Ct. App. Oct. 10, 2008))._ Thus, we must be cautious not to place too high a burden on plaintiffs with regard to this element.

Here, Mr. Richmond specifically alleges that his complaint regarding [*36] the soiled bandage evidences his refusal to take part in and/or be silent about the neglect of the patient. There appears to be no dispute in this case that neglect of a patient in a health care facility is illegal under the Tennessee Adult Protection Act ("TAPA"), and therefore constitutes illegal activity for purposes of the retaliatory discharge statute. The issue in this case, instead, concerns whether Mr. Richmond's belief that neglect was occurring was reasonable under the circumstances. The TAPA defines neglect, in relevant part, as "the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult." _Tenn. Code Ann. § 71-6-102(1)(A)._ In my view, this definition is quite broad and could be reasonably interpreted to include the conduct at issue in this case.

The majority Opinion concludes that "finding an old bandage on the bottom of Ms. Harris's foot" was insufficient to create a reasonable belief that Ms. Harris was the victim of neglect. To reach this conclusion, the majority relies upon the fact that "there is nothing in the statements of undisputed facts to indicate that the old

———————————————

believe that employer had violated a specific law and acted in good faith when reporting); _White v. Fort Sanders-Park W. Med. Ctr., No. E2006-00330-COA-R3CV, 2007 Tenn. App. LEXIS 53, 2007 WL 241024, at *4 (Tenn. Ct. App. Jan. 29, 2007)_ (same)).

bandage . . . or the same sock had been on the foot of Ms. Harris for the three weeks **[*37]** that had transpired since August 11." In Mr. Richmond's Statement of Undisputed Facts, however, he asserts that "Defendant did not definitively determine the cause of [the] outdated bandage's placement on the foot of Ms. []Harris on September 4, 2013." Thus, although the majority infers that Ms. Harris experienced no neglect in the weeks preceding the soiled bandage's discovery, a reasonable juror presented with the foregoing facts could infer the exact opposite: that the discovery of the bandage on Ms. Harris's foot was a sign that Defendant was not properly caring for her.

When faced with a motion for summary judgment, the court "must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor." *Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 84 (Tenn. 2008)*; *Luther v. Compton, 5 S.W.3d 635, 639 (Tenn. 1999)*. Despite this directive, however, the majority goes on to consider, but purportedly not rely upon, the "logical and reasonable inference" that Ms. Harris was bathed properly between August 11 and September 4, but that the bandage was accidently left in the sock when the sock was removed or the "logical" inference that the bandage was "washed in Ms. Harris['s] sock and inadvertently placed back on her foot." **[*38]** Respectfully, it is not the purview of this Court to pass judgment upon the inferences that could be made in the moving party's favor at the summary judgment stage. *See Martin, 271 S.W.3d at 84*. Although the majority provides that it is not relying on these inferences in favor of Defendant, in my view, its conclusion ultimately depends on these inferences being drawn in the moving party's favor. Indeed, the majority concludes that Ms. Harris was properly bathed. No evidence in the record, however, directly concerns Ms. Harris's bathing and clothing schedule; accordingly, any conclusion that she

was properly bathed and changed must constitute an inference in the moving party's favor. While seemingly focusing on the inferences that could be made in Defendants' favor, the majority disregards considerable evidence and inferences that can be made in Plaintiff's favor.

First, the soiled bandage was placed in a biohazard bag, indicating its potential to cause harm. Although the majority characterizes Mr. Richmond's report as an overreaction, Nurse Bayman admitted in her deposition that the soiled bandage could cause alterations, breakdowns, and discolorations on the skin. Furthermore, there is some evidence **[*39]** in the record to directly contradict the majority's "logical" infererence that the bandage was washed in the sock, as evidence in the record suggests that a search of Ms. Harris's room after the incident indicated that Ms. Harris was not being provided clean socks every day.[3] Based upon this evidence a reasonable person could infer that there were other instances in which Ms. Harris was not properly washed and clothed. Common sense indicates that routine bathing and changing clothes are "necessary to maintain the health and welfare" of Ms. Harris and that the failure to perform these tasks could constitute neglect. *See Tenn. Code Ann. § 71-6-102(1)(A)*. Although the majority minimizes the importance of the discovery of the soiled bandage, the facts in the record indicate that Mr. Richmond had

---

[3] Specifically, the record includes correspondence between Vanguard Health Care Services' corporate represetantives that states: "During the conversation possibilities of how this occurred came up and prior to the statement of negligence being made, the [Director of Nursing] and [Mr. Richmond] and [Ms. Harris's family] **[*40]** went to the resident[']s room and looked through dirty clothing and counted three dirty pair of socks that was in the laundry out of five days — indicated clean socks were not used for this resident at some point."

Daniel Crowell

reasonable cause to believe that the bandage could be part of a larger issue of the possible neglect of Ms. Harris.

Finally, and most importantly, the allegation of abuse and neglect did not originate with Plaintiff. Instead, it was Mr. Harris's son who first made a complaint, indicating that "[Nurse Bayman] did not act properly in the care of my mother and that my mom had been neglected pursuant to the Doctor's orders." Indeed, the record indicates that Ms. Harris's son had filed several grievances previously complaining that his mother was "wet, dirty, or had other related issues," when he arrived to visit her. Moreover, this was not the first complaint directed at Nurse Bayman's treatment of residents, as the record includes several complaints and a performance review of Nurse Bayman, citing her poor performance and unprofessional behavior. Curiously, none of the foregoing facts related to Nurse Bayman are weighed by the majority despite them likely playing a role in Mr. Richmond's decision to report.

Because of Plaintiff's role as administrator in a nursing home, Ms. Harris's son's **[*41]** complaint implicated Plaintiff's duty to investigate and report any reasonable allegations of abuse or neglect. See _Tenn. Code Ann. § 71-6-103(b)(1)_. Indeed, in this case, the impetus to report wrongdoing is more than a mere moral imperative, it is a statutory directive. According to _Tennessee Code Annotated Section 71-6-103(b)(1)_:

> Any person, including, but not limited to, a physician, nurse, social worker, department personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation, shall report or cause reports to be made in accordance with this part.

_Section 71-6-105_ provides that "any person making a

report under this part . . . shall be presumed to be acting in good faith." However, a person who knowingly fails to make a report required by statute has committed a Class A misdemeanor. _Tenn. Code Ann. § 71-6-110_.

Here, the majority Opinion admits that Ms. Harris's son lodged a formal complaint about his mother's care and that he was visibly "upset and angry." Respectfully, the majority Opinion fails to consider whether a reasonable person facing the factors Mr. Richmond was forced to balance—his duty to report, possible termination, and potential criminal liability—could have "reasonable **[*42]** cause" to suspect illegal activity. Instead, the majority appears to conclude that when faced with this type of complaint, the only reasonable action would have been to ignore the complaint of abuse and refuse to initiate an investigation. As we opined in _Franklin v. Swift Transportation Co., 210 S.W.3d 521, 530 (Tenn. Ct. App. 2006)_:

> [T]he law of retaliatory discharge stems from Tennessee public policy that an employee should not be placed in the moral, ethical and legal dilemma of being forced to choose between reporting or participating in illegal activities and keeping his job. See _Henderson v. Corrs. Corp. of America, 918 F.Supp. 204, 210 (E.D. Tenn. 1996)_; _Griggs v. Coca—Cola Employees' Credit Union, 909 F.Supp. 1059, 1064 (E.D. Tenn. 1995)_. That does not, however, end the inquiry. Under both the Public Protection Act and the common law, the "illegal activity" or violation by the employer must implicate important public policy concerns as well.

There is no dispute that strong public policy in Tennessee supports reporting suspected cases of elder abuse and neglect. The only dispute here is whether Plaintiff's belief that elder neglect occurred was reasonable under the circumstances. Based upon the foregoing, I must respectfully disagree with the majority

Daniel Crowell

and conclude that a reasonable person in Plaintiff's position would have taken the same action: report the allegation **[\*43]** of neglect and initiate an investigation to determine whether abuse actually occurred. Indeed, it appears that only because of this investigation can the majority conclude that no neglect occurred. Of course, however, Plaintiff did not have the benefit of an investigation in determining whether to initiate one. In light of the numerous inferences that may be drawn from the facts in the record, I am of the opinion that the question of reasonable cause is better reserved for the trier of fact in this case. *Johnson v. Johnson City, 41 Tenn. App. 148, 292 S.W.2d 794, 795 (Tenn. 1956)* ("[I]f the minds of reasonable men may differ as to the conclusion to be drawn from the given facts, then there is presented a jury question.").

Equally important, I am concerned that plaintiffs similarly situated to Mr. Richmond will be placed in a precarious situation—that is, being faced with a statutory duty to report based on the strong policy of preventing elder abuse, and the fear of his employer terminating him. The majority's Opinion ultimately denies plaintiffs like Mr. Richmond and the elderly citizens of Tennessee protection to which they are entitled under the law. Mr. Richmond's decision to report, in my view, was prompted by reasonable cause to believe Ms. Harris had been **[\*44]** neglected at some point in her care.

Based on the foregoing, I would conclude that the record indicates summary judgment is not appropriate for the "illegal activity" prong of the TPPA claim and the "public policy" prong of his common law claim. Consequently, I would reverse the grant of summary judgment.

J. STEVEN STAFFORD, JUDGE

End of Document