EXHIBIT 4

 Caution

As of: March 16, 2022 10:54 AM Z

# Hayes v. Elmington Prop. Mgmt.

United States District Court for the Western District of Tennessee, Western Division

December 20, 2019, Decided; December 20, 2019, Filed

No.: 2:19-cv-02312-JTF-jay

**Reporter**

2019 U.S. Dist. LEXIS 226377 *; 2019 WL 8016518

ANTHONY D. HAYES, Plaintiff, v. ELMINGTON PROPERTY MANAGEMENT, ET AL., Defendants.

## Core Terms

magistrate judge, disability, failure to comply, national origin, discriminated, show cause, retaliation, pro se, allegations, recommends, terminated, injuries, genetic, impairment, report and recommendation, failure to prosecute, factual allegations, age discrimination, retaliation claim, illegal activity, work-place, marijuana, discrimination claim, reasonable inference, sufficient facts, district court, prohibits, purported, notice, warned

**Counsel:** [*1] Anthony D. Hayes, Plaintiff, Pro se, Memphis, TN.

**Judges:** Jon A. York, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** Jon A. York

## Opinion

### REPORT AND RECOMMENDATION

On May 15, 2019, *pro se* Plaintiff, Anthony D. Hayes, filed a Complaint against Elmington Property Management ("Elmington"), Kate Dennis, Tinnesha Harrison, Apryl Molton and Jimmie Richards (hereinafter collectively referenced as "Defendants"). (Docket Entry ["D.E."] 1.) He also filed an application to proceed *in forma pauperis*. (D.E. 2.) In an order issued on May 20, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis* (D.E. 8).

This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05). Pursuant to *Rule 41(b) of the Federal Rules of Civil Procedure*, the Magistrate Judge recommends dismissal of all Plaintiff's purported claims for failure to comply with an order of the Court. Alternatively, pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)*, the Magistrate Judge recommends dismissal of all of the Plaintiff's purported claims with the exception of his Title VII and THRA retaliation claim against Elmington Property Management.

### I. PROPOSED FINDINGS OF FACT

#### A. Facts Relevant to Failure to Prosecute [*2]

On August 29, 2019, the undersigned Magistrate Judge issued an order directing Hayes to file a copy of his Equal Employment Opportunity Commission ("EEOC") charge within fourteen (14) days. (D.E. 10.) The order

indicated that Hayes could seek an appeal within fourteen (14) days. (*Id.*) Instead of filing a copy of his EEOC charge or appealing the Magistrate Judge's order, on September 13, 2019, Hayes filed another copy of his EEOC right to sue letter. (D.E. 11.)

On November 1, 2019, the undersigned Magistrate Judge issued an Order to Show Cause as to "why the Magistrate Judge should not recommend dismissal of this action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to comply with the Magistrate Judge's August 29, 2019, Order." (D.E. 12.) The Order to Show Cause also explained that while EEOC exhaustion is no longer a prerequisite for subject matter jurisdiction, other trial courts and magistrate judges throughout the Sixth Circuit have still required plaintiffs to produce copies of their EEOC charging documents for the court. (*Id.*) Finally, the Order to Show Cause required Hayes to respond within fourteen (14) days and expressly warned Hayes that his failure to respond to the Order to Show Cause could result [*3] in a report and recommendation of dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (*Id.*)

Additionally, Hayes is a frequent *pro se* litigator in this Court. In 2013, Mr. Hayes had filed at least nine *pro se* federal lawsuits over the preceding eight-year period. *See Hayes v. Shelby County Trustee, 971 F.Supp.2d 717, n. 3 (W.D. Tenn. 2013)*. In one of his prior employment cases, Hayes did attach his Charge of Discrimination to his Complaint. *See Hayes v. Wharton, et al.*, No. 11-2193-JDT-tmp (W.D. Tenn. July 16, 2014).[1] Finally, as of the date of this Report and Recommendation, Mr. Hayes has not filed a copy of his EEOC charge nor has he responded to the Order to Show Cause.

**B. Facts Relevant to Screening**[2]

*1. Hayes' employment*

On June 22, 2018, Elmington hired Hayes, a "54-year old Indigenous American Indian," as an Assistant Community Director. (D.E. 1, PageID 2-3, ¶¶ 1, 7.) Shortly after he began working at Elmington, Hayes discovered that the property had mechanical, electrical, and plumbing problems. (*Id.*, ¶ 8.) This led to the resignation of the property's maintenance supervisor. (*Id.*)

Hayes also discovered that people were dumping trash at the apartments and residents were openly smoking marijuana. (*Id.*) Hayes complained to management about the marijuana usage, which was against Plaintiff's [*4] morals; however, management took no action. (*Id.*, PageID 3, 6, ¶¶ 8, 13.) Additionally, Hayes was forced to use his personal vehicle on the property without compensation. (*Id.*, PageID 3, ¶ 7.); however, this requirement was never discussed with Plaintiff when he was hired. (*Id.*)

In July of 2018, Elmington hired a new manager, Defendant Apryl Molton. (*Id.*, PageID 4, ¶ 9.) Hayes previously filed a discrimination charge against LEDIC, another employer, and Defendant Molton was aware of this event. (Id.)[3] During one of their initial interactions, Defendant Molton questioned Hayes as to how he came to be employed by Elmington, when a different company would not hire him. (*Id.*)

---

[1] The Charge of Discrimination in the previous case is in that case's record at Docket Entry 1, PageID 22.

[2] This recitation of facts does not include a description of each of Hayes' conclusory allegations and/or his purported statements of law contained within his Complaint.

[3] Hayes does not provide any information concerning the date of his discrimination charge against LEDIC.

On another occasion, Molton called Hayes into her office and told him to "just do your job." (*Id.*) Around this time, Defendant Molton also questioned Hayes about his national origin and/or immigration status. (*Id.*, ¶ 10.) During these conversations, Defendant Molton did not take any other action against Hayes; however, Hayes felt that the conversations themselves were "intimidating." (*Id.*)

Shortly thereafter, without first posting the position, Defendant Molton promoted Defendant Jimmie Richards to Maintenance Supervisor. [*5] (*Id.*, PageID 5, ¶ 11.) Defendant Richards was initially hired at the same time as Plaintiff. (*Id.*) After he was promoted, Defendant Richards advised the maintenance staff that their work hours were no longer 8:00 a.m. to 5:00 p.m. and that they had to check with him before leaving work. (*Id.*) When Hayes questioned Defendant Richards about his ability to change his working hours from the contract, Defendant Richards told him, "if you don't like it then you can turn in your key." (*Id.*) Moreover, Plaintiff was forced to be on-call for overtime by himself.[4] (*Id.*, ¶ 12.) Additionally, Defendant Richards told Hayes he would not receive any help from other employees. (*Id.*) Defendant Molton and Defendant Richard "joined together to harass the Plaintiff with overtime complaints although there was another employee that was required to perform the on-call overtime duty during the week." (D.E. 1, PageID 6, ¶ 13.)

On or about July 27, 2018, Elmington management assigned Hayes to clear the apartments of some furniture. (*Id.*, PageID 6, ¶ 14.) While performing this task, which Hayes alleges was outside of his original job description, Hayes fell from the dumpster platform and injured several parts of [*6] his body, including his head. (*Id.*) After notifying Defendant Molton and Defendant Hayes of the incident, Hayes went to the emergency room. (*Id.*) Defendant Richards asked Hayes if he "knock[ed] some sense into [his] head. (*Id.*)

Hayes attempted to return to work the next day; however, he left early to go back to the emergency room due to continued pain on the left side of his body. (*Id.*) Hayes requested approval from Defendant Molton for additional medical care because his injury was getting increasingly difficult to handle. (*Id.*) A week passed before Hayes' additional care was approved. (*Id.*) Hayes went to the Veterans Administration Hospital psychiatrist for stress, and the hospital noted that Plaintiff had a prior PTSD diagnosis. (*Id.*) Defendant Molton and Defendant Richards actions led to Hayes experiencing emotional stress which caused a flare-up of his PTSD. (*Id.*, PageID 6-7, ¶ 14.)

On or about August 13, 2018, Hayes received approval to visit an orthopedic specialist. (*Id.*, PageID 7, ¶ 15.) Hayes received treatment for his left knee and was sent back to work with strict restrictions for four weeks. (*Id.*) While on limited duty, Hayes cleaned the maintenance shop and picked up trash [*7] on the property. (*Id.*) Hayes attended physical therapy in the middle of his work day, but Elmington paid him only half of his wages. (*Id.*) Hayes' supervisors informed Hayes to speak to corporate about the wages. (*Id.*)

On approximately September 4, 2018, even though Hayes was not cleared by his doctor, Defendant Tinnesha Harrison[5] placed Hayes back on full duty. (*Id.*, ¶ 16.) Due to overexertion, Hayes reinjured himself. (*Id.*) Defendant Richards advised him to speak about his difficulties with Defendant Molton; however, he was unable to reach her via telephone and left her a message. (*Id.*)

---

[4] Previously, on-call assignments were completed in a two-person group.

[5] Elmington's Regional Manager

On September 10, 2018, Defendant Molton terminated Hayes for not working and violating policy. (*Id.*, PageID 7-8, ¶ 17.) However, she would not tell Hayes what policy he violated. (*Id.*) Subsequently, Hayes called Elmington's Human Resources ("HR") Department and spoke to Defendant Kate Dennis, Elmington's HR Director. (*Id.*) He advised her that he was terminated for no apparent reason while under doctor's care. (*Id.*) Defendant Dennis told Hayes that she would call him back. (*Id.*) She called him back and advised him that "he had violated policy of not working." (*Id.*) Hayes argued (1) that this was not true, [*8] (2) that he had photos to show he was working, and (3) that he still needed medical attention for injuries he sustained on the job. (*Id.*, PageID 7-8, ¶ 17.) However, Defendant Dennis was of no further assistance to Hayes. (*Id.*)

### 2. Hayes' claims

Hayes contends that the actions of all of the individual defendants and Elmington violated §§ 704(a) and 706(g) of Title VII of the Civil Rights Act of 1964 ("Title VII"), §207(f) of the Genetic Information Nondiscrimination Act ("GINA"), §4(d) of the Age Discrimination in Employment Act ("ADEA"), and §503(a-b) of the Americans with Disabilities Act ("ADA"). (D.E. 1, PageID 1.) Hayes also attempts to assert a bevy of state law claims against the Defendants including: discrimination and retaliation claims under the Tennessee Human Rights Act ("THRA"), discrimination claims under Tennessee Disability Act ("TDA"), whistleblower claims pursuant to Tenn. Code Ann. § 50-1-304 ("TPPA"), and various other state claims. (*Id.* PageID 8-15.) Hayes seeks damages, declaratory relief, and injunctive relief. (*Id.*, PageID 16.)

### II. STANDARDS

### A. Failure to Prosecute Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure

Rule 41 of the Federal Rules of Civil Procedure authorizes courts to dismiss cases due to a plaintiff's failure to prosecute the case and/or failure to comply with the Federal Rules of Civil Procedure [*9] or the court's orders. *See* Fed. R. Civ. P. 41(b). To determine whether dismissal is warranted, courts within the Sixth Circuit generally consider: (1) whether the party's failure was the result of willfulness, bad faith, or fault, (2) whether the opposing party suffered prejudice due to the party's conduct, (3) whether the dismissed party was warned that failure to cooperate could result in dismissal, and (4) whether less drastic sanctions were imposed or considered. *See Bogard v. Hilton Worldwide*, No. 17-CV-02705-JTF-tmp, 2018 WL 4496649 * 1 (W.D. Tenn. Aug. 21, 2018), *report and recommendation adopted at*, 2018 U.S. Dist. LEXIS 159997, 2018 WL 4494995 *1 (W.D. Tenn. Sept. 19, 2018). While no one factor is dispositive, contumacious conduct and/or a party's failure to comply despite receiving notice of potential dismissal can be appropriate grounds for dismissing an action. *Mager v. Wisconsin Central Ltd., 924 F.3d 831, 837 (6th Cir. 2019)*; *see also Mack v. Malone & Hyde, Inc., 31 F.3d 428 (Table), 1994 WL 140659 *1 (6th Cir. 1994)* (recognizing that such dismissals are appropriate when the plaintiff has been put on notice that his or her noncompliance would result in dismissal or, absent such notice, when the plaintiff has engaged in bad faith or contumacious conduct); *Parks v. City of Memphis, 88 F. App'x 897 (6th Cir. 2004)* (affirming dismissal of *pro se* civil rights case for failure to prosecute when the plaintiff failed to comply with the court rules and court orders).

### B. Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B)

The Court is required to screen in forma [*10] pauperis

complaints and to dismiss any complaint, or any portion thereof, if the action—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 667-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that . . . are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 681, 129 S. Ct. at 1950; see also Twombly, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

The United States [*11] District Court for the Southern District of New York explained the interplay between the various subparts of Rule 8 of the Federal Rules of Civil Procedure:

Fed.R.Civ.P. 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(d)(1) requires that each allegation be "simple, concise, and direct." Fed.R.Civ.P. 8(a)(2) requires that the plaintiff must show "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." "Factual allegations must be enough to raise a right to relief above the speculative level[.]" "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit."

Morales v. New York, 22 F. Supp.3d 256, 266 (S.D.N.Y. 2014) (internal citations omitted).

The Sixth Circuit Court of Appeals and district courts within this circuit have also recognized and enforced compliance with the requirements of Rule 8 of the Federal Rules of Civil Procedure. See, e.g., Ellis v. Eckankar Intern. Office, 803 F.2d 719 (Table), 1986 WL 17775 (6th Cir. 1986) (affirming district court's dismissal of a pro se complaint that was rambling and failed to provide "fair notice of what the plaintiff's claim [was] and the ground upon which it rest[ed]"); Mitchell v. City of Nashville, No. 3:08-cv-0844, 2008 U.S. Dist. LEXIS 84163, 2008 WL 4646169 at *1-2 (M.D. Tenn. Oct. 20, 2008) (adopting a Magistrate Judge's recommendation of dismissal of a three [*12] page pro se complaint containing "disjointed, often repetitive, sometimes obscene, fragmented, largely unintelligible ramblings"); Harris v. U. S. Marshals Serv., No. 6:15-CV-99-KCC, 2015 U.S. Dist. LEXIS 81851, 2015 WL 3893058 at *2 (E.D. Ky. June 24, 2015) (holding that the Plaintiff's "rambling, indecipherable, and disjointed" filings warranted dismissal of his habeas petition); Green v. William, No. 1:17-cv-266-PLR-SKL, 2017 WL 6892910

at *2 (E.D. Tenn. Dec. 15, 2017); *Lewis v. N. Am. Specialty Ins. Co., No. 2:09-cv-179, 2009 U.S. Dist. LEXIS 47312, 2009 WL 1586210 at *1-3 (S.D. Ohio June 5, 2009)*.

Finally, while *pro se* complaints are held to less stringent standards and liberally construed, *Williams, 631 F.3d at 383* (quoting *Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)*, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989)*. When considering a *pro se* complaint, "the court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions." *Hendrock v. Gilbert, 68 F. App'x 573, 574 (6th Cir. 2003)* (affirming trial court's dismissal of a vague, conclusory, and factually insufficient complaint). Courts should not create claims that are not spelled out in a plaintiff's pleading. See *Clark v. National Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)*.

### III. PROPOSED CONCLUSIONS OF LAW

#### A. Failure to Prosecute Pursuant to *Rule 41(b) of the Federal Rules of Civil Procedure*

In reaching his failure to prosecute conclusion, the Magistrate Judge applies the following four factors:

1. Whether Hayes has exhibited willfulness, bad faith, or fault in failing [*13] to comply with the Magistrate Judge's prior orders,
2. Whether Hayes' failure to comply has resulted in prejudice to the Defendants,
3. Whether Hayes has been warned that failure to comply could lead to dismissal, and
4. Whether less drastic sanctions should be imposed.

See *Mager, 924 F.3d 831, 837 (6th Cir. 2019)*. The second factor is inapplicable to this case. This case is in the screening stage; therefore, Hayes' conduct has not resulted in prejudice to the Defendant. However, the Magistrate Judge concludes that the remaining factors all warrant dismissal.

Hayes' failure to file his EEOC charging documents is willful, in bad faith, and his fault. Hayes was ordered to provide his EEOC charging documents on August 29, 2019. (D.E. 10). On November 1, 2019, the Magistrate Judge issued an Order to Show Cause regarding Hayes' failure to comply with the August 29, 2019, Order. (D.E. 12). As of the date of this Report and Recommendation, Hayes has not filed his EEOC charging documents or responded to the Magistrate Judge's Order to Show Cause. These facts alone demonstrate that his failure to comply is willful, in bad faith, and as he is *pro se*, Hayes cannot blame the non-compliance on his counsel. The willfulness of his behavior [*14] is compounded by the fact that Hayes is an experienced *pro se* litigant and the fact that, in at least one other case, he previously provided the type of documents sought through the Magistrate Judge's order. Therefore, the Magistrate Judge concludes that the first factor militates towards dismissal.

Hayes was also explicitly warned that his failure to comply with the Court's orders could result in dismissal of this case. In her May 20, 2019, Order Granting Leave to Proceed *In Forma Pauperis*, Chief United States Magistrate Judge Diane Vescovo, explicitly warned Hayes that "Failure to comply with ... any other order of the court, may result in the dismissal of this case without further notice." (D.E. 8.) Similarly, in the undersigned Magistrate Judge's November 1, 2019, Order to Show Cause that his failure to respond to the order and/or show cause "may result in a report and recommendation to the presiding district judge of dismissal of this action pursuant to *Rule 41(b) of the Federal Rules of Civil*

*Procedure*. (D.E. 12.) Therefore, the Magistrate Judge also concludes the third factor weighs in favor of dismissal.

Despite the warnings from both the Chief Magistrate Judge and the undersigned Magistrate Judge that his failure to comply [*15] with orders of the court could result in dismissal, Hayes has continued to persist in his contumacious conduct. In fact, the Order to Show Cause offered Hayes an opportunity to respond the Magistrate Judge's concerns and explain his failure to comply with the August 29, 2019, order. However, Hayes failed to do so. Due to these circumstances, the Magistrate Judge concludes that a less drastic sanction would not be appropriate. Therefore, the fourth factor also supports dismissal.

As three of the four applicable factors support dismissal, the Magistrate Judge respectfully recommends that this matter be dismissed in its entirety pursuant to *Rule 41(b) of the Federal Rules of Civil Procedure*.

**B. Screening Pursuant to** *28 U.S.C. § 1915(e)(2)(B)*

Pursuant to *Keys v. Humana, Inc., 684 F.3d 605, 608-611, (6th Cir. 2012)*, the *prima facie* elements of employment discrimination claims are not pleading requirements. Therefore, at the pleading stage, courts should not dismiss a plaintiff's potential claims solely for his or her failure to allege such elements under the burden shifting standard set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, and its progeny. Instead, a court must determine whether a plaintiff has provided sufficient factual content for the court to reasonably infer the alleged illegal discrimination occurred. See *Keys, 684 F.3d 605, 610 (6th Cir. 2012)*. For the reasons set forth in detail [*16] below, the Magistrate Judge concludes that Hayes has set forth sufficient facts to state a claim for retaliation against Elmington under Title VII and the THRA. However, the Magistrate Judge also concludes that Hayes has not stated any other claims. Therefore, pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)*, the Magistrate Judge recommends dismissal of this entire action, with the exception of the Plaintiff's Title VII and THRA retaliation claims against Elmington.

**1. Individual and official capacity claims**

Hayes cannot bring his purported claims under Title VII, the ADA, the ADEA, the TDA, and the TPPA against his supervisors in their individual capacities because they "are not employers" for the purpose of such claims. *See St. John v. Au Bon Pain, No. 18-3600, 2019 WL 2909305 at *2 (6th Cir. May 22, 2019)* (internal punctuation omitted); *see also Sicuso v. Carrington Golf Club, LLC, No. 17-13938, 2019 U.S. Dist. LEXIS 10339, 2019 WL 296703 at *8 (E.D. Mich. Jan. 23, 2019)*; *Tennial v. UPS, No. 2:13-cv-02277-JTF-tmp, 2015 U.S. Dist. LEXIS 191464, 2015 WL 13022010 at *3 (W.D. Tenn. Nov. 12, 2015)*, affirmed by, *840 F.3d 292 (6th Cir. 2016)*; *Garner v. SDH Services East, LLC., 55 F. Supp.3d 1016, 1023-24 (M.D. Tenn. 2014)* (holding supervisors cannot be held individually liable under the TPPA and the TDA). Furthermore, the United States District Court for the Western District of Tennessee recognizes that there is no individual capacity liability under the THRA for discrimination or retaliation. *See Bowles v. Health Consultants, Inc., No. 2:16-cv-029282-STA-cgc, 2017 U.S. Dist. LEXIS 37554, 2017 WL 1026017 at *2-5 (W.D. Tenn. Mar. 16, 2017)* (discussing the statutory construction and legislative [*17] history of the THRA and holding that there is no individual liability under the THRA for discrimination and/or retaliation). Additionally, to the extent that Hayes attempts to bring claims against his supervisors in their official capacities, such claims are redundant and should be dismissed because the employer, Elmington, is named as a

Defendant in this case. See *Mauldin v. Inside Out Inc., No. 3:13-cv-00354-TMR, 2014 U.S. Dist. LEXIS 46228, 2014 WL 1342883 at *3-4 (S.D. Ohio Apr. 3, 2014)*. Therefore, the Magistrate Judge concludes that Hayes has not stated a claim against Defendants Kate Dennis, Tinnesha Harrison, Apryl Molton and Jimmie Richards in their individual or official capacities.

*2. Title VII and the THRA*

*a. Sections 704(a) and 706(g)*

Hayes identifies his Title VII claims as arising under sections 704(a) and 706(g). (D.E. 1, PageID 1.) Title VII is codified at *42 U.S.C. § 2000e et seq.* The codified version of the Title VII does not contain sections labeled 704(a) or 706(g). However, the original public law and its subsequent amendments do contain sections which are so labeled. See Civil Rights Act of 1964, *Pub. L. No. 88-352, 78 Stat. 257, 261 §§ 704, 706*; see also Equal Employment Opportunity Act, *Pub. L. 92-261, 86 Stat. 109 § 8(c)*. A comparison of the public laws and their codified versions demonstrates that Section 704(a) of Title VII is found, as amended, at *42 U.S.C.A. 2000e-3(a)*. This statute prohibits retaliation and provides:

> It shall be an [*18] unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*42 U.S.C.A. § 2000e-3(a)*. Similarly, Section 706(g) of Title VII is found, as amended, at *42 U.S.C.A. § 2000e-5(g)*. This provision authorizes the Court to order various types of remedies once an unlawful employment practice has been established. See *42 U.S.C.A. § 2000e-5(g)*. It does not provide a separate cause of action or basis for a claim. Therefore, the Magistrate Judge finds that Hayes has not stated a separate claim or cause of action under *Section 706(g) of Title VII*.

*b. Retaliation under Title VII*

Turning to Hayes retaliation claim under *Section 704(a)*, the Magistrate Judge must determine whether Hayes has alleged sufficient facts to reasonably infer that Elmington [*19] discriminated against him for making a Title VII discrimination charge or participating in a Title VII discrimination investigation. Hayes alleges that he made a discrimination complaint against LEDIC[6] and that Defendant Molton, one of his supervisor's at Elmington, was aware of his prior complaint. Hayes also alleges, that after Defendant Molton's arrival at Elmington, his supervisors directed the following actions towards him and none of his co-workers: (1) forcing him to complete tasks outside of the scope of his duties, (2) forcing him to work overtime by himself when previously two employees worked overtime, (3) forcing him to respond to complaints/service requests while another employee was on duty, (4) forcing him to return to full duty despite not being cleared by a doctor, and (5) ultimately terminating his employment are sufficient to satisfy the adverse employment action and/or retaliatory

---

[6] Hayes' complaints regarding the use of marijuana by tenants at Elmington are not protected activity under Title VII.

harassment element.[7]

Construing Haynes Complaint liberally, the vast majority of the problematic conduct began shortly after Defendant Molton's arrival.[8] Because at this juncture Hayes is entitled to all reasonable inferences, *O'Connor v. Nationwide Children's Hospital, 219 F.Supp.3d 673, 677 (S.D. Ohio 2016)*, the allegations contained in the Complaint are sufficient to [*20] plausibly establish that Hayes was discriminated against due to his prior discrimination charge. Therefore, Hayes has stated a claim for retaliation under Title VII against Elmington.

c. Discrimination under Title VII

Hayes only identifies his claims as arising under Sections 704(a) and 706(g) of Title VII of the Civil Rights Act of 1964. (D.E. 1, PageID 1.) However, he does make conclusory allegations concerning race and/or national origin discrimination when citing to the THRA. Therefore, assuming, *arguendo*, that he has attempted to state Title VII claim for race and/or national origin discrimination, for the reasons set forth below, his Complaint fails to do so.

---

[7] Hayes' only complaint prior to Defendant Molton's arrival concerned his obligation to use his personal vehicle without compensation.

[8] Hayes has not alleged many facts to demonstrate the alleged adverse actions were taken against him due to his prior discrimination charge. However, temporal proximity between the protected conduct and the adverse action can be sufficient to establish a prima facie casual connection. See *Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008)* ("Where an adverse employment action occurs very close in time after an employee learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a casual connection for the purposes of satisfying a prima facie case of retaliation.")

Title VII prohibits an employer from, in part, discriminating against an individual due to that individual's race or national origin. See 42 U.S.C.A. § 2000e-2(a). To state a claim for race or national origin discrimination, a plaintiff must provide sufficient factual allegations to allow a court to reasonably infer that her employer discriminated against her with respect to her compensation, terms, conditions, or privileges of employment, because of her race or national origin. See Keys, 684 F.3d 605 at 610. In *Keys*, the Sixth Circuit Court of Appeals reversed the district court's dismissal [*21] of the plaintiff's race discrimination claim because the plaintiff's complaint: (1) made allegations that she was treated differently from her Caucasian counterparts, (2) identified the relevant supervisors and persons by race, name and/or company title, (3) alleged that the plaintiff and other African Americans received adverse employment actions despite receiving satisfactory employment evaluations. 684 F.3d at 610. However, the Sixth Circuit has also recognized that conclusory allegations without sufficient supporting facts are insufficient to state an employment discrimination claim. *Smith v. Wrigley Manufacturing Company, LLC, 749 F. App'x 446, 448 (6th Cir. 2018)* (affirming dismissal of an age discrimination claim when the plaintiff failed to identify the names, ages, or qualifications of the younger employees who were allegedly treated differently, or any examples of how they were treated differently.)

Here, Hayes alleges that he is Native American. However, he has not alleged sufficient facts to demonstrate that he was discriminated against based upon his race or national origin. As a threshold matter, unlike the plaintiff in *Keys*, Hayes has failed to identify the race or national origin of any other persons involved in this matter. For example, it appears as if Hayes attempts [*22] to make a failure to promote claim, by asserting that he was more qualified for a supervisor

position than Defendant Richards. However, Hayes does not allege any facts concerning Defendant Richard's race or national origin. Similarly, Hayes does not allege that he applied for said position or was rejected for the position. Therefore, he has failed to allege sufficient facts to reasonably infer that Defendant Richards was chosen instead of Hayes because of race or national origin violation of Title VII.

d. The THRA

Finally, the analysis for retaliation and race/national origin discrimination under the THRA is identical to the Title VII analysis. See Tennial v. United Parcel Service, Inc., 840 F.3d 292, 302 (6th Cir. 2016); see also Johnson v. Cargill, Inc., 932 F.Supp.2d 872, 886, n.3 (W.D. Tenn. 2013). Therefore, for the reasons set forth above, the Magistrate Judge concludes that Hayes has not stated a claim for race and/or national origin discrimination under the THRA. However, the Magistrate Judge concludes that Hayes has stated a retaliation claim under the THRA against Elmington.

3. GINA

Plaintiff attempts to allege a claim under GINA. GINA prohibits an employer from discriminating or taking adverse employment actions against an employee "because of genetic information with respect to the employee." 42 U.S.C.A. § 2000ff-1(a)(1),(2). GINA also makes it [*23] an "unlawful employment practice for an employer to request, require, or purchase genetic information with respect to any employee or a family member of the employee," with some exceptions. 42 U.S.C.A. § 2000ff-1(b). For purposes of GINA, "genetic information" means information about an employee's "genetic tests," the "genetic tests of family members" of the employee, and "the manifestation of a disease or disorder in family members" of the employee. See 42 U.S.C. § 2000ff-(4)(A)(i)-(iii); see also Dumas v. Hurley Medical Center, 837 F.Supp.2d 655, 666 (E.D. Mich. 2011). A "genetic test" is "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A).

Hayes has not alleged that he was discriminated against due to genetic tests and/or the manifestation of a disease or disorder in his family members. Similarly, Hayes does not allege that any of the Defendants requested, required, or purchases genetic information from him or his family members. Therefore, Hayes has not stated a claim under GINA.

4. Age discrimination

The ADEA prohibits an employer from: (1) discriminating against a plaintiff due to their age and/or (2) retaliating against a plaintiff due to their opposition to age discrimination or participation in an investigation/proceeding [*24] concerning age discrimination. See Blizzard v. Marion Technical College, 698 F.3d 275, 283-290 (6th Cir. 2012); see also Blackburn v. Shelby County, 770 F.Supp.2d 896, 933-34 (W.D. Tenn. 2011) ("holding that in order prevail on an ADEA age discrimination claim, a plaintiff "must demonstrate that she was subjected to an adverse employment action based on her age").

Construing Hayes' Complaint liberally, he has not alleged sufficient facts to plausibly demonstrate that any of the alleged employment actions taken against him were a result of his age and/or his opposition to age discrimination or participation in an investigation concerning age discrimination. Hayes has alleged that he is 54 years old. However, he has not alleged any facts that would allow the Court to infer any of

Elmington's alleged discriminatory actions were taken against him due to his age. Therefore, the Magistrate Judge finds that Hayes has not stated a claim under the ADEA. Additionally, because the same analysis applies to Hayes purported age discrimination claims under the THRA, the Magistrate Judge also finds that Hayes has not stated a claim for age discrimination under the THRA. See *Pierson v. Quad/Graphics Printing Corp., 749 F.3d 530, 536 (6th Cir. 2014)* ("We assess age-discrimination claims brought under the THRA using the same analysis as those brought under the ADEA").

*5. Disability discrimination*

"The ADA prohibits discrimination [*25] by covered entities, including private employers, against qualified individuals with a disability." *Tinsley v. Caterpillar Financial Services, Corp., 766 F. App'x 337, 341 (6th Cir. 2019)* (internal punctuation and citations omitted). The ADA also prohibits retaliation due to an employee's opposition to discrimination on the basis of a disability or participation in an investigation into such discrimination. *See Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014)* (citing *42 U.S.C. § 12203(a)*). Here, Hayes has not stated a claim for retaliation under the ADA, because he has not alleged that he opposed discrimination on the basis of disability or participated in an investigation into such discrimination. Additionally, construing his Complaint liberally, Hayes has not stated a claim for discrimination under the ADA because (a) his work-place injury does not qualify as a disability under the ADA and (b) he has not alleged any facts to demonstrate that he was subjected to any adverse employment action due to his work-place injuries or PTSD.

*a. Work-place injuries*

The Sixth Circuit Court of Appeals has indicated that temporary injuries do not qualify as a disability under the ADA. See *Roush, 96 F.3d at 843* ("Generally, short-term, temporary restrictions are not substantially limiting.") After *Roush* was decided, Congress passed the ADA Amendments Act of 2008, *Pub. L. No. 110-325, 122 Stat 3553, 3554* ("ADAAA"). "The central purpose [*26] behind ... the ADAAA was to broaden the ADA's definition of 'disability.'" *Roan v. UPS, No. 3:17-cv-01178, 2019 U.S. Dist. LEXIS 84498, 2019 WL 2171488 at * 3 (M.D. Tenn. May 20, 2019)*. However, as thoroughly explained by the *Roan* Court:

> [A]s broadly as the ADAAA is to be construed, not every physical and mental impairment is considered a disability under the ADA. See *29 C.F.R. § 1630.2(j)(1)(ii)* ("[N]ot every impairment will constitute a disability within the meaning of [the ADA]...."). Specifically, non-severe impairments that last only a short period of time are not necessarily covered by the ADA. *See, e.g., Gleason v. Food City 654, No. 3:13-CV-712-PLR-HBG, 2015 U.S. Dist. LEXIS 52558, 2015 WL 1815686, at *5 (E.D. Tenn. April 22, 2015)* (finding that the plaintiff failed to establish that he was disabled under the ADA where his restrictions on lifting and the number of hours worked were not severe and lasted only one month); *Shaughnessy v. Xerox Corp., No. 12-cv-6158, 2015 U.S. Dist. LEXIS 39537, 2015 WL 1431687, at *4 (W.D.N.Y. March 27, 2015)* (finding that plaintiff's sprained ankle did not constitute a disability where "there is no evidence suggesting that the injury was, or was ever thought to be, a long-term condition"); *Martinez v. New York State Div. of Human Rights, No. 1:13-cv-1252, 2015 U.S. Dist. LEXIS 12536, 2015 WL 437399, at *7 (S.D.N.Y. Feb. 2, 2015)* ("While, as plaintiff correctly points out, the ADA Amendments Act of 2008...broadened the definition of a disability under the law, not all impairments are sufficiently [*27]

substantial to be considered disabilities under the ADA."); *Mastrio v. Eurest Servs., Inc.*, No. 3:13-cv-00564, 2014 WL 840229, at *4 (D. Conn. Mar. 4, 2014) (noting that "even under the broadest definition of disability, short term or temporary impairments generally do still not render a person disabled within the meaning of the statute"). *See also* Margaret C. Jasper, *Legal Almanac: The Americans With Disabilities Act* § 2.5 (2012) ("[A]n individual with a minor, non-chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not be covered [by the ADA]. For example, an employee suffers a broken wrist that is expected to heal, but while it is healing he is unable to perform the essential functions of his job as an assembly-line worker. This employee is not protected by the ADA because, although he is 'impaired,' the impairment does not substantially limit a major life activity because it is of limited duration and will have no long-term effect.").

[Roan, 2019 U.S. Dist. LEXIS 84498, 2019 WL 2171488 at *4](). The District Court for the Middle District then relied upon that reasoning to find that a plaintiff's diagnosis of a "strain of muscle, facia and tendon in his right hip" were insufficient to establish a disability under the ADA. [2019 U.S. Dist. LEXIS 84498, 2019 WL 2171488 at 5](). Despite the plaintiff's work [*28] restrictions and assertion that his injury impaired his ability to walk, stand, bend, and lift, the District Court found that the plaintiff's short-term, minor, non-chronic muscle strain simply did not qualify as a disability under the ADA. *Id.* Similarly, in *Primm v. Department of Human Services*, No. 16-6837, 2017 WL 10646487 at *3-4 (6th Cir. Aug. 17, 2017), the Sixth Circuit Court of Appeals affirmed the dismissal of the plaintiff's purported ADA claim despite her claim that she suffered from carpal tunnel syndrome.

In the case at hand, the Magistrate Judge finds that factual allegations contained within Hayes' Complaint indicate that he sustained minor, temporary injuries. Mr. Hayes indicates that his work-place injuries of cuts, abrasions, swelling, and unspecified trauma to the left side of his body resulted in physical therapy and only four weeks of work restrictions. (D.E. 1, PageID 6-7, ¶¶ 14-5.) While not controlling, the Magistrate Judge finds the reasoning of the District Court in *Roane* is persuasive and applicable to this case. Therefore, Hayes has not stated a claim under the ADA for discrimination based upon his work-place injuries.

b. *Adverse action due to "disability"*

Furthermore, assuming Hayes work-place injuries did qualify under the ADA or that Hayes was attempting [*29] to allege discrimination based upon his PTSD, he still fails to state a claim under the ADA. Hayes has not alleged any facts to demonstrate that any of the Defendants took any adverse action against him due to his work-place injuries or PTSD. Therefore, the Magistrate Judge finds that Mr. Hayes has not stated a claim under the ADA for discrimination.

c. *TDA*

Finally, the analysis for Hayes' TDA claim mirrors that of the ADA. *See* [Dunn v. Chattanooga Publ. Co., 993 F. Supp. 2d 830, 835-36 (M.D. Tenn. 2014)]() (recognizing that the analysis under the ADA and the TDA is the same, with the sole exception being that the TDA does not require a reasonable accommodation.) Therefore, the Magistrate Judge also concludes that Hayes has not stated a claim on which relief can be granted under the TDA.

6. *Remaining state law claims*

a. *TPPA*

The TPPA prohibits an employee from being "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). In order to prevail under the TPPA, a plaintiff must show:

(1) his status as an employee of the defendant,

(2) his refusal to participate in, or remain silent about, illegal activities,

(3) his terminations, and

(4) that he was terminated **solely** due to his refusal to participate in, [*30] or remain silent about the illegal activities.

See Amos v. McNairy County, 622 F. App'x 529, 536 (6th Cir. 2015) (emphasis added). However, the TPPA is a narrow derogation of the employment-at-will doctrine and "must be limited to situations in which an employee has exposed the wrongful conduct of the employer in furtherance of the public interest." See Hayes v. Formac Stables, Inc., 463 S.W.3d 34, 41 (Tenn. 2015); see also Hastings v. Remarketing Solutions, Inc., 316 F. App'x 488, 489 (6th Cir. 2009) (affirming dismissal of TPPA and common law retaliation claims when the plaintiff "failed to assert that [the employer] had engaged in an illegal activity that implicated important public policy concerns.")

Under the TPPA, an employee is not entitled to protection simply for reporting illegal conduct; rather, the report must further an important public interest. See Young v. UPS, 992 F. Supp. 2d 817, 839 (M.D. Tenn. 2014) ("[I]t is essential that the employee's attempt to expose illegal or unsafe practices do more than merely advance the employee's private interest.") A plaintiff's failure to assert that that employer's illegal activity implicated important public policy concerns is an appropriate ground for dismissal. See Hall v. Wal-Mart Stores, Inc., No. 3:16-CV-2818, 2017 U.S. Dist. LEXIS 75208, 2017 WL 2131649 at *3-4 (M.D. Tenn. May 16, 2017) (dismissing plaintiff's TPPA claim because the employer's alleged illegal activity, discrimination against the plaintiff in violation of the THRA and Title VII, involved the plaintiff's [*31] private and proprietary interest, not a public interest). Finally, the under TPPA, the whistleblowing activity must be the **sole** reason for the employee's discharge. Hicks v. Benton County Board of Education, 222 F. Supp.3d 613, 642-43 (W.D. Tenn. 2016) (holding that the plaintiff did not satisfy the sole causation requirement because she alleged that her employment was also terminated "for reasons that cannot be considered whistleblowing activity for the purposes of the TPPA.")

Hayes' Complaint appears to indicate that prior to his termination, the only report of illegal activity made by him concerning his employment at Elmington was regarding the use of marijuana by tenants. As at threshold matter, the Magistrate Judge concludes that the TPPA does not apply to Hayes' reporting of the tenants' marijuana use to other Elmington employees, because the reporting did not expose the wrongful conduct **of his employer**. See Hayes, 463 S.W.3d at 41. Additionally, Hayes indicates that he only reported the marijuana use because it was illegal and against his morals and his health. (D.E. 1, PageID 3, ¶ 8.) Therefore, his reporting of the marijuana use to his supervisors does not appear to be based upon public interest, but rather his private concerns. Finally, Hayes has failed to allege sufficient facts [*32] for the Magistrate Judge to reasonably infer that he was terminated by Elmington solely for reporting to his supervisors that tenants were using marijuana in their apartments. Therefore, Hayes has not stated a claim under the TPPA.

b. Tennessee Constitution

To the extent that Hayes attempts to allege a claim

based upon violation of Tennessee's Constitution, such claims must be dismissed. There is no private right of action for violation of the Tennessee Constitution. *See Cline v. Rogers, 87 F.3d 176, 179-180 (6th Cir. 1996)*. Therefore, Hayes he has not stated a claim on which relief can be granted under Tennessee's Constitution.

*c. Other state claims*

Hayes makes conclusory requests for relief based upon theories concerning breach of contract, workers compensation law, and the intentional infliction of emotional distress. (D.E. 1, PageID 16, ¶¶ 2-3.) However, the Complaint lacks sufficient factual content to support such relief. These conclusory requests for relief are insufficient to state a claim.

## IV. RECOMMENDATION

For all of these reasons, the Magistrate Judge recommends that the Court dismiss all of the Plaintiff's purported claims for failure to prosecute pursuant to *Rule 41(b) of the Federal Rules of Civil Procedure*. Alternatively, the Magistrate Judge recommends that the Court dismiss [*33] all of the Plaintiff's claims, with the exception of his Title VII and THRA retaliation claims against Elmington, for failure to state a claim on which relief can be granted.

Respectfully submitted this 20th day December, 2019.

/s/ Jon A. York

UNITED STATES MAGISTRATE JUDGE

End of Document