EXHIBIT 9

 Neutral

As of: March 16, 2022 10:58 AM Z

# Koch v. Lightning Transp., LLC

United States District Court for the Middle District of Tennessee, Nashville Division

January 6, 2015, Filed

Civil No. 3:13-0225

**Reporter**

2015 U.S. Dist. LEXIS 707 *; 2015 WL 66971

TIFFANY KOCH, Plaintiff, v. LIGHTNING TRANSPORTATION, LLC, EMPLOYEE SOLUTIONS, LLC d/b/a LIGHTNING TRANSPORTATION SERVICES, and DONALD DENNING, JC., individually, Defendants.

**Subsequent History:** Motion for new trial denied by, Motion granted by Koch v. Lightning Transp., LLC, 2015 U.S. Dist. LEXIS 59375 (M.D. Tenn., May 6, 2015)

## Core Terms

maternity leave, promise, terminated, promissory estoppel, return to work, pregnancy discrimination, promissory fraud, misrepresentation, genuine issue of material fact, unemployment, alleges, summary judgment, full salary, pregnancy, rehire, negligent misrepresentation, adverse employment action, prima facie case, pretext, quit, intentional misrepresentation, adverse employment decision, non discriminatory reason, summary judgment motion, unemployment benefits, honest belief, text message, circumstances, undisputed, at-will

**Counsel:** [*1] For Tiffany Koch, Plaintiff: Robert Charles Bigelow, LEAD ATTORNEY, Dickinson Wright PLLC, Nashville, TN; Joshua L. Burgener, Dickinson Wright PLLC (Nashville Office), Nashville, TN.

For Lightning Transportation, LLC, Donald Denning, Jr., Defendants: James B. Johnson, LEAD ATTORNEY, Stites & Harbison, PLLC, Nashville, TN; Kevin P. Hartley, LEAD ATTORNEY, Stites & Harbison, PLLC (Nashville), Nashville, TN; Lauren Paxton Roberts, LEAD ATTORNEY, Stites & Harbison, PLLC (Nashville Office), Nashville, TN.

For Employee Solutions LLC, Defendant: James B. Johnson, Stites & Harbison, PLLC, Nashville, TN.

**Judges:** KEVIN H. SHARP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KEVIN H. SHARP

## Opinion

### MEMORANDUM

Plaintiff's complaint before this Court alleges unlawful discrimination on the basis of pregnancy in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e, et.seq., and various state law claims including breach of contract, promissory fraud, promissory estoppel, intentional misrepresentation and negligent misrepresentation. Defendant Lightning Transportation, LLC, Employee Solutions, LLC d/b/a Lightning Transportation and as Lightning Transportation

Services, and Defendant Donald [*2] Denning Jr. have filed a Motion for Summary Judgment on all claims in the Complaint. This motion, for the reasons that follow, will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Defendants Lightning Transportation, LLC and Employee Solutions, LLC (collectively, "Lightning") are limited liability companies with their principal places of business in Tennessee. (Docket No. 27 at ¶ 8-9). Defendant Donald Denning is the owner and an officer of Lightning. (Docket No. 27 at ¶18). Plaintiff Tiffany Koch is a former employee of either Lightning Transportation, LLC or Employee Solutions, LLC. Although Plaintiff received her paycheck from Employee Solutions, LLC, Lightning Transportation, LLC and Denning made all the decisions related to the terms and conditions of Plaintiff's employment. (Docket No. 17 at ¶ 13).

At the beginning of July, 2010, Plaintiff informed Denning that she was pregnant. (Docket No. 27 at ¶ 2). Although Lightning did not have a maternity leave policy, Denning told Plaintiff "not to worry about it." (Docket No. 27 at ¶ 4). On September 28, 2010, Plaintiff met with Denning to discuss her pregnancy leave. (Docket No. 27 at ¶ 5). During this meeting, Plaintiff alleges [*3] that she entered into an oral contract, consummated with a handshake, in which Defendants agreed to allow Plaintiff eight weeks of maternity leave. Plaintiff also alleges that Defendants agreed to pay Plaintiff her salary for six weeks of leave. (Docket No. 25-1 at p. 99-111). Plaintiff created a typed document purporting to memorialize the September 28, 2010 agreement, which was never signed by Defendants. (Docket No. 27 at ¶¶ 8-11).

On January 13, 2011, six days before Plaintiff left work and delivered her child, Plaintiff met with Denning again to discuss her maternity leave. (Docket No. 27 at ¶ 13). During this conversation, Denning unequivocally promised Plaintiff at least six different times that she could return to work at the conclusion of her maternity leave. (Docket No. 27 ¶¶ 18-20, 22, 24-25, 27-28). Denning also informed Plaintiff that he could not pay her a full salary during her maternity leave, and suggested to Plaintiff that she apply for unemployment benefits once her maternity leave started. (Docket No. 27 ¶ 16-17). Plaintiff worked on January 18, 2011, (Docket No. 17 ¶ 34) and on January 19, 2011, Plaintiff went on leave to deliver her first child. (Docket No. 25-1 [*4] at p. 129).

After receiving no leave payments from Defendants, Plaintiff texted Denning the following: "Hey D.J., I just got your text, was wondering if it would be easier on you and less then [sic] a burden for me to do the unemployment think [sic] which you offered when we talked." (Docket No. 27 at ¶ 45). Denning responded, "Tiffany,...to tell you the truth things are rough right now and it would probably be best for you." (Docket No. 27 at ¶ 46). Plaintiff filed for unemployment compensation benefits on February 3, 2011. (Docket No. 27 at ¶ 41).

Plaintiff sent Denning two more e-mails discussing her maternity leave and return date. The second e-mail, sent on March 21, 2011, said, "I am assuming you are wanting me to remain on laid-off status. Until you contact me and tell me differently, I will continue to stay home with [my son]." (Docket No. 27 at ¶ 48). Denning responded, "[I]f you can continue with the unemployment, that would be great." (Docket No. 27 at ¶ 49). Defendants subsequently informed Plaintiff that she was terminated, and despite Plaintiff's numerous requests to return to work, she was denied the opportunity to return to her position. (Docket No. 17 ¶¶ 52-53).

Meanwhile, [*5] about a month before Plaintiff left to

have her baby, Denning spoke with another woman, Nicole Vendure, about "filling in" for Plaintiff. (Docket No. 25-3 at p. 61). Defendants hired Vendure in January 2011 to fill Plaintiff's position and with the understanding that Vendure's employment with Lightning would be long-term. (Docket No. 25-6 at p. 7, 15, 33).

Plaintiff's complaint before this Court alleges unlawful discrimination in violation of Title VII and the Pregnancy Discrimination Act as a result of Plaintiff's termination during her pregnancy leave. Plaintiff also alleges that Defendants breached oral contracts and reneged on promises regarding Plaintiff's right to six weeks of maternity pay and the ability to return to work after her maternity leave was over. Finally, Plaintiff alleges that Defendants made intentional and negligent misrepresentations related to the circumstances of Plaintiff's leave and the status of Vendure's employment.

## II. APPLICATION OF THE LAW

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if [*6] the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538, (1986). However, the nonmoving party must rely on more than "[c]onclusory assertions, supported only by Plaintiff's own opinions." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008). Rather, Plaintiffs must "set out specific facts showing a genuine issue for trial." Harvey v. Campbell County, Tenn., 453 Fed. Appx. 557, 561 (6th Cir. 2011).

### a. Pregnancy Discrimination

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court established a clear framework for analyzing Title VII cases which may also be applied to those cases arising under the Pregnancy Discrimination Act. Ensley-Gaines v. Runyon, 100 F.3d 1220, 1223-24 (6th Cir. 1996) (citing McDonnell Douglas, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). First, the plaintiff has the burden of proving a *prima facie* case of discrimination. Id. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the defendant is able to articulate such a reason, the plaintiff then carries the burden of proving that reason to be a mere pretext for discrimination. Id.

In order to show a *prima facie* case of pregnancy discrimination under Title VII, a plaintiff must show that "(1) she was pregnant, [*7] (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." Asmo v. Keane, Inc., 471 F.3d 588, 592 (6th Cir. 2006) (citing Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000)). Here, Defendants contest the third and fourth elements, arguing that Plaintiff was not subject to an adverse employment decision and, if she was, there was no nexus between Plaintiff's pregnancy and the adverse employment decision. Viewing the facts in the light most favorable to Plaintiff, however, this Court concludes that undisputed material facts exist concerning both elements, and Plaintiff, therefore, has

established a *prima facie* case of pregnancy discrimination.

Defendants argue that Plaintiff did not suffer an adverse employment action because she took unpaid maternity leave, and "after coming to the realization that she might not be paid as she had hoped...Plaintiff on her own volition informed the Tennessee Department of Labor and Workforce Development that she had been laid-off and she filed for unemployment compensation benefits." (Docket No. 24 p. 22). In other words, Defendants contend that F.3d Plaintiff did not suffer an adverse employment action at the hands of Defendants; rather, [*8] Plaintiff voluntarily quit. Defendants, however, admit in their Answer that they informed Plaintiff she was terminated and denied her the opportunity to return to her position with Lightning. (Docket No. 17 ¶¶ 52-53). An employer's decision to terminate an employee is a classic example of an adverse employment action. *Vincent v. Brewer Co., 514 F.3d 489, 495 (6th Cir. 2007)*.

Even without considering Defendants' admission, Plaintiff has offered evidence sufficient to raise a genuine issue of material fact regarding whether she was terminated. It is undisputed that Denning suggested to Plaintiff that she apply for unemployment benefits once her maternity leave started, and Defendants concede that once Plaintiff was out on leave, Denning told Plaintiff in a text message that going on unemployment "would probably be best for you." (Docket No. 27 ¶ 46). Plaintiff has also presented evidence that she expected Denning to contact her when he wanted her to return to work, and there is nothing in the record indicating that Denning ever contacted Plaintiff in this regard. Under these facts, Plaintiff has at least presented a cognizable claim that Defendants terminated her by encouraging her to convert her employment status from "on leave" to "laid [*9] off" and, thereafter, failing to rehire her. See *Vincent, 514 F.3d 489, 494-95* (finding that employer's decision to lay off employee and never recall her can constitute an adverse employment action where plaintiff offered evidence that employer's normal practice was to contact laid-off employees to return to work and employer failed to do so). See also, *Fisher v. Rizzo Bros. Painting Contractors, 403 F. Supp. 2d 593, 600 (E.D. Ky. 2005)* (finding that Defendant's failure to re-hire/reinstate Plaintiff constitutes an adverse employment action under the PDA).

Defendants also argue that Plaintiff has failed to establish a nexus between her pregnancy and the adverse employment decision. One way for the plaintiff to establish this "nexus" is to show that there was a "temporal proximity" between the effects of her pregnancy and the adverse employment decision. *Asmo, 471 F.3d at 593*. Plaintiff has offered evidence showing that Defendants were aware that Plaintiff's maternity leave would begin sometime around her due date in mid to late January. (Docket No. 29 p. 3) Around the same time, Defendants hired another woman who was not pregnant, Vendure, to take over Plaintiff's position at Lightning. Also during the course of Plaintiff's leave, Denning told Plaintiff that going on unemployment "would be best for you" and, thereafter, [*10] failed to rehire her. (Docket No. 27 ¶ 46). This close temporal proximity between Plaintiff's maternity leave and her termination and replacement is sufficient to support a *prima facie* case of pregnancy discrimination. See *Carreno v. DOJI, Inc., 668 F. Supp. 2d 1053, 1061-62 (M.D. Tenn. 2009)* (finding that the temporal proximity between Plaintiff's medical leave due to pregnancy and her termination was sufficient to support a *prima facie* case of pregnancy discrimination.)

Under the *McDonell-Douglas* framework, once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendants to articulate a legitimate,

nondiscriminatory reason for their actions. In this case, Defendants assert that Plaintiff's termination was the result of a legitimate belief that she voluntarily quit her employment. Since the Defendants have articulated a legitimate, nondiscriminatory reason for her termination, the burden shifts back to the Plaintiff to prove that the reason is a mere pretext for discrimination.

A Plaintiff can show pretext in three interrelated ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's [*11] action." *Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir. 2012)* (citing *Romans v. Mich. Dep't of Human Servs., 668 F.3d 826, 839 (6th Cir. 2012)*). These three categories are simply a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Id.* (internal quotation marks omitted). This Court finds that the Plaintiff has offered evidence sufficient to raise a genuine issue of material fact regarding whether Defendants' legitimate reason for terminating Plaintiff (i.e., she quit) is a mere pretext for discrimination.

First, Defendants admit in their Answer that they told Plaintiff she was terminated and denied her an opportunity to return to her position at Lightning. This admission is contrary to Defendants' assertion that Plaintiff voluntarily quit. Further, Defendants admit that Denning encouraged Plaintiff to apply for unemployment benefits twice, which supports the theory that Defendants actively terminated Plaintiff and could not have mistakenly thought she quit. It is also undisputed that on February 9, 2011, Plaintiff sent an e-mail to Denning which said, in pertinent part, "I filed for unemployment last Thursday like you advised, is the 21st of March still a good time for me to come back to work?" (Docket No. 27 ¶ [*12] 47). This e-mail could show that Defendants knew Plaintiff did not voluntarily quit her employment, despite the fact that she applied for unemployment benefits.

Finally, there is some evidence in the record that Lightning used financial difficulties with the business as an excuse not to pay or rehire Plaintiff, which may discredit Defendant's theory that Defendants did not terminate her. For example, in response to a text message from Plaintiff asking whether she should go on unemployment, Denning responded, "[T]o tell you the truth, things are rough right now and it would probably be best for you," and in a February 9, 2011 e-mail, Plaintiff told Denning, "I know you said things have been pretty bad there...." (Docket No. ¶¶ 46-47). Also, Denning admits in his deposition that Lightning couldn't afford to pay both Plaintiff and her replacement because Lightning was experiencing financial difficulties. (Docket No. 25-4 p. 36). Despite this evidence, Defendants do not argue that financial difficulties were the reason for Plaintiff's termination; rather, Defendants argue that they thought she voluntarily quit. These seemingly contradictory facts could illustrate that Defendants' legitimate, [*13] nondiscriminatory reason is not credible. Accordingly, the issue of whether Defendants' legitimate, nondiscriminatory reason for Plaintiff's termination is a mere pretext for pregnancy discrimination contains genuine issues of material fact, and must survive summary judgment.

Nevertheless, in their Motion, Defendants argue that they are entitled to summary judgment on the pregnancy discrimination claim under the "honest belief" doctrine. Specifically, Defendants argue that because they honestly believed that Plaintiff's application for and acceptance of unemployment benefits meant that they did not have to rehire her, Plaintiff cannot show pretext simply because she offers proof that Defendants were incorrect in their belief. However, the honest belief doctrine applies to defendants who have an honest belief that their *reasons* for the adverse employment

action were legitimate. *Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001)*. Here, in contrast, Defendants are arguing that they had an honest belief that no adverse employment action occurred. The honest belief doctrine does not apply under such circumstances.

Furthermore, Defendants' argument is essentially a claim that they did not believe they were obligated under the law to rehire [*14] Plaintiff because she was employed at-will. However, it is well established that the protections afforded by the federal antidiscrimination statutes place significant limitations on the employment at-will doctrine, notwithstanding Defendants' "honest belief" to the contrary. See *Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997)* ("In Tennessee an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision.")

Because Plaintiff has established a *prima facie* case of pregnancy discrimination and has raised a genuine issue of material fact regarding whether Defendants' legitimate, nondiscriminatory reason is a mere pretext, Plaintiff's claim survives summary judgment and Defendants' motion related to this claim will be denied.

### b. Breach of Contract

Plaintiff claims that Defendants breached an agreement to provide Plaintiff with six weeks of paid maternity leave and an additional two weeks of unpaid maternity leave at the conclusion of which she would be allowed to return to work. In Tennessee, a breach of contract claim includes the following [*15] elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)*. Defendants argue that Plaintiff is unable to satisfy the first element and, therefore, her breach of contract claim cannot survive a motion for summary judgment.

Viewing the evidence in the light most favorable to Plaintiff, this Court concludes that Plaintiff has shown evidence sufficient to raise a genuine issue of material fact regarding whether she had an oral contract with Defendants to pay her a full salary for six weeks during her maternity leave. A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Higgins v. Oil, Chemical and Atomic Workers Intern. Union, Local No. 3-677, 811 S.W.2d 875, 879 (Tenn. 1991)*. In her sworn deposition testimony, Plaintiff alleges that on September 28, 2010, Defendants orally promised to pay Plaintiff her salary for six weeks of maternity leave, and the agreement was consummated with a handshake. This testimony [*16] alone allows Plaintiff's breach of contract claim regarding her maternity pay to survive a motion for summary judgment. See *Fed. R. Civ. P. 56 (c)* (requiring a genuinely disputed fact to be supported by particular parts of materials in the record, including depositions).

Plaintiff also asserts a claim for breach of an oral agreement promising Plaintiff a position when she returned from 8 weeks of maternity leave. Because Plaintiff failed to offer any evidence of an employment contract for a definite term, this claim must be dismissed. In Tennessee, it is presumed that an employee is employed on an "at will" basis. *Davis v. Connecticut General Life Ins. Co., 743 F.Supp. 1273, 1280 (M.D. Tenn. 1990)*. Under this rule, an employer or

employee may "terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." *Stein, 945 S.W.2d 714 (Tenn. 1997)*. The "at will" presumption can only be overcome by specific language guaranteeing the employee a definite term of employment. *Davis, 743 F. Supp. 1273, 1280*.

Here, Plaintiff has not offered any evidence of an employment contract for a definite term. Defendants were, therefore, entitled under the "at will" employment doctrine to terminate or decline to rehire Plaintiff at any time, notwithstanding a promise to rehire or allow Plaintiff to return [*17] to work after the conclusion of her maternity leave. Thus, Defendants' Motion for Summary Judgment related to an agreement promising Plaintiff a job at the conclusion of her maternity leave will be granted.

c. Promissory Fraud

The basic elements for a fraud action are: "(1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation falsity—that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise, *Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)* (citations omitted). The standard for proving promissory fraud is that a representation must be made with the present intent not to perform. *Steed Realty v. Oveisi, 823 S.W.2d 195, 200 (Tenn. Ct. App. 1991)* (citing *Fowler v. Happy Goodman Family, 575 S.W.2d 496, 499-500 (Tenn. 1978)*. Promissory fraud must be shown by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promise. *Farmers & Merchants Bank v. Petty, 664 S.W.2d 77, 80-81 (Tenn. Ct. App. 1983)*. In her complaint, Plaintiff contends that Defendants committed [*18] promissory fraud against her when Denning promised that she could take six weeks of paid maternity leave plus two weeks of unpaid maternity leave. Plaintiff also claims that promissory fraud occurred when Denning told Plaintiff she would be able to return to her job after her maternity leave was completed.

Considering the evidence in the light most favorable to Plaintiff, this Court concludes that Plaintiff has raised a genuine issue of material fact regarding whether Defendants intentionally misrepresented that Plaintiff could take six weeks of paid maternity leave. Plaintiff alleges in her deposition that on September 28, 2010, Defendants orally promised to pay Plaintiff her salary for six weeks of maternity leave, and the agreement was consummated with a handshake. It is undisputed, however, that on January 13, 2011, six days before Plaintiff left work to have her baby, Denning encouraged Plaintiff to apply for unemployment benefits in lieu of being paid by Lightning. It is also undisputed that Denning made statements indicating that Lightning might not be able to pay Plaintiff her full salary while she was on leave. For example, Denning told Plaintiff, "So there's going to be some [*19] money there for me to pay you, but your full salary, I just can't." (Docket No. 27 ¶ 15). This evidence is enough to raise a genuine issue of material fact regarding whether Defendants ever intended to pay Plaintiff her full salary for six weeks of maternity leave, despite Denning's promise to the contrary.

Furthermore, the facts show that Plaintiff was reasonable in her reliance on Denning's representation. Denning, one of the founders and owners of Lightning,

promised Plaintiff she would be paid her full salary for six weeks of maternity leave. Relying on this promise, Plaintiff went on a maternity leave that was scheduled to last several weeks. Absent Denning's promise to pay, Plaintiff might have chosen to take a shorter maternity leave or no leave at all. As it stands, Plaintiff took maternity leave, vacated her position for an extended period of time, and allowed Lightning to fill her position with a new, full time employee. These facts could support a finding that Plaintiff reasonably relied on Denning's material representations to her detriment. Thus, Plaintiff's promissory fraud claim regarding Denning's promise that she would be paid her salary for six weeks of maternity leave [*20] must survive Defendants' motion for summary judgment.

Plaintiff has failed, however, to present evidence sufficient to raise a genuine issue of material fact regarding whether she could return to work at the conclusion of her maternity leave. Specifically, Plaintiff cannot establish that she reasonably relied on the Defendants' representation. Plaintiff's status as an at-will employee meant that Defendants could have terminated her employment at any time for any reason; therefore, it was not reasonable for her to rely on representations to the contrary. As such, Plaintiff's claim for promissory fraud related to Defendants' promise that she could return to work at the conclusion of her maternity leave will be dismissed.

### d. Promissory Estoppel

To succeed on her promissory estoppel claim, Plaintiff is required to show "(1) that a promise was made; (2) that the promise is unambiguous and not unenforceably vague; and (3) that she reasonably relied upon the promise to her detriment." *Chavez v. Broadway Elec. Serv. Corp., 245 S.W.3d 398, 404-05 (Tenn. Ct. App. 2007)* (citing *Rice v. NN, Inc. Ball & Roller Division, 210 S.W.3d 536, 544 (Tenn.Ct.App.2006)*; *Calabro v. Calabro, 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999)*; *Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991)*; *Wilson v. Price, 195 S.W.3d 661, 670 (Tenn. Ct. App. 2005)*. A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *Id.* (citing *EnGenius Entertainment, Inc. v. Herenton, 971 S.W.2d 12, 19 (Tenn. Ct. App. 1997)*; *Wilson, 195 S.W.3d at 670*). Tennessee courts limit the application of promissory estoppel to [*21] exceptional cases where the circumstances border on actual fraud or where the defendant had an improper motive or gained an unconscionable advantage. See *Id. at 406 (Tenn. Ct. App. 2007)* (citing *Shedd v. Gaylord Entertainment Co., 118 S.W.3d 695 (Tenn. Ct. App. 2003))*. In her complaint, Plaintiff bases her promissory estoppel claim on Denning's promises that she could take eight weeks of maternity leave (with six weeks paid), she would be able to return to her position after her maternity leave, and she would not be terminated.

As an initial matter, this Court was unable to identify any evidence in the record showing that Defendants broadly promised Plaintiff that she would not be terminated; rather, the record suggests that Denning promised Plaintiff several times that she could go on maternity leave and have a position with the company when her leave was over. Any promissory estoppel claim based on a broad promise not to terminate Plaintiff is, therefore, dismissed.

On the other hand, Plaintiff offers ample evidence that Denning promised Plaintiff she could go on maternity leave and have a position with the company when she came back. These promises, however, are too ambiguous and vague to be enforceable under a theory of promissory estoppel. Specifically, Denning did not specify how [*22] long Plaintiff's maternity leave could last. The ambiguity of Denning's promises is illustrated

by the following statements which both parties admit took place as part of a conversation between Plaintiff and Denning in January of 2011: "[W]hen you're ready to come back, you come back," (Docket No. 27 at ¶ 27) and "[W]hen you're ready to come back, eight weeks, ten weeks, whatever that week is, you'll have a position." (Docket No. 27 at ¶ 25). These statements clearly do not specify how long Plaintiff may take maternity leave and are, therefore, unenforceably vague.

Furthermore, Plaintiff's status as an at-will employee makes it very difficult for her to establish a claim of promissory estoppel because it is hard to prove the third element of reasonable reliance. *Wright v. Wacker-Chemie AG, 2014 U.S. Dist. LEXIS 105337, 2014 WL 3810584 at \*15 (E.D. Tenn. Aug. 1, 2014)* (citing *Chapman v. S. Natural Gas Co., 2011 U.S. Dist. LEXIS 25129, 2011 WL 88918 at \*5-6 (E.D. Tenn. March 11, 2011)*. Thus, courts have held that a Plaintiff who is an at-will employee may prevail on a promissory estoppel claim only under exceptional circumstances. *2014 U.S. Dist. LEXIS 105337, [WL] at \* 16*. Here, Defendants' promise that Plaintiff, who was an at-will employee, could return to work at the conclusion of her maternity leave does not present an exceptional circumstance, is not actionable under a claim of promissory estoppel, and will be dismissed.

Plaintiff has, however, [*23] presented enough evidence to raise a genuine issue of material fact regarding whether Defendants' September 28th promise to Plaintiff that she would be paid her salary for six weeks of maternity leave constitutes an exceptional circumstance for promissory estoppel purposes. Exceptional circumstances may include situations in which the defendant's misrepresentations are fraudulent or "intentionally false." *2014 U.S. Dist. LEXIS 105337, [WL] at \*16*. In this case, undisputed evidence that Denning encouraged Plaintiff to apply for benefits in lieu of receiving leave pay and indicated that Lightning might not be able to pay her a full salary during her leave could evidence a present, fraudulent intent on the part of Defendants not to pay. Accordingly, Plaintiff's claim for promissory estoppel related to Defendants' promise to pay her a full salary for six weeks of maternity leave will survive summary judgment.

e. Intentional and Negligent Misrepresentation

In order to base a claim on intentional misrepresentation, Plaintiff must show: "1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation [*24] was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation." *Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008)*. To succeed on a claim of negligent misrepresentation, Plaintiff must establish "that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Morrison v. Allen, 338 S.W.3d 417, 436 (Tenn. 2011)*. In Tennessee, misrepresentations must be of an existing or past fact, not of an opinion or conjecture as to future events. *Brungard v. Caprice Records, Inc., 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980)* (citing *Edwards v. Travelers Insurance of Hartford, Conn., 563 F.2d 105 (6th Cir. 1977))*.

In her complaint, Plaintiff alleges that Denning intentionally misrepresented that she could return to her same job after 8 weeks of maternity leave. She also

claims that Denning's text message, "If you can continue with the unemployment that will be great. Things are looking up and if it continues we will need you back," is an intentional misrepresentation. Because none of these statements are a representation of an existing or past fact, Plaintiff's intentional and negligent misrepresentation claims must be dismissed.

Denning's [*25] statement that Plaintiff could return to her job at the conclusion of her maternity leave was a promise of future action and, therefore, not cognizable under a theory of intentional or negligent misrepresentation. The text message also refers to future actions, namely, that Plaintiff might have a job if things continue to look up. Moreover, Denning's text message is not a fact; rather, it is merely Denning's opinion or conjecture as to a future event. Under these circumstances, Denning's text message cannot be considered a misrepresentation.

In an effort to circumvent the "existing or past fact" requirement, Plaintiff argues that her misrepresentation claims are based on Defendants actions in "intentionally and/or negligently misrepresent[ing] the status of Ms. Koch's replacement." (Docket No. 29 at p. 23). If Defendants did make such a statement, it might be actionable under a theory of intentional or negligent misrepresentation; however, Plaintiff fails to alert the court to any such statement made by the Defendants. Accordingly, Plaintiff's claims for intentional and negligent misrepresentation regarding Defendants' promises that she could return to work at the conclusion of her maternity leave will [*26] be dismissed.

### III. CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment will be granted with respect to Plaintiff's intentional misrepresentation claim and negligent misrepresentation claim, and denied with respect to Plaintiff's pregnancy discrimination claim. With respect to Plaintiff's breach of contract claim, promissory fraud claim, and promissory estoppel claim, summary judgment is denied as to the agreement for six weeks of paid maternity leave and granted as to the agreement for Plaintiff to return to work at the conclusion of her maternity leave.

An appropriate Order will enter.

/s/ Kevin H. Sharp

KEVIN H. SHARP

UNITED STATES DISTRICT JUDGE

### Order

For the reasons set forth in the accompanying memorandum, Defendant's Motion for Summary Judgment as to Plaintiff's Complaint (Docket No. 19) is hereby GRANTED in part and DENIED in part as follows:

(1) With respect to Plaintiff's intentional misrepresentation claim, the motion is GRANTED.

(2) With respect to Plaintiff's negligent misrepresentation claim, the motion is GRANTED.

(3) With respect to Plaintiff's pregnancy discrimination claim, the motion is DENIED.

(4) With respect to Plaintiff's breach of contract claim, [*27] the motion is DENIED as to the agreement to pay Plaintiff for six weeks of maternity leave and GRANTED as to the agreement for Plaintiff to return to work at the conclusion of her maternity leave.

(5) With respect to Plaintiff's promissory fraud claim, the motion is DENIED as to the agreement to pay Plaintiff for six weeks of maternity leave and GRANTED as to the agreement for Plaintiff to return to work at the conclusion of her maternity

leave.

(6) With respect to Plaintiff's promissory estoppel claim, the motion is DENIED as to the agreement to pay Plaintiff for six weeks of maternity leave and GRANTED as to the agreement for Plaintiff to return to work at the conclusion of her maternity leave.

It is SO ORDERED.

/s/ Kevin H. Sharp

KEVIN H. SHARP

UNITED STATES DISTRICT JUDGE

End of Document