IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] Case No: 3:21-cv-00923 |
| | ] |
| THE LAMPO GROUP, LLC, d/b/a | ] Judge Richardson/Holmes |
| RAMSEY SOLUTIONS; DAVE | ] |
| RAMSEY | ] JURY DEMAND |
| | ] |
| Defendants. | ] |

## RESPONSE TO DEFENDANT LAMPO'S SECOND MOTION TO DISMISS

Comes now the Plaintiff, Brad Amos, by and through counsel and respectfully responds to Defendant The Lampo Group, LLC, d/b/a Ramsey Solution's ("Defendant Lampo" or "Lampo") Motion to Dismiss. On March 16, 2022, Defendant Lampo submitted a motion to dismiss Plaintiff's complaint. Pursuant to Local Rule 7.01, Plaintiff respectfully submits a response to Defendant Lampo's Motion to Dismiss.

## PROCEDURAL HISTORY

Defendant alleges that this is the fourth filing Plaintiff has made regarding this matter. Plaintiff filed suit in Williamson County Chancery Court in order to preserve his statute of limitations. When the EEOC issued his right to sue, he nonsuited the case and refiled in federal court. A common practice. Defendant misstates the procedural history in this matter in an effort to somehow paint Plaintiff and his attorneys in a bad light, just as they have done through the media in this matter.

# LEGAL ARGUMENT

## I. 12(b)(6) Standard

In ruling on a Motion to Dismiss under 12(b)(6) the court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020). If the Motion relies on evidence outside the complaint, it converts the motion to dismiss to a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). If the district court chooses to treat the motion as one for summary judgment, it must give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Kostrzewa v. City of Troy*, 247 F.3d 633, 643–44 (6th Cir. 2001)

## II. Count I – Tennessee Public Protection Act (TPPA)

### a. Defendant engaged in illegal activity

Despite Defendant's claim in its Motion to Dismiss, Lampo clearly engaged in illegal activities as defined by Tenn. Code. Ann. 50–1–304(a)(3). Defendant Lampo's Second Motion to Dismiss refers only to violations of law. However, the definition of illegal activities contained in 50–1–304(a)(3) includes regulations intended to protect the public health, safety, or welfare.

Plaintiff's factual allegations clearly specify the regulations and executive orders, the violations of which constitute illegal activity under Plaintiff's TPPA claim as they are regulations explicitly intended by the State of Tennessee to protect the safety of Tennesseans. (See Exhibit D to Plaintiff's First Amended Complaint). Plaintiff initially specifies Governor Lee's Executive Order #14, encouraging social distancing and declaring a state of emergency due to the COVID-19 pandemic. (Plaintiff's First Amended Complaint at ¶ 130). At this time, Governor Lee stated in his order that he strongly discouraged events of 250 people or more as an important step in limiting

exposure to COVID-19. (*Id*. at ¶ 131). Only a few days later, Defendant made an on-site all employee meeting of over nine hundred (900) people mandatory with no social distancing. (*Id*. at ¶ 134). Plaintiff's factual allegations also include guidelines specifically set by the CDC (originally attached as Exhibit D) of which Defendant refused to comply. (*Id*. at ¶ 258-259).

Plaintiff also specifies Governor Lee's Executive Order #22, requiring nonessential employees to stay at home and only allowing essential businesses to operate. (*Id*. At ¶ 193). Neither Plaintiff nor Defendant Lampo were considered "essential" pursuant to this order because they do not provide critical infrastructure, healthcare services, nor is it a grocery store, gas station, park, or bank as provided by the order in Exhibit D to Plaintiff's First Amended Complaint. Despite Plaintiff being informed he could work from home initially; he was later informed by Mr. DiCicco that he was considered "essential" and that he would be required to work on site. (*Id*. at ¶ 170-171). However, the guidance found in Exhibit D to Plaintiff's First Amended Complaint directly contradicts this because Plaintiff's job does not provide critical infrastructure, is not a healthcare job, nor did Plaintiff work in a grocery store, gas station, park, or bank.

Additionally, Governor Lee's Executive Order #17, provided by Plaintiff as Exhibit F to Plaintiff's First Amended Complaint, directed employers to allow employees to work from home whenever possible. Plaintiff's job required him to perform video production and editing tasks, all of which could be performed on a mobile computer. (*Id*. At ¶ 19-23, ¶174). In fact, Defendant Lampo had assured Plaintiff that it would be feasible for him to work from home and began providing him with equipment to do so. (*Id*. At ¶ 163, ¶ 169). Despite the protestations from Plaintiff regarding this conflicting information, he was required to work at the office as Defendant Lampo was circumventing the Governors Executive Order to force the documentary team to work onsite. (*Id*. at ¶ 175).

Defendant's blatant disregard for the CDC's guidelines, coupled with its exploitation and direct violation of Governor Lee's Executive Orders, shows Plaintiff observed what he reasonably believed to be illegal activity on the part of the Defendant. His refusal to participate in this activity, by working from home against his supervisor's wishes, resulted in his discharge.

In *Hall v. Wal-Mart Stores, Inc.*, the Sixth Circuit opined on the nature of illegal activities when evaluating claims under the TPPA. No. 3:16-CV-2818, 2017 WL 2131649, at *3 (M.D. Tenn. May 16, 2017):

> "Thus, a plaintiff must show not only that he or she **reasonably believed the employer was engaging in illegal activity**, but also that the refusal to stay silent about or participate in the activity **served a public purpose** that should be protected. Williams v. Greater Chattanooga Pub. Television Corp., 349 S.W.3d 501, 515 (Tenn. Ct. App. 2011). Whistleblowing activity may serve a public purpose where, for example, it relates to potential insurance fraud, Guy, 79 S.W.3d 528, 537–38, **dangerous working conditions**, Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997)."

Here, Plaintiff reasonably believed that the disregard, exploitation, and direct violation of Executive Orders and CDC Guidelines and Regulations can constitute illegal activity. In addition, his pleadings sufficiently provide a basis by which his refusal to participate in such activity (by working from home) would serve the public purpose of mitigating the spread of a pandemic and preserving the health of others. As Defendant was disregarding safety and health regulations, Plaintiff was terminated for his failure to participate in this illegal conduct.

### b. **Plaintiff has stated a claim for refusal to participate in illegal activities**

In a refusal-to-participate claim, the Plaintiff only must show that he refused to participate in illegal activities and the requisite causal relationship between his refusal to participate and his discharge. *Grizzard v. Nashville Hosp. Cap., LLC*, No. 3:18-CV-00034, 2021 WL 3269955, at *27

(M.D. Tenn. July 30, 2021) (internal citations omitted).[1] A Plaintiff is not required to show his failure to participate was inspired by any particular purpose.

The Tennessee Court of Appeals has rejected the notion that a Plaintiff must have a subjective intent for the public good in order to state a claim under the TPPA for failure to participate. *VanCleave v. Reelfoot Bank*, No. W200801559COAR3CV, 2009 WL 3518211, at *8 (Tenn. Ct. App. Oct. 30, 2009).[2] In a "refusal to participate" case, the Plaintiff does not have to show that concern for the public was the reason they failed to participate in the illegal activity. *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 515 (Tenn. Ct. App. 2011). The Middle District has also acknowledged this standard and clarified that it applies specifically to refusal to participate allegations and not refusal to remain silent allegations. *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 798 (M.D. Tenn. 2010).

Plaintiff has alleged that Defendant Lampo engaged in illegal activities and Plaintiff refused to participate; as a result, Plaintiff was terminated.

### III. <u>Count II – Title VII Religious Discrimination & Count III – THRA Religious Discrimination</u>

To establish a prima facie case of religious discrimination under an accommodation theory, a Plaintiff must show that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." Once the Plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship. *O'Connor v. Lampo Grp., LLC*, No. 3:20-CV-00628, 2021 WL 4480482, at *5 (M.D. Tenn. Sept. 29, 2021)[3],

---

[1] Attached hereto as Exhibit 1
[2] Attached hereto as Exhibit 2
[3] Attached hereto as Exhibit 3

reconsideration denied, No. 3:20-CV-00628, 2021 WL 4942869 (M.D. Tenn. Oct. 22, 2021) (internal citations omitted).[4]

Defendant Lampo argues that Plaintiff did not meet the second element by failing to make Lampo sufficiently aware of his religious beliefs and the conflict with an employment requirement of Lampo. The EEOC has issued relevant guidance on this issue as it pertains to employees who may have religious objections to COVID-19 vaccine requirements by their employers. The EEOC states when employees make an accommodation request for religious purposes, they are not required to use any "magic words" such as "religious accommodation" or "Title VII".[5]

As a condition of his employment, Defendant Lampo required Mr. Amos to participate in weekly meetings regarding his personal life, including his religious views and beliefs. (Plaintiff's First Amended Complaint at ¶ 95-96). As the COVID-19 pandemic developed and Mr. Amos became aware that his family could be put at risk by Defendant Lampo's commitment to working in person, despite remote options being available. During several of these aforementioned meetings occurring during and after March 2020, Plaintiff expressed to Defendant Lampo that Lampo's current COVID-19 policies were at odds with his religious beliefs. (Plaintiff's First Amended Complaint at ¶ 248).

Plaintiff told Defendant that its COVID policies were at odds with his "religious beliefs". (Complaint ¶ 248). Defendant claims that this could mean that the policies were at odds with secular beliefs, scientific beliefs, etc. They claim they have no way to know. Except Plaintiff clearly stated the COVID policies were at odds ***with his religious beliefs***. When considering a 12(b)(6) Motion to Dismiss, a court must consider all of the factual allegations in the Complaint

---

[4] Attached hereto as Exhibit 4
[5] Exhibit 5- EEOC guidance

as true and draw all reasonable inferences in favor of Plaintiff. *Kabba v. Metro. Nashville Hosp. Auth.*, No. 3:20-CV-00738, 2021 WL 4284557, at *2 (M.D. Tenn. Sept. 21, 2021).[6]

Defendant attempts to compare the facts of this case with *Pedreira v. Kentucky Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009); however, the facts are easily distinguishable. In *Pedreira*, the Defendants terminated Plaintiff because she was a homosexual. In her complaint, the Plaintiff did not allege her sexuality had anything to do with her religious beliefs, the court held that this, in part, meant Plaintiff had failed to state a claim that her termination was based on any religious belief. The court also stated the Plaintiff failed to "state whether she accepts or rejects (Defendant's) beliefs." and that also meant, in part, Plaintiff failed to state a claim *Pedreira* at 728.

In this case, Plaintiff has specifically pointed out Defendant's religious beliefs that COVID precautions showed "weakness of spirit" or were "against the will of god" were against his religious beliefs. (First Amended Complaint at ¶ 135-138, ¶ 248). Plaintiff also specifically alleged in his First Amended Complaint that his actions to protect his family from COVID were based on his religious beliefs and he informed Defendants the same. (Amended Complaint at ¶ 135-138, 248).

Further, at the outset of his employment, Mr. Amos informed Defendant Lampo that maintaining the health, safety, and wellbeing of his family and that was part of his religious beliefs. (Plaintiff's First Amended Complaint at ¶ 35-38). Throughout his employment, Mr. Amos and Defendant Lampo had numerous conversations about Mr. Amos's increasing concerns about the developing COVID-19 crisis and his Christian duty to protect his family in light of this and how this conflicted with Lampo's employment policies. (Plaintiff's First Amended Complaint ¶ 148).

---

[6] Attached as Exhibit 6

All of these concerns were brought up in the "personal reports" Mr. Amos was required to complete as a condition of his employment. (*Id*. at ¶ 92, 148, 150).

The law does not require Plaintiff to explicitly reference his religion in each and every conversation with Defendant Lampo in order to state a claim. "While the law does not require that a[n] employer divine the existence of a conflict or discern whether an accommodation is desired, there is no magic incantation required to put an employer on notice either. It would be contrary to the purpose of the statute to permit a[n] employer to close his eyes to that *which is obvious* in favor of a rule requiring particular verbiage to trigger constitutional protection." *Jackson v. Longistics Transp., Inc.,* No. 11-2093-STA, 2012 WL 1252543, at *9–10 (W.D. Tenn. Apr. 13, 2012) (internal citations omitted).[7]

Mr. Amos had sufficiently notified Defendant Lampo of his religious beliefs and the practices he associates with those beliefs at the outset of his employment during the extensive and deeply personal interview process. (Plaintiff's First Amended Complaint at ¶ 21). Accepting the facts plead by Plaintiff as true, Plaintiff has sufficiently alleged religious discrimination in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

### IV. Count IV – Fraud

#### a. Plaintiff's claims are not time barred by the statute of limitations

Under Tennessee law, the terms intentional misrepresentation, fraudulent misrepresentation, and fraud are synonymous, and the claim has the following elements: (1) defendant made a representation of an existing or past fact; (2) representation was false when made; (3) representation was in regard to a material fact; (4) false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the

---

[7] Attached hereto as Exhibit 7

misrepresented material fact; and (6) ***plaintiff suffered damage as a result of misrepresentation***. *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897 (W.D. Tenn. 2011), *aff'd,* 559 F. App'x 508 (6th Cir. 2014) (emphasis added).

Defendant relies on T.C.A. 28-3-104 to argue Plaintiff's claims are barred by the statute of limitations. The more proper statute of limitations would be contained in T.C.A. 28-3-105 as it is not a personal injury claim and should be a 3-year statute of limitations. Courts have treated economic loss by fraud or misrepresentation as an injury to personal property and therefore subject to a three-year statute of limitations under Tenn. Code Ann. § 28–3–105. *Evans v. Walgreen Co.,* 813 F.Supp.2d 897, 934–935 (W.D.Tenn.2011).

However, even using the statute of limitations Defendant asks the court to rely on; Plaintiff's claims are not time barred:

> "Except as provided in subdivision (a)(2), the following actions shall be commenced within one (1) year after the cause of action **accrued**:" T.C.A. 28-3-104 (emphasis added).

Plaintiff did not suffer damages, a required element for any fraud claim, until he was terminated on July 31, 2020; as such his claims are not time barred. (Plaintiff's First Amended Complaint at ¶ 320). Defendant wrongfully claims Plaitniff's cause of action accrued on the date he discovered, or should have discovered, Defendant made the fraudulent statements; however, it is not a cause of action that a party simply lied to another party.

Plaintiff's claims did not actually accrue until Plaintiff actually suffered damages. Plaintiff's claims therefore did not accrue until he was terminated on July 31, 2020. Looking at the best-case scenario for Defendant (which is not how a Rule 12(b)(6) motion is to be considered by the court); the earliest possible date Plaintiff suffered damages would be on April 9, 2020; the date

Plaintiff was demoted from Senior Editor to Assistant Editor.[8] However, even accepting arguendo that the date was April 9, 2020- the Plaintiffs claims were not time barred.

The parties entered into a tolling agreement on April 8, 2021.[9] The agreement stated in relevant part:

> "No statute of limitations on any claim under the Tennessee Human Rights Act or other state discrimination statutes, common law fraud, or common law negligent misrepresentation which the Employee may have against the Employer shall run against Employee and the same shall be tolled during the period of time while this Agreement is in effect ("Tolled Period")…...
>
> The Tolled Period is effective as of April 8, 2021, and shall terminate (a) on the same day as Employee files a complaint with any administrative agency or a court or (b) on the 30th day after either party gives written notice of cancellation to the other, whichever occurs first."

The statute of limitations on all of Plaintiff's claims were tolled on April 8, 2021. The tolling agreement terminated the day Plaintiff filed his original lawsuit in Williamson County Chancery Court.

The Sixth Circuit has long recognized that pleading requirements do not require the Plaintiff to address and anticipate potential affirmative defenses to state a valid claim. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). For this reason, the *Cataldo* Court found that Rule 12(b)(6) motions are "generally an inappropriate vehicle" for dismissal on statute of limitations grounds. *Id*. A motion relying on the statute of limitations may only be introduced when Plaintiff's pleadings "affirmatively show that the claim is time-barred." The statute of limitations begins when a Plaintiff "discovers his injury or should have discovered his injury with reasonable diligence." *Chunn v. Se. Logistics, Inc.*, 794 F. App'x 475, 477 (6th Cir. 2019). Plaintiff was clearly

---

[8] Plaintiff's temporary demotion on the project occurring on March 20, 2020 did not cause Plaintiff to actually suffer damages as there was no loss in pay or change in job duties. Defendant also informed Plaintiff this change of job title was only temporary and Plaintiff would again be considered a Senior Editor once he returned to the office. (Plaintiff's First Amended Complaint ¶ 178-180).
[9] Attached hereto as Exhibit 8

not required to make this tolling agreement part of his Complaint in this matter. The Amended Complaint does not affirmatively show his claims are time barred.

### b. Defendant's statements were material

Plaintiff claims in his Amended Complaint that each statement was material in his accepting the position with Defendant Lampo. Taking every inference in favor of the Plaintiff, such reliance was reasonable. (First Amended Complaint at ¶ 358). The fact Plaintiff in fact took a job that paid $150,000 less than the job he had in California is further evidence of the materiality and reliance of those statements.

Defendant Lampo's statements, as plead in Plaintiff's First Amended Complaint, is material enough to be actionable. A fact is material if "(a) a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it. *Patel v. Bayliff*, 121 S.W. 3d 347, 353 (Tenn. Ct. App. 2003) (quoting *Lowe v. Gulf Coast Dev., Inc.*, No. 01–A–019010CH00374, 1991 WL 220576, at *8 (Tenn. Ct. App. 1991))." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.,* 387 S.W. 3d 525, 550 (Tenn. Ct. App. 2012) (*See also,* Homestead Grp., LLC v. Bank of Tennessee, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009).

Here, both (a) and (b) apply. After hearing Defendant Lampo's statements alleged in Plaintiff's First Amended Complaint, Plaintiff acted as a reasonable person in using statements made by the Chief Executive Officer of his prospective employer to make a determination about whether or not he would move across the country for a job. (Plaintiff's First Amended Complaint at ¶ 43-50). The law does not require that the material fact which Plaintiff relied on be the only material fact relied on, such is the case here. In accordance with other material considerations, Plaintiff reasonably relied on Defendant Lampo's statements and assurances about the working

conditions at Lampo as a crucial decision-making point in accepting employment with Defendant Lampo. (*Id.* at ¶ 52).

Additionally, Defendant Lampo knew that the recipient of the statements would be likely to regard the matter as important in decision-making, whether or not that person is reasonable. Defendant Lampo knew that Plaintiff was considering moving to Tennessee from California, and Plaintiff relied on Defendant Lampo's statements and assurances in making his decision to accept employment with Lampo. Defendant Lampo certainly knew that its statements about Lampo's work environment would be relied on in Plaintiff's decision-making.

Again, a court must consider all of the factual allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. *Kabba v. Metro. Nashville Hosp. Auth.*, No. 3:20-CV-00738, 2021 WL 4284557, at *2 (M.D. Tenn. Sept. 21, 2021)

Further, in support of their argument that Plaintiff's claims are time barred, Defendant Lampo has presented material to the court outside of the pleadings. *See* Defendant Lampo's Motion to Dismiss Exhibit No. 7 (Doc. No. 29). As such, Defendant's Motion to Dismiss is converted to a Motion for Summary Judgment and should be dismissed for the reasons stated in Plaintiff's response to Defendant Ramsey's Motion to Dismiss. (Doc. 35, p. 6).

### c. **Plaintiff Reasonably relied on Defendant's fraudulent statements**

Plaintiff's reliance on Defendant Lampo's fraudulent statements was reasonable. When determining whether a party reasonably relied on a fraudulent statement, factors considered include: (1) the party's sophistication; (2) whether there are longstanding business or personal relationships between the parties; (3) the relative availability of the information; (4) whether a fiduciary relationship exists between the parties; (5) whether there was concealment of the fraud; (6) whether the party had an opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the statements. (internal citations omitted). *Boynton v. Headwaters, Inc.*, 737 F. Supp. 2d 925, 931 (W.D. Tenn. 2010). Plaintiff notes that the third, fifth, and seventh factors are particularly operative.

Plaintiff's recruitment and interview process with Defendant Lampo was extensive, which allowed the Plaintiff to make a reasonable inquiry into the truth of statements that had been made about working for Defendant Lampo and received assurances. Plaintiff's efforts included reading reports from Defendant Ramsey regarding the working conditions at Defendant Lampo and asking the individuals recruiting him about the truth of the Defendant Ramsey's fraudulent statements at issue in this lawsuit. (Plaintiff's First Amended Complaint at ¶ 49-50, ¶ 325). Despite these efforts, Plaintiff had no reason to believe these statements were false and reasonably relied on them.

Defendant made a clear effort to conceal the truth of the fraudulent statements. Despite Plaintiff's efforts, Plaintiff was given no reason to believe Defendant's statements were false and continued to believe them as a reasonable person would. (*See Id.* at ¶ 375). Despite Plaintiff's best efforts to investigate the truth of Defendant's statements and affirmations, each and every employee confirmed the lie, resulting in Plaintiff's reasonable reliance on the statements and affirmations.

Finally, Defendant initiated the employment relationship with the Plaintiff and he relied on Lampo's and Defendant Ramsey's fraudulent statements. (*Id.* at ¶ 18). Plaintiff did not independently seek employment with Defendants and acted reasonably in relying on their repeated assurances that Defendant Lampo would be one of the "best places to work" as decided by employees independent of managerial interference. These statements and assurances by both Defendants were intended to, and in fact did, induce Plaintiff to quit his high paying job and move to Tennessee.

After hearing Defendant Ramsey's statements about the working conditions at Defendant Lampo, Plaintiff took efforts to either confirm or refute what he believed to be true and intended to rely on. (Plaintiff's First Amended Complaint at ¶ 41). During such efforts, Plaintiff inquired to employees of Defendant Lampo to confirm the statements, which they did, and further encouraged Plaintiff to rely on the statements. (*Id.*). Plaintiff took sufficient steps to discover whether there would be any reason to doubt that Defendant Ramsey's statements were untrue. Through these

efforts, Plaintiff found no reason to doubt the veracity of the statements and continued to reasonably rely on them, ultimately to his detriment.

### V. Count V- Promissory Estoppel

#### a. Plaintiff's claims are not time barred

Plaintiff originally filed this lawsuit in the Williamson County Chancery Court on April 15, 2021, in order to preserve Plaintiff's statute of limitations. Once the EEOC issued the right to sue on the federal claims; Plaintiff voluntarily dismissed that lawsuit pursuant to Tennessee Rule of Civil Procedure 41.01 on August 24, 2021. Plaintiff filed the current action on December 13, 2021.

Pursuant to Tenn. R. Civ. P. 41.01 and the Tennessee "saving statute", Tenn. Code Ann § 28-1-105, Plaintiff has one year from the time of his voluntary dismissal to refile his lawsuit from the date of the voluntary dismissal. Plaintiff is not time barred from bringing up any claim from a previous complaint which was voluntarily dismissed. Tenn. R. Civ. P. 41.01. *Energy Sav. Prod., Inc. v. Carney*, 737 S.W.2d 783, 785 (Tenn. Ct. App. 1987) ("The "saving statute" accords unto a plaintiff who files his second action within one year of the voluntary non-suit of his first suit the same procedural and substantive benefits which were available to the plaintiff in the first action.").

Specifically, Plaintiff can file suit upon any fraud actions not time-barred at the filing of the initial action. *Id*. This savings statute has also been adopted as a substantive law recognized by suits that are moved from State to federal court. *Holden v. Cities Serv. Co.*, 514 F. Supp. 662, 664–65 (E.D. Tenn. 1980); *See also Eason v. Memphis Light, Gas & Water Div., a Div. of City of Memphis*, 866 S.W.2d 952, 954 (Tenn. Ct. App. 1993).

Under Tennessee law, the terms intentional misrepresentation, fraudulent misrepresentation, and fraud are synonymous, and the claim has the following elements: (1)

defendant made a representation of an existing or past fact; (2) representation was false when made; (3) representation was in regard to a material fact; (4) false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) ***plaintiff suffered damage as a result of misrepresentation***. *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897 (W.D. Tenn. 2011), aff'd, 559 F. App'x 508 (6th Cir. 2014) (emphasis added).

Defendant relies on T.C.A. 28-3-104 to argue Plaintiff's claims are barred by the statute of limitations. Plaintiff would argue the more proper statute of limitations would be contained in T.C.A. 28-3-105 as it is not a personal injury claim and should be a 3 year statute of limitations. Courts have treated economic loss by fraud or misrepresentation as an injury to personal property and therefore subject to a three-year statute of limitations under Tenn. Code Ann. § 28–3–105. *Evans v. Walgreen Co.,* 813 F.Supp.2d 897, 934–935 (W.D.Tenn.2011).

However even looking at language of the one year statute of limitations Defendant asks the court to rely on; Plaintiffs claims are not time barred:

> "Except as provided in subdivision (a)(2), the following actions shall be commenced within one (1) year after the cause of action **accrued**:" T.C.A. 28-3-104 (emphasis added)

Plaintiff did not suffer damages, a required element for any fraud claim, until he was terminated on July 31, 2020; as such his claims are not time barred. (Plaintiff's First Amended Complaint ¶ 317-318). Further, Plaintiff's Promissory Estoppel claims are grounded in contract, not tort, as such the statute of limitations under Tennessee law is 6 years.

### b. Defendant made Plaintiff an enforceable promise

Defendant argues that in order to succeed on a claim of promissory estoppel Plaintiff must essentially prove fraud. This is false. To succeed on a claim of promissory estoppel, the Plaintiff must show "(1) that a promise was made; (2) that the promise was unambiguous and not

unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Chavez v. Broadway Elec. Serv. Corp.,* 245 S.W.3d 398, 404–05 (Tenn. Ct. App. 2007). A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties, the key element is a promise. *EnGenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12, 19 (Tenn. Ct. App. 1997); *Wilson v. Price*, 195 S.W.3d 661, 670 (Tenn. Ct. App. 2005); *Amacher v. Brown–Forman Corp.,* 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991).

Prior to accepting employment with Defendant Lampo, Defendant Lampo made several promises to Mr. Amos. These promises included that Mr. Amos would edit features and help create the new film department; Defendant Lampo was not "cult like"; Defendant Lampo operated a "drama free" workplace; and Defendant Lampo was family friendly and would allow Plaintiff to spend time with his family without interference from Defendant. (Plaintiff's First Amended Complaint ¶ 356). These promises were clear and unambiguous, and Mr. Amos relied on them to his detriment when Defendant Lampo terminated him in response to his complaints about the promises being false.

### VI. Count VI- Deceptive Representations and False Pretenses

Defendant alleges that Plaintiff's claim under T.C.A. § 50-1-102(a)(1) should fail for the same reasons as his common law fraud claims should fail.

Tennessee Code Annotated 50-1-102(a)(1) states:

> "It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement."

From Defendant's Motion it is unclear whether it alleges this claim is barred by the relevant statute of limitations. However, the proper statute of limitations on this claim is 3 years as set out above. Further, Plaintiff did not discover the statements which brought him to Tennessee until he was terminated on July 31, 2020 and therefore are not barred by the Statute of Limitations even if it is one year. Plaintiff also relies on his response to Defendant's his common law fraud claims should be dismissed.

### VII. Conclusion

For the reasons stated above, Defendants Motion should be denied.

Respectfully Submitted,

/s/ *JONATHAN A. STREET*
JONATHAN A. STREET, BPR No. 021712
G. BRANDON HALL, BPR No. 034027
CULLEN HAMELIN, BPR No. 037317
LAUREN IRWIN, BPR No. 038433
1720 West End Ave, Suite 402
Nashville, TN 37203
(615) 850-0632
street@eclaw.com
bhall@eclaw.com
chamelin@eclaw.com
lauren@eclaw.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

   I hereby certify that a true and exact copy of the foregoing was sent via the Court's electronic case filing system to the following on this the 6th day of April, 2022:

Leslie Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

                /s/ Jonathan Street
                Jonathan Street