# EXHIBIT 1

 Neutral

As of: April 13, 2022 4:17 AM Z

# Brown v. Shelby Cty. Bd. of Educ.

United States Court of Appeals for the Sixth Circuit

April 26, 2016, Filed

No. 15-5787

### Reporter
2016 U.S. App. LEXIS 23870 *

KIM BROWN, Plaintiff-Appellant, v. SHELBY COUNTY BOARD OF EDUCATION, Defendant-Appellee.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE.

Brown v. Bd. of Educ., 47 F. Supp. 3d 665, 2014 U.S. Dist. LEXIS 128645 (W.D. Tenn., Sept. 15, 2014)

## Core Terms

district court, teacher, scores, magistrate judge, discharged, summary judgment, recommended, violation of state law, supervision, reasserts, letters, retaliation, pretextual, prima facie case, hearing officer, forging, argues, adverse employment action, illegal activity, disparate, falsified, training, charges, tenure, amend, retaliatory discharge, properly dismiss, complaining, Elementary, conspiracy

## Case Summary

### Overview

HOLDINGS: [1]-The court declined to review Claims 3, 9, 13, and 17 because plaintiff, a discharged teacher, did not reassert them on appeal; [2]-His failure to object to the finding that he failed to establish a prima facie case defeated his *Title VII of the Civil Rights Act of 1964* retaliatory discharge claim. He failed to demonstrate that the Board of Education's reason was pretextual; [3]-As to his second claim, the court rejected his argument because the common-law retaliatory discharge claim was available only to private-sector employees; [4]-With regard to his fourth claim--his remaining *42 U.S.C.S. § 1983* claim, the court determined that he was not deprived of a liberty interest; [5]-Among numerous other matters, as to his allegation of reverse discrimination under a disparate treatment theory, the outside duty assignment was not enough to constitute an adverse employment action.

### Outcome
The district court's judgment was affirmed.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

HN1[⬇]  Reviewability of Lower Court Decisions, Preservation for Review

Issues raised in the district court but not on appeal are considered abandoned and are not reviewable.

Civil Procedure > Judicial Officers > Magistrates > Objections

HN2[⬇]  Magistrates, Objections

A litigant must file specific objections to a magistrate judge's report and recommendation to preserve appellate review of the claims addressed therein. Where a litigant fails to raise a specific objection, review of that matter is waived.

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

HN3[⬇]  Entitlement as Matter of Law, Appropriateness

The appellate court reviews a grant of summary judgment de novo. Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. Upon consideration of a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial.

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Evidentiary Considerations > Scintilla Rule

HN4[⬇]  Burdens of Proof, Nonmovant Persuasion & Proof

On summary judgment, the movant bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. The district court must view the evidence in the light most favorable to the non-moving party, who must present sufficient evidence such that a rational jury might find in its favor. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.

Labor & Employment Law > ... > Evidence > Burdens of Proof > Employee Burdens

HN5[⬇]  Burdens of Proof, Employee Burdens

The U.S. Supreme Court established a three-part framework for the allocation of proof in employment discrimination cases where there is an absence of direct evidence. The complainant in a *Title VII of the Civil Rights Act of 1964* action carries the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the defendant knew of the protected activity; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) a causal connection existed between the protected

activity and the adverse employment action. Protected activities include filing an Equal Employment Opportunity Commission charge and opposing discriminatory practices by making complaints to management; refer to 42 U.S.C.S. § 2000e-3(a).

Labor & Employment Law > ... > Evidence > Burdens of Proof > Burden Shifting

HN6[⬇] Burdens of Proof, Burden Shifting

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action taken against the employee. Thereafter, the burden shifts to the plaintiff to establish that the employer's stated reason was a pretext for discrimination. Although the burden of production shifts, the burden of persuasion remains at all times with the plaintiff. When the employer proceeds along lines previously contemplated, a court must not take the temporal proximity of the adverse employment action as evidence of causality.

Labor & Employment Law > ... > Evidence > Burdens of Proof > Burden Shifting

HN7[⬇] Burdens of Proof, Burden Shifting

To demonstrate pretext, an employee must show that the proffered reason had no basis in fact, did not motivate the adverse employment action, or was insufficient to motivate the action. If the employer's proffered reason was based on an honest belief, then the reason was not pretextual. To determine whether the employer had an honest belief, a court may examine the nature of the investigation and the disciplinary decision process.

Labor & Employment Law > Discrimination > Retaliation

HN8[⬇] Discrimination, Retaliation

In the context of Tennessee law, the common-law retaliatory discharge claim is available only to private-sector employees.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Education Law > Faculty & Staff > Faculty & Staff Evaluations

HN9[⬇] Procedural Due Process, Scope of Protection

Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. To determine whether a plaintiff is entitled to a name-clearing hearing, a court must consider whether: (1) the employer made stigmatizing statements in conjunction with the plaintiff's discharge; (2) the employer alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; (3) the employer disseminated the stigmatizing statements or charges to the public; (4) the plaintiff contends that the charges were false; and (5) the employer voluntarily disseminated the statements. A plaintiff must request a name-clearing hearing prior to filing suit, and no deprivation of liberty occurs until the employer denies the plaintiff's request. A statement that a teacher has failed to meet required minimum standards is insufficient. Stigmatizing statements

instead must involve immorality or dishonesty.

Labor & Employment Law > ... > Disparate Treatment > Evidence > Burdens of Proof

[HN10] Evidence, Burdens of Proof

To establish a prima facie case of reverse discrimination under a disparate treatment theory, the plaintiff must show that: (1) background circumstances exist which support the suspicion that the defendant is that unusual employer who discriminates against the majority, (2) the plaintiff was subjected to an adverse employment action; (3) he was qualified for the position in question; and (4) he was replaced by a member of the minority or was treated differently from a similarly situated member of the minority. An adverse employment action requires a materially adverse change in the terms and conditions of a plaintiff's employment. As to the fourth prong, the plaintiff must be similarly-situated to the other employee in all relevant respects. Once a plaintiff establishes a prima facie case, the remainder of the McDonnell Douglas burden-shifting analysis applies. The pretext analysis remains the same as well.

Labor & Employment Law > ... > Disparate Impact > Evidence > Burdens of Proof

[HN11] Evidence, Burdens of Proof

Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin. *42 U.S.C.S. § 2000e-2(k)(1)(A)(i)*). The plaintiff must also provide statistical proof that the practice adversely affects a protected group.

Labor & Employment Law > ... > Disparate Impact > Evidence > Statistical Evidence

[HN12] Evidence, Statistical Evidence

In the context of a disparate impact claim, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation.

Labor & Employment Law > ... > Harassment > Sexual Harassment > Hostile Work Environment

[HN13] Sexual Harassment, Hostile Work Environment

To establish a *Title VII of the Civil Rights Act of 1964* hostile-work-environment claim, a plaintiff must provide evidence of harassment that unreasonably interferes with his work performance and creates an objectively intimidating, hostile, or offensive work environment. In determining whether the workplace is subjectively and objectively hostile, a court should consider the totality of the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor.

Torts > Public Entity Liability > Liability > State Tort Claims Acts

HN14[↓] Liability, State Tort Claims Acts

The Tennessee Supreme Court recently observed that the Tennessee Governmental Tort Liability Act did not remove immunity for certain claims such as libel.

Torts > ... > Multiple Defendants > Concerted Action > Civil Conspiracy

HN15[↓] Concerted Action, Civil Conspiracy

For a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation.

Torts > Business Torts > Negligent Hiring, Retention & Supervision > Elements

HN16[↓] Negligent Hiring, Retention & Supervision, Elements

A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job.

Business & Corporate Compliance > ... > Breach > Breach of Contract Actions > Elements of Contract Claims

HN17[↓] Breach of Contract Actions, Elements of Contract Claims

The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.

Torts

HN18[↓] Torts

Good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort.

Education Law > Faculty & Staff > Personnel Actions

HN19[↓] Faculty & Staff, Personnel Actions

The Tennessee Teacher Tenure Act provides that a tenured teacher who wishes to challenge charges may demand a hearing "before an impartial hearing officer selected by the board." Tenn. Code Ann. § 49-5-512(a). "Impartial" means that the selected hearing officer shall have no history of employment with the board or director of schools, no relationship with any board member and no relationship with the teacher or representatives of the teacher. Tenn. Code Ann. § 49-5-512(a)(3).

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

HN20[↓] Evidence, Burdens of Proof

In a Tennessee Public Protection Act (TPPA)

whistleblowing claim, the plaintiff must show that: (1) he was employed by the defendant; (2) he refused to remain silent about his employer's illegal activities; (3) he was discharged; and (4) his refusal to remain silent was the sole cause of his discharge. Upon the establishment of a prima facie case, the burden shifts to the employer to articulate a non-retaliatory reason for the plaintiff's discharge. The burden then shifts back to the plaintiff to establish that the reason was pretextual.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

HN21[ ] Standards of Review, Abuse of Discretion

The appellate court reviews the denial of a motion to amend for an abuse of discretion. A district court abuses its discretion by committing a clear error of judgment. Where the deadline for filing amendments has passed, a district court should not grant a motion to amend unless the plaintiff shows good cause for not previously seeking to amend and the defendant would not suffer prejudice. The plaintiff must show that he could not have met the deadline despite due diligence.

**Counsel:** KIM BROWN, Plaintiff - Appellant, Pro se, Memphis, TN.

For SHELBY COUNTY BOARD OF EDUCATION, Defendant - Appellee: Cheryl Rumage Estes, Lewis Thomason, Memphis, TN; Cecilia Suzette Barnes, Board of Education for the Memphis City Schools, Office of the General Counsel, Memphis, TN.

**Judges:** Before: GUY and McKEAGUE, Circuit Judges;

BERTELSMAN, District Judge.[*].

# Opinion

ORDER

Kim Brown, proceeding pro se, appeals a district court judgment dismissing his employment discrimination suit filed pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e-5 to 2000e-17*; *42 U.S.C. § 1983*; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), *29 U.S.C. §§ 1161-1168*; and Tennessee law. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See Fed. R. App. P. 34(a)*.

During the 2011-2012 schoolyear, Brown worked as a tenured teacher at Treadwell Elementary School and was supervised by Kenia Coleman. When evaluated, he received a preliminary rating of three out of five, i.e., he had met expectations, under the Teacher Effectiveness Measure ("TEM") scoring system. His final overall score, however, was a two, which fell below expectations. [*2]

Brown volunteered to be a "surplused teacher," i.e., one subject to transfer, and was sent to Charjean Elementary School for the 2012-2013 schoolyear. When he received a poor evaluation from the principal, Tameka Allen, on October 8, 2012, Brown sent a letter to the Memphis Education Association ("MEA") to complain about Allen and request an administrative transfer. Brown reiterated his request in a meeting on January 7, 2013, with Chantay Branch, Coordinator for the Office of Labor and Employee Relations for Memphis City Schools (now part of the Shelby County

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Schools system, which is governed by the Shelby County Board of Education ("SCBOE")). In the spring semester, Brown sought help improving his performance from the Peer Assistance Review ("PAR") program and was paired with a consulting teacher, Kecia Helminski. Nonetheless, Brown's overall TEM score fell to a one, which was significantly below expectations. Helminski, Allen, and the PAR Review Panel recommended that Brown be dismissed. On May 23, 2013, Allen allegedly handed Brown four letters of reprimand which bore dates from March to May of 2013 and which Brown had not received previously. On June 11, 2013, Branch notified Brown [*3] that he would be suspended without pay and that a recommendation for dismissal would be made to the Memphis Board of Education.

On June 18, 2013, Brown filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting gender discrimination and retaliation. The EEOC issued a right-to-sue letter on July 23, 2013. In October of 2013, the SCBOE found that Brown's dismissal was warranted and issued a formal charge of inefficiency. On January 29 and 30, 2014, Brown received a "teacher tenure hearing" on the charge. The hearing officer found substantial evidence to support the charge and recommended dismissal, effective March 10, 2014.

Meanwhile, on July 31, 2013, Brown filed suit against SCBOE for monetary and equitable relief. The complaint raised the following claims: (1) Brown was discharged in retaliation for filing an EEOC charge, complaining about illegal activities, requesting an administrative transfer, and complaining about gender discrimination, in violation of Title VII; (2) his retaliatory discharge was in violation of state common law protecting whistleblowers; (3) he was deprived of his property interest in continued employment without due process of law, in [*4] violation of the *Fourteenth Amendment*; (4) Brown was deprived of his liberty interest in a good reputation when the SCBOE brought false charges against him, in violation of the *Fourteenth Amendment*; (5) he was treated differently from female teachers and was subjected to harassment, in violation of Title VII; (6) Allen and Helminski libeled Brown by making false statements when evaluating him and by overstating the time that they had observed him, in violation of state law; (7) Allen and Helminski *aided* and *abetted* each other in committing the torts of retaliation and defamation by forging letters, in violation of the *Tennessee Human Rights Act* ("*THRA*"), *Tennessee Code Annotated § 4-21-301* (2013) (repealed effective July 1, 2014); (8) Allen and Helminski engaged in a civil conspiracy to cause Brown's discharge by forging letters, in violation of state law; (9) SCBOE did not notify Brown of his rights regarding health insurance, in violation of COBRA; (10) SCBOE negligently supervised Allen and Helminski, in violation of state law; (11) SCBOE negligently trained Allen and Helminski, in violation of state law; (12) SCBOE breached Brown's contract by discharging him based on the forged letters, in violation of state law; (13) Allen and Helminski committed fraud [*5] by forging the letters, in violation of state law; (14) Brown's discharge breached an implied covenant of good faith and fair dealing, in violation of state law; (15) SCBOE failed to afford him a timely hearing, in violation of the Tennessee Teacher Tenure Act, *Tennessee Code Annotated § 49-5-512*; (16) SCBOE discharged him for reporting illegal activities, in violation of the Tennessee Public Protection Act ("TPPA"), *Tennessee Code Annotated § 50-1-304*; and (17) the TEM scoring system for evaluating teachers was unfair.

SCBOE moved for summary judgment. Brown filed a response and cross-motion for summary judgment on his COBRA claim.

Brown moved to admit the teacher tenure hearing transcript solely for impeachment purposes and to bar

use of the hearing officer's findings because she was not impartial. Brown also filed a self-written expert witness report and sought leave either to file a DVD with recordings of his teaching or to have a hearing to show the DVD. SCBOE filed a motion in limine to exclude the expert witness report and DVD.

A magistrate judge initially denied only Brown's motion to bar use of the hearing officer's findings, concluding that the findings had significant probative value. The magistrate judge next recommended granting summary judgment [*6] in favor of SCBOE on all claims, except for the COBRA claim. Upon de novo review of Brown's specific objections, the district court adopted the magistrate judge's report and recommendation.

Brown then moved to amend his complaint to add claims of a RICO conspiracy, a violation of the TPPA, and negligent training and supervision with respect to an education policy. The magistrate judge denied the motion. The magistrate judge also denied Brown's motion to admit the hearing transcript solely for impeachment purposes, and granted SCBOE's motions to exclude the expert witness report and DVD.

Brown moved for a default judgment on the grounds that SCBOE had provided a false copy of his 2013 TEM score and had improperly calculated the score. The magistrate judge denied relief, reasoning that Brown was reasserting arguments previously rejected by the court when granting summary judgment. The district court thereafter upheld the magistrate judge's rulings on the evidentiary motions, the motion to amend, and the motion for a default judgment.

Brown moved to revisit the grant of summary judgment, again arguing that the hearing officer was not impartial and asserting that she thus lacked jurisdiction [*7] to conduct the proceeding. The magistrate judge denied the motion to revisit because Brown did not demonstrate a basis for revising an interlocutory order. The district court upheld the decision and granted a motion by Brown to non-suit the COBRA claim. Judgment was entered July 14, 2015.

In his timely appeal, Brown reasserts all claims, except for Claim 3 (deprivation of property interest), Claim 9 (COBRA violation), Claim 13 (common-law fraud), and Claim 17 (unfairness of the TEM system). He further argues that the district court erred by not deciding whether he could serve as an expert witness, by not holding a hearing on his motion to submit DVD evidence, by denying his motion for a default judgment, by denying his motion to revisit the grant of summary judgment, by denying his motion to amend, and by admitting the hearing officer's findings of facts.

As an initial matter, we decline to review Claims 3, 9, 13, and 17 because Brown does not reassert them on appeal. *HN1*[↑] Issues raised in the district court but not on appeal are considered abandoned and are not reviewable. *Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005)*.

*HN2*[↑] A litigant must file specific objections to a magistrate judge's report and recommendation to preserve appellate review [*8] of the claims addressed therein. See *Thomas v. Arn, 474 U.S. 140, 142, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*. Where a litigant fails to raise a specific objection, review of that matter is waived. *Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011)*.

*HN3*[↑] We review a grant of summary judgment de novo. *Saieg v. City of Dearborn, 641 F.3d 727, 733 (6th Cir. 2011)*. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. Upon consideration of a motion for summary judgment, the district court's

function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. HN4[↑] The movant bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The district court must view the evidence in the light most favorable to the non-moving party, who must present sufficient evidence such that a rational jury might find in its favor. *Anderson, 477 U.S. at 255, 256-57*. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id. at 252*.

In his first claim, Brown asserted that he was discharged in retaliation for filing an EEOC charge, complaining about illegal activities, requesting an administrative transfer, and complaining about gender discrimination, [*9] all in violation of Title VII.

HN5[↑] The Supreme Court established a three-part framework for the allocation of proof in employment discrimination cases where there is an absence of direct evidence. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. The complainant in a Title VII action carries the initial burden of establishing a prima facie case of discrimination. *Id. at 802*. To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the defendant knew of the protected activity; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 504 (6th Cir. 2014)*. Protected activities include filing an EEOC charge and opposing discriminatory practices by making complaints to management. See *42 U.S.C. § 2000e-3(a)*; *EEOC v. New Breed Logistics, 783 F.3d 1057, 1067 (6th Cir. 2015)*.

HN6[↑] Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action taken against the employee. *McDonnell Douglas Corp., 411 U.S. at 802*. Thereafter, the burden shifts to the plaintiff to establish that the employer's stated reason was a pretext for discrimination. *Id. at 804*. Although the burden of production shifts, [*10] the burden of persuasion remains at all times with the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*; *Montell, 757 F.3d at 504*. "When the employer 'proceed[s] along lines previously contemplated,'" a court "must not take the temporal proximity of the adverse employment action as evidence of causality." *Montell, 757 F.3d at 507* (quoting *Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)*).

In her report, the magistrate judge made the following conclusions about Brown's Title VII retaliatory discharge claim. Brown could not establish a prima facie case of retaliatory discharge based on the EEOC charge because Brown filed the EEOC charge after the June 11, 2013, recommendation that he be dismissed, rather than before the recommendation. Furthermore, SCBOE articulated a legitimate, nondiscriminatory reason for dismissing Brown — inefficiency and low TEM scores for the 2011-2012 and 2012-2013 schoolyears. Because Brown did not provide evidentiary support for his allegation that the year-end decline in his 2012-2013 TEM scores indicated that they had been falsified, he failed to demonstrate that SCBOE's reason was pretextual. Brown objected only to the finding that he had failed to show pretext. The district court accordingly limited its review and overruled the objection based on

the hearing officer's finding that the initial TEM [*11] score was preliminary. On appeal, Brown again argues that his TEM scores were falsified.

Brown's failure to object to the finding that he failed to establish a prima facie case defeats his claim. *See Alspaugh, 643 F.3d at 166*. However, because the issue of pretext relates to other claims, we will consider it here. *HN7*[⬆] To demonstrate pretext, an employee must show that the proffered reason had no basis in fact, did not motivate the adverse employment action, or was insufficient to motivate the action. *Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir. 2012)*. If the employer's proffered reason was based on an honest belief, then the reason was not pretextual. *Id. at 530-31*. To determine whether the employer had an honest belief, a court may examine the nature of the investigation and the disciplinary decision process. *Id. at 531*.

We conclude that Brown failed to demonstrate that SCBOE's reason was pretextual. SCBOE engaged in an extensive investigation and disciplinary process before ultimately discharging Brown. The process included two years of TEM evaluations, a PAR evaluation, and the teacher tenure hearing, where Brown was represented by counsel. Brown's bare assertion that his TEM scores and other information were falsified is insufficient to show the SCBOE's proffered reason had no basis [*12] in fact. *See id.* Additionally, Brown's allegation of Allen's personal animus toward surplused teachers is insufficient to show retaliation. *See id. at 533*.

Brown alternatively argued in his first claim that he was discharged in retaliation for opposition activity, i.e., he made complaints about children being subjected to abuse and corporal punishment; he made complaints about windows being screwed shut; he requested an administrative transfer through the MEA because Allen harassed him due to his surplused-teacher status and gender; and he complained to Branch about gender discrimination by Allen.

Brown has not appealed the part of the claim regarding abuse, corporal punishment, and the windows, and thus has abandoned that part of the claim. *See Turner, 412 F.3d at 639*. Moreover, all parts of Brown's alternative claim lack merit because Brown failed to demonstrate that SCBOE's reason for his dismissal was pretextual, for the reasons discussed above. *See Tingle, 692 F.3d at 530-31*.

In his second claim, Brown asserted that he was discharged in retaliation for notifying SCBOE about corporal punishment of students and an alleged assault by Allen on the school secretary, in violation of Tennessee common law protecting whistleblowers. The magistrate [*13] judge recommended dismissing this claim because governmental entities have immunity from suit against such claims under Tennessee's Governmental Tort Liability Act ("GTLA"). *See Tenn. Code Ann. § 29-20-201(a)*. Brown objected, arguing that *Tennessee Code Annotated § 29-20-205*, and *Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 84 (Tenn. 2001)*, precluded immunity where there was negligent supervision and training of employees. The district court overruled Brown's objections, reasoning that a claim of retaliatory discharge required intentional acts. *See Baines v. Wilson Cty., 86 S.W.3d 575, 579 (Tenn. Ct. App. 2002)*. On appeal, Brown reasserts that SCBOE lacked immunity.

We reject Brown's argument because *HN8*[⬆] "the common-law retaliatory discharge claim is available only to private-sector employees." *Williams v. City of Burns, 465 S.W.3d 96, 110 (Tenn. 2015)*. Brown is a public-sector employee. Furthermore, *Limbaugh* is distinguishable because it does not concern retaliatory discharge.

In his fourth claim—his remaining 42 U.S.C. § 1983 civil rights claim, Brown asserted that he was deprived of his Fourteenth Amendment liberty interest in a good reputation when the SCBOE brought false charges against him and made the charges public in a televised meeting. As relief, Brown sought a name-clearing hearing.

HN9[ ] "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (quoting [*14] Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)). To determine whether a plaintiff is entitled to a name-clearing hearing, a court must consider whether: (1) the employer made stigmatizing statements in conjunction with the plaintiff's discharge; (2) the employer "alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance"; (3) the employer disseminated the stigmatizing statements or charges to the public; (4) the plaintiff contends that the charges were false; and (5) the employer voluntarily disseminated the statements. Quinn v. Shirey, 293 F.3d 315, 320 (6th Cir. 2002) (quoting Brown v. City of Niota, 214 F.3d 718, 722-23 (6th Cir. 2000)); see also Jennings v. Cty. of Monroe, 630 Fed. Appx. 547, 2015 WL 7253009, at *8 (6th Cir. 2015). A plaintiff must request a name-clearing hearing prior to filing suit, and no deprivation of liberty occurs until the employer denies the plaintiff's request. Brown, 214 F.3d at 723.

The district court properly concluded that Brown failed to establish that SCBOE made stigmatizing statements that alleged more than inadequate performance. A statement that a teacher has failed to meet required minimum standards is insufficient. Blair v. Bd. of Regents of State Univ. & Cmty. Coll. Sys., 496 F.2d 322, 324 (6th Cir. 1974). Stigmatizing statements instead must involve immorality or dishonesty. See Roth, 408 U.S. at 573; Ludwig v. Bd. of Trs. of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997). Brown did not allege that the statements suggested that he was immoral or dishonest. Moreover, Brown requested and received a hearing on SCBOE's charges against him. Thus, he [*15] was not deprived of a liberty interest.

In his fifth claim, Brown raised issues of disparate treatment, disparate impact, and hostile work environment. Brown asserted that he was treated differently from female teachers and was subjected to harassment, in violation of Title VII. He alleged that Allen had yelled and had told him that, because he was a man, he should help outside during school dismissal and should not have student disciplinary problems. He further alleged that he and another male teacher were given a disproportionate number of African-American students with discipline problems.

HN10[ ] To establish a prima facie case of reverse discrimination under a disparate treatment theory, the plaintiff must show that: (1) background circumstances exist which "support the suspicion that the defendant is that unusual employer who discriminates against the majority," Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003); (2) the plaintiff was subjected to an adverse employment action; (3) he was qualified for the position in question; and (4) he was replaced by a member of the minority or was treated differently from a similarly situated member of the minority. See McDonnell Douglas Corp., 411 U.S. at 802; Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir. 2008). An adverse employment action requires a "materially adverse change in the [*16] terms and conditions of a plaintiff's employment." Deleon v. Kalamazoo Cty. Rd. Comm'n, 739 F.3d 914, 918 (6th Cir. 2014) (quoting White v. Burlington N. & Santa Fe

*Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). As to the fourth prong, the plaintiff must be similarly-situated to the other "employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998); see also *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014). Once a plaintiff establishes a prima facie case, the remainder of the *McDonnell Douglas* burden-shifting analysis applies. See *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). The pretext analysis remains the same as well. *Davis v. Cintas Corp.*, 717 F.3d 476, 491-92 (6th Cir. 2013).

The district court dismissed the claim, reasoning, inter alia, that Brown failed to identify any similarly situated female employee who was treated more favorably than he was and that he could not establish that the reason for his discharge was pretextual. On appeal, Brown contends that his declaration and those of other employees established that a female teacher received high evaluation scores and that female teachers did not have outside dismissal duty.

We affirm the district court's judgment as to this claim for reasons other than those stated by the district court. See *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 620 (6th Cir. 2010). In his complaint, Brown contended that the adverse action was his assignment to outside dismissal duty, not his ultimate discharge. We conclude that the outside duty assignment was a "mere inconvenience or an alteration of job responsibilities" that was [*17] "not enough to constitute an adverse employment action." *Deleon*, 739 F.3d at 918 (quoting *White*, 364 F.3d at 797). To the extent that Brown relies on his discharge as the adverse action, the claim still fails because he did not show that the reason for his discharge was pretextual. See *Davis*, 717 F.3d at 491-92; *Tingle*, 692 F.3d at 530-31.

"HN11[↑]] Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses 'a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Ricci v. DeStefano*, 557 U.S. 557, 578, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)); *Johnson v. City of Memphis*, 770 F.3d 464, 471 (6th Cir. 2014), cert. denied, 136 S. Ct. 81, 193 L. Ed. 2d 34 (2015). The plaintiff must also provide "statistical proof that the practice adversely affects a protected group." *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 612-13 n.16 (6th Cir. 2013).

The district court dismissed the disparate impact claim because Brown failed to present statistical proof concerning the outside-duty placement and classroom assignments. On appeal, Brown reasserts his claim and argues that he did not have to prove disparity by a "rigid mathematical formula." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 995, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988).

Brown's claim fails for the reasons stated by the district court, and these reasons are consistent with the Supreme Court's decision in *Watson*. The Court held that:

> HN12[↑]] the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question [*18] has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation.

*Id.* at 994-95. Thus, while Brown did not have to show that the challenged practices affected a certain

percentage of teachers, he still had to present sufficient statistical evidence. Brown did not present any.

HN13[↑] To establish a Title VII hostile-work-environment claim, a plaintiff must provide evidence of harassment that "unreasonably interfer[es] with [his] work performance and creat[es] an objectively intimidating, hostile, or offensive work environment." *Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 362 (6th Cir. 2010)* (quoting *Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008))*. In determining whether the workplace is subjectively and objectively hostile, a court should consider the totality of the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)*. "An employer is subject to vicarious liability [*19] to a victimized employee for an actionable hostile environment created by a supervisor." *Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)*.

The district court concluded that Allen's alleged references to Brown's gender, outside duty, and classroom management were mere offensive utterances that did not create a hostile environment and further observed that Brown did not demonstrate that SCBOE knew of Allen's comments.

Brown reasserts his claim on appeal. We conclude that his claim fails because he did not show that the workplace was objectively hostile, despite his subjective feelings to the contrary, and he did not allege how Allen's actions interfered with his work performance. See *Harris, 510 U.S. at 22-23*.

In his sixth claim, Brown asserted that Allen and Helminski libeled him by making false statements when evaluating him and by overstating the time they had observed him, in violation of state law. The magistrate judge concluded that SCBOE had immunity from suits for libel pursuant to the GTLA. See *Tenn. Code Ann. § 29-20-205(2)*. On review, the district court dismissed the claim based on the plain language of the GTLA.

On appeal, Brown essentially argues that immunity does not apply under *Tennessee Code Annotated § 29-20-310(c)* and that SCBOE was negligent in supervising Allen. The district court properly concluded that SCBOE [*20] had immunity from libel claims. HN14[↑] The Tennessee Supreme Court recently observed that the GTLA did not remove immunity for certain claims such as libel. See *Sneed v. City of Red Bank, 459 S.W.3d 17, 25 (Tenn. 2014)*. Furthermore, the statute cited by Brown is inapplicable because it refers to suits against employees, not employers. Brown sued only his employer, not Allen.

In his seventh claim, Brown asserted that Allen and Helminski aided and abetted the torts of retaliation, common law whistle-blowing, and defamation by "collaborat[ing] and forg[ing] letter/s for dismissal" and publishing false information about him during televised school board meetings. Prior to July 2014, the *THRA* prohibited *aiding* and *abetting* acts of discrimination. See *Tenn. Code Ann. § 4-21-301(2)* (2013) (repealed eff. July 1, 2014).

The district court dismissed the claim because Brown did not cite evidence to support his allegations and he did not object to a finding by the magistrate judge that the alleged defamation was not discriminatory. On appeal, Brown reiterates that Allen and Helminski falsified letters.

We conclude that Brown's claim lacks merit because his allegations of forgery and collaboration are conclusory.

See *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. Moreover, he has waived the portion of his claim regarding publication by failing to reassert [*21] it in his objections and on appeal. See *Alspaugh, 643 F.3d at 166*.

In his eighth claim, Brown asserted that Allen and Helminski engaged in a civil conspiracy to cause Brown's discharge by forging letters and submitting them to the Office of Labor and Employee Relations, in violation of state law. The magistrate judge recommended dismissing Brown's claim because the acts of performing reviews and reporting performance issues fell within the scope of Allen's and Helminski's employment and Brown did not allege that they had acted for their own personal purposes. The district court concluded that the claim was without merit because Brown presented no evidence that Allen and Helminski acted for personal purposes and because there was no evidence of forgery. On appeal, Brown argues that Allen and Helminski "may have had personal reasons" to have him discharged because Allen no longer would have a subordinate complaining to SCBOE and Helminski would curry favor with her boss.

The district court properly dismissed the civil conspiracy claim. HN15[↑] "[F]or a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment [*22] and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation." *Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 704 (Tenn. 2002)*; see also *Moses v. Dirghangi, 430 S.W.3d 371, 379 (Tenn. Ct. App. 2013)*. Brown does not contest that Allen and Helminski acted within the scope of their employment, and his suggestion that they may have acted for their own personal purposes is conclusory. See *Iqbal, 556 U.S. at 678*.

In his tenth and eleventh claims, Brown asserted that SCBOE negligently trained and supervised Allen and Helminski in violation of state common law. Allegedly, SCBOE did not adequately train Allen to evaluate teachers or supervise the evaluation process. As to Helminski, Brown alleged that SCBOE only gave her a few weeks of training to be a PAR teacher and did not supervise her to ensure she was regularly doing "post-conferences" with Brown. In his response to SCBOE's summary judgment motion, Brown alleged that Allen was unfit for duty because she yelled at teachers and had assaulted a secretary.

The district court rejected Brown's argument as unsupported and further concluded that he had not presented evidence that SCBOE knew or should have known of Allen's and Helminski's unfitness for duty. On appeal, Brown argues that his TEM scores were falsified and that DVD evidence shows [*23] that students were not misbehaving.

HN16[↑] "A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)*. Thus, the district court properly dismissed the claim due to Brown's failure to present evidence that SCBOE knew Allen and Helminski were unfit for their jobs.

The district court properly denied admittance of the DVD for reasons that will be discussed below. Additionally, Brown does not allege that the DVD shows anything other than that the students did not misbehave. Even if true, this would be no more than a scintilla of evidence in his favor, which would be insufficient to defeat summary judgment. Further, the TEM evaluation sheet contains many other categories where Brown received

poor scores. Also, Branch stated in her affidavit that one reason for Brown's low evaluation scores was that he persisted in using an ineffective teaching technique called "choral reading," despite being advised to discontinue it by Allen and Helminski. Last, Brown failed to show that his TEM scores were falsified as was discussed [*24] previously.

In his twelfth claim, Brown asserted that SCBOE breached his contract by discharging him based on Allen's and Helminski's forged letters in violation of state common law.

The claim was dismissed below because Brown could not show that any forgery occurred. On appeal, Brown again contends that the letters were forged, that the TEM scores were falsified, and that review of the DVD would show that he deserved a better TEM rating because students were not misbehaving.

The district court properly dismissed the claim. HN17[] "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ARC LifeMed, Inc. v. AMC—Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). Because Brown did not provide evidence of false letters and TEM scores, he did not show an act of nonperformance constituting a breach of contract. And, as discussed above, the DVD would produce no more than a scintilla of evidence in his favor.

In his fourteenth claim, Brown asserted that SCBOE breached an implied covenant of good faith and fair dealing in violation of state law by discharging him based on false allegations [*25] and letters. The district court dismissed the claim, reasoning that Tennessee does not recognize an action for bad faith as a stand-alone claim. On appeal, Brown reasserts his claim.

The district court properly dismissed the claim of breach of good faith. HN18[] "[G]ood faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort." Solomon v. First Am. Nat. Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989). Brown did not cite any authority to the contrary.

In his fifteenth claim, Brown asserted that SCBOE failed to afford him a timely hearing, in violation of the Tennessee Teacher Tenure Act. See Tenn. Code Ann. § 49-5-512. He acknowledged that the Act did not provide a timeframe, but asserted that lawmakers would not deem the two-year wait that many teachers had experienced to be proper. The magistrate judge recommended dismissal of the claim because SCBOE had complied with the Act, which did not contain a time requirement. In his objections, Brown conceded that he had received a hearing about seven months after the notice of suspension, but he contended that the hearing officer was not impartial because she was paid for her services and had conducted prior [*26] hearings. The district court concurred with the magistrate judge's reasoning and concluded that Brown had not demonstrated partiality as defined by the Act. On appeal, Brown reasserts that his hearing officer was not impartial and that she lacked jurisdiction.

The district court properly dismissed the claim. HN19[] The Act provides that a tenured teacher who wishes to challenge charges may demand a hearing "before an impartial hearing officer selected by the board." Tenn. Code Ann. § 49-5-512(a). "'[I]mpartial' means that the selected hearing officer shall have no history of employment with the board or director of schools, no relationship with any board member and no relationship with the teacher or representatives of the teacher." Tenn. Code Ann. § 49-5-512(a)(3). Brown failed to provide any evidence documenting the terms of

the relationship between his hearing officer and SCBOE. Moreover, he fails to cite authority that a service provider paid by a school board such as SCBOE is therefore an employee and that the rendering of prior paid service to a school board constitutes a "history of employment." Brown's allegation that the hearing officer lacked jurisdiction is conclusory. See *Iqbal, 556 U.S. at 678*.

In his sixteenth claim, Brown asserted that SCBOE discharged him for reporting [*27] illegal activities at Charjean Elementary, i.e., the alleged corporal punishment, child abuse, sealed windows, and assault on the secretary, in violation of the TPPA. See *Tenn. Code Ann. § 50-1-304(b)*. The district court concluded that Brown did not establish causation between the alleged reporting of illegal activities and his discharge because his first set of low TEM scores occurred prior to his transfer to Charjean Elementary and thus before he allegedly witnessed illegal activities. Additionally, the district court held that Brown had failed to show that SCBOE's reason for his discharge was pretextual. On appeal, Brown reasserts his claim.

The district court properly dismissed the TPPA claim. HN20[⬆] In a TPPA whistleblowing claim, the plaintiff must show that: (1) he was employed by the defendant; (2) he refused to remain silent about his employer's illegal activities; (3) he was discharged; and (4) his refusal to remain silent was the sole cause of his discharge. *Williams, 465 S.W.3d at 110-11*. Upon the establishment of a prima facie case, the burden shifts to the employer to "articulate a non-retaliatory reason for [the plaintiff's] discharge." *Id. at 115*. The burden then shifts back to the plaintiff to establish that the reason was pretextual. *Id. at 118*. For [*28] the reasons previously stated, Brown did not establish that SCBOE's proffered reason for his discharge was pretextual. See *Tingle, 692 F.3d at 530-31*.

Brown argues that the district court erred by not deciding whether he could serve as an expert witness and by not holding a hearing to view the DVD evidence. After the district court had granted summary judgment to SCBOE on all claims but the COBRA claim, the magistrate judge granted motions in limine by SCBOE to exclude the report and DVD because they were not relevant to the COBRA claim. Brown appealed to the district court on the ground that SCBOE's motions should be denied in the event that the Sixth Circuit remanded the action for trial. The district court upheld the decision, reasoning that it could not predict future appellate action.

Because the district court's judgment must be affirmed and the action will not be remanded for trial, Brown's appeal of the denial of the motions in limine is moot and need not be considered. See *Ford v. Wilder, 469 F.3d 500, 504 (6th Cir. 2006)*; *Samson v. Apollo Res., Inc., 242 F.3d 629, 642 (5th Cir. 2001)*. Moreover, Brown's challenge to the district court's decision regarding the DVD is perfunctory and does not contain any developed argumentation. Thus, the issue is waived. See *Grinter v. Knight, 532 F.3d 567, 574 n.4 (6th Cir. 2008)*.

Brown next argues that the district court erred by [*29] denying his September 23, 2014, motion to amend his complaint to add claims of a RICO conspiracy, a violation of the TPPA, and negligent training and supervision. All claims related to an alleged practice called "teaching to only ten," where teachers were to focus on their ten best students when preparing the class for an annual standardized test. Brown allegedly was instructed to use the practice at Treadwell Elementary and supported his allegation that the practice existed with a newspaper article printed in May of 2014, about another elementary school. On appeal, Brown contends that he had not been aware that the practice was district-wide until reading the article and that granting his motion would not have caused undue

delay.

HN21[↑] We review the denial of a motion to amend for an abuse of discretion. _Kreipke v. Wayne State Univ., 807 F.3d 768, 781 (6th Cir. 2015)_; _Leary v. Daeschner, 349 F.3d 888, 904 (6th Cir. 2003)_. A district court abuses its discretion by "committ[ing] a clear error of judgment." _Leary, 349 F.3d at 904_ (quoting _Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996))_. Where the deadline for filing amendments has passed, a district court should not grant a motion to amend unless the plaintiff shows good cause for not previously seeking to amend and the defendant would not suffer prejudice. _Id. at 909_. The plaintiff must show that he could not have met the deadline despite due [*30] diligence. _Id. at 906_.

The district court did not abuse its discretion. Brown missed the November 25, 2013, deadline for amending pleadings by ten months and failed to establish good cause. He had been aware of the challenged academic practice for more than one year before filing his original complaint, yet failed to meet the deadline for filing an amendment. His allegation that he did not know that the practice was district-wide is insufficient to establish good cause. Furthermore, the February 25, 2014, discovery deadline had passed by seven months, and SCBOE would have suffered significant prejudice by needing to reopen discovery. _See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999)_; _see also Crestwood Farm Bloodstock v. Everest Stables, Inc., 751 F.3d 434, 445 (6th Cir. 2014)_.

In his remaining arguments, Brown presents perfunctory challenges to the denial of his motion for a default judgment, the denial of his motion to revisit summary judgment, and the admission of the hearing officer's findings of facts. Because he does not present any developed argumentation, the issues are waived. _See Grinter, 532 F.3d at 574 n.4_.

Accordingly, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

End of Document