# EXHIBIT 1

 Positive

As of: April 14, 2022 4:27 AM Z

# *Davis v. Vanderbilt Univ. Med. Ctr.*

Court of Appeals of Tennessee, At Nashville

June 3, 2020, Session; August 5, 2020, Filed

No. M2019-01860-COA-R3-CV

**Reporter**
2020 Tenn. App. LEXIS 349 *; 2020 WL 4516094

JEFFREY CLAY DAVIS v. VANDERBILT UNIVERSITY MEDICAL CENTER

**Subsequent History:** Appeal denied by *Davis v. Vanderbilt Univ. Med. Ctr., 2020 Tenn. LEXIS 645 (Tenn., Nov. 12, 2020)*

**Prior History:** Tenn. R. App. P. 3 [*1] Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded. Appeal from the Chancery Court for Davidson County. No. 19-0067-II. Anne C. Martin, Chancellor.

**Disposition:** Judgment of the Chancery Court Reversed and Remanded.

## Core Terms

regulations, workplace violence, illegal activity, general duty, hazards, employees, occupational safety, trial court, allegations, guidelines, doors, laundry room, healthcare, terminated, remain silent, violations, medical center, ventilation, workplace, policies, locking, notice, failure to state a claim, working conditions, motion to dismiss, public health, implicate, violence, patient, safe

## Case Summary

### Overview

HOLDINGS: [1]-It was error to dismiss appellant employee's complaint under the Tennessee Public Protection Act (TPPA), alleging he was terminated for refusing to remain silent about appellee employer's failure to enact workplace violence policies, because he alleged a violation of OSHA's general duty clause which implicated important public policy concerns in Tennessee, which satisfied the TPPA's "illegal act" requirement.

### Outcome

Judgment reversed.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1*[ ] Involuntary Dismissals, Appellate Review

The grant or denial of a motion to dismiss involves a question of law, which is reviewed de novo, without any presumption of correctness.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to State Claims

*HN2*[ ] **Involuntary Dismissals, Failure to State Claims**

A party that files a motion to dismiss pursuant to *Tenn. R. Civ. P. 12.02(6)* asserts that the plaintiff has failed to state a claim upon which relief can be granted. The motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. A *Rule 12.02(6)* motion is resolved by examining the complaint alone; if the plaintiff can prove any set of facts in support of the claim, the motion should be denied. The party filing the motion admits the truth of all the relevant and material allegations contained in the complaint but asserts that the allegations fail to establish a cause of action. When ruling on *Rule 12.02(6)* motions, courts are to construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.

Labor & Employment Law > Employment Relationships > At Will Employment > Exceptions

Labor & Employment Law > Discrimination > Retaliation

*HN3*[ ] **At Will Employment, Exceptions**

Retaliatory discharge is an important, but narrow, exception to the employment-at-will doctrine.

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

*HN4*[ ] **Evidence, Burdens of Proof**

To prevail on a claim under the Tennessee Public Protection Act, a plaintiff must prove the following four elements: (1) the plaintiff was an employee of the defendant, (2) the plaintiff refused to participate in or remain silent about illegal activity, (3) the defendant employer discharged or terminated the plaintiff's employment, and (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

*HN5*[ ] **Evidence, Burdens of Proof**

The Tennessee Public Protection Act (TPPA) defines "illegal activities" as activities that are in violation of the Tennessee or U.S. criminal or civil code or any regulation intended to protect the public health, safety or welfare. *Tenn. Code Ann. § 50-1-304(a)(3)*. Thus, under the TPPA, illegal activity requires a violation of a state or federal statute or regulation.

Labor & Employment Law > Wrongful Termination > Whistleblower Protection Act > Scope & Definitions

Labor & Employment Law > Wrongful Termination > Public Policy > Workplace Violence

*HN6*[ ] **Whistleblower Protection Act, Scope & Definitions**

The 2015 Occupational Safety and Health Administration workplace violence guidelines are not statutory provisions or regulations, for purposes of a wrongful termination claim under the Tennessee Public Protection Act (TPPA); they are non-mandatory guidance only. Their violation does not constitute an illegal activity under the TPPA.

Business & Corporate Compliance > ... > Labor & Employment Law > Occupational Safety & Health > Duties & Rights

*HN7*[ ] Occupational Safety & Health, Duties & Rights

The general duty clause of the Occupational Safety and Health Act places two duties on an employer: (1) a duty to furnish to each of his or her employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his or her employees, and (2) a duty to comply with promulgated occupational safety and health standards. *29 U.S.C.S. § 654(a)*.

Business & Corporate Compliance > ... > Labor & Employment Law > Occupational Safety & Health > Duties & Rights

*HN8*[ ] Occupational Safety & Health, Duties & Rights

The general duty clause of the Occupational Safety and Health Act (OSHA or Act) is intended by Congress to cover unanticipated hazards; Congress has recognized that it cannot anticipate all of the potential hazards that might affect adversely the safety of workers. Accordingly, it has enacted the general duty clause to cover serious hazards that were not otherwise covered by specific regulations. Pursuant to *29 U.S.C.S. § 654(a)(1)*, every employer owes a duty of reasonable care to protect his or her employees from recognized hazards that are likely to cause death or serious bodily injury. The protection from exposure to serious hazards is the primary purpose of the general duty clause, and every employer owes this duty regardless of whether it controls the workplace, whether it is responsible for the hazard, or whether it has the best opportunity to abate the hazard. The class of employers who owe a duty to comply with OSHA regulations is defined with reference to control of the workplace and opportunity to comply with the OSHA regulations. Accordingly, an employer's responsibilities under the Act depend upon which duty provision the employer is accused of breaching. Similarly, the class of persons for whom each of these duty provisions was enacted must be determined with reference to the particular duty in dispute.

Business & Corporate Compliance > ... > Labor & Employment Law > Occupational Safety & Health > Duties & Rights

*HN9*[ ] Occupational Safety & Health, Duties & Rights

Application of the general duty clause of the Occupational Safety and Health Act does not depend upon advisory workplace violence guidelines. Rather, the general duty clause applies in the absence of specific regulations. A violation of the general duty clause requires proof of the following elements: (1) an activity or condition in the employer's workplace presented a hazard to an employee, (2) either the employer or the industry recognized the condition or activity as a hazard, (3) the hazard was likely to or actually caused death or serious physical harm, and (4) a feasible means to eliminate or materially reduce the hazard existed.

Business & Corporate Compliance > ... > Labor & Employment Law > Occupational Safety & Health > Duties & Rights

*HN10*[ ] Occupational Safety & Health, Duties & Rights

An employer may violate the general duty clause of the

Occupational Safety and Health Act by failing to have sufficient policies in place to prevent workplace violence.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > ... > Whistleblower Protection Act > Evidence > Burdens of Proof

*HN11*[ ] **Whistleblower Protection Act, Protected Activities**

The Tennessee Public Protection Act (TPPA) defines "illegal activities" as activities that are in violation of the Tennessee or U.S. criminal or civil codes or any regulation intended to protect the public health, safety or welfare. *Tenn. Code Ann. § 50-1-304(a)(3)*. Under the TPPA as well as under the common law, the illegal activity must implicate important public policy concerns. Pursuant to the public policy proof required to establish a retaliatory discharge claim under the TPPA (as well as the common law), a plaintiff must assert that his or her whistleblowing activity serves a public purpose that should be protected. So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, a decision to expose illegal or unsafe practices should be encouraged. By contrast, complaints regarding a technical violation of a regulation or an internal management issue are not protected by the whistleblower act.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

Labor & Employment Law > ... > Whistleblower Protection Act > Scope & Definitions > Covered Employees

*HN12*[ ] **Whistleblower Protection Act, Protected Activities**

"Illegal activity" under the Tennessee Public Protection Act is defined as activities which are in violation of the Tennessee or U.S. criminal or civil codes or any regulation intended to protect the public health, safety or welfare. *Tenn. Code Ann. § 50-1-304(b)*. The statute's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it.

Business & Corporate Compliance > ... > Whistleblower Protection Act > Scope & Definitions > Protected Activities

*HN13*[ ] **Whistleblower Protection Act, Protected Activities**

Under *Tenn. Code Ann. § 50-3-102(b)*, workplace safety, including the prevention of workplace violence, appears to be a matter of public concern in the State of Tennessee.

**Counsel:** Bob Lynch, Jr., and Nancy Vincent, Nashville, Tennessee, for the appellant, Jeffrey Clay Davis.

William S. Rutchow and Casey McCluskey Parker, Nashville, Tennessee, for the appellee, Vanderbilt University Medical Center.

**Judges:** ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

**Opinion by:** ANDY D. BENNETT

## Opinion

A medical center employee sued the medical center under the Tennessee Public Protection Act ("the TPPA") asserting that his employment was terminated because he refused to remain silent about the medical center's failure to enact policies to safeguard its employees from workplace violence. The medical center moved to dismiss the employee's complaint for failure to state a claim, and the trial court granted the motion. We conclude that the employee's complaint satisfies the TPPA's "illegal act" requirement because it alleges the violation of the Occupational Safety and Health Act's general duty clause and describes activities [*2] that implicate important public policy concerns. Therefore, we reverse the trial court's dismissal.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey Davis was employed as a claims manager for the risk and insurance management division of Vanderbilt University Medical Center ("VUMC"). On January 17, 2019, Mr. Davis filed a complaint against VUMC alleging that his employment was terminated because he refused to remain silent about VUMC's failure to comply with new Occupational Safety and Health Administration ("OSHA") guidelines for preventing workplace violence; he asserted causes of action for common law retaliatory discharge and violation of the TPPA, also known as the whistleblower act. VUMC filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, and Mr. Davis filed a motion to amend his complaint to add allegations that the "illegal activities" referenced in his complaint included violations of the Patient Safety and Quality Improvement Act of 2005 ("PSQIA"), Tenn. Code Ann. §§ 63-1-150 and 68-11-272, as well as assault and battery.

On June 4, 2019, the trial court entered an order of dismissal regarding Mr. Davis's claim for common law retaliatory discharge in response [*3] to a notice of voluntary dismissal filed by Mr. Davis. A few days later, the trial court entered an order granting Mr. Davis's unopposed motion to amend his complaint. In his amended complaint, Mr. Davis alleged, in pertinent part, as follows:

> 8. Vanderbilt is subject to regulation by OSHA and it was the Plaintiff's responsibility to ensure that it complied with all OSHA regulations. On April 2, 2015, OSHA updated its "guidance for protecting healthcare and social services workers from workplace violence" to address what it had determined was a growing crisis in the healthcare industry.
>
> 9. As a result of this OSHA update, the Plaintiff began reviewing Vanderbilt's existing workplace policies in order to update them to comply with the new OSHA regulations. [Reference to attached "regulations"].
>
> 10. On March 14, 2016, the Plaintiff placed several Vanderbilt officials on notice, including his immediate supervisor, Ms. Sandy Bledsoe (hereinafter "Ms. Bledsoe"), that OSHA was becoming much more strict with respect to workplace violence within high-risk industries, which included healthcare, and instructed them on what needed to be done to comply with these new stricter policies. [Reference [*4] to attached email].
>
> 11. In the March 14, 2016 email, the Plaintiff informed his superiors of the following:
>
> "Workplace violence falls under OSHA's 'General Duty' clause."
>
> "Healthcare Industry is considered a 'high risk' industry and as such OSHA expects employers in

this industry to be more proactive with recordkeeping, prevention and employee training."

"Employers should have a 'trained' employee population on how to prevent workplace violence."

"Employers should adopt the OSHA recommended guidelines on Healthcare worker violence prevention."

"OSHA categorized workplace violence into 4 subgroups. (1. Criminal intent, 2. Patient 3. Coworker 4. Personal)"

"OSHA expects the Healthcare Employer to keep detailed recordkeeping of all workplace violence injuries broken down into the 4 categories mentioned above."

"VU — Has a HR policy that governs Workplace Violence in a University setting."

"VUMC — I do not see a HR policy that addresses Work Place Violence in a Healthcare Setting specially."

[Reference to attached email].

In addition, Plaintiff orally informed Vanderbilt's management that even though it had a policy on workplace violence in a healthcare setting, it did not address OSHA's regulations, [*5] rules and guidelines.

12. Plaintiff alleges pursuant to *Tenn. R. Civ. P. 8.05* that the public policy for which he refused to participate in or remain silent about is based on OSHA's "General Duty" clause and any and all OSHA and Tennessee Occupational Safety and Health Administration's (hereinafter "TOSHA") regulations and policies concerning workplace violence. Plaintiff further alleges that in determining the existence of "illegal activities" that are "in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare," includes the Patient Safety and Quality Improvement Act of 2005 (Public Law 109-41), T.C.A. § 63-1-150 and § 68-11-272 et seq. (*see ¶* 17), and T.C.A. §§ 39-13-101 and 102 — Assault and Battery. (*See ¶* 20, [reference to an attached list of assault and batteries on the 8th floor of Vanderbilt Children's Hospital in 2016-2017]). Plaintiff alleges that in addition to protecting employees from workplace violence as alleged herein, he was also attempting to protect patients and the general public from the violence occurring at the hospital.

(Footnotes omitted). Mr. Davis went on to allege that VUMC terminated his employment "because of his failure to remain [*6] silent about the violations/deficiencies and his continued efforts to bring Vanderbilt within compliance of the OSHA Workplace Violence Guidelines."

VUMC filed a motion to dismiss the amended complaint on the basis that the complaint failed to state a claim because Mr. Davis did not engage in protected activity for two reasons: (1) his conduct did not relate to any law or regulation, and (2) his conduct did not further an important public policy interest.

After a hearing on July 12, 2019, the trial court entered an order on July 18, 2019, granting VUMC's motion to dismiss. The court determined that the OSHA guidelines are not mandatory and found that "the failure to employ best practices, or follow OSHA recommendations, does not equate to illegal activity." It further concluded that neither PSQIA nor assault and battery law was relevant to Mr. Davis's allegations. Mr. Davis filed a motion to alter or amend on August 15, 2019, and the trial court denied the motion in an order filed on October 7, 2019.

The sole issue presented in this appeal is whether the trial court erred in granting VUMC's motion to dismiss for failure to state a claim upon which relief may be

granted.

STANDARD OF REVIEW [*7]

*HN1*[↑] The grant or denial of a motion to dismiss involves a question of law, which we review de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011)*.

*HN2*[↑] A party that files a motion pursuant to *Tenn. R. Civ. P. 12.02(6)* asserts that the plaintiff has failed to state a claim upon which relief can be granted. The motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011)*; see also *Willis v. Tenn. Dep't of Corr., 113 S.W.3d 706, 710 (Tenn. 2003)*. A *Rule 12.02(6)* motion is resolved by examining the complaint alone; if the plaintiff can prove any set of facts in support of the claim, the motion should be denied. *Webb, 346 S.W.3d at 426*. The party filing the motion "'admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Phillips v. Montgomery Cnty., 442 S.W.3d 233, 237 (Tenn. 2014)* (quoting *Webb, 346 S.W.3d at 426*) (further citations omitted). When ruling on *Rule 12.02(6)* motions, courts are to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Webb, 346 S.W.3d at 426*) (further citations omitted).

ANALYSIS

*HN3*[↑] Retaliatory discharge "is an important, but narrow, exception to the employment-at-will doctrine." *Franklin v. Swift Transp. Co., Inc., 210 S.W.3d 521, 530 (Tenn. Ct. App. 2006)*. We must determine whether Mr. Davis's amended complaint states [*8] a claim for which relief can be granted under the TPPA. *HN4*[↑] To prevail on a claim under the TPPA, a plaintiff must prove the following four elements:

> "(1) the plaintiff was an employee of the defendant;
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity."

*Webb, 346 S.W.3d at 437* (quoting *Sykes v. Chattanooga Hous. Auth., 343 S.W.3d 18, 27 (Tenn. 2011))*.

Illegal activity: violation of statute or regulation

The trial court dismissed Mr. Davis's complaint on the ground that the allegations did not relate to or demonstrate illegal activity on the part of VUMC. *HN5*[↑] The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Tenn. Code Ann. § 50-1-304(a)(3)*. Thus, under the TPPA, illegal activity requires violation of a state or federal statute or regulation. See *Konvalinka v. Fuller, No. E2017-00493-COA-R3-CV, 2019 Tenn. App. LEXIS 275, 2019 WL 2323831, at *8 (Tenn. Ct. App. May 31, 2019)* (dismissing TPPA complaint on the basis of plaintiff's failure "to identify a specific statutory [*9] or regulatory provision that he believed had been violated or would be violated").

Much of Mr. Davis's complaint concerns his allegation that he was terminated because of his refusal to remain

silent about VUMC's failure to comply with OSHA's new guidelines regarding workplace violence. HN6[↑] The 2015 OSHA workplace violence guidelines, however, are not statutory provisions or regulations; they are non-mandatory guidance only. The guidelines, which are attached to the amended complaint, begin with the following notice:

> This guidance document is advisory in nature and informational in content. It is not a standard or regulation, and it neither creates new legal obligations nor alters existing obligations created by the Occupational Safety and Health Administration (OSHA) standards or the Occupational Safety and Health Act of 1970.[1]

Thus, contrary to the implication of Mr. Davis's complaint, these guidelines are not regulations. Their violation does not, therefore, constitute an illegal activity under the TPPA.

Mr. Davis also makes reference to OSHA's general duty clause as a basis for the illegal activity supporting his TPPA claim. HN7[↑] As Mr. Davis points out, the general duty clause of the Occupational [*10] Safety and Health Act ("the OSH Act") places two duties on an employer: (1) a duty to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;" and (2) a duty to "comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a). It is the first of these statutory duties, a workplace free from recognized hazards, upon which Mr. Davis relies. In Teal v. E.I. DuPont de Nemours and Company, 728 F.2d 799, 803 (6th Cir. 1984), the Sixth Circuit addressed this "'general duty' imposed on an employer to protect its employees from hazards that are likely to cause death or serious bodily injury." The court described the second duty as a "'specific duty' imposed on employers to comply with the OSHA regulations." Teal, 728 F.2d at 803. Explaining the need for a general duty provision, the court stated:

> The difficulty which courts have experienced in attempting to define a particular employer's responsibilities under the Act is due primarily to the varying nature of the separate duty provisions. HN8[↑] The general duty clause was intended by Congress to cover unanticipated hazards; Congress recognized that it could not anticipate all of the [*11] potential hazards that might affect adversely the safety of workers. Accordingly, it enacted the general duty clause to cover serious hazards that were not otherwise covered by specific regulations. Southern Ohio Building Systems, Inc. v. OSHRC, 649 F.2d 456, 458 (6th Cir.1981). Pursuant to Sec. 654(a)(1), every employer owes a duty of reasonable care to protect his employees from recognized hazards that are likely to cause death or serious bodily injury. The protection from *exposure* to serious hazards is the primary purpose of the general duty clause, *e.g.,* Anning-Johnson Co. v. United States O.S. & H.R. Com'n, 516 F.2d 1081, 1086 (7th Cir.1975), and *every* employer owes this duty regardless of whether it controls the workplace, whether it is responsible for the hazard, or whether it has the best opportunity to abate the hazard. In contrast, Sec. 654(a)(2) is the specific duty provision. The class of employers who owe a duty to comply with the OSHA regulations is defined with reference to control of the workplace and opportunity to comply with the OSHA regulations. Accordingly, an employers' [sic] responsibilities under the Act depend upon which duty provision the employer is accused of breaching. Similarly, the class of persons for whom

---

[1] The guidelines can be found at https://www.osha.gov/Publications/osha3148.pdf .

each of these duty provisions was enacted must be determined with reference to the particular duty in dispute.

Id. at 804 (footnotes omitted).

In its [*12] brief, VUMC asserts that the new OSHA guidelines on workplace violence do not create new obligations on employers under the general duty clause (because the guidelines are merely advisory). Although we agree that the guidelines are advisory, the HN9[↑] application of the general duty clause does not depend upon the guidelines. Rather, as outlined above, the general duty clause applies in the absence of specific regulations. A violation of the general duty clause requires proof of the following elements:

> (1) an activity or condition in the employer's workplace presented a hazard to an employee, (2) either the employer or the industry recognized the condition or activity as a hazard, (3) the hazard was likely to or actually caused death or serious physical harm, and (4) a feasible means to eliminate or materially reduce the hazard existed.

Fabi Constr. Co., Inc. v. Sec'y of Labor, 508 F.3d 1077, 1081, 378 U.S. App. D.C. 380 (D.C. Cir. 2007). Moreover, these principles have been applied by OSHA to workplace violence in healthcare facilities.

In BHC Northwest Psychiatric Hospital, LLC v. Secretary of Labor, 951 F.3d 558, 560-61 (D.C Cir. 2020), the Secretary of Labor (on behalf of OSHA) cited an inpatient psychiatric facility for violating the general duty clause "by inadequately protecting its employees from the 'recognized hazard[ ]' of patient aggression toward staff." The hospital appealed [*13] from an administrative decision affirming the citation. BHC, 951 F.3d at 561. The court rejected the hospital's argument that it did not have fair notice that the general duty clause might be applied to require the hospital to implement such abatement measures:

> The Secretary identified specific measures, including an overarching workplace violence prevention program, needed to meet the requirements of the General Duty Clause and protect staff from patient violence at a sizable inpatient psychiatric hospital like Brooke Glen. The ALJ found that those measures accord with well-known industry best practices and peer-reviewed research.

Id. at 566. HN10[↑] Thus, an employer may violate the general duty clause by failing to have sufficient policies in place to prevent workplace violence.[2] *See also U.S. Dep't of Labor Cites Behavior Treatment Hosp. for Exposing Emps. to Workplace Violence Hazards*, U.S.D.L. 19-0824, 2019 WL 2403205 (June 7, 2019); *OSHA Cites Bergen Reg'l Med. Ctr. After 8 Emps. Assaulted or Threatened by Patients Since Feb.*, U.S.D.L. 15-1699-NEW (OSHA 15-069), 2015 WL 5168789 (Sept. 3, 2015); *U.S. Labor Dep't's OSHA Fines Lakeview Specialty Hosp. for Inadequate Workplace Violence Safeguards at Waterford, Wis., Ctr.*, U.S.D.L. 12-819-CHI, 2012 WL 1551473 (May 1, 2012); [*14] *U.S. Dep't of Labor's OSHA Cites the Acadia Hosp. in Bangor, Me., for Inadequate Workplace Violence Safeguards*, U.S.D.L. 11-115-BOS/BOS2011-028, 2011 WL 262990 (Jan. 28, 2011); *U.S. Labor Dep't's OSHA Cites Danbury, Conn., Hosp. for Inadequate Workplace Violence Safeguards*, U.S.D.L. 10-970-BOS/BOS 2010-313, 2010 WL 2796444 (July

---

[2] Because we find that Mr. Davis's complaint makes reference to a statutory violation under the general duty clause of the OSH Act, we decline to address the arguments in his brief regarding misrepresentation by concealment, nuisance, fraud, and criminal negligence other than to note that we find no mention of these claims in the complaint itself. Similarly, we need not address Mr. Davis's allegations regarding the Patient Safety and Quality Improvement Act of 2005.

16, 2010) (examples of OSHA citations against hospitals for violations of the general duty clause by failing to have adequate policies in place to prevent workplace violence ).

We conclude that the trial court erred in dismissing Mr. Davis's complaint on the basis that it did not allege activity related to a statute or regulation.

Illegal activity: public policy implications

*HN11*[↑] As stated above, the TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). Construing this language, our courts have held that, under the TPPA as well as under the common law, the illegal activity must "implicate important public policy concerns." Franklin, 210 S.W.3d at 530; see also Williams v. Greater Chattanooga Pub. Television Corp., 349 S.W.3d 501, 515 (Tenn. Ct. App. 2011). Our Supreme Court has made the following statement regarding the public policy proof required to establish a retaliatory discharge claim under the TPPA (as well as the common law): [*15]

> [T]he plaintiff must assert that his or her whistleblowing activity "serves a public purpose [that] should be protected. So long as employees' actions are not merely private or proprietary, but instead *seek to further the public good*, the decision to expose illegal or unsafe practices should be encouraged."

Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 537 n.4 (Tenn. 2002) (quoting Wagner v. City of Globe, 150 Ariz. 82, 722 P.2d 250, 257 (Ariz. 1986)). By contrast, complaints regarding a "technical violation of a regulation" or "an internal management issue" are not protected by the whistleblower act. Burnett v. Am.'s Collectibles Network, Inc., No. E2009-00591-COA-R3-CV, 2010 Tenn. App. LEXIS 146, 2010 WL 669246, at *7 (Tenn. Ct. App. Feb. 25, 2010).

Does an alleged violation of OSHA's general duty clause for inadequate workplace violence safeguards implicate important public policy concerns in Tennessee? VUMC's argument is that, "[u]nder Tennessee law, violations of the OSH Act or regulations . . . cannot serve as the predicate 'illegal act' for purposes of establishing a TPPA claim because the OSH Act and its regulations were designed to protect employees, not the public at-large." We respectfully disagree with VUMC's broad interpretation of the two cases it cites to support this proposition. In Boyd v. Edwards & Associates, Inc., 309 S.W.3d 470, 471 (Tenn. Ct. App. 2009), a plastics worker sued her former employer under the TPPA alleging that she was terminated from her [*16] job in retaliation for reporting an OSHA violation regarding fiberglass sanding. The employer moved for dismissal based on the employee's failure to state a claim, and the trial court granted the motion. Boyd, 309 S.W.3d at 471. On appeal, the employer argued that the trial court's decision was correct because there was no illegal activity within the meaning of the TPPA because the activity of which the employee complained "was merely something that was personally bothersome to her." Id. at 473. According to the complaint, a co-worker would sand fiberglass outside the ventilated room designated for that activity, and this caused an offensive smell and dust particles that were bothersome to the plaintiff. Id. n.2. The plaintiff contended that the co-worker's actions violated the Tennessee Occupational Safety and Health Act ("TOSHA") and OSHA. Id. On appeal, this court affirmed the trial court's dismissal of the complaint because the plaintiff "did not cite any specific threat either to her own health or safety or that of the public." Id. at 474. The

plaintiff had, therefore, "failed to show that defendants' activities have implicated 'fundamental public policy concerns.'" *Id.*

VUMC also relies upon [*17] *Sacks v. Jones Printing Company, Inc., No. 1:05-CV-131, 2006 U.S. Dist. LEXIS 16075, 2006 WL 686874, at *2 (E.D. Tenn. Mar. 16, 2006)*, a case in which a press operator sued his employer under the TPPA. The employee in *Sacks* was terminated after complaining about the company's failure to install proper ventilation and its dumping of chemicals. *Sacks, 2006 U.S. Dist. LEXIS 16075, 2006 WL 686874, at *2, *4*. The employer argued that these actions did not constitute illegal activities under the TPPA. *2006 U.S. Dist. LEXIS 16075, [WL] at *4*. It is the court's analysis regarding the improper ventilation that is most relevant here because the plaintiff's complaints about the ventilation were grounded in OSHA. The plaintiff pointed to OSHA regulations requiring manufacturers of hazardous substances to recommend appropriate protective measures. *Id.* The court found that the regulation did not require the company to install a ventilation system. *Id.* With respect to allegations of overexposure to certain chemicals, the court found "no evidence Defendant exceeded the limits provided for by TOSHA." *2006 U.S. Dist. LEXIS 16075, [WL] at *5*. The court also found that the plaintiff "fails to explain which minimum [ventilation] standards were not met, whether Defendant is subject to [*29 C.F.R.*] *§ 1910.94*, or how Defendant violated the minimum standards." *Id.*

VUMC relies upon *Sacks* for statements made by the federal district court to the effect that the OSHA regulations [*18] were "designed to protect employees" and to provide them with a safe work environment and, therefore, were not covered by the TPPA, which defines illegal activities as "protect[ing] the *public* health, safety or welfare." *Id.* We decline to endorse this broad statement. In *Boyd*, this court gave the following description of the decision in *Sacks*:

The federal court found that while the employer's actions might have violated certain OSHA/TOSHA regulations, these regulations were not intended to protect the "health, safety, and general welfare of the public", and thus plaintiff could not show the employer engaged in "illegal activities."

*Boyd, 309 S.W.3d at 474* (quoting *Sacks, 2006 U.S. Dist. LEXIS 16075, 2006 WL 686874, at *5*). As stated above, the *Boyd* court found no fundamental public policy concerns because the plaintiff's allegations did not relate to her health or to the health or safety of the public; she merely reported conditions she found bothersome. *Id. at 474*.[3]

We disagree with VUMC's position that the welfare of employees can never constitute the basis of a TPPA action. Indeed, our Supreme Court affirmed this court's reversal of a trial court's grant of summary judgment to a defendant for failure to state a claim in a TPPA case based on an OSHA violation in *Mason v. Seaton, 942 S.W.2d 470, 471 (Tenn. 1997)*. [*19] The plaintiff in *Mason* worked in the laundry room at the defendants' hotel. *Mason, 942 S.W.2d at 471*. Two of the three doors in the laundry room were on the east side of the room with access to the hotel's convention center; the third door was on the west side of the laundry room with access to the outside of the building. *Id.* The gas fired dryers along the wall between the east doors and the west door "had accidentally caught on fire on previous occasions." *Id.* The plaintiff noticed "maintenance

---

[3] We note that, in a later section of the opinion that addresses the allegations of chemical dumping, the federal district court in *Sacks* found that the plaintiff had sufficiently stated a claim where "statutes, not regulations, are at issue here." *Sacks, 2006 U.S. Dist. LEXIS 16075, 2006 WL 686874, at *6*. As a result, the court reasoned, "the public's interest, as opposed to just employees' interest, is implicated." *Id.* In the present case, the general duty clause is part of the OSHA statute.

personnel installing locks on the two doors providing access to the convention center." *Id.* According to the evidence submitted in opposition to the defendants' motion for summary judgment, the following events thereafter occurred:

> The plaintiff expressed to management personnel her concern that she and other laundry room personnel could be trapped in the laundry room in the event a fire started at one of the gas fired dryers. When pleas by the plaintiff and others failed to dissuade management from its decision to lock the doors at the east end of the laundry room, the plaintiff telephoned the city fire and police department. As the result of the plaintiff's call, police and fire department officers made an investigation [*20] at the hotel. At the insistence of the officers, the hotel manager discussed with the plaintiff her safety concerns. As the result, the defendants agreed that one door on the east end of the laundry room would remain unlocked until 7 p.m. of each day.
>
> Subsequently, the defendants were cited for code violations unrelated to the locked doors, for which they paid a penalty. An industrial safety expert testified that locking both doors at the east end of the laundry room would have created a condition dangerous to workers in that room and was a violation of 29 C.F.R. § 1910.36(b)(4) (1996).

*Id.* The defendants terminated the plaintiff's employment without stating a reason six days after she protested the locking of the doors and reported the issue to city officials. *Id.*

The trial court in *Mason* found that there were disputed issues of material fact as to whether the plaintiff was discharged solely due to her reporting of the conditions in the laundry room and as to whether the activity reported was illegal under the statute. *Id. at 472*. The trial court dismissed the complaint, however, on the basis that "the plaintiff had failed to submit evidence that she was forced by her employer to violate a law or regulation or to remain [*21] silent about the violation." *Id.* The Court of Appeals remanded the case, finding disputed issues of material fact with respect to every element of the cause of action. *Id.* The Supreme Court considered de novo "whether the plaintiff failed to present evidence supporting every essential element of a cause of action under Section 50-1-304." *Id.*

The defendants' first two arguments were that the reported activities were not illegal under the TPPA and that the plaintiff had failed to show a causal relationship between her reporting and her discharge. *Id.* On these two issues, the Court concluded that "[t]he record clearly supports the concurrent findings by the trial court and the Court of Appeals." *Id.* For present purposes, we quote the Court's statement regarding the illegal activity prong of the analysis:

> The testimony of the expert on industrial safety that locking the doors created a dangerous working condition, and the existence of code violations were sufficient evidence of illegal activity to overcome the motion for summary judgment. This evidence is sufficient to show HN12[↑] "illegal activity," which is defined as "activities which are in violation of the criminal or civil code of this state or the United [*22] States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(b). The statute's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it. *See e.g., Melchi v. Burns Int'l Security Services, Inc., 597 F. Supp. 575, 583 (E.D. Mich.1984)*.

*Id.* Thus, the Court accepted the violation of the OSHA

regulation as a matter of sufficient public policy concern to constitute an illegal activity under the TPPA.[4]

Tennessee's OSHA contains the following statement of purpose:

> The general assembly declares it to be its purpose and policy through the exercise of its powers to assure so far as possible every working man and woman in the state safe and healthful working conditions and to preserve our human resources by:
>
> (1) Encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new, and to perfect existing, programs for providing safe and healthful working conditions;
>
> (2) Providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions; [*23]
>
> (3) Authorizing the commissioner of labor and workforce development to develop occupational safety and health standards applicable to business, giving consideration to the needs of employees and employers and to standards promulgated from time to time by the secretary of labor under the Occupational Safety and Health Act of 1970, compiled in 29 U.S.C. § 651 et seq., and by creating an occupational safety and health review commission for carrying out adjudicatory functions under this chapter;
>
> (4) Building upon advances already made by federal laws and regulations and state laws and regulations for providing safe and healthful working conditions;
>
> (5) Providing criteria that will assure, insofar as practicable, that no employee will suffer diminished health, functional capacity or life expectancy as a result of the employee's work experience;
>
> (6) Providing for education and training of personnel for the fair and efficient administration of occupational safety and health standards;
>
> (7) Providing for education and training of employers and employees in occupational safety and health;
>
> (8) Providing an effective enforcement program, which shall include a prohibition against giving advance notice of an inspection and [*24] sanctions for any individual violating this prohibition;
>
> (9) Providing for appropriate reporting procedures with respect to occupational safety and health, which procedures will help achieve the objectives of this chapter and accurately describe the nature of the occupational safety and health problem; and
>
> (10) Encouraging joint labor-management efforts to reduce injuries and diseases arising out of employment.

Tenn. Code Ann. § 50-3-102(b). Thus, HN13[↑] workplace safety, including the prevention of workplace violence, appears to be a matter of public concern in the State of Tennessee. Mr. Davis's complaint alleges insufficient safeguards against violence by patients against employees in a major medical center.

We find the allegations of Mr. Davis's complaint sufficient to state a claim under the TPPA.

CONCLUSION

The judgment of the trial court is reversed, and the

---

[4] As to the main issue presented, the Court in *Mason* concluded that the TPPA does not require a showing that the employer instructed the employee to remain silent. *Id.* at 475-76.

matter is remanded to the trial court for further proceedings. The costs of this appeal are taxed against the appellee, Vanderbilt University Medical Center, and execution may issue if necessary.

ANDY D. BENNETT, JUDGE

End of Document