2020 WL 6948361
Only the Westlaw citation is currently available.
United States District Court, E.D.
Tennessee, Southern Division,
at Chattanooga.

Melanie NEALE, Plaintiff,
v.
COLOPLAST CORP., Defendant.

1:18-cv-00274-TRM-SKL
|
Filed 11/02/2020

**Attorneys and Law Firms**

Erin V. Wallin, Marvin B. Berke, Berke, Berke & Berke, Chattanooga, TN, for Plaintiff.

Grayson Chambers, William R. Dearing, Chambliss, Bahner & Stophel, PC, Chattanooga, TN, Gregory A. Ruehlmann, Pro Hac Vice, Radha S. Manthe, Pro Hac Vice, King & Spalding, LLP, Atlanta, GA, for Defendant.

**MEMORANDUM AND ORDER**

SUSAN K. LEE, UNITED STATES MAGISTRATE JUDGE

*\*1* Before the Court is Plaintiff's second motion to compel discovery [Doc. 53]. Defendant filed a response in opposition with a supporting affidavit [Doc. 57 & Doc. 58]. Plaintiff replied with a supporting affidavit [Doc. 60 & Doc. 59], and this matter is now ripe. For the reasons set forth below, Plaintiff's motion [Doc. 53] will be **GRANTED IN PART** and **DENIED IN PART** as ordered herein.

### I. BACKGROUND

The Court denied Plaintiff's first motion to compel [Doc. 45] with leave to refile after the requisite good-faith conferral. The parties conferred by telephone on September 10, 2020 [Doc. 55; Doc. 58]. Defendant served amended responses to Plaintiff's interrogatories and requests for production on October 16, 2020 [Doc. 58-1], after Plaintiff had filed her second motion to compel but before Defendant had responded to it. Now that the parties have conferred, *see* Fed. R. Civ. P. 37(a)(1), the Court will address the merits of Plaintiff's second motion to compel.[1]

The parties have reached agreement on Interrogatories 11 through 14 and 24 [*see* Doc. 55 at Page ID # 498; Doc. 57 at Page ID # 524; Doc. 60 at Page ID # 577]. Still in dispute are Plaintiff's Interrogatories 1–10 and 15–23 and Requests for Production of the documents referred to in Interrogatories 1 and 2 [*see* Doc. 53-2; Doc. 60].[2] In general, Plaintiff asserts that she has compromised by limiting her questions to the actual product at issue in this product-liability case,[3] the Restorelle Y Polypropylene vaginal mesh implant, but Defendant continues to press "boilerplate" objections and refer Plaintiff to "thousands of pages of documents" rather than provide direct responses to her interrogatories and tailored production in response to her requests for production [Doc. 54 at Page ID # 474].

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 governs the scope of discovery, unless otherwise limited by court order. Fed. R. Civ. P. 26(b)(1). An interrogatory or request for production may relate to any matter within the scope of Rule 26(b). Fed. R. Civ. P. 33(a)(2), 34(a). As Rule 26(b) states:

*\*2* Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*; *see also Jones v. Johnson*, 801 F. App'x 338, 351 (6th Cir. 2020) (Readler, J., concurring in part and dissenting in part) (noting that the 2015 amendments to Rule 26 "cement[ed] the need for district courts to consider relevance and proportionality (rather than reasonable calculations regarding admissibility) as the touchstones in setting the scope of discovery"). "Relevance for discovery purposes is extremely broad." *Trimbur v. Norfolk S. Corp.*, No. 2:13-CV-0160, 2015 WL 235219, at \*2 (S.D. Ohio Jan. 16, 2015) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other

matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

However, a court must limit the extent of discovery "if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "[A] plaintiff should have access to information necessary to establish her claim, but [ ] a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Young v. Hooks*, No. 2:16-CV-250, 2020 WL 415609, at *3 (S.D. Ohio Jan. 27, 2020) (quoting *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017)). "In sum, '[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.' " *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)); *see also Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 907 (6th Cir. 2009) ("In determining the proper scope of discovery, a district court balances a party's right to discovery with the need to prevent 'fishing expeditions.' ") (cleaned up).

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). The party objecting to an interrogatory must state its objections "with specificity." Fed. R. Civ. P. 33(b)(4). "The court strongly condemns the practice of asserting boilerplate objections to every discovery request." *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032 at *4 (W.D. Mich. Feb. 13, 2001). A district court within this circuit has explained:

> [A] responding party cannot rely upon a boilerplate objection that simply uses the terms "undue burden," or "overly broad" as if the very terms were self-proving. It must be remembered in this respect that the burden falls upon [the responding party] to establish the exact nature of such an undue burden in concrete, meaningful terms. Otherwise, all discovery would grind to a halt with a party's boilerplate objections. *See, In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 310-311 (N.D. Ohio 2011) (" 'The mere statement by a party that an interrogatory or request for production for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.' ") (quoting

*Oleson v. K-Mart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1987)); *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 379-80 (C.D. Cal. 2009) (unexplained and unsupported boilerplate objections clearly are improper).

**\*3** *Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 WL 13714339, at *9 (W.D. Ky. May 25, 2015).

Furthermore, the objecting party should clearly state which interrogatories or subparts of interrogatories have been answered in full and which parts have not. *Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, No. CIV.A.08CV12393, 2009 WL 2022308, at *3 (E.D. Mich. July 8, 2009); *see, e.g., Advantage Industrial Sys., LLC v. Aleris Rolled Prod., Inc.*, No. 418CV00113JHMHBB, 2020 WL 4432415, at *11 (W.D. Ky. July 31, 2020) (objecting party may not "arbitrarily limit" the scope of a relevant question). In the case of requests for production, the responding party should clearly state whether or not all responsive documents have been produced. *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 642–43 (D. Kan. 1999).

A party may seek an order compelling discovery when an opposing party fails to provide complete and timely responses to its discovery requests. Fed. R. Civ. P. 37(a); Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). "The party moving to compel discovery bears the initial burden of proving the relevance of the information sought." *United States v. Florence*, No. 2:13-cv-00035, 2020 WL 5797987, at *2 (M.D. Tenn. Sept. 29, 2020); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that the "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them"); *Washington v. Riverview Hotel, Inc.*, No. 3:19-cv-00097, 2020 WL 3895243, at *2 (M.D. Tenn. July 9, 2020) (same).

"When the information sought appears to be relevant," the burden shifts to the party objecting to the discovery request to show why the request is improper, such as by "establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (internal quotation marks omitted); *see also Young*, 2020 WL 415609, at *3; Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (explaining that a party claiming undue burden or expense "ordinarily has far better

information—perhaps the only information—with respect to that part of the determination").

### III. ANALYSIS

The Court will address each remaining discovery dispute in turn, beginning with the interrogatories.

### A. Interrogatories

1. Please state the name, address and phone number of every person who complained of the Mesh implant Restorelle Y Polypropolene [sic]. As to each give the date of the Complaint and the substance of the Complaint.

Plaintiff has narrowed her previous request to the Restorelle Y Polypropylene mesh implant, the actual product she had implanted [Doc. 55-1 at Page ID # 501]. Defendant objects that: (1) it is barred by 21 C.F.R. § 20.63(f) from giving such identifying information; (2) the word "complaint" is vague; (3) the interrogatory is overly broad because it is not narrowed to Plaintiff's allegations about the product; (4) it is disproportional because it is not limited by timeframe; and (5) this request seeks information that is publicly available and/or in Plaintiff's possession. Subject to those objections, Defendant refers Plaintiff to the Manufacturer and User Facility Device Experience Database (the "MAUDE Database") on the U.S. Food and Drug Administration ("FDA") website, which can be easily searched; publicly available court filings; and the documents from the multi-district litigation that it has already produced to Plaintiff (the "MDL Production") [Doc. 53-2 at Page ID # 451].

**\*4** Plaintiff has not addressed Defendant's objection based on 21 C.F.R. § 20.63(f), other than stating that Defendant has not produced a privilege log. But Defendant is not asserting a privilege. 21 C.F.R. § 20.63(f) provides:

> The names and any information that would identify the voluntary reporter or any other person associated with an adverse event involving a human drug, biologic, or medical device product shall not be disclosed by the Food and Drug Administration or by a manufacturer in possession of such reports in response to a request, demand, or order. Information that would identify the voluntary reporter or persons identified in the report includes, but is not limited to, the name, address, institution, or any other information that would lead to the identities of the reporter or persons identified in a report. This provision does not affect disclosure of the identities of reporters required by a Federal statute or regulation to make adverse event reports. Disclosure of the identities of such reporters is governed by the applicable Federal statutes and regulations.

Defendant's objection is valid, since it is barred by law from releasing the personal identifying information in response to Plaintiff's interrogatory.

As to Defendant's second objection, the Court disagrees that the word "complaint" is vague. "Discovery is not a game of semantics." *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 664 (D. Colo. 2000). Plaintiff has directed Defendant to "the dictionary definitions" of the word rather than define the word or revise her interrogatory. [Doc. 59 at Page ID # 573]. The Court will not define the term for the parties by choosing among various dictionary definitions, but, for the purposes of this opinion, the Court will consider "complaints" to mean what it does in everyday parlance, which would include both formal and informal expressions of dissatisfaction.

Next, Defendant argues that the interrogatory is overly broad because it is not narrowed to Plaintiff's allegations about the specific injuries caused by the product. Plaintiff has not responded to this objection. The Court agrees with Defendant that complaints unrelated to the specific injuries alleged by Plaintiff are not relevant enough to any claims or defenses in this case for their inclusion to be proportional to the needs of the case. *See Jones v. Abbott Labs.*, No. 07-cv-2120, 2011 WL 13164887, at \*2 (W.D. Tenn. Nov. 10, 2011) (finding adverse event reports for drug that involved other adverse effects that were unrelated to plaintiff's alleged illnesses irrelevant under Rule 26); *see also McAnneny v. Smith & Nephew, Inc.*, No. 3:17CV00012, 2018 WL 1383400, at \*4 (D. Conn. Mar. 19, 2018) (denying a motion to compel production of all claims "stemming" from listed products, where request was not limited to claims involving similar circumstances, as "not proportional to the needs of [the] litigation"). "This is particularly true in light of the publicly available information regarding adverse events involving the listed devices in the FDA's MAUDE database." *McAnneny*, 2018 WL 1383400, at \*4.

Defendant's timeframe objection, however, is unpersuasive because a subsequent complaint may be relevant to the issue of causation, though not relevant to notice. *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir. 1977) ("[W]hen causation is an issue, provided a proper foundation has been laid, evidence of subsequent accidents may be admissible to prove causation and to rebut the opposing party's causation

theory."); *Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 166 (W.D. Mich. 1991) (noting that information about subsequent similar incidents may be discoverable if relevant, for example, to show the existence of a defect).

**\*5** The foregoing objections are at least partially moot if the Court accepts Defendant's fifth objection, that the information Plaintiff seeks (though perhaps without the personal contact information) is publicly available through the MAUDE Database or through documents that Defendant has already produced. Defendant's response does not clearly state whether or not there have been any complaints about the product, within the relevance parameters discussed above, that are not listed in the MAUDE Database. In other words, Defendant does not clearly state whether the information on the MAUDE Database is fully responsive to Interrogatory 1. Similarly, Plaintiff's motion and supporting briefs do not clarify whether Plaintiff seeks information that is not included in the database. Rather, Plaintiff argues that Defendant's response is insufficient because:

> It refers to Court filings, the FDA website, and a publicly available MAUDE database without stating what, where and when in the MAUDE database anything is located. It does not even say what the MAUDE database is or where it is found. Even if it did, it would be insufficient.

[Doc. 54-1 at Page ID # 478].

The Court will not order Defendant to assist Plaintiff in searching this publicly available database. A "defendant need not produce information readily available to the public, including plaintiff[ ]." *Access 4 All, Inc. v. W & D Davis Inv. Co.*, No. CIV.A. 2:06-CV-504, 2007 WL 614091, at \*3 (S.D. Ohio Feb. 21, 2007) (citing *Baum v. Village of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2003) (compelling discovery from another, pursuant to Fed. R. Civ. P. 37, is unnecessary when documents sought under Fed. R. Civ. P. 34 are equally accessible to all) and quoting Fed. R. Civ. P. 26(b)); *see also Torres v. Johnson & Johnson*, No. CV 3:18-10566-MGM, 2018 WL 4054904, at \*5 (D. Mass. Aug. 24, 2018) ("If material sought in discovery is readily obtainable from a public source such as the FDA, referring the interrogating party to the public source is an appropriate discovery response."). Since it appears from Plaintiff's argument, quoted above, that Plaintiff's counsel has not made any effort to access the database to date, Plaintiff has not demonstrated "it is inconvenient, burdensome or more expensive to obtain the requested documents from the public records." *Id.*

In *Kubicki on behalf of Kubicki v. Medtronic*, 307 F.R.D. 291 (D.D.C. 2014), the court addressed a defendant's argument, identical to Defendant's argument here, that it is prohibited by regulation from disclosing information about adverse event reporters and additionally should not have to provide information about adverse event reports that was already publicly available on the MAUDE Database in properly redacted form. *Id.* at 298. The court ruled: "[T]he MAUDE database provides the clear solution. I see no reason why that database cannot provide plaintiffs with the information they seek." *Id.* Similar to the court in *Kubicki*, this Court concludes that obtaining the information from the MAUDE Database rather than from Defendant would be "more convenient, less burdensome, and less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).[4]

Additionally, as the Court noted in its order denying Plaintiff's first motion to compel, Defendant has indicated that the MDL Production contains responsive documents [Doc. 52 at Page ID # 429]. In a declaration, one of Defendant's attorneys has detailed the extensive searching capabilities in arguing that "Plaintiff's counsel can easily search and examine the MDL Production's metadata on any number of readily available discovery-review platforms" and "perform plain-language searches of Coloplast's MDL production" [Doc. 58 at Page ID # 544]. Plaintiff does not contest that the MDL Production is easily searchable. Instead, he argues that Defendant should be ordered to respond directly instead of referring to sources where the information is available because "the responses to interrogatories can be used at trial. An answer as set forth in the case at bar referring Plaintiff to thousands of pages of documents cannot be." [Doc. 54 at Page ID # 475].

**\*6** The Court will not order duplicative discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). To the extent that the information requested is available in the MAUDE Database or the MDL Production, the Court will not order Defendant to restate the date and substance of each complaint in response to Plaintiff's interrogatory. *Cf. Static Control Components, Inc. v. Lexmark Int'l, Inc.*, No. CV 04-84-KSF, 2005 WL 8165628, at \*3 (E.D. Ky. Dec. 21, 2005) ("[T]here is no need for Lexmark to "cut and paste" [the same information into] its interrogatory answer and further burden an already extensive record."); *Abbott Labs*, 2011 WL 13164887, at \*5 ("The court is not inclined to require [the defendant] to reproduce the same adverse event reports in a different format for a third time."). The parties' relative access to the information in the MAUDE Database and the MDL Production is the same. *See* Fed. R. Civ. P. 26(b)(1). The burden on Defendant

of performing the necessary searches, which Plaintiff could perform herself and tailor to her own needs by utilizing different filters or combinations of search terms, would vastly outweigh the likely benefit to Plaintiff of having a list of all relevant complaints. *See id.* In addition, if Plaintiff performs the searches, the parties will avoid unnecessary disputes over search terms.

The Court notes (again) that, generally, a party that refers to other documents in its interrogatory responses must provide specific Bates-number references. *E.g., Spinks v. Home Tech Servs. Co.*, No. 03 CV 2568 D/P, 2005 WL 8156556, at *3 (W.D. Tenn. May 24, 2005); *see also Sungjin Fo-Ma*, 2009 WL 2022308, at *4 ("[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery."). A "document dump"—a production of documents that does not include such references—does not comply with a party's discovery obligations. *Stooksbury v. Ross*, 528 F. App'x 547, 550 (6th Cir. 2013); *United States v. Quebe*, 321 F.R.D. 303, 307 (S.D. Ohio 2017); *see also Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D. W. Va. 2016) ("The term 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests.... Such a tactic can bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents in order to glean information which may be relevant."). However, with respect to the interrogatory, although the information is voluminous, it is undisputed that the MAUDE Database and the MDL Production are easily searchable, such that Plaintiff will not be burdened with wading through a mass of unresponsive records.

The Court also notes that the cases Plaintiff cites for the proposition that Defendant must supply Bates numbers are inapposite to the circumstances here [*see* Doc. 54-1 at Page ID # 480–83; Doc. 60 at Page ID # 576–77]. In *Martin v. Easton Publishing Company*, 85 F.R.D. 312 (E.D. Pa. 1980), the court determined that the plaintiff had to provide more specific references to documents she had produced so that defendants could fully understand her case in order to prepare their defenses. *Id.* at 314–16. In *Union Pacific Railroad Company v. Larkin*, 229 F.R.D. 240 (D.N.M. 2005), the court required the plaintiff to supplement its interrogatory responses by identifying specific portions of depositions and the parties' statements by Bates number *Id.* at 243–45. Here, in contrast to those two cases, Plaintiff is requesting that the Court order Defendant to extensively catalog a set of documents that are not directly tied to Defendant's contentions or defenses.

The third case Plaintiff cites is *In re Chinn*, No. 17-30912-L, 2020 WL 5997139 (Bankr. W.D. Tenn. Feb. 20, 2020). The count in that case ordered the objecting party to supplement his responses, although it would require an extensive and costly review of documents. *Id.* at *4. However, in so doing, the court explained that the requested information was "uniquely within the control" of the party from whom it was sought. *Id.* As has already been addressed at length, the situation here is the opposite.[5]

**\*7** On the other hand, the Court is unable to determine whether all of the responsive materials are available through the MAUDE Database and/or the MDL Production. To the extent that there are "complaints"—as limited above—that are not included on the MAUDE Database or the MDL Production, Defendant **SHALL** list them in a supplemental response. If there are no complaints which are not included in the MAUDE Database or the MDL Production, Defendant **SHALL** clearly say so in its supplemental response. *Cf. Kubicki*, 307 F.R.D. at 298 (permitting plaintiffs to question deponent on awareness of any adverse event reports not reflected in the MAUDE Database).

2. State every Complaint case as to Polypropolene [sic] mesh implants with the name, address and phone number of the person which complained. As to each give the date of the Complaint and the substance of the Complaint.

The only information responsive to this interrogatory that would not already be included in the response the Court will order to Interrogatory 1 appears to be about polypropylene mesh implants other than Restorelle Y. As the Court explained to the parties in its order denying Plaintiff's first motion to compel,

> [t]he Sixth Circuit employs the "substantially similar" test to determine whether evidence of other products, accidents, or complaints is subject to discovery. *Steede v. Gen. Motors, LLC*, No. 11-2351-STA-dkv, 2013 WL 142484, at *9 n.25 (W.D. Tenn. Jan. 11, 2013) (collecting cases); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007). The products and circumstances do not have to be identical to those at issue; rather, there need only be substantial similarity among variables relevant to the plaintiff's theory of the defect. *Steede*, 2013 WL 142484, at *9; *see also Lohr v. Stanley-Bostitch, Inc.*, 135

F.R.D. 162, 164 (W.D. Mich. 1991) (finding the plaintiff was entitled to discovery concerning accidents involving the specific product used, as well as "other products that exhibit the features" that allegedly caused or contributed to the injury). Furthermore, information about subsequent similar incidents may be discoverable if relevant, such as to show the existence of a defect. Lohr, 135 F.R.D. at 166. The plaintiff bears the burden of showing substantial similarity. *Id.*

[Doc. 52 at Page ID # 429]. Defendant also raises this argument in its response [*see* Doc. 57 at Page ID # 525–26 (citing cases within this circuit in support)]. Plaintiff has made no effort to show that any other mesh implants are "substantially similar" in relevant features to Restorelle Y and, as such, has not met her burden. As a result, the Court deems this interrogatory, to the extent it is not duplicative of Interrogatory 1, not proportional to the needs of the case.

3. Please state when the Defendant became aware of studies of the use of Polypropolene [sic] in human implants and please state the study, when and where in [sic] first appeared, and the date of same.[6]

Defendants' grounds for objection to Interrogatory 3 are that it seeks irrelevant information as well as information regarding documents that are publicly available or already in Plaintiff's possession [Doc. 53-2 at Page ID # 452–53]. Defendant "additionally refers Plaintiff to the publicly available medical literature...." [*id.* at Page ID # 453]. Because this interrogatory goes to notice, Defendant's reference to publicly available literature is unresponsive. The question is "when the Defendant became aware of" the studies described. That information is relevant to notice because it "may demonstrate what or when [D]efendant knew about any defects with the product." McAnneny, 2018 WL 1383400, at *4.

**\*8** Although Defendant states that this question is "unduly burdensome" and "not proportional," Defendant has not support those statements with evidence [Doc. 53-2 at Page ID # 453], and, as a result, has not met its burden. *See* O'Malley, 311 F.R.D. at 463. Defendant **SHALL** provide a complete response to Interrogatory 3. *See* McAnneny, 2018 WL 1383400, at *6 ("Defendant shall directly address when it became aware of this information, even if it cannot specify an exact date."). To the extent Defendant refers to documents in its response, Defendant **SHALL** provide Bates-number references.[7]

4. Please state all other studies of the use of Polyprolene [sic] in human implants of which the Defendant is aware and for each state (a) where and when the study was published or delivered, (b) The [sic] location where the study can be found, and (c) the date the Defendant became aware of the study.

Plaintiff states that this question is relevant to notice, causation, and defects [Doc. 55-1 at Page ID # 502]. Defendant repeats the same objections as in its response to Interrogatory 3. This question, like Interrogatory 3, is relevant to notice to the extent it inquires about studies Defendant became aware of before Plaintiff's implant. This question is also relevant to issues of causation and defects regardless of the timeframe, but Defendant need only answer Interrogatory 4 as to studies it became aware of after Plaintiff's implant if they are not publicly available because Plaintiff can easily obtain the publicly available studies herself rather than burdening Defendant with finding them, and Defendant's knowledge or lack of knowledge of those studies is not relevant to causation or the existence of a defect. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

To the extent Defendant refers to its previous production of documents in its responses, Defendant **SHALL** provide Bates-number references. Alternatively, if Defendant prefers not to list or refer to specific studies, it may declare that it became aware of all publicly available studies within a given timeframe after their publication.

5. Please identify the following for the Restorelle Y product that you developed, designed, distributed, licensed, manufactured, marketed and/or sold by specifying the following:

   a. 510K number of the device;

   b. applicant's/submitter's name;

   c. device name;

   d. date of FDA approval;

   e. predicate device(s);

   f. description of device; and

   g. intended use.

During the parties' conferral process, Defendant provided a link to the FDA's publicly available online 510(k) summary.

Plaintiff states on the conferral chart that Defendant still needs to "[a]nswer [the] question" [Doc. 55-1 at Page ID # 502]. However, as Plaintiff has not addressed what additional information is needed that is not accessible via the website Defendant provided, the Court will not order Defendant to supplement its response by restating information that is already fully available to Plaintiff should she, metaphorically speaking, decide to drink the water to which she has been led.

6. For each mesh product identified in response to Interrogatory number 4, please identify the predicate or predecessor devices.

**\*9** Plaintiff indicated on the parties' chart that this interrogatory should have referred to Interrogatory 5 [Doc. 55-1 at Page ID # 503]. Defendant has indicated that the information requested is also available at the website Defendant referred to in its response to Interrogatory 5. As Plaintiff has not addressed whether this website fully provides the information she seeks, the Court will not order Defendant to supplement its response.

7. Please identify each electronic database (including but not limited to the name of the database, date ranges, size, operating system and interface application) utilized by you concerning:

    a. Adverse event reports or medical device reports;

    b. Sales and sales training;

    c. Marketing;

    d. Regulatory compliance;

    e. Key opinion leaders, preceptors, investigators, members of your speakers [sic] bureau and product champions;

    f. Communications with physicians or other healthcare providers;

    g. Studies;

    h. Design Failure Mode and Effects Analyses;

    i. Risk assessment or analysis;

    j. Design changes, including all changes therein both elective and regulatory;

    k. Record retention;

    l. Corrective and Preventive Actions;

    m. Manufacturing, including all changes therein both elective and regulatory;

    n. Complaints or reports of injuries;

    o. Scientific affairs or the comparable division or department;

    p. Finance or comparable division or department; and

    q. Trending or adverse events.

Plaintiff asserts that this interrogatory is relevant to prove "Information available to doctors, Notice and Causation, [and] FDA approval" [Doc. 55-1 at Page ID # 503]. Defendant objected to this interrogatory on the bases that some of the terms are vague and ambiguous, that the requested information about the databases is not relevant or limited by timeframe, and that Defendant "has already collected documents on the requested subjects from all relevant databases and provided responsive documents to Plaintiff through Coloplast production of documents from the Coloplast MDL." Nonetheless, subject to its objections, Defendant did provide a list of databases.

In her motion to compel, Plaintiff argues that Defendant's response was insufficient because it "does not give the database for each of the requested topics and date ranges, size, operating system and interface application." [Doc. 54-1 at Page ID # 485]. The Court does not find any of Defendant's objections to this interrogatory persuasive. Defendant is reminded of its "duty to make a reasonable investigation before responding to interrogatories." *Baker v. Cnty. Of Missaukee*, 1:09-CV-1059, 2013 WL 5786899, at \*3 (W.D. Mich. Oct. 28, 2013). Given that relevance is construed broadly for terms of discovery and the relatively small burden on Defendant of providing the rest of the information requested in the interrogatory, Defendant **SHALL** supplement its response by fully answering this question.

8. For the mesh product you identified in response to Interrogatory number 4, please identify the physical location, including addresses of any manufacturing facilities where the mesh products were manufactured from the time the product was first manufactured to the present.

Plaintiff has noted that this interrogatory should refer to Interrogatory 5 rather than Interrogatory 4 [Doc. 53-1 at Page ID # 438]. Plaintiff has also narrowed this interrogatory to include only Restorelle Y [*id.*]. Defendant objected on several grounds and provided no responsive information [*see* Doc. 45-1 at Page ID # 329]. Plaintiff complains that Defendant's "answer gives general objections without even attempting to answer" [Doc. 54-1 at Page ID # 485]. While the Court agrees with Plaintiff's assessment of Defendant's original response, during the conferral process Defendant provided the web address to the 510(k) summary for Restorelle Y, a document publicly available on the FDA website that Defendant represents contains all of the requested information [Doc. 55-1 at Page ID # 505]. Because Plaintiff has not disputed that this information is now fully accessible, the Court will not direct Defendant to provide any further response.

   **\*10**  9. For the mesh product you identified in response to Interrogatory number 1, please identify all clinical trials you conducted, sponsored, funded, reviewed before publication or contributed, before the date of FDA approval, including the following: a. The date(s) each study was conducted; b. The names of the persons conducting each study; c. The purpose of the study; and d. The results of each study.

During the conferral process, Plaintiff narrowed this interrogatory to include only Restorelle Y and no other products [Doc. 55-1 at Page ID # 505]. Defendant asserts, and Plaintiff does not dispute, that this information is also available in the 510(k) summary [*see id.*; Doc. 54-1 at Page ID # 485; Doc. 60 at Page ID # 577]. Again, as it appears to be undisputed that this information is publicly available, the Court will not order Defendant to provide any further response.

   10. For each mesh product you identified in response to interrogatory number 4, please identify all testing you conducted, sponsored or funded concerning the:

   a. Measurement or the potential for and amount in vivo (human or animal) shrinkage;

   b. Measurement or the potential for and amount in vivo (human or animal) creep;

   c. Measurement or the potential for and amount in vivo (human or animal) physical or mechanical changes;

   d. Measurement or the potential for and amount of physical or mechanical forces in the human female pelvic floor.

   e. Measurement or the potential for and amount of anticipated stresses in the human female pelvis;

   f. Measurement or the potential for and amount of in vivo (human and animal) movement due to the body's reaction to the mesh;

   g. Determination of a physician or other healthcare provider's proper course of action in the event of any failure or malfunction in vivo (human or animal).

   i. [sic] Human tissue elastic properties, including such properties in the human female pelvis; and

   j. Human or animal pelvis.

Plaintiff has noted that this interrogatory should refer to Interrogatory 5 rather than Interrogatory 4 and narrowed it to include only Restorelle Y and no other products [Doc. 55-1 at Page ID # 506; Doc. 58-1 at Page ID # 552]. Defendant asserts in its amended response, as well as in the parties' joint chart, and Plaintiff does not dispute, that this information is available in the 510(k) summary [*see* Doc. 55-1 at Page ID # 506; Doc. 58-1 at Page ID # 552; [Doc. 54-1 at Page ID # 485]]. Again, as it appears to be undisputed that this information is publicly available, the Court will not order Defendant to provide any further response.

The Court is cognizant of the possibility that, despite Defendant's representations, this information is not all included in these publicly available documents. But, the burden is on Plaintiff to show that Defendant's responses are incomplete and, thus, that an order compelling further discovery is needed. *See* Fed. R. Civ. P. 37(a)(4); *see, e.g., Hibbs v. Marcum*, No. 3:16-CV-146-TBR-LLK, 2018 WL 953347, at \*5 (W.D. Ky. Feb. 20, 2018) ("Plaintiff fails to show how Defendant [ ] failed to fully answer or provided an evasive or incomplete answer to Plaintiff's initial request."). Here, Plaintiff has not met her burden. She has not shown that Defendant's amended response is inadequate, such as by stating what requested information is missing from the publicly available information on the websites referred to by Defendant. Accordingly, the Court will not order a further response to this interrogatory.

*11 15. For each of your transvaginal and transabdominal mesh products, provide a detailed explanation of all studies to assess the efficacy and/or safety of the device that have been conducted since the date of FDA approval, including the following:

a. The date(s) each study was conducted;

b. The names of the persons conducting each study;

c. The purpose of the study; and

d. The results of each study.

Plaintiff has narrowed this interrogatory to include only Restorelle Y and no other products [Doc. 55-1 at Page ID # 509]. In her memorandum in support of her motion to compel, Plaintiff explains that Defendant's original response was insufficient because:

This question asks for information as to studies of safety of the device. Not one is given. Plaintiff is referred to "publicly available clinical literature on Restorelle" and to the 2.7 million files and 192 gigabytes previously sent. As set forth previously, this is not a proper answer.

[Doc. 54-1 at Page ID # 486]. In its amended response, Defendant objects to this interrogatory, among other grounds, "because it seeks to require Coloplast to create a summary of documents that are publicly available and/or already in Plaintiff's possession and is, therefore, improper." [Doc. 58-1 at Page ID # 555]. Notwithstanding its objection, Defendant listed citations to sixteen published, publicly available studies. [*Id.* at 556–57]. The Court notes that this interrogatory is not limited to studies Defendant was aware of during any particular timeframe, as would be probative of notice, but rather seeks a list of all efficacy and safety studies conducted since the product was approved. For the reasons already discussed, the Court will not order Defendant to catalog a list of publicly available studies. However, Defendant **SHALL** supplement its response by providing the requested information as to any studies that are not publicly available or clearly state that no such studies exist to Defendant's knowledge.

16. For each of your transvaginal and transabdominal mesh products, provide a detailed explanation of all medical devices reports (MDR's) submitted to FDA's Manufacturer and User Facility Device Experience (MAUDE) database.

Defendant's response objects that this interrogatory requires it to create a summary of documents that are already available through the MAUDE Database. Plaintiff argues that Defendant should be ordered to respond to this interrogatory because:

Other than the boilerplate objections continually given, the answer says "Subject to and without waiving foregoing objections, Coloplast refers Plaintiff to the publicly available MAUDE database." Again there is no answer or an explanation of the medical devices report submitted to MAUDE.

[Doc. 54-1 at Page ID # 486]. The Court will not belabor the foregoing analysis that it will not order Defendant to create unnecessary lists of information Plaintiff already has, but it is worth noting that it is also unclear what additional information this interrogatory seeks from a "detailed explanation." Plaintiff's briefs do not provide the answer, and the Court considers Defendant's reference to the MAUDE Database to be adequately responsive.

17. For each of your transvaginal and transabdominal mesh products, provide a detailed explanation of the written or electronic information which was provided or available to consumers concerning the uses, risks and benefits of the product.

*12 Defendant objected to this interrogatory on multiple grounds, as follows:

Coloplast objects to Interrogatory No. 17 because it seeks information that is publicly available and/or already in Plaintiff's possession. Coloplast further objects to this Interrogatory because it seeks to require Coloplast to create a summary of documents that are publicly available and/or already in Plaintiff's possession and is, therefore, improper. Coloplast also objects to this Interrogatory because it is vague and ambiguous as to the term "consumer." Coloplast additionally objects to this Interrogatory because, to the extent it assumes that Coloplast had a duty to provide information about Restorelle Y to the Plaintiff, this Interrogatory misstates both the law and the facts. Coloplast further objects to this Interrogatory because individuals will have information "available to" them beyond information that is provided by Coloplast. Accordingly, Coloplast objects to this Interrogatory because it seeks information that is not within Coloplast's possession, custody, and/or control but within the exclusive control of unknown third parties. Coloplast also objects to this Interrogatory because it is neither

limited to the Restorelle Y at issue in this case nor limited to the timeframe relevant to the facts of this case. For these reasons, Coloplast objects to this Interrogatory because it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the facts of this case. Subject to and without waiving the foregoing objections, Coloplast refers Plaintiff to the Restorelle Y Instructions for Use (IFU), which have been produced to Plaintiff and are publicly available.

[Doc. 53-2 at Page ID # 464]. Plaintiff complains that this response contains "no answer to the question of giving a detailed explanation of the written or electronic information given to customers as to the uses, risks, and benefits of the product." [Doc. 54-1 at Page ID # 486].

Plaintiff argues on the parties' conferral chart that this interrogatory is relevant to prove defect, notice, and causation [Doc. 55-1 at Page ID # 509]. Plaintiff's brief does not offer further explanation [Doc. 54-1 at Page ID # 486]. Defendant gives two reasons that information "provided or available to consumers" is not relevant [Doc. 57 at Page ID # 536–37]. First, Defendant argues that Plaintiff testified that she never saw or read any communication from Defendant before her implant and instead relied on the information given to her by the doctor who implanted the product [*id.* at Page ID # 536]. Second, Defendant argues that even if Plaintiff had been exposed to communications from Defendant, such communications would still be irrelevant because, under Tennessee's learned-intermediary doctrine, Defendant's duty to warn runs only to the physician, not to the patient [*id.* at Page ID # 536–37]. Plaintiff does not respond to these arguments or address Interrogatory 17 in her reply brief [*see generally* Doc. 60].

Defendant's arguments narrowly address Plaintiff's failure-to-warn claim but do not address Plaintiff's stated bases for relevance. The Court agrees with Plaintiff that the information given or available to customers is relevant, in that it may contain facts about the relative risks and benefits of the product that would be probative of whether the product is safe. Defendant has referred Plaintiff to the Restorelle Y Instructions for Use, which it represents are already in Plaintiff's possession and may be accessed through a simple search. The extent of any other responsive information in the MAUDE Database and/or the MDL Production is unclear, and it is also unclear what search terms Plaintiff would use to find it. Defendant has not shown that providing further explanation would be unduly burdensome. Accordingly, Defendant **SHALL** supplement its response to fully address the question, with Bates number references where applicable.

*13 18. For each of your transvaginal and transabdominal mesh products, provide a detailed explanation of the written or electronic information that was provided or available to the physicians concerning the uses, risks and benefits of the product.

As with its response to Interrogatory 17, Defendant objects that this information is publicly available and/or already in Plaintiff's possession and is not narrowed to a relevant timeframe, among other objections. However, just as the Court determined with respect to Interrogatory 17, this question is relevant to defect, notice, and causation, as Plaintiff has asserted. Also similarly to Interrogatory 17, it is not clear how Plaintiff would know that she had compiled a full list of the information available to physicians, as the best search terms are not obvious. Furthermore, the answer to this question is relevant to Defendant's contentions about what information was provided or available to physicians, so that Plaintiff's own search will not suffice. This interrogatory does not appear to be unduly burdensome, and, other than boilerplate objections, Defendant has made no showing that it is. Defendant also objects that the interrogatory seeks information that is not within its possession, custody, or control but provides no further explanation of what third parties would have this information and why Defendant would not also have it. Defendant **SHALL** provide a supplemental response with Bates number references where applicable.

19. If there are other documents or ESI available to physicians or consumers, not otherwise inquired about in these interrogatories, that provided information on the uses, risks, or benefits of your transvaginal or transabdominal mesh products or the treatment of pelvic or [sic] organ prolapse or stress urinary incontinence, describe the same. The response should describe all unique items specifying the time period during which the item was in use.

The parties' conferral chart shows that Plaintiff has narrowed this interrogatory to only the product at issue [Doc. 55-1 at Page ID # 510]. As a result, it appears that any responsive information will already be included in Defendant's supplemental responses to Interrogatories 17 and 18. Any other information Plaintiff seeks is not requested clearly and unambiguously. Accordingly, the Court will not order Defendant to respond further to this interrogatory.

20. Provide the following regarding any physician or scientist with whom any defendant has or had a relationship other than as a purchaser of products sold by Defendant:

a. the name of the physician or scientist;

b. the nature of the relationship, including "key opinion leader," consultant, member of a speaker's bureau, or others;

c. the substance of communications between defendant and the individual;

d. the time period during which the relationship existed;

e. the financial remuneration or compensation paid to the physician or scientist during the time the relationship existed; and

f. the written papers/studies or oral presentation ever made by the physician or scientist relevant to the issue of transvaginal mesh.

Defendant objected that this interrogatory is overly broad because it is not limited to the timeframe relevant to the facts of the case, Plaintiff's implanting physician, and the product at issue [Doc. 53-2 at Page ID # 466–67]. Subject to these and other objections, Defendant amended its response, referring Plaintiff to a publicly available website and stating that it has no relationship with Plaintiff's implanting physician other than that he has purchased Restorelle Y [Doc. 58-1 at Page ID # 558–59]. Plaintiff asserts this interrogatory is relevant because it is "[i]mportant to see if experts hired for anything or may testify" and "[a]lso possibly with FDA approval" [Doc. 55-1 at Page ID # 511]. As Defendant points out in its brief, this explanation is difficult to comprehend [*see* Doc. 57 at Page ID # 535]. To the extent the meaning is discernible, it appears that the interrogatory is overbroad. Plaintiff's brief does not address the relevance of this interrogatory, nor does her reply [Doc. 54-1 at Page ID # 487; Doc. 60 at Page ID # 577]. The Court finds Plaintiff has not met her initial burden to show relevance, and the interrogatory, as written, appears to ask for far more information than is proportional to the needs of the case. Accordingly, the Court declines to order a further response to this interrogatory.

**\*14** 21. Provide a description of any settlement, joint defense, or similar litigation or resolution agreements that Defendant has with any party concerning transvaginal mesh claims or litigation.

Defendant objects that this interrogatory seeks information that is protected by attorney-client privilege, attorney work-product doctrine, and confidential agreements between Defendant and non-parties [Doc. 53-2 at Page ID # 467]. Defendant further objects on relevance grounds, especially noting that Restorelle Y is not a transvaginal mesh, and the interrogatory thus excludes the only arguably relevant product from the scope of the question [*id.*]. Plaintiff asserts in the parties' chart that this interrogatory is relevant to causation and notice [Doc. 55-1 at Page ID # 512].

Plaintiff's brief states the following with respect to this interrogatory but provides no additional argument for why a further response should be compelled: "This has another vague attorney-client, work product, and confidential information privilege claim without any further identification. It also has some of the same boilerplate objections. There is no answer of any kind given, nor any identification of why these privileges are applicable." [Doc. 54-1 at Page ID # 487].

In its response brief, Defendant reasserts its previously discussed arguments that the interrogatory should be limited to Restorelle Y and the relevant timeframe and additionally argues that the reason for asserting privilege here is obvious from the plain language of the interrogatory [*see* Doc. 57 at Page ID # 524–27, 538–39]. Plaintiff does not address Interrogatory 21 specifically in her reply [*see* Doc. 60 at Page ID # 577].

It is unclear to the Court how this interrogatory is proper on the issue of causation, and Plaintiff has not explained her assertion. As for notice, if Defendant settled on a given date with a party who alleged that she suffered injuries similar to those allegedly suffered by Plaintiff from Restorelle Y, that would tend to show that Defendant had notice of a potential product defect as of that date. It is not apparent to the Court how any other settlement agreements would be relevant to notice in this case. And, of course, only resolution agreements entered into before the date of Plaintiff's implantation would be relevant to notice. While Defendant apparently did not produce a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5), Plaintiff's request is clearly overbroad as written and, therefore, the Court declines to order Defendant to further respond to this interrogatory.

22. For any industry, trade, or business organizations in which any Defendant has held membership since 1996,

identify each such organization and set forth the inclusive dates of Defendant's membership in each.

Defendant objects that this interrogatory is overly broad because "it is not limited to organizations that concern, study, or relate to pelvic organ prolapse or the Restorelle Y at issue in this case." [Doc. 53-2 at Page ID # 468]. Defendant further objects on relevance grounds because it is not relevant to the claims or defenses in this case and is not limited to the relevant timeframe [*id.*]. Plaintiff argues that the answer to this interrogatory is "of course is relevant as these groups may have programs or other dealings about the defective product in this case." [Doc. 54-1 at Page ID # 487]. During the conferral process, Plaintiff agreed to limit the scope of this interrogatory to organizations with some connection to "polypropylene and mesh products" [Doc. 55-1 at Page ID # 512]. In its response to the motion to compel, Defendant complains that Plaintiff has chosen an arbitrary year—1996, that this is a "fishing expedition," and that it is unclear "whether a 'trade organization' specifically exists for polypropylene and mesh products" [Doc. 57 at Page ID # 539].

**\*15** Given the breadth of relevance for discovery purposes, the Court does not consider the interrogatory, especially as limited, to seek irrelevant information. As to the relevant timeframe, Defendant has not shown a need for any greater date limitation, especially since Plaintiff indicates that it seeks information about these groups to look into the "programs or other dealings" related to the products that the groups may have, and these "programs and other dealings" could have occurred before or after Defendant's membership or association with them.

Defendant has made no actual showing that responding fully to either the original or limited interrogatory will be unduly burdensome. However, Defendant may elect to respond to the original interrogatory, which is not limited to the types of organizations with some connection to "polypropylene and mesh products" if they find it more difficult to respond if required to determine which of its memberships are responsive and which are not. Defendant **SHALL** provide a full response to either the original or limited interrogatory and clearly state if it is responding to the interrogatory limited to organizations with some connection to "polypropylene and mesh products" or the original interrogatory.

23. If any employees of Defendant have testified at trial or by deposition in any Litigation involving harm alleged to have occurred to a woman in whom a transvaginal or transabdominal mesh product was implanted, state:

a. the name, address and title of each such person who testified;

b. the date, location and form of testimony; and

c. whether Defendant has a copy of such testimony.

Defendant's original response objected that this interrogatory was unduly burdensome and not limited to Restorelle Y [Doc. 53-2 at Page ID # 468]. It referred Plaintiff to the publicly available PACER website for court filings. Plaintiff argues that a further response should be compelled, as follows:

This answer attempts to say that previous testimony by employees in similar cases is not relevant. This is another preposterous claim. The answer also refers Plaintiff to other websites for Plaintiff to search. Rather than provide the information the Defendant claims that it is willing to talk to the Plaintiff about the answer. There is no reason for the Defendant to refuse to answer the question.

[Doc. 54-1 at Page ID # 487].

Defendant, in its amended response to this interrogatory, promises to provide Plaintiff with the transcripts of "the 19 separate 30(b)(6) and fact-witness depositions of current and former Coloplast employees that were taken by the plaintiffs in the federal Coloplast MDL. Plaintiff's reply states only that Defendant's amended response "refers Plaintiff to a PACER website for Plaintiff to search. It also says it will provide transcripts which it has not done." [Doc. 60 at Page ID # 577].

The Court interprets Plaintiff's terse reply to mean that Plaintiff may be satisfied with the deposition transcripts Defendant has agreed to produce. Accordingly, Defendant **SHALL** produce the transcripts it has promised if it has not already done so.

### B. Requests for Production

Plaintiff's Requests for Production seek copies of the complaints referred to in Interrogatories 1 and 2. The Court has determined the scope of discoverable information responsive to those interrogatories and ordered Defendant to provide a supplemental response to Interrogatory 1, but not Interrogatory 2. Accordingly, Defendant **SHALL** produce to Plaintiff all complaints that the Court has ordered Defendant

to list in a supplemental response to Interrogatory 1, but not Interrogatory 2, that are in Defendant's possession, custody, or control and clearly state which, if any, complaints are not in its possession, custody, or control. *See* Fed. R. Civ. P. 34.

### IV. CONCLUSION

 *16  Accordingly, for the reasons stated above, Plaintiff's motion [Doc. 53] is **GRANTED IN PART** and **DENIED IN PART**, as detailed above. Defendant **SHALL** serve Plaintiff with its supplemental responses and production within **14 days** of entry of this Order.

When a motion to compel is granted in part and denied in part as here, a court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Plaintiff has not requested costs and fees incurred in filing her motion to compel, and the Court concludes any award of expenses in this case is not warranted. Fed. R. Civ. P. 37(a)(5)(A).

SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 6948361

Footnotes

1  Although the fact that Defendant amended its interrogatory responses after Plaintiff filed her second motion to compel suggests that conferral was not as meaningful as it should have been [*compare* Doc. 57 at Page ID # 531 (Defendant complaining that conferral was not "meaningfully complete" before Plaintiff filed second motion to compel), *with* Doc. 59 at Page ID # 572 (Plaintiff's counsel averring that Defendant's counsel did not communicate its intention of amending its responses) ], it does not appear that the parties would accomplish more, in a timely manner, through further conferral efforts. As the parties have stated their positions multiple times as to each contested discovery request, the Court concludes a hearing would not aid the Court in rendering a decision or lead to further agreement among the parties.

2  Defendant amended its responses to the following interrogatories that are still in dispute: 9, 10, 15, and 20 [Doc. 58-1].

3  Plaintiff's claims include product liability, negligence, failure to warn, and breach of warranty [Doc. 1-1].

4  The Court assumes that Defendant has, at some point during the parties' good-faith conferral, provided Plaintiff the web address of the MAUDE Database if requested, or that Plaintiff is already aware of where the MAUDE Database can be found [*see* Doc. 57 at Page ID # 530 n. 7 (Defendant expressing skepticism that Plaintiff is unaware of the MAUDE Database's nature and location given Plaintiff's interrogatory referring to it) ]. Regardless, Plaintiff could always save time and resources by simply using a search engine to find it.

5  Furthermore, the parties have not suggested that Federal Rule of Civil Procedure 33(d) applies. Rule 33(d) allows parties to produce their own business records in response to an interrogatory but explicitly requires them to specify the responsive records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1); *see, e.g., Trimbur*, 2015 WL 235219, at *8. Here, in contrast, the information requested is not necessarily part of Defendant's business records and is, at least for the most part, apparently already available to Plaintiff.

6  Plaintiff offered to narrow Interrogatories 3 and 4 to studies involving "harmful effects of the polypropylene," to which Defendant objected that this modification assumes that polypropylene has "harmful effects" [Doc. 55-1 at Page ID # 502]. The Court will disregard the proposed modification under the circumstances and rule on Interrogatories 3 and 4 in their original form.

7  The Court notes that the scope of this interrogatory is somewhat ambiguous but interprets it to be limited to Defendant's earliest awareness of studies of the use of polypropylene in human implants, unlike the broader scope of Interrogatory 4. For that reason, an adequate response may include information about when Defendant first became aware of a small number of seminal studies.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.