2020 WL 2062121
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee.

Tina TENPENNY
v.
PRIME NOW, LLC

No. 3:19-0420
|
Filed 04/29/2020

**Attorneys and Law Firms**

Constance A. Mann, The Law Offices of Constance Mann, Franklin, TN, Gary Dean Copas, Nashville, TN, for Tina Tenpenny.

C. Eric Stevens, Elise Hofer McKelvey, Littler Mendelson, P.C. (Nashville), Nashville, TN, for Prime Now, LLC.

**MEMORANDUM AND ORDER**

BARBARA D. HOLMES, United States Magistrate Judge

*1 Pending before the Court is Plaintiff's motion to expand the case management deadline and to amend her complaint (Docket Entry ("DE") 39), to which Defendant has filed a response in opposition. (DE 43.) Also pending is Defendant's renewed motion for sanctions (DE 44), to which Plaintiff has filed a response. (DE 49.) Defendant has also filed a subsequent reply to Plaintiff's response. (DE 50.)

For the reasons stated herein, Plaintiff's motion (DE 39) is DENIED and Defendant's motion (DE 44) is RESERVED. The Clerk is directed to terminate Defendant's motion as pending without prejudice for Defendant to renew in its entirety or in part. Plaintiff must comply with the additional discovery production detailed in the conclusion of this Order.

**I. BACKGROUND**

The two motions at issue stem from Plaintiff's indifference to procedural requirements and her refusal to turn over relevant evidence. On August 8, 2019, the Court issued an initial case management order that required any motions to amend or to add parties be filed by January 10, 2020. (DE 14 at ¶ H.) On December 31, 2019, Plaintiff filed a motion requesting an extension of this deadline. (DE 28.) The Court granted this motion and extended the deadline for any motions to amend to February 21, 2020. (DE 29 at 1-2.) In granting the motion, the Court admonished Plaintiff's counsel for failing to confer with opposing counsel prior to filing the motion, as required under Local Rule 7.01(a)(1). (*Id*. at 1, n.1.) The Court expressly stated that any noncompliance by Plaintiff in the future would not likely be excused. (*Id*.)

On February 17, 2020, Plaintiff filed a motion for leave to file an amended complaint. (DE 32.) In addition to again disregarding the requirement of Local Rule 7.01(a) and 15.02(a)(2) that Plaintiff's counsel confer with opposing counsel and state in the motion whether the requested relief was likely to be opposed, no accompanying memorandum of law was filed with Plaintiff's motion in compliance with Local Rule 7.01(a)(2).[1] The Court therefore denied Plaintiff's motion without prejudice and advised that "any later filed motion to amend must also demonstrate good cause for relief from the February 21 deadline for filing motions to amend." (DE 38 at 1.)

Instead of filing a new motion for leave to amend, Plaintiff filed the instant motion to expand the case management deadline that includes as attachments an accompanying memorandum (*see* DE 39-1), a revised motion for leave to amend the complaint (*see* DE 39-4), and an additional memorandum of law in support of the motion for leave to amend (*see* DE 39-5). Thereafter the Court ordered Defendant to file a response that addressed both the timeliness of Plaintiff's motion and the substance of her request for leave to amend (DE 40 at 1-2), which Defendant has done. (*See* DE 43.)

*2 The second matter before the Court is a discovery dispute involving a claim of spoliation of evidence. On November 12, 2019, Plaintiff filed a motion for a protective order to prevent Defendant from implementing a forensic examination of her cell phone. (DE 28.) The Court granted the motion in part but permitted the forensic examination of the cell phone and "any other electronic devices with which she communicated with Jared Ryan," subject to certain restrictions. (DE 29 at 9.) The ensuing forensic examination revealed that Plaintiff had deleted all text messages to and from Mr. Ryan and had additionally deleted the corresponding backup data on iCloud, which rendered the text messages irretrievable. (DE 45 at 2.) During Plaintiff's subsequent deposition on January

30, 2020, however, Plaintiff revealed for the first time that one of her friends, Rebecca Jones, had taken screenshots of some of Plaintiff's text messages with Mr. Ryan and sent these screenshots to a cell phone belonging to Plaintiff's son, Justin Tenpenny, before the text messages were deleted from Plaintiff's phone. (*Id*. and 45-5) Defendant notes that Plaintiff failed to previously identify Ms. Jones as a potential witness in either her Rule 26 initial disclosures or an interrogatory in which Plaintiff was asked to identify any individual who might have information relating to the allegations set forth in the complaint. (*Id*. at 7.)[2]

Upon learning of this information, Defendant requested that Plaintiff supplement her previous discovery responses, and both reimburse Defendant for the "unnecessary examination" of Plaintiff's cell phone and provide her son's cell phone for forensic examination. (*Id*. at 3 and 45-6.) Defendant asserts that Plaintiff has not complied with either of these requests and therefore seeks sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. (*See* DE 44.)[3]

## II. ANALYSIS

### A. Motion to Expand the Case Management Deadline/ Motion to Amend

#### 1. Legal Standard

Leave to amend a pleading generally should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), which "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.' " *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982)). However, the Supreme Court has indicated that although the moving party "ought to be afforded an opportunity to test [her] claim on the merits," one or more of the following conditions may negate this directive: undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, when a party seeks to amend in the late stages of a case, the moving party bears "an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001); *see also Duggins v Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). Ultimately, the determination of whether to permit a requested amendment is within the trial court's "sound discretion." *Moore,* 790 F.2d at 559 (internal citations omitted).[4]

**\*3** Because Plaintiff's motion also involves a request to extend the scheduling deadline for motions to amend, the Court must consider Rule 15 in conjunction with Rule 16, which restricts the timing of amendments to a pleading. Specifically, Rule 16 directs that a scheduling or case management order must include the time within which a party may amend the pleadings. Fed. R. Civ. P. 16(b)(3)(A). This requirement is designed to ensure that "at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, 1983 Advisory Committee's Notes.

Once a Rule 16(b) scheduling order is entered it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This "good cause" requirement is "a threshold that requires late-moving litigants to show that 'despite their diligence they could not meet the original deadline.' " *Shane v. Bunzl Distribution USA, Inc.,* 275 F. App'x 535, 536 (6th Cir. 2008) (quoting *Leary v. Daeschner,* 349 F.3d 888, 907 (6th Cir. 2003)). The *Leary* court clarified the law of the circuit regarding the intersection between Rule 15(a) and Rule 16(b) as

> [o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).

349 F.3d at 909 (internal citation omitted). *See also Amoco Pipeline Co. v. Herman Drainage Sys.*, 212 F. Supp. 2d 710, 730-31 (W.D. Mich. 2002) ("Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) … focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts.").

Although one "consideration that informs" the analysis of good cause is whether the defendant would be prejudiced by the amendment and modification of the scheduling order, *Korn v. Paul Revere Life Ins. Co.*, 382 F.App'x 443, 450 (6th Cir. 2010), as this Court has noted,

> even if no prejudice is evident, the plaintiff still "must [ ] explain why [s]he failed to move for the amendment at a time that would not have required a modification of the scheduling order." Where the plaintiff's explanation for the

delay is simply insufficient or not credible, it is appropriate for the court to deny the motion for leave to amend. If the plaintiff establishes "good cause," then the court proceeds to the more permissive Rule 15(a)(2) analysis.
*Stewart v. King*, 2011 WL 237678, at *5 (M.D. Tenn. Jan. 24, 2011) (Trauger, J.) (internal citations omitted).

**2. Plaintiff's Motion**

The Court will deny Plaintiff's motion on both procedural and substantive grounds. As to the procedural considerations, Plaintiff fails to provide any justification that could reasonably constitute "good cause" for failing to adhere to the scheduling order deadlines with a properly filed motion. Her argument instead amounts to little more than a *mea culpa*:

> [Plaintiff], via counsel, was diligent in her effort to meet the case management deadline for amending the complaint. She filed the original motion for leave within the deadline showing she was both mindful of the deadline, and making every attempt comply [sic]. The sole reason for a second motion after the deadline is the original motion was flawed. In the original motion, Counsel failed to include the mandatory language required by local rules 7.01 and 15.01. Although the language was missing, counsel did execute the requirements themselves. Clearly, this error falls completely on counsel and will likely never happen again.

**\*4** (DE 39-1 at 3.)[5] However, an admission of carelessness does not represent good cause for purposes of Rule 16. *See Adams v. Nature's Expressions Landscaping Inc.*, 2018 WL 2452179, at *2 (E.D. Ky. May 31, 2018) ("Good cause does not exist where a plaintiff fails to explain or provides no excuse for [her] delay.") (citing *Leary*, 349 F.3d at 907). Indeed, Defendant cites a host of cases from this circuit in which courts have held that an attorney's inattentiveness is inadequate to show good cause. *See, e.g., Trustees of Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, 2007 WL 2905616, at *2 (E.D. Tenn. Oct. 2, 2007) ("[M]ere inadvertence by the moving party, even coupled with an absence of prejudice to the non-moving party, is insufficient to establish good cause.") (internal citation and quotations omitted); *Cooke v. AT&T Corp.*, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007) ("[C]arelessness, inadvertence, or inattention is not compatible with a finding of diligence so as to support modification of scheduling order deadlines.") (internal citation and quotations omitted); *Birge v. Dollar Gen. Corp.*, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) ("A litigant's inattention or error is not good cause by any standard.") (internal citations omitted). Notably, Plaintiff has opted not to respond to Defendant's opposition or otherwise address her noncompliance with the Court's scheduling order.[6]

The Court is therefore left with no reasonable explanation from Plaintiff as to why the deadline for filing a motion to amend could not be met with a properly filed motion. Plaintiff's attempt to frame her second, dilatory motion as merely corrective action meant to ensure compliance with the Local Rules is unpersuasive given that the Court had already admonished Plaintiff for failing to comply with the Local Rules as part of her initial request for an extension of the amendment deadline and gave a warning that further noncompliance would be consequential. (*See* DE 29 at 1, n.1.) ("The Court will overlook Plaintiff's noncompliance this time but will not be inclined to do so in the future.").

An additional extension would also be prejudicial to Defendant given that the discovery deadline has passed. Plaintiff has consistently maintained that "Amazon" is the responsible party; she refers to Defendant as "Amazon" (*see* DEs 12, 18, and 19), and originally named Defendant as "Amazon Prime Now." Plaintiff had plenty of time in discovery to obtain whatever information she needed to support her alter ego claims. Plaintiff acknowledges as much in referring to August 2019 as the timing of receipt of documents that "presented potential evidence that the parent company, Amazon terminated Ms. Tenpenny." (DE 39-1 at 1.)[7] When Plaintiff was unable to take the depositions of witnesses whom she considered critical to the alter ego issues, she sought and was granted an extension of the time to file a motion to amend.

The defects in Plaintiff's February 17 motion for leave to amend result solely from a lack of diligence in following the requirements of the Court's local rules, despite having been previously cautioned that any further noncompliance would be at her own peril. That Plaintiff's counsel now attempts to fall on the procedural sword is simply insufficient to constitute good cause to justify an additional extension of the deadline for amendments to the pleadings.

Even without regard to the fatality of Plaintiff's failure to comply with the Court's local rules, the Court additionally finds that Plaintiff's motion should be denied on the merits as well. While delay alone does not justify denying leave to amend, delay coupled with prejudice to the opposing party does warrant denial. *Duggins*, *supra*. Moreover, "the longer

the period of unexplained delay, the less will be required of the nonmoving party to show prejudice." *Dobronski v. Alarm Management II, L.L.C.*, 2020 WL 1899564, at *2 (E.D. Mich. Apr. 17, 2020) (quoting *Minor v. Northville Public Schools*, 605 F.Supp. 1885, 1201 (E.D. Mich. 1985)).

**\*5** Here, Plaintiff's proposed amended complaint includes new allegations of reports of sexual harassment for which she maintains she was retaliated against. Specifically, the proposed amended complaint alleges that Plaintiff reported to the operations manager that drivers were working in unauthorized areas, including her workspace, and were making her uncomfortable, after which the drivers were no longer allowed in her work area, for which she claims was retaliated against. (DE 39-9 at ¶¶ 11, 15, 16, 17, and 26.) The events upon which these new allegations are based happened between January and March of 2018. (*Id*. at ¶¶ 11 and 16.) Plaintiff plainly knew of these events at the time she originally brought this lawsuit. Yet, Plaintiff gives no explanation for her delay in making these allegations. In fact, Plaintiff fails to even acknowledge these additional new allegations, instead focusing on the proposed amendments to add Amazon corporate entities as party defendants. (*See* DE 39-5.) Plaintiff's failure to offer any explanation for why she did not more timely assert these additional retaliation claims warrants denial of her motion to amend with even a minimal showing of prejudice to Defendant, which the Court has no difficulty in finding given this case is in the late stages of final discovery and the dispositive motion deadline is imminent.

Similarly, despite believing that "Amazon" is the true liable party, Plaintiff waited until the end of the discovery period to pursue a factual basis for that belief. Further, much of the information upon which Plaintiff relies is largely information about which she should have had knowledge at the time she filed her original complaint, such as her transfer notice and separate notice. *See* DEs 39-5 at 3, 39-6 and 39-7.[8] Permitting Plaintiff to amend her complaint at this late stage to assert this entirely new claim is prejudicial to Defendant. *McClendon v. North Carolina Mutual Life Ins. Co.*, 2018 WL 10152555, at *2 (M.D. Tenn. Nov. 19, 2018); *see also Scott v. Qwest Corp.*, 2016 WL 51104, at *1 (M.D. Tenn. Jan. 4, 2016) ("With regard to Plaintiff's proposed … claims …, the Court finds that such claims are entirely different claims and allowing them would prejudice the Defendant.") For these reasons, Plaintiff's motion to amend is properly denied.

Plaintiff's motion is also properly denied on futility grounds. A motion to amend should not be granted if the proposed amended complaint would be subject to dismissal, that is because the amendment would be futile. *E.E.O.C. v. Taco Bell Corp.*, 575 F. Supp. 2d 884, 890 (W.D. Tenn. 2008) (citing *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 307 (6th Cir. 2000)).[9] The determination of futility follows the same analysis as reviewing a Rule 12(b)(6) motion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("[A] proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."). The policy behind the futility doctrine is to prevent the expenditure of unnecessary effort and resources by both the parties and the court. *Matlock v. Rose*, 731 F.2d 1236, 1240-41 (6th Cir. 1984).

Under a Rule 12(b)(6) analysis, a court must accept all factual allegations as true and determine whether such facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The proposed amended complaint would survive a motion to dismiss only if it contains a plausible claim. *Id*. at 679 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 556 (2007)). A plausible claim must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

**\*6** As stated in her brief, Plaintiff relies on an "alter ego" theory (DE 39-5 at 3) to pierce the corporate veil by adding as defendants Amazon.com Service, LLC and Amazon.com, Inc. ("Amazon"), one of which Plaintiff asserts is ostensibly the parent corporation of Defendant (*see* DE 39-9 at ¶¶ 4, 5), and which would therefore potentially allow her to impose Prime Now's liability onto Amazon.[10] However, Plaintiff has failed to sufficiently plead a theory of liability that the corporate veil should be pierced to hold Amazon liable for the alleged retaliation at issue, which is required. *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 847 (W.D. Ky. 2007). In fact, Plaintiff's proposed amended complaint recites no elements of alter ego or any factual allegations supporting that theory. Rather, the proposed amended complaint merely identifies Amazon as the entity by which Plaintiff was employed and terminated (see e.g. DE 39-9 at ¶¶ 4 and 9) and alleges a subsidiary relationship between Prime Now, LLC and Amazon. (*Id*. at ¶ 5 and 10)[11]

To state an alter ego theory under Tennessee law that will survive a motion to dismiss, a plaintiff must allege that the parent-subsidiary corporate form was used to sanction a fraud.

*Southeast Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 673 (6th Cir. 2006) ("Southeast's argument that fraud is not a required element of an action to pierce the corporate veil under Tennessee law has already been considered and rejected by this court)[.]")[12] This implicates Rule 9, which requires that the "circumstances constituting fraud" be "stat[ed] with particularity" in the complaint. Fed. R. Civ. P. 9(b). In other words, a plaintiff seeking to establish the "extreme measure" of piercing the corporate veil to prevail on an alter ego claim must sufficiently allege that the "corporate form was used to sanction or commit a fraud, crime or similar injustice" to survive a motion to [dismiss]." *Id.* at 676.[13]

Plaintiff cites three cases in support of her contention that Prime Now is "no more than the alter ego of Amazon." (DE 39-5 at 3-5). Yet none of these cases involves pleading requirements necessary to state an alter ego claim and therefore provide little helpful guidance to the Court's analysis.[14]

*7 The proposed amended complaint simply does not contain the particularity required by Rule 9. Plaintiff alleges only that she was "employed by Amazon … and its subsidiary Prime Now, LLC" (*See* DE 39-9 at ¶ 9) and leaves the Court to piece together the purportedly fraudulent corporate scheme that warrants her proposed amendment. She does not allege that Amazon is the alter ego of Prime Now, does not allege that Prime Now is a sham corporation, and does set forth any allegations of fraud or similar wrongdoing to justify piercing the corporate veil.

Nor does the proposed amended complaint include any other allegations specific to an alter ego theory. Even if the proposed amended complaint is generously construed as including an allegation that Amazon in fact controls Prime Now's business practices, that would still be insufficient to survive a motion to dismiss. *See Southeast Tex. Inns*, 462 F.3d at 677 ("[M]ere dominion and control of the parent over the subsidiary will not [alone] support alter ego liability.") (internal citation omitted). Plaintiff instead must plead extraordinary circumstances with particularity such as intent by Amazon to use Prime Now to facilitate fraud or wrongdoing. *Id.* at 679 and 681. Because Plaintiff's proposed amended complaint falls well short of this standard, her motion will be denied.

**B. Motion for Sanctions**

**1. Legal Standard**

Rule 37 provides a district court authority to issue sanctions in certain circumstances, including: when a party "fails to obey an order to provide or permit discovery" (Fed. R. Civ. P. 37(b)(2)); when a party "fails to provide information … as required by Rule 26(a) or (e)" (Fed. R. Civ. P. 37(c)(1)); and when a party "fail[s] to take reasonable steps to preserve" electronically stored information. Fed. R. Civ. P. 37(e).

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005) (internal citation omitted). A party is not required to "preserve every shred of paper, every e-mail or electronic document," but the party "must not destroy unique, relevant evidence that might be useful to an adversary." *Id*. The Court has "broad discretion to craft proper sanctions for spoliated evidence." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 776 (E.D. Mich. 2019) (quoting *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)).

**2. Defendant's Motion**

Defendant seeks sanctions pursuant to Rule 37 in the form of dismissal and an award of attorneys' fees and costs, including those associated with opposing Plaintiff's motion for a protective order, conducting a needless forensic examination of Plaintiff's phone, and filing the instant motion, based on Plaintiff's failure to disclose Rebecca Jones as a relevant witness despite her role in preserving text messages between Plaintiff and Mr. Ryan, as well as Plaintiff's continued refusal to make her son's cell phone available for forensic examination. Defendant emphasizes that Plaintiff has admitted to deleting the text messages after Defendant specifically requested them during discovery.

The Court agrees with Defendant as to the egregiousness of Plaintiff's actions to date. Plaintiff's prevaricating behavior has already led to a significant waste of resources for both Defendant and this Court. The Court previously sanctioned a forensic examination of Plaintiff's phone specifically in response to Plaintiff's evasiveness in discovery. (*See* DE 29 at 6-8) ("Plaintiff has selectively produced parts of text messages, while refusing to produce the entire contents of the text messages. Defendant is not simply speculating that Plaintiff is withholding information, that fact is undisputed.").

**\*8** The Court also made clear that Plaintiff was to make available "her cellphone and any other electronic devices on which she communicated with Jared Ryan available to Defendant for forensic examination." (*Id*. at 9). The text messages sought by Defendant form the basis of this Title VII claim, yet Plaintiff's response to Defendant's motion consists primarily of deflection and faux outrage that Defendant would have the audacity to seek discovery sanctions despite Plaintiff admitting to deleting relevant evidence requested by an opposing party in litigation.[15] This act alone warrants punitive measure from the Court. *See Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016) ("When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation.").

It has also obviously not escaped Defendant's attention that Plaintiff's proposed amended complaint removes the allegation involving the allegedly harassing text messages sent from Mr. Ryan in January and February of 2018 (DE 1 at ¶ 10), and replaces it with a more general allegation that "a driver was making her uncomfortable." (DE 39-9 at ¶ 11). It is unclear what purpose this serves other than to deemphasize and obscure the relevance of these text messages, although any such purpose would seem to be undone by Plaintiff's subsequent allegation, made without any previous reference to a text message or other explanatory context, that "Mr. Larson looked at the text from Ryan and claimed they would have to be reported." (*Id*. at ¶ 14). *Cf*. Plaintiff's interrogatory responses at DE 49-4.

Nevertheless, the Court does not find that Plaintiff's conduct warrants the severe sanction of dismissal at this juncture. *See Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) (noting that "[d]ismissal is the sanction of last resort"). The Court will, however, reserve ruling on Defendant's motion and give Plaintiff another opportunity to supplement her discovery responses and provide Defendant with access to the entire text messages at the heart of this action as instructed below. Plaintiff and her counsel are put on notice that any further intransigence with respect to this discovery will result in sanctions.

### III. CONCLUSION

For all these reasons, Plaintiff's motion to expand the case management deadlines and amend the complaint (DE 39) is denied and Defendant's motion for sanctions (DE 44) is reserved, subject to Plaintiff's compliance with the following instructions, for which the Court has provided as much clarity as possible to dispel any inclination for semantic gymnastics:

**Plaintiff must, within 14 days of the date of entry of this order**, provide Defendant with complete copies of all text messages between herself and Jared Ryan that are in her possession or control. Plaintiff must provide copies of each text message in its entirety. The partial text messages previously provided will not suffice. If Plaintiff is no longer in possession or control of the entire text messages, or fewer than all the entire text messages, she must ensure compliance with the following requirement.

If Plaintiff is no longer in possession or control of the entire text messages, she **must, within 14 days of the date of entry of this order,** make available to Defendant for forensic examination the cell phone belonging to her son, Justin Tenpenny, that received the since-deleted (from Plaintiff's phone) text messages between Plaintiff and Jared Ryan.[16] She must also identify for Defendant any other electronic device of which she is aware that contains communications between Plaintiff and Jared Ryan and if she has possession or control over such devices must also provide those to Defendant for forensic examination.

**\*9** The discovery deadline is extended for the limited purpose of accomplishing this additional discovery. Further, Defendant may renew its request for or pursue other additional relief should Plaintiff fail to comply with the Court's order.

Noncompliance with this Order or any further obstinance by Plaintiff with respect to this discovery will result in a minimum sanction of attorneys' fees and costs, or, depending on the severity of the conduct, a recommendation to the District Judge for an adverse inference jury instruction or dismissal of this action.

It is SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2062121

Tenpenny v. Prime Now, LLC, Not Reported in Fed. Supp. (2020)

2020 WL 2062121

Footnotes

1   The requirement that motions to amend must comply with both Local Rules 15.01 and 7.01 was also expressly stated in the Initial Case Management Order. (DE 14 at ¶ H.) In the most liberal construction of Plaintiff's February 17 motion for leave to amend, the motion itself could be deemed a memorandum of law, as it does include some factual statements and legal arguments. That does not, however, comply with the requirement of Local Rule 7.01(a)(2) for a separately filed memorandum of law. Moreover, the Court is disinclined to extend that measure of liberality to Plaintiff, who is represented by experienced counsel and was already given a warning to comply with local rules, including specifically Local Rule 7.01.

2   Plaintiff subsequently supplemented her discovery responses on February 13, 2020, by providing a last known phone number for Rebecca Jones with the caveat that "we are not in possession of the address for Rebecca Jones and do not feel that she is a relevant witness with information related to your interrogatory questions." (DE 49-5.) The February 13 supplementation also stated "[w]e further supplement our interrogatory responses with any and all answers provided in the deposition." (*Id.*)

3   Unless otherwise indicated, any reference to a rule in this order indicates the Federal Rules of Civil Procedure.

4   This Court, along with most district courts in the Sixth Circuit, considers an order on a motion to amend to be non-dispositive. *See, e.g., Gentry v. The Tennessee Board of Judicial Conduct*, 2017 WL 2362494, at *1 (M.D. Tenn. May 31, 2017) ("Courts have uniformly held that motions to amend complaints are non-dispositive matters that may be determined by the magistrate judge and reviewed under the clearly erroneous or contrary to law standard of review ...") (citations omitted); *Chinn v. Jenkins*, 2017 WL 1177610 (S.D. Ohio March 31, 2017) (order denying motion to amend is not dispositive); *Young v. Jackson*, 2014 WL 4272768, at *1 (E.D. Mich. Aug. 29, 2014) ("A denial of a motion to amend is a non-dispositive order.").

5   Plaintiff copied and pasted this passage into her separate memorandum in support of the motion for leave to amend. (*See* DE 39-5 at 2.)

6   *See* Local Rule 7.01(a)(4) (allowing the filing of a reply brief within seven days after service of the non-moving party's response).

7   Plaintiff fails to explain why she did not have access to her own separation and other employment paperwork prior to this time.

8   Plaintiff suggests that the delay between August of 2019 when she first became aware of the possibility of an alter ego claim through February of 2020 when she first filed the motion for leave to amend resulted from scheduling of depositions of corporate witnesses. *See* DE 39-1. The Court finds little purchase with this argument. Despite having sought the Court's intervention in other discovery disputes, Plaintiff raised no issues with a delay in these depositions. Moreover, an additional delay resulted entirely from Plaintiff's failure to comply with local rules requirements, which further undermines her arguments that she has been diligently pursuing this issue.

9   The futility grounds are not, however, those argued by Defendant, which contends that Plaintiff's first amended complaint changes the "parameters of her EEOC charge" (DE 43 at 2) and is therefore subject to dismissal for failure to exhaust administrative remedies. Because the Court finds other bases upon which to deny Plaintiff's motion to amend, it is not necessary for the Court to address the reasons why the Court is unpersuaded by this argument.

10  Although the Court must accept as true the allegations in the proposed amended complaint for purposes of a Rule 12(b)(6) analysis, the Court notes that it is not even clear that either of the Amazon entities that Plaintiff seeks to add are the parent corporation of Defendant. The business entity disclosure statement filed by Defendant does not list either Amazon.com or Amazon.com Services as a parent corporation. (DE 10.)

11  Many, if not all, the other references to "Amazon" are unchanged from Plaintiff's complaint, in which she interchangeably referred to Amazon Prime Now and Amazon as her employer. *See* DE 1.

12   Both parties appear to accept that Tennessee law applies in this federal question case. The Court therefore proceeds from that premise.

13   Of note, claims of "alter ego" and "veil piercing" are not exactly the same. *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 930 (6th Cir. 2020). By pure veil piercing, a second party is held liable for another debt, while alter ego, which also pierces the corporate veil but for a different outcome, treats two parties as the same party so the liability is direct, not vicarious. *Id.* However, the analysis and effects are similar, and litigants and courts often use them interchangeably. *Id.* Here, Plaintiff's proposed second amended complaint does not clearly state whether she asserts alter ego or veil piercing claims. Plaintiff's memorandum argues that she has an alter ego claim. *See* DE 39-5 at 3-4. The distinction makes no difference to the outcome. Both require a properly pled element of fraud.

14   Plaintiff admits that she does not claim that "Amazon or Prime Now committed a fraud." (DE 39-5 at 4.) Yet, she offers no authority for her argument that an alter ego theory can be based on the perceived wrong she asserts here, namely violation of Title VII. The Title VII case upon which Plaintiff relies, *Herring v. SCI Tennessee Funeral Services, LLC*, is inapposite. 2018 WL 2399050 (E.D. Tenn. May 24, 2018). The court in that case did not hold that a corporate veil could be pierced to hold a parent company responsible for the obligations of an independent subsidiary. The question before the court was how to calculate the number of employees for purposes of applying the nonpecuniary statutory damages cap found in 42 U.S.C. § 1981a(b)(3) for remittance of the damages awarded by the jury after trial. *Id.* at *7. The court acknowledged that there is no clear guidance on that narrow issue (*id.*) and therefore relied on evidence admitted at trial without objection about the connections between the named defendant and the parent corporation to find the parent company's employee numbers were the appropriate measure in applying the statute. That determination did not result in any shifting or sharing of liability and in no way supports Plaintiff's motion to amend.

15   Plaintiff previously employed the same kind of "distracted[ ]" and irrelevant discussions in justifying her actions, as noted by the Court. (DE 29 at 7, n.5).

16   The Court notes that Plaintiff purported to append as a supporting exhibit to her response in opposition to the motion for sanctions an affidavit of Justin Tenpenny, but no affidavit was provided. (*See* DE 49-8.)

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.