1    CASE:  AMOS v. THE LAMPO GROUP, ET AL.

2    DATE:  JUNE 21, 2023

3    WITNESS:  DAVID RAMSEY

4

5                          ***

6                    IMPORTANT NOTICE

7          PLEASE READ BEFORE USING ROUGH DRAFT

8                 AGREEMENT OF PARTIES

9               WORKING WITH ROUGH DRAFTS

10

11

12

13

14          We, the party working with the rough draft

15    transcript, understand that if we choose to use the

16    rough draft, we are doing so with the understanding

17    that the rough draft is an uncertified copy.

18          We further agree not to share, give, copy,

19    scan, fax, or in any way distribute this realtime

20    rough draft in any form (written or computerized) to

21    any party; however, our own experts, co-counsel, and

22    staff may have limited internal use of same with the

23    understanding that we agree to destroy our realtime

24    rough draft and/or any computerized form and replace

25    it with the final transcript upon its completion.

⬆

 1                      REPORTER'S NOTE

 2

 3          Since this transcript is in rough draft

 4    form, please be aware that there may be

 5    discrepancies regarding page and line number when

 6    comparing the rough draft and final transcript.

 7

 8          Also, please be aware that the realtime

 9    screen and the uncertified rough draft transcript

10    may contain untranslated steno, reporter's notes, or

11    nonsensical word combinations.  All such entries

12    will be corrected on the final, certified

13    transcript.

14

15

16

17

```
 8    on the record.  We never went off, I guess.

 9    BY MR. STREET:

10    Q.     Are you aware of management at any level at

11    Ramsey making inappropriate jokes about homosexuals?

12    A.     No.

13    Q.     Are you aware of any management at Ramsey

14    stating that people should keep their distance from

15    gays?

16    A.     No.  I didn't know Brad Amos was gay.

17           MR. STREET:  736.  That's not the court

18    number, is it?

19           MS. SANDERS:  No.

20           MS. IRWIN:  I think it is.

21           MR. STREET:  This is Jon.  Yes.  Okay.

22    That's no problem.  We can get it done.  Okay.

23    Okay.  That would be great.  I'll put you on

24    speaker.

25           MS. SANDERS:  Is that -- oh.  Good.
```

```
 1           THE COURT:  Hello, this is Judge Holmes.

 2           MR. STREET:  Good afternoon,
```

3    Judge Holmes.  This is Jonathan Street.  I've got

4    Leslie Sanders on the call as well.

5              MS. SANDERS:  Good afternoon, Your

6    Honor.

7              THE COURT:  Good afternoon.

8              MR. STREET:  We're sorry to bother you.

9    We're actually here in a deposition in this Ramsey

10   case that I know you love us calling about, and it's

11   actually the deposition Mr. Ramsey and there's a --

12             THE COURT:  Give me the case number --

13   give me the case number again.

14             MR. STREET:  Yes.  21-CV-00923.

15             THE COURT:  Okay.  Go ahead and tell me

16   what the issue is.

17             MR. STREET:  A couple things.  This is a

18   religious discrimination lawsuit, Your Honor, and

19   we're asking about a policy at Ramsey which says

20   that the -- and I'm sure Ms. -- Ms. -- I'll give

21   Ms. Sanders a chance to set out her case, but our

22   position is there's a policy that says that they

23   expect employees to follow traditional

24   Judeo-Christian values, and there are certain things

25   we asked about, such as gay marriage and abortion

1    and things like that, whether -- whether employees

2    would be fired for those things under this policy,

3    and those are some of the things that they've

4    refused to answer, as well as a -- a --

5    Julie Anne Stamps is apparently another lawsuit that

6    was filed, and I asked about the allegations she

7    made, and they refused to tell me that as well.

8              Is there anything else?

9              MS. SANDERS:  Well, Your Honor,

10   actually, he did answer the questions about gay

11   marriage.  The only things that we've objected to so

12   far is, under Rule 30(d), we objected on the basis

13   of bad faith for embarrassment, annoyance, and

14   oppression of the witness when he asked questions

15   about pending lawsuit -- O'Connor is the name of

16   that lawsuit.  And then the only thing we objected

17   to with respect to the religious claims were he

18   asked Mr. Ramsey his views on abortion, and we don't

19   think that that has anything to do with this

20   lawsuit.  And certainly asking about the O'Connor

21   case prejudic- -- is prejudicial and has no

22   relevancy here.  O'Connor is not a religious

23    discrimination case.

24            With respect to --

25            THE COURT:  Well, and --

1            MS. SANDERS:  I'm sorry, Your Honor.

2            THE COURT:  I'm sorry.

3            MS. SANDERS:  No, that' -- that's okay.

4            With respect to Julie Anne Stamps, the

5    witness did answer, and he said it's a matter of

6    public record.  He referred to the public record.

7            THE COURT:  All right.  Let me sort of

8    break these down and -- and see if I can figure out

9    exactly what the issues were.

10            The deponent is not permitted to not

11    answer a question just because it's objectionable.

12    The lawyer can pose an objection, but no speaking

13    objections, so not because -- if you think it's

14    harassment or -- you can object to the form of the

15    question, and then the deponent must go ahead and

16    answer the question, and the objections will be

17    resolved either at some later date by the -- an

18    appropriate filing, but was there actually a refusal

19    to answer a question?

20          MS. SANDERS:  Your Honor, we moved

21    for -- yes, Your Honor.  We stated that we would

22    move for a protective order on the pending lawsuits

23    and with respect to Mr. Ramsey's view on abortion.

24          MR. STREET:  Your Honor, if I may, I --

25    it's not so much we're asking Mr. Ramsey his

1    personal views.  We're asking under the policy here

2    that says they must live by traditional

3    Judeo-Christian values if they would be punished or

4    fired if they found out an employee had an abortion.

5          MS. SANDERS:  And, Your Honor, our

6    position is that that's in bad faith because it's

7    not related to this lawsuit in any way, and that's

8    what we -- we -- I told Mr. Street that we would

9    seek a protective order this evening on those

10    issues, and it's a fairly narrow group of issues.

11          THE COURT:  On what basis, Ms. Goff --

12    under what rule does a deponent have a right not to

13    answer a question because they intend to seek a

14    protective order?  I'm looking for the rule on

15    depositions, and I think -- and I'm going to find

16    the answer before I --

17              MS. SANDERS:  It's -- Your Honor,

18    it's --

19              THE COURT:  -- talk any more, but --

20              MS. SANDERS:  It's Rule --

21              THE COURT:  -- generally --

22              MS. SANDERS:  -- Rule 30(d) under the

23    Federal Rules of Civil Procedure.

24              THE COURT:  Rule 30(b), as in boy?

25              MS. SANDERS:  D.  No, D, as in dog.

1    Rule -- Rule 30(d) restates Rule 26(c), the basis

2    for a protective order as set forth in Rule 26(c).

3    Rule 30(d) is specific to a deposition.  And the

4    basis if it's -- is if the question is asked in bad

5    faith and if it's asked for the purpose of

6    embarrassment, annoyance, or oppression of the

7    witness, and our position is that there's no basis

8    to ask Mr. Ramsey about abortion in this case, and

9    there's no basis to ask him about lawsuits that

10   are -- particularly that are pending.  And so we --

11   we would move for a protective order on those

12   issues.  And -- and, Your Honor, we would -- our

13   intent was to brief that this evening and provide

14   that to the Court.

15              MR. STREET:  Your Honor --

16              THE COURT:  What was the specific

17   question that was asked, Mr. Street?  Can you have

18   the court reporter read the question to me?

19              MR. STREET:  Yes, if you'll give us a

20   second, Your Honor, to have her pull it up.

21              THE REPORTER:  I'll have to search for a

22   specific term.

23              MS. SANDERS:  Abortion.

24              MR. STREET:  Abortion.

25              Oh, and, Your Honor, while we're

1    looking, one other issue was --

2              MS. SANDERS:  Jon, I'm sorry.  I'm sorry

3      to interrupt you, but can she -- it's going to be

4      hard for her to look that up and type what you're

5      saying.

6                  THE COURT:  Right.

7                  MR. STREET:  Yes.  I'm sorry.  You're

8      right.

9                  THE COURT:  Don't talk any more until we

10     get that.

11                 MR. STREET:  You're right.  I apologize.

12                 MS. SANDERS:  That's okay.

13                 THE REPORTER:  The question is "What

14     about an employee who got an abortion," and

15     Ms. Sanders objected.  Mr. Street said, "You can

16     answer."  And the answer was "I'm not going to

17     answer questions that are not relevant to the -- I'm

18     done with you setting up stuff for the Tennessean,

19     James."

20                 MR. STREET:  And he was referring to me

21     as James, Your Honor.  I'm Jon.

22                 MS. SANDERS:  Your Honor, that was --

23     that was the question on abortion.  Then I objected

24     on the record to that being a question in bad faith

25     under Rule 30(d).  And then --

```
 1              THE COURT:  Well, I need to hear the --

 2    a question or two before that, because if it is, in

 3    fact, a question about the Ramsey group policies,

 4    then that's a different -- that is a different

 5    consideration than if it is a question about

 6    Mr. Ramsey's personal opinions or personal positions

 7    on whether an employee got an abortion, so it may be

 8    more difficult for me to make a ruling over the

 9    phone because I need to see the entire string of

10    questions that led up to that question, but I'm

11    going to tell you both now that if Mr. Street is --

12    has correctly described that this was a string of

13    questions that dealt with the company's policies,

14    Mr. Ramsey's going to have to answer that question

15    at some point.  Not about his personal beliefs or

16    personal policies or personal opinions, but he is

17    going to have to answer about the company's

18    policies.  But I can't tell from that specific

19    question, "What about an employee who got an

20    abortion?"  That gives me no context.  I don't know

21    what the "what about" is.

22              MS. SANDERS:  Your Honor, with respect
```

23   to the pending lawsuit in O'Connor, it's -- we're

24   referring to it as the O'Connor lawsuit.  I

25   apologize, Your Honor.  I don't have that case

⌂

1   number in front of me at this deposition, but we

2   recently in a case -- you know, Judge Trauger

3   specifically said that asking questions about a

4   pending lawsuit that aren't related to this lawsuit

5   are prejudicial, and so we would also move for a

6   protective order for the questions that are related

7   to the O'Connor lawsuit.

8           Would you -- would you like for us to

9   also brief that this evening?

10          THE COURT:  Yes, but -- but let me just

11  give you this guidance.  I'm -- I would have to see

12  Judge Trauger's decision, because I also have some

13  decisions where questions about a prior lawsuit can

14  be relevant, and they are not in and of themselves

15  prejudicial.

16          On the other hand, if that is a pending

17  lawsuit and all that's being asked is about details

18  of matters that are public record, there's no reason

19  that Mr. Street cannot obtain that information

20  through the public record.

21          What was the nature of the questions

22  that were being asked?

23          MR. STREET:  I mentioned an employee's

24  name who had apparently filed a lawsuit, and I asked

25  what allegations she had made, and then that was,

1  "We're not going to tell you."

2          MS. SANDERS:  No, Jon, that was -- that

3  was Ms. Stamps.

4          MR. STREET:  Ms. Stamps.

5          MS. SANDERS:  I'm referring to O'Connor.

6          MR. STREET:  Okay.

7          MS. SANDERS:  Yeah.

8          MR. STREET:  Well, then -- I guess --

9  and I'd have -- Your Honor, I'd need to go back and

10  look at exactly what the questions are.  Your Honor,

11  if I just suggest -- I mean, it sounds like Your

12  Honor, as well, would like to see more of the actual

13    transcript of what we've done so far before making

14    your decision, and the problem is we have a

15    discovery deadline of next Friday, I believe, so if

16    we do brief -- if we do need to get a transcript and

17    brief this out, we would like to have, you know, as

18    part of the order that we can take this -- the

19    remainder of this one deposition on these issues

20    only after the discovery deadline if it takes that

21    long to rule on it.

22              THE COURT:  Well, I'm going to let

23    you -- if I determine that these are --

24              MR. STREET:  Okay.

25              THE COURT:  -- appropriate areas of

1     inquiry, I'm going to let you finish Mr. Ramsey's

2     deposition, and he'll have to appear again and

3     finish his deposition.

4               Are you planning on filing a motion

5     tomorrow, Ms. Sanders?

6               MS. SANDERS:  Yes, Your Honor.  We'll

7     file it as soon as practical.  Of course, that --

8     we'll need to get with the court reporter to see how

9     quickly we can do that.  My -- my intent, Your

10    Honor, when Mr. Street asked the questions was to

11    file it this evening, but I would have to file it

12    based on -- on my notes of what was asked in the

13    deposition as opposed to --

14              THE COURT:  No, I want to see at least a

15    rough transcript.  You-all can get a rough

16    transcript from the court reporter, what we used to

17    call a dirty ASCII, but that may not be the correct

18    description anymore, and you can see if you think

19    that will be sufficient rather than an official

20    transcript.  I -- because I'm not so worried about,

21    you know, whether a word is misspelled as I am just

22    understanding the context of the line of

23    questioning.  So that's what you-all should do, is

24    get the rough transcript from the court reporter

25    tonight and then make a determination about whether

1     there's some more formal transcript that needs to be

2     finalized, but knowing that -- my preference is that

3    you get me something sooner rather than later.

4              THE WITNESS:  Yes, Your Honor.

5              THE COURT:  So don't -- don't delay this

6    because, you know, the -- the court reporter's rough

7    transcript misspells somebody's name or -- or

8    there's a sentence structure that is awkward or

9    something of that nature.  I just need it for the

10   gist of the context to these issues.

11             And then I'm going to give the

12   plaintiff -- how much time do you want to respond to

13   this, Mr. Street?  And you need to -- if you're

14   going to err on anything, err on the side of asking

15   for too few days than too many days.

16             MR. STREET:  Five days.

17             THE COURT:  Yes.  Five days.

18             MS. SANDERS:  Your Honor, this is --

19   this is Ms. Sanders.  If -- Mr. Street and I need to

20   confer, because there may be additional questions,

21   so I don't want Your Honor to have to see this

22   again.  So as we confer, if he gets into topics

23   that, in the O'Connor lawsuit, are marked as

24   attorneys' eyes only, may we mark that in this case

25   for the time being while this is pending?  That's,

Case 3:21-cv-00923   Document 107-1   Filed 06/23/23   Page 16 of 23 PageID #: 2610

1    by the way, not in our confidentiality order in this

2    case.  There's no attorneys' eyes only designation,

3    but the matters that I believe he was getting into

4    in O'Connor were marked attorneys' eyes only, so may

5    we mark that at least temporarily attorneys' eyes

6    only in this case?

7              THE COURT:  Yes.

8              MS. SANDERS:  Thank you, Your Honor.

9              THE COURT:  How many pages do you think

10   you're going to need for this motion, Ms. Sanders?

11             MS. SANDERS:  Your Honor, it's fairly

12   straightforward.  I would think now no more than

13   five.  Probably less, but it depends on what else

14   Mr. Street asks.

15             THE COURT:  I'm going to say 10 pages

16   for the motion, 10 pages for the reply -- I'm sorry,

17   10 pages for the response, and then a reply within

18   two days of no more than three pages.

19             MS. SANDERS:  Thank you, Your Honor.

20             THE COURT:  So I'll go ahead and enter

21   an order about this conversation.

22             Anything else that we need to address,

```
23    then?

24              MR. STREET:  Not that I can think of,

25    Your Honor.


                                        211
              Elite-Brentwood Reporting Services * (615)595-0073
```
                                        211
              Elite-Brentwood Reporting Services * (615)595-0073

```
 1              MS. SANDERS:  No.  Thank you, Your

 2    Honor.

 3              THE COURT:  All right.  Thank you all.

 4              MR. STREET:  Thank you.

 5              All right.

 6              MS. SANDERS:  I think for efficiency

 7    purposes -- are we still on the record?

 8              THE REPORTER:  (Nodding head.)

 9              MS. SANDERS:  Okay.  I think for

10    efficiency purposes, we should go ahead and confer

11    and see what else you're going to ask, if there is

12    anything else.

13              MR. STREET:  Well, I mean, I guess a lot

14    would depend on what his answers are to the ones

15    that we don't have.

16              MS. SANDERS:  Sure, but we can talk

17    about topics.
```

18          Are there any topics other than

19   O'Connor -- I think -- I mean, you asked -- I think

20   you got his full answer on the core value other than

21   abortion.

22          MR. STREET:  Can we do this?  I mean --

23   okay.  Well, no, we can't do that on the record.

24          MS. SANDERS:  I just want us to confer

25   and see what we can work out today.

1          MR. STREET:  Right.  I agree.

2          MS. SANDERS:  Yeah.

3          MR. STREET:  I mean, those are the --

4    the abortion string of questions also, but, I mean,

5    it's not going to be just that.  It's -- you know,

6    it's maybe other specific things that would be

7    against what they consider to be traditional

8    Judeo-Christian values, as well --

9          MS. SANDERS:  I under- -- yeah.

10          MR. STREET:  -- and -- that you feel

11   like it's -- again --

12          MS. SANDERS:  I understand that.  I

13    think he's answered that.  That's what I'm saying.

14    There was quite a bit of testimony about that.

15              MR. STREET:  Okay.  I don't think he

16    did, so I think that's the one that we're going to

17    have to fix -- you know, leave open.

18              MS. SANDERS:  So why don't we go

19    ahead -- do you want to go ahead and finish with

20    whatever you're asking and then maybe we can take a

21    break and I can take a look at the rules, see what

22    else you get into, and then we can come back and

23    confer before he has to leave at 4:30?  Does that

24    sound okay?

25              MR. STREET:  We're not going to have

1     time for 4:30 now.

2               MS. SANDERS:  Well, we might.  I mean,

3     just keep -- keep going.

4               MR. STREET:  So do you want me to ask

5     these questions about abortion and whatnot?

6               MS. SANDERS:  Are there any questions

7     other than these?  Are these your last -- is this

```
 8   your last area?

 9              MR. STREET:  Oh.  I had probably a few

10   more, but --

11              MS. SANDERS:  Do you want to just keep

12   going?

13              MR. STREET:  Yeah, we can or --

14              MS. SANDERS:  Okay.

15              MR. STREET:  If we're going to come --

16   well, we don't -- that's the thing.  We don't know

17   if we're coming back or not.

18              MS. SANDERS:  Yeah.  Why don't you just

19   keep going and we'll see?

20              MR. STREET:  Okay.

21              MS. SANDERS:  Yeah.

22              MR. CORTEZ:  We can confer --

23              MR. SANDERS:  Yeah.  Right.

24              MR. STREET:  You can -- say what now?

25              MS. SANDERS:  Well, we can con- -- we
```

```
 1   can confer at 4:30.

 2              MR. STREET:  Yes.  Mr. Ramsey's the
```

3   only --

4              MS. SANDERS:  That's what we're saying.

5   He can keep going.

6              MR. STREET:  Yeah.  I mean -- yeah.  I

7   don't want to have to come to your office, you won't

8   have to come to mine after today.

9              MS. SANDERS:  Yeah.  That's what I mean.

10  Yeah.  And we've got a court reporter, so...

11             MR. STREET:  Okay.  Fine.  I -- other

12  than those issues, I don't have a whole lot more --

13             MS. SANDERS:  Okay.

14             MR. STREET:  -- but while we --

15  since it's a good break, can I take a little

16  restroom break, if that's okay?

17             MS. SANDERS:  Sure.  Can we go pretty

18  fast?  Maybe come back in four minutes?

19             MR. STREET:  Yeah, we'll come back in

20  four minutes.

21             MS. SANDERS:  All right.  Great.

22             THE VIDEOGRAPHER:  Going off the record

23  at 3:56 p.m.

24             (Short break.)

25             THE VIDEOGRAPHER:  We are back on the

Case 3:21-cv-00923   Document 107-1   Filed 06/23/23   Page 22 of 23 PageID #: 2616

1    record at 4:02 p.m.

2                    MS. SANDERS:  Jon, based on the call

3    with Judge Holmes, we are going to go ahead and -- I

4    think you should go ahead and ask your questions

5    about the one -- the ones that were related to the

6    policy, okay?  And then -- but we're not going to

7    answer questions about the O'Connor lawsuit.  The

8    pending lawsuit.  So I'll do my protective order on

9    the O'Connor --

10                    MR. STREET:  And Stamps?

11                    MS. SANDERS:  Ask your questions about

12   Stamps, because Stamps -- Stamps is over, so -- just

13   ask your questions and -- I'd say go ahead and ask

14   those.

15                    MR. STREET:  Mr. Ramsey's going to

16   answer?

17                    MS. SANDERS:  Assuming that it's not

18   something that's a part of this other pending

19   lawsuit.

20                    MR. STREET:  Okay.  Okay.  Give me a

21   second, then.

22                    MS. SANDERS:  Sure.