2020 WL 12968432
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee.

The PICTSWEET COMPANY
v.
R.D. OFFUTT COMPANY; R.D. Offutt Company-Northwest; and, CRF Frozen Foods, LLC

Case No. 3:19-cv-0722
|
Filed 04/23/2020

**Attorneys and Law Firms**

Alyssa P. Malchiodi, San Diego, CA, Brian T. Attard, Frederic L. Gordon, Gilbert Nagurney, John Wayne Howard, JW Howard Attorneys, Ltd., San Diego, CA, Courtney A. Hunter, Meredith M. Thompson, Paige Waldrop Mills, W. Brantley Phillips, Jr., Bass, Berry & Sims (Nashville Office), Nashville, TN, for Pictsweet Company, The.

Alyssa L. Rebensdorf, Christine R. M. Kain, Emily Bodtke Zambrana, Jane E. Maschka, Joelle Groshek, Faegre Drinker Biddle & Reath LLP (Minneapolis, MN Office), Minneapolis, MN, Cameron Watson, Christopher M. Myatt, Kevin D. Bernstein, Spicer Rudstrom, PLLC (Memphis Office), Memphis, TN, Kyle R. Hosmer, Faegre Drinker Biddle & Reath LLP, Denver, CO, Machen Picard Bihrle, for R.D. Offutt Company.

Albert G. McLean, Cameron Watson, Christopher M. Myatt, Christopher M. Williams, Kevin D. Bernstein, Spicer Rudstrom, PLLC (Memphis Office), Memphis, TN, Alyssa L. Rebensdorf, Jane E. Maschka, Faegre Drinker Biddle & Reath LLP (Minneapolis, MN Office), Minneapolis, MN, Kyle R. Hosmer, Faegre Drinker Biddle & Reath LLP, Denver, CO, for R.D. Offutt Company-Northwest.

Albert G. McLean, Cameron Watson, Christopher M. Myatt, Christopher M. Williams, Kevin D. Bernstein, Spicer Rudstrom, PLLC (Memphis Office), Memphis, TN, Alyssa L. Rebensdorf, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for CRF Frozen Foods, LLC.

### ORDER

BARBARA D. HOLMES, United States Magistrate Judge

**\*1** Pending before the Court is the motion to quash subpoena or, alternatively, for a protective order filed by Defendant CRF Frozen Foods, LLC ("CRF") (Docket No. 25). The instant discovery dispute was referred to the undersigned for disposition. *See* Order at Docket No. 34. For the reasons detailed below, CRF's motion (Docket No. 25) is GRANTED by quashing the third-party subpoena issued to Houston Casualty Company and by a protective order against production of the requested documents in the third-party subpoena issued to Mound Cotton Wollan & Greengrass, LLP.

### I. Background

In this diversity action, which was removed from state court, Plaintiff, The Pictsweet Company ("Pictsweet"), asserts eleven statutory, contractual and common law claims for damages arising out of a 2016 recall of frozen vegetables due to Listeria contamination. (Docket Nos. 1; 1-4.)[1] Among the allegations made by Pictsweet is that, within one month of assuming an agreement to supply product to Pictsweet, CRF had knowledge of confirmed positive Listeria test results at its Pasco, Washington facility and with respect to products processed in and supplied from the Pasco facility. (Docket No. 1-4.)

On or about December 2, 2019, Pictsweet notified all defendants, as required by Fed. R. Civ. P. 45(a)(4) and Local Rule 45.01(d), that Pictsweet was issuing two third-party subpoenas, one to insurance company Houston Casualty Company and one to the law firm of Mound Cotton Wollan & Greengrass, LLP. The subpoenas seek documents prepared, produced, or received in connection with a lawsuit styled *Starr Surplus Lines Insurance Company & Houston Casualty Company v. CRF Frozen Foods, LLC*, Docket No. 1:17-cv-01030-PGG (S.D. N.Y.) (the "Starr litigation") (Docket Nos. 25-3; 25-4.)

The Starr litigation involved claims against CRF brought by two of CRF's insurance carriers, Starr Surplus Lines Insurance Company ("Starr") and Houston Casualty Company ("Houston"). (Docket No. 37-2.) In the Starr litigation, Starr and Houston sought rescission of excess recall insurance policies under which CRF made claims relating to the 2016 recall and declaratory judgments that they owed no coverage to CRF based on disputed allegations that CRF did not disclose material information in an insurance application.

Through the third-party subpoenas, Pictsweet seeks production from Houston of: (1) all discovery materials relating to the Starr litigation, that is non-privileged information of any kind produced or disclosed during the course of discovery; (2) the Houston claims file for the claim made by CRF relating to the 2016 recall that was at issue in the Starr litigation; and, (3) Houston's underwriting file relating to its excess follow form policy that was at issue in the Starr litigation. (Docket No. 32-1 at 3.) Pictsweet also seeks production from Mound Cotton, Houston's lawyers in the Starr litigation, of: (1) all documents filed with the court in the Starr litigation, including declarations and exhibits; (2) all communications between Mound Cotton and the court in the Starr litigation; (3) the written receipts for any hearings or other proceedings held in the Starr litigation; (4) all non-privileged documents and communications relating to discovery materials in the Starr litigation; and, (5) all non-privileged communications between Mound Cotton and any other person related to the Starr litigation. (Docket No. 25-4 at 6.)

**\*2** CRF has moved to quash the subpoenas. (Docket No. 25.) CRF asserts that the requested information is protected by a Stipulated Confidentiality Agreement and Protective Order ("Confidentiality Order") agreed to by the parties and entered by the Court in the Starr litigation. (Docket No. 37-7.) [2] CRF also opposes the subpoenas as facially defective because they require compliance beyond the 100-mile geographical limitation imposed by Rule 45(c). Alternatively, CRF requests a protective order limiting Pictsweet's subpoenas as irrelevant, burdensome, and cumulative of information that can be more appropriately obtained through discovery in this case.

Pictsweet has responded that subpoenas *duces tecum* are not subject to the 100-mile geographical limitation, that the subpoenas are within the broad scope of discovery permitted by Rule 26, and that CRF, in whatever limited capacity it enjoys, has not demonstrated a basis to either quash the subpoenas or for a protective order. (Docket No. 37.)

The Court finds that the subpoenas are largely an improper end-run around the discovery rules and the Court will therefore grant CRF's motion, including as to protective relief.

## II. Legal Standards

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. It permits parties to a lawsuit to command a non-party to, among other things, produce documents. Fed. R. Civ. P. 45(a)(1). A court is required to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. Fed. R. Civ. P. 45, Advisory Committee Notes (1970) ("The scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); *see also* Hendricks v Total Quality Logistics, LLC, 275 F.R.D. 251, 253 (S.D. Ohio May 6, 2011). The party seeking to quash a subpoena bears the burden of proof. *Id.* The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A trial court has broad discretion to determine the proper scope of discovery. *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016). Although a party should not be denied access to information necessary to prove their contentions, neither should they be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Id.* (internal citation omitted). "A court must balance the "right to discovery with the need to prevent fishing expeditions." *Id.* at 236-37 (internal quotation marks and citation omitted).

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F.App'x. 498, 500 (6th Cir. 2001) (internal citations omitted). However, a showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c). *Anwar v. Dow Chemical Company*, 876 F.3d 841, 854 (citing *Smith v. Dowson*, 158 F.R.D. 138, 140 (D.Minn.1994)). Ultimately, whether to grant a protective order is within the discretion of the trial court. *Coleman v. American Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992).

## III. Analysis

**\*3** As a threshold matter, the Court must consider whether CRF has standing to move to quash or otherwise oppose the subpoenas. "A party generally lacks standing to seek to quash a subpoena issued to a nonparty." Hendricks, 275 F.R.D. at 253 n.1. However, exceptions exist if the party "claims some personal right or privilege with regard to the documents sought." Lewis Environmental, Inc. v. Emergency Response & Training Solutions, Inc., 2019 WL 285641, at \*2 (S.D. Ohio Jan. 22, 2019) (quoting Mann v. Univ. of Cincinnati, 1997 WL 280188, at \*4, 114 F.3d 1188 (6th Cir. May 27, 1997) (per curiam)). Such rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records or Indian tribal records. Hackmann v. Auto Owners, Ins. Co., 2009 WL 330314, at \*1 (S.D. Ohio Feb. 6, 2009). That documents are confidential "is not in itself grounds for quashing a subpoena." Id. at \*2.

Even in the absence of standing to move to quash, courts within the Sixth Circuit have interpreted Rule 26(c) to permit a party to seek a protective order to preclude discovery demanded by a third-party subpoena. Schweinfurth v. Motorola, Inc., 2008 WL 4981380, at \*2 (N.D. Ohio Nov. 19, 2008) (citations omitted).[3] Some courts have referred to the availability of Rule 26(c) as "standing to challenge third-party subpoenas via a motion for protective order." Id. at \*3.

Here, CRF both seeks to quash the third-party subpoenas and requests alternative relief of a protective order. The Court finds that as to certain of the requested documents CRF has standing to move to quash the subpoenas and as to the other documents, CRF's standing to challenge the subpoenas is found in Rule 26(c).

With respect to the subpoena issued to Houston, the Court finds that CRF has a protectable right in the requested documents. The Court has no difficulty finding that the claims file and the underwriting file are the kind of financial records that are within the universe of protected interests that confer standing to seek to quash a third-party subpoena. The other documents requested in the Houston subpoena are not as easily categorized. But the threshold reason the Court is unable to determine the nature of the other documents is because of the breadth of the requested information, namely "[a]ll Discovery Materials," (Docket No. 32-1 at 6), which is defined as "information of any kind produced or disclosed during the course of discovery." (Docket No. 32-1 at 4.) Given the limited nature of the relationship between CRF and Houston, the Court finds that the broadly requested documents are more likely than not to be of a kind in which CRF has a protectible interest. CRF therefore has standing to move to quash the Houston subpoena. And even if CRF does not have standing to move to quash the Houston subpoena as to this requested information, the Court finds that CRF has standing to challenge both subpoenas under Rule 26(c), which it has properly exercised.[4]

**\*4** Satisfied that CRF has standing, the Court turns to the next question, namely whether the subpoenas are facially invalid.[5] CRF contends that the subpoenas are facially defective because they seek production of documents beyond Rule 45(c)(2)'s 100-mile limitation. (Docket No. 25-1 at 7.) Pictsweet correctly asserts that the 100-mile geographical limitation does not apply when a subpoena demands only documents that can be produced electronically or by mail. United States v. Brown, 223 F.Supp.3d 697, 703 (N.D. Ohio 2016). Because the subpoenas issued to Houston and to Mound Cotton do not require personal appearance, and the requested documents can be produced electronically or by other means, the geographical limitation does not apply and there is no facial defect in the subpoenas.

That leaves then whether there is any basis to quash the subpoenas or grant a protective order. CRF argues—and Pictsweet disputes—that the documents are protected from discovery by the Confidentiality Order in the Starr litigation.[6] The Court finds persuasive the reasoning of the court in determining the analogous issue in Barella v. Village of Freeport, 2012 WL 6103222 (E.D. N.Y. Dec. 8, 2012). In that case, Barella, the plaintiff in a Title VII employment discrimination and civil rights case issued a third-party subpoena to the attorney for a plaintiff in a case brought by another employee of the same employer "alleging primarily identical claims predicated upon most of the same facts" for "[a]ll deposition transcripts and discovery produced and received" in the separate action. Id. at \*1. The defendant in both cases moved to quash the subpoena because the previously produced discovery was subject to a protective order. The district judge in Barella affirmed the magistrate judge's determination that "Barella can and should conduct his own discovery." Id. at \*2. The Barella court noted that discovery that would require circumvention of a protective order in a separate litigation should only occur in justified circumstances and not when the information could be obtained from another party in the same litigation. Id. at \*2-3. See also Z Best Body and Paint Shops, Inc. v. Sherwin-Williams Co., 2017 WL 3730515 (C.D. Cal. Aug. 29, 2017) (court quashed subpoena that sought to obtain documents

subject to a protective order in separate litigation). The Court therefore grants the motion to quash the Houston subpoena.[7]

As to the Mound Cotton subpoena, the Court finds that CRF has demonstrated good cause for a protective order under Rule 26(c). A showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c). *Anwar v. Dow Chemical Company, supra.* When, as here, an objection to the relevancy of the discovery sought is raised, "the party seeking discovery must demonstrate that the requests are relevant." *Gazvoda v. Secretary of Homeland Security*, 2017 WL 168159, at *4 (E.D. Mich. Jan. 17, 2017) (internal citations omitted). See also 🚩 *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (to prevent fishing expeditions, the proponent of discovery must make a threshold showing of relevance).

 *5  The Court finds that Pictsweet has failed to demonstrate relevancy of the broad universe of information produced in the Starr litigation. Indeed, "[a]sking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for." *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019). As noted by the court in *Goro*, "[t]here could be a number of reasons why documents appropriately requested and provided in another case—even if the subject of those cases seem to overlap—would be irrelevant or burdensome to produce in another case." *Id.*

The Court finds this reasoning compelling. In contrast, the Court finds little helpful analysis in the cases upon which Pictsweet relies to overcome the pressing problem with " "cloned discovery" requests, namely that Pictsweet cannot carry its burden of establishing relevancy because it does not even know what documents it has asked for. Simply because there may be overlap between the issues in the Starr litigation and those in this case does not establish relevancy of all the documents that Pictsweet seeks. *See TravelPass Grp., LLC v. Caesars Entm't Corp.*, 2020 WL 698538, at *6-7 (E.D. Tex. Jan. 16, 2020) (collection of cases reaching same conclusion); *see also Fields v Wright Med. Tec., Inc.*, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017) (plaintiff not entitled to "cloned discovery" just because it had been produced in other cases but was entitled to specifically requested documents for which relevancy was shown).

Beyond even an impermissible fishing expedition, Pictsweet casts a third-party subpoena net to obtain all discovery and more in the Starr litigation without any showing of relevancy under Rule 26(b) as to specific information. The Court is disinclined to give Pictsweet that kind of a discovery windfall. Instead, the Court finds that Pictsweet's request for wholesale duplicates of discovery and other documents produced or created in the Starr litigation is improper as failing to make the requisite showing of relevance. If relevant and proportional documents exist in the custody or control of Mound Cotton, the appropriate thing to do is to request those documents. Or, even more appropriately, to request them from the source of the information, not from others who have gone to the trouble and expense to obtain the information first.

Moreover, contrary to Pictsweet's contention that CRF has failed to offer specific facts to demonstrate burdensomeness, CRF points to the volume of information that would be responsive to the subpoenas, namely some 500,000 pages of materials. *See* Docket No. 25-1 at 1 and 7. CRF further asserts that the subpoenaed information is duplicative and cumulative, relying on the fact that Pictsweet has propounded 56 requests for production of documents on CRF and similar discovery including requests for admission to other defendants in this case. *See* Docket No. 25-1 at 9 and 10.[8] The Court finds these facts are sufficiently defined and concrete to demonstrate undue burden. Additionally, requiring CRF to engage in duplicate reviews, one for documents in its custody and control that are responsive to Pictsweet's direct discovery requests and one of all the documents that were previously produced in the Starr litigation, is definitionally burdensome, as it would consume resources without providing any additional discernible benefit to Pictsweet.

 *6  The Court finds further support for limiting the subpoena requests in Rule 26(b)(2), which directs that a court must limit "the extent of discovery otherwise allowed by these rules ... if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Pictsweet has sought discovery from CRF. If that discovery does not provide the "key information" that Pictsweet seeks (*see* Docket No. 37 at 7-9), it may then appropriately subpoena that specific information from Mound Cotton.[9] Additionally, some of the information that Pictsweet requests are transcripts of hearings in the Starr litigation. The transcripts are presumably readily available to the public (or at least those with

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  4

PACER accounts) and there has been no contention that it is inconvenient, burdensome, or more expensive for Pictsweet to obtain the transcripts from the public records. It must therefore do so. [Access 4 All, Inc. v. W&D Davis Inv. Co., Ltd., 2007 WL 614091, at *3 (S.D. Ohio Feb. 21, 2007).](#) For all these reasons, CRF's request for a protective order is appropriately granted.

### IV. Conclusion

Based on the foregoing, CRF's motion to quash the Houston subpoena is granted. Further, CRF's motion for a protective order as to the Mound Cotton subpoena is granted and the requested documents need not be produced, without limitation for Pictsweet to renew its subpoena in accordance with this Order.

It is SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 12968432

### Footnotes

| | |
|---|---|
| 1 | Familiarity with this case is presumed and only that background necessary to give context to the instant ruling is recited here. |
| 2 | CRF refers to the Confidentiality Order as Exhibit C to its memorandum of law in support of the motion to quash. *See* Docket No. 25-1 at 3-4. However, there is no such Exhibit C. In fact, the filed exhibits are not identified by letter at all. Moreover, the filing of a supporting memorandum of law as an exhibit to a motion is inconsistent with the Court's local rules, which require that the memorandum of law be separately filed. *See* Local Rule 7.01(a)(2). The Confidentiality Order is, however, provided as Exhibit G to Pictsweet's response. (Docket No. 37-7.) |
| 3 | [Rule 26(c)](#) states in pertinent part: |
| | > A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense .... |
| | [Fed. R. Civ. P. 26(c)(1)](#). |
| 4 | CRF might well have standing to move to quash at least some of the requested documents in the Mound Cotton subpoena as well. The Court is unable to make that determination because of the broad categories sought in the subpoenas. Although CRF bears the burden of demonstrating a basis to quash the subpoena, the Court does not expect CRF to have created a list of all documents in which it claims a specific interest from the 500,000 pages that comprise the universe of subpoenaed documents. *See* Docket No. 25-1 at 1 and 7. That would stand ordinary discovery rules on their head. |
| 5 | Arguably, this facial validity attack applies only to those documents that CRF has standing to challenge by a motion to quash. However, the Court need not consume any more of this order in parsing that argument. |
| 6 | This argument also goes to whether CRF can claim a privilege in any of the subpoenaed documents for purposes of standing. Because the Court finds that CRF has standing to challenge the subpoenas under |

|   |   |
|---|---|
|   | Rule 26(c), there is no need to separately analyze whether the Starr protective order confers a privilege upon which CRF can base its standing to move to quash the subpoenas. Further, because the Court finds that the protective order provides a sufficient basis to quash the Houston subpoena, the Court need not determine whether the requested information is the kind of information that falls within Rule 45(d)(3)(B)(i). |
| 7 | Even without regard to whether the subpoena is properly quashed under Rule 45(d)(3), the Court finds that CRF would be entitled to a protective order as to the Houston subpoena for all the same reasons discussed below as to the Mound Cotton subpoena. |
| 8 | These circumstances, as well as relevancy considerations distinguish this case from the *Diamond Resorts International, Inc. v. Phillips* case upon which Pictsweet relies. 2018 WL 4328257 (M.D. Tenn. July 16, 2018) (Newbern, M.J.). Additionally, while the categorial subpoena requests in that case were admittedly broad, they were not the kinds of wholesale information requests made here. |
| 9 | Similarly, even though the Court has quashed the Houston subpoena, if the information that Pictsweet seeks is not obtained in discovery from CRF, Pictsweet may issue a new subpoena to Houston for specific relevant and proportional documents. |

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.