IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ) |
| | ) |
|    Plaintiff, | )    NO. 3:21-cv-00923 |
| | ) |
| v. | )    JUDGE RICHARDSON |
| | ) |
| THE LAMPO GROUP, LLC and DAVE | ) |
| RAMSEY, | ) |
| | ) |
|    Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion (Doc. No. 28, "Motion") of Defendant Dave Ramsey ("Ramsey") to dismiss the claims against him set forth in Plaintiff's Amended Complaint (Doc. No. 21). Ramsey filed a memorandum in support (Doc. No. 29). Plaintiff filed a response in opposition (Doc. No. 35, "Response"), and Ramsey filed a reply (Doc. No. 38).

For the reasons discussed herein, the Court will grant Ramsey's Motion.

### BACKGROUND

This is an action brought by Plaintiff against Defendants The Lampo Group, LLC ("Defendant Lampo Group" or, when quoting the parties, "Lampo") and Ramsey, its alleged "President."[1] In the Complaint filed to initiate this action (Doc. No. 1), which came subsequent to

---

[1] In his Response (though not in the Amended Complaint), Plaintiff refers to Ramsey as Lampo Group's "Chief Executive Officer." (Doc. No. 35 at 8).

  Generally, a limited liability company does not necessarily have a "president" or a "chief executive officer," but it is certainly possible that this one did based on the management titles it created for leadership positions.

Plaintiff's voluntary dismissal of a suit he filed against them in state court, Plaintiff asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and the Tennessee Public Protection Act, T.C.A. § 50-1-304, *et seq*. Plaintiff thereafter filed an Amended Complaint (Doc. No. 21), which remains the operative complaint in this action. Ramsey thereafter filed the instant Motion.[2]

In a manner arguably inconsistent with Rule 8(a)'s dictate that a complaint be a "short and plain statement of the claim," the amended Complaint contains 380 paragraphs. It contains five counts, all of which are asserted against Lampo Group but only two of which are asserted against Ramsey.[3] Specifically: (a) in Count III, Plaintiff asserts a claim against each Defendant under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, based on alleged religion-based discrimination and alleged retaliation for his opposing such discrimination; and (b) in Count IV, Plaintiff asserts a claim of fraud under Tennessee law against each Defendant based on a number of false statements, only one of which was allegedly made by Ramsey and the rest of which were allegedly made by some unidentified person(s) with Defendant Lampo Group.

More specifically regarding the alleged false statements underlying Count IV, Plaintiff alleges as follows:

Defendant Lampo knowingly made false statements about Plaintiff's employment with Defendants including:

a) Plaintiff would edit features and help create their new film department;

b) Defendant Lampo was not "cult like" in the way they operated;

c) Defendant Lampo operated a "drama free" workplace;

---

[2] Defendant Lampo Group has filed its own motion to dismiss (Doc. No. 30), which remains pending.

[3] As discussed below, arguably one of those counts (Count IV) is not actually asserted against Ramsey, but the Court will proceed as if it is.

> d) Defendant Ramsey stated Lampo had been voted "best place to work" for over 10 years in a row by their [sic] own employees without interference from management; Defendant Lampo reassured Plaintiff this statement was true during the interview process [; and]
>
> e) Defendant Lampo was family friendly and would allow Plaintiff to spend time with his family without interference from Defendants.

(Doc. No. 21 at ¶ 357). Plainly, the Amended Complaint attributes all of these statements to Defendant Lampo Group, but only one of them ("best-workplace statement") to Ramsey personally: the statement that Lampo Group "had been voted 'best place to work' for over 10 years in a row by their own employees without interference from management."[4] The Amended Complaint alleges (without specification of names, dates or settings) in paragraph 325 that "*Defendants* promised Plaintiff that they [sic] were voted 'best place to work for over 10 years' by their own employees without interference from management" and in paragraph 49 that "*Defendants* constantly informed Plaintiff [that the truth of the best-workplace statement] was evidenced by the fact they [sic] were voted a 'best employer' by their [sic] employees in several publications." (*Id.* at ¶¶ 325, 49) (emphasis added). But the Amended Complaint does not otherwise allege that Ramsey (as opposed to *other persons* associated with Defendant Lampo Group) *personally* made the best-workplace statement to Plaintiff.[5]

---

[4] The Amended Complaint attributes the best-workplace statement to Ramsey not only in paragraphs 357, 325 and 49, but also in paragraph 47, which adds the detail that (allegedly) Ramsey had personally stated this "on many occasions on his radio show and in other media outlets." (Doc. No. 21 at ¶ 47). Paragraph 50 alleges that Plaintiff was told the same thing, but by Defendant Lampo Group's "leadership" (and not necessarily Ramsey personally). (*Id.* at ¶ 50). So there are several places in which the best-workplace statement is attributed to Ramsey, but at most there is only one place (paragraph 325) where Ramsey is alleged to have made the statement directly to Plaintiff.

[5] Defendant identifies, without dispute by Plaintiff, the elements of fraud under Tennessee law as follows: (1) a representation made of an existing or present fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made knowingly or recklessly without regard for its truth; (5) Plaintiff reasonably relied upon the misrepresented material fact; and (6) Plaintiff suffered damage as a result of the misrepresentation. (Doc. No. 29 at 6-7 (citing *PNC*

Additionally, contrary to Plaintiff's implication, (Doc. No. 35 at 6), paragraphs 46 and 47 of the Amended Complaint do not allege that "[w]hen Plaintiff was interviewing for his position he specifically asked about [the best-workplace statement] and was assured that it was true."[6] As suggested above, however, paragraph 49 does effectively allege this when considered together with paragraphs 47 and 48. On the other hand, these paragraphs are devoid of any facts suggesting the time, manner, or circumstances under which Ramsey (or any other individual associated with Defendant Lampo Group, for that matter) personally was asked about this or responded by making assurances about the truth of the best-workplace statement.

The upshot of all of this is that the Amended Complaint says nothing about: (i) when and under what circumstances Ramsey made the best-workplace statement directly to Plaintiff; or (ii) when Ramsey made the best-workplace statement to any other individual(s) or to a more general audience (as for example on a radio show). The Court keeps this in mind, to the extent it is relevant to the resolution of the instant Motion.

---

*Multifamily Capital Institutional Fund XXVI LP v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012))).
 So the elements of fraud under Tennessee law do not reflect any *requirement* that a defendant's statement be made directly to the plaintiff in order to be actionable. However, whether all such elements are satisfied with respect to a particular defendant conceivably could depend, in part, on whether (and if so, under what circumstances) the defendant made the statement directly to the plaintiff or whether, conversely, the plaintiff merely happened to hear or otherwise become aware of defendant making the statement to a more general audience.

[6] Those paragraphs state:

> 46. Lampo constantly informed Plaintiff people who work for Lampo and Mr. Ramsey love the work environment.
>
> 47. Defendant Ramsey had personally stated Lampo had been voted "best place to work" for over 10 years in a row by their own employees without interference from management on many occasions on his radio show and in other media outlets.

(Doc. No. 21 at 5).

Notably, contrary to an implication made in Plaintiff's Response, (Doc. No. 35 at 9), the Amended Complaint does *not* allege that Defendants—either of them—told Plaintiff that "Defendant Lampo would be one of the best places to work as decided by employees independent of managerial interference." What it actually alleges is that Plaintiff was told personally by Defendants (which the Court generously will construe to include Ramsey himself, and not just other agents or employees of Defendant Lampo Group) that Defendant Lampo Group was "voted" one of the best places to work. The distinction is not merely semantic. It is one thing to make a representation about *the results of certain voting*, which is a factual representation that is either true or false; it is quite another to make a representation about *how good a place would be to work*, a subjective representation that ultimately is a matter of opinion (or even mere puffery) that can neither be shown to be true nor shown to be false. And so that Court keeps that distinction in mind.

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of

action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## DISCUSSION

I.  Count III: THRA Claim

Ramsey asserts (i) that Plaintiff's THRA claim is barred by the applicable statute of limitations and (ii) that as a matter of law, there can be no individual liability (as opposed to employer liability) on a THRA claim. (Doc. No. 29 at 5-6). The Court will pass on the first argument because, as discussed immediately below, the second argument is clearly meritorious.

According to Ramsey, "[t]he THRA has not provided for individual liability for employment related discrimination or retaliation since 2014." (*Id.* (citing *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 n. 3 (M.D. Tenn. 2020) (finding the defendant cannot be held personally liable for violations of the THRA); *Strong v. HMA Fentress Cty. Gen. Hosp.*, LLC, 194 F. Supp. 3d 685, 688 n.1 (M.D. Tenn. 2016) (finding no independent supervisory liability under the THRA); T.C.A. § 4-21-301(b))). By way of explanation, Ramsey states:

> Prior to July 1, 2014, the THRA imposed individual liability where one or more persons aided, abetted, incited, compelled or commanded a person to engage in a discriminatory act. *Austin v. Alexander*, 439 F. Supp. 3d at 1024 n. 3 (citing *Rhea v. Dollar Tree Stores*, Inc., 395 F. Supp. 2d 696, 705 (W.D. Tenn. 2005)). This language was removed effective July 1, 2014, with the THRA now stating that "[n]o individual employee or agent of an employer shall be liable for any violation of [employment related discrimination] that any employer shall be found to have committed." *Austin v. Alexander*, 439 F. Supp. 3d at 1024 n. 3 (citing *Strong*, 194 F. Supp. 3d at 688 n. 1 (quoting Tenn. Code Ann. § 4-21-301(b))). This amendment to the THRA also provides that there is no individual liability for a retaliation claim. *Strong*, 194 F. Supp. 3d at 689 (citing *Garner v. SDH Servs. East, LLC*, 55 F. Supp. 3d 1016, 1024 n. 7 (M.D. Tenn. 2014)).

(*Id.* at 6). The Court concurs with Ramsey. As amended by 2014 Tenn. Acts, ch. 995, § 1, the THRA now provides that "[n]o individual employee or agent of an employer shall be liable for any violation of part 4 of this chapter [which sets forth "employment-related discrimination" in violation of the THRA] that any employer shall be found to have committed." Tenn. Code Ann. § 4-21-301(b). It is not difficult to conclude that, just as Ramsey argues based on *Austin* and

*Alexander*, this statute expressly forecloses individual liability under the THRA on discrimination claims. *See*, *e.g.*, *Bowles v. Heath Consultants, Inc.*, No. 216CV02982STACGC, 2017 WL 1026017, at *2 (W.D. Tenn. Mar. 16, 2017) ("after July 1, 2014, there is no individual liability for discrimination claims").

The same cannot be said for retaliation claims under the THRA, which does not *expressly* foreclose individual claims of retaliation under the THRA. As indicated above, the statute refers to the absence of liability only under "part 4 of [the THRA]," and "[p]art 4 of the THRA does not expressly refer to retaliation claims."[7] *Id.* at 3. Retaliation instead is prohibited in part 3 of the THRA, which declares it a discriminatory practice for a person or multiple persons to "[r]etaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." Tenn. Code Ann. § 4-21-301(a)(1). But applicable (albeit non-binding) opinions, including *Strong*, suggest that retaliation claims nevertheless are a non-starter

---

[7] Part 4 identifies the prohibited discriminatory practices as follows:

(a) It is a discriminatory practice for an employer to:

(1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; or

(2) Limit, segregate or classify an employee or applicants for employment in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

Tenn. Code Ann. § 4-21-401(a).

in the aftermath of the 2014 amendments. *See Hayes v. Elmington Prop. Mgmt.*, No. 219CV02312JTFJAY, 2019 WL 8016518, at *6 (W.D. Tenn. Dec. 20, 2019) ("the United States District Court for the Western District of Tennessee recognizes that there is no individual capacity liability under the THRA for discrimination or retaliation"), *report and recommendation adopted*, No. 219CV02312JTFJAY, 2020 WL 504673 (W.D. Tenn. Jan. 31, 2020); *Brooks v. City of Millington*, No. 2:18-CV-2667-JPM-CGC, 2019 WL 13297174, at *2 (W.D. Tenn. Apr. 12, 2019) ([T]the Tennessee Legislature amended the THRA in 2014 to harmonize Tennessee's statutory employment laws with federal employment law, which does not provide for individual liability for either discrimination or retaliation claims." (citing Tenn. Code Ann. § 4-21-301(b)); *Bowles*, 2017 WL 1026017, at *4-5 (citing *Strong*, 194 F. Supp. 3d at 687, 688 n.1, 687).

Plaintiff has two responses to this. The first is to cite two cases for the proposition that "Sixth Circuit Courts have still recognized individual liability for aiding and abetting THRA violations." (Doc. No. 35 at 4) (citing *Robinson v. Wilson Cty. Sch.*, No. 3:19-CV-01092, 2020 WL 12932419, at *3 (M.D. Tenn. Jan. 10, 2020) and *Walton v. Interstate Warehousing, Inc.*, No. 3:17-CV1324, 2020 WL 1640440, at *5 (M.D. Tenn. Apr. 2, 2020)). But neither of these cases is any more precedential than the several cases cited above that reject Plaintiff's position here. And neither of these cases supports the specific notion that individual liability for discrimination and/or retaliation survived the 2014 amendments to the THRA. As for the first (*Robinson*), the opinion was (as Ramsey notes) issued for the limited purpose of conducting a preliminary screening. Moreover, *Robinson* plainly did not purport to address whether individual liability for events post-dating the 2014 amendments survived the 2014 amendments. And *Robinson* relied on a case (*Thompson v. City of Memphis*, 86 F. App'x 96 (6th Cir. 2004)) that was decided long before the 2014 amendments, which in turn relied upon another case (*Carr v. United Parcel Serv.,* 955

S.W.2d 832 (Tenn. 1997)) that likewise was decided long before the 2014 amendments, which in turn relied on a statute (Tenn. Code Ann. § 4-21-301(2)) that was expressly repealed by the 2014 amendments. And as the author of the second opinion (*Walton*), the undersigned recalls quite well that the statement therein upon which Plaintiff relies was mere dicta and not geared at resolving whether individual liability for events post-dating the 2014 amendments survived the 2014 amendments. So these cases are of no help to Plaintiff.

Plaintiff then makes what the Court will euphemistically call a "creative" argument. He first notes essentially that the prohibition against individual liability on which Defendant relies is, in express terms, limited to "agents or employees" of the employer. (Doc. No. 35) (quoting Tenn. Code Ann. § 4-21-301(b)). Then he essentially claims that, for purposes of a motion to dismiss, the prohibition is inapplicable because the Amended Complaint does not allege that Ramsey was an agent or employee of the employer (Lampo Group).[8] In his reply, Ramsey (and his attorneys) stated, "we have no idea what Plaintiff is talking about." (Doc. No. 38 at 3). The Court shares the sentiment; Plaintiff's assertion that Amended Complaint does not allege that Ramsey was an agent or employee of the employer is frivolous. As Defendant notes, correctly:

> In the Amended Complaint, Plaintiff alleges that Defendant Ramsey "is the President of Lampo Group, LLC" (Doc. #21 at ¶11) and "Defendant Ramsey through his actions as the leader of Lampo aided, abetted, incited, compelled or commanded Defendant Lampo to engage in the aforementioned illegal activities." (Id. at ¶355).

(Doc. No. 38 at 3). Whether or not it used the precise word "agent" or "employee" to refer to Ramsey's relationship with Defendant Lampo Group, the Amended Complaint unmistakably refers to Ramsey acting as an agent or employee of Defendant Lampo Group with respect to the

---

[8] Plaintiff claims that therefore any consideration of the assertion that Ramsey was an agent or employee of Defendant Lampo Group would have been be undertaken in connection with a motion for summary judgment—something that is not properly before the Court.

precise actions that the Amended Complaint claims are THRA violations. It is as plain as the nose on one's metaphorical face that this is what the Amended Complaint is doing. While Plaintiff insists otherwise in his Response when seeking to save his THRA claim against Ramsey(Doc. No. 35 at 5), his Response betrays that the hollowness of such insistence when, in seeking to save his fraud claim against Ramsey, he refers to Ramsey as Defendant Lampo Group's "Chief Executive Officer." (Doc. No. 35 at 8). Plaintiff's argument has (less than) no merit.

In short, an individual cannot be held liable for discrimination or retaliation under the THRA. So Plaintiff's THRA claim (Count III) must be dismissed to the extent that it is brought against Ramsey.

II.     Count IV:  Fraud

Following the parties' lead, the Court will treat Count IV as if it were asserted against Ramsey as well as Defendant Lampo Group. The Court will do so arguendo despite the fact that the opening phrase of paragraph 357, and the complete lack of mention of Ramsey in Count IV after paragraph 358, suggests that it is actually asserted against only Defendant Lampo Group.

As noted above, it is clear (and apparently undisputed) that Plaintiff's fraud claim against Ramsey is based on  single allegedly false statement, *i.e.*, the best-workplace statement. An initial question is what, allegedly, is false about the best-workplace statement?[9] Ramsey speculates that its alleged falsity is not in the assertion that Defendant Lampo Group had repeatedly been voted a best place to work," but rather in the assertion that such voting did not entail any interference from management in the voting process.

The Court is not so sure about this. But whether Ramsey is right or wrong, the point is that he should not have to speculate. The fact that he needs to do so is a glaring red flag regarding the

---

[9] As noted in a  footnote above, and as is virtually axiomatic, falsity of the statement is a requirement for Plaintiff's fraud claim.

claim of falsity with respect to the best-workplace statement. If no one can tell what supposedly is false about the best-workplace statement—something that Plaintiff does not clarify or address in any way in his Response—that is a very good indication that the allegation of falsity in entirely conclusory, with no factual matter in the complaint to support it. And that is exactly the case here. The allegation of falsity is entirely conclusory and thus insufficient under the Rule 8(a) standards of *Iqbal* and *Twombly*, which require non-conclusory allegations of falsity when the claim (be it one for fraud or something else) require that a particular statement be false). *See, e.g., Cook v. UPS Cartage Servs., Inc.,* No. 218CV01182MCEKJN, 2018 WL 5013669, at *2 (E.D. Cal. Oct. 16, 2018) (dismissing defamation claim because "Plaintiff's allegations regarding falsity are entirely conclusory [inasmuch as Plaintiff] includes no facts that support her conclusory allegations that [the allegedly defamatory] statements are false"). Still less is Plaintiff's allegation of falsity sufficient under the more demanding Rule 9(b) standards applicable to a fraud claim like the one set forth in Count IV. "Mere conclusory allegations of falsity are insufficient. Fed. R. Civ. P. 9(b) requires that to state a claim for . . . fraud, [t]he plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1124 (10th Cir. 1997) (internal quotation marks omitted).

Moreover, even if Plaintiff had adequately alleged falsity, he has not adequately alleged Ramsey's mental state with respect to such alleged falsity. As noted in a footnote above, Plaintiff's fraud claim requires that the false representation was made knowingly or recklessly without regard for its truth. But, Plaintiff does not attribute any mental state to Ramsey with respect to the falsity of the best-workplace statement. True, he does allege (albeit in an entirely conclusory manner) that *Defendant Lampo Group* made allegedly false statements "knowingly, without belief in their truth,

or recklessly." (Doc. No. 21 at ¶ 364). But he certainly does not, anywhere at all in the Amended Complaint, attribute any mental state (be it knowing, reckless, or something else) to Ramsey with respect to the falsity of the best-workplace statement. Still less does Plaintiff provide factual matter to support an allegation regarding Ramsey's mental state with respect to such falsity. Even if Plaintiff had alleged a sufficiently culpable mental state on the part of Ramsey, such an allegation would be insufficient under *Iqbal* and *Twombly* unless it went beyond a mere conclusory recitation of the alleged mental state and provided supporting factual matter. The Amended Complaint does no such thing. Still less does it provide allegations sufficient to satisfy Rule 9(b). As noted by the First Circuit some time ago:

> [G]eneral averments of the defendants' knowledge of material falsity will not suffice. Consistent with Fed. R. Civ. P. 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged.

*Lucia v. Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir. 1994) (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994) (citations and internal quotation marks omitted))). *See also Nalbandyan v. Citibank, NA*, 777 F. App'x 189, 191 (9th Cir. 2019) ("The district court did not err in dismissing Plaintiffs' fraud claim for failure to state a claim on which relief can be granted, because Plaintiffs failed to plead facts sufficient to support the 'knowledge of falsity' . . . element[ ] of their fraud claim. The district court correctly found that Plaintiffs' allegations regarding these two elements were entirely conclusory, and therefore failed to meet the pleading standards under Fed. R. Civ. P. 9 [and] 12(b)(6)." (citing *Iqbal* and *Twombly*)).

The Amended Complaint could hardly have done less to attempt to satisfy these pleading standards requirement with respect to Ramsey. In fact, the Amended Complaint is so lacking in this regard that it must be said, in fairness to Plaintiff, that perhaps he actually was not even

purporting in the Amended Complaint to state a fraud claim against Ramsey (even if he did go along with the suggestion later made by Defendant via the instant Motion that the Amended Complaint purported to do so). So to the extent that the fraud claim is asserted against Ramsey, it must be dismissed as insufficient under both Rule 8(a) and Rule 9(b).

## CONCLUSION

For the reasons discussed herein, the Motion (Doc. No. 28) is **GRANTED**. The claims against Defendant Dave Ramsey (Counts III and IV) therefore are dismissed, and the Clerk is directed to terminate him as a party.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE