UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ) |
| | ) Case No. 3:21-cv-00923 |
| Plaintiff, | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Holmes |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Defendant, The Lampo Group, LLC, by and through the undersigned counsel and pursuant to Local Rule 56.01(b), files this Statement of Undisputed Facts in support of its Motion for Summary Judgment (Doc. #113).

1. Amos applied for employment at Lampo several times from 2017 to 2019 while living in California and making approximately $200,000 to $250,000 per year. (Plaintiff Dep. 83:1-13; 84:1-21; 126:16-22).

    RESPONSE:

2. He also applied for other positions in the Nashville area during this timeframe, including at Belmont University, MTSU, Bohan, and Redpepper. (Plaintiff Dep. 84:21-24).

    RESPONSE:

3. Amos was interested in moving back to Nashville with his family for several reasons, including to be near his ailing mother. (Plaintiff Dep. 85:6-14).

   RESPONSE:

4. In fact, Amos represented to Lampo that he was "in the process of moving to Franklin, TN to be closer to family" when he applied for positions in January and May of 2019. (Plaintiff Dep. Ex. 4-5).

   RESPONSE:

5. Amos expressed interest in employment with Lampo specifically because of its mission to help people get out of debt, his desire for a change of "venue and scenery" from California to Tennessee, and the personal impact Lampo has had on his life. (Plaintiff Dep. 156:3-9, Ex. 4-5).

   RESPONSE:

6. After applying for several positions at Lampo without receiving an offer of employment, a recruiter at Lampo suggested that Amos apply for an open video editor position. (Plaintiff Dep. 85:15-86:11, 110:5-11, 111:10-24).

   RESPONSE:

7. Amos applied for the position and participated in several interviews with Lampo employees. (Plaintiff Dep. 90:1-4, 111:2-9).

   RESPONSE:

8. He was eventually offered a job at Lampo with an annual salary of $90,000. (Plaintiff Dep. 161:7-19).

   RESPONSE:

9. Amos claims that he relied on five (5) representations by Lampo when deciding to accept a position with the company:

   - He would edit features and help create Lampo's new film department;
   - Lampo was not "cult like" in the way it operated;
   - Lampo operated a "drama free" workplace;
   - Dave Ramsey stated that Lampo had been voted "best place to work" for over 10 years in a row by their own employees without interference from management, and Lampo employees assured Amos that this statement was true during his interview process; and
   - Lampo was family friendly and would allow Amos to spend time with his family without interference.

   (Doc. # 21 ¶357).

   RESPONSE:

10. At deposition, Amos testified that Lampo told him they were starting a video department to do a series of documentaries. (Plaintiff Dep. 80:3-25).

    RESPONSE:

11. Amos acknowledges that he worked on a documentary for Lampo during his employment. (Plaintiff Dep. 75:2-5, 200:20-21, 208:5-7, 212:2-5, 213:12-14).

    RESPONSE:

12. He also asked during the interview process if Lampo was a "cult" because it sounded too good to be true (Plaintiff Dep. 251:3-12).

    RESPONSE:

13. Amos claims that he was promised a drama-free environment during his interview process, but he perceived Lampo's mandatory employee meetings and employees' e-mail leaks to press to be "distractions." (Plaintiff Dep. 295:1-10).

    RESPONSE:

14. As for Lampo's designation as a "best place to work," Amos claims that he heard Mr. Ramsey announce the recognition on his radio show, that he saw it on Lampo letterhead, and that he verified it independently on the internet. (Plaintiff Dep. 72:16-73:2).

    RESPONSE:

15. Finally, during the interview process, Amos claims he was told that Lampo was family friendly as compared to Los Angeles, particularly because the reduced commute in Tennessee allows more time with family. (Plaintiff Dep. 81:8-19).

    RESPONSE:

16. The COVID-19 pandemic blindsided Lampo and the entire country during Amos' employment. Around March 16, 2020, Amos attended a meeting at Lampo in which CEO Dave Ramsey addressed the company. (Plaintiff Dep. 218:7-13).

    RESPONSE:

17. Amos claims that Mr. Ramsey told employees that the company did not plan to close. (Plaintiff Dep. 218:9-10).

    RESPONSE:

18. Mr. Ramsey also said that the Operating Board members had stopped taking salaries and that Lampo was not at the point of having to lay off people. (Plaintiff Dep. 218:17-23).

    RESPONSE:

19. Amos claims that Mr. Ramsey then told everyone to "pray and move forward." (Plaintiff Dep. 219:8-9).

    RESPONSE:

20. After the company-wide meeting, Chief Creative Officer and Operating Board Member Luke LeFevre met with all of the employees in Amos' department. (Plaintiff Dep. 219:16-18).

    RESPONSE:

21. Mr. LeFevre asked the employees how everyone was feeling about work during the pandemic. (Plaintiff Dep. 219:21-23).

RESPONSE:

22. Amos claims that he said the following during the meeting:

> I actually do have some questions because I think the attitude is we're being a little cavalier about this. We need to probably – we don't know anything about this. Remember, this is very early days. Everybody is panicking. You see stuff on the radio and you see stuff on the news, and there's very little information out there.
>
> I think we probably need to take a breath and take a look at what's going on here. I think just to dismiss it out of hand that somebody who got very, very sick is sitting in this department. What does that mean for us? Do we all need to be tested? Do we need to go home? Do we all need to quarantine? Where do we even test? What do we do?

(Plaintiff Dep. 220:1-15).

RESPONSE:

23. Amos testified that Mr. LeFevre responded by saying that everyone needed to "take a breath" and pray. (Plaintiff Dep. 220:18-20).

RESPONSE:

24. According to Amos, Mr. LeFevre spoke to him one-on-one after the meeting and asked him what was going on. (Plaintiff Dep. 220:21-22).

RESPONSE:

6

25. At deposition, Amos testified that he responded:

> Well, I mean, somebody got really deathly sick next to us. We don't know anything about the disease, and it seems like it's killing people. What do we need to be doing here? I mean, it seems like there's a lot of questions, and I'm not hearing a lot of answers. I'm not saying we need to shut down but do we all need to be tested? What are we doing? What's the plan?

(Plaintiff Dep. 221:1-8).

RESPONSE:

26. According to Amos, Mr. LeFevre told him not to worry and that the company was watching what was going on. (Plaintiff Dep. 221:9-10, 315:13-15).

RESPONSE:

27. Amos admits that he never asked to work at home due to COVID-19. (Plaintiff's Dep. 317:15-17).

RESPONSE:

28. According to Amos, both Lara Johnson (the head of his department) and David DiCicco (his direct supervisor) suggested that he work from home after the March 16, 2020, meeting where he expressed concerns. (Plaintiff Dep. 317:6-9).

RESPONSE:

29. Ms. Johnson also suggested to Amos that he wear a mask in meetings if it would make him feel more comfortable. (Plaintiff Dep. 317:10-12).

RESPONSE:

7

30. On March 18, 2020, Amos decided to stay at home and informed Mr. DiCicco of his decision. (Plaintiff Dep. Ex. 11).

RESPONSE:

31. Mr. DiCicco approved of Amos' decision and said he completely understood. (Id).

RESPONSE:

32. Shortly after Lampo approved Amos' decision to stay at home, Lampo decided to close its facility and send all employees home. (Plaintiff Dep. 322:15-323:9).

RESPONSE:

33. Amos believes that Mr. Ramsey preemptively sent everybody home because he knew that the state was going to issue a work-from-home order. (Plaintiff Dep. 325:1-5).

RESPONSE:

34. On March 20, 2020, Mr. DiCicco told Amos that they had approval to be part of a skeleton crew, that there was deep cleaning occurring in the facility, and that there was "ZERO pressure or expectation" that Amos would be in the facility while closed. (Plaintiff Dep. Ex. 9).

RESPONSE:

35. Amos decided to stay at home rather than come back to the facility to be a part of the skeleton crew. (Plaintiff Dep. 304:19-25).

RESPONSE:

36. Lampo provided Amos with a computer and hard drive so that he could work from home (Plaintiff Dep. 224:21-24; 304:21-25).

RESPONSE:

37. Lampo's employees worked from home for five (5) weeks. (Plaintiff Dep. 299:4-6).

RESPONSE:

38. Amos believes that Lampo brought everyone back into the office only after the state of Tennessee said it was legal to return to work. (Id.).

RESPONSE:

39. Lampo gave everyone a one-week transition period before requiring employees to return to work. (Plaintiff Dep. 299:7-9).

RESPONSE:

40. Amos had no problem with Lampo's decision to return everyone to work. (Plaintiff Dep. 299:10-14).

RESPONSE:

41. He came back to work, socially distanced, and wore a mask at times. (Plaintiff Dep. 299:17-21).

    RESPONSE:

42. Amos admits that he does not know whether Lampo violated any COVID-19 rules, regulations, ordinance, recommendations, or laws. (Plaintiff Dep. 308:2-5).

    RESPONSE:

43. According to Amos, Mr. LeFevre and Ms. Johnson met with him during the work-from-home period on or about April 13, 2020. (Plaintiff Dep. 327:20-23).

    RESPONSE:

44. Mr. LeFevre began the meeting by discussing a deadline related to the documentary to which Amos was assigned that he believed Amos had missed. (Plaintiff Dep. 232:14 – 232:8).

    RESPONSE:

45. Amos claims that Mr. LeFevre then asked him how he and his wife felt about COVID-19. (Plaintiff Dep. 233:9-14).

    RESPONSE:

46. Amos also claims that Mr. LeFevre talked about his attitude and told him that he needed to check his humility. (Plaintiff Dep. 233:14-22; 327:20-25; 328:1-4; 340:20-23; Ex. 12).

    RESPONSE:

47. Following the April 13, 2020, meeting, Amos had weekly meetings with Lara Johnson. (Plaintiff Dep. 105:14-15).

    RESPONSE:

48. Amos described the meetings as personal in nature. (Id.).

    REPONSE:

49. He would answer questions about his wife, his marriage, and what he thought about Mr. Ramsey and the "Ramsey way." (Plaintiff Dep. 105:14-15; 277:1-5).

    RESPONSE:

50. Ms. Johnson also asked Amos if he wanted to continue working at Lampo. (Plaintiff Dep. 330:15-24).

    RESPONSE:

11

51. According to Amos, Ms. Johnson told him that Lampo made a mistake in hiring him and that they would pay him $15,000 if he wanted to leave. (Plaintiff Dep. 330:25-331:1-2).

RESPONSE:

52. Amos responded that he still wanted to work for Lampo and that he still liked the mission. (Plaintiff Dep. 332:8-9).

RESPONSE:

53. Amos was concerned that, if he quit, he would not find another job. (Plaintiff Dep. 333:5-10).

RESPONSE:

54. Amos told Ms. Johnson that he and his wife were perfectly fine in Tennessee and that they would make it work at Lampo. (Plaintiff Dep. 333:13-15).

RESPONSE:

55. On July 31, 2020, Mr. LeFevre terminated Amos' employment at Lampo. (Plaintiff Dep. 326:1, 12:24-13:17; 60:20-21; 340:2-5).

RESPONSE:

56. Amos claims that Mr. LeFevre told him that he was not a good fit for the job. (Plaintiff Dep. 334:9-10).

RESPONSE:


57. Amos said that he did not understand because Ms. Johnson had complimented his work. (Plaintiff Dep. 334:17-25).

RESPONSE:


58. He stated, "so I don't quite understand what the problem is because I get the feeling that by the time we finish this meeting I'm not going to have a job." (Plaintiff Dep. 333:6-9).

RESPONSE:


59. According to Amos, Mr. LeFevre then went through a rubric for evaluating employment, including the characteristics of humble, hungry, smart, skill fit, and team fit. (Plaintiff Dep. 325:15-326:1).

RESPONSE:


60. Mr. LeFevre told Plaintiff that he was not humble. (Plaintiff Dep. 326:1).

RESPONSE:

61. Amos disagreed and told Mr. LeFevre that he was confusing confidence with a lack of humility. (Plaintiff Dep. 326:8-19).

    RESPONSE:

62. Amos then told Mr. LeFevre that he was a high "D" on the DISC personality assessment and that Lampo looks for people who are high Ds because Mr. Ramsey is one. (Plaintiff Dep. 336:1-13).

    RESPONSE:

63. According to Amos, he was "everything they wanted" when he was hired by Lampo. (Plaintiff Dep. 336:8-10).

    RESPONSE:

64. Amos then told Mr. LeFevre that he was not humble, and neither was Mr. Ramsey. (Plaintiff Dep. 336:18-22).

    RESPONSE:

65. Mr. LeFevre ended the meeting and terminated Plaintiff's employment. (Plaintiff Dep. 338:4-8; 340:2-5).

    RESPONSE:

Respectfully submitted,

/s/Daniel Crowell
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2603
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that, on July 28, 2023, I filed the foregoing *Defendant's Statement of Undisputed Facts* via the Court's electronic filing system, which will automatically notify and send a copy of the filing to:

Jonathan A. Street
Lauren J. Irwin
Brandon G. Hall
Cullen D. Hamelin
THE EMPLOYMENT AND CONSUMER LAW GROUP

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*