exhibitsticker.com

Lofgren v. Polaris Industries Inc., 509 F.Supp.3d 1009 (2020)

509 F.Supp.3d 1009
United States District Court, M.D.
Tennessee, Nashville Division.

Christopher Lars **LOFGREN**, Plaintiff,
v.
**POLARIS** INDUSTRIES INC., Defendant.

NO. 3:16-cv-02811
|
Filed 12/23/2020

*** Start Section

... to review in a judicial proceeding." (Doc. No. 170 at 12). Plaintiff responds that "[t]his factor does not preclude justiciability here because Plaintiff's claims against [Defendant] involve decisions separate from any military decision-making or policy determinations made by the Army. The Court and jury need only measure [Defendant's] misconduct against the Plaintiff's operation of the MRZR under state law ... Such a straightforward examination is well within the competency of the judicial branch." (Doc. No. 174 at 19).

 **[37]** **[38]** "Under this factor, a political question is implicated if in deciding the case, a court would have to make a policy determination of the kind appropriately reserved for diplomatic—and thus Executive—discretion." *Gross v. German Found.* **Indus**. *Initiative*, 456 F.3d 363, 388 (3d Cir. 2006). Also, "[a] political question under the third factor 'exists when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis.' " *Id.* (quoting *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 784 (9th Cir. 2005)). Typically for this test to be implicated a court must face a clear, initial policy determination that is not suited for the judiciary. *See Norwood*, 455 F. Supp. 2d at 605–08 ("The Court understands the third *Baker* factor to require dismissal only when the claims presented would require a court to make an initial policy determination in order to decide the case."); *Aktepe*, 105 F.3d at 1404 (dismissing action where...

*** Start Section
...

## Footnotes

1    Plaintiff complains that Defendant has waited until this juncture in the litigation to raise justiciability concerns. (Doc. No. 174 at 11). However, courts have often dismissed, as premature, a party's assertion of the applicability of the political question doctrine in similar contexts when defenses are uncertain and discovery has not been completed, so the Court does not look unfavorably upon Defendant's choice to raise this issue when it did rather than earlier. *See e.g., Lane v. Halliburton*, 529 F.3d 548, 554 (5th Cir. 2008); *Getz v. Boeing Co.*, No. CV 07-6396 CW, 2008 WL 2705099, at *9 (N.D. Cal. July 8, 2008). The case before this Court contains a thorough record, and discovery has been completed.

2    Unless otherwise noted, the facts in this section are taken from facts in the Complaint that are not disputed and Plaintiff's Response to Statements of Undisputed Facts and Defendant's Response to Statements of Undisputed Facts (where the facts are undisputed). (Doc. Nos. 1, 180, 186). Though the Court herein is ruling on the Motion to Dismiss and not the pending Motion for Summary Judgment (Doc. No. 164), the Court has referred herein to the parties' statements of undisputed fact and other documents in the record when discussing the facts in this opinion. Though the Court references the statements of undisputed fact filed with the Motion for Summary Judgment, the Court looks at these facts pursuant to the standard discussed below when considering a facial attack on jurisdiction via a 12(b)(1) motion. However, the Court notes that even if it accepted the facts to be what Defendant claims them to be, the Court would not conclude that the facts warrant application of the political question doctrine.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    1

**Costanzo, Emily 9/1/2023**
**For Educational Use Only**

3    The Court notes that most of the documents in this case were filed, and remain, under seal. The sealing shall be deemed lifted by virtue of this memorandum opinion only to the extent that particular information therein has been referred to herein.

4    Plaintiff and Defendant dispute how the accident occurred. Defendant claims that Plaintiff accelerated to 40 miles per hour and launched the MRZR into the air, causing all four wheels to leave the ground. (Doc. No. 64 ¶ 64, 65). Plaintiff disputes that his speed reached 40 miles per hour and characterizes the vehicle leaving the ground as "inadvertent[ ]." (*Id.*). Regardless of the exact disputed circumstances, it is undisputed that the MRZR left the ground and the seat bases were thereafter broken in similar locations.

5    In their briefing, the parties use both USSOCOM and SOCOM to reference the United States Special Operations Command. For consistency, the Court herein uses use the abbreviation USSOCOM.

6    Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motion without an evidentiary hearing. *See e.g., Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 327 (6th Cir. 1990).

7    Plaintiff argues that Defendant's invocation of the political question doctrine is merely an attempt to rehash the arguments in Defendant's summary judgment motion regarding the general contractor defense. (Doc. No. 174 at 14). Plaintiff cites *Norwood v. Raytheon Co.* for the proposition that a military-related products liability claim should not be dismissed under the political question doctrine, because if the military's decision to acquire a certain product and produce regulations for its use was a political question, all products liability claims by military members injured by a defective product would be barred. (*Id.*). The Court disagrees with this reading of *Norwood.* There, the court said:

> As for Plaintiffs' claims stemming from exposure to Defendants' radars during service in the United States military, the very existence of the government contractor defense in federal common law demonstrates that claims by United States servicemen against military contractors are not necessarily barred by the political question doctrine. The government contractor defense allows a court to consider claims brought against military contractors, while still preventing the court from scrutinizing the exercise of discretion by government officers in the selection of the appropriate design for military equipment to be used by our Armed Forces.

> *Norwood v. Raytheon Co.,* 455 F. Supp. 2d 597, 603 (W.D. Tex. 2006) (citation and internal quotation marks omitted). Essentially, the Court in *Norwood* was using the existence of the government contractor defense as evidence that claims by soldiers against contractors are not "necessarily barred by the political question doctrine." *Id.* This does not imply that the political question doctrine could *never* be used in such a case, just that it does not *automatically* apply in such a case. The Court additionally notes that courts have regularly considered both the political question doctrine and the general contractor defense when both are raised by a defendant. *See e.g., Carpenter v. Sikorsky Aircraft Corp.,* 101 F. Supp. 3d 911 (C.D. Cal. 2015); *Rodriguez v. Gen. Dynamics Armament & Tech. Prod., Inc.,* 696 F. Supp. 2d 1163 (D. Haw. 2010); *Bentzlin v. Hughes Aircraft Co.,* 833 F. Supp. 1486 (C.D. Cal. 1993).

8    The parties, and many other courts, characterize this quote from *Baker* as laying out six "factors" in the analysis of a potential political question. However, the Supreme Court has been clear that *Baker* presented "six independent tests" to analyze when determining whether a political question is present. *Vieth v. Jubelirer,* 541 U.S. 267, 277, 124 S. Ct. 1769, 1776, 158 L. Ed. 2d 546 (2004). The Court finds this distinction to be important. Factors indicate the balancing of multiple factors, whereas the *Baker* analysis is instead six independent (though often overlapping) tests. *Memphis A. Phillip Randolph Inst. v. Hargett,* No. 3:20-

Case 3:21-cv-00923    Document 121-2    Filed 09/01/23    Page 2 of 6 PageID #: 2758

CV-00374, 482 F.Supp.3d 673, 679–80 (M.D. Tenn. 2020) (Richardson, J.) (noting that the four factors of the preliminary injunction test (albeit with a twist) "are 'factors to be balanced' ") (quoting *Michael v. Futhey*, No. 08-3922, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009)). Therefore, if any one of the six independent *Baker* tests is met, the Court should dismiss this case for lack of subject matter jurisdiction.

9 The Court notes that the United States Department of the Army is an Interested Party in this matter and has previously been active in the litigation. (*See e.g.*, Doc. Nos. 110, 134, 138). The Army has filed nothing to indicate that it believes that this case involves issues that have been committed to the executive branch. Though obviously not dispositive or exceptionally persuasive, this leans, if at all, in favor of the Court properly exercising subject-matter jurisdiction over the case before it. *See e.g., McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1365 (11th Cir. 2007) ("[T]he United States has not intervened in the instant case, despite an invitation to do so .... The apparent lack of interest from the United States to this point fortifies our conclusion that the case does not yet present a political question."); *Gross v. German Found. **Indus**. Initiative*, 456 F.3d 363, 380 (3d Cir. 2006) (noting that the court "would expect" communication from the executive branch when political question was at issue). *Contra Alperin v. Vatican Bank*, 410 F.3d 532, 556 (9th Cir. 2005) ("It is unclear, however, how courts should construe executive silence. We are not mind readers. And, thus, we cannot discern whether the State Department's decision not to intervene is an implicit endorsement, an objection, or simple indifference. At best, this silence is a neutral factor.").

10 Despite Plaintiff's protests, it is well established that a political question can be raised by a contractor's defense. (Doc. No. 174 at 16); *e.g., Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 466 (3d Cir. 2013) ("In these situations, the political question appears not from the plaintiff's claims but from the broader context made relevant by a contractor's defenses."); *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) ("We must look beyond the complaint, considering how the Plaintiffs might prove their claims and how [Defendant] would defend."). However, it is true that courts may be more skeptical of the political question doctrine when raised in connection with a defendant's defenses than with a plaintiff's complaint. *See e.g., McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J. 2013) ("[Defendant] states that it will defend itself in a manner that will drag the Court into exacting evaluations of the Army's policies and the actions of its soldiers. That argument is too broad; it would give defendants too much power to define the issues. Indeed, it would bar virtually any claim in which the contractor posited that the military, not itself, was at fault. In the great majority of cases dismissing claims on political question grounds, the allegedly faulty exercise of military judgment was the basis of the complaint, not of a hypothetical defense." (citation omitted)).

11 Plaintiff argues that there is a lack of case law dismissing products liability actions under the political question doctrine, and that therefore the political question doctrine does not apply. (Doc. No. 174 at 10-13). In considering a similar argument, a court has previously held that even though products liability actions are often dismissed, the political question doctrine still merits consideration because of the "case by case" nature of the political question doctrine, and just because a case has not previously occurred, does not mean that it will *never* occur. *Martinez v. Sci. Applications Int'l Corp.*, No. 1:10-CV-207, 2015 WL 11109381, at *8 (S.D. Tex. June 29, 2015). Additionally, the Court notes Plaintiff's argument focuses on his own claims, when the Court can properly assess the Defendant's defenses as well as Plaintiff's claims, as previously discussed. Plaintiff similarly focuses his arguments on his own claims, and not on Defendant's defenses, in his arguments on the other *Baker* tests.

12 The Defendant's Motion discusses the various *Baker* tests at the outset, but it does not specifically apply any of the *Baker* tests to the facts at hand. Instead, Defendant discusses the political question doctrine in a more general sense as being applicable to its defenses. The Court has extrapolated which of Defendant's arguments pair with which *Baker* tests. Although the first *Baker* test is the one most likely implicated when

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 3

Costanzo, Emily 9/1/2023
For Educational Use Only

military judgments are at issue, *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1281 (11th Cir. 2009), any of the six *Baker* tests conceivably could apply in such an action. *Aiello v. Kellogg, Brown & Root Servs., Inc.*, 751 F. Supp. 2d 698, 705 (S.D.N.Y. 2011) (noting that the defendant had not specifically identified the *Baker* tests implicated but looking at all six nevertheless). Defendant specifically argues that the first four *Baker* tests are implicated. (Doc. No. 170 at 12-13).

13 The Court notes that many of the cases cited in this brief are merely persuasive authority. Courts in the Sixth Circuit have had few opportunities to address the application of the political question doctrine when decisions of the military are potentially implicated. Though there are some minor inconsistencies between circuits, the overall analysis of the political question doctrine in the military context is substantially similar across circuits.

14 Plaintiff argues that most of the cases relied on by Defendant "involve negligence claims arising in a theater of war, in a combat zone, or on a battlefield, against a private contractor which was acting under the direct supervision and management of the Unites States military at the time of the incident." (Doc. No. 174 at 11); *e.g., Carmichael.*, 572 F.3d at 1287 (stating that though there was not any hostile activity on the day of the accident, the road at issue was in a "combat zone" or "battlefield"); *McMahon*, 502 F.3d at 1363 n.32 (noting the prevalence of district court cases dismissing matters that arise in a combat zone). However, a cause of action does not necessarily have to arise in a traditional theater of war to be dismissed as a political question. *See e.g., Carmichael*, 572 F.3d at 1287 ("The deeper problem with [plaintiff's] argument, however, is the implicit suggestion that a military decision is unreviewable only if it somehow pertains to battlefield or combat activities. While decisions relating to the latter issues are paradigmatically insulated from judicial review, it is neither necessary nor sufficient for purposes of the political question doctrine that military decisions relate to such matters." (collecting cases)); *Aktepe v. USA*, 105 F.3d 1400, 1403 (11th Cir. 1997) (finding political question when Turkish soldiers sued regarding an accident that resulted in injuries and deaths on their ship during NATO training exercises).

15 Under the so-called *Erie* doctrine, a federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that a federal court sitting in diversity is bound to follow the law of the forum state); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Tennessee substantive law therefore governs in this Court. Part of Tennessee's substantive law for this Court to apply is Tennessee's choice-of-law rules, which theoretically could direct the Court to apply the underlying law (*i.e.*, the law excluding choice-of-law rules) of some other state. *See Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692–93 (6th Cir. 2013). In briefing on the Motion for Summary Judgment, Plaintiff has indicated that he believes that Minnesota (Defendant's home state and where all relevant design decisions were made) law "could very well control." (Doc. No. 179 at 30 n.6). Despite this, neither Plaintiff nor Defendant has mentioned Minnesota law in briefing the present Motion. Though the Court will not make a determination of the state law applicable to this case at this juncture, the Court will not analyze Minnesota law as neither party has discussed it. Instead, absent a showing as to why it should do otherwise, the Court will apply the default substantive law, *i.e.*, Tennessee substantive law.

16 The court in *Harris* did not discuss *Snyder* and this exception regarding an employer's liability. In a footnote, the *Harris* court did note that "[t]his conclusion depends on the ability of fact finders to assign fault to immune parties, such as the government. Both states permit this. The Tennessee Supreme Court appears to have never dealt with the assignment of fault to the government." *Harris*, 724 F.3d at 474 n.11. It appears to still be the case that Tennessee courts have not faced the issue of allocating fault to the U.S. government, but the court in *Harris* court overlooked the already then-existing exception regarding employer liability.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**Costanzo, Emily 9/1/2023**
**For Educational Use Only**

17   "While an employee cannot proceed with a tort action against the employer, the employee may seek damages from some person other than the employer." *Carroll*, 29 S.W.3d at 19 (citing § 50–6–112(a)).

18   In this context, references to allocating "fault" and apportioning "liability" apparently are used interchangeably by courts. This practice seems to result from the close link between "fault" and "liability" as a general matter in this context. *See Carroll*, 29 S.W.3d at 20 ("[O]ur decision is also grounded in the rationale that led to the adoption of comparative fault in the first place: fairness to the parties by linking fault with liability.").

19   The statute states: "In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien." Tenn. Code Ann. § 50-6-112. This provision of the statute has not been amended, despite an invitation to the legislature from the Tennessee Supreme Court to do so, and so this exception for employers allowing allocation of fault to immune parties remains the law in Tennessee. *Johnson v. Torrington Co.*, No. M2010-01924-COA-R3CV, 2012 WL 2337615, at *14 (Tenn. Ct. App. June 19, 2012) (discussing the history of the exception). Additionally, a plaintiff does not have to show that they actually face the risk of a subrogation lien in order for the exception to apply. *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007).

20   The Worker's Compensation statute broadly defines both "employee," Tenn. Code Ann. § 50-6-102(12)(A), and "employer," *id.* at (13).

21   At the time of the accident, Defendant claims that the MRZR was travelling at 40 miles per hour, but Plaintiff claims that it was 25-30 miles per hour. (Doc. No. 180 at ¶ 64). Regardless, either would be more than the 20 miles per hour recommended for a Cross Country Road. Defendant also cites a particular report and claims that it required certain operating speeds for users, but actually the report merely notes the operating speeds to which the *testing* of the MRZR was limited. (Doc. No. 171-21 at 9); (Doc. No. 180 at ¶ 34).

22   "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (internal quotation marks and citations omitted). Products liability claims are governed by Tenn. Code Ann. § 29-28-101, *et seq.*

23   In fact, there has been litigation regarding tort claims arising out of crashes and alleged defects of the RZR (the civilian version of the MRZR). *E.g., Birch v. Polaris Indus., Inc.*, 812 F.3d 1238 (10th Cir. 2015); *United States v. Polaris Sales, Inc.*, No. 219CV06830ODWKSX, 2020 WL 4430375 (C.D. Cal. July 31, 2020). In one of the cases, a plaintiff drove an RZR over a berm going 30-35 miles per hour, went airborne, and suffered an injury to his spinal cord. *Thompson v. Polaris Indus. Inc.*, No. CV-16-02868-PHX-DJH, 2019 WL 2100005, at *1 (D. Ariz. May 14, 2019) (addressing only various evidentiary issues). Though *Thompson* was not heard on the merits, it indicates that courts have a clear framework for addressing similar claims in nearly identical factual situations.

24   Though the Court can, should and will analyze this separately from the first *Baker* test, the Court notes that the two share substantial analytical overlap.

Lofgren v. Polaris Industries Inc., 509 F.Supp.3d 1009 (2020)

25    As noted above, Defendant structured its Motion in terms of its defenses, and not as a progression through
      the various *Baker* tests. Defendant's quoted remark and citation of *Aktepe* and *Tiffany* appears, as far as the
      Court can tell, to be an intended reference to the fourth *Baker* test.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

...

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.