UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BRAD AMOS, | ) |
| | ) Case No. 3:21-cv-00923 |
| Plaintiff, | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Holmes |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
| Defendant. | ) |

**DEFENDANT'S REPLY**

Neither the law nor the facts are on Plaintiff's side so as a last resort, he has attempted to create disputed material facts in a desperate attempt to survive summary judgment. Just like the facts, Plaintiff's legal theories are ever-changing.

**I. No Disputed Material Facts**

Plaintiff uses the word "denied" in connection with some of Defendant's facts but he falls short in supporting his denial, particularly since Defendant relied entirely on Plaintiff's own deposition testimony to establish the facts for purposes of summary judgment. After reviewing every single "dispute" presented by Plaintiff, there are still no material facts disputed for purposes of summary judgment.[1]

---

[1] Plaintiff submitted a Statement of Additional Material Facts (Doc. #123) and relied primarily on his own deposition testimony. He also cited the depositions of Lara Johnson and Armando Lopez (Vol. 2) to establish his additional material facts. Plaintiff filed four (4) additional deposition transcripts, and seven (7) unauthenticated exhibits, none of which are cited in the Statement of Additional Material Facts (Doc. #123) or Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. #122). Defendant responded to the Statement of Additional Material Facts separately (Doc.#132). The additional depositions and the unauthenticated exhibits should not be considered as by Plaintiff's own admission, they are not material.

Defendant listed 65 factual statements in its Statement of Undisputed Facts (Doc. #115). Plaintiff admitted 37 of the facts as stated by Defendant.[2] Plaintiff identified another 10 of the facts as "denied" though Plaintiff did not deny the substance of Defendant's assertion but either restated it or included additional context from his deposition.[3] For purposes of summary judgment, Defendants accept as true all of the additional portions of Plaintiff's deposition that he cites. Plaintiff attempted to dispute the remaining 18 facts for one of the three following reasons: (1) no factual basis, (2) objectionable, or (3) incorrect citations. Each of the reasons is addressed below.

### A. Denials Based on No Factual Basis

Plaintiff claims that seven (7) of Defendant's material facts have no basis in the record.[4]

- No. 16 – Defendant did not cite to the record for the fact that "[t]he COVID-19 pandemic blindsided Lampo and the entire country during Amos' employment." While this is universally understood, to the extent a cite is required, Defendant concedes this is not a material fact but a recognition of what was going on in the world in March 2020.

- No. 21 – Defendant admits that No. 21 is partially correct but that Plaintiff did not specifically testify that his supervisor asked how employees felt about work during the pandemic. While that is clearly the context of the testimony (see Plaintiff Dep. 219:2-25), Defendant accepts Plaintiff's iteration as set forth in his reply to No. 21.

- No. 27 – Plaintiff's denial of No. 27 is not a denial at all. Instead, Plaintiff does not like what he said in his deposition because it is detrimental to his case. Nevertheless, Defendant accepts

---

[2] Paragraphs 2, 3, 6, 7, 8, 10, 11, 12, 17, 19, 20, 22, 23, 24, 25, 26, 28, 30, 32, 33, 34, 36, 37, 39, 41, 45, 46, 52, 53, 54, 55, 56, 57, 60, 61, 63, and 65. (Doc. #122).
[3] Paragraphs 4, 5, 9, 13, 15, 18, 51, 62, 64 and 38. (Doc. #122).
[4] References to the seven (7) disputed facts are identified by the numbered paragraph in Doc. #122.

the following quote from Plaintiff's deposition in place of Defendant's characterization that Plaintiff never asked to work at home due to COVID-19:

> But I never said, "Hey I need to take time off. I don't like what you guys are doing. I'm -- I only want to work from home." (Plaintiff Dep. 317:15-17)

- No. 29 – Plaintiff claims that his own testimony is too uncertain to be believed. Namely, he testified that his supervisor, Lara Johnson, *may* have asked "why don't you wear a mask in the meetings? It will make you feel better." (Plaintiff Dep. 317:10-12). Ms. Johnson testified not once but three (3) times in her deposition that employees at Lampo could wear a mask at work (Johnson Dep. 84:6-7, 85:15-19; 86:22-25). The record is clear that Mr. Amos knew he could wear a mask.

- No. 31 – Plaintiff denied that Mr. DiCicco said he "completely understood" Plaintiff's decision to work at home. The actual quote from the text message by Mr. DiCicco in response to Plaintiff's message that he was going to work at home was "No worries man! Don't apologize either, it's what's best for you guys." (DiCicco Dep. Ex. 11).

- No. 40 – Plaintiff denies that he "had no problem with Lampo's decision to return everyone to work." It is not clear why Plaintiff denies this as he specifically testified:

> And, again, no problem. I have never said, "I have to work at home." You know, that was their recommendations. You know, remember that was David DiCicco saying "Hey, would you like to work from home?" It was him who said that. It was Lara Johnson who said, "Hey, we're doing Summit. Maybe you would like to work from home."

(Amos Dep. 299:10-16).

- No. 59 – This allegation references the rubric for evaluating employment at Lampo including the characteristics of humble, hungry, smart, skill fit and team fit. Plaintiff denies the allegation because he claims that Mr. LeFevre only addressed the characteristic of "humble" with Plaintiff when he terminated his employment on that basis. Plaintiff also testified that that Mr. LeFevre in the same meeting told Plaintiff that he was "very smart, and…very hungry. But you're

not humble." (Plaintiff Dep. 335:17-18). Defendant acknowledges that the only material fact in No. 59 is that Mr. LeFevre discussed that Plaintiff was not humble, a fact that is not disputed.

### B. Denial Based on an Objection

Plaintiff refused to respond to No. 42, which states "Amos admits that he does not know whether Lampo violated any COVID-19 rules, regulations, ordinance, recommendations or laws." Plaintiff objects to this fact because it requires "Plaintiff to make a legal conclusion." Of course it does. In order to prove a claim under the TPPA, Plaintiff must show that he refused to participate in or remain silent about "illegal activity." If he does not know whether he believes that Lampo engaged in illegal activity, he cannot establish a prima facie case under the TPPA. Plaintiff's deposition testimony is as follows:

> Q: Do you believe that Ramsey violated any COVID rules, regulations, ordinances, recommendations, or laws?
> A. I don't know.

(Plaintiff Dep. 308:2-5).

### C. Denials Based on Incorrect Citations

Plaintiff denies ten (10) of Defendant's statement of facts based on incorrect citations. As an initial matter, Nos. 14 and 43 contain citations that support the facts. It is unclear why Plaintiff denied these. Defendant supplements the following facts to provide additional citations:

- No. 1 – Plaintiff admits that he applied for employment more than once at Defendant (Doc. #122, No. 6) and that he made approximately $200,000 to $250,000 per year in California before taking the lower-paying job at Defendant (Plaintiff's Statement of Additional Material Facts (Doc. #123, No. 1)).

- No. 35 – There is no dispute that Plaintiff decided to stay at home rather than come back to the office to work on the skeleton crew. (See Plaintiff Dep. 303:7-304:25).

4

- No. 44 – The correct citation is Plaintiff Dep. 232:14-233:8. The fact is not disputed.

- No. 47 – The correct citation is Plaintiff Dep. 191:5-9. The fact is not disputed.

- No. 48 – The correct citation is Plaintiff Dep. 191:5-9. The fact is not disputed.

- No. 49 – The correct citation is Plaintiff Dep. 277:1-5. The fact is not disputed.

- No. 50 – The correct citation is Plaintiff Dep. 234:11-14. The fact is not disputed.

- No. 8 – The correct citation is Plaintiff Dep. 335:6-9. The fact is not disputed.

## II. Legal Analysis

### A. TPPA

Plaintiff's TPPA claim is beyond redemption. Plaintiff has not pointed to any activity that he believed was illegal. In fact, he has no idea if any of Ramsey's COVID response was illegal. In response to the Motion for Summary Judgment, Plaintiff submitted an unauthenticated press release from the Williamson County Government dated July 6, 2020 (Doc. # 125 - Exhibit D). Defendant is at a loss as to why Plaintiff attempts to rely on this local ordinance requiring masks in "commercial business establishments," a definition that does not include Lampo's facility. Even if it did, it was issued on July 6, 2020, *nearly four (4) months after* Plaintiff claims he "complained" about Lampo's alleged illegal activity. Plaintiff acknowledges in his Response that he must "identify the law and policy that []he contends was contravened and must be able to substantiate these allegations to some degree." (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. #121), Page 11 *Citing Richmond v. Vanguard Healthcare Servs.,* LLC, No. M201402461COAR3CV, 2016 WL 373279, at *7 (Tenn. Ct. App. Jan. 29, 2016) (quoting *Gager v. River Park Hospital,* No. M2007–02470–COA–R3–CV, 2009 WL 112544, at *7 (Tenn. Ct. App. Jan.14, 2009)). Plaintiff admittedly had no reasonable cause to believe a statute or regulation had been violated.

5

Another problem with the TPPA claim is that Plaintiff did not report the not-yet-illegal conduct to anyone who could do anything about it. Plaintiff claims over and over that Dave Ramsey and the Operating Board called the shots with respect to the company's response to COVID. Yet Plaintiff never complained to them (which would not be sufficient under the TPPA). Instead, he complained to their subordinates (Lara Johnson and David DiCicco)– in other words, reporting to people who had no authority over the actual decision maker satisfies the reporting requirement of the TPPA, according to Plaintiff.

Plaintiff attempts to argue pretext but instead, he simply argues that he does not think that disagreeing with his superior should result in termination. Plaintiff does not get to supersede the business judgment of his superior. Perhaps even more importantly, Plaintiff admits that he and Mr. LeFevre had a disagreement. Because the underlying reason for the termination of his employment is undisputed (i.e. the disagreement between Mr. LeFevre and Plaintiff), he must rely on comparator evidence to prove pretext and there simply is none. The temporal proximity argument is equally confused. Even according to Plaintiff's timeline, his termination was more than four (4) months following his "complaint" and within minutes of the disagreement with Mr. LeFevre.

B.  **Religious Discrimination**

On response, Plaintiff's religious claims in Counts II and III of the First Amended Complaint continue to evolve. Counts II and III are both labeled "Religious Discrimination" and Lampo has interpreted them as religious discrimination claims throughout the course of this case without any objection or correction from Plaintiff. Now, in an attempt to evade summary judgment, Plaintiff spuriously argues that Counts II and III have *always* asserted *four* distinct claims— (1) "reverse religious discrimination", (2) "traditional religious discrimination", (3)

"religious discrimination – retaliation", and (4) "religious discrimination – failure to accommodate." (Doc. #121 at PageID #: 2733-2734). This is sophistry.

Title VII does not allow employers to "discriminate against any individual… because of… religion." 42 U.S.C. § 2000e-2(a). The Court has previously explained that there are two primary types of religious discrimination claims cognizable under Title VII— (1) general religious discrimination and (2) failure to accommodate. *EEOC v. Publix Super Mrkts., Inc.,* 481 F. Supp. 3d 684, 692-93 (M.D. Tenn. 2020). General religious discrimination claims spring directly from the plain language of 42 U.S.C. § 2000e-2. An employer cannot discriminate against an employee based on the employee's religious beliefs.

Religious accommodation claims emanate from 42 U.S.C. § 2000e-2 *plus* Title VII's definition of "religion", which encompasses "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

"Reverse religious discrimination" is just a handy reference for describing general religious discrimination that occurs under a particular set of facts, not an independent legal claim on par with general religious discrimination or failure to accommodate. Reverse religious discrimination occurs when an employer discriminates against an employee for not adhering to the employer's religious beliefs, as opposed to discriminating against the employee based on their religious beliefs. Which ultimately seems like a distinction without a difference given that the employees' religious beliefs (including the lack thereof) is the central issue in both scenarios. *See, e.g., O'Connor v. Lampo Group, LLC*, 2021 WL 4942869 at *4 (M.D. Tenn. Oct. 22, 2021) ("These concepts tend to run together."). And, indeed, reverse religious discrimination claims are

7

analyzed like general religious discrimination claims, although courts may slightly modify the prima facie elements. *See, e.g., Equal Employment Opportunity Commission v. United Health Programs of America, Inc.,* 213 F. Supp. 3d 377, 405 FN19 (E.D.N.Y. 2016).

Retaliation, by contrast, is an entirely different claim under Title VII separate and distinct from religious discrimination. 42 U.S.C. § 2000e-3.

### 1. "Traditional Religious Discrimination"

We interpret Plaintiff's "traditional religious discrimination" claim as a general religious discrimination claim.

To the extent not already abandoned by Plaintiff in his responses to Lampo's motions to dismiss, Lampo's Motion for Summary Judgment contends that Plaintiff cannot establish the first or fourth prima facie prongs of a general religious discrimination claim under Title VII. On response, Plaintiff addresses the fourth prong—replacement by a person outside the protected class or treated differently than similarly situated employees—by referring the Court to the *pretext* argument that he made in support of his TPPA claim. (Doc. #121 at PageID #: 2740). In another effort to decipher Plaintiff's positions in this case, he appears to be relying on the comparator identified in support of his TPPA claim to also satisfy the comparator requirements of the fourth prima facie prong of his general religious discrimination claim. If so, the problem is that his TPPA pretext argument does not identify a similarly situated employee of Lampo who engaged in the same conduct—the insubordination he displayed towards Mr. LeFevre—and was not terminated. In fact, he does not identify any similarly situated employee who engaged in that kind of conduct at all.

8

Case 3:21-cv-00923    Document 131    Filed 09/15/23    Page 8 of 12 PageID #: 4319

Moreover, Lampo's Motion for Summary Judgment also contends that Plaintiff cannot establish pretext in support of his general religious claim under Title VII. Plaintiff does not address that argument at all on response.

### 2. "Religious Discrimination – Failure to Accommodate"

On response, Plaintiff contends that he has not abandoned his religious accommodation claim. (Doc. #121 at PageID #: 2741). While there seems to be very little practical distinction between general religious discrimination and religious accommodation claims premised upon Plaintiff's allegations in this case, the fact remains that Plaintiff denied ever wanting or requesting a religious accommodation from Lampo. (Doc. #114 at FN6 PageID #: 2668). It is axiomatic that an employee who neither requested nor wanted religious accommodation cannot maintain a failure to accommodate clam under Title VII.

### 3. "Religious Discrimination – Retaliation"

On response, Plaintiff raises a Title VII retaliation claim for the first time. Plaintiff feebly claims that he has asserted Title VII retaliation the entire time by referencing two uses of the word "retaliated" in Paragraphs 335 and 349 of Plaintiff's First Amended Complaint, located within Counts II and III entitled "Religious Discrimination", that contain no additional facts capable of supporting an actual retaliation claim. Moreover, Plaintiff's retaliation argument on response is premised upon the legal standard for a religious accommodation claim, not a retaliation claim.

### 4. "Reverse Religious Discrimination"

Like the retaliation claim, Plaintiff's "reverse religious discrimination" claim appears to have been tacked onto his response last-minute in a desperate attempt to avoid summary judgment. Plaintiff points to Paragraphs 337 and 351 of the First Amended Complaint, claiming

9

Case 3:21-cv-00923    Document 131    Filed 09/15/23    Page 9 of 12 PageID #: 4320

that his assertion of a reverse religious discrimination claim "could not have been more explicit." (Doc. #121 at PageID #: 2733). However, Lampo fairly interpreted those two paragraphs as part and parcel of Plaintiff's general religious discrimination and/or religious accommodation claim(s)—the only Title VII claims that *either party* referenced or discussed prior to summary judgment.

Nevertheless, to the extent asserted by Plaintiff, somehow separately from any other Title VII claims, and not abandoned in his responses to Lampo's motions to dismiss, this claim fails for the same reasons as Plaintiff's general religious discrimination claim.

### C. Fraud/Promissory Estoppel/Deceptive Practices

Plaintiff's Fraud, Promissory Estoppel and Deceptive Practices claims all hinge on six (6) statements that were true (except in Plaintiff's opinion). All of the statements were made by employees of Defendant, some of whom are not identified with any particularity. Nevertheless, there is no indication that any of the people who made the statements intentionally lied.

Ironically, Plaintiff creates false or deceptive "facts" to try to survive summary judgment on these claims. The claims have at best morphed and at worst completely changed. For example, Plaintiff claims that he was told that he would never have to work overtime. He then claims that one of the supervisors, David DiCicco, confirmed in his deposition that "employees have been asked to work after five if they were trying to hit a deadline." (Doc. #121, p.31 (citing DiCicco Dep. 60:25-61:4). Plaintiff conveniently left out the very next line in Mr. DiCicco's deposition:

> Q. Do you recall any specific instance of that?
> A. Not with Brad, no.

(DiCicco Dep. 61:5-6). Plaintiff also claims that he "did not independently seek employment with Defendant" (Doc. #121, p. 34) which is blatantly false and contradicts his admission that he sought employment at Lampo multiple times and was rejected before being hired in 2019. (Doc. #122,

10

No. 6). Plaintiff also claims that he was promised a "strict 40-hour work week" (Doc. #121, p. 35) – Plaintiff does not, however, claim that he worked more than 40 hours. Plaintiff's summation of his argument with respect to these claims involving deceit is perhaps the most telling of all: "Here, the promises were clear and unambiguous, and Mr. Amos relied on them to his detriment when Defendant terminated him in response to his complaints about the promises being false." (Doc. #121, pp. 35-36). Now, for the first time, Plaintiff claims his termination was for complaining about promises made to him in the hiring process. We thought this whole time the "detrimental reliance" was moving from California to Tennessee. Plaintiff cannot survive summary judgment by forcing the Defendant and the Court to play whack-a-mole with new allegations and claims that pop up when the old ones are proven wrong or inadequate.

Respectfully submitted,

/s/Leslie Goff Sanders
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street, Suite 2603
Nashville, TN 37203
Telephone: (615) 340-6790
Fax: (615) 238-6762
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on September 15, 2023, I filed the foregoing via the Court's electronic filing system, which will automatically notify and send a copy of the filing to:

Jonathan A. Street
Lauren J. Irwin
Brandon G. Hall
Cullen D. Hamelin
THE EMPLOYMENT AND CONSUMER LAW GROUP

*Attorneys for Plaintiff*

/s/Leslie Goff Sanders
Leslie Goff Sanders (TN #18973)
*Attorney for Defendants*