**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRAD AMOS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:21-cv-00923** |
| | ) | |
| **THE LAMPO GROUP, LLC d/b/a RAMSEY** | ) | **Judge Eli J. Richardson** |
| **SOLUTIONS and DAVE RAMSEY,** | ) | **Magistrate Judge Barbara D. Holmes** |
| | ) | |
| **Defendants.** | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND RELATED NON-TAXABLE EXPENSES**

Jonathan A. Street, counsel for Plaintiff Brad Amos ("Mr. Amos" or "Plaintiff"), responds to Defendants The Lampo Group, LLC d/b/a Ramsey Solutions ("Lampo") and Dave Ramsey's ("Mr. Ramsey") (collectively, "Defendants") Motion for Attorney's Fees and Related Non-Taxable Expenses [Doc. 142] as follows:

**INTRODUCTION**

On 12 January 2024, Defendants filed their Motion for Attorney's Fees and Related Non-Taxable Expenses [Doc. 142] and a Memorandum of Law in Support [Doc. 143]. This Motion is premature as the case is pending appeal in the United States Court of Appeals for the Sixth Circuit. Therefore, Defendants' Motion should be stayed or deferred until the appeal is resolved. Alternatively, the Court should deny the Motion without prejudice. Further, Defendants' Motion should be stricken for failure to comply with Local Rule 7.01 as set out in Plaintiff's Motion to Strike Defendants' Motion for Attorney's Fees and Related Non-Taxable Expenses [Doc. 144].

## FACTUAL BACKGROUND

This case was initially filed in the Chancery Court of Williamson County, Tennessee on 15 April 2021. In response, Defendants filed separate Motions to Dismiss which were scheduled to be heard on 24 August 2021.[1] Despite Defendants' indications to the contrary, Plaintiff sent counsel for Defendants a copy of the Notice of Nonsuit he was planning to file, stating he had requested his Right to Sue from the EEOC and was going to file a lawsuit in federal court based on the same facts and claims so that one judge could determine all the claims. Counsel for Defendants told Plaintiff's counsel he appreciated Plaintiff's counsel letting him know.[2]

Once the case was filed in federal court, Defendants sent Plaintiff a Rule 11 letter; however, after spending more than 20 hours researching relevant case law,[3] Defendants eventually decided there was no basis for a Rule 11 violation and the threatened Motion was never filed. On 11 February 2022, Defendants filed substantially the same Motion to Dismiss [Doc. 12] they had filed in state court. After discussions with Defendants, Plaintiff—in a good faith effort to resolve the dispute—filed an Amended Complaint [Doc. 21] striking one of the claims with which Defendants took issue. Defendants then filed a second Motion to Dismiss [Doc. 28] based on the operative Amended Complaint per the Court's 7 March 2022 Order [Doc. 25].

Once the parties commenced discovery in this matter, Magistrate Judge Holmes ruled that discovery would not be stayed during the Court's consideration of the Motions to

---

[1] *See* Collective Exhibit B to Defendants' Memorandum of Law in Support of Motion for Attorney's Fees and Related Non-Taxable Expenses.
[2] Attached as Exhibit 1.
[3] *See* Exhibit D to Defendants' Motion for Attorney's Fees and Related Non-Taxable Expenses.

2

Dismiss pursuant to Local Rule 16.01(g). This was not taken well by Defendants. As stated in their Memorandum in Support:

> This problem is particularly acute in employment-related cases where the legal regime favors plaintiff-employees via contingency arrangements, plaintiff-friendly fee-shifting statutes, and an inherently lighter discovery burden for plaintiffs than defendants who tend to possess the bulk of information, documents, and witnesses. Also, employment cases are often insured through employment practices liability insurance policies that contain coverage caps and hammer clauses limiting defendants' ability to fully control their cases. In defense counsel's experience, EPLI carriers are often transactional and rarely interested in defending cases on principle regardless of their merits.

(Doc. 143, PageID# 4481 at footnote no. 10).

As is apparent from their brief, Mr. Ramsey does not feel these rules are fair and that many people file lawsuits as an "extortion money grab."[4] In their view, Defendants are free to practice aggressively as a matter of principle. Consequently, it is unreasonable for Defendants to seek sanctions where their own tactics multiplied the proceedings.

### A. Defendants' Actions during Discovery

Defendants took a stubborn approach to discovery. On the other hand, Plaintiff's counsel sought to be reasonably agreeable during discovery. For example, Plaintiff worked with Defendants to enter an agreed protective order [Doc. 40] in this matter.

Plaintiff sent Mr. Ramsey one set of Requests for Production of Documents consisting of 14 requests, to which Mr. Ramsey initially provided no documents in response.[5] Plaintiff sent one set of Interrogatories and two sets of Requests for Production of Documents to

---

[4] Excerpt from the 21 June 2023 Deposition of Dave Ramsey (p. 245, ll. 10-21) attached as Exhibit 2.
[5] Mr. Ramsey responded to the requests initially claiming, among other things, that certain documents were protected by the "spousal privilege." When Plaintiff told Mr. Ramsey he was considering deposing Mr. Ramsey's spouse, Mr. Ramsey withdrew the objection and Plaintiff did not attempt to depose Mrs. Ramsey to

Defendant Lampo, to which responses were provided. The parties encountered disputes with the original set of discovery and requested a conference with Magistrate Judge Holmes. The parties filed a "joint discovery statement" [Doc. 61] and on 23 January 2023, a telephonic discovery conference was held with Magistrate Judge Holmes.

Judge Holmes ruled [Doc. 67] as follows:

- Defendants were directed to provide supplemental responses removing objections based on claims of privilege.
- For future discovery responses based on privilege, Defendants were directed to provide a privilege log.
- Defendants must produce any litigation hold letter(s) related to this litigation.
- Defendants must provide supplemental sworn interrogatory answers.
- Mr. Ramsey must provide supplemental sworn answers to discovery to expressly state as to appropriate requests that he has no documents or information in his possession beyond that provided by Lampo.
- Defendants must produce a full copy of all emails and documents found in Plaintiff's email box from his employment with Ramsey Solutions.
- By no later than seven days from the date of the order, the parties must file a joint motion to set deadlines for the supplemental discovery responses required and for the filing by Plaintiff of a motion to compel. [Doc. 67].
- Judge Holmes denied Defendants' Motion for a Protective Order to prevent Plaintiff from taking the deposition of Mr. Ramsey [Doc. 66].

Defendant Lampo's supplemental responses remained deficient, and on 22 February 2023, Plaintiff filed a motion to compel Defendant Lampo to (1) supplement responses to 15 requests for production and (2) undertake a "second deposition" of its Rule 30(b)(6) witness. Plaintiff was successful and the Court ordered Defendant Lampo to supplement responses to all 15 requests. [Doc. 82]. Further, the Court directed the parties to comply with the local rules and make a good faith attempt to resolve any issues with Plaintiff deposing Lampo's Rule 30(b)(6) representative. The parties were able to resolve the issue regarding the Rule 30(b)(6) witness.

4

Even after this initial discovery dispute, Defendants remained obstinate in discovery and refused to comply with the Court's order, eventually leading to Plaintiff filing a Motion for Sanctions on 2 April 2023. [Doc. 83]. The Court granted in part and denied in part the Motion for Sanctions on 27 April 2023, directing Defendants to supplement their deficient discovery responses and denying sanctions without prejudice to reconsideration. [Doc. 97].

The Court ordered Defendants to comply with the previous order of the Court but refused to award Plaintiff his fees for bringing the Motion [Doc. 97]. Plaintiff did not appeal this order even though FRCP 37 states that a party in violation of Rule 37 SHALL pay attorney fees. This was an attempt to "turn the heat down" in the litigation as suggested by the Magistrate Judge to both parties on more than one occasion. Plaintiff had a right to appeal this Order; however, they did not do so in a good faith attempt to move the matter along. *See Valhalla Inv. Properties, LLC v. 502, LLC*, No. 3:19-CV-00318, 2021 WL 1174593, at *2 (M.D. Tenn. Mar. 29, 2021) (When parties engage in overtly adversarial litigation, the sanction of fees under § 1927 is not warranted).

Defendants rely on Plaintiff's denial of their offer to walk away at mediation as an example of how Plaintiff vexatiously amplified this litigation. Plaintiff takes exception to this assertion as no action on the part of Plaintiff's counsel could be viewed as vexatious. Further, Plaintiff takes exception to Defendants' brief claiming Plaintiff "misrepresented" to the Court he had legitimate claims. [Doc. 143, p. 6]. They also claim that Plaintiff has not alleged any "actual or truthful" facts in support of his claims. [Doc. 143, p. 7]. There is no order or finding by the Court that Plaintiff misrepresented facts or presented false information in any filing.

## I.    DEFENDANTS SHOULD NOT BE AWARDED FEES UNDER 28 U.S.C. § 1927

As an initial matter, the party seeking attorneys' fees bears the burden of demonstrating entitlement to the award. *Southall v. USF Holland, Inc.*, No. 3:15-CV-01266, 2021 WL 1397221, at *2 (M.D. Tenn. Feb. 10, 2021). Though they have requested fees pursuant to 28 U.S.C. § 1927, Defendants have not established entitlement thereto. Despite their contentions, Defendants fail to identify any legitimate basis for the imposition of fees under 28 U.S.C. § 1927. In its entirety, the relevant statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927 (West). Regardless of Defendants' belief that section 1927 is a catch-all provision, the statute's plain language establishes it is not. *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997). Rather, the statute enumerates three requirements that movants must strictly satisfy before sanctions may be imposed. *Id.* at 1395-96; *U.S. v. Ross*, 535 F.2d 346, 350 (6th Cir. 1976). The requisite statutory elements are:

1) The subject attorney must engage in conduct that is unreasonable ***and*** vexatious.
2) The aforementioned behavior must result in a multiplication of the proceedings. *see Peterson* at 124 F.3d at 1396 (noting that "there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings . . . even 'unreasonable and vexatious' conduct . . . is not sanctionable unless it results in proceedings that would not have been conducted otherwise.")
3) The amount of the requested sanctions must be directly linked to the ***excess*** costs, expenses, and fees incurred because of the subject attorney's conduct.

28 U.S.C.A. §1927 (West); *Peterson,* 124 F. 3d at 1396. As a caveat to the final element, the alleged costs be reasonable.

6

Given the penal nature of section 1927, the threshold for its imposition is lofty. In *U.S. v. Ross*, the Sixth Circuit noted that, in enacting section 1927, the legislature intended to sanction conduct "more culpable" than negligence or discourtesy. *Ross,* 535 F.2d at 349. Such behavior lacks justification ***and*** is intended to harass. *Id.* Thus, the Sixth Circuit ruled that an attorney should not be personally responsible unless their conduct marks an intentional departure from the proper conduct*. Id.* At a minimum, the court explained, sanctionable actions must demonstrate a "reckless disregard of the duty owed by counsel to the court." *Id.* In overturning the imposition of fees against an attorney, the *Ross* court characterized proscribed conduct as "a serious and studied disregard for the orderly processes of justice . . . ." *Id.* at 351. This Court has similarly noted that section 1927 sanctions require a showing of conduct that "falls short of the obligations owed by a member of the bar to the court and which . . . cause[] additional expense to the opposing party." *Southall,* No. 3:15-CV-01266, 2021 WL 1397221, at 6 (citing *Kilgore v. Hunter*, No. 1:16-cv-340, 2018 WL 6613820, at *4 (E.D. Tenn. Nov. 27, 2018)). In view of the law pertaining to sanctions imposed upon counsel pursuant to section 1927, it is clear that 1) Defendants have failed to meet their burden of establishing entitlement to sanctions, and 2) section 1927 sanctions are inappropriate in this case.

Indeed, Defendants have failed to identify ***any*** behavior on the part of Plaintiff's counsel that could be characterized as unreasonable and vexatious. While that fact alone invalidates their argument (*see Tokio Marine Specialty Ins. Co. v. Billiards & Brews, LLC*, No. 3:22-CV-319-TAV-JEM, 2024 WL 150613, at *2 (E.D. Tenn. Jan. 12, 2024) (finding that a motion for section 1927 sanctions failed on its merits where defendants had not demonstrated any conduct by opposing counsel that warranted sanctions)), Defendants

have further failed to explain how counsel's behavior resulted in a multiplication of proceedings. Finally, Defendants have failed to identify the excess costs that they suggest were caused by counsel for Plaintiff's improper conduct. *See, e.g., Piljan v. Mich. Dept. of Social Services*, 585 F. Supp. 1579, 1583 (E.D. Mich. 1984) (denying the imposition of fees against counsel where the defendants never suggested that plaintiff's counsel deliberately delayed its progress or set out the excess costs that they believed were caused by plaintiff's counsels' improper conduct).

### A. PLAINTIFF'S COUNSEL WAS NOT VEXATIOUS

In their Motion, Defendants have not alleged that counsel's actions rose to the level of vexatiousness or harassment. Rather, they take the position that Plaintiff should have acquiesced to their demand that his allegations be dropped. Defendants do not argue, nor can it be inferred, that counsel's advocacy on behalf of Mr. Amos breached "the Canons of Ethics" applicable to the practice of law. (*See Ross*, 535 F.2d at 350 citing *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968)). Moreover, they have not asserted that the suit was filed for an improper purpose.

The tremendous height of the threshold for imposing section 1927 fees is apparent in *Parrish v. Bennett*, No. 3:20-CV-275, 2020 WL 7641185 (M.D. Tenn. Dec. 23, 2020). In *Parrish*, this Court imposed fees against an attorney pursuant to its inherent power and 28 U.S.C. § 1927. *Id.* There, the sanctioned attorney filed suit in federal court, knowing it was subject to dismissal.[6] When challenged, the attorney made no attempt to argue that his claims were not frivolous. *Id.* at *4. Rather, he admitted that he had filed the lawsuit in an attempt to force a

---

[6] The *Parrish* court noted that attempt to use a similar strategy in litigating prior cases and that in at least one prior case, the claims had been dismissed with prejudice pursuant to the *Rooker-Feldman* doctrine.

settlement. *Id.* This Court noted that his admission elucidated the impropriety of his actions because the intentional filing of a baseless claim, hoping to force a settlement, is improper. *Id.* This, however, was not the extent of the Court's reasoning for sanctioning attorney Parrish. This Court further found that his attacks against his opponent in his filings went "beyond the bounds of zealous advocacy," becoming "prejudicial to the administration of justice." *Id.* at *5. Moreover, this Court noted that Attorney Parrish had previously been sanctioned for the same behavior. *Id.* Thus, the behavior that rose to the level of sanctionable under § 1927 consisted of the filing of a knowingly baseless lawsuit, for the purpose of harassing the opposing party and forcing a settlement, after having been sanctioned for the same behavior by the state Bar. *Id.* at *4–5. Additionally, Parrish filed "a string of unsuccessful state court appeals and dilatory motions related to the same suit." *Id.* at *4.

As the party with the burden, Defendants must raise more than bald allegations memorializing their disagreement with the course of litigation. *See, e.g., Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-CV-2766-JPM-TMP, 2023 WL 5826978 (W.D. Tenn. Sept. 8, 2023) at *8 (finding that defendants failed to show that plaintiff's counsel "specifically . . . engaged in conduct that resulted in additional expense to [d]efendant . . . ." thus warranting sanctions). Absent some showing that Plaintiff's counsel's actions constitute a "serious and studied disregard for orderly process," Defendants' argument for sanctions under 28 U.S.C. § 1927 falls far short of its mark. *Id.; see also, Piljan,* 585 F. Supp. at 1583 (finding that fees under § 1927 were not appropriate where defendant's counsel never suggested that plaintiff's counsel were deliberately delaying its progress or that litigation was conducted in an abusive manner).

## B. PLAINTIFF'S COUNSEL WAS NOT UNREASONABLE IN BRINGING THIS SUIT

Aside from the absence of any allegation that Plaintiff's counsel conducted himself in an abusive or obstructionist manner, or so as to demonstrate "serious and studied disregard for orderly process," the record establishes that counsel's actions were objectively reasonable. Thus, while the lack of evidence or allegation that counsel's actions were vexatious should end the inquiry, Defendants' claim for sanctions is further undermined by the facts below.

Defendants assert that Plaintiff's counsel was unreasonable because the case was dismissed. However, a dismissal does not render a suit frivolous, nor an attorney's actions in filing it unreasonable. In *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, the United States Supreme Court cautioned district courts against using "hindsight logic" to determine whether a case is frivolous, unreasonable, or without foundation. 434 U.S. 412, 421–22 (1978). To do so would prevent plaintiffs seeking justice and equity from bringing meritorious claims for fear of being penalized. As the *Christiansburg* Court illustrated:

> No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* Accordingly, the *Christiansburg* Court decided that "[a] [c]ourt's ultimate determination that a claim is not legally sufficient to be presented to a jury does not, alone, warrant sanctions. *Id.* It should be noted that the section 1927 standard is even more demanding than that which was analyzed in *Christiansburg*. *See, e.g., F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994) (noting that section 1927 punishments should be "sparingly applied. . . .");

*Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985) (recognizing the potential for abuse if section 1927 is not narrowly applied with great caution) (citing *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)); *and see Piljan,* 585 F. Supp. at 1583 (imposing Title VII fees against the plaintiff but not his attorney). That being said, Title VII jurisprudence provides insight as to why Plaintiff's counsel's actions were not unreasonable and why Defendants are not entitled to fees under section 1927.

When evaluating whether a suit is frivolous, the Sixth Circuit considers:

> whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the Christiansburg guidelines, and whether the record would support such a finding.

*Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 636 (6th Cir. 2009). In this context, "[e]ven a plaintiff's failure to state a prima facie case is not dispositive." *Russ v. Memphis Light, Gas & Water Div.*, No. 14-02365, 2017 WL 2539803, at *3 (W.D. Tenn. June 12, 2017) (citing *Garner*, 554 F.3d at 637). In *Blocker v. Mapco, Inc.*, the Middle District of Tennessee ruled that a plaintiff whose claim was barred by the statute of limitations did not bring a frivolous claim and did not have to pay attorney's fees to the prevailing defendant. No. 3:04-0401, 2006 WL 2222701, at *2 (M.D. Tenn. Aug. 2, 2006). In *Blocker*, the defendant argued that the plaintiff should have known that the plaintiff's claim was frivolous when the trial judge accepted a recommendation that the plaintiff's case be dismissed by a magistrate judge. *Id.* The Court disagreed, however, holding that the plaintiff had a right to appeal the district court's decision to the Sixth Circuit Court of Appeals. *Id.* Even after the plaintiff's claim was rejected by the Sixth Circuit, the magistrate judge deciding the defendant's Motion for Attorney's Fees could not "[c]onclude either that Plaintiff's claim 'was frivolous, unreasonable or without

foundation,' or that 'the Plaintiff continued to litigate after [his] claim clearly became frivolous, unreasonable or without foundation.'" *Id.*

While this Court ultimately dismissed Plaintiff's case, it does not follow that his claims were frivolous. As the Supreme Court highlighted in *Christiansburg*, the course of litigation is unpredictable, and a party may have entirely reasonable grounds for bringing a lawsuit— that is the case here.

In his Amended Complaint, Mr. Amos moved himself and his family across the country for his position with Lampo. [Doc. 21, ¶¶ 118, 209, 302, 374]. In doing so, Mr. Amos took a significant pay decrease for his position with Lampo. (*Id.* at ¶¶ 17, 51, 52, 214, 302, 305). Mr. Amos made significant personal and professional sacrifices for his position with Lampo (*Id.* at ¶¶ 17, 51, 52, 302). In the midst of an unprecedented pandemic, Mr. Amos was terminated with little warning or reason. (*Id.* at ¶¶ 121-130, 319-323). It is only natural that Mr. Amos would be upset with this turn of events. Based on Plaintiff's recitation of these facts to Plaintiff's counsel and his preliminary investigation into possible claims, it was reasonable for Plaintiff's counsel to bring such claims against Defendants on behalf of Plaintiff.

When Plaintiff's counsel was approached by Mr. Amos, the outcome of the lawsuit was unpredictable, as the COVID-19 regulations on which Mr. Amos's case relied were novel. Ultimately, Plaintiff believed that he had been wronged and was the victim of discrimination. In view of the facts, and for the reasons set out below, Plaintiff's claims were not without foundation. Plaintiff had a good faith belief that he had been illegally fired from his position with Lampo. Plaintiff's counsel likewise had a good faith belief that the claims asserted in Plaintiff's lawsuit would succeed.

### 1) TPPA

The TPPA, Tennessee Code Annotated § 50-1-304, states that "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). If an employee is terminated "in violation of subsection (b)," that employee "shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled." *Id.* at § (c)(1). "Illegal activities" is defined by the statute as "activities that are in violation of the criminal or civil code of this state or the United States or ***any regulation intended to protect the public health, safety, or welfare***." *Id.* at § (3)(a) (emphasis added).

Given the immense uncertainty surrounding the global pandemic, the appropriate response, and the changing legal landscape at the time, it was entirely reasonable that Mr. Amos would seek the Court's intervention when it appeared that he had been wrongfully terminated. Therefore, it was equally reasonable for Plaintiff's counsel to assert this cause of action based on Plaintiff's belief that Lampo's disregard of Governor Lee's Executive Orders and the CDC recommendations were illegal. Even though the Court ended up disagreeing with Plaintiff's counsel's interpretation, there was a reasonable basis for Plaintiff's counsel to assert the TPPA claim.

For example, 29 U.S.C. § 654 requires that employers provide "employment and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm." 29 U.S.C.A. § 654(a)(1). During the coronavirus pandemic, COVID-19 was a universally recognized hazard to human health, causing death and physical harm to many of the infected. By requiring their employees' physical presence at work, while discouraging COVID-19 countermeasures, Defendants failed to provide their

13

employees a place of employment free from recognized hazards. In this sense, Defendants' actions could reasonably constitute an "illegal activity" under the TPPA. Accordingly, Plaintiff's claim was not inherently unreasonable.

### 2) Title VII

Title VII makes it unlawful to discriminate against an employee on the basis of religion. *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 692 (M.D. Tenn. 2020) (citations omitted); *see e.g.*, *Jordan Matthews Nissan, Inc.*, F. Supp. 3d 848, 862 (M.D. Tenn. 2021). As the Court stated in its Order [Doc. 137], to survive Defendants' Motion to Dismiss a religious discrimination claim under Title VII and the THRA, Plaintiff's counsel needed to "plausibly allege (1) a sincerely held belief; (2) that is 'religious'; (3) that conflicts with Lampo's requirement that Plaintiff forego his desired COVID countermeasures." (*Ibid.*).

That the Court ultimately held that Plaintiff's counsel did not plausibly allege those factors does not mean that Plaintiff's counsel asserted these arguments without any foundation. Plaintiff alleged that wearing a mask, following COVID countermeasures, and protecting his family and community are his sincerely held religious beliefs. The fact that the Court would not accept Plaintiff's beliefs in the context of Title VII is an outcome that could only be revealed through litigation. Moreover, given the unprecedented nature of the time and circumstances through which the matter arose, the status of the applicable law could hardly be deemed well settled.

The fact that his argument was unpersuasive to the Court does not imply that Plaintiff's counsel asserted it frivolously or unreasonably. Religion is deeply personal, and while case law may serve as a guidepost to what a court may deem truly "religious," there is

no criterion as to religiosity in the law. As for Plaintiff's beliefs conflicting with Lampo's work requirements, counsel asserted such in Plaintiff's Complaint and Amended Complaint. Again, the fact that the Court found Plaintiff's argument unconvincing does not mean that the claim was unfounded. There was no case law regarding COVID-19 countermeasures and COVID-19 recommendations in this context. Based on its novelty alone, it cannot be said that the allegations in Plaintiff's complaint were frivolous.

Moreover, Plaintiff's reverse religious discrimination claim sounds in an unsettled area of law. *Compare Pereira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (Utilizing what has become the minority approach to evaluate a reverse religious discrimination claim; the court left open the possibility that a claim could be brought where a Plaintiff makes a claim that an employer's policy is based on a religious belief the Plaintiff rejects); *with Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169-69 (9th Cir. 2007) (Plaintiff succeeded on a "reverse religious discrimination" claim by making a showing that she experienced an adverse employment action because she did not follow her employer's promoted religious beliefs). Since the law surrounding reverse discrimination remains splintered in the United States, Plaintiff could reasonably assert such a claim with a good faith belief in its merits.

### 3) Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101

As the Court noted in its Order [Doc. 137], "the analysis for a Title VII claim is the same as the analysis for a claim under the THRA alleging the same kind of discrimination as the Title VII claim." Therefore, for the same reasons Plaintiff's Title VII claim is not frivolous, Plaintiff's THRA claim is also not frivolous. Plaintiff's counsel did not unreasonably assert either claim.

15

### 4) Fraud

Tennessee law views the terms *intentional misrepresentation*, *fraudulent misrepresentation,* and *fraud* synonymously. A claim under these terms has the following elements:

> (1) defendant made representation of an existing past fact; (2) representation was false when made; (3) representation was in regard to a material fact; (4) false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of misrepresentation.

*Evans v. Walgreen Co.*, 813 F. Supp. 897, 933 (W.D. Tenn. 2011), aff'd, 559 F. App'x 508 (6th Cir. 2014). In the Amended Complaint, Plaintiff's counsel asserted that Lampo represented to Plaintiff that:

a) Plaintiff would edit features and help create [Lampo's] new film department;
b) Defendant Lampo was not "cult-like" in the way they operated;
c) Defendant Lampo operated a "drama free" workplace;
d) Defendant Ramsey stated Lampo had been voted "best place to work" for over 10 years in a row by employees without interference from management; Defendant Lampo reassured Plaintiff this statement was true during the interview process; and
e) Defendant Lampo was family friendly and would allow Plaintiff to spend time with his family without interference from Defendants.

[Doc. 21, ¶ 357]. Plaintiff's counsel also asserted that Lampo knowingly made these false representations; that these facts were material to Plaintiff's decision to work at Lampo; that Plaintiff reasonably relied on these facts; and that Plaintiff suffered damages because of the knowingly false representations. (*Id.* at ¶¶ 356-66).

Based on the assertions made by Plaintiff's counsel in the Amended Complaint, it is reasonable that Plaintiff's counsel believed these assertions amounted to fraud under Tennessee law. The Court found that these factual assertions fell short of the FRCP Rule 9(b)

pleading standard required for fraud claims [Doc. 137]. Just because the Court held that these assertions were not "plead with particularity" as is required by FRCP Rule 9(b) does not mean they were asserted unreasonably or without foundation. As provided in paragraphs 356-366 of the Amended Complaint, there was a basis upon which Plaintiff's counsel asserted this claim and, therefore, it is not frivolous.

### 5) Promissory Estoppel

Under the doctrine of promissory estoppel, "a promise made by a promisor that reasonably may be expected to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise." *Wilson v. Price*, 195 S.W.3d 661, 669-70 (Tenn. Ct. App. 2005) (citing *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999)). A party asserting a claim of promissory estoppel must "show that a promise was made and that [the party] reasonably relied on the promise to [the party's] detriment." *Wilson*, 195 S.W.3d at 669-70 (citing *Calabro*, 15 S.W.3d at 879). Plaintiff asserted a claim of promissory estoppel against Mr. Ramsey and Lampo, arising from his reliance on Defendants' promises about a strict 40-hour work week and allowances for family time. [Doc. 21, ¶ ¶ 368, 370].

In view of the above, the argument that Plaintiff relied on Lampo's promise that he would have a strict 40-hour work week and family time when deciding to leave his position in California to work for Lampo, was not unreasonable. It is reasonable to believe that a family-oriented person would make the financial sacrifice made by Plaintiff in order to work fewer hours and spend more time with his family. Though the Court did not find this argument convincing, sufficient justification existed in support of such claim. Accordingly, Plaintiff's counsel did not act unreasonably in alleging promissory estoppel.

### 6) Deceptive Representations and False Pretenses

Tennessee statute § 50-1-102 provides:

> It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement.

Tenn. Code Ann. § 50-1-102(a)(1). In its Order [Doc. 137], the Court held that this statute is synonymous with the claim of fraudulent inducement. As fraudulent inducement sounds in fraud, the Court held that a claim under this statute is subject to the same heightened Fed. R. Civ. P. 9(b) pleading standards as the above two claims. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). The Court again held that Plaintiff's counsel did not plead this claim with particularity and, therefore, it did not survive Defendants' Motions to Dismiss. But, as stated above, failing to meet a heightened pleading standard in no way reflects the lack of a reasonable basis for bringing a claim. Looking at the language of the statute, it was reasonable to assume Plaintiff's counsel could be successful with this claim. After all, it is Plaintiff's assertion that the representations of Defendants induced Plaintiff to move from California to Tennessee to work for Lampo. It is also Plaintiff's assertion that these representations were false and misleading as to the nature of the work and the Lampo workplace. Due to the lack of precedent regarding this statute, Plaintiff's counsel asserted this claim with the reasonable presumption that this claim could succeed on the facts of this lawsuit.

### C.  COUNSEL'S ACTIONS DID NOT MULTIPLY THE PROCEEDINGS

In addition to their failure to show that Plaintiff's counsel acted unreasonably and vexatiously, Defendants have failed to establish that counsel's behavior unnecessarily multiplied the proceedings. Without such a showing, Defendants cannot recover section 1927 sanctions, regardless of counsel's behavior. *Peterson*, 124 F.3d at 1396.

In support of their contention that counsel for Mr. Amos multiplied the proceedings, Defendants merely rely upon Plaintiff's unwillingness to fold once their Motions to Dismiss were filed. Alternatively, they suggest that Mr. Amos's claims should not have been raised at all. This argument is insufficient. *See Hawk*, 2023 WL 5826978 at *8 (noting that lack of merit is not a sufficient basis for the imposition of section 1927 fees); *Piljan*, 585 F. Supp. at 1583 (acknowledging that the case should not have been filed but declining to impose fees under section 1927); *and see Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) (holding that a lawyer cannot violate section 1927 simply through the commencement of an action) (internal citations omitted). While Defendants apply hindsight to argue that the claims should not have been asserted, for the reasons discussed above, counsel's actions in bringing this suit were justified.

This Court's prior judgment provides guidance as to the sanctionable multiplication of proceedings. In *Southall*, the evidence considered by this Court brings to bare the extraordinary requirements sufficient to support section 1927 sanctions against counsel for multiplying proceedings. No. 3:15-CV-01266, 2021 WL 1397221 (M.D. Tenn. Feb. 10, 2021). In that case, this Court reviewed a matter wherein a plaintiff brought suit under the Americans with Disabilities Act ("ADA"), the Tennessee Disability Act ("TDA"), the TPPA, and the Patient's Privacy Protection Act ("PPPA"), among other claims. *Id.* at *1. Incredibly, the

plaintiff filed the disability claims while maintaining that he did not actually have a disability. *Id.* at \*3–4. As outlined by the *Southall* defendants in their motion for fees, the plaintiff continued to pursue his claims after admitting that he did not have a disability, after the Court found that he did not have a disability, and after all experts, including his own, testified against him. *Id.* Additionally, this Court noted that plaintiff's counsel appealed to the Sixth Circuit, while advancing an argument that the Appellate Court could not hear his own appeal. *Id.* at 4. Moreover, despite raising the appeal, the plaintiff failed to brief four of his five issues. *Id.* In fact, the Appellate Court "found that [Southall] failed to advance any sort of argument for the reversal of the district court." *Id.* (quoting *Southall v. USF Holland, Inc.,* 794 F. App'x 479, 482, 2019 WL 6605754 (6th Cir. 2019)).

In determining that Mr. Southall's counsel had unreasonably and intentionally delayed and expanded the proceedings, this Court acknowledged the above facts and noted that Mr. Southall's attorney further multiplied proceedings by filing a "whirlwind" of redundant, frivolous, and "ancillary, petty motions and 'supplemental' material," misleading the Court on several occasions, and failing to obey the Court's order regarding the production of EEOC communications. *Id.* at \*7–8. Counsel further pursued a claim that she should have known was preempted by statute, negated by her own client's testimony, and contradicted by all involved experts. *Id.* at \*7. She also attempted to change her client's deposition by submitting errata sheets with major substantive changes, then challenged the Court's denial of the changes. *Id.*

Here, Defendants seek nearly 24 months of fees, predominantly relating to their engagement in discovery. Indeed, Defendants have asserted that at least 70% of their costs were spent during the discovery process. [Doc. 143, p. 18]. This process, they admit, was

required under Local Rule 16.01(g), despite the fact that a Motion to Dismiss was pending. (*Id.* at p. 11). In support of their Motion, Defendants merely rely upon Plaintiff's unwillingness to fold once they sought dismissal. Beyond arguing that Plaintiff's case should not have been filed, Defendants fail to demonstrate how Plaintiff's counsel's behavior multiplied the proceedings beyond what would have occurred anyway (i.e., discovery). Such a showing is required before section 1927 sanctions may be imposed. *See Peterson*, 124 F.3d at 1396 ("even unreasonable and vexatious conduct—is ***not sanctionable unless it results in proceedings that would not have been conducted otherwise***.") (emphasis added) (internal quotation marks omitted); *Hawk*, 2023 WL 5826978 at \*8 (requiring a showing that counsel's conduct resulted in ***additional expense*** to Defendant) (emphasis added).

Since—by Local Rule—discovery would still have been necessary, and there is no evidence that it would have been less costly, Defendants have not shown that Plaintiff's counsel's actions multiplied the proceedings. *See Peterson* 124 F.3d 1386 at 1397 (reversing the award of section 1927 sanctions where proceedings would have been necessary regardless of counsel's actions and evidence did not indicate it would have been less costly). Moreover, any unnecessary multiplication of the discovery proceedings was a result of Defendants' dilatory actions and unwillingness to comply with Magistrate Judge Holmes's orders. Plaintiff concedes that discovery in this matter was hard fought. This, however, was a result of Defendants' numerous attempts to stonewall its opposition and disregard for the orders promulgated by Judge Holmes. While Defendants have not identified with specificity how Plaintiff's counsel multiplied proceedings, the record demonstrates how Defendants caused numerous unnecessary proceedings. The parties in this matter appeared before Judge Holmes on multiple occasions, each arising from Defendants' obstructionist tactics.

Without fail, Judge Holmes ruled in Plaintiff's favor. As a result of Defendants' efforts to shirk their discovery obligations, Plaintiff ultimately filed a Rule 37 motion. [Doc. 83]. This motion was granted. [Doc. 97]. Given that Plaintiff prevailed on every single discovery dispute, and that the Court granted Plaintiff's Rule 37 Motion, it seems Defendants' actions, rather than Plaintiff's, caused the unnecessary multiplication of proceedings. That being the case, as the party whose actions multiplied the proceedings, Defendants should not be able to assess the costs incurred upon Plaintiff's counsel.

## II. DEFENDANTS HAVE FAILED TO ARTICULATE A NEXUS BETWEEN THE REQUESTED SANCTIONS AND EXCESS COSTS

In requesting $389,041.50 in sanctions against Plaintiff's counsel, Defendants have failed to articulate how these costs are *excess* and attributable to Plaintiff's counsel's actions. Rather, they lump all fees into the same pot and assert that Plaintiff and his counsel are jointly and severally accountable for the entirety of their fees and costs. As the Sixth Circuit has explained, "[a]n attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997). Though Defendants have taken the position that the entirety of the federal proceedings were frivolous, they have not asserted that Plaintiff's counsel acted unreasonably, vexatiously, and for oppressive reasons. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 920, 2008 WL 515875 (6th Cir. 2008) (acknowledging a court's statutory authority to assess section 1927 fees where an attorney has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons") (quoting *Chambers*, 501 U.S. 32, 45–46, (1991)) (internal quotation marks omitted). Thus, they have failed to establish the requisite nexus among counsel's behavior, their requested sanctions, and the excess costs. *Id.* ("Before awarding attorney's fees to the prevailing party under the 'bad faith exception,' we must find that 'the claims advanced were

meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'") (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir.2002)).

### III. THE FEES REQUESTED BY DEFENDANT ARE NOT REASONABLE

Even if this Court were to find that Plaintiff's counsel acted unreasonably and vexatiously, and that he in doing so multiplied the proceedings in such a way that excess costs were incurred, the fees to which Defendants claim entitlement are unreasonable. As an initial matter, Defendants have asserted $389,041.50 in legal fees between Monday, 13 December 2021, and Tuesday, 30 November 2023. In reviewing the fees Defendants have submitted, three issues become clear with regard to their alleged fees. First, there are numerous instances where billing amounts seem unreasonably inflated based on the number of hours billed as compared to tasks undertaken. Second, on multiple occasions, several attorneys appear to spend inordinate amounts of time completing the same tasks. Finally, a significant amount of the billing resulted directly from Defendants' numerous failed attempts to obstruct the discovery process.

With respect to Defendants' billing, the following is a non-exhaustive list of unreasonable charges due to the work claimed, apparent redundancy, or seemingly inflated time entries. With regard to the Motions to Dismiss filed in this Court, Defendants claim to have spent 38 hours on the first and an additional 45.3 hours on the second. This equates to a total of $26,851.00 in charges related to Motions to Dismiss that addressed substantially the same issues as their Motions filed in state court.

Concerning inflated billing practices, Associate Stephen Stovall billed .9 hours or $225.00 for "Researching Magistrate Judge Holmes' requirements for joint status report" on

3 January 2023. Mr. Stovall also billed $75.00 on 23 February 2023, claiming that it took him 18 minutes to "[analyze] the case management order to determine the deadline for filing responses to Plaintiff's motion to compel." Similarly, on 3 March 2023 Mr. Stovall's entries reflect that it took him 24 minutes to "Analyze Court Orders to determine the timing of second [*sic*] joint status report," a task for which he charged $72.00. Perhaps most egregious, Mr. Stovall billed nearly $6,000.00 for reading a single deposition across 8 November 2022, 9 January 2023, 27 April 2023, and 1-2 May 2023. According to his time entries, it took Mr. Stovall 23.3 hours to finish reading Mr. Amos's deposition. Perhaps then, it should be no surprise that Mr. Stovall charged nearly $40,000.00 across the life of the matter for reviewing documents. While it may be the case that Mr. Stovall is a slow reader, these fees are not reasonable and should not be assessed against Plaintiff or Plaintiff's counsel.

In addition to the above, Defense counsel appears to have billed nearly $6,000.00 for preparing a Motion for Sanctions that was never filed. Similar to the above-referenced fees, it would be unreasonable to charge this against Plaintiff or Plaintiff's counsel.

As to duplicative billing, on 13 May 2022, both Leslie Sanders and Stephen Stovall appear to have billed for the same call with their client's IT department. Similarly, on 24 May 2022, both appear to have billed for a conference call with their "data team." Ms. Sanders, Ms. Aaron-Stelluto, and Mr. Stovall each billed time across 24 and 28 March 2023 for reviewing "Best Places to Work" documents. Between them, they billed 16.2 hours. On 4 April 2023, Ms. Sanders, Mr. Crowell, and Mr. Stovall billed substantial time for tasks involving reviewing and preparing documents for production, 8.7 hours, 3 hours, and 5.2 hours respectively. On 27–28 July 2023, Daniel Crowell billed 29.6 hours for drafting a motion for summary judgment. During this same period, Ms. Sanders billed 19.2 hours, and Mr. Stovall billed over 15 hours,

both for similar work. Additionally, between 14–15 September 2023, there appears to be substantial duplication of effort among Mr. Stovall, Mr. Crowell, and Ms. Sanders.

Beyond the above, Mr. Crowell and Ms. Sanders appear to have billed substantial time in their attempts to avoid engaging in the discovery process. For example, on 9 November 2022, Ms. Sanders billed 6.9 hours preparing her attempt to exclude Mr. Ramsey as a witness. She also billed for similar tasks on 17 and 29 November 2022. In January 2023, Ms. Sanders billed 10.3 hours related to their discovery disputes. In this instance, Mr. Crowell joined her, billing an additional 4.4 hours.

In the first six days of February 2023, Mr. Crowell billed 41.7 hours in furtherance of Defendants' attempts to challenge the Court's rulings on discovery. At his hourly rate, this amounted to $11,676.00 in attorney's fees.

After failing to adhere to the Court's ruling, and in response to Plaintiff's Motion to Compel [Doc. 75], Ms. Sanders and Mr. Crowell spent 11.2 hours across 28 February and 1 March 2023, preparing a responsive pleading. For this task, they billed $3,739.00.

While the above accounting is non-exhaustive, it is illustrative of the billing practices that render Defendants' alleged fees patently unreasonable.

## CONCLUSION

For these reasons, Plaintiff requests that Defendants' Motion for Attorney's Fees and Related Non-Taxable Expenses be denied.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

By: _/s/ Jason M. Pannu_____
    Jason M. Pannu, BPR No. 023816
    Katherine E. Morsman, BPR. No. 041530
    Roundabout Plaza
    1600 Division Street, Suite 590
    Nashville, Tennessee 37203
    (615) 208-5890
    jason.pannu@fmglaw.com
    katherine.morsman@fmglaw.com

    *Counsel for Jonathan A. Street*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 23rd day of February 2024, a copy of the foregoing RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND OTHER NON-TAXABLE COSTS was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access the filing through the Court's electronic filing system.

| ☐ Hand ☐ Mail ☐ Fax ☐ FedEx ☐ Email ☒ CM/ECF | Daniel C. Crowell<br>Leslie G. Sanders<br>Stephen C. Stovall<br>Barton, LLP<br>611 Commerce Street, Suite 2603<br>Nashville, Tennessee 37203<br>dcrowell@bartonesq.com<br>lsanders@bartonesq.com<br>sstovall@bartonesq.com<br><br>*Counsel for Defendants The Lampo Group, LLC d/b/a Ramsey Solutions and Dave Ramsey* | ☐ Hand ☐ Mail ☐ Fax ☐ FedEx ☐ Email ☒ CM/ECF | Brandon G. Hall<br>Cullen D. Hamelin<br>Jonathan A. Street<br>Lauren J. Irwin<br>Employment & Consumer Law Group<br>1720 West End Avenue, Suite 402<br>Nashville, Tennessee 37203<br>bhall@eclaw.com<br>chamelin@eclaw.com<br>street@eclaw.com<br>lauren@eclaw.com<br><br>*Counsel for Plaintiff Brad Amos* |
|---|---|---|---|

 /s/ Jason M. Pannu
Jason M. Pannu