# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 06, 2024

Mr. Daniel Caden Crowell
Barton
611 Commerce Street
Suite 2911
Nashville, TN 37203

Mr. James P. Driscoll-MacEachron
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, DC 20002

Ms. Lauren Jacqueline Irwin
Mr. Jonathan Allen Street
Employment & Consumer Law Group
1720 West End Avenue
Suite 402
Nashville, TN 37203

Ms. Leslie B. Goff Sanders
Mr. Stephen Craig Stovall
Barton
611 Commerce Street
Suite 2911
Nashville, TN 37203

      Re: Case No. 24-5011, *Brad Amos v. Lampo Group, LLC*
         Originating Case No. : 3:21-cv-00923

Dear Counsel,

 The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                                          Sincerely yours,

                                                          s/Cathryn Lovely
                                                          Opinions Deputy

cc:  Ms. Lynda M. Hill

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0346n.06

No. 24-5011

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 06, 2024
KELLY L. STEPHENS, Clerk

BRAD AMOS,

    Plaintiff-Appellant,

v.

LAMPO GROUP, LLC, d/b/a/ Ramsey Solutions,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

OPINION

Before: BOGGS, CLAY, and GIBBONS, Circuit Judges.

BOGGS, Circuit Judge. Brad Amos appeals the district court's dismissal of his Title VII and fraud claims against his former employer, Lampo Group, LLC. For the following reasons, we affirm in part and reverse in part.

I

Tennessee-based Lampo Group, now doing business as Ramsey Solutions, is the company of author, media personality, and financial advisor Dave Ramsey. Brad Amos was, at the time of the events giving rise to his claims, a California-based video editor. According to Amos's complaint, Lampo began recruiting him in May 2019 for a position as a video editor. As a Christian, Amos says that he felt Lampo would be a good fit, given Ramsey's public espousal of Christian values.

During the interview process, Lampo recruiters and management allegedly made various representations about the company's culture and about Amos's potential role there, should he

No. 24-5011, *Amos v. Lampo Grp.*

accept the job—mainly that Lampo was a "family-friendly," "drama-free," and "non-traditional" workplace where Amos would be able to strike a good work-life balance. Amended Complaint, DE 21 at 5–6. Further, Lampo told Amos that he would be taking a lead editing role, specifically a substantial role in an upcoming documentary production. According to Amos, many of these representations were false. These pre-hiring statements from various Lampo employees form the basis for Amos's fraud claims.

Amos took the job and moved from California to Tennessee in August 2019. By his account, the first few months with Lampo went well. Things changed in the spring of 2020, with the onset of the COVID-19 pandemic. Amos says that from the outset, Ramsey and Lampo management were hostile to employees taking any sort of protective measures against the virus. Specifically, Lampo would not allow him or other employees to work from home and actively discouraged any preventative measures including social distancing and masking. Amos says that Lampo's policy was that prayer was the "exclusive way to prevent COVID infection," and that anything else showed a "weakness of spirit" and was "against the will of God." *Id.* at 13, 32. Employees that did take precautionary measures were "mocked and derided." *Id.* at 25.

Amos alleges that he was criticized, specifically, for social distancing and wearing a mask. According to him, such acts were consistent with his own deeply held religious beliefs, including the "golden rule" of doing no harm to others and promoting the safety of his own family. Distilled, Amos says that "[Lampo] maintained a cult-like attitude . . . [and] . . . at Ramsey's direction, would regularly and aggressively promote their own religious beliefs against COVID-19 precautions while also demeaning Plaintiff's religious beliefs supporting [protective] measures to care for the wellbeing and safety of his family [and others]." *Id.* at 30. In July 2020, Lampo fired Amos for a "lack of humility" and because Amos "was not a good fit because he 'would stand off to the side

2

No. 24-5011, *Amos v. Lampo Grp.*

all of the time.'" *Ibid.* Amos says that his termination was based on his failure to submit to Lampo's religious practices and his expression of his own religious beliefs with regard to COVID measures. These facts form the basis for Amos's religious-discrimination claims.

Amos sued Lampo and Dave Ramsey in December 2021 for religious discrimination and retaliation under Title VII and the Tennessee Human Rights Act (THRA), and for fraud, promissory estoppel, deceptive practices, and retaliatory discharge pursuant to Tennessee statute. After Amos filed his amended complaint, both Lampo and Ramsey filed motions to dismiss. The parties conducted discovery for more than a year. In August 2023, the district court granted Ramsey's motion to dismiss. Soon after, Lampo filed a motion for summary judgment. But in December 2023, the district court ruled on Lampo's motion to dismiss—granting it in full. Amos now appeals the dismissal of his religious-discrimination and fraud claims against Lampo.

## II

We review the grant of a motion to dismiss de novo. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024). When reviewing a district court's dismissal under Rule 12(b)(6), we accept all well-pleaded allegations as true and ask whether the complaint states a plausible claim for relief. *BNA Assocs. LLC v. Goldman Sachs Specialty Lending Grp.*, 63 F.4th 1061, 1064 (6th Cir. 2023). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. Religious Nonconformity

We recognize that Title VII "preclude[s] employers from discriminating against an employee because . . . the employee fails to comply with the *employer's* religion." *Pedreira v.*

3

No. 24-5011, *Amos v. Lampo Grp.*

*Kentucky Baptist Homes for Child., Inc.*, 579 F.3d 722, 727 (6th Cir. 2009); *see also Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining, in the context of Title VII exemptions, that the scope of Title VII includes the decision to fire an employee whose conduct is inconsistent with the religious views of his employer).[1] But we have yet to explore the contours of this type of discrimination claim.

The parties and other Circuits have called this a "reverse religious discrimination" claim. The Equal Employment Opportunity Commission advocates for use of the term "religious nonconformity claim." *See* Brief for EEOC as Amici Curiae Supporting Appellant at 12 n.3. We agree that this is a better term. Calling anything "reverse discrimination" is somewhat peculiar in the context of Title VII claims. *See, e.g.*, *Smyer v. Kroger Ltd.. P'ship I*, No. 22-3692, 2024 WL 1007116, at *2 n.1 (6th Cir. Mar. 8, 2024). As with all other types of religious-discrimination claims, the employer is accused of discriminating against the employee on the basis of religion. Here, however, it is the *employer's* religion that is the focus. But that doesn't make the discrimination "reverse." The employer is still the one allegedly doing the discriminating. The only difference is the alleged motivation—who holds the relevant religious beliefs. If anything, "reverse" might suggest—strangely—that it is the *employee* doing the discriminating. Accordingly, we will refer to this claim as one for "religious nonconformity."

The Circuits that have taken closer looks at religious nonconformity claims agree on fairly straightforward parameters. At its core, the claim is that an employee's "lack of adherence to the religious beliefs promoted by the [employer] was the genesis of the discrimination." *Noyes v. Kelly*

---

[1] Amos alleges religious discrimination under both federal (Title VII) and Tennessee law (the THRA). Because "[t]he stated purpose and intent of the Tennessee Act is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws," *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996), analysis of Title VII issues and THRA issues is typically identical. *Id.* Therefore, the disposition of Amos's Title VII claims also applies to his THRA claims.

4

No. 24-5011, *Amos v. Lampo Grp.*

*Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). In other words, the adverse employment actions "were taken because of a discriminatory motive based upon the employee's failure to hold or follow her employer's religious beliefs." *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022); *see also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) ("Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity."). Accordingly, the focus of the claim is on "the religious beliefs of the employer, and the fact that [the employee] does not share them"—not on the specific religious beliefs of the employee himself. *Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1038 (10th Cir. 1993).[2]

The district court briefly addressed and seemingly dismissed Amos's religious-nonconformity claim in a footnote:

> It is likewise not enough that the plaintiff was terminated for not complying with an employment requirement that happens to be grounded on the employer's religious beliefs. The conflict causing the noncompliance must stem from the plaintiff's *own* religious beliefs; a plaintiff's rejection of the employer's religious-based requirement could be based on something other than religious beliefs of the plaintiff (such as a disdain for the requirement itself that is untethered to the religious basis for it).

Order, DE 136, at 13 n.11.[3] With this short statement, it is unclear whether the district court declined to recognize the particular claim at all or just incorrectly shifted the focus of its analysis

---

[2] While the text of Title VII prescribes that the discrimination must have been "because of such [employee's] . . . religion," *see* 42 U.S.C. § 2000e-2(a)(1), (2), it is appropriate to use the employee's refusal to share or comply with the employer's religious belief of religious work requirement as a proxy for the employee's religion and to show the causal nexus between the discriminatory act and its religious motivation. *See Shapolia*, 992 F.2d at 1038.

[3] Lampo argues that Amos's religious nonconformity claim is not properly before this court because it is a "new" claim that he failed to argue in his response to Lampo's motion to dismiss. This argument is meritless for multiple reasons. For one, Lampo did not even address Amos's claim in its motion to dismiss—so Amos did not have any opposition to respond to. And this is not a "new" claim. As outlined below, this claim was well-established in Amos's complaint. But most importantly, the district court ruled on this claim. An appellant does not forfeit a claim "when 'the district court ruled on the merits of Defendants' motion based on Plaintiff's allegations in his complaint.'" *Heyward v. Cooper*, 88 F.4th 648, 654–55 (6th Cir. 2023) (quoting *Cooper Butt ex rel. Q.T.R. v. Barr*, 954 F.3d 901,

5

No. 24-5011, *Amos v. Lampo Grp.*

from Lampo's religious beliefs to Amos's religious beliefs. Either way, the court erred in dismissing this claim under Title VII.

To survive Lampo's motion to dismiss, Amos need only present a claim for relief that is plausible on its face. He does. In his amended complaint, Amos claims that in March 2020, Lampo leadership "express[ed] their belief that [precautionary COVID] measures were not aligned with the religious principles held by Lampo or Ramsey" and that Ramsey "believed taking preventative measures were [sic] against the will of God." DE 21 at 13. Specifically, Amos states that "Lampo expected its employees to adopt the religious view of Mr. Ramsey that taking COVID-19 precautions demonstrated 'weakness of spirit' and prayer was the proper way to avoid COVID-19 infection." *Id.* at 15. And because of these beliefs, Lampo "terminat[ed] or demot[ed] employees who did not agree with [its] spiritual beliefs . . . ." *Id.* at 13. Further, in Amos's Count II claim for religious discrimination, he states that "Lampo violated Title VII . . . by wrongfully terminating Plaintiff for his nonadherence to several of Lampo's particular religious convictions." *Id.* at 32.

Because we are considering a motion to dismiss, we look only to the complaint to determine whether Amos has satisfied his pleading burden. *Pedreira*, 579 F.3d at 727. In the employment-discrimination context, that simply means looking for a claim to relief that is plausible on its face. *Id.* at 728. Amos provides sufficient facts to support a claim that Lampo discriminated against him because he did not share Lampo's religious convictions, and so has met his burden.

---

904 (6th Cir. 2020)). In short, "[w]hen a district court resolves an issue, the losing party can challenge it." *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011).

6

No. 24-5011, *Amos v. Lampo Grp.*

## B.  General Religious Discrimination

Title VII protects employees from religious discrimination and requires that employers reasonably accommodate employees' religious beliefs, assuming the accommodation does not cause the employer undue hardship. 42 U.S.C. §§ 2000e-2(a), 2000e(j). The district court dismissed Amos's claims, holding that Amos's stated beliefs were not plausibly religious and, even so, Title VII does not protect against employer discrimination of an employee's religious-based *conduct* (only the *belief*). Here, the court erred in both its analysis and conclusion.[4]

"If a reasonable court can draw the necessary inference [of discrimination] from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). We recently reiterated that this is true of religious-based Title VII claims, just as with gender-based employment discrimination claims. *See Savel*, 96 F.4th at 943. In other words, to meet his burden, Amos "just need[s] to plausibly allege that [he was] denied a religious accommodation and treated differently because of [his] religion." *Ibid.*

Amos clears this bar. He asserts that "Lampo violated Title VII . . . by refusing to respect and/or accommodate Plaintiff's strongly held religious belief that 'God helps those that help themselves,'" that he has "a deep religious devotion . . . to follow the 'golden rule' to do no harm to others," and that "Lampo terminated [him] for taking scientifically prescribed precautions, as required by his sincerely held religious beliefs." DE 21 at 12, 32. In short, Amos pleads that his deeply held religious beliefs required him to take COVID precautions to avoid inflicting injury on others, as well as to protect his family—and that Lampo did not allow him to do so and ultimately terminated him. This is a plausible claim, supported by specific factual allegations, that Amos

---

[4] To the extent that the district court discussed whether Amos made out some elements of a prima facie case under Title VII, this was also in error. *See Savel*, 96 F.4th at 943 ("A plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint.").

7

No. 24-5011, *Amos v. Lampo Grp.*

faced discrimination because of his religion—which is enough to survive a motion to dismiss. *See Savel*, 96 F.4th at 944 (holding that a religious-discrimination claim based on an employer's failure to grant a COVID-vaccine exemption survived a motion to dismiss).

The district court spent a lot of time on the distinction between religious belief and conduct that may be influenced by religious belief—a distinction of its own creation. Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [the] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). And the Supreme Court has explicitly denied attempts to create a distinction between religious belief and conduct in the Title VII context. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015) ("Congress defined 'religion,' for Title VII's purposes, as 'includ[ing] all aspects of religious observance and practice, as well as belief' . . . . Thus, religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." (citation omitted)).

So it is peculiar that the district court stated—without any support—that "it is not enough that Plaintiff allege a conflict between Lampo's requirement and *the conduct that Plaintiff believes is required* based on a general application of his religious beliefs; again, actionable conflicts are limited to those between the defendant-employer's requirement and the plaintiff's *religious beliefs*." Order, DE 136 at 13. And the court further held that this is true "even if Plaintiff's religious beliefs are what inclined him towards the course of conduct that was in conflict with Lampo's requirement." *Id.* at 16. To the contrary, we have consistently held that discrimination against religiously motivated conduct is a foundational basis for Title VII claims. *See, e.g.*, *Savel*, 96 F.4th at 944 (holding that a Title VII claim survived a motion to dismiss when plaintiffs alleged

8

No. 24-5011, *Amos v. Lampo Grp.*

constructive discharge "because of their religion, including their religious practice of refusing the COVID-19 vaccine because it was created in a way that violates their religious belief" (cleaned up)); *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002) (recognizing a discrimination claim based on a trucker refusing to go on "sleeper runs" with female coworkers based on his religious beliefs). In short, Title VII does not treat religious discrimination based on a plaintiff's belief *simpliciter* differently than discrimination based on some expression of the belief.

Moreover, the district court erred when it stated that "it is not enough (or even relevant) that Plaintiff alleges a religious belief that conflicts with Lampo's corporate religious beliefs" and that Amos needed to "plausibly allege is (1) a sincerely held belief; (2) that is 'religious'; (3) that conflicts with Lampo's requirement that Plaintiff forego his desired COVID countermeasures." DE 136 at 13. And the court further erred in concluding that "although Plaintiff claimed that such beliefs are 'religious' in nature, the claim is merely conclusory, not inherently plausible, and unsupported by any factual matter in the Amended Complaint." *Id.* at 16. This is inaccurate, as Amos specifically pleads that his religious beliefs—following the Biblical "Golden Rule," believing that God helps those who help themselves, and protecting his family—motivated both his conduct and Lampo's alleged discrimination. Moreover, our recent decisions foreclose this analysis at this stage. We have clarified that a plaintiff need not plead facts establishing a prima facie case in order to survive a motion to dismiss. *See Savel*, 96 F.4th at 943; *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 842 (6th Cir. 2024); *see also Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1060–61 (6th Cir. 2022) (same, but in a failure-to-hire context).

Instead, the plausibility standard is satisfied when the court can draw the inference of discrimination from the facts stated in the complaint. "After all, plausibility occupies that wide

9

No. 24-5011, *Amos v. Lampo Grp.*

space between possibility and probability." *Savel*, 96 F.4th at 943 (cleaned up). And here, Amos has alleged sufficient facts that support a plausible claim that Lampo discriminated against him based on his religious beliefs.[5]

### C. Fraud

Amos also challenges the district court's dismissal of his fraud claim. Tennessee law treats common-law fraud claims—including claims of "intentional misrepresentation," "fraudulent misrepresentation," and "fraud"—as the same tort. Tennessee law governs the substance of this claim:

> To recover for intentional misrepresentation, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). Amos's fraud claim is also subject to the heightened pleading standard of FRCP 9(b), which states that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

---

[5] The district court also spent time analyzing the religious nature of Amos's beliefs, concluding that his beliefs are not sufficiently "religious." This analysis is not appropriate at the Rule 12(b)(6) stage. *See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved for the factfinder at trial . . . .").

No. 24-5011, *Amos v. Lampo Grp.*

The district court granted dismissal based on, and the parties now primarily contest, whether Amos sufficiently pled reliance upon Lampo's allegedly fraudulent statements. Under Rule 9(b), "[c]onclusory statements of reliance are not sufficient to explain with particularity how [a plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852–53 (6th Cir. 2006). We agree that Amos fails to support his fraud claims with the particularity that Rule 9(b) requires.

Amos identifies six Lampo statements that he alleges were fraudulent: (1) Amos would edit features and help create their new film department; (2) Lampo operated in a way that was not "cult like"; (3) Lampo operated a "drama free" workplace; (4) Lampo had been voted "best place to work" for over 10 years in a row by their own employees; (5) Lampo was family friendly and would allow Plaintiff to spend time with his family; and (6) false statements about his ability to work from home without adverse employment action. But none of these alleged statements support a claim for fraud.

Statements (1), (5), and (6) are merely non-contractual promises about the nature of his future at-will employment experience. Fraud actions must be predicated upon false statements regarding a past or present fact. *Fowler v. Happy Goodman Fam.*, 575 S.W.2d 496, 498–99 (Tenn. 1978); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010) (interpreting a similar cause of action under Michigan law and stating that "promises regarding the future are contractual and do not support a claim for fraud"). Amos does not plead, with any particularity, facts that identify a fraudulent intent with respect to these discussions about future employment particulars.

The rest of Amos's alleged bases for fraud fail as well. Statements (2), (3), and (4) appear to be statements of opinion or puffery, which are not actionable under Tennessee law. *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). Moreover, even if these

11

No. 24-5011, *Amos v. Lampo Grp.*

statements were actionable, reliance on a fraudulent representation must be *reasonable*, and the complaint must provide facts, with the requisite particularity, as to why the reliance was reasonable. *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). Conclusory statements of reasonable reliance do not suffice. *See Evans*, 434 F.3d at 853. Amos's complaint is devoid of anything more than these conclusory statements—he does not explain why it was reasonable for him to rely on statements that Lampo was not cult-like, drama-free, and voted the best place to work by its own employees. Amos even avers that he was put on notice that Lampo's statements about the company were potentially inaccurate. According to his complaint, Amos's only real attempt to investigate or guard against rumors about Lampo's workplace culture was to ask Lampo employees about it. *See Coffey*, 2 F.3d at 162. ("Where the injured party is put on notice of potential harm or damage, even if given assurances of safety as well, his reliance on those assurances must be reasonable. If he does not attempt to investigate or otherwise guard against that about which he was warned, his reliance is rendered unreasonable, and he cannot claim fraudulent misrepresentation." (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)).

Accordingly, Amos fails to sufficiently plead fraud.

### D.  Tennessee Statutory Claim

Amos also appeals the district court's dismissal of his claim under Tennessee Code § 50-1-102—False or Deceptive Representations, False Advertising, or False Pretenses. The statute states, in relevant part:

> It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or

12

No. 24-5011, *Amos v. Lampo Grp.*

> other trouble pending between employer and employees, at the time of or prior to the engagement.

Tenn. Code Ann. § 50-1-102(a)(1).

We have never had a case before us that involved this statute—much less discussed it in the context of pleading standards. But the language of the statute suggests that a claim under it "sounds in fraud," and so is subject to Rule 9(b)'s requirements. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). Moreover, Tennessee courts have treated this statute as requiring the same proof as fraudulent-representation claims, *see Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 408 (Tenn. Ct. App. 2007), and have called the statute "fraudulent inducement," *Shipp v. Ditch Witch Equip. of Tenn., Inc.*, No. M2005-02354-COA-R3-CV, 2007 WL 700979, at *2 (Tenn. Ct. App. Mar. 7, 2007). Such a claim, like all fraud claims, is subject to Rule 9(b). *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014).

Because Amos fails to meet Rule 9(b)'s heightened pleading requirements for his common-law fraud claim, it necessarily follows that he fails to satisfy his burden with regard to this claim too. Amos does not plead any additional facts to support this statutory claim, and in fact makes even more conclusory statements regarding Lampo's allegedly deceptive representations. There is simply not enough in Amos's complaint to support, with any specificity, a fraudulent scheme to induce him to come work for Lampo.

### III

Amos has met his pleading burden for his religious-discrimination claims, but failed with regard to his fraud claims. Accordingly, we **REVERSE** the district court as to the Title VII and THRA claims and **AFFIRM** as to the fraud claims. We **REMAND** to the district court for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5011

BRAD AMOS,

    Plaintiff - Appellant,

v.

THE LAMPO GROUP, LLC, d/b/a Ramsey Solutions,

    Defendant - Appellee.

**FILED**
Aug 06, 2024
KELLY L. STEPHENS, Clerk

Before: BOGGS, CLAY, and GIBBONS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk