IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00923 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| THE LAMPO GROUP, LLC ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court[1] is "Defendant's Motion to Review Non-dispositive Order by Magistrate Judge" (Doc. No. 180, "Motion"). Via the Motion, the remaining Defendant, The Lampo Group, LLC ("Defendant" or "Lampo") moves the Court pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule 72.01, to review a particular portion (the "Challenged Provision") of the Seventh Modified Case Management Order (Doc. No. 176, "Order") entered by the Magistrate Judge on October 16, 2024. The portion for which review is sought reads as follows:

> Given the length of time this case has been pending and the legal issues already resolved, including through appeal, the Court finds it most consistent with the directive of Fed. R. Civ. P. 1 to proceed with trial without any further dispositive motions.

(Doc. No. 176 at 2). Defendant filed a memorandum (Doc. No. 181, "Memorandum") in support of the Motion, and Plaintiff filed a response in opposition to the Motion. (Doc. No. 182).

In the Memorandum, Defendant asserts that the Court should vacate the Challenged Provision, at least to the extent necessary to enable the Court to "resolve Lampo's summary

---

[1] Herein, "the Court" (or, at times, "the undersigned") refers to the undersigned District Judge, as distinguished from the Magistrate Judge who ordered the challenged provision.

judgment motion with respect to Plaintiff's remaining claims following appeal rather than proceeding directly to a jury trial." (Doc. No. 181 at 1-2). The summary judgment motion to which Defendant refers (Doc. No. 113, "Summary Judgment Motion") was, as Defendant notes, fully briefed (including via Defendant's primary brief (Doc. No. 114) in support of the Summary Judgment Motion) but has not been decided.

Defendant states as follows:

> Rule 72 governs the district judge's review of a magistrate judge's order. The appropriate standard of review depends on whether the magistrate judge's order resolves a dispositive or non-dispositive matter. If dispositive, the magistrate judge's order is reviewed de novo. *See, e.g.*, *Rolston v. Metropolitan Government of Nashville*, 2019 WL 3075916 at *1 (M.D. Tenn. July 15, 2019). If non-dispositive, the magistrate judge's order is reviewed for clear error with respect to factual findings and "contrary to law" with respect to legal conclusions. *See, e.g.*, *Annette v. Haslam*, 2019 WL 4744851 at *1 (M.D. Tenn. Sept. 30, 2019). Again, the Order at issue in this motion does not neatly fit into either category because it disregards (and effectively denies without formally resolving) Lampo's timely filed and fully briefed summary judgment motion.

(Doc. No. 181 at 2-3).

Rule 72(b)(1) of the Federal Rules of Civil Procedure is the source of the "non-dispositive" versus "dispositive" dichotomy that Defendant highlights.

> (b)(1) Notwithstanding any provision of law to the contrary--
>
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.
>
> (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of

> the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C.A. § 636(b)(1)(A)-(B). Rule 72 actually does not use either the term "dispositive" or the term "nondispositive [or "non-dispositive]." However, the practice has developed to refer to (a) the eight motions ("listed motions") referred to in subparagraph (b)(1)(A) as "dispositive" motions—as to which a magistrate judge's decision[2] is subject to *de novo* review; and (b) to all other "matters" (including, primarily, motions) as non-dispositive, such that a magistrate judge's decision thereon is subject to review for "clear error" review with respect to factual findings and also review for "contrar[iness] to law" with respect to legal rulings. To the benefit of Defendant—which obviously would prefer that the Challenged Provision be reviewed *de novo*—the Court accepts for present purposes that a magistrate judge's decision that functions substantially like a decision on one of the listed motions is deemed "dispositive" and thus subject to *de novo* review. The question is whether the Challenged Provision is a such a decision or, instead, is properly deemed a decision on a non-dispositive matter.

Plaintiff makes a pair of accurate and key observations that are the starting point for the Court's analysis of that question. The first is that "[u]pon return from the Court of Appeals, Plaintiff has two claims remaining: (1) a claim for general religious discrimination, and (2) a claim for religious non-conformity."[3] (Doc. No. 182 at 2). The second is that in the Summary Judgment

---

[2] As Rule 72(b)(1) makes clear, a magistrate judge's "decision" on one of the listed motions is not an *order*, but rather a *report and recommendation* to the district judge. It thus is not really a "decision" at all, except to the extent that it reflects a decision as to what to report and recommend.

[3] The Sixth Circuit noted that it preferred the term "religious non-conformity" for the kind of claim that other circuits and the parties herein have called "reverse religious discrimination." (Doc. No. 170 at 4).

Motion, "Defendant did not ask for summary judgment on Plaintiff's claim for religious non-conformity." (*Id.* at 2-3).

To the second point, the Court would add that: (i) the Sixth Circuit made clear that what it called Plaintiff's "General Religious Discrimination" claim actually was broad enough to include not only what ordinarily would be thought of as a general religious discrimination claim (i.e., a claim alleging the taking of an adverse employment action against the plaintiff based on animus against the plaintiff based on the plaintiff's religious beliefs), but also a *religious-accommodation claim,* (i.e., a claim based on an alleged failure to provide the plaintiff with a reasonable religious accommodation) (Doc. No. 170 at 7-8);[4] and (ii) Defendant *consciously and expressly forwent* seeking summary judgment on a religious-accommodation claim because Defendant did not perceive that Plaintiff brought a religious-accommodation claim. (Doc. No. 114 at 13) ("[Plaintiff's] Title VII and THRA claims proceed on a general religious discrimination theory (as opposed to religious accommodation)."[5] What this means is that the Summary Judgment Motion

---

[4] When citing to a page in a document filed in this case, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author of the document (meaning, here, the author of the Sixth Circuit opinion that was filed on the docket in this case).

[5] The Court wishes to clarify its views about Plaintiff's religious-accommodation claim because it evidently was nowhere near precise or effective enough in expressing its views in its opinion (Doc. No. 136) accompanying its order (Doc. No. 137) granting Defendant's second motion to dismiss (Doc. No. 30). In its opinion reversing that order in part and remanding this case, the Sixth Circuit noted:

> The district court spent a lot of time on the distinction between religious belief and conduct that may be influenced by religious belief—a distinction of its own creation. Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [the] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). And the Supreme Court has explicitly denied attempts to create a distinction between religious belief and conduct in the Title VII context. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015) ("Congress defined 'religion,' for Title VII's purposes, as 'includ[ing] all aspects of religious observance and practice, as well as belief' . . . . Thus, religious practice is one of the

protected characteristics that cannot be accorded disparate treatment and must be accommodated." (citation omitted)).

(Doc. No. 170 at 10). The undersigned did not mean to convey in his prior opinion that only religious belief, and not religious "practice and observance" was protected by Title VII. Far from it, and shame on him for giving that impression and inviting the Sixth Circuit's firm disapproval, by not being sufficiently precise or nuanced in his discussion. What he meant (and tried but failed) to convey was a different concept, one that he believes is consistent *both* with the Sixth Circuit's own observations above and the undersigned's above-referenced "distinction between religious belief and conduct that may be influenced by religious belief." It did not occur, and never would have occurred, to the undersigned that something was unprotected by Title VII merely because it seems to fall more precisely into the "practice and observance" (which is to say "conduct") bucket than the "belief" bucket. Rather, it has always been clear to the undersigned that if something *actually* amounted to *religious* conduct, it would be protected even if it did not fall into the "belief" bucket. For example, the "practice and observance" and attending a Sunday church service, or of attending confession, or of traveling to Mecca for the Hajj, or of keeping Kosher all constitute religious *conduct.* But a person's participation in such activities are typically—though not always, since sometimes persons engage in these activities for cultural or other reasons, despite lacking any particular belief or any belief at all—*influenced* (sometimes heavily and even exclusively) by religious belief. So the undersigned did not mean to suggest that activities like these are excluded from protection merely because they constitute conduct and not belief as such.

The undersigned's intended point, rather was that some conduct, though influenced by religious belief, is not properly characterized as *religious conduct*, i.e., as religious "observance or practice." An example will demonstrate the point.

Imagine a driver for a delivery-service company that has a policy—intended to promote speed, efficiency, customer satisfaction, and, ultimately, profits—that drivers must drive at the speed limit (and not below it) unless applicable circumstances reasonably counsel driving below the speed limit. Imagine also that this driver is a follower of a religion that (like most religions, surely) generally teaches doing right by other people, treating other people well, caring for other people, etc. Imagine that this driver is focused on the (objectively verifiable) fact that driving below the speed limit poses a lower risk to the safety of other drivers and pedestrians than does driving at the speed limit. Suppose further that this driver wishes to lower the risk to other people (and thereby treat these other people better and with more care) by driving five miles per hour under the speed limit, and that this desire is driven entirely by the driver's religious-based beliefs about how to treat people. Finally, suppose that based on this belief, the *conduct* of the driver is affected, i.e., the conduct of the driver is to drive five miles per hour below the speed limit.

In the view of the undersigned, in this example the conduct obviously is influenced by religious belief. But that does not make the conduct "religious conduct," and it certainly does not make the conduct religious "observance" or religious "practice." That is, in the view of the undersigned, conduct does not become religious conduct (or religious practice or religious observance) merely because it reflects a general desire to treat other people decently and generally treating people decently is a tenant of the person's religion. Otherwise, any conduct by any adherent of virtually any religion (since, surely, almost all adherents of a religion are adherents of a religion that believes in treating other people decently) becomes "religious" conduct that is protected by Title VII. This would mean that any such adherent disciplined for failing to follow a company policy has a valid Title VII claim as long as the adherent can characterize the refusal to follow the policy as an application of the religious tenant to treat people decently. This strikes the undersigned as going way too far; for believers, it would turn an employee's most routine act of purported general human decency into religious conduct for purposes of a Title VII claim, when that act constitutes non-compliance with an employer's policy for which the employee is disciplined. And it also creates the potential for a huge disparity between believers and non-believers under Title VII.

Imagine someone who (a) believes in treating other people well; (b) does not in any way whatsoever attribute that belief to any religion or religious beliefs, and indeed adamantly denies having any religion or

is a motion for only *partial* summary judgment, as it did not seek summary judgment as to Plaintiff's religious nonconformity claim or religious-accommodation claim.

So, as is relevant to the instant Motion, the Challenged Provision operates to preclude what is a *motion for partial summary judgment*. It serves as the equivalent of an order denying a motion for leave to file a motion for partial summary judgment or, alternatively, an order striking a motion for partial summary judgment. The Court perceives such an order as being non-dispositive (and thus not subject to *de novo* review), given that it does not directly address any of the claim(s) as to which summary judgment is sought and has only a limited effect on the case as a whole. There is some extant case law that is consistent with this view. *See Renander v. Thomas*, No. 22-15169,

---

religious beliefs of any type whatsoever (including atheism or agnosticism, insofar as those are "religious" beliefs; and (c) is fired for refusing to follow a company policy because he believes that the policy requires him to treat other people poorly, that person would not have a Title VII claim the way our hypothetical driver would. This strikes the undersigned as problematic; the driver has a cause of action *precisely because* the basis for her general belief in treating people decently is *religious*, whereas the other person is deprived of a cause of action because his general belief in treating people decently is not religious. The undersigned questions whether such a divergence of results is consistent with the spirit of Title VII or promotes the objectives of Title VII.

The undersigned will put it as plainly as possible this way. It seems indisputable that a lot of people are honest on their tax returns, consciously eschewing dishonesty from which they could benefit financially, solely and precisely because they maintain principles of honesty (and not cheating) that they would consider religious principles. But the Court does not see how the act of filing an honest tax return, and intentionally eschewing a dishonest tax return, constitutes religious conduct, religious practice, or religious observance. In short, the undersigned's view is that at least at *some* point actions, even if motivated in the actor's mind by religious principles, become so attenuated from religious principles (other than the most general "religious" principles imaginable) that they do not constitute religious conduct, religious observance, or religious practice. And the undersigned does not perceive that this view is precluded by the Sixth Circuit's view expressed in this case, except insofar as the Sixth Circuit arguably suggested that such attenuation should not be assessed at the Rule 12(b)(6) stage as a potential ground for dismissal. (Doc. No. 170 at 12 n.5).

The undersigned's prior view is that Plaintiff's allegations made his situation analogous to that of our hypothetical driver—that the conduct was *influenced* by religious belief, but did not rise to the level of religious conduct/observance/practice. Put another way, the undersigned's view was that the allegations suggested conduct that was the result of a context-specific application of a very general principle (one typically shared by believers and non-believers alike) to treat people well, and that the fact that Plaintiff drew the principle from Plaintiff's religion did not make the conduct religious conduct (and certainly not religious "observance" or practice"). But the Sixth Circuit—without considering (or having occasion to consider) the views the Court has just expressed and should have expressed the first time—has spoken, finding that Plaintiff has alleged what it labeled "religious nonconformity" and "general religious discrimination" claims, and the undersigned proceeds in accordance with the Sixth Circuit's view.

2023 WL 6366699, at *1 (9th Cir. Sept. 29, 2023) ("We decline to consider plaintiff's challenges to the magistrate judge's nondispositive orders, including the order[ ] . . . striking plaintiff's untimely motion for partial summary judgment."); *Fitch v. Giant Eagle, Inc.*, No. 218CV01534RJCCRE, 2020 WL 4218005, at *1 (W.D. Pa. July 23, 2020) ("The Court notes that [a magistrate judge who issued on order striking the defendant's motions for partial summary judgment] did not reach the merits of [the defendant's] [m]otions for [p]artial [s]ummary [j]udgment, and thus, there was no disposition of those [m]otions as that term is typically used for purposes of de novo review.").

Not even Defendant really disputes that view. With admirable candor, Defendant eschews asserting that the Challenged Provision falls clearly in the "dispositive" category and instead opines that the Challenged Provision straddles the line between dispositive and non-dispositive, as noted above. (Doc. No. 181 at 2-3). And Defendant does not complain that the Challenged Provision was placed in an *order*, rather than a *report and recommendation* as would instead by required were the Challenged Provision actually something "dispositive." Accordingly, although the question is a relatively close one, the Court treats the Challenged Provision as subject to review for clear error and contrariness to law.

Defendant fails to show either any clear error (of fact) underlying the Challenged Provision or anything about the Challenged provision that is contrary to law. At best, Defendant shows that it would *not* have been contrary to law for the Magistrate Judge *not* to have ordered the Challenged Provision. But such a showing fails to meet Defendant's burden under the "contrary to law" standard.

Moreover, the Motion is flawed in two respects. First, it suggests that by considering the Summary Judgment Motion, the Court would ensure that this case does not go to trial unless it

presents genuinely disputed material facts. (Doc. No. 181 at 4). But this is untrue because the Summary Judgment Motion is one for only *partial* summary judgment; even if the Summary Judgment Motion were granted in full, the religious-nonconformity claim and the religious-accommodation claim would still remain pending and headed to trial.

Second, the Motion suggests that a summary-judgment movant has the right to have a summary-judgment motion considered, i.e., that the court *must* resolve any summary judgment motion that has been filed. (Doc. No. 181 at 3-4). This suggestion is refuted by copious authority suggesting that even when faced with a proper summary-judgment motion, a district court has the discretion to do what the Magistrate Judge ordered here: manage the case by sending it straight to trial rather than expending the judicial resources necessary to dispose of what amounts to a motion for partial summary judgment. *See Rago v. Select Comfort Retail Corp.*, No. EDCV192291FMOSPX, 2021 WL 5861555, at *2 (C.D. Cal. June 2, 2021); *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.*, No. 2:06-CV-00275, 2009 WL 10679648, at *1–2 (S.D. Ohio Feb. 11, 2009); *Propps v. 9008 Grp., Inc.*, No. 03-71166, 2006 WL 2124242, at *1 (E.D. Mich. July 27, 2006) ("Even if the Court were to find that defendants had carried their burden, the Court would doubt the wisdom of granting summary judgment and terminating the case prior to trial. In such a circumstance, the Court has discretion to deny the motion." (citing 10 A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2728 (3ed.1998)). A court's discretion to do so seems especially fitting in a relatively unusual case like this one, with its unusual history involving of a motion for partial summary judgment that went undecided while the dismissal of the entire case was appealed and reversed in part before the case was remanded.

In summary, the Court finds that Defendant has not shown grounds to vacate the Challenged Provision. Accordingly, the Motion (Doc. No. 180) is DENIED.

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE