UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRAD AMOS, | ) | |
| | ) | Case No. 3:21-cv-00923 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Holmes |
| | ) | |
| THE LAMPO GROUP, LLC, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OBJECTIONS TO THE**
**EXPERT TESTIMONY OF DR. CHARLES L. BAUM, PH.D**

Defendant, The Lampo Group, LLC, pursuant to the Court's Order at Docket No. 185, objects to the anticipated expert testimony of Dr. Charles L. Baum, Ph.D. in support of Plaintiff's claims in this case.

### I. INTRODUCTION

Plaintiff has identified Dr. Baum as an expert witness in this case, retained to "provide an analysis of the economic losses from lost earnings and lost employment benefits for Brad Amos…due to Mr. Amos' employment termination by the Lampo Group LLC…on or around July 31, 2020." (Doc. #220-1; hereafter "Baum Report" at ¶ 2). To that end, Dr. Baum has identified five categories of "Economic Losses from Various Sources" that allegedly flow from Defendant's termination of Plaintiff's employment: "Lost Earnings and Benefits", "Lost Home Equity", "Real Estate Fees and Commissions", "Lost Spousal Earnings", and "One Year of Therapy." *Id.* at ¶ 57. However, Dr. Baum should not be allowed to provide expert testimony—directly as a witness or indirectly through the Baum Report—because his conclusions are ultimately layperson calculations that will not assist the Court or Jury or based on fundamentally flawed methodology.

## II. LEGAL STANDARD

The U.S. District Court for the Eastern District of Tennessee recently restated the legal standard governing admissibility of expert testimony in the Sixth Circuit:

> Federal Rules of Evidence 702 and 703 govern the admissibility of testimony by expert witnesses. Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702. According to Rule 703, an expert is permitted to base her opinion on facts or data of which she has been made aware or has personally observed. Fed. R. Evid. 703. The underlying facts or data need not be admissible for the opinion to be admitted, so long as an expert in the field would reasonably rely on them in forming an opinion on the subject. Id.
>
> The Sixth Circuit has identified three requirements for an expert's testimony to be admissible under Rule 702: (1) "the witness must be qualified by knowledge, skill, experience, training, or education"; (2) "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) "the testimony must be reliable." *Burgett v. Troy-Bilt, LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)) (internal quotation marks omitted). Reliability is assessed by the factors set out in Rule 702: (1) whether the testimony is based on sufficient facts or data; (2) whether the testimony is the product of reliable principles and methods; and (3) whether the methods and principles were reliably applied to the facts of the case. Fed. R. Evid. 702. The focus is on reliability rather than "credibility and accuracy." *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 323 (6th Cir. 2015) (quoting *In re Scrap*, 527 F.3d at 529). Thus, courts should focus on the methodology employed rather than the conclusions drawn. *Id.*; see *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

In determining whether expert testimony "is the product of reliable principles and methods," Fed. R. Evid. 702(c), courts may consider whether the methods and principles have been and are capable of being tested, whether they have been subjected to peer review and publication, their known or potential rate of error, and whether they are generally accepted within the relevant scientific community. *See Daubert*, 509 U.S. at 593–94; see also *United States v. Mallory*, 902 F.3d 584, 592–93 (6th Cir. 2018) (noting that all of the factors do not necessarily apply in every case). The inquiry, however, is flexible, and the district court may also consider other factors that bear on the reliability of the expert's testimony. *See Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 149–50 (1999) ("[A] trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony."). A rebuttal expert may provide contrasting expert opinions or challenge the methodology utilized by the opposing party's experts in arriving at his conclusions. *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1048 (E.D. Tenn. 2015).

While a court's role is to determine whether an expert's testimony is reliable, not whether it is accurate or credible, a court must still determine that an expert's opinion rests on a "reliable foundation" rather than "unsupported speculation." *In re Scrap*, 527 F.3d at 529–30. Even expert testimony based on erroneous facts is generally permitted "when there is some support for those facts in the record." Id. at 530. Expert testimony based on "shaky" evidence is admissible, so long as the testimony is not based on "guesses" or "assumptions." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). However, a "court is not required to admit expert testimony 'that is connected to existing data only by [an assertion without proof] of the expert' " and "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

"[R]ejection of expert testimony is the exception rather than the rule," and "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Burgett*, 579 F. App'x at 376 (citation omitted) ("*Daubert* did not work a seachange over federal evidence law, and the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system.").

*Speer v. UCOR LLC*, No. 3:22-CV-426, 2024 WL 5660801, at *1–3 (E.D. Tenn. Oct. 11, 2024).

### III. ARGUMENT

The Court should prohibit Plaintiff from introducing any testimony from Dr. Baum or presenting any evidence or argument related to the Baum Report.

#### A. "Lost Earnings and Benefits"

3

The Baum Report claims that Plaintiff incurred $52,537 to $237,513 of lost earnings and benefits. (Baum Report at ¶ 57). However, at deposition, Dr. Baum conceded that he did not perform any analysis of the relevant job markets. (Baum Deposition at 38:19 to 40:13). That is not expert testimony. Fed. R. Evid. 702.

### B. "Lost Home Equity"

The Baum Report claims that Plaintiff lost $695,000 in home equity when he sold his home in California to move to Tennessee to accept employment with Defendant. (Baum Report at ¶ 57). However, at deposition, Dr. Baum conceded that he reached that figure by comparing (1) what Plaintiff originally sold his house for when he left California to accept employment with Defendant and (2) what the same house was *listed for* after he was terminated by Defendant. (Doc. #222-1; hereafter "Baum Deposition" at 33:13 to 34:15). Dr. Baum does not even know what the house ultimately sold for the second time. *Id.* at 34:9-11. That crude analysis is not based on an expert's scientific, technical, or other specialized knowledge, nor even remotely reliable as a measure of Plaintiff's potential damages. Fed. R. Evid. 702.

### C. "Lost Real Estate Fees and Commissions"

The Baum Report claims that Plaintiff incurred $48,859.95—later rounded up to $48,860—in real estate fees and commissions when he sold his house in California to move to Tennessee to accept employment with Lampo. (Baum Report at ¶ 11). Plaintiff should be prohibited from presenting any evidence or argument from Dr. Baum or the Baum Report regarding "Lost Real Estate Fees and Commissions" because Dr. Baum arrived at the $48,860 figure by simply reviewing Plaintiff's closing statement and subtracting some principal and interest costs that he would have incurred regardless of selling the house. (Baum Deposition at

4

Case 3:21-cv-00923   Document 222   Filed 06/23/25   Page 4 of 6 PageID #: 5322

35:16 to 36:5). That is layperson analysis that does not require an expert's scientific, technical, or other specialized knowledge. Fed. R. Evid. 702.

### D. "Lost Spousal Earnings"

The Baum Report claims that Plaintiff incurred $26,394 in lost spousal earnings, as a result of his wife being out of work from Plaintiff's termination by Defendant on July 31, 2020, through the date of the report. (Baum Report at ¶ 57). However, at deposition, Dr. Baum conceded that he did not know why Plaintiff's wife was unemployment after his termination by Defendant, did not know whether Plaintiff's wife had applied for replacement employment, and had not analyzed the relevant job market where she lived. (Baum Deposition at 42:2 to 43:13). Again, this is merely layperson addition of Plaintiff's wife's lost wages, not scientific, technical, or other expert analysis performed to determine whether and to what extent her lost wages were attributable to Defendant's actions. Fed. R. Evid. 702.

### E. "One Year of Therapy"

The Baum Report claims that Plaintiff incurred $2,370 in therapy costs for his son. (Baum Report at ¶ 57). Again, this is simply layperson addition. Not expert testimony.

### F. Legal Citations and Discussion

In addition to the foregoing, as a general matter, the Baum Report is replete with citations to legal authorities and discussion of legal principles, which "are not appropriate expert testimony" and must be excluded *Kirkland v. City of Maryville*, No. 3:19-cv-00312-DCLC-DCP, 2021 6338645, at *5 (E.D. Tenn. April 9, 2021).

### IV. CONCLUSION

The Court should enter an order in limine to the anticipated expert testimony of Dr. Baum in support of Plaintiff's claims in this case.

5

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
Eric Lyons (TN #36105)
Stephen Stovall (TN #37002)
Molli Guinn (TN #41258)
Barton LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
elyons@bartonesq.com
sstovall@bartonesq.com
mguinn@bartonesq.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on June 23, 2025, I filed the foregoing document via the Court's electronic filing system, which will automatically notify and send a copy to:

Jonathan Street
Zachary Brown
Brandon Hall
Cullen Hamlin
EMPLOYMENT & COMMERCE LAW GROUP

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*