

**U.S. Equal Employment Opportunity Commission**

# Enforcement Guidance: Compensatory and Punitive Damages Available under sec 102 of the CRA of 1991

This guidance document was issued upon approval by vote of the U.S. Equal Employment Opportunity Commission.

| | |
|---|---|
| **OLC Control Number:** | EEOC-CVG-1992-3 |
| **Concise Display Name:** | Enforcement Guidance: Compensatory and Punitive Damages Available under sec 102 of the CRA of 1991 |
| **Issue Date:** | 07-14-1992 |
| **General Topics:** | Remedies |
| **Summary:** | This document addresses the availability of compensatory and punitive damages pursuant to the Civil Rights Act of 1991 (42 USC § 1981A). |

| | |
|---|---|
| **Citation:** | Sec 102 |
| **Document Applicant:** | Employers, Employees, Applicants, Attorneys and Practitioners, EEOC Staff |
| **Previous Revision:** | No |

The contents of this document do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

1.    SUBJECT: Enforcement Guidance: Compensatory a[n] Damages Available under § 102 of the Civil Ri[g] of 1991.

2.    PURPOSE: This enforcement guidance sets forth Commission's position on the availability of [c] and punitive damages pursuant to the Civil Ri[g] 1991, § 102, "Damages in Cases of Intentional Discrimination."

3.    EFFECTIVE DATE: July 14, 1992.

4.    EXPIRATION DATE: As an exception to EEOC Orde[r] Appendix B, Attachment 4, § a(5), this Notice remain in effect until rescinded or supersede[d]

5.    ORIGINATOR: Title VII/EPA Division, Office of

6.    INSTRUCTIONS: File at end of Compliance Manua[l] Policy or Enforcement Guidance.

7.    SUBJECT MATTER:

This enforcement guidance sets forth the Comm[...]
position on how to assess compensatory and punitive [...]
§ 102 of the Civil Rights Act of 1991, 105 Stat 10[...]
L. No. 102–166 (hereinafter referred to as § 1981A)[...]

I.    RIGHT TO RECOVERY

Section 1981A(a)(1) provides that a complainin[...]
recover compensatory and punitive damages against a[...]
who has engaged in unlawful intentional discrimina[...]
violation of Title VII of the Civil Rights Act of 1[...]
§ 2000e et seq., unless that complaining party can [...]
under 42 U.S.C. § 1981. Only race discrimination cl[...]
be brought under § 1981.4

Damages are available in addition to any relie[...]
under § 706(g) of Title VII.5 Therefore, § 1981A do[...]
not affect the right to backpay, frontpay, or any [...]
already recoverable under Title VII. Damages are au[...]
in cases of intentional discrimination and are the[...]
available where the charge alleges that neutral emp[...]
practices have an adverse impact. Section 1981A(a)([...]

As indicated above, § 1981A(a) provides for da[...]
under Title VII, if the complaining party "cannot [...]
§ 1981. For purposes of the Commission's administra[...]
enforcement process, the question arises as to the [...]
meaning of the "cannot recover" language. The Comm[...]
jurisdiction over § 1981, nor will the Commission, [...]
the investigation and conciliation process, be able[...]
the scope or outcome of a § 1981 action brought by [...]
charging party. Thus, in processing charges, the Co[...]
seek compensatory and punitive damages, as appropr[...]
or not an individual may have a cause of action und[...]
1981.

This interpretation is supported by the Sponso
Interpretative Memorandum, 137 Cong. Rec. S15,484 (
30, 1991), which explains that the purpose of the '
recover" language was "to assure that a complaining
not obtain duplicative damage awards against a sing
under both section 1981 and section 1981A ... [and
complaining party need not prove that he or she doe
cause of action under section 1981 in order to reco
the section 1981A action." In addition, the Interpr
Memorandum of Representative Edwards, co-sponsor of
Bill) and Chairman of the Subcommittee on Civil and
Constitutional Rights of the House Judiciary Commit
responsible for HR-1, asserts that "if a party has
cause of action under Section [1981], but for whate
does not bring it, that party 'cannot recover under
[1981]'...," and hence can recover under § 1981A. '
is under any obligation to proceed under one or the
or to waive any cause of action under either statut
condition of proceeding." 137 Cong. Rec. H9527 (da
1991).

Therefore, at least, for purposes of charge pr
Commission will seek damages where otherwise approp
the complaining party has an ongoing § 1981 court a
long as the complaining party has not recovered und
1981. Because the Commission has no enforcement aut
§ 1981, its decisions concerning appropriate relief
rest on contingencies that may, or may not, occur u
1981. Any other interpretation would prevent the Co
being able to settle race discrimination claims, to
detriment of complaining parties and respondents.

Section 1981A(a)(2) provides the same remedies
intentional violations of the federal employee prov
Rehabilitation Act of 1973, 29 U.S.C. § 791, and Ti

the Americans with Disabilities Act of 1990, 42 U.S
12101 et seq. However, damages are not available in
discrimination cases which involve reasonable accom
the respondent "demonstrates good faith efforts, in
with the person with a disability," to provide a re
accommodation. Section 1981A(a)(3). For example, as
respondent consulted with a sight impaired applican
whether any reasonable accommodations exist to enab
applicant to perform this particular job. The appli
the respondent that a scanner would reasonably acco
The scanner is very expensive and the respondent be
magnifier, backed up by the office secretary as a p
reader, would reasonably accommodate the applicant.
subsequently files a charge and the Commission conc
under the particular circumstances of that job, the
plus part-time reader was not an effective reasonab
accommodation. Thus, the Commission concludes that
failed to provide a reasonable accommodation and is
liable for discrimination. While the respondent wil
for backpay and instatement, as appropriate, the Co
not seek compensatory or punitive damages in this c
the respondent consulted with the complaining party
good faith belief that it had provided a reasonable
accommodation.

Finally, damages may not be available in certa
the employer acted with both legitimate and unlawfu
(mixed motives). Section 107(b) (to be codified at
706(g)(2)(B) of Title VII). See EEOC Enforcement Gu
N915.002, "Recent Developments in Disparate Treatme
July 14, 1992, for a full discussion of this issue.

II.     TYPES AND EXTENT OF RECOVERY

Section 1981A(b) sets limitations on certain c
complaining parties may recover. First, it specifie

punitive damages are available only if the complain
demonstrates that the respondent engaged in discrim
malice or reckless indifference to the federally pr
of an aggrieved individual." It also provides that
damages are not available against a governmental en
political subdivision.

Second, § 1981A(b) reiterates that compensator
do not include any relief authorized under § 706(g)
VII. Third, it provides a limitation on the sum of
damages and compensatory damages for "future pecuni
emotional pain, suffering, inconvenience, mental an
enjoyment of life, and other nonpecuniary losses."
on the amount of damages (caps) is based on the siz
employees)6 of the respondent. The limitations are
follows:

| | |
|---|---|
| 15 to 100 employees | : |
| 101 to 200 employees | : |
| 201 to 500 employees | : |
| 501 employees or more | : |

The limitations do not, on their face, apply to res
have fewer than fifteen employees, although labor o
and employment agencies with fewer than fifteen emp
subject to Title VII.7 Thus, a literal interpretati
provision would potentially subject them to unlimit
Such an interpretation would be inconsistent with C
intent to spare small respondents from large damage
provision could also be read to mean that labor org
employment agencies with fewer than fifteen employe
subject to any damages. The Commission rejects both
interpretations and concludes that all covered empl
agencies and labor organizations with 100 or fewer
subject to the $50,000 cap on damages.

When the Commission, or an individual, is purs
on behalf of more than one person, the damage caps
applied to each aggrieved individual. For example,
Commission files suit on behalf of ten complaining
against an employer who has 1000 employees, each co
party may receive (to the extent appropriate) up to
respondent's total liability for all ten complainir
be up to $3,000,000.8

Because relief recoverable under § 706(g) is r
to be compensatory damages, complaining parties may
compensation for back pay, interest on backpay, fro
relief that would have been available under Title \
of the Rehabilitation Act, or the ADA, without incl
caps. Although some may contend that frontpay is a
pecuniary loss" to be included in the caps, the Con
disagrees. Frontpay is a type of "relief authorized
VII" and, therefore, is excluded from the definitic
compensatory damages and is not included in the car

Past pecuniary losses are also not included in
are fully compensable where actual out-of-pocket lc
shown. Section 1981A(b)(3) limits only claims that
not lend themselves to precise quantification, i.e.
damages, future pecuniary losses, and nonpecuniary

Example: Complaining Party is subjected to
harassment and is subsequently demoted. As
suffers from severe depression. She spends
psychiatric and medical bills for treatmen1
depression. Her psychiatrist also testifies
require approximately two additional years
may receive $20,000 for the medical bills a
backpay and frontpay awards, all of which a
compensable and not included in the caps. S
receive damages for the depression (nonpecu

damages for future psychiatric bills for th[...]
years (future pecuniary losses), and puniti[...]
The respondent has 35 employees. The sum o[...]
for the depression, future psychiatric exp[...]
punitive damages cannot exceed the statuto[...]
$50,000.

A.    Compensatory Damages

Compensatory damages are awarded to compensat[...]
party for losses or suffering inflicted due to the [...]
act or conduct. See Carey v. Piphus 435 U.S. 247, 2[...]
(purpose of damages is to "compensate persons for [...]
by the deprivation of constitutional rights"). Comp[...]
damages "may be had for any proximate consequences[...]
established with requisite certainty." 22 Am Jur 2[...]
§ 45 (1965)" Compensatory damages include damages [...]
pecuniary loss (out-of-pocket loss), future pecuni[...]
nonpecuniary loss (emotional harm). Compensatory d[...]
allowed against federal, state, and local governmen[...]
sector employers.

The following section sets forth the legal par[...]
computing compensatory and punitive damages where [...]

1.    Pecuniary Losses

Pecuniary losses include, for example, moving [...]
search expenses, medical expenses,10 psychiatric e[...]
physical therapy expenses, and other quantifiable [...]
expenses that are incurred as a result of the disc[...]
conduct. To recover damages, the complaining party[...]
that the employer's discriminatory act or conduct [...]
of his loss. The critical question is whether the [...]
party incurred the pecuniary losses as a result of[...]
discriminatory action or conduct.

Section 1981A distinguishes past and future pe
losses, in that future pecuniary losses are subject
while past pecuniary losses are not. The Commission
that past pecuniary losses are out-of-pocket losses
prior to the date of the resolution of the damage
conciliation, settlement, or the conclusion of lit
amount to be awarded for past pecuniary losses can
by receipts, records, bills, cancelled checks, con
other individuals, or other proof of actual losses
Damages for past pecuniary losses will not normally
without documentation.

Future pecuniary losses are out-of-pocket expe
likely to occur after conciliation, settlement, or
of litigation.11 As noted previously, future pecun
subject to the caps and do not include frontpay. Fu
losses include the same expenses listed above, if t
will continue after settlement, conciliation or lit

The complaining party has a duty to mitigate h
damages. A complaining party may not recover damage
that (s)he could have avoided or minimized with rea
effort. See Restatement (Second) of Torts, § 918(1)
However, the respondent has the burden of showing t
complaining party failed to exercise reasonable di
mitigate his/her damages. Cf., e.g., Weaver v. Casa
Inc., 922 F.2d 1515, 1527, 55 EPD Par. 40,540 (11th
(employer has the burden of showing that the plaint
make reasonable efforts to find work to mitigate h:
seeking backpay); Fleming v. County of Kane, State
F.2d 553, 560 (7th Cir. 1990) (the burden is on the
prove, as an affirmative defense, that the employee
mitigate damages when seeking lost wages); Woolridg
Industries Corp., 875 F.2d 540, 548, 53 EPD Par. 39
1989) (defendant has the burden of producing suffic

to establish the amount of interim earnings or lack
in mitigating damages on the part of the plaintiff)
if the respondent can prove that the complaining pa
exercise reasonable diligence to mitigate his/her
could have avoided or minimized such damages with
effort, the damages may be reduced accordingly.

> Example: Complaining Party is a nurse in Ne
> which has a critical nursing shortage. CP w
> she rejected the sexual advances of the hos
> administrator. CP has been unemployed for
> She seeks recovery for past pecuniary losse
> include, among other losses, moving expense
> California and job search expenses in Calif
> maintains that it was necessary to move to
> find another nursing position. The responde
> CP could have found a comparable nursing po
> York City with reasonable diligence within
> weeks and that her New York job search expe
> have been minimal. Therefore, CP's recovery
> for her moving expenses and job search expe
> California may be limited to the amount of
> expenses she would have incurred in New Yor
> Backpay and damages sought for the other pe
> incurred during her year-long unemployment
> reduced, since the respondent has proved th
> have found another job within a few weeks.

2.    Nonpecuniary Losses

Damages are available for the intangible inju
emotional harm such as emotional pain, suffering,
mental anguish, and loss of enjoyment of life. Othe
losses could include injury to professional standir
character and reputation, injury to credit standing
health, and any other nonpecuniary losses that are

result of the discriminatory conduct. Nonpecuniary
emotional harm are more difficult to prove than pec
losses.13 Emotional harm will not be presumed simpl
complaining party is a victim of discrimination.14
nature, and severity of emotional harm must be prov
harm may manifest itself, for example, as sleepless
stress, depression, marital strain, humiliation, em
distress, loss of self esteem, excessive fatigue, c
breakdown. Physical manifestations of emotional har
of ulcers, gastrointestinal disorders, hair loss, c

An award for emotional harm is warranted only
sufficient causal connection between the respondent
actions and the complaining party's injury. See Gor
563 F.2d 159, 164 (5th Cir. 1977). The discriminato
conduct must be the cause of the emotional harm. Th
emotional harm will be seriously undermined if the
symptoms of emotional harm preceded the discrimina
if a complaining party had preexisting emotional di
his mental health deteriorates as a result of the c
conduct, the additional harm may be attributed to t
The fact that the complaining party may be unusual
sensitive and incur great emotional harm from discr
conduct will not absolve the respondent from respon
the greater emotional harm. Williamson v. Handy But
Company, 817 F.2d 1290, 1294, 43 EPD Par. 37,178 (7
("perhaps [plaintiff] was unusually sensitive, but
takes its victims as it finds them"). For example,
Commission finds that the respondent is liable for
harassment against three female employees, one of w
incest victim. The incest victim incurred much grea
harm from the sexual harassment than did her two co
respondent is liable for the greater emotional harm
incest victim suffered.

For charges alleging emotional harm, consider

are directly relevant to whether and to what extent
caused the employee's emotional harm. For example,
Prudential Insurance Co., 852 F.2d 688, 690-91, 47
38,167 (2d Cir. 1988), the court found that defenda
to promote the plaintiff caused him severe emotiona
humiliation, loss of self esteem, marital problems,
drinking. However, the court considered several fac
determine whether and to what extent the emotional
caused by the defendant or by other factors. The fa
considered were that: 1) the plaintiff had not been
overt racism or public humiliation; 2) upper manage
aware that race was a factor in the failure to pron
plaintiff, who had been offered three other less at
positions; 3) the plaintiff had caused some of the
and difficulties that he had with his co-workers be
clients that he would be promoted and he criticized
co-workers in a newspaper article; and 4) the plain
sought counseling. The court found that these facto
lower amount than the plaintiff sought. In Vance v.
Telephone and Telegraph Company, 863 F.2d 1503, 151
38,626 (11th Cir. 1989), the court found that an av
$500,000 in compensatory damages for mental distres
harm, or humiliation resulting from racial discrimi
properly ruled excessive where there were other fac
probably contributed to the plaintiff's mental dist
plaintiff had marital problems because her husband
paternity suit by another woman, financial problems
resulting from an automobile accident, dietary prot
family illnesses and deaths. Therefore, where a con
party's emotional harm is due in part to personal c
which were not caused or exacerbated by the discrim
conduct, the employer is liable only for the harm r
the discriminatory conduct.

The Commission will typically require medical
emotional harm to seek damages for such harm in con

negotiations. However, evidence of emotional harm m
established by testimony. Gunby v. Pennsylvania Ele
840 F.2d 1108, 1121–22, 45 EPD Par. 37,785 (3d Cir.
denied, 492 U.S. 905, 50 EPD Par. 39,201 (1989); Co
Prudential Insurance Co., 852 F.2d at 690–91. The '
own testimony may be solely sufficient to establish
or mental distress." Williams v. TransWorld Airline
F.2d 1267, 1273, 27 EPD Par. 32,174 (8th Cir. 1981)
a plaintiff was awarded $52,644.80 in damages for m
and emotional distress resulting from losing his ho
marital harmony, and the respect of his children, a
discriminatorily discharged. Muldrew v. Anheuser–Bu
F.2d 989, 33 EPD Par. 34,187 (8th Cir. 1984). In Bl
Macy & Co., Inc., 712 F.2d 1241, 1245, 32 EPD Par.
Cir. 1983), the plaintiff was awarded $12,402 for '
anguish, humiliation, embarrassment and stress," $7
backpay, and $60,000 in punitive damages. The evide
was that the supervisor openly manifested racial bi
Blacks by making racially offensive references to t
another employee, and customers. On one occasion, t
and plaintiff got into a dispute during which the s
berated the plaintiff in street language in front o
and customers, although she never addressed White e
this manner. The supervisor reported the dispute to
and told them that she wanted plaintiff "out of the
Management discharged the plaintiff without asking
version of the incident, although they were well aw
supervisor's racial bias. The plaintiff testified t
and felt angry" with her supervisor after her disch
Plaintiff further testified that she was unemployed
months and because of her financial dilemma, she su
sleeplessness, anxiety, embarrassment, and depressi
found this evidence sufficient to award damages for
distress.

Similarly, in Stallworth v. Shuler, 777 F.2d 1

Par. 35,806 (11th Cir. 1985), a case brought under
and § 1981, the court affirmed an award for $100,0(
humiliation and emotional distress. Over a period o
plaintiff was consistently passed over for adminis1
positions and principalships for racial reasons, wh
qualified White persons were promoted. As a result,
suffered emotional stress, loss of sleep, marital s
humiliation. The defendant stated that there was no
plaintiff missed work, received professional help,
his relationships with students or co-workers. Pla:
countered that he was careful not to give the respo
not to promote him. The court found that plaintiff'
sufficient to award damages. However, for conciliat
settlement purposes, testimony solely by the compla
may not be sufficient to establish emotional harm.
be corroborating testimony by the complaining party
supervisors, family, friends, or anyone else with h
the emotional harm.

    Damage awards for emotional harm vary signific
there are no definitive rules governing the amounts
awarded. However, compensatory damage awards must b
the sums necessary to compensate the plaintiff for
even if the harm is intangible. Carter v. Duncan-Hu
727 F.2d 1225, 33 EPD Par. 34,187 (D.C. Cir. 1984).
v. Handy Button Machine Company, 817 F.2d at 1293-9
upheld a damage award of $10,000 for the psychologi
of a nervous breakdown after the following sequence
Plaintiff was discriminated against for over a deca
assigned unskilled work, although she was qualified
occasionally performed, skilled work. Plaintiff was
for numerous promotions, in favor of less qualified
employees with less seniority. Plaintiff was also a
lower status department despite her protests and th
rule in the collective bargaining agreement. Finall
occasion, the plaintiff used an upstairs bathroom,

been assigned a locker by the company, and was loud
scatological terms by a supervisor for using this 
bathroom. The psychiatrist characterized the bathro
the straw that broke the camel's back. The plainti
able to return to work. In addition to the award fc
harm, plaintiff received $130,000 for backpay and 
$10,000 for medical and psychological expenses, and
punitive damages.

   In comparison, in another case brought under §
the plaintiff received $123,000 for emotional disti
plaintiff had been under stress continuously for fe
mistake on the job, because he was discriminatorily
training which he needed for adequate performance. 
plaintiff's White coworkers, both senior and junior
plaintiff, regularly received formal training. He v
raises equivalent to those of his White co-workers 
poor evaluations, which stressed the need for trair
plaintiff finally received training after numerous 
was superficial in nature. Plaintiff's stressful si
resulted in high absenteeism and he was placed on p
filed a complaint and was subsequently discharged. 
psychiatrist testified that the plaintiff was suffe
anxiety, stress, and depression. The court found th
adequate basis for the award. Plaintiff also receiv
backpay, and $300,000 in punitive damages. Rowlett 
Anheuser-Busch, 832 F.2d 194, 44 EPD Par. 37,428 (1

   The method for computing nonpecuniary damages 
conciliation or settlement should typically be base
consideration of the severity of harm and the time 
complaining party has suffered from the emotional h
determine the severity of the harm consider, for e>
the harm consisted of occasional sleeplessness, or 
breakdown resulting in years of psychotherapy. The 
that the complaining party has suffered from the er

is also relevant. Of course, a complaining party wh
from severe depression for two months will be awarc
than a complaining party who has suffered from seve
for a year. However, different methods of computing
amounts for emotional harm may be appropriate in ce
Since medical evidence is important, a medical rele
obtained from the complaining party whenever emotic
physical harm is alleged.

        B.      Punitive Damages

        Punitive damages are awarded to punish the res
deter future discriminatory conduct. They are not a
against a federal, state, or local government, a gc
agency, or a political subdivision. Punitive damage
available only where the respondent acted with "mal
reckless indifference to the federally protected ri
aggrieved individual." Section 1981A(b)(1).

        This standard is consistent with § 1981 and th
should be interpreted consistently.16 The standard
punitive damages under § 1981 is whether the defenc
with malice, an evil motive, or recklessness or cal
indifference to a federally protected right. Stephe
Atlantic Canners, Inc., 848 F.2d 484, 489, 46 EPD F
(4th Cir. 1988), cert. denied, 488 U.S. 996 (1988).
under § 1983, plaintiffs may recover punitive damac
"the defendant's conduct is shown to be motivated k
or intent, or when it involves reckless or callous
to the federally protected rights of others." Smith
U.S. 30, 56 (1983); Garza v. City of Omaha, 814 F.2
EPD Par. 37,072 (8th Cir. 1987) (punitive damages u
1983 "may be awarded where the defendant exhibits c
malice, gross negligence, willful or wanton misconc
reckless disregard for the civil rights of the plai

1.    Determining Malice or Reckless Dis

A "finding of liability does not of itself ent
plaintiff to an award of punitive damages." Yarbrou
Oldsmobile, 789 F.2d 508, 514, 40 EPD Par. 36,216 (
1986). However, conscious, purposeful discriminatio
sufficient to warrant punitive damages.[17] As the Fi
has observed, "can it really be disputed that inten
discriminating against a [B]lack man on the basis o
color is worthy of some outrage?" Rowlett v. Anheus
F.2d 194, 206, 44 EPD Par. 37,428 (1st Cir. 1987).
Freedman Baking Company, 810 F.2d 6, 42 EPD Par. 36
1987), punitive damages were warranted for three Bl
plaintiffs, after two plaintiffs were fired because
believed that it "just doesn't look good" for too n
work in the main store. The third plaintiff compla
told that when too many Blacks get together "they g
He was fired when he provided a statement to the EE
other plaintiffs' behalf. The court stated that it
unreasonable for the jury to view such conduct as d
deserving of substantial punitive damages." Id. at

A number of factors may be considered to deter
conduct was committed with malice or reckless indif
complaining party's federally protected rights. Thi
likely to have already been obtained during the lia
of the investigation. The list is nonexclusive and
factors may also be considered.

1.  The degree of egregiousness and nature of
respondent's conduct should be considered. See Rest
(Second) of Torts, § 908(2). In EEOC v. Gaddis, 733
1373, 1380, 34 EPD Par. 34,348 (10th Cir. 1984), th
that allowance of punitive damages "involves an eva
nature of the conduct in question." The respondent
employment offer to the plaintiff, an out-of-state

based upon a recommendation by another employee. Pl[...]
accepted the position and his name was posted on a[...]
board as a new employee. The respondent met the pla[...]
first time when he reported for work. The responden[...]
upset when he discovered that the plaintiff was Bla[...]
that a Black person would never be allowed to work[...]
The plaintiff worked for several days and was fired[...]
respondent stated that no vacancy existed, although[...]
subsequently hired two White males for the position[...]
determined that this conduct warranted punitive dam[...]

Conduct which is shocking or offends the cons[...]
egregious and warrants punitive damages. For exampl[...]
supervisor often asks CP for dates and sometimes ma[...]
remarks to her, although CP has repeatedly asked h[...]
alone. The supervisor finally tells CP, who is the[...]
person for an upcoming promotion, that if she wants[...]
she must have sex with him. The supervisor's condu[...]
considered "shocking."

2.  The nature, extent, and severity of the ha[...]
complaining party should be considered. The Restate[...]
of Torts, § 908(2); Keenan v. City of Philadelphia,[...]
Cases 932, 943 (E.D. Pa. 1991).

3.  The duration of the discriminatory conduct[...]
For instance, an extended period of discriminatory[...]
"suggests an official policy of discrimination as [...]
work of a renegade supervisor." Williamson v. Handy[...]
Machine Company, 817 F.2d at 1296. Evidence that th[...]
tolerated or condoned the discriminatory conduct ov[...]
time could constitute malice and/or reckless indif[...]

4.  The existence and frequency of similar pas[...]
discriminatory conduct by the respondent should be[...]
For example, if there is a continuing pattern of ha[...]

the respondent, it may be sufficient to find malice
indifference.

    5.  Evidence that the respondent planned and/c
conceal or cover-up the discriminatory practices or
relevant.

    6.  The employer's actions after it was inform
discrimination should be considered. An employer wh
of discriminatory conduct and fails to take action
punitive damages. See Yarbrough v. Tower Oldsmobile
514-15 (punitive damages warranted under § 1981 whe
plaintiff testified that his supervisor reprimanded
writing, without cause, and transferred him to a le
work area after saying "[w]e don't want no Black gu
of the shop;" the plaintiff brought his complaints
discrimination to management, who failed to respond
to be "indifferent to his federally protected right

    7.  Proof of threats or deliberate retaliatory
against complaining parties for complaints to manag
filing a charge normally will constitute malice. Hu
Allis-Chalmers, 797 F.2d 1417, 1425, 41 EPD Par. 3€
1986) (punitive damages warranted where the defenda
deliberately fired a worker for making well-founded
with a state FEP agency about persistent acts of ra
harassment); Erebia v. Chrysler Plastic Products Cc
1250, 1260, 37 EPD Par. 35,317 (6th Cir. 1985) (mar
to hurt plaintiff economically for pursuing his con
harassment may constitute malice), cert. denied, 47
(1986).

    2.    Calculation of Punitive Damage Amo

    If malice or reckless disregard of the compla:
rights is found, respondents may be liable for pun:

up to the maximum amount allowed.18 Congressional :
make respondents "liable for the non-wage economic
of [intentional] discrimination up to the full exte
stated limitations." Sponsors' Interpretative Memo:
Cong. Rec. S15,484 (daily ed. Oct. 30, 1991).

Of course, the punitive damage award should "t
relation to the 'character of the defendant's act'
'the nature and extent of the harm to the plaintif:
defendant caused."' Rowlett v. Anheuser-Busch, 832
quoting, Restatement (Second) of Torts, § 908(2). T
factors are discussed above on pages 15 and 16.

The financial position of the respondent is a
City of Newport v. Fact Concerts, Inc., 453 U.S. 24
("evidence of a tortfeasor's wealth is traditionall
as a measure of the amount of punitive damages that
awarded"); Rowlett v. Anheuser-Busch, 832 F.2d at 2
defendant may well be required to pay more than a p
committed the same wrong"). The award should be con
context of the respondent's monetary resources. The
punitive damages should "sting," but not "destroy"
respondent. Keenan v. City of Philadelphia, 55 FEP
944-45. The following factors are relevant in deter
respondent's financial position. Note, however, tha
not exclusive and other relevant factors may also b

      A.    The revenues and liabilities of th

      B.    The fair market value of the resp
          assets.

      C.    The amount of liquid assets on han
          includes amounts that they can rea
          borrow.

D.      The respondent's propensity to ger
        in the future -- projected earning

E.      The resale value of the business.
        particularly useful where the bus:
        unique spot in the market. For ins
        companies may be seeking to buy th

F.      Consider whether the respondent is
        with, or a subsidiary of, a larger
        could provide additional financial
        the respondent.

     In Bessier v. Precise Tool & Engineering Co.,
Supp. 1509, 57 FEP Cases 1249 (W.D. Mo. 1991), the
granted discovery of defendant's financial records
case on the issue of punitive damages. The financia
included: 1) financial statements; 2) income tax re
documents reflecting the defendant's gross income,
and expenditures; 4) bank statements and deposit re
general ledgers. The defendant was also compelled f
interrogatories as to its net worth. See also Helle
Co., 55 EPD Par. 40,431, 53 FEP Cases 911 (D. Or.
(Plaintiff may be entitled to defendant's profit ar
statements and balance statements after making a pr
showing of entitlement to punitive damages).

III.    CHARGE RESOLUTION

     Damages are often a necessary component of ful
the extent that unlawful conduct occurred on or aft
21, 1991. EEOC Policy Guidance No. 915.002, "Applic
Damages Provisions of the Civil Rights Act of 1991
Charges and Pre-Act Conduct," December 27, 1991.

     Damages for past pecuniary losses should be re

sought. Do not assume emotional harm, or automatica
damages for such harm. Typically, the Commission wi
medical evidence of emotional harm to seek damages
in conciliation negotiations. However, in exception
complaining party may establish emotional harm with
documentation, but (s)he should have a reasonable
for not seeking medical attention for the emotional

    If malice or reckless disregard of the compla:
rights is found, the District Director and the Reg:
should be consulted, who will, in turn, consult wit
on a case-by-case basis.

_____7/14/92_____    _____-S-__
Date                         Evan J. Kemp, Jr.

1.    Section 102 will be codified at 42 U.S.C. §
rather than as part of Title VII. The text of § 198
attached as Appendix A.

2.    The term "complaining party" means the Equal
Opportunity Commission, the Attorney General, or a
bring an action or proceeding under Title VII, the
Act, or the Americans with Disabilities Act. Secti

3.    "The term 'respondent' means an employer, er
agency, labor organization, joint labor-management
controlling apprenticeship or other training or ret
program, including an on-the-job training program,
entity subject to section 717." Section 104(n) (to
§ 701(n) of Title VII).

4.    42 U.S.C. § 1981 provides a cause of action

individuals who are discriminated against on the ba
the making and enforcing of contracts. The Civil Ri
1991 amends § 1981 to include all forms of racial b
employment. Section 101(2)(b) of the Act provides t
'make and enforce contracts' includes the making, p
modification, and termination of contracts, and the
all benefits, privileges, terms and conditions of t
relationship." Race includes, to some extent, "ethn
St. Francis College v. Al-Khazraji, 481 U.S. 604 (1
1981 prohibits racial discrimination as well as dis
the basis of "ancestry or ethnic characteristics").

5.     Relief under § 706(g) of Title VII has tradi
been limited to equitable relief. See, e.g., Mitche
System Railroad, 883 F.2d 451, 452, 51 EPD Par. 39,
1989) (Title VII plaintiffs are entitled to equitab
not to compensatory damages). Equitable relief unde
706(g) usually means backpay, reinstatement, and/or
Fringe benefits and all forms of compensation are i
backpay. EEOC "Policy Statement on Remedies and Rel
Individual Cases of Unlawful Discrimination," Februa
Injunctions against future discriminatory conduct b
respondent may also be imposed.

6.     Part-time employees are included in this cou
Policy Guidance No. N-915-052, "Whether part-time e
employees within the meaning of § 701(b) of Title V
§ 11(b) of the ADEA," April 20, 1990. Two circuits
concluded that part-time employees are not counted
for jurisdictional purposes. See, e.g., EEOC v. Gar
Associates, 956 F.2d 842 (8th Cir. 1992) (ADEA)- Zi
North American Signal Corp., 794 F.2d 347, 354, 31
33,486 (7th Cir. 1983) (ADEA). However, the conclus
cases were based on the definitional requirement th
have the requisite number of employees "for each wo
each of twenty or more calendar weeks." Because §

1981A(b)(3) does not contain the "for each working
requirement for counting employees to determine a i
cap, the rationale for a Garden or Zimmerman type c
appears to have been eliminated.

7.     See EEOC Compliance Manual, Volume II, § 605
Appendix N. This guidance explains that both labor
and employment agencies with fewer than fifteen emp
covered by Title VII, if they regularly deal with 1
covered employers. Labor organizations need only op
hall which procures employees for an employer or ha
members to be covered by Title VII. See 42 U.S.C. §
2000e(e).

     Basing a union's damage caps on its number of
rather than on the number of its members, may have
drafting error. However, since § 1981A(b)(3) speci1
refers to the number of "employees," and since that
inconsistent with the provision's purpose, the Comm
interprets the statute to mean that the caps relate
of a union's employees, rather than to the number c

8.     Section 1981A(b)(3) provides that the amount
"shall not exceed [the caps] for each complaining p
Complaining party is defined as "the Equal Employme
Commission, the Attorney General, or a person who n
action under [Title VII, the ADA or the Rehabilitat
Section 1981A(d) (emphasis added), Since each indiv
states a claim under one of these statutes is one v
an action, each is eligible for damages up to the c
true even when their claims are joined either in Co
private litigation brought on behalf of several inc
in a class action brought by a private party.

     As a policy matter, any other construction wou
with Congressional intent to make damages available

compensate persons harmed by discrimination and to
discrimination. Moreover, a contrary interpretatior
least unwieldy, if not unworkable. If the Commissic
damages on behalf of each aggrieved person in a sir
would have to file numerous individual suits or rec
each individual intervene in Commission actions.

9.    The Sponsors' Interpretative Memorandum, 137
S15,484 (daily ed. Oct. 30, 1991), states that "dan
include backpay, the interest thereon, frontpay, or
relief authorized under Title VII." (emphasis addec
Representative Edwards' Interpretative Memorandum,
H9527 (daily ed. Nov. 7, 1991) (frontpay is relief
under Title VII and is excluded from damages). More
generally find that frontpay is an available remedy
VII. See, e.g., Carter v. Sedgwick County, 929 F.2c
56 EPD Par. 40,699 (10th Cir. 1991); Weaver v. Casa
Inc., 922 F.2d 1515, 1528, 55 EPD Par. 40,540 (11th
Edwards v. Occidental Chemical Corp., 892 F.2d 1442
Par. 39,585 (9th Cir. 1990); Pitre v. Western Elect
F.2d 1262, 127879, 46 EPD Par. 37,882 (10th Cir. 19
Fortino v. Quasar Company, 950 F.2d 389, 57 EPD Par
Cir. 1991) (ADEA case questioning frontpay awards u
because "Title VII authorizes only equitable relief
resembles common law damages for breach of employme

10.    Although compensatory damages were not avail
Title VII prior to § 1981A, medical expenses have b
awarded as part of § 706(g) relief in some circumst
See, e.g., EEOC v. Service News Co., 898 F.2d 958,
39,736 (4th Cir. 1990) (court awarded unreimbursed
expenses, which resulted from plaintiff's loss of h
insurance after she was discriminatorily dischargec
Parker Hannifan Corp., 747 F. Supp. 1118, 1132, 55
40,531 (D.N.J. 1990) (court awarded unreimbursed me
expenses, resulting from plaintiff's loss of health

part of backpay). In such cases, medical expenses v
excluded from the caps, either as relief authorized
706(g) or as past pecuniary losses.

11.     Congressional intent for including future p
losses in the caps appears to have been to limit da
losses that are typically difficult to quantify. I1
out-of-pocket losses can be shown, they can be reco
regard to the limitations on damages. Up to the tin
resolution of the complaint, whether at conciliatio
or the conclusion of litigation, actual out-of-pocl
be shown with some certainty.

12.     By analogy, § 706(g) of Title VII provides
interim earnings or amounts earnable with reasonabl
the charging party shall operate to reduce a backpa

13.     Cases awarding compensatory and punitive da
other civil rights statutes will be used for guidar
analyzing the availability of damages under § 1981/
1981 cases are particularly useful because Congress
§ 1981A damage provisions as an amendment to § 1981

14.     Complaining parties should be informed that
emotional harm, respondents may be able to obtain r
medical and/or psychiatric treatments for condition
the complained of symptoms. A respondent may also c
information concerning the complaining party's priv

15.     During litigation, the amount of damages wi
by a jury if either party requests a jury. Jury tri
available if a plaintiff seeks compensatory or puni
Section 1981A(c).

16.     "Punitive damages are available under [§ 19
the same extent and under the same standards that 1

available to plaintiffs under 42 U.S.C. § 1981. No
standard may be imposed." Representative Edwards' 1
Memorandum, 137 Cong. Rec. H9527 (daily ed. Nov. 7,

17.    Malice is defined as "a condition of mind w
person to do a wrongful act willfully, that is, on
the injury of another." Black's Law Dictionary 862
1979). Thus, discriminatory conduct "is maliciously
prompted or accompanied by ill will ... either towa
person individually or toward all persons in one or
... of which the injured person is a member." Soder
Burnett County, 752 F.2d 285, 289 (7th Cir. 1985),
471 U.S. 1117 (1985).

18.    The sum of punitive damages, future pecunia
nonpecuniary losses may not exceed the damage caps
§ 1981A(b)(3). Therefore, punitive damage awards un
§ 1981A typically will not be "grossly excessive" c
"shocking." See Rowlett v. Anheuser–Busch, 832 F.2d
EPD Par. 37,428 (1st Cir. 1987) (punitive damage av
million ruled grossly excessive and reduced to $300
v. Southern Bell Telephone and Telegraph Company, 8
1516, 48 EPD Par. 38,626 (11th Cir. 1989) (punitive
of $2.5 million is "high and rather shocking").


APPENDIX A

    SEC. 102. DAMAGES IN CASES OF INTENTIONAL DISC

    The Revised Statutes are amended by inserting
1977 (42 U.S.C. 1981) the following new section:

"SEC. 1977A.    DAMAGES IN CASES OF INTENTIONAL DI
IN EMPLOYMENT.

"(a) RIGHT OF RECOVERY.—

"(1) CIVIL RIGHTS.— In an action brought by a
party under section 706 or 717 of the Civil Rights
(42 U.S.C 2000e–5) against a respondent who engaged
intentional discrimination (not an employment prac
unlawful because of its disparate impact) prohibited
section 703, 704, or 717 of the Act (42 U.S.C. 2000
2000e–3), and provided that the complaining party
under section 1977 of the Revised Statutes (42 U.S.
complaining party may recover compensatory and pun
as allowed in subsection (b), in addition to any re
authorized by section 706(g) of the Civil Rights Ac
from the respondent.

"(2) DISABILITY.— In an action brought by a co
party under the powers, remedies, and procedures se
section 706 or 717 of the Civil Rights Act of 1964
in section 107(a)), and section 505(a)(1) of the Re
Act of 1973 (29 U.S.C. 794a(a)(1)), respectively) a
respondent who engaged in unlawful intentional disc
(not an employment practice that is unlawful becaus
disparate impact) under section 501 of the Rehabil
1973 (29 U.S.C. 791) and the regulations implement
501, or who violated the requirements of section 50
or the regulations implementing section 501 concern
provision of a reasonable accommodation, or section
Americans with Disabilities Act of 1990 (42 U.S.C.
committed a violation of section 102(b)(5) of the A
individual, the complaining party may recover compe
punitive damages as allowed in subsection (b), in a
relief authorized by section 706(g) of the Civil Ri
1964, from the respondent.

"(3) REASONABLE ACCOMMODATION AND GOOD FAITH E
cases where a discriminatory practice involves the

reasonable accommodation pursuant to section 102(b)
Americans with Disabilities Act of 1990 or regulati
implementing section 501 of the Rehabilitation Act
damages may not be awarded under this section where
entity demonstrates good faith efforts, in consulta
person with the disability who has informed the cov
that accommodation is needed, to identify and make
accommodation that would provide such individual wi
effective opportunity and would not cause an undue
the operation of the business.

"(b) COMPENSATORY AND PUNITIVE DAMAGES.—

    "(1) DETERMINATION OF PUNITIVE DAMAGES.— A com
may recover punitive damages under this section aga
respondent (other than a government, government age
political subdivision) if the complaining party dem
the respondent engaged in a discriminatory practice
discriminatory practices with malice or with reckle
indifference to the federally protected rights of a
individual.

    "(2) EXCLUSIONS FROM COMPENSATORY DAMAGES.— Co
damages awarded under this section shall not inclue
interest on backpay, or any other type of relief au
section 706(g) of the Civil Rights Act of 1964.

    "(3) LIMITATIONS.— The sum of the amount of co
damages awarded under this section for future pecun
emotional pain, suffering, inconvenience, mental an
enjoyment of life, and other nonpecuniary losses, a
of punitive damages awarded under this section, sha
for each complaining party—

        "(A) in the case of a respondent who has
and fewer than 101 employees in each of 20 or more

in the current or preceding calendar year, $50,000;

        "(B) in the case of a respondent who has
and fewer than 201 employees in each of 20 or more
in the current or preceding calendar year, $100,000

        "(C) in the case of a respondent who has
and fewer than 501 employees in each of 20 or more
in the current or preceding calendar year, $200,000

        "(D) in the case of a respondent who has
employees in each of 20 or more calendar weeks in 1
preceding calendar year, $300,000.

    "(4) CONSTRUCTION.— Nothing in this section sh
construed to limit the scope of, or the relief avai
section 1977 of the Revised Statutes (42 U.S.C. 198

"(c) JURY TRIAL.— If a complaining party seeks comp
punitive damages under this section—

    "(1) any party may demand a trial by jury; and

    "(2) the court shall not inform the jury of th
described in subsection (b)(3).

"(d) DEFINITIONS.— As used in this section:

    "(1) COMPLAINING PARTY.—The term 'complaining

        "(A) in the case of a person seeking to k
under subsection (a)(1), the Equal Employment Oppor
Commission, the Attorney General, or a person who n
action or proceeding under title VII of the Civil F
1964 (42 U.S.C. 2000e et seq.); or

"(B) in the case of a person seeking to b
under subsection (a)(2), the Equal Employment Oppor
Commission, the Attorney General, a person who may
action or proceeding under section 505(a)(1) of the
Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)),
who may bring an action or proceeding under title I
Americans with Disabilities Act of 1990 (42 U.S.C.
seq.).

"(2) DISCRIMINATORY PRACTICE.—The term 'discri
practice' means the discrimination described in par
the discrimination or the violation described in pa
of subsection (a)."