# AMOS

## vs

# THE LAMPO GROUP LLC, et al.

---

# DISCOVERY DISPUTE CONFERENCE

## May 02, 2023

---



**Michelle Checuga, LCR**

Chattanooga (423)266-2332    Jackson (731)425-1222
Knoxville (865)329-9919    Nashville (615)595-0073    Memphis (901)522-4477
www.elitereportingservices.com

```
 1            UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF TENNESSEE
 2              NASHVILLE DIVISION

 3   _____

 4   BRAD AMOS,

             Plaintiff,
 5
     vs.                    Case No. 3:21-cv-00923
 6
     THE LAMPO GROUP, LLC,
 7   et al.,

 8           Defendants.

 9   _____

10
11
12
13
14
              DISCOVERY DISPUTE CONFERENCE
15
              May 2, 2023
16
              Commencing at 12:04 p.m. CST
17
18
19
20
21
22   _____
23        Elite-Brentwood Reporting Services
              Www.elitereportingservices.com
24        Michelle Checuga, LCR, RPR
              555 Marriott Drive
25        Nashville, Tennessee 372214
              (615)595-0073

 1
```

```
 3

 4        A P P E A R A N C E S

 5

 6

 7   For the Plaintiff:
 8      MR. JONATHAN A. STREET
        Attorney at Law
 9      The Employment & Consumer Law Group
        1720 West End Avenue, Suite 402
10      Nashville, TN  37203
        (615)850-0632
11      street@eclaw.com

12

13

14   For the Defendants:
15      MS. LESLIE GOFF SANDERS
        Attorney at Law
16      Jackson Lewis, P.C.
        611 Commerce Street, Suite 3102
17      Nashville, TN  37203
        (615)565-1661
18      leslie.sanders@jacksonlewis.com

19
20
21
22
23
24
25
```

1                    * * *
2          MS. SANDERS:  Okay, you ready, Jon?
3  You good to go.
4          MR. STREET:  Uh-huh.
5          MS. SANDERS:  All right.  I've got --
6  I've got a small list of things, I thought
7  maybe we could just go in buckets.
8          MR. STREET:  Okay.
9          MS. SANDERS:  Like, so to start with,
10 I think this is an easy one, you had issued a
11 subpoena.  I don't know how you pronounce it,
12 but they're doing business as INC Mansueto [sp]
13 maybe?  I'm not seeing those documents, so I
14 don't know, maybe you --
15         MR. STREET:  From INC?
16         MS. SANDERS:  Uh-huh.
17         MR. STREET:  We didn't get any.
18         MS. SANDERS:  Okay, got it.  I just
19 had that on my list.
20      And then as far as the subpoena to
21 Melissa Amos, she wants to do the deposition,
22 instead of the 11th, on the 9th.  We already
23 have -- who do we have on the 9th -- Armando
24 Lopez on the 9th.
25         MR. STREET:  Uh-huh.

1          MS. SANDERS:  So do you want to do
2  them both on the same day?  I can move Armando
3  to the 11th if you'd rather swap them.
4          MR. STREET:  Uh-huh.  His personal
5  depo, maybe -- can we -- is there any chance --
6  I really am supposed to go get a CT scan
7  tomorrow.
8          MS. SANDERS:  Okay.
9          MR. STREET:  I'd really like to
10 change Laura Johnson to next week because of
11 that.
12         MS. SANDERS:  Yeah, I've got her on
13 the list, too.  You asked me to check on the
14 8th and 10th.  Laura -- those were days she'd
15 originally given me.  She did e-mail me, and
16 let me just pull that up because I -- she
17 e-mailed -- I know that it's going to work, I
18 just don't know -- it's either the 8th or the
19 10th.  Let me see what she says.
20      I think she's okay on both dates.  For
21 me, the 8th would be better, but let me just
22 double-check that.
23         MR. STREET:  That's the day we've got
24 JB Wagner right now.
25         MS. SANDERS:  Yeah.

Case 3:21-cv-00923  Document 262-4  Filed 06/30/25  Page 2 of 30 PageID #: 5990
Elite-Brentwood Reporting Services  Page 2 of 30 Pages
www.EliteReportingServices.com

1    MR. STREET:  Okay, that might -- I
2  don't think that that one -- I think it'll take
3  all day.
4        MS. SANDERS:  Laura or JB?
5        MR. STREET:  Both.
6        MS. SANDERS:  Or both -- okay.
7      She says the 10th -- Laura says the 10th
8  is better than the 8th, but she can make either
9  work.  So the 10th is David DiCicco.  The 8th
10  is Laura and -- or is JB.
11        MR. STREET:  Right.
12        MS. SANDERS:  So which day would you
13  rather do her?
14        MR. STREET:  But she can't do any day
15  besides the 8th or 10th?
16        MS. SANDERS:  Those are the only days
17  she had next week.  I've made -- those are the
18  only days that she had given me for next week,
19  and I asked her if she had any others.  And so
20  far, the 10th and the 8th, she's still got
21  them.  She's booked something on the 8th, but
22  she says she can change it.
23        MR. STREET:  Oh, okay.
24      Yeah, while we're here, I think we are
25  probably going to ask the Court to give us a

1  few more weeks to finish these up.
2        MS. SANDERS:  Okay.  Yeah, we're --
3  we're not going to agree, but that's certainly
4  your prerogative.
5        MR. STREET:  Uh-huh.  So...
6        MS. SANDERS:  And I'm willing to do
7  the 8th like a long day, you know, if that
8  helps.  The issue on the 10th is David DiCicco
9  does not work at Ramsey anymore.
10        MR. STREET:  Uh-huh.
11        MS. SANDERS:  So coordinating him is,
12  you know, more trouble --
13        MR. STREET:  We'll just keep her
14  tomorrow.
15        MS. SANDERS:  Well, I've already --
16  well, now I've already called her off tomorrow.
17  Let me make sure.  You do want to keep her
18  tomorrow, though?
19        MR. STREET:  Yeah, I mean, because
20  we've got -- like I said, we've got one on the
21  8th and the 10th, so we can't -- we got
22  DiCicco.
23        MS. SANDERS:  Okay.  Let me just --
24  I'm going to ask her that while I'm here, just
25  to make sure.

1        MR. STREET:  And we have somebody
2  Friday.
3        MS. SANDERS:  That's Luke LeFevre.
4        MR. STREET:  Okay.
5        MS. SANDERS:  I might be able to
6  move -- I might be able to move JB.  I didn't
7  think about that.  Like, we might can to move
8  JB to the 11th.  I don't know, let me look and
9  see if that's a date that we had for him.  Let
10  me look and see.
11      Because he's -- he works at Ramsey, so, I
12  mean, he's -- he -- he and Laura are easier to
13  schedule because they are employees.  Let's
14  see.
15      All right.  Do you have Wi-Fi, guest
16  Wi-Fi, John?
17        MR. STREET:  Uh-huh.  It should be EC
18  Law, and the password -- let me see, I always
19  forget what it is.
20        MS. SANDERS:  Because you never have
21  to connect.
22        MR. STREET:  Exactly.
23        THE REPORTER:  Actually, it might be
24  right here.
25        MS. SANDERS:  Oh, yeah.  There we go.

1  Is that it?  Okay, yeah.
2      I don't know that it's showing up, let me
3  look.
4      Here we go, E and C, okay.
5        MR. STREET:  I'm sorry, did you want
6  some coffee or a soda or something like that?
7        MS. SANDERS:  No, I'm good.  Thank
8  you.
9      Let's see.  This might be faster if I
10  connect to your -- because I'm having to look
11  locally.  Oh, it's telling me I can't connect.
12      Did you connect?  Are you connected?
13        THE REPORTER:  I don't use Wi-Fi.
14        MS. SANDERS:  Let me try it again.
15      All right, let me try one more time.  If
16  not, I can -- I can probably get it on my
17  phone.  There we go.
18      All right, let's see.
19      Okay.  Sorry, it's just taking me a
20  while.
21      Yeah, I'm not finding JB's availability.
22  The last thing I had from -- I know I had it,
23  but I can't pinpoint it.  The last time I
24  got -- the last one I have on here was back in
25  April, but I could check to see.  That might --

1　if he can do it on the 11th, then we can put
2　Laura on the 8th.
3　　　　MR. STREET:  Uh-huh.
4　　　　MS. SANDERS:  So we'd put -- it would
5　be Luke this Friday, Laura on Monday, DiCicco
6　-- well, Armando and Ms. Amos, if can you do
7　them on the same day.
8　　　　MR. STREET:  Tuesday.
9　　　　MS. SANDERS:  Yeah.  DiCicco on
10　Wednesday, and then JB on Thursday, but let me
11　just make sure he can do Thursday.
12　　　　MR. STREET:  And Mr. Ramsey on
13　Friday.
14　　　　MS. SANDERS:  Yeah, you noticed him
15　on Friday.  I mean, we'll see what the Court
16　says.  Hopefully they'll rule.
17　　　All right, let's see.
18　　　In fact -- let me see.  I don't know
19　where that -- I may get -- let me get Lauren to
20　-- let me -- if you don't mind, I'm just going
21　to call Lauren really quick and ask her to find
22　out about JB.  That'll be faster than me
23　sitting here trying to figure it out and then
24　not even --
25　　　　MR. STREET:  My Lauren?

1　　　　MS. SANDERS:  My Lauren.
2　　　　MR. STREET:  Oh.
3　　　　MS. SANDERS:  We both have a Lauren,
4　so not your Lauren.
5　　　All right, let me just call her really
6　quick.
7　　　　MR. STREET:  Sure.
8　　　　MS. SANDERS:  And she'll -- that way,
9　we can keep going.
10　　　　(WHEREUPON, a brief off-the-record
11　phone conversation was held.)
12　　　　MS. SANDERS:  All right, she's going
13　to find out.  Okay.
14　　　　MR. STREET:  Okay.
15　　　　MS. SANDERS:  All right, so we'll
16　figure that out.  And then Melissa Amos -- I
17　told Lauren I'd send you a Zoom link.
18　　　　MR. STREET:  Uh-huh.
19　　　　MS. SANDERS:  I may have to go out
20　there in person.  So if I do, then it's fine.
21　Daniel can just sit in on Armando's.
22　　　The timing might be a little weird,
23　because she's on Pacific Time, you know.
24　　　　MR. STREET:  Yeah, I just flew back
25　from out there yesterday.

1　　　　MS. SANDERS:  What'd you say?
2　　　　MR. STREET:  I just flew back from
3　Los Angeles yesterday.
4　　　　MS. SANDERS:  Oh, really?  You should
5　have stayed.  You should have stayed.
6　　　So I'll -- right now, she's scheduled for
7　10 o'clock, which is noon our time.  So maybe
8　we should put her later in the afternoon.  You
9　could maybe do Armando in the morning?
10　　　　MR. STREET:  Okay.  That's fine,
11　either way you want to do it.  I don't know --
12　I need to go back.  I'm going to say, like, you
13　know, I've been getting ready for these first
14　few, I haven't gotten to Armando yet.
15　　　　MS. SANDERS:  Yeah, yeah.
16　　　　MR. STREET:  But I believe that I
17　asked him a good bit already.
18　　　　MS. SANDERS:  Yeah, you did.  I went
19　back and looked at his deposition, and I think
20　you covered a lot.  That's why I was thinking
21　that it would be a good one to double up on.
22　　　　MR. STREET:  Yeah, I think it will be
23　the shorter one of the ones we do.
24　　　　MS. SANDERS:  Okay, okay.  So I'll --
25　I'll be in touch with her attorney.  I told him

1　as soon as I met with you, I would confirm the
2　9th.
3　　　　MR. STREET:  Uh-huh.
4　　　　MS. SANDERS:  Let me see if -- he
5　might rather come in the afternoon, you know
6　what I mean?  So like 10 o'clock in LA, I mean,
7　if we scheduled her at 1 or 2 o'clock in LA,
8　that's -- well, 1 o'clock would be 3 o'clock
9　our time.  So that would give you quite a bit
10　of time to finish with Armando.
11　　　　MR. STREET:  Yeah, I think that would
12　be -- if we started at 9:00 with Armando, that
13　day would be plenty of time.
14　　　　MS. SANDERS:  Yeah, okay.
15　　　All right, so let me check with him on
16　that, and that shouldn't be an issue.  I can --
17　I probably have two hours max.  So I think it
18　will still be a normal -- you know, a normal
19　day.  I don't think we'll have to stay late.
20　　　All right, so let me just -- I'll follow
21　up with him, and I'll send you an e-mail this
22　afternoon and let you know that for sure.
23　　　Then the only other thing, I had reserved
24　an hour for the Plaintiff.  I need to squeeze
25　that in somewhere, but it's really only on

Case 3:21-cv-00923  Document 269-4  Filed 06/30/25  Page 5 of 31 PageID #: 5992
Elite-Brentwood Reporting Services        9..12
www.EliteReportingServices.com

1 hour. It's all I've got. So what day do you
2 think works best?
3 　　　MR. STREET: I mean, I am -- Lauren
4 was going to cover that one, but she's -- looks
5 like -- I'll check with her. Looks like she
6 may have another deposition in another case
7 Thursday, but I'm free Thursday.
8 　　　MS. SANDERS: This coming Thursday?
9 　　　MR. STREET: Uh-huh. And then --
10 　　　MS. SANDERS: Okay. Okay. Yeah,
11 that would be great. You want to just check
12 with him and...
13 　　　MR. STREET: Yes.
14 　　　MS. SANDERS: Okay. So Thursday, the
15 4th. Of course, we'll do that by Zoom.
16 　　　MR. STREET: Uh-huh.
17 　　　MS. SANDERS: You know, no reason
18 to -- for him to come here for that.
19 　　　Okay, so let's see. Okay, perfect.
20 　　　All right, that's all I got to know on
21 depositions, unless you've got -- that's -- I
22 think that gets all the ones that we've talked
23 about. Are there any -- anything else you need
24 to talk about on depositions?
25 　　　MR. STREET: I mean, there's the rest

1 we want to take, but I don't see how we fit
2 them in before the 12th. That's why I said we
3 need to take an --
4 　　　MS. SANDERS: Extension?
5 　　　MR. STREET: Ask the Court for a
6 little extension.
7 　　　MS. SANDERS: Okay. Just let me know
8 what you want to do on that.
9 　　　MR. STREET: And if we did do that, I
10 don't mind, again, putting Ramsey's at the end
11 of an extension.
12 　　　MS. SANDERS: Yeah.
13 　　　MR. STREET: But I think you guys
14 would prefer that, so maybe you could -- would
15 not oppose or join -- even join in my motion.
16 　　　MS. SANDERS: Yeah. I mean, if the
17 motion is limited to depositions, I think --
18 　　　MR. STREET: It is. We're done with
19 discovery.
20 　　　MS. SANDERS: Yeah, okay. Just --
21 　　　MR. STREET: And I'll say this:
22 Unless something comes up in the depositions,
23 but --
24 　　　MS. SANDERS: Right.
25 　　　MR. STREET: -- I don't know that

1 anything else we could ask for.
2 　　　MS. SANDERS: Well, let me know if
3 you want to -- like, with this afternoon, let
4 me know who -- like, how many more you want,
5 who you plan on taking. I mean, obviously,
6 I'll consider it --
7 　　　MR. STREET: Okay.
8 　　　MS. SANDERS: -- and we'll see.
9 We'll just see where that lands.
10 　　　MR. STREET: We've got one we've been
11 working on, it's just -- it's not our --
12 unfortunately, our usual kind of motions. It's
13 one where I just say, we tried, we asked for
14 dates, they couldn't get the dates we wanted.
15 Discovery deadline hit, we wanted to do it
16 after, then we didn't do it after. Now we have
17 all this time, but we have all these
18 depositions, both sides want to take them, and
19 we got documents still coming from the last
20 order, so...
21 　　　MS. SANDERS: Yeah.
22 　　　MR. STREET: And I don't -- just
23 these depositions, I don't need very much at
24 all.
25 　　　MS. SANDERS: Uh-huh.

1 　　　MR. STREET: So I've got the --
2 Lauren and I have a jury trial May 15th --
3 　　　MS. SANDERS: Okay.
4 　　　MR. STREET: -- in Memphis. And then
5 I have a -- when is that? That's Brandon. I
6 have something -- the first week of June, I'm
7 out for the whole week on a case out west we're
8 part of.
9 　　　MS. SANDERS: Okay.
10 　　　MR. STREET: So I would -- I would --
11 you know, I -- if Lauren's in that hearing,
12 that doesn't affect me. Like, in the middle of
13 June --
14 　　　MS. SANDERS: Uh-huh.
15 　　　MR. STREET: -- is what we'd ask for,
16 so a month.
17 　　　MS. SANDERS: All right.
18 　　　MR. STREET: And then that gives them
19 the -- is it 120 or 150 days she likes?
20 　　　MS. SANDERS: 120.
21 　　　MR. STREET: Okay, that should --
22 then that's plenty, and my timing with these is
23 150, so...
24 　　　MS. SANDERS: Uh-huh. Summary
25 judgment will be due --

Case 3:21-cv-00923 Document 269-4 Filed 06/30/25 Page 5 of 30 PageID #: 5993
Elite-Brentwood Reporting Services
www.EliteReportingServices.com
13..16

1      MR. STREET:  Like in August sometime.
2      MS. SANDERS:  Or July, yeah.
3      Yeah, I think the -- I think the thing to
4  do is just let me know, like, who you still
5  need to schedule.
6      MR. STREET:  It would be on that list
7  I sent already.
8      MS. SANDERS:  Okay.
9      MR. STREET:  And I think we struck a
10  couple and we're keeping those people struck,
11  and --
12      MS. SANDERS:  Okay.  What about the
13  30(b)(6)?  You mentioned the 30(b)(6).  Do you
14  want to do -- do you want to send me some
15  topics or at least -- we talked about a
16  30(b)(6) for the HRC, but I don't know if you
17  meant that or a continuation of the 30(b)(6).
18      MR. STREET:  No, I meant -- I was
19  thinking a new one regarding -- what -- what
20  did the Judge call it?  The best workplace
21  discovery.
22      MS. SANDERS:  Oh, okay.
23      MR. STREET:  I think that would be a
24  topic, and instead of naming people
25  individually because --

1      MS. SANDERS:  Do a 30(b)(6) on it?
2      MR. STREET:  Yes.
3      MS. SANDERS:  Yeah.
4      MR. STREET:  That might just be
5  easier for everyone.
6      MS. SANDERS:  I think that Armando's
7  included that.
8      MR. STREET:  Okay.
9      MS. SANDERS:  But you can -- I'll go
10  back and look.
11      MR. STREET:  Okay.
12      MS. SANDERS:  I'll look at the topics
13  you already included.
14      MR. STREET:  I think we can be more
15  specific at the time anyway, so...
16      MS. SANDERS:  Okay.  All right.  If
17  you want to just let me know what the 30(b)(6)
18  topics are --
19      MR. STREET:  Uh-huh.
20      MS. SANDERS:  I guess we should
21  figure out the extension first.
22      MR. STREET:  Right.
23      MS. SANDERS:  Okay.  Yeah, I'll look
24  at the calendar, too.  And I'm not inclined to
25  agree to any extension on discovery because

1  we -- we obviously want discovery to end.
2      However, the Judge's last -- in response
3  to our motion to ascertain status, he did
4  indicate he was going to rule soon.  I don't
5  know what "soon" is.
6      MR. STREET:  Oh, did he -- I didn't
7  see, I was gone.  Did he --
8      MS. SANDERS:  Yeah, he -- he -- he
9  responded to the motion to ascertain status,
10  but he didn't rule.  He said that he's aware,
11  that he plans to rule soon, but, you know, he's
12  got an enormous criminal docket and 350 civil
13  cases and he's been in the middle of a
14  one-month jury trial.
15      So that was the -- the status was he's
16  been really busy, so -- but he did indicate
17  that he intends to rule.  So given that, an
18  extension might make sense.
19      MR. STREET:  All right.  And if you
20  guys want to agree to the extension, then we
21  can agree to move Mr. Ramsey's deposition.
22      MS. SANDERS:  Okay.  All right.
23  Well, let me -- let me look at that, and I
24  will -- I'll talk to my client.  I'll send you
25  an e-mail.

1      MR. STREET:  All right.  But we have
2  to -- I mean, it has to come down as an order,
3  you know what I'm saying?
4      MS. SANDERS:  I know.
5      MR. STREET:  I can't strike it just
6  as a floating motion --
7      MS. SANDERS:  Yeah, I know.
8      MR. STREET:  -- just because of what
9  we have to do.  And that's not me being a jerk,
10  that's just me not being able to...
11      MS. SANDERS:  No, I don't think
12  that -- I don't think we can do anything short
13  of her agreeing and ordering it.
14      MR. STREET:  Yeah.
15      MS. SANDERS:  So I agree with you.
16      MR. STREET:  Okay.
17      MS. SANDERS:  I don't think that -- I
18  don't think you and I can agree to extend it --
19      MR. STREET:  Exactly.
20      MS. SANDERS:  -- without an order.
21  She has been pretty fast to rule, though.
22      MR. STREET:  She has.
23      MS. SANDERS:  So I think that it
24  won't -- it shouldn't be an issue.
25      MR. STREET:  And I don't think she'd

Case 3:21-cv-00923 Document 269-4 Filed 06/30/25 Page 6 of 30 PageID #: 5994
Elite-Brentwood Reporting Services    Page 6 of 30 Pages    17..20
www.EliteReportingServices.com

1  be surprised by it, either.
2      MS. SANDERS:  Yeah.
3      MR. STREET:  Based on what she's said
4  before about, you know, how she basically told
5  us, I feel like, how she wanted it to be filed.
6  So I think she expects it to be filed if she's
7  telling us how she wants it to be filed.
8      MS. SANDERS:  What did she say?  I
9  don't remember.
10     MR. STREET:  Oh, she just said make
11 sure you get it in seven days before the
12 deadline and --
13     MS. SANDERS:  Right, that's correct.
14 Yeah.
15     MR. STREET:  So...
16     MS. SANDERS:  Okay.  Well, I'll give
17 you an answer today.  I'll look -- I'll go look
18 and at least let you know whether we're going
19 to oppose it or not, and then you can get it
20 filed --
21     MR. STREET:  Okay.
22     MS. SANDERS:  -- well before her
23 seven days.
24     Okay.  Now, on the -- on the sanctions
25 motion or order, I've gone through and I've

1  looked at the interrogatories, which I -- I
2  didn't make you a copy.  Do you have them?  Do
3  you have -- can you pull them up?
4      MR. STREET:  I can pull them up here,
5  I think so.
6      MS. SANDERS:  Okay.  So I'm looking
7  at the original one, and it's Lampo's responses
8  to Plaintiff's first set of interrogatories, or
9  you can look at the ones you sent.  It doesn't
10 matter, it's -- because I want to ask you about
11 the actual interrogatory and not my response,
12 so whichever one you've got is fine.
13     MR. STREET:  That's fine.  Is this
14 Lampo's responses?
15     MS. SANDERS:  Uh-huh, yeah.
16     MR. STREET:  Okay.  Then do you
17 remember the date on those?
18     MS. SANDERS:  Should be sometime
19 around September 23rd.  That's when they were
20 signed.  Let me look at the certificate of
21 service.
22     Yeah, I sent them to you on
23 September 23rd.
24     MR. STREET:  Okay.  I've got them
25 pulled up.

1      MS. SANDERS:  Okay.
2      All right.  So when I read her order, I
3  think what I'm supposed to do is do an
4  individual -- like, supplement each one
5  individually that asks for people.  So I've
6  narrowed those down, and I want to make sure
7  this is -- this is right.
8      So Number 1, I think, is pretty simple.
9  That one, she asks for the -- or you ask for
10 the name, address, job title of every person
11 who provided information in the
12 interrogatories.  I mean, that's easy, right?
13     MR. STREET:  Uh-huh.
14     MS. SANDERS:  That is what it is,
15 okay.  So that one is -- you know, I don't
16 think there's a need to supplement that one.
17     Number 2, I think, is the one that you --
18 this is what I think you filed the sanctions
19 motion on.  And I took her response to
20 sanctions motion as, like, a motion to compel,
21 like an order compelling.  So I want to make
22 sure that I'm addressing the right one.
23     So Number 2 says, "Identify each person,"
24 I'm not going to read the whole thing.
25     MR. STREET:  Uh-huh.

1      MS. SANDERS:  "Who has knowledge of
2  relevant facts relating to the subject matter
3  of the litigation and state in detail the
4  nature of each person's knowledge."  There's
5  more, but -- so that's Number 2.
6      I just want to go over the other ones,
7  because I think all the other ones are
8  answered.  2 is the one that I think is what
9  the real contention is.
10     Okay, then the next one that asks for
11 individuals is Number 5.  That one is -- I do
12 want to talk about that one, but I think that
13 one's pretty straightforward.  It says,
14 "Identify all persons involved in making the
15 decision to terminate, suspend," I think that's
16 just a typo, because he wasn't suspended,
17 "Plaintiff's employment and specifically their
18 particular actions taken."  You know, so that's
19 a third one, I think he's asking for people.
20     And then I think that's it, but let me
21 just double-check.
22     Oh, well, we should talk about Number 9.
23     MR. STREET:  And Number 7.
24     MS. SANDERS:  Okay, did I skip one?
25     Yeah, to identify the statements.

Case 3:21-cv-00923 - Document 269-4 Filed 06/30/25 - Page 7 of 30 PageID #: 5995
Elite-Brentwood Reporting Solutions
www.EliteReportingServices.com          21..24

1      MR. STREET:  And who made them.
2      MS. SANDERS:  Okay, let me circle
3  that one.
4      Okay.  And then Number 9 is the
5  investigations.
6      MR. STREET:  Yes.
7      MS. SANDERS:  Which I think we
8  have -- I think all that's in there, but I can
9  put it in the form of an interrogatory
10  response.
11      And I think that's it.  We're asking for
12  something about individuals.  I have a lot of
13  responses where I include individuals, but I'm
14  trying to take the supplemental response, fit
15  it into each one.  I think that's what she was
16  telling me to do.
17      MR. STREET:  That's what I think she
18  was, too.
19      MS. SANDERS:  Yeah.  So the only one
20  that I think is -- yeah, we probably do need to
21  talk about 7, but I think 2.  I need to know --
22  I'd like to talk to you about 2, because if
23  it's knowledge of relevant facts relating to
24  the subject matter of the litigation, I don't
25  know how to -- I don't know how to narrow that

1  down.  I mean, that's what I was doing.  I was
2  giving you people that knew about him, his
3  employment, and I was looking at it from -- JB
4  Wagner is not a supervisor, but JB Wagner is,
5  like, kind of like a lead, you know.  He was
6  like a supervisor in training, sort of.
7      MR. STREET:  Uh-huh.
8      MS. SANDERS:  So he was pretty
9  familiar with Amos's performance.  That's why I
10  included him.  But the rest of them were like
11  supervisory roles who could impact his
12  employment.
13      The issue that I'm struggling with is
14  there's, you know, a lot of allegations in the
15  complaint.  And so, I could narrow it by
16  looking at the actual counts, but even then, I
17  don't know -- I mean, honestly, I think anybody
18  that ever worked at Lampo could have knowledge,
19  right?
20      So I don't know -- I've done my best to
21  answer it.  It obviously wasn't good enough, so
22  I need -- I want to make it right, I want to
23  get it right, and I -- I don't know exactly how
24  to answer it.
25      So if I'm looking at -- and maybe the

1  thing to do is take the complaint and look at
2  the counts, like what -- let's start with that.
3  Like some of the stuff in here is where Lampo
4  is located.  I mean, I don't think you want --
5      MR. STREET:  No, you're right, I
6  don't want that.
7      MS. SANDERS:  Right.  You don't want
8  people with knowledge of Lampo being an LLC,
9  right?
10      MR. STREET:  Right.
11      MS. SANDERS:  So my thought was to
12  look at the counts, starting with Paragraph
13  330.  The first count is retaliatory discharge.
14      MR. STREET:  Let me look at the fact
15  section.
16      MS. SANDERS:  Yeah.
17      MR. STREET:  All right, this is
18  the -- not the amended complaint.  Where is
19  that?
20      MS. SANDERS:  Yeah, I think the first
21  amended complaint is the operative one.
22      MR. STREET:  Okay.
23      MS. SANDERS:  Because that's the
24  one -- that's the last one you filed.
25      MR. STREET:  This is probably it.

1      MS. SANDERS:  It's Document 21 in the
2  Court's filing system, if that helps.  You
3  filed it on March 4th, '22.
4      MR. STREET:  Well, that's -- this is
5  it.  We didn't get the stamp copy.  We have the
6  PDF copy, but it's March.
7      MS. SANDERS:  Okay.  Because that --
8  yeah.
9      MR. STREET:  It was created March of
10  '22.
11      MS. SANDERS:  Yeah, and it's a --
12  titled the First Amend Complaint.
13      MR. STREET:  Right.
14      I mean, I think all that -- the first two
15  pages, no, that's --
16      MS. SANDERS:  Okay.
17      MR. STREET:  -- none of that.
18      The factual allegations, though, I think
19  that would apply.  And that's a lot, I know,
20  but...
21      MS. SANDERS:  Uh-huh.  So --
22      MR. STREET:  You know, it also -- I
23  think that's probably going to be a lot of the
24  same people.  Like it may not be a lot of
25  people, but just the people who have knowledge

Case 3:21-cv-00923  Document 269-4  Filed 06/30/25  Page 8 of 30 PageID #: 5996
Elite-Brentwood Reporting Services
www.EliteReportingServices.com
25..28

1  of a lot of these facts.
2      MS. SANDERS:  Uh-huh.
3      So this -- okay, so Kimberly Rudolph, for
4  example, is listed as the recruiter.  She no
5  longer works for us.  I don't -- I've not
6  talked to her.  I don't know if she remembers
7  Brad Amos.  But, I mean, you obviously know
8  about her, you know who she is.
9      MR. STREET:  Uh-huh.
10     MS. SANDERS:  I don't know if she
11 knows anything.  So like, how would you --
12 like, what would your exception be on me on how
13 to address something like Kim Rudolph?
14     MR. STREET:  I mean, if she knows
15 something about the facts of the case that you
16 know about --
17     MS. SANDERS:  Yeah.
18     MR. STREET:  -- then...
19     MS. SANDERS:  Yeah, I don't know if
20 she does.  That's the thing, like, nobody's
21 talked to her.
22     MR. STREET:  Uh-huh.
23     I mean, I would say list them and be
24 careful, you know, and put them on there if
25 they may not, than not include them and have

1  them do it, but -- and -- does that make sense?
2  I know that was blah, blah, blah, but...
3      MS. SANDERS:  Well, and I think this
4  is why we got wrapped around the axle on
5  investigation, which the Judge called us out on
6  that, but -- but we had different questions.
7  Like, there was -- one question was about who
8  do we investigate -- like, who do we interview,
9  right?
10     MR. STREET:  Uh-huh.
11     MS. SANDERS:  The other question was
12 whose got knowledge.  I don't think we were off
13 base in talking about both of those things,
14 because obviously whoever we interview, we know
15 if they've got knowledge or not, right?
16     So I don't think those two things -- the
17 Judge, primarily me, came down on me for
18 conflating those things.  You've asked both of
19 those questions, and I think they're relevant
20 because if I haven't -- if we haven't
21 interviewed someone or talked to them, we don't
22 know if they know anything.
23     MR. STREET:  Uh-huh.
24     MS. SANDERS:  So that's what I'm
25 trying to figure out, is what -- I mean,

1  Kimberly Rudolph, I agree that she -- that's
2  the other thing.  See, we've never filed an
3  answer because we filed a motion to dismiss.
4      MR. STREET:  Uh-huh.
5      MS. SANDERS:  If I had filed an
6  answer in this case, you would know that I --
7  I'd probably admit Number 20, Ms. Rudolph had
8  phone interviews with Plaintiff.  Do you see
9  what I mean?
10     MR. STREET:  Uh-huh.
11     MS. SANDERS:  So I can tell by those
12 documents I gave you on the interview and
13 recruiting, she clearly talked to him.
14     MR. STREET:  I think, you know, if
15 you would list them, I think the best thing to
16 do would be to list them all and then I just
17 show my client and say -- because he was -- if
18 the client would inform me that all she did was
19 interviewed me on the phone the first time --
20     MS. SANDERS:  Uh-huh.
21     MR. STREET:  -- you know, then --
22     MS. SANDERS:  Yeah.
23     MR. STREET:  Then that's it, so...
24     MS. SANDERS:  Because you had
25 actually -- she was one of the first ones that

1  you identified as somebody to depose.
2      MR. STREET:  Okay.
3      MS. SANDERS:  All right, so let's
4  keep going.
5      I can -- because I do acknowledge that
6  she was a recruiter, the notes show that she
7  did talk to Brad Amos.  Does she remember him,
8  I don't know.  So I would just have to qualify
9  that --
10     MR. STREET:  Okay.
11     MS. SANDERS:  -- you know.
12     Okay, so then we get into DiCicco, that
13 makes sense.  I'm on Page 4, starting with 26.
14     Okay.  So here he's talking about
15 interviews with various people through a 60-day
16 process.  Everybody that interviewed him, those
17 notes would be in the Jobvite, which that was
18 produced -- let me pull up my own internal
19 production log.
20     MR. STREET:  Uh-huh.
21     MS. SANDERS:  Then I can give you
22 some context of when stuff was actually
23 produced.
24     So -- let's see.  Sorry, I had the wrong
25 thing.  Okay.

Case 3:21-cv-00923 Document 269-4 Filed 06/30/25 Page 9 of 30 PageID #: 5997
Elite-Brentwood Reporting Services
www.EliteReportingServices.com
29..32

1    Okay.  All right, so early on, I provided
2  you with -- Jobvite is the -- that's what they
3  track other applicant data, right?  Their
4  interview process is done in Jobvite.
5    Okay, so you've got some of those in the
6  initial disclosures.  What I realized in --
7  later on was that there were multiple tabs in
8  Jobvite, so you didn't have every document and
9  every tab.  I didn't know that until I started
10  looking at Jobvite, and I realized stuff was
11  missing.
12    So on October 24th -- yeah, 24th of
13  October, that's when I gave you the complete
14  Jobvite, so you had all the evaluations and
15  notes.  So you would have seen in the initial
16  disclosures and then in October 20 -- the --
17  October 24th everybody that interviewed him.
18  They would have made notes in Jobvite.
19    MR. STREET:  Uh-huh.
20    MS. SANDERS:  So presumably, those
21  people at some point knew something about Brad
22  Amos.
23    MR. STREET:  Uh-huh.
24    MS. SANDERS:  The only ones that I
25  know about are those that I've disclosed, like

1  DiCicco.  I think Laura Johnson, Luke LeFevre.
2  I don't think JB Wagner interviewed him, but
3  those three did.
4    So there could be other people in that
5  Jobvite.  Like, for example, you had -- I think
6  it was Larry -- I don't know his name, maybe
7  Anderson?
8    MR. STREET:  Larry Anderson.
9    MS. SANDERS:  Yeah.  That's somebody
10  you identified early on as somebody you wanted
11  to depose.  He, I'm sure, interviewed your
12  client.  So do you want -- do you want me to
13  distinguish between the ones who are in Jobvite
14  who may have interviewed him that I don't know
15  if they know anything and then those that did
16  interview him that I know know something?  Do
17  you see what I mean?
18    MR. STREET:  Yeah.  Yeah, I mean --
19  you know, I mean, as long as it is -- the
20  information provided by each person lets me
21  look at it and see, well, does this person have
22  something that's worth deposing them over or
23  not --
24    MS. SANDERS:  Yeah.
25    MR. STREET:  -- then that's fine.

1    MS. SANDERS:  Okay.  So I can
2  reference -- I'll reference the people in
3  Jobvite, because whoever's in there presumably
4  interviewed him.
5    MR. STREET:  Right.
6    MS. SANDERS:  Right?
7    But I don't -- I don't know if they
8  remember him, right?
9    Okay.  All right.  Okay.  I think that
10  gets us through most of that page.  Yeah,
11  because all of Page 4 is about his interview.
12    Okay, take a look at Number 40.
13  "Plaintiff, through his own interview research,
14  had also found certain reviews and local
15  community" -- or, I'm sorry, "commentary
16  indicating that Lampo was more cult-like than
17  Christian."
18    MR. STREET:  Uh-huh.
19    MS. SANDERS:  I mean, I don't -- I
20  don't -- I don't know of anyone who would --
21    MR. STREET:  I think that's talking
22  about something Plaintiff did.
23    MS. SANDERS:  Yeah.  Okay.
24    MR. STREET:  So it would be a
25  question for him.

1    MS. SANDERS:  Okay.
2    MR. STREET:  Maybe not for one of
3  your people.
4    MS. SANDERS:  Yeah, okay.
5    All right.  Again, you have Larry
6  Anderson listed in here.  Larry Anderson, by
7  the way, no longer works at Ramsey.  So I -- I
8  don't know what he does and doesn't know.
9    MR. STREET:  So is it okay for me to
10  put in this motion today that -- after our
11  talk, what the Judge wanted us to have, that it
12  looks like some of the people who you may
13  supplement with are people who, if we want to
14  depose, it's not as simple as just calling you
15  and saying, have them get there.  I have to
16  subpoena them, find a date.  Do you know what I
17  mean?  Like, it's not a party to the lawsuit.
18    MS. SANDERS:  Yeah.  Some of them,
19  though, like -- so the first time you wanted to
20  depose Larry Anderson -- I can get in touch
21  with Larry.  Like, I know where he is.  We
22  reached out to him to schedule it.
23    MR. STREET:  Uh-huh.
24    MS. SANDERS:  So I don't think it's
25  as simple as saying, like -- I mean, some of

1    them, like Luke LeFevre no longer works there.
2         MR. STREET:  Right.
3         MS. SANDERS:  But, I mean, he was an
4    operating board member.  He's easy to connect
5    with, you see what I mean?
6         MR. STREET:  Right, but some of them
7    may not be.
8         MS. SANDERS:  That's true, yeah.
9         MR. STREET:  Okay.  So I'll just say
10   -- that's all I'm saying.  I'm not saying they
11   all are going to be like that, but --
12        MS. SANDERS:  Yeah.
13        MR. STREET:  -- some of them may
14   issuance of subpoena, et cetera.
15        MS. SANDERS:  Yeah.  I think -- I
16   think most of them will prefer to cooperate,
17   you know, rather than be subpoenaed --
18        MR. STREET:  Yeah.
19        MS. SANDERS:  -- but I can't speak
20   for them.
21        The only ones I can speak for are Larry
22   Anderson and -- and Kimberly Rudolph, who --
23   the -- the two that you -- the two that you
24   early on wanted to depose.  I reached out to
25   both of them, was able to find them, they were

1    cooperative.  So I don't think, like, those two
2    are an issue.
3         MR. STREET:  Okay.
4         MS. SANDERS:  I don't know -- you
5    know, I don't know about who else might be on
6    here.
7         All right.  Okay, so I think then we get
8    down to 47.  So 47, I think we're moving into a
9    new -- we've moving into now where Defendant
10   Ramsey said on the radio that Lampo had been
11   voted the best place to work.  I don't know how
12   to list people who know that.
13        MR. STREET:  That's going to be --
14   that's fine.
15        MS. SANDERS:  Okay.
16        MR. STREET:  I get that.
17        MS. SANDERS:  Okay.
18        MR. STREET:  Everyone there probably
19   realized that.
20        MS. SANDERS:  Yeah.  I mean, that's
21   it.  Like, I think there's -- I'd have to give
22   you a roster of everybody that worked there,
23   so...
24        MR. STREET:  I understand.
25        MS. SANDERS:  Okay.  So then, let's

1    see, back on Page 6, we're getting back into
2    the interview process.
3         Okay, 51, Lampo made an offer to
4    Plaintiff for an annual salary of 90,000 with a
5    $10,000 relocation bonus.  I don't -- I think
6    that Armando in HR -- I don't know if Armando
7    was the one who approved that.  Nobody knows.
8    We just know that he got that offer.  You know
9    what I mean?  So I -- I don't think --
10        MR. STREET:  I mean, that's not a
11   disputed fact.  My client testified to it.
12        MS. SANDERS:  No, that's not a
13   dispute.
14        MR. STREET:  Then you don't -- that's
15   fine.
16        MS. SANDERS:  Yeah.
17        Well, actually, 90,000 might be off, but
18   it doesn't matter.
19        MR. STREET:  Uh-huh.
20        MS. SANDERS:  I mean, I think -- if I
21   recall, I'm not sure he made 90.  I thought he
22   made 90 total.  Doesn't matter, the point is
23   there's going to be an offer in there that says
24   how much he got.
25        MR. STREET:  Right.

1         MS. SANDERS:  I just don't know who
2    offered that offer.  See what I mean?  But
3    you've got Armando, who's the head of HR.
4         MR. STREET:  That's fine with that
5    one.
6         MS. SANDERS:  All right.  53, 54,
7    okay, the on-boarding process.  On 54, looks
8    like for the next several ones you're talking
9    about the on-boarding process.  Again, we don't
10   know who on-boarded him, so I don't know who to
11   list there.
12        Armando, again, is the head of HR.  He
13   can tell you about the on-boarding process, but
14   nobody knows exactly who was there to on-board
15   him.
16        MR. STREET:  Uh-huh.  Okay.
17        MS. SANDERS:  If I -- actually, there
18   could be something in the documents that say
19   that.  I haven't read all the e-mails, but
20   there might be something in the e-mails, like
21   in the first e-mails with him, right when he
22   started, there might be something about
23   on-boarding.  But based on my investigation, I
24   don't know who on-boarded him, so what -- what
25   do you want me to tell you there?

1    MR. STREET:  Just whatever you can
2  find out.
3    MS. SANDERS:  Okay.  Like, I would
4  defer to HR.
5    Okay.  Then like 57, he said it was an
6  indoctrination process.  I mean, I think
7  offering Armando -- Armando is in charge of the
8  on-boarding, so I think we're good on that.
9  And he was in charge of it at this time, too,
10  so...
11    The Ramsey way, I'm not sure what that
12  means.  So I don't know who to offer -- I
13  don't -- I don't know who has knowledge of
14  this.  Again, this is the kind of thing that
15  you could ask everybody that works there.
16    MR. STREET:  I think, you know, in
17  the complaint, it's written in the Plaintiff's
18  voice.  When he says things like that, it's
19  from the Plaintiff.
20    MS. SANDERS:  Okay.  All right.
21    MR. STREET:  I mean, I feel sure
22  Mr. -- Defendant Ramsey does not agree with our
23  claim that the Ramsey way encourages expressing
24  praise for Mr. Ramsey constantly.
25    MS. SANDERS:  No, right.

1    MR. STREET:  So that's an opinion of
2  the Plaintiff in this matter.
3    MS. SANDERS:  Yeah, I don't have
4  anybody that would -- has knowledge of that,
5  right?
6    MR. STREET:  So, I mean, that's clear
7  to me if it's just something that is written,
8  like, in the Plaintiff's voice, something he
9  says that this is the way he thinks it is and
10  what he feels it is, then that's something we
11  got to prove.
12    MS. SANDERS:  Yeah.
13    MR. STREET:  I get it, but our guy is
14  the witness for those.
15    MS. SANDERS:  Okay.  So I think --
16  and I think most of this is the on-boarding
17  process, you know.  So that -- I think giving
18  you Armando was the best I could do because he
19  can tell you what the on-boarding process is.
20    I have asked if we know specifically
21  about Brad Amos's on-boarding.  There were a
22  number of people on-boarded at the same time,
23  so what I've been trying to do is figure out
24  who was on-boarded with him, because that'd
25  maybe give me some clues as to who on-boarded

1  him, but I don't think they have a record of
2  it.
3    Like, I think the way they on-board is
4  whoever is available to meet and greet, you
5  know, HR leads the whole thing, so there's
6  probably going to be people from the operating
7  board that come in.  Dave Ramsey probably comes
8  in and says, welcome to Ramsey, I -- I don't
9  know, but it's -- it's a general format that
10  they follow, but I don't know that we have a
11  list of exactly who on-boarded him, so I think
12  giving you Armando is the best I can do on
13  that.
14    But if I figure that out or if you see it
15  in the documents --
16    MR. STREET:  Or if Armando tells me
17  someone.
18    MS. SANDERS:  Right, exactly.  If
19  Armando figures it out between now and when you
20  depose him, then we'll know that.
21    Okay.  67, Lampo encouraged Plaintiff to
22  be Facebook friends with all of his coworkers
23  and supervisors.  I'm not sure who that is, so
24  I don't have anybody to identify.
25    There is an e-mail in 68, one of the

1  e-mails that was produced where Lampo
2  encouraged Plaintiff's wife -- actually, I
3  think you produced it.  I think it was a social
4  media message, and that actually -- I think
5  that message came from Armando Lopez's wife --
6    MR. STREET:  Okay.
7    MS. SANDERS:  -- who -- but I
8  don't -- I mean, she doesn't work for us, so I
9  don't know if she has any knowledge of
10  Ms. Amos.  I don't -- I don't know if she knows
11  that, but I do think you produced, like, a
12  social media message.
13    So if it's not somebody that's acting on
14  behalf of Lampo or that I haven't interviewed
15  and we haven't interviewed, but you see it in
16  the documents, is that something you want me to
17  list?
18    MR. STREET:  I mean, if you know
19  about it, you know, I...
20    MS. SANDERS:  Yeah.  Okay.  Yeah, I
21  don't know -- I don't know that.  I think you
22  produced it, because I think it was a social
23  media message.  Okay.
24    MR. STREET:  And I don't mind, like I
25  said, if you want to -- you know, I know

1  there's a part of the motion that says, you
2  know, you can't generally point to all the
3  documents, but if you do point to some
4  documents --
5      MS. SANDERS:  Yeah.
6      MR. STREET:  -- specifically by Bates
7  stamp number, then that's fine with me.
8      MS. SANDERS:  Yeah, because I -- I
9  mean, I have a log of everything produced.
10     MR. STREET:  Yeah.  I'm just
11 saying --
12     MS. SANDERS:  The only time --
13     MR. STREET:  I'm just saying when you
14 produce your response --
15     MS. SANDERS:  Yeah.
16     MR. STREET:  -- don't just say it's
17 in --
18     MS. SANDERS:  The documents.
19     MR. STREET:  -- yeah, Documents
20 Number 21,000 to 48,000.
21     MS. SANDERS:  Uh-huh.
22     MR. STREET:  You know, say it's on
23 this, this, this or this --
24     MS. SANDERS:  Yeah, I should --
25     MR. STREET:  -- or reasonable ranges,

1  and that's fine.
2      MS. SANDERS:  I should be able to do
3  that pretty well.  The -- there was a stack of
4  documents that we didn't review -- we reviewed
5  it only for privilege, just because of time
6  constraints, but I think we've reviewed it
7  since then, so I'll go back and I can look at
8  that.
9      All right, let's keep going.  I think we
10 don't -- we talked about the Lampo ladies on
11 Page 8.
12     Okay.  All right, getting down to 74
13 where it says, "Plaintiff cut a trailer for
14 Lampo's new major podcast Borrowed Future."  In
15 the documents, you'll see -- I know that -- and
16 they're going to be in several places.  I don't
17 know if you recall this, but literally, I think
18 it was on the last day that we had to produce
19 the set that we were required to produce in the
20 motion to compel.
21     I had our vendor do a sweep, just to make
22 sure nothing got missed, because it was -- it
23 was a large volume and you're almost always
24 going to have something that didn't get
25 captured.  There weren't very many, but there

1  were a few pages.  And in a couple of those
2  pages, you'll see, like, David DiCicco with
3  kind of like a work plan.
4      MR. STREET:  Uh-huh.
5      MS. SANDERS:  And it shows people who
6  were working on the project.  I don't know if
7  those people know anything about Brad's
8  trailer.  I don't know about that, but I can
9  point you to those documents that DiCicco has
10 which shows the workflow.
11     MR. STREET:  Uh-huh.
12     MS. SANDERS:  Do you see what I mean?
13     MR. STREET:  Uh-huh.
14     MS. SANDERS:  I've not talked to any
15 of those people other than DiCicco, but that
16 seems to me to be a response, like, when you're
17 wanting to know the technical -- like the
18 specific, oh, when you say in here the specific
19 things related to a trailer, I think those
20 DiCicco workflows are the best.
21     And I don't even know the people that are
22 listed in there, but you can at least see the
23 people that are listed in there, and Brad
24 presumably knows those people, right?
25     MR. STREET:  Right.

1      MS. SANDERS:  Because he was working
2  with them.  He might have listed some of them,
3  but I think that's the best source for who
4  would know about the trailer or the
5  documentary.
6      MR. STREET:  Okay.
7      MS. SANDERS:  Does that make sense?
8      MR. STREET:  Uh-huh.
9      MS. SANDERS:  Because I don't want to
10 list everybody that work in his department
11 because they probably have nothing to do with
12 the trailer or the documentary.  Do you see
13 what I mean?
14     MR. STREET:  Yeah.
15     MS. SANDERS:  Plus, he knows who he
16 worked with.  So -- all right.
17     And the reason I pointed out that last
18 set is because there are so few in there, like,
19 if you pull up the very last set I sent to you,
20 which I think is Volume 11 -- let me make sure.
21 Yeah, Volume 11 was the sweep to make sure that
22 all -- all documents marked responsive got
23 pulled.  I think some of them -- I think most
24 of them are probably duplicates, but that's a
25 good place to look for those workflows, because

1  there's less than 100 documents in that set.
2      Do you see what I mean?
3          MR. STREET:  Uh-huh.
4          MS. SANDERS:  And you'll see them,
5  they're very -- they're distinct because it'll
6  be an e-mail with David DiCicco, and in the
7  middle it will be like a chart.  There's, I
8  think, several more of those, but that's the
9  easiest place to find them, if that makes
10  sense.
11      Okay.  Okay, so there's -- there's some
12  allegations about his trailer being linked by
13  Lampo.  I've looked into that, and I don't -- I
14  can't find anything on that.  So I think the
15  best source for that is probably -- you've
16  already got them -- Luke, Laura, they're the
17  ones that are going to know that.
18          MR. STREET:  Uh-huh.
19          MS. SANDERS:  So I can't come up with
20  anybody else that knows that.
21      On 81 where you say, provided assistance
22  to the video team, whether Amos provided
23  assistance to the video team, that -- again,
24  I -- something like that is pretty vague.
25  Like, I don't know who the video team is, but I

1  think JB Wagner and DiCicco -- maybe not
2  DiCicco, but JB Wagner -- DiCicco was pretty
3  focussed on the documentary, right, so he's not
4  going to know --
5          MR. STREET:  Right.
6          MS. SANDERS:  -- much about Amos
7  beyond that.
8      JB Wagner wasn't a supervisor but knows
9  probably more about his bigger picture, and
10  certainly Laura Johnson does.  So that's -- I
11  don't -- I don't know anybody other than that
12  on there, whether he provided assistance to the
13  video team, because I'm not sure who the video
14  team is.
15          MR. STREET:  Okay.
16          MS. SANDERS:  Okay, then --
17          MR. STREET:  What paragraph was that
18  again?  I'm sorry.
19          MS. SANDERS:  81.
20          MR. STREET:  Thanks.
21          MS. SANDERS:  Okay, so then on Page
22  9, we're talking about -- here you're talking
23  mostly about -- well, half of that, going
24  through 87, 82 through 87, it's talking about,
25  like, his work performance.

1      Again, I've identified the people who
2  could do something about his work performance.
3  His coworkers that might know about his work
4  performance, I don't know that.  I don't know
5  who they are.  I'm assuming he does, but are
6  you looking for that?  Are you looking for a
7  list of his coworkers?
8          MR. STREET:  Yes, I would think
9  that...
10          MS. SANDERS:  Okay.  Again, I have no
11  idea if they have knowledge.
12          MR. STREET:  Let me see, you're
13  talking about 82 --
14          MS. SANDERS:  To 87.
15      And here, like, for example, he came in
16  early, aided other teams.
17          MR. STREET:  I think if you know
18  something that disputes what he claims here --
19          MS. SANDERS:  Yeah.
20          MR. STREET:  -- if there are
21  witnesses who dispute that, then they should be
22  identified, but otherwise --
23          MS. SANDERS:  Yeah.
24          MR. STREET:  -- again, I think this
25  is my client speaking in his voice.

1          MS. SANDERS:  Okay, got it.
2      Yeah, I think I've given you everybody on
3  that.  I mean, again, the only people I know of
4  that know that are the people -- other than JB
5  Wagner, the people who were actually
6  responsible for him.  JB observed him, so he is
7  going to be -- he's going to fit into this
8  category.
9          MR. STREET:  Uh-huh.
10          MS. SANDERS:  All right.  So looking
11  at -- I think we're good on the rest of that.
12  I mean, you've got Armando.
13      Oh, here where it says they required
14  him -- 93, they required employees to identify
15  very specific personal issues in their personal
16  lives, including any issues with their
17  marriages.  I'm not sure who you're talking
18  about there.
19          MR. STREET:  I don't remember if you
20  asked him in his deposition or not, but...
21          MS. SANDERS:  I think I did.
22          MR. STREET:  I don't remember what he
23  said, but whatever he said is who it is.
24          MS. SANDERS:  Yeah.  Yeah.  So he
25  talked about Laura Johnson with him.

Case 3:21-cv-00923-B   Document 269   Filed 06/30/25   Page 14 of 30   PageID #: 6002
Elite Reporting Services
www.EliteReportingServices.com
49..52

1    MR. STREET: Okay.
2    MS. SANDERS: I don't think he
3 referenced anyone else.
4    MR. STREET: Okay.
5    MS. SANDERS: I mean, we obviously
6 dispute that, but...
7    MR. STREET: Yeah.
8    MS. SANDERS: You know.
9    MR. STREET: And that's why I'm
10 saying I feel sure -- I don't remember, but I
11 feel sure it was something you brought up at
12 least, so...
13    MS. SANDERS: Yeah, okay.
14    MR. STREET: You know, if his
15 answer's in there, his answer's in there.
16    MS. SANDERS: All right. Then like
17 95, and this -- the answer to this one will
18 affect some of these others, where he says
19 Lampo required all its employees to participate
20 in weekly one-on-one meetings, I don't -- I
21 think you already asked Armando that.
22    MR. STREET: Uh-huh.
23    MS. SANDERS: But I don't think
24 you're asking me every supervisor who conducted
25 one-on-one meetings.

1    MR. STREET: No, I think it'll just
2 be for my client.
3    MS. SANDERS: For him, okay. Okay.
4    Okay. All right, then down to 103. So
5 this is when he gets into the endorsed local
6 provider. Are you wanting information on the
7 endorsed local provider beyond the endorsed
8 local provider that was -- that he -- that he
9 reached out to to help sell his house?
10    MR. STREET: I think it would be more
11 about how the ELP program works.
12    MS. SANDERS: Okay. Okay. All
13 right.
14    All right, moving on to Page 11. This is
15 going to go a lot faster now that we've, you
16 know, had a few of these.
17    MR. STREET: Yeah.
18    MS. SANDERS: I think we're good on
19 11.
20    Page 12. Okay, so, for example, 121,
21 "Throughout early spring of 2020, the spread of
22 Coronavirus/COVID-19 became worldwide news and
23 the concern of many American citizens." I
24 don't think you're asking me to identify
25 everybody that knows that.

1    MR. STREET: I'm not.
2    MS. SANDERS: Okay. All right.
3 That's it on that page.
4    Okay, now go down to Page 13. Okay, like
5 on 137, "Specifically in a 900-person meeting,
6 Mr. Ramsey stated that fear of working in the
7 office because of COVID demonstrated a weakness
8 of spirit." We don't think anyone has
9 knowledge of that, but in the 900-person
10 meeting, you're not asking for like --
11    MR. STREET: 900 people?
12    MS. SANDERS: Right.
13    MR. STREET: No.
14    MS. SANDERS: Okay. Because that
15 would be -- I mean, it would be the employee
16 roster, but that doesn't seem -- that doesn't
17 seem to make sense; although, you know...
18    All right. So then -- okay. So 140,
19 "Lampo was controlled by Mr. Ramsey. To an
20 extent, they are alteregos of each other."
21    Then 141 where it goes through, like,
22 Ramsey and Lampo. I mean, that's something
23 that we obviously dispute, but I don't know who
24 would have knowledge of that.
25    MR. STREET: Mr. Ramsey.

1    MS. SANDERS: Well, there's also the
2 operating board.
3    MR. STREET: Uh-huh.
4    MS. SANDERS: And you've already got
5 Luke LeFevre, so you have Armando, Luke.
6    MR. STREET: Yeah. I mean, you could
7 list these folks, but we're still only limited
8 to who we can depose, so...
9    MS. SANDERS: Yeah.
10    Okay. All right. I think that's the
11 same throughout.
12    146 where his stated beliefs -- Ramsey's
13 stated beliefs regarding COVID were amplified
14 on his radio show numerous times, obviously we
15 don't know who all heard that.
16    MR. STREET: Right.
17    MS. SANDERS: I'm on Page 15 now. I
18 think this one's -- I think this one's pretty
19 straightforward. Yeah.
20    Okay, Page 16. I think most of them from
21 here on out are specific about his termination.
22 There is one on here that I'll ask you about.
23    182, for example, Governor Lee issued an
24 executive order Number 17 directing Tennesseans
25 to work from home whenever feasible.

Case 3:21-cv-00923 - Document 269 - Filed 06/20/25 - Page 15 of 30 - PageID #: 6003    53...56
Elite-Brentwood Reporting Services
www.EliteReportingServices.com

1    MR. STREET:  I'm not going to depose
2  Governor Lee.
3    MS. SANDERS:  Okay.
4    MR. STREET:  Even though the office
5  is right across the hall, but no.
6    MS. SANDERS:  His office is right
7  across the hall?
8    MR. STREET:  They have one there.  I
9  think that -- you know, these big construction
10  projects go down.
11    MS. SANDERS:  Oh, yeah, yeah.
12    MR. STREET:  And then they have a --
13  there's one at Vanderbilt, and they all have
14  the satellite offices, but Lee.
15    MS. SANDERS:  Right, right.
16    MR. STREET:  Lee -- what is it, Lee
17  Air-Conditioning?
18    MS. SANDERS:  Oh, Lee Company.
19    MR. STREET:  Lee Company, yeah.  Lee
20  Company was right there.
21    MS. SANDERS:  Oh, really?
22    MR. STREET:  Yeah.  Never saw the
23  governor, though.
24    MS. SANDERS:  Yeah.  I feel like he's
25  not in the day-to-day of the Lee Company.

1    Okay, let's see.
2    Okay, like 186, in the edit bay, five
3  people were crammed into a small space with a
4  party-like attitude.  I don't know who those
5  people are.  I've tried to find out, I don't
6  know.
7    MR. STREET:  If you don't know, you
8  can't list them.
9    MS. SANDERS:  Okay.
10    Okay, I'm on Page 19.  Okay, 19's easy.
11    20, I think 20's the same.  Yeah.
12    21.  Okay, on 226, this is just
13  clarification, I think 226, when it says,
14  "Plaintiff was informed that he had not been
15  on-boarded correctly," I think that's
16  attributed to Laura Johnson.
17    MR. STREET:  Yes.
18    MS. SANDERS:  Okay.
19    All right, now I'm on Page 22.
20    Okay, 23.  On 23, you're talking about
21  meetings.  I think you're talking about
22  one-on-ones with Laura Johnson.  That's what
23  it -- I think that's -- you know, when you do a
24  numbered complaint, sometimes it's not clear in
25  each allegation.

1    MR. STREET:  Right.
2    MS. SANDERS:  But I think these are
3  all about the one-on-ones with Laura Johnson.
4  If they're about anyone else, you know, any
5  one-on-one with anyone other than Laura --
6    MR. STREET:  Right.
7    MS. SANDERS:  We don't think there
8  were any others, other than -- he did have
9  one-on-ones with JB Wagner.
10    MR. STREET:  I'll ask him today.
11    MS. SANDERS:  Okay, I think that's
12  what that is, but just let me know.
13    MR. STREET:  Okay.
14    MS. SANDERS:  Okay, 24.  250,
15  allegation 250, I don't -- I don't know Shane
16  Emerson.  I don't know if he still works at
17  Ramsey.  So I don't know anybody with knowledge
18  of this.
19    If you're asking me for -- if there's a
20  staff meeting for the sole purpose of
21  apologizing, I've given you audios of all the
22  staff meetings, but I didn't listen to all of
23  them.
24    MR. STREET:  Okay.
25    MS. SANDERS:  So I feel like I can't

1  really direct you to one, but I don't -- I
2  don't know what this incident is.  But you do
3  have an audio of every staff meeting that was
4  there -- that -- that happened while he was
5  there and then before he got there and after he
6  got there, because you got them for that
7  two-year period.  Again, I didn't listen to
8  them all, but...
9    MR. STREET:  Okay.
10    MS. SANDERS:  The staff meetings,
11  you've also got the agendas on those.
12    MR. STREET:  Yeah.
13    MS. SANDERS:  There's no agenda for
14  the devotionals.  So you've got them, you've
15  got the audios, but you don't have -- there is
16  no agendas for those.
17    MR. STREET:  Okay.
18    MS. SANDERS:  So is there anything
19  else you're looking for on something like 250,
20  other than the audio of the staff meetings?
21    MR. STREET:  No, not that I can think
22  of.
23    MS. SANDERS:  Okay.  Again, I haven't
24  listened to all those, so there could be
25  something in there, but I don't know.

Case 3:21-cv-00923-B Document 260  Filed 06/20/25  Page 16 of 30  PageID #: 6004    57..60
Elite-Brentwood Reporting Services
www.EliteReportingServices.com

1    MR. STREET:  Yeah, I don't have them
2  all memorized, so I could go back and read
3  through the summaries.
4    MS. SANDERS:  Fair enough.
5    Okay, 254, "Lampo took adverse employment
6  actions against all employees who requested to
7  work from home."  We obviously dispute that,
8  but I think that to the extent there were any
9  adverse employment actions, I mean, HR would
10  know that, right?
11    MR. STREET:  Okay.
12    MS. SANDERS:  So if there's somebody
13  in particular you're looking for there, let me
14  know; otherwise, I would defer to HR.
15    MR. STREET:  Okay.  And if that's his
16  answer, that's the answer.
17    MS. SANDERS:  Yeah.
18    MR. STREET:  So, I mean, I don't
19  know, you know, what your employees know.  I
20  mean, I'm not in the position to tell you that
21  any better than you are, so...
22    MS. SANDERS:  Yeah, I don't know
23  anything about this 254, but adverse employment
24  actions, I know HR would know that, right,
25  because they keep a record of that.

1    MR. STREET:  Right.
2    MS. SANDERS:  So like, if he wants
3  to -- if he has a list of people and he wants
4  specific information, I'll get it.
5    MR. STREET:  Uh-huh.
6    MS. SANDERS:  But so far, I don't --
7  I don't have that, right?
8    Okay, Page 25.  Again, this is getting
9  into, like, conference meetings, staff
10  meetings.  People who have knowledge of how
11  they behaved in staff meetings, that could be a
12  thousand people.  So I don't know who those
13  people are, but are you asking for everybody
14  that might have attended a conference meeting?
15  If so, I just need to know what conference
16  you --
17    MR. STREET:  What number are you
18  talking about again?  I'm sorry.
19    MS. SANDERS:  I'm on Page 25.  It's
20  really 259 through 262 and then also 264.  This
21  is where he's talking about mass gatherings,
22  and technically anybody with knowledge of those
23  gatherings would be whoever was there, but I
24  don't -- I don't know who was there.
25    MR. STREET:  I think we're looking

1  for the people who would be implementing policy
2  regarding masks and social distance or not --
3  or chose not to implement those policies.
4    MS. SANDERS:  Okay.  Yeah, that's
5  going to be -- that would be Armando.
6    MR. STREET:  Okay.
7    MS. SANDERS:  Okay.
8    Okay, now I'm on Page 26.  Okay, here you
9  list Leo Gonzales and Shane Emerson.  I'm
10  assuming if you list people by name -- you also
11  on 282 listed Daniel Tardy.  These are not
12  people that I've talked to or people that I
13  think have information about Brad Amos.  I'm
14  assuming if you list them by name, then you
15  know who they are.
16    MR. STREET:  Uh-huh.
17    MS. SANDERS:  You're not looking for
18  me to list who you've got listed in the
19  complaint?
20    MR. STREET:  No, that's fair.
21    MS. SANDERS:  Okay.
22    All right, now I'm on Page 27.  I don't
23  think there's -- that's fine.
24    28 -- all of those are pretty specific.
25  28's the same, it's specific conversations

1  between him and Laura Johnson.
2    I'm on to Page 29 now.  Okay, nothing on
3  29.
4    On 30.  Okay, Page 31 -- oh no, I'm
5  sorry, Page 30, the bottom of 324, "Defendants
6  have been publicly criticized by many sources
7  for their anti-mask position and their aversion
8  to social distancing."
9    Do you -- are you asking me to list
10  somebody that has knowledge of that, or is
11  that --
12    MR. STREET:  If they do, if you have
13  someone.
14    MS. SANDERS:  Yeah, the publicly
15  criticized, though, like, that's pretty brood.
16  I don't know -- like, if there was an
17  article -- I think you attached some articles
18  to your complaint, but I didn't -- I didn't
19  copy those.  I didn't print those out.  I think
20  you, like, had a SEEN article maybe.
21    MR. STREET:  Let's see, probably
22  not -- we would have footnoted it, but -- and
23  I'm not saying that's not something I provided
24  since.  But yeah, I mean, if it's someone there
25  at -- who works for the Defendant, I'm not

Case 3:21-cv-00923-BJB-CHL   Document 269   Filed 06/20/25   Page 17 of 30 PageID #: 6005   61..64
Elite Reporting Services
www.EliteReportingServices.com

1  asking for -- I can agree not to ask for
2  people -- reporters, random people.
3          MS. SANDERS:  Yeah.
4          MR. STREET:  You know, but if it was
5  an employee or ex-employee...
6          MS. SANDERS:  I would say most
7  people -- like, if it was in the news, most
8  people saw it, or if it was on Facebook,
9  somebody criticized on Facebook.
10          MR. STREET:  Right.
11          MS. SANDERS:  There's no way for me
12  to know --
13          MR. STREET:  Who'd know about -- I'm
14  not asking who knew about it, but maybe the
15  people who did publicly criticize, if it's
16  not...
17          MS. SANDERS:  Yeah.  Yeah.
18          MR. STREET:  And it's not -- you
19  know, I'm talking people at the company.  I'm
20  not talking about reporters.
21          MS. SANDERS:  Right, right, right.
22      So if there were people at the company
23  that publicly criticized it and we're aware of
24  it.
25          MR. STREET:  Uh-huh.

1          MS. SANDERS:  Okay, I don't know
2  about that, but I'll ask the question.
3      All right.  Page 31.  Okay, I think
4  that's pretty much repeat.
5      All right, then we get into the claims,
6  retaliatory discharge.  I think -- should we go
7  through the claims or do you think if I address
8  the facts?
9          MR. STREET:  I think if you address
10  the facts --
11          MS. SANDERS:  Okay.
12          MR. STREET:  -- that this will be
13  fine.  These claims are just our legal claims
14  based on those facts.
15          MS. SANDERS:  Yeah, on the facts.
16  Okay.
17      All right, so -- so then what I'm going
18  to do is I'll go back to Interrogatory Number
19  2, and I don't know that I have anybody new to
20  list, but I'm going to list who I've already
21  listed.  I will go ahead and include the
22  recruiter.
23          MR. STREET:  Uh-huh.
24          MS. SANDERS:  Or I'll -- and I'll
25  point to Jobvite.  Like, anybody using Jobvite

1  interviewed him, you know.  So I'll point you
2  to Jobvite and tell you where to look for that.
3  And then I'll look to see -- I feel like there
4  was one more I was going to do like that, but I
5  got -- I've got a note.
6      All right.  So I'll do that on 2, and
7  that takes care of 2.
8      What was the other one?  Yeah, 5.  5's
9  actually pretty easy because Luke -- okay, let
10  me ask you about 5.
11      Luke LeFevre made the decision on the
12  spot, and he is on the operating board, so he
13  has -- you know, he has power.  He has the
14  authority to do that -- had, he's not there
15  anymore.  So -- but as you can see from the
16  documents, there were conversations about Brad
17  isn't going to -- this doesn't seem like it's
18  working, we're going to give him -- they call
19  it at Ramsey an emotional firing, which I don't
20  really know what that means, but I think it
21  means that we tell you this could happen, what
22  do you think about it.  They're very, like,
23  relationship oriented.
24      So they had a conversation with him --
25  the intent was to have a conversation with him

1  on -- and this is all in the documents, so --
2  but he was terminated on the spot, and that was
3  solely Luke LeFevre's decision.  So I think
4  that could be part of the issue, is --
5          MR. STREET:  What are you -- what
6  document are you looking at now?
7          MS. SANDERS:  Yeah, I'm looking at
8  Number 5, Interrogatory Number 5.
9          MR. STREET:  Oh.
10          MS. SANDERS:  On your -- on your --
11  this is your original one and my original
12  response.
13          MR. STREET:  Oh, okay.  All right.
14      Okay.  I mean, again, I think if it's
15  responsive, you can list it out, but if it's --
16  if you've got a limited number of documents you
17  could point to, that's fine, too.
18          MS. SANDERS:  Yeah.  I think that's
19  what I'll do, because truly the only person
20  that made the decision was Luke LeFevre, but
21  that doesn't mean there were other people --
22  and it's mostly because I think this is a typo
23  where you said "the decision to terminate or
24  suspend."
25          MR. STREET:  Uh-huh.

1      MS. SANDERS: Well, nobody -- he
2  wasn't suspended, but what that made me think
3  is maybe you're looking for more than just the
4  person who made the decision. To me, that's an
5  easy answer. It's Luke LeFevre.
6      MR. STREET: Right.
7      MS. SANDERS: He was the only one.
8  But there were other people who knew about it,
9  and you can see that in the documents. So I
10  can point you to those documents --
11      MR. STREET: Uh-huh.
12      MS. SANDERS: -- and then that's...
13      MR. STREET: Right, as long as this
14  isn't, you know, a short range.
15      MS. SANDERS: It is. It's all going
16  to be on one day.
17      MR. STREET: Okay.
18      MS. SANDERS: So it's pretty easy to
19  -- it's pretty easy to look.
20      All right, so let me just do that.
21      Okay. And then Number 7, Number 7, I'm
22  glad you pointed that one out because that's
23  where you're asking for statements. So there's
24  not any voicemail messages, there's nothing --
25  but there's, as you know, scads of e-mails and

1  there are text messages.
2      So you asked me to identify and describe
3  all statements between Plaintiff and Defendant
4  regarding his terminations, concerns about his
5  job performance or concerns about his personal
6  life. So you have all these statements.
7      MR. STREET: Uh-huh.
8      MS. SANDERS: Are you asking me to --
9  what else are you asking me to do?
10      MR. STREET: All right, let me look
11  at it again. It's...
12      MS. SANDERS: Yeah.
13      MR. STREET: Number 7.
14      MS. SANDERS: And this is a pretty --
15  by the way, this is going to be a finite group,
16  right, because it's between Plaintiff and
17  Lampo, and you have his inbox --
18      MR. STREET: Uh-huh.
19      MS. SANDERS: -- and his outbox, so
20  you have all this. It's about 6,000
21  documents -- or -- no, I think it's like 6,000
22  pages, so it's fewer documents.
23      MR. STREET: Between Plaintiff and
24  Defendant or Defendant and any other employee
25  of Defendant.

1      MS. SANDERS: Right, so you've got --
2  so --
3      MR. STREET: So just should be
4  statements either made to the Plaintiff or
5  about the Plaintiff concerning his termination,
6  his job performance, his personal life. Yep, I
7  think that one is pretty clear.
8      MS. SANDERS: Well, but this is
9  between Plaintiff and Defendant.
10      MR. STREET: It says Plaintiff and
11  Defendant and/or, three people, and/or any
12  employee of Defendant.
13      MS. SANDERS: So it's not Plaintiff
14  and/or any -- I mean, you have all this, but --
15  I mean, you -- you have it all, anyway.
16      MR. STREET: Yeah. If I have it all,
17  then --
18      MS. SANDERS: Yeah.
19      MR. STREET: -- if you just want to
20  identify it by page number, that's fine.
21      MS. SANDERS: Well, it's going to be
22  like 40,000 pages. I mean, it -- like, because
23  that's what it is. That's -- you know, that's
24  what it is.
25      MR. STREET: That's not much help,

1  Leslie.
2      MS. SANDERS: Well, I guess what I
3  can do -- I mean, I don't -- I can give you the
4  range. I can show you the searches and I can
5  give you the range of documents --
6      MR. STREET: Okay.
7      MS. SANDERS: -- or those responses.
8      MR. STREET: Just, you know, send me
9  that, and before -- I won't say, oh no,
10  ridiculous, Judge, Judge --
11      MS. SANDERS: Yeah.
12      MR. STREET: -- I'll be like, let me
13  see, and then I'll get back with you if it's
14  not.
15      MS. SANDERS: Okay. I've got -- I
16  have a little bit of a logistical issue,
17  because Armando Lopez is at a funeral this week
18  in Texas, but I've made arrangements for him to
19  review everything.
20      He's going to -- I don't think it's going
21  to be an issue, but that's the only -- getting
22  him signed might be a little bit of an issue,
23  but I've already spoken to him. He knows
24  what's coming. You know, I told him I would
25  get back with him, but he's in flight today.

1  He's in a funeral tomorrow.  Thursday morning,
2  he's going to take a look at these.
3      We should be fine.  The only issue is if
4  he can't sign them, but I'll get you the
5  responses.  They're due by Thursday.
6      MR. STREET:  I don't -- I'm not going
7  to fight for a day or two late, but I am
8  probably going to put that into my motion to
9  say, look, we're giving them a couple extra
10  days because Armando's at a funeral.
11      MS. SANDERS:  Yeah.
12      MR. STREET:  That supports my
13  position to move discovery a little bit out.
14      MS. SANDERS:  Yeah.  Well, you're
15  going to get them.  It's just a matter -- I'll
16  probably have them to you tomorrow.  I just
17  don't know --
18      MR. STREET:  That'd be fine.
19      And really, if we can pass the deposition
20  tomorrow so I can go get my head fixed --
21      MS. SANDERS:  Uh-huh.  Yeah.
22      MR. STREET:  -- it would be great,
23  so...
24      MS. SANDERS:  I'm hoping they're
25  going to respond and tell me she's -- hopefully

1  we can get all that --
2      MR. STREET:  And that will be no
3  problem at all because we'll get them before
4  the first deposition, which will be Friday.
5  And then if they're -- I think we'd still be
6  fine.
7      MS. SANDERS:  I think Lauren Piper
8  just responded, let's see what she said.
9      Okay.  JB Wagner is out on the 11th.  Let
10  me -- but let me just -- let me -- let me find
11  out what that means.  If that just means he's
12  got a project due that day, we'll work that
13  out.
14      MR. STREET:  Okay.
15      MS. SANDERS:  All right.  Let's see,
16  I think that was all of the individual ones.
17      Speaking of interrogatories, I don't know
18  that I ever got your responses verified.  Can
19  you just double-check that?
20      MR. STREET:  Yeah.
21      MS. SANDERS:  I have moved law firms,
22  so it's possible it just didn't get moved, you
23  know.
24      MR. STREET:  Okay.
25      MS. SANDERS:  But I have your

1  responses, I just don't think I have them
2  verified.
3      MR. STREET:  Okay.
4      MS. SANDERS:  If you can check on
5  that, that would be great.
6      Okay.  So let's see, that takes care of
7  the sanctions, takes care of the -- I think
8  that's everything, unless you have something.
9      MR. STREET:  I don't.  And it's
10  the -- no, I don't.
11      MS. SANDERS:  Okay.  All right, so
12  I'm going to find out about JB Wagner.  I'm
13  going to send you that.  I'll talk to my client
14  about extension.
15      We're not going to agree to the more than
16  ten.  Do you think you're going to go over ten?
17  Because if so, we should talk about that.
18      MR. STREET:  I mean, let's see how
19  the first few go and then we can see.
20      MS. SANDERS:  Okay.  That's fair
21  enough.
22      MR. STREET:  Is it ten?  I mean, I
23  know the --
24      MS. SANDERS:  Well, you've got nine
25  left.  It's ten without leave of court.

1      MR. STREET:  Okay, ten for each
2  Defendant?  I don't remember off the top of my
3  head.
4      MS. SANDERS:  I thought it was ten
5  total, but --
6      MR. STREET:  Might be.
7      MS. SANDERS:  -- I don't know.  I'll
8  just have to look at the rule, because I don't
9  remember that.
10      MR. STREET:  I do, too.  I don't know
11  off the top of my head, either.
12      MS. SANDERS:  I rarely have multiple
13  defendants.
14      MR. STREET:  See, these lawyers, they
15  don't remember everything you think we might
16  remember constantly.
17      MS. SANDERS:  No.
18      MR. STREET:  There's a lot of stuff
19  to try to stick up in there.
20      MS. SANDERS:  And I don't -- I rarely
21  have multiple defendants, so I never -- I don't
22  think I've ever really looked at that, you
23  know.
24      MR. STREET:  Yeah.  Me, neither,
25  so...

Case 3:21-cv-00922-B   Document 262   Filed 06/20/25   Page 20 of 30   PageID #: 6008
Elite Reporting Services
www.EliteReportingServices.com
73..76

1      MS. SANDERS:  Okay.  All right.
2  Well, we're good, I guess.
3      MR. STREET:  All right, I'm glad we
4  did this.
5      MS. SANDERS:  Yep.
6    (Proceeding concluded at 1:19 p.m. CST)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                REPORTER'S CERTIFICATE
2
3  STATE OF TENNESSEE
4  COUNTY OF SUMNER
5        I, MICHELLE CHECUGA, Licensed Court Reporter,
6  with offices in Nashville, Tennessee, hereby certify
7  that I reported the foregoing Discovery Dispute
8  Conference by machine shorthand to the best of my
9  skills and abilities, and thereafter the same was
10  reduced to typewritten form by me.
11        I further certify that I am not related to
12  any of the parties named herein, nor their counsel,
13  and have no interest, financial or otherwise, in the
14  outcome of the proceedings.
15        I further certify that in order for this
document to be considered a true and correct copy, it
16  must bear my original signature and that any
unauthorized reproduction in whole or in part and/or
17  transfer of this document is not authorized, will not
be considered authentic, and will be in violation of
18  Tennessee Code Annotated 39-14-104, Theft of
Services.
19
20
21
22
23    MICHELLE CHECUGA, LCR, RPR
      Elite-Brentwood Reporting Services
24    Licensed Court Reporter (TN)
      Notary Public State of Tennessee
25
          LCR #864 - Expires:  6/30/2024

Case 3:21-cv-00923 - Document 269-4 - Filed 06/20/25 - Page 21 of 30 PageID #: 6009   77..78
Elite-Brentwood Reporting Services    (615) 595-0073
www.EliteReportingServices.com

---
**$**
---

**$10,000** 39:5

---
**1**
---

**1** 12:7,8 23:8

**10** 11:7 12:6

**100** 49:1

**103** 54:4

**10th** 4:14,19 5:7,9,15,20
6:8,21

**11** 48:20,21 54:14,19

**11th** 3:22 4:3 7:8 9:1
74:9

**12** 54:20

**120** 16:19,20

**121** 54:20

**12th** 14:2

**13** 55:4

**137** 55:5

**140** 55:18

**141** 55:21

**146** 56:12

**15** 56:17

**150** 16:19,23

**15th** 16:2

**16** 56:20

**17** 56:24

**182** 56:23

**186** 58:2

**19** 58:10

**19's** 58:10

**1:19** 77:6

---
**2**
---

**2** 12:7 23:17,23 24:5,8
25:21,22 66:19 67:6,7

**20** 31:7 33:16 58:11

**20's** 58:11

**2020** 54:21

**21** 28:1 58:12

**21,000** 45:20

**22** 28:3,10 58:19

**226** 58:12,13

**23** 58:20

**23rd** 22:19,23

**24** 59:14

**24th** 33:12,17

**25** 62:8,19

**250** 59:14,15 60:19

**254** 61:5,23

**259** 62:20

**26** 32:13 63:8

**262** 62:20

**264** 62:20

**27** 63:22

**28** 63:24

**28's** 63:25

**282** 63:11

**29** 64:2,3

---
**3**
---

**3** 12:8

**30** 64:4,5

**30(b)(6)** 17:13,16,17
18:1,17

**31** 64:4 66:3

**324** 64:5

**330** 27:13

**350** 19:12

---
**4**
---

**4** 32:13 35:11

**40** 35:12

**40,000** 71:22

**47** 38:8

**48,000** 45:20

**4th** 13:15 28:3

---
**5**
---

**5** 24:11 67:8,10 68:8

**5's** 67:8

**51** 39:3

**53** 40:6

**54** 40:6,7

**57** 41:5

---
**6**
---

**6** 39:1

**6,000** 70:20,21

**60-day** 32:15

**67** 43:21

**68** 43:25

---
**7**
---

**7** 24:23 25:21 69:21
70:13

**74** 46:12

---
**8**
---

**8** 46:11

**81** 49:21 50:19

**82** 50:24 51:13

**87** 50:24 51:14

**8th** 4:14,18,21 5:8,9,15,
20,21 6:7,21 9:2

---
**9**
---

**9** 24:22 25:4 50:22

**90** 39:21,22

**90,000** 39:4,17

**900** 55:11

**900-person** 55:5,9

**93** 52:14

**95** 53:17

**9:00** 12:12

**9th** 3:22,23,24 12:2

---
**A**
---

**acknowledge** 32:5

**acting** 44:13

**actions** 24:18 61:6,9,24

**actual** 22:11 26:16

**address** 23:10 29:13
66:7,9

**addressing** 23:22

**admit** 31:7

**adverse** 61:5,9,23

**affect** 16:12 53:18

**afternoon** 11:8 12:5,22
15:3

**agenda** 60:13

**agendas** 60:11,16

**agree** 6:3 18:25 19:20,21
20:15,18 31:1 41:22 65:1
75:15

**agreeing** 20:13

**ahead** 66:21

**aided** 51:16

**Air-conditioning** 57:17

**allegation** 58:25 59:15

**allegations** 26:14 28:18
49:12

**allowing** 73:9

**alteregos** 55:20

**Amend** 28:12

**amended** 27:18,21

**American** 54:23

**Amos** 3:21 9:6 10:16
29:7 32:7 33:22 44:10
49:22 50:6 63:13

**Amos's** 26:9 42:21

**amplified** 56:13

**and/or** 71:11,14

Case 3:21-cv-00922 - Document 260 Filed 06/20/25 - Page 23 of 30 PageID #: 6010
EliteReportingServices.com and/oril
www.EliteReportingServices.com

**Anderson** 34:7,8 36:6, 20 37:22

**Angeles** 11:3

**annual** 39:4

**answer's** 53:15

**anti-mask** 64:7

**anymore** 6:9 67:15

**apologizing** 59:21

**applicant** 33:3

**apply** 28:19

**approved** 39:7

**April** 8:25

**Armando** 3:23 4:2 9:6 11:9,14 12:10,12 39:6 40:3,12 41:7 42:18 43:12,16,19 44:5 52:12 53:21 56:5 63:5 72:17

**Armando's** 10:21 18:6 73:10

**arrangements** 72:18

**article** 64:17,20

**articles** 64:17

**ascertain** 19:3,9

**asks** 23:5,9 24:10

**assistance** 49:21,23 50:12

**assuming** 51:5 63:10,14

**attached** 64:17

**attended** 62:14

**attitude** 58:4

**attorney** 11:25

**attributed** 58:16

**audio** 60:3,20

**audios** 59:21 60:15

**August** 17:1

**authority** 67:14

**availability** 8:21

**aversion** 64:7

**aware** 19:10 65:23

**axle** 30:4

---

**B**

**back** 8:24 10:24 11:2,12, 19 18:10 39:1 46:7 61:2 66:18 72:13,25

**base** 30:13

**based** 21:3 40:23 66:14

**basically** 21:4

**Bates** 45:6

**bay** 58:2

**behalf** 44:14

**behaved** 62:11

**beliefs** 56:12,13

**big** 57:9

**bigger** 50:9

**bit** 11:17 12:9 72:16,22 73:13

**blah** 30:2

**board** 37:4 43:7 56:2 67:12

**bonus** 39:5

**booked** 5:21

**Borrowed** 46:14

**bottom** 64:5

**Brad** 29:7 32:7 33:21 42:21 47:23 63:13 67:16

**Brad's** 47:7

**Brandon** 16:5

**brood** 64:15

**brought** 53:11

**buckets** 3:7

**business** 3:12

**busy** 19:16

---

**C**

**calendar** 18:24

**call** 9:21 10:5 17:20 67:18

**called** 6:16 30:5

**calling** 36:14

**captured** 46:25

**care** 67:7 75:6,7

**careful** 29:24

**case** 13:6 16:7 29:15 31:6

**cases** 19:13

**category** 52:8

**certificate** 22:20

**cetera** 37:14

**chance** 4:5

**change** 4:10 5:22

**charge** 41:7,9

**chart** 49:7

**check** 4:13 8:25 12:15 13:5,11 75:4

**chose** 63:3

**Christian** 35:17

**circle** 25:2

**citizens** 54:23

**civil** 19:12

**claim** 41:23

**claims** 51:18 66:5,7,13

**clarification** 58:13

**clear** 42:6 58:24 71:7

**client** 19:24 31:17,18 34:12 39:11 51:25 54:2 75:13

**clues** 42:25

**coffee** 8:6

**commentary** 35:15

**community** 35:15

**company** 57:18,19,20, 25 65:19,22

**compel** 23:20 46:20

**compelling** 23:21

**complaint** 26:15 27:1, 18,21 28:12 41:17 58:24 63:19 64:18

**complete** 33:13

**concern** 54:23

**concerns** 70:4,5

**concluded** 77:6

**conducted** 53:24

**conference** 62:9,14,15

**confirm** 12:1

**conflating** 30:18

**connect** 7:21 8:10,11,12 37:4

**connected** 8:12

**constantly** 41:24 76:16

**constraints** 46:6

**construction** 57:9

**contention** 24:9

**context** 32:22

**continuation** 17:17

**controlled** 55:19

**conversation** 10:11 67:24,25

**conversations** 63:25 67:16

**cooperate** 37:16

**cooperative** 38:1

**coordinating** 6:11

**copy** 22:2 28:5,6 64:19

**Coronavirus/covid-19** 54:22

**correct** 21:13

**correctly** 58:15

**count** 27:13

**counts** 26:16 27:2,12

**couple** 17:10 47:1 73:9

**court** 5:25 9:15 14:5 75:25

**Court's** 28:2

**cover** 13:4

**covered** 11:20

**COVID** 55:7 56:13

**coworkers** 43:22 51:3,7

Elite-Brentwood Reporting Services · (615)595-0073
www.EliteReportingServices.com

crammed 58:3

created 28:9

criminal 19:12

criticize 65:15

criticized 64:6,15 65:9,
23

CST 77:6

CT 4:6

cult-like 35:16

cut 46:13

---

### D

Daniel 10:21 63:11

data 33:3

date 7:9 22:17 36:16

dates 4:20 15:14

Dave 43:7

David 5:9 6:8 47:2 49:6

day 4:2,23 5:3,12,14 6:7
9:7 12:13,19 13:1 46:18
69:16 73:7 74:12

day-to-day 57:25

days 4:14 5:16,18 16:19
21:11,23 73:10

deadline 15:15 21:12

decision 24:15 67:11
68:3,20,23 69:4

Defendant 38:9 41:22
64:25 70:3,24,25 71:9,
11,12 76:2

defendants 64:5 76:13,
21

defer 41:4 61:14

demonstrated 55:7

department 48:10

depo 4:5

depose 32:1 34:11
36:14,20 37:24 43:20
56:8 57:1

deposing 34:22

deposition 3:21 11:19

13:6 19:21 52:20 73:19
74:4

depositions 13:21,24
14:17,22 15:18,23

describe 70:2

detail 24:3

devotionals 60:14

Dicicco 5:9 6:8,22 9:5,9
32:12 34:1 47:2,9,15,20
49:6 50:1,2

direct 60:1

directing 56:24

discharge 27:13 66:6

disclosed 33:25

disclosures 33:6,16

discovery 14:19 15:15
17:21 18:25 19:1 73:13

dismiss 31:3

dispute 39:13 51:21
53:6 55:23 61:7

disputed 39:11

disputes 51:18

distance 63:2

distancing 64:8

distinct 49:5

distinguish 34:13

docket 19:12

document 28:1 33:8
68:6

documentary 48:5,12
50:3

documents 3:13 15:19
31:12 40:18 43:15 44:16
45:3,4,18,19 46:4,15
47:9 48:22 49:1 67:16
68:1,16 69:9,10 70:21,22
72:5

double 11:21

double-check 4:22
24:21 74:19

due 16:25 73:5 74:12

duplicates 48:24

---

### E

e-mail 4:15 12:21 19:25
43:25 49:6

e-mailed 4:17

e-mails 40:19,20,21 44:1
69:25

early 33:1 34:10 37:24
51:16 54:21

easier 7:12 18:5

easiest 49:9

easy 3:10 23:12 37:4
58:10 67:9 69:5,18,19

EC 7:17

edit 58:2

ELP 54:11

Emerson 59:16 63:9

emotional 67:19

employee 55:15 65:5
70:24 71:12

employees 7:13 52:14
53:19 61:6,19

employment 24:17
26:3,12 61:5,9,23

encouraged 43:21 44:2

encourages 41:23

end 14:10 19:1

endorsed 54:5,7

enormous 19:12

evaluations 33:14

ex-employee 65:5

exception 29:12

executive 56:24

expects 21:6

expressing 41:23

extend 20:18

extension 14:4,6,11
18:21,25 19:18,20 75:14

extent 55:20 61:8

extra 73:9

---

### F

Facebook 43:22 65:8,9

fact 9:18 27:14 39:11

facts 24:2 25:23 29:1,15
66:8,10,14,15

factual 28:18

fair 61:4 63:20 75:20

familiar 26:9

fast 20:21

faster 8:9 9:22 54:15

fear 55:6

feasible 56:25

feel 21:5 41:21 53:10,11
57:24 59:25 67:3

feels 42:10

fewer 70:22

fight 73:7

figure 9:23 10:16 18:21
30:25 42:23 43:14

figures 43:19

filed 21:5,6,7,20 23:18
27:24 28:3 31:2,3,5

filing 28:2

find 9:21 10:13 36:16
37:25 41:2 49:9,14 58:5
74:10 75:12

finding 8:21

fine 10:20 11:10 22:12,13
34:25 38:14 39:15 40:4
45:7 46:1 63:23 66:13
68:17 71:20 73:3,18 74:6

finish 6:1 12:10

finite 70:15

firing 67:19

firms 74:21

fit 14:1 25:14 52:7

fixed 73:20

flew 10:24 11:2

flight 72:25

Case 3:21-cv-00923 — Document 260-4 Filed 06/20/25 Page 24 of 30 PageID #: 8012
80922 — Brennon Reporting Services — shane.cramer@elighti3
www.EliteReportingServices.com

floating 20:6

focussed 50:3

folks 56:7

follow 12:20 43:10

footnoted 64:22

forget 7:19

form 25:9

format 43:9

found 35:14

free 13:7

Friday 7:2 9:5,13,15 74:4

friends 43:22

funeral 72:17 73:1,10

Future 46:14

**G**

gatherings 62:21,23

gave 31:12 33:13

general 43:9

generally 45:2

get all 74:1

give 5:25 12:9 21:16
32:21 38:21 42:25 67:18
72:3,5

giving 26:2 42:17 43:12

glad 69:22 77:3

Gonzales 63:9

good 3:3 8:7 11:17,21
26:21 41:8 48:25 52:11
54:18 77:2

governor 56:23 57:2,23

great 13:11 73:22 75:5

greet 43:4

group 70:15

guess 18:20 72:2 77:2

guest 7:15

guy 42:13

guys 14:13 19:20

**H**

half 50:23

hall 57:5,7

happen 67:21

happened 60:4

head 40:3,12 73:20 76:3,
11

heard 56:15

hearing 16:11

held 10:11

helps 6:8 28:2

hit 15:15

home 56:25 61:7

honestly 26:17

hoping 73:24

hour 12:24 13:1

hours 12:17

house 54:9

HR 39:6 40:3,12 41:4
43:5 61:9,14,24

HRC 17:16

**I**

idea 51:11

identified 32:1 34:10
51:1,22

identify 23:23 24:14,25
43:24 52:14 54:24 70:2
71:20

impact 26:11

implement 63:3

implementing 63:1

inbox 70:17

incident 60:2

inclined 18:24

include 25:13 29:25
66:21

included 18:7,13 26:10

including 52:16

indicating 35:16

individual 23:4 74:16

individually 17:25 23:5

individuals 24:11 25:12,
13

indoctrination 41:6

inform 31:18

information 23:11 34:20
54:6 62:4 63:13

informed 58:14

initial 33:6,15

intends 19:17

intent 67:25

internal 32:18

interrogatories 22:1,8
23:12 74:17

interrogatory 22:11
25:9 66:18 68:8

interview 30:8,14 31:12
33:4 34:16 35:11,13 39:2

interviewed 30:21 31:19
32:16 33:17 34:2,11,14
35:4 44:14,15 67:1

interviews 31:8 32:15

investigate 30:8

investigation 30:5
40:23

investigations 25:5

involved 24:14

issuance 37:14

issue 6:8 12:16 20:24
26:13 38:2 68:4 72:16,
21,22 73:3

issued 3:10 56:23

issues 52:15,16

**J**

JB 4:24 5:4,10 7:6,8 9:10,
22 26:3,4 34:2 50:1,2,8
52:4,6 59:9 74:9 75:12

JB's 8:21

jerk 20:9

job 23:10 70:5 71:6

Jobvite 32:17 33:2,4,8,
10,14,18 34:5,13 35:3
66:25 67:2

John 7:16

Johnson 4:10 34:1
50:10 52:25 58:16,22
59:3 64:1

join 14:15

Jon 3:2

Judge 17:20 30:5,17
36:11 72:10

Judge's 19:2

judgment 16:25

July 17:2

June 16:6,13

jury 16:2 19:14

**K**

keeping 17:10

Kim 29:13

Kimberly 29:3 31:1
37:22

kind 15:12 26:5 41:14
47:3

knew 26:2 33:21 65:14
69:8

knowledge 24:1,4 25:23
26:18 27:8 28:25 30:12,
15 41:13 42:4 44:9 51:11
55:9,24 59:17 62:10,22
64:10

**L**

LA 12:6,7

ladies 46:10

Lampo 26:18 27:3,8
35:16 38:10 39:3 43:21
44:1,14 46:10 49:13
53:19 55:19,22 61:5
70:17

**Lampo's** 22:7,14 46:14

**lands** 15:9

**large** 46:23

**Larry** 34:6,8 36:5,6,20,21 37:21

**late** 12:19 73:7

**Laura** 4:10,14 5:4,7,10 7:12 9:2,5 34:1 49:16 50:10 52:25 58:16,22 59:3,5 64:1

**Lauren** 9:19,21,25 10:1, 3,4,17 13:3 16:2 74:7

**Lauren's** 16:11

**law** 7:18 74:21

**lawsuit** 36:17

**lawyers** 76:14

**lead** 26:5

**leads** 43:5

**leave** 75:25

**Lee** 56:23 57:2,14,16,18, 19,25

**Lefevre** 7:3 34:1 37:1 56:5 67:11 68:20 69:5

**Lefevre's** 68:3

**left** 75:25

**legal** 66:13

**Leo** 63:9

**Leslie** 72:1

**lets** 34:20

**life** 70:6 71:6

**likes** 16:19

**limited** 14:17 56:7 68:16

**link** 10:17

**linked** 49:12

**list** 3:6,19 4:13 17:6 29:23 31:15,16 38:12 40:11 43:11 44:17 48:10 51:7 56:7 58:8 62:3 63:9, 10,14,18 64:9 66:20 68:15

**listed** 29:4 36:6 47:22,23 48:2 63:11,18 66:21

**listen** 59:22 60:7

**listened** 60:24

**literally** 46:17

**litigation** 24:3 25:24

**lives** 52:16

**LLC** 27:8

**local** 35:14 54:5,7,8

**locally** 8:11

**located** 27:4

**log** 32:19 45:9

**logistical** 72:16

**long** 6:7 34:19 69:13

**longer** 29:5 36:7 37:1

**looked** 11:19 22:1 49:13 76:22

**Lopez** 3:24 72:17

**Lopez's** 44:5

**Los** 11:3

**lot** 11:20 25:12 26:14 28:19,23,24 29:1 54:15 76:18

**Luke** 7:3 9:5 34:1 37:1 49:16 56:5 67:9,11 68:3, 20 69:5

---

## M

**made** 5:17 25:1 33:18 39:3,21,22 67:11 68:20 69:2,4 71:4 72:18

**major** 46:14

**make** 5:8 6:17,25 9:11 19:18 21:10 22:2 23:6,21 26:22 30:1 46:21 48:7, 20,21 55:17

**makes** 32:13 49:9

**making** 24:14

**Mansueto** 3:12

**March** 28:3,6,9

**marked** 48:22

**marriages** 52:17

**masks** 63:2

**mass** 62:21

**matter** 22:10 24:2 25:24 39:18,22 42:2 73:15

**max** 12:17

**means** 41:12 67:20,21 74:11

**meant** 17:17,18

**media** 44:4,12,23

**meet** 43:4

**meeting** 55:5,10 59:20 60:3 62:14

**meetings** 53:20,25 58:21 59:22 60:10,20 62:9,10,11

**Melissa** 3:21 10:16

**member** 37:4

**memorized** 61:2

**Memphis** 16:4

**mentioned** 17:13

**message** 44:4,5,12,23

**messages** 69:24 70:1

**met** 12:1

**middle** 16:12 19:13 49:7

**mind** 9:20 14:10 44:24

**missed** 46:22

**missing** 33:11

**Monday** 9:5

**month** 16:16

**morning** 11:9 73:1

**motion** 14:15,17 19:3,9 20:6 21:25 23:19,20 31:3 36:10 45:1 46:20 73:8

**motions** 15:12

**move** 4:2 7:6,7 19:21 73:13

**moved** 74:21,22

**moving** 38:8,9 54:14

**multiple** 33:7 76:12,21

**mass** 62:21

**N**

**naming** 17:24

**narrow** 25:25 26:15

**narrowed** 23:6

**nature** 24:4

**news** 54:22 65:7

**nobody's** 29:20

**noon** 11:7

**normal** 12:18

**note** 67:5

**notes** 32:6,17 33:15,18

**noticed** 9:14

**number** 23:8,17,23 24:5, 11,22,23 25:4 31:7 35:12 42:22 45:7,20 56:24 62:17 66:18 68:8,16 69:21 70:13 71:20

**numbered** 58:24

**numerous** 56:14

---

## O

**observed** 52:6

**October** 33:12,13,16,17

**off-the-record** 10:10

**offer** 39:3,8,23 40:2 41:12

**offered** 40:2

**offering** 41:7

**office** 55:7 57:4,6

**offices** 57:14

**on-board** 40:14 43:3

**on-boarded** 40:10,24 42:22,24,25 43:11 58:15

**on-boarding** 40:7,9,13, 23 41:8 42:16,19,21

**one's** 24:13 56:18

**one-month** 19:14

**one-on-one** 53:20,25 59:5

one-on-ones 58:22
59:3,9

operating 37:4 43:6
56:2 67:12

operative 27:21

opinion 42:1

oppose 14:15 21:19

order 15:20 20:2,20
21:25 23:2,21 56:24

ordering 20:13

oriented 67:23

original 22:7 68:11

originally 4:15

outbox 70:19

---

**P**

p.m. 77:6

Pacific 10:23

pages 28:15 47:1,2
70:22 71:22

paragraph 27:12 50:17

part 16:8 45:1 68:4

participate 53:19

party 36:17

party-like 58:4

pass 73:19

password 7:18

PDF 28:6

people 17:10,24 23:5
24:19 26:2 27:8 28:24,25
32:15 33:21 34:4 35:2
36:3,12,13 38:12 42:22
43:6 47:5,7,15,21,23,24
51:1 52:3,4,5 55:11 58:3,
5 62:3,10,12,13 63:1,10,
12 65:2,7,8,15,19,22
68:21 69:8 71:11

perfect 13:19

performance 26:9
50:25 51:2,4 70:5 71:6

period 60:7

person 10:20 23:10,23

34:20,21 68:19 69:4

person's 24:4

personal 4:4 52:15 70:5
71:6

persons 24:14

phone 8:17 10:11 31:8,
19

picture 50:9

pinpoint 8:23

Piper 74:7

place 38:11 48:25 49:9

places 46:16

Plaintiff 12:24 31:8
35:13,22 39:4 41:19 42:2
43:21 46:13 58:14 70:3,
16,23 71:4,5,9,10,13

Plaintiff's 22:8 24:17
41:17 42:8 44:2

plan 15:5 47:3

plans 19:11

plenty 12:13 16:22

podcast 46:14

point 33:21 39:22 45:2,3
47:9 66:25 67:1 68:17
69:10

pointed 48:17 69:22

policies 63:3

policy 63:1

position 61:20 64:7
73:13

power 67:13

praise 41:24

prefer 14:14 37:16

prerogative 6:4

pretty 20:21 23:8 24:13
26:8 46:3 49:24 50:2
56:18 63:24 64:15 66:4
67:9 69:18,19 70:14 71:7

primarily 30:17

print 64:19

privilege 46:5

problem 74:3

proceeding 77:6

process 32:16 33:4 39:2
40:7,9,13 41:6 42:17,19

produce 45:14 46:18,19

produced 32:18,23
44:1,3,11,22 45:9

production 32:19

program 54:11

project 47:6 74:12

projects 57:10

pronounce 3:11

prove 42:11

provided 23:11 33:1
34:20 49:21,22 50:12
64:23

provider 54:6,7,8

publicly 64:6,14 65:15,
23

pull 4:16 22:3,4 32:18
48:19

pulled 22:25 48:23

purpose 59:20

put 9:1,4 11:8 25:9 29:24
36:10 73:8

putting 14:10

---

**Q**

qualify 32:8

question 30:7,11 35:25
66:2

questions 30:6,19

quick 9:21 10:6

---

**R**

radio 38:10 56:14

Ramsey 6:9 7:11 9:12
36:7 38:10 41:11,22,23,
24 43:7,8 55:6,19,22,25
59:17 67:19

Ramsey's 14:10 19:21
56:12

random 65:2

range 69:14 72:4,5

ranges 45:25

rarely 76:12,20

reached 36:22 37:24
54:9

read 23:2,24 40:19 61:2

ready 3:2 11:13

real 24:9

realized 33:6,10 38:19

reason 13:17 48:17

reasonable 45:25

recall 39:21 46:17

record 43:1 61:25

recruiter 29:4 32:6
66:22

recruiting 31:13

reference 35:2

referenced 53:3

related 47:19

relating 24:2 25:23

relationship 67:23

relevant 24:2 25:23
30:19

relocation 39:5

remember 21:9 22:17
32:7 35:8 52:19,22 53:10
76:2,9,15,16

remembers 29:6

repeat 66:4

REPORTER 7:23 8:13

reporters 65:2,20

requested 61:6

required 46:19 52:13,14
53:19

research 35:13

reserved 12:23

respond 73:25

responded 19:9 74:8

response 19:2 22:11

Elite-Brentwood Reporting Services · (615) 595-0073 · Elite-Brentwood.com Response i6
www.EliteReportingServices.com

23:19 25:10,14 45:14
47:16 68:12

**responses** 22:7,14
25:13 72:7 73:5 74:18
75:1

**responsible** 52:6

**responsive** 48:22 68:15

**rest** 13:25 26:10 52:11

**retaliatory** 27:13 66:6

**review** 46:4 72:19

**reviewed** 46:4,6

**reviews** 35:14

**ridiculous** 72:10

**roles** 26:11

**roster** 38:22 55:16

**Rudolph** 29:3,13 31:1,7
37:22

**rule** 9:16 19:4,10,11,17
20:21 76:8

---

### S

**salary** 39:4

**sanctions** 21:24 23:18,
20 75:7

**SANDERS** 3:2,5,9,16,18
4:1,8,12,25 5:4,6,12,16
6:2,6,11,15,23 7:3,5,20,
25 8:7,14 9:4,9,14 10:1,
3,8,12,15,19 11:1,4,15,
18,24 12:4,14 13:8,10,
14,17 14:4,7,12,16,20,24
15:2,8,21,25 16:3,9,14,
17,20,24 17:2,8,12,22
18:1,3,6,9,12,16,20,23
19:8,22 20:4,7,11,15,17,
20,23 21:2,8,13,16,22
22:6,15,18 23:1,14 24:1,
24 25:2,7,19 26:8 27:7,
11,16,20,23 28:1,7,11,
16,21 29:2,10,17,19
30:3,11,24 31:5,11,20,
22,24 32:3,11,21 33:20,
24 34:9,24 35:1,6,19,23
36:1,4,18,24 37:3,8,12,
15,19 38:4,15,17,20,25
39:12,16,20 40:1,6,17
41:3,20,25 42:3,12,15
43:18 44:7,20 45:5,8,12,

15,18,21,24 46:2 47:5,
12,14 48:1,7,9,15 49:4,
19 50:6,16,19,21 51:10,
14,19,23 52:1,10,21,24
53:2,5,8,13,16,23 54:3,
12,18 55:2,12,14 56:1,4,
9,17 57:3,6,11,15,18,21,
24 58:9,18 59:2,7,11,14,
25 60:10,13,18,23 61:4,
12,17,22 62:2,6,19 63:4,
7,17,21 64:14 65:3,6,11,
17,21 66:1,11,15,24
68:7,10,18 69:1,7,12,15,
18 70:8,12,14,19 71:1,8,
13,18,21 72:2,7,11,15
73:11,14,21,24 74:7,15,
21,25 75:4,11,20,24
76:4,7,12,17,20 77:1,5

**satellite** 57:14

**scads** 69:25

**scan** 4:6

**schedule** 7:13 17:5
36:22

**scheduled** 11:6 12:7

**searches** 72:4

**section** 27:15

**sell** 54:9

**send** 10:17 12:21 17:14
19:24 72:8 75:13

**sense** 19:18 30:1 32:13
48:7 49:10 55:17

**September** 22:19,23

**service** 22:21

**set** 22:8 46:19 48:18,19
49:1

**Shane** 59:15 63:9

**she'd** 4:14 20:25

**she'll** 10:8

**short** 20:12 69:14

**shorter** 11:23

**show** 31:17 32:6 56:14
72:4

**showing** 8:2

**shows** 47:5,10

**sides** 15:18

**sign** 73:4

**signed** 22:20 72:22

**simple** 23:8 36:14,25

**sit** 10:21

**sitting** 9:23

**skip** 24:24

**small** 3:6 58:3

**social** 44:3,12,22 63:2
64:8

**soda** 8:6

**sole** 59:20

**solely** 68:3

**sort** 26:6

**source** 48:3 49:15

**sources** 64:6

**sp** 3:12

**space** 58:3

**speak** 37:19,21

**speaking** 51:25 74:17

**specific** 18:15 47:18
52:15 56:21 62:4 63:24,
25

**specifically** 24:17 42:20
45:6 55:5

**spirit** 55:8

**spoken** 72:23

**spot** 67:12 68:2

**spread** 54:21

**spring** 54:21

**squeeze** 12:24

**stack** 46:3

**staff** 59:20,22 60:3,10,20
62:9,11

**stamp** 28:5 45:7

**start** 3:9 27:2

**started** 12:12 33:9 40:22

**starting** 27:12 32:13

**state** 24:3

**stated** 55:6 56:12,13

**statements** 24:25 69:23
70:3,6 71:4

**status** 19:3,9,15

**stay** 12:19

**stayed** 11:5

**stick** 76:19

**straightforward** 24:13
56:19

**STREET** 3:4,8,15,17,25
4:4,9,23 5:1,5,11,14,23
6:5,10,13,19 7:1,4,17,22
8:5 9:3,8,12,25 10:2,7,
14,18,24 11:2,10,16,22
12:3,11 13:3,9,13,16,25
14:5,9,13,18,21,25 15:7,
10,22 16:1,4,10,15,18,21
17:1,6,9,18,23 18:2,4,8,
11,14,19,22 19:6,19
20:1,5,8,14,16,19,22,25
21:3,10,15,21 22:4,13,
16,24 23:13,25 24:23
25:1,6,17 26:7 27:5,10,
14,17,22,25 28:4,9,13,
17,22 29:9,14,18,22
30:10,23 31:4,10,14,21,
23 32:2,10,20 33:19,23
34:8,18,25 35:5,18,21,24
36:2,9,23 37:2,6,9,13,18
38:3,13,16,18,24 39:10,
14,19,25 40:4,16 41:1,
16,21 42:1,6,13 43:16
44:6,18,24 45:6,10,13,
16,19,22,25 47:4,11,13,
25 48:6,8,14 49:3,18
50:5,15,17,20 51:8,12,
17,20,24 52:9,19,22
53:1,4,7,9,14,22 54:1,10,
17 55:1,11,13,25 56:3,6,
16 57:1,4,8,12,16,19,22
58:7,17 59:1,6,10,13,24
60:9,12,17,21 61:1,11,
15,18 62:1,5,17,25 63:6,
16,20 64:12,21 65:4,10,
13,18,25 66:9,12,23
68:5,9,13,25 69:6,11,13,
17 70:7,10,13,18,23
71:3,10,16,19,25 72:6,8,
12 73:6,12,18,22 74:2,
14,20,24 75:3,9,18,22
76:1,6,10,14,18,24 77:3

**strike** 20:5

**struck** 17:9,10

**struggling** 26:13

**stuff** 27:3 32:22 33:10 76:18

**subject** 24:2 25:24

**subpoena** 3:11,20 36:16 37:14

**subpoenaed** 37:17

**summaries** 61:3

**Summary** 16:24

**supervisor** 26:4,6 50:8 53:24

**supervisors** 43:23

**supervisory** 26:11

**supplement** 23:4,16 36:13

**supplemental** 25:14

**supports** 73:12

**supposed** 4:6 23:3

**surprised** 21:1

**suspend** 24:15 68:24

**suspended** 24:16 69:2

**swap** 4:3

**sweep** 46:21 48:21

**system** 28:2

---

**T**

**tab** 33:9

**tabs** 33:7

**takes** 67:7 75:6,7

**taking** 8:19 15:5

**talk** 13:24 19:24 24:12,22 25:21,22 32:7 36:11 75:13,17

**talked** 13:22 17:15 29:6, 21 30:21 31:13 46:10 47:14 52:25 63:12

**talking** 30:13 32:14 35:21 40:8 50:22,24 51:13 52:17 58:20,21 62:18,21 65:19,20

**Tardy** 63:11

**team** 49:22,23,25 50:13, 14

**teams** 51:16

**technical** 47:17

**technically** 62:22

**telling** 8:11 21:7 25:16

**tells** 43:16

**ten** 75:16,22,25 76:1,4

**Tennesseans** 56:24

**terminate** 24:15 68:23

**terminated** 68:2

**termination** 56:21 71:5

**terminations** 70:4

**testified** 39:11

**Texas** 72:18

**text** 70:1

**that'd** 42:24 73:18

**That'll** 9:22

**thing** 8:22 12:23 17:3 23:24 27:1 29:20 31:2,15 32:25 41:14 43:5

**things** 3:6 30:13,16,18 41:18 47:19

**thinking** 11:20 17:19

**thinks** 42:9

**thought** 3:6 27:11 39:21 76:4

**thousand** 62:12

**Thursday** 9:10,11 13:7, 8,14 73:1,5

**time** 8:15,23 10:23 11:7 12:9,10,13 15:17 18:15 31:19 36:19 41:9 42:22 45:12 46:5

**times** 56:14

**timing** 10:22 16:22

**title** 23:10

**titled** 28:12

**today** 21:17 36:10 59:10 72:25

**told** 10:17 11:25 21:4 72:24

**tomorrow** 4:7 6:14,16, 18 73:1,16,20

**top** 76:2,11

**topic** 17:24

**topics** 17:15 18:12,18

**total** 39:22 76:5

**touch** 11:25 36:20

**track** 33:3

**trailer** 46:13 47:8,19 48:4,12 49:12

**training** 26:6

**trial** 16:2 19:14

**trouble** 6:12

**true** 37:8

**Tuesday** 9:8

**two-year** 60:7

**typo** 24:16 68:22

---

**U**

**Uh-huh** 3:4,16,25 4:4 6:5,10 7:17 9:3 10:18 12:3 13:9,16 15:25 16:14,24 18:19 22:15 23:13,25 26:7 28:21 29:2,9,22 30:10,23 31:4, 10,20 32:20 33:19,23 35:18 36:23 39:19 40:16 45:21 47:4,11,13 48:8 49:3,18 52:9 53:22 56:3 62:5 63:16 65:25 66:23 68:25 69:11 70:7,18 73:21

**understand** 38:24

**usual** 15:12

---

**V**

**vague** 49:24

**Vanderbilt** 57:13

**vendor** 46:21

**verified** 74:18 75:2

**video** 49:22,23,25 50:13

**voice** 41:18 42:8 51:25

**voicemail** 69:24

**volume** 46:23 48:20,21

**voted** 38:11

---

**W**

**Wagner** 4:24 26:4 34:2 50:1,2,8 52:5 59:9 74:9 75:12

**wanted** 15:14,15 21:5 34:10 36:11,19 37:24

**wanting** 47:17 54:6

**weakness** 55:7

**Wednesday** 9:10

**week** 4:10 5:17,18 16:6,7 72:17

**weekly** 53:20

**weeks** 6:1

**weird** 10:22

**west** 16:7

**What'd** 11:1

**whichever** 22:12

**Who'd** 65:13

**whoever's** 35:3

**Wi-fi** 7:15,16 8:13

**wife** 44:2,5

**witnesses** 51:21

**work** 4:17 5:9 6:9 38:11 44:8 47:3 48:10 50:25 51:2,3 56:25 61:7 74:12

**worked** 26:18 38:22 48:16

**workflow** 47:10

**workflows** 47:20 48:25

**working** 15:11 47:6 48:1 55:6 67:18

**workplace** 17:20

**works** 7:11 13:2 29:5 36:7 37:1 41:15 54:11 59:16 64:25

**worldwide** 54:22

**worth** 34:22

**wrapped** 30:4

**written** 41:17 42:7

**wrong** 32:24

---

## Y

**yesterday** 10:25 11:3

---

## Z

**Zoom** 10:17 13:15

Elite-Brentwood Reporting Services · (615) 595-0073 · wrapped - Zoomi9
www.EliteReportingServices.com