1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF TENNESSEE
2                   NASHVILLE DIVISION

3

4

5    BRAD AMOS,                    )
                                   )
6    vs.                           )  No. 3:21-CV-923
                                   )
7    THE LAMP GROUP, LLC,          )
     _____
8

9

10

11

12

13   BEFORE THE HONORABLE ELI J. RICHARDSON, DISTRICT JUDGE

14                 TRANSCRIPT OF PROCEEDINGS

15                     JULY 8, 2025

16

17

18

19

20

21

22   _____

23   RICHARD DERRICK EHRLICH, RMR, CRR
     Official Court Reporter
24   719 Church Street, Suite 2300
     Nashville, TN 37203
25   (219) 682-8691

```
 1                      APPEARANCES:

 2

 3    FOR THE PLAINTIFF:

 4            Jonathan A. Street
              Zachary Brown
 5            Brandon Hall
              Employment & Commerce Law Group
 6            1625 Broadway, Suite 601
              Nashville, TN 37203
 7

 8

 9    FOR THE DEFENDANT:

10            Leslie Goff Sanders
              Stephen C. Stovall
11            Eric C. Lyons
              Molli Guinn
12            Barton LLP
              611 Commerce Street
13            Nashville, TN 37203

14

15

16

17

18

19

20

21

22

23

24

25
```

1          The above-styled cause came to be heard on

2    July 18, 2025, before the Hon. Eli J. Richardson,

3    District Judge, when the following proceedings were

4    had at 1:30 p.m., to-wit:

5

6          THE COURT:  All right.  We are here for a

7     motions hearing in the matter of Amos vs. Lampo

8     Group.  Case No.: 3:21-CV-00923.

9          Let's start out by talking about this brand

10    new, newly filed motion to continue filed by the

11    parties jointly whereby, if I understand it

12    correctly, the parties believe that with various

13    matters outstanding -- I think we had a total of

14    30 motions in the last couple of weeks in this

15    case, but most which are still outstanding --

16    they believe that things would be better if

17    there was a continuance.  So we'll start out by

18    talking about that.

19          If counsel would make their appearances,

20    please.

21          MR. STREET:  Jonathan Street for the

22    Plaintiff.

23          MR. BROWN:  Zachary Brown for the

24    Plaintiff.

25          MR. HALL:  Brandon Hall for the Plaintiff.

1    MR. LYONS:  Eric Lyons for the Defendant.

2    MS. SANDERS:  Leslie Sanders for Defendant.

3    MR. STOVALL:  Stephen Stovall for

4    Defendant.

5    MS. GUINN:  Molli Guinn for Defendant.

6    THE COURT:  All right.  Good afternoon,

7    counsel.

8    So one of the things that I would say in

9    response to the motion to continue, I will

10    consider it, but I would want a couple

11    conditions on it.

12    I think the trial counsel are up against

13    one of the unfortunate realities of trial

14    practice, which is things have got to be,

15    you know -- you're required to be nimble and do

16    things on the fly, and you don't really know

17    what evidentiary rulings are going to be.  We'll

18    do our best, if we go that route, to indicate

19    whatever we can from Motions in Limine.  But

20    sometimes even rulings on Motion in Limine don't

21    tell you everything you need to know.

22    Here, on some of the Motions in Limine, it

23    sounds like there's substantial factual

24    disputes.  If we resolve them, if get there,

25    we're just going to have to walk through the

1      factual disputes.

2         So a very large number of motions in the --

3      leading up to the pretrial phase. That does

4      tend to, understandably, cause some uncertainty

5      about what all is going to happen.

6         You all would know better than me. It

7      seems like there's not good feelings between the

8      two sides. So I want to ask counsel the

9      following: We had set aside this time in the

10     view that, you know, this is a 2021 case and has

11     been up on appeal. It's back down. It's time

12     to get the case tried. If we were to continue

13     it, our calendar is such that, you know, we

14     would probably have to set this thing in 2026

15     sometime. It would not be a short continuance.

16     And the Court is certainly committed to getting

17     this thing tried now.

18        I would say that if we don't, you know, if

19     we don't try it now, if I was to grant the

20     motion to continue, it would be conditioned on a

21     couple of things: One, it would have to be

22     pushed out pretty far, unfortunately, given this

23     Court's rather heavy docket, to say the least.

24     Then the other thing is I would send you to

25     mediation. You need to mediate this, if you

1    want to put this thing off.  That's how I feel

2    about it.

3         It seems like the parties -- and they may

4    have tried to mediate before.  I can't recall.

5         It seems like the parties are disinclined

6    to do that, and I can imagine there are

7    perfectly valid reasons for that.  You're way

8    apart on any settlement figure, if one was even

9    to be considered.  You don't trust each other.

10        If you're the Defendant, you don't want to

11   establish -- perhaps you don't want to establish

12   a precedent that if someone has filed against

13   you, you make a settlement.  I get all that.

14        But we're going to resolve this case.  In

15   my view, we either need to have you seek to

16   resolve it some other way, or we need to resolve

17   it next week.

18        Could that have some uncertainty as you

19   prepare?  Absolutely.  Could the whole process

20   be very painful?  Yeah.  I'm sure it's already

21   been painful for everyone here.  It's been

22   painful for me, looking at 30 motions.  Time to

23   resolve the case, though, unless the parties are

24   going to make a serious attempt to mediate it.

25        What do you think, Mr. Street?

1          MR. STREET:  I think those conditions are

2     fine with our side, Your Honor.

3          THE COURT:  Pardon me?

4          MR. STREET:  Those conditions you set out

5     for the continuance, they're fine, Your Honor.

6          We're also willing to, on some of these

7     motions, if we do get a continuance, we're

8     willing to actually sit down with the Defendant

9     and go through them and see if there's any kind

10    of agreement on anything we can come to as well.

11         THE COURT:  There are a couple of motions I

12    know that where they're kind of indicators

13    unopposed, and that was good.  There might be

14    more common ground.  I suspect there are other

15    things where there really isn't common ground.

16    There are allegations of bad faith going back

17    and forth.  Right.  I imagine you can't get

18    agreement there.  You may be able to find some

19    convergence on some other matters beyond, you

20    know, what you've already been able to,

21    you know, hopefully enough to say, well, this

22    isn't in dispute.  We don't oppose this motion.

23    That's happened on a few of these.

24         All right.  Ms. Sanders, what do you think?

25         MS. SANDERS:  Your Honor, we would

1    certainly agree to those conditions.  And if I

2    may, could I suggest one other possibility?

3         THE COURT:  Yeah.

4         MS. SANDERS:  And we would also confer on

5    the motions.  And, frankly, there were a lot of

6    motions filed.  There wasn't much time to

7    actually confer.  So I think that would be a

8    good -- to have a formal conference.

9         I would also -- and I know what Your Honor

10   has already said about this, but I'm going to

11   renew it and provide an alternative.  I think

12   that this case -- I do think the summary

13   judgment process would be helpful in at least

14   framing the issues.  I know what the Court's

15   view is, but this is a very unusual procedural

16   posture that we're in.  And if the Court is not

17   going to entertain summary judgment, then I

18   would ask that the Court consider the parties'

19   filing pretrial briefs to at least help frame

20   the issues.

21        THE COURT:  All right.  Thanks for that.

22        A couple of things.  I understand your

23   desire for a motion for summary judgment.  One

24   thing I would say is that while I appreciate

25   that, I'm actually far from certain that, from

1    the Court's perspective -- and not to be

2    concerned about the Court's perspective, it

3    would be more efficient -- of course, if a

4    summary judgment was denied, it would just be an

5    extra step that was lots more work.  And I will

6    tell you we put in a lot of work into summary

7    judgment orders.  I wish we could do less than

8    we do, particularly in employment litigation

9    cases.  Particularly because the McDonnell

10   Douglas analysis can, you know, be so easily

11   sort of misconstrued.  You pay a lot of

12   attention.  And even if summary judgment were

13   granted, you know, that's not, like, 10 hours of

14   work for the Court.  It's looking closer to what

15   it would take to -- for the Court to invest in a

16   multi-day jury trial.

17        So that -- and I do think, you know, the

18   Court issued a ruling in response to what the

19   magistrate judge's order was.  So I'm going to

20   adhere to that.  I understand why the -- I'm

21   sure the Defense would like another shot at

22   summary judgment.

23        I do think -- you know, I think your other

24   suggestion -- I do understand.  I think there --

25   to me, maybe the main issue -- and I went back

1      last night and sort of looked at what the

2      complaint said with respect to the extent to

3      which this case was about religious beliefs

4      other than those affecting COVID-19.  I thought,

5      you know, of course we have two different

6      theories.  One is plaintiff was -- actually,

7      this is the third theory, which is failure to

8      accommodate.  So we'll take them one at a time.

9          I kind of thought the failure to

10     accommodate was a religious belief related only

11     to COVID.  That is kind of the best way I could

12     read the complaint.  The other two claims, of

13     course, the flip side of each other, which is

14     why one of them is called by some Courts a

15     "reverse discrimination claim," also called "the

16     religious nonconformity claim."  That is another

17     term used.

18         The religious nonconformity claim, right,

19     you focus on what the Defendant's religious

20     belief is and then assess whether, to the extent

21     that there is a Defendant's religious belief

22     related to something, whether the Plaintiff was

23     fired for not conforming to that religious

24     belief.

25         The way the complaint is written, it talks

1    about -- one moment.  With respect to the claim

2    of religious nonconformity, you know, here's how

3    I viewed it.  Count 2 is religious

4    discrimination.  I thought this was the one that

5    encompassed -- in fact, I know it's the one that

6    encompasses all the federal religious

7    discrimination claims under Title VII.

8         Regarding nonconformity, here is the

9    allegation in Count 2:  Lampo violated Title VII

10   of the Civil Rights Act of 1964 by wrongfully

11   terminating Plaintiff for his non-adherence to

12   several of Lampo's particular religious

13   convictions.

14        Now, here's the thing.  That statement

15   arguably is broad enough to say, well, it wasn't

16   just his non-adherence to Lampo's religious

17   convictions as they relate to COVID.  He was

18   wrongfully terminated for his non-adherence to

19   other kinds of particular religious convictions.

20        There's an argument to be made there.

21        Now, if you're in the Defendant's side,

22   though, you say, look, what's the only

23   non-adherence that's referred to in this

24   whole -- you know, there are 333 paragraphs that

25   came before this.  I'm not sure that there is a

1    reference to any non-adherence having to do with

2    any religious beliefs other than those related

3    to COVID.

4         So I would be interested in -- you know, if

5    we approach trial under an appropriate schedule,

6    to figure out what the arguments are as to what

7    is fairly put into play by the complaint

8    regarding a claim of religious nonconformity.

9         What I read from was from paragraph 337.  I

10   can see arguments either way.  I think the

11   Defendant has a better argument that, look, the

12   only non-adherence we're talking about is

13   non-adherence to -- the only thing that's been

14   discussed is non-adherence to religious

15   convictions regarding COVID.  Then, if you're

16   the Plaintiff, you say, yeah, but the allegation

17   here is non-adherence to several of Lampo's

18   particular religious convictions.  That phrase

19   there is not limited to religious convictions

20   regarding COVID.

21        So I can see it either way.  I think that

22   that, in the lead up, up to trial, we would want

23   to flesh that out, and that would be helpful.

24   And that is something that does support granting

25   the motion for a continuance.

```
 1          I understand the confusion.  Listen, if I'm
 2     in the Defendant's shoes, and I saw one of the
 3     reply briefs they filed, you know, I don't
 4     begrudge them the notion that, oh, we thought
 5     this was all about Covid and not the other
 6     things.
 7          But I think the Plaintiff probably thinks
 8     that he's got a counterargument to that.
 9          The third claim is religious discrimination
10     where the focus is on Plaintiff's religious
11     beliefs and whether he was terminated for having
12     them.
13          And, you know, if you're the Defendant, you
14     say, look, this whole complaint is talking about
15     religious beliefs only as they relate to COVID.
16          I tend to think that that's right, but I
17     would want to hear from the Plaintiff.
18          When I think about the Defendant's
19     perspective, I might be a little frustrated if
20     the Plaintiff were -- I'm not saying the
21     Plaintiff would do this, but if the Plaintiff
22     was to say, you know what, we're going to argue
23     in front of the jury that Plaintiff was
24     terminated for his religious beliefs as they
25     relate to abortion.
```

```
 1          Based on the complaint, I can see the
 2     Defendant finding that out of bounds.  But
 3     Plaintiff may have some counter-arguments to
 4     that.
 5          So if we have a continuance, I do think
 6     that it's -- that it's right, that whatever we
 7     could do to frame what religious beliefs of the
 8     Plaintiff and the Defendant are at issue here.
 9     Do they go beyond beliefs as regards to
10     COVID-19, or do they extend to other religious
11     beliefs?
12          All right.  Does that make sense to you,
13     Ms. Sanders?
14          MS. SANDERS:  Yes, Your Honor.
15          THE COURT:  All right.  And you,
16     Mr. Street?
17          MR. STREET:  Yes, Your Honor.
18          THE COURT:  Okay.  All right.  Now, let me
19     ask about this to the extent that counsel wanted
20     to say, you know, if they don't want to, or if
21     they're like, well, I'm not prepared.  I get it.
22     Anyone want to say what they think the sticking
23     point is on any possible settlement?
24          Look, it is what it is.  If you're able to
25     tell me, you know, I would love to hear.  It is
```

1    what it is.  The reasons are what they are.  I'm

2    not in a position to criticize anyone's

3    decision, but I would be curious.  Is it about

4    money?  Is it about fear of opening the flood

5    gates to litigation?  Is it about each side

6    wanting to prevail on principle?  Is it about

7    sheer rancor?  What's it about?  And I would be

8    curious.  Anyone want to say anything about

9    that?

10        Mr. Street?  Like I say, you don't have to.

11        MR. STREET:  I mean, I don't mind.  There

12    has been no offer of settlement.

13        THE COURT:  Okay.  All right.  Fair enough.

14    And you're not required.  I realize you're not

15    required to make an offer.  But, I mean, is that

16    kind of a sticking point here?  It's like, look,

17    my client is not prepared to make any offer.

18    The only option, from my client's perspective,

19    is prevailing at trial.  And if we don't prevail

20    at trial, so be it.  But we're just not going to

21    offer anything.

22        Is that kind of where the client is coming

23    from?

24        MS. SANDERS:  Your Honor, we take the

25    position we did make an offer.  Mr. Street does

1    not view it that way.  When we had the motion

2    for attorneys' fees, we did make what we thought

3    was a good faith offer.

4         But, again, I don't want to pollute the

5    Court with those details.  Right.

6         THE COURT:  Yeah.

7         MS. SANDERS:  But, as you can see, we don't

8    even agree on that.

9         THE COURT:  Yeah.

10        MS. SANDERS:  But I think for my client,

11   the issue is this has been very public.  There

12   are things that have been said about my client

13   that just aren't true.  And so if I had to sum

14   it up, it is principle.

15        Having said that, I think that -- I mean,

16   we have tried mediation, and, you know, as an

17   attorney, a long-time attorney of this Bar, I've

18   always taken a reasonable approach.  I think

19   that mediation is good.

20        There's also, you know, unlike what the

21   Plaintiff believes, this is a large corporation.

22   There is not one person in charge of this

23   corporation.  And even though bad things have

24   been said, untrue things about the CEO of this

25   corporation, it is a large corporation.  And so,

1       you know, I don't want to say that mediation

2       would fail.  I can't, as a member of this Bar,

3       say that I don't think it has a shot.  But at

4       the same time, it is principle.  And in my

5       experience, sometimes that's a harder thing

6       to -- it's not money.  It's not even exposure.

7       It's just the things that have been said.

8            So, but having said that, I would not

9       represent to this Court that I thought mediation

10      was a reasonable approach if I didn't think it

11      was.

12           THE COURT:  Okay.  All right.  Thanks for

13      that.

14           Anything else you want to say on mediation,

15      Mr. Street?

16           MR. STREET:  No, Your Honor.

17           THE COURT:  No?  So, here's where I see it.

18      I think I understand what counsel are saying.  I

19      do wonder whether, you know, the picture, for a

20      variety of reasons, is going to be different now

21      than it was two years ago.  And each side may

22      have different incentives, and it may be this

23      notion of getting a neutral mediator in there

24      can cut through some of the -- to the extent

25      there is mistrust going on, maybe cut through

1   some of the mistrust.  Get each side to find

2   common ground.  Get each side to consider ways

3   in which they can get out of a settlement, at

4   least the minimum of what they need.

5       So what I'm inclined to do, then, is grant

6   the motion.  Pick some trial dates, direct the

7   parties to complete mediation by X date and

8   report back.  And then something like three

9   months before the new trial date, ask the

10  parties to file their position about what's

11  fairly within the scope of the religious beliefs

12  at issue in this case.  Then we can go from

13  there.

14      No one is going to have to refile any

15  motions that previously have been filed.

16      MS. SANDERS:  Thank you.

17      THE COURT:  Yeah.  I would not make you do

18  that.  So we -- well, I'll tell you what.

19  Here's what I'll do.  I think we'll probably

20  have to deny them, but we'll do something on our

21  end to -- if we need to re-open them.

22      I mean, I'm not going to -- let me put it

23  this way.  I think what I would like to do is

24  have a technique for the clerk's office to

25  terminate them administratively.  But, yeah,

terminate them administratively, and then, if we
need to, if mediation fails, then the clerk's
office will reinstate them administratively, so
that they need not be refiled.  And I've looked
at all of them in some detail.  If we need to
pick back up and look back at them again, then
so be it.  We've got a variety of notes on each
of them that I think would help smooth the
process.  We would be in a position to have, I
think, more solid answers for each side that
lead in to the trial, you know, further in
advance, obviously, if we do have to decide
these motions.

    One of the things that I would note is that
the result would be, as I say, temporary
termination of the motion, subject to them being
administratively reopened.  You know, part of
that means that to the extent allegations have
been made in the motions back and forth, those
are on hold.

    And so, you know, the Court's not going to
wade into any sooner than it needs to whether
Mr. Street did something he shouldn't have done,
or whether Defense counsel didn't do something
it should have done to produce this and that and

1    so forth.

2        One thing I do want to ask about is the

3    motion that relates to the 900 and something

4    documents, where, Mr. Street, I think, you had

5    sort of represented that the email chain had

6    stopped at a certain point.

7        Defendants come back and say, Well, wait a

8    minute.  There was this follow-up email where we

9    put the ball back in Plaintiff's counsel's

10    Court, and we never heard from them until just a

11    few days ago.  And now we're being accused of

12    not producing it.  The ball is in the

13    Plaintiff's court to say something, and

14    Plaintiff's counsel didn't think they had to do

15    anything.

16        Is Defendant off base in that regard?

17        MR. STREET:  Yes, Your Honor.  That last

18    email -- and I think what we had done is we had

19    identified missing documents.  There was a range

20    of documents we identified, 717, referred to

21    1600, and there were several specific documents

22    after that.

23        Ms. Sanders emailed me.  And those

24    individual documents we had listed, she had

25    attached them to an email.  And those are the

1    ones I couldn't open.  And when I wrote back, I

2    said, Okay.  We were able to -- excuse me --

3    unable to open those individual documents.  We

4    still don't have those big range of documents.

5         And I did not mean in my motion to accuse

6    them of intentionally doing anything.  We don't

7    file things like that.

8         So what we said is -- it may be negligent,

9    but whatever it is, we didn't have them until

10   just a few days ago.  And we didn't realize we

11   didn't have it.  It wasn't our fault, too.  We

12   addressed it.  We brought it up.  But then,

13   again, in this case, that was, I think, right

14   before -- there was a bunch of discovery motions

15   right before that.  And it just kind of -- it

16   did fall off our radar.  So we didn't bring it

17   back up until then.

18        But I do believe -- there's no evidence

19   that we know of that they intentionally did

20   that.

21        THE COURT:  Okay.  All right.  Ms. Sanders,

22   it sounds like Mr. Street thought that when you

23   left the ball in his court, it was only with

24   respect to a few different documents and not

25   that whole range of 900 and some documents.  You

1   probably took the email to refer also to the 900

2   and some documents.

3         Fair to say?

4         MS. SANDERS:  Yes.

5         THE COURT:  Okay.  And as part of what you

6   would say, which is, like, well, you know, look,

7   if there was an issue, surely this should have

8   come up before now.

9         That's part of what you're saying; right?

10        MS. SANDERS:  Yes.

11        THE COURT:  All right.  Well, I don't have

12  to sort of wade into that except to say it's

13  good to clarify that in that sense.

14        Mr. Street is not here in court alleging

15  sort of an intentional withholding, but you kind

16  of think maybe unread, that's the accusation

17  that was made?

18        MS. SANDERS:  Yes, Your Honor.  We sent the

19  link to those documents twice.  I don't want to

20  get into weeds or details that the Court doesn't

21  want to hear.  There's plenty in front of the

22  Court.  We sent the link twice.  Mr. Street is

23  saying today he wasn't accusing us of anything

24  intentional, but his Reddit post said we're

25  hiding documents.

1          And that was an accusation of counsel and

2     the client.

3          We were never hiding documents.  We were

4     forthcoming with documents.  We had multiple

5     meetings after that where we discussed discovery

6     deficiencies.  We had a meeting in his office.

7     We had meetings before Magistrate Judge Holmes.

8          I was not aware that he hadn't opened the

9     link.  I didn't know that.  As soon as he told

10    me that he hasn't opened the link, I sent him a

11    large Mimecast file.

12         And, importantly, those documents were

13    documents that I had sent in December.  I sent a

14    link in December.  I sent a link in January to

15    those documents.  I had no idea that he didn't

16    open the link.  And so we do take issue with the

17    public accusation that we were hiding documents

18    because we simply weren't.

19         THE COURT:  All right.  Thank you.

20         Mr. Street, anything that you want to say

21    in response?

22         MR. STREET:  Yeah.  The Defendant was

23    informed both -- every time those links did not

24    work, and our -- the statement on Reddit didn't

25    even have to do with that.  We told them those

1    links did not work.

2        But in this case, we had to go to

3    Magistrate Holmes four or five times to get them

4    to produce documents.  And there's an order with

5    sanctions against them for failure to reply --

6    failure to comply with discovery rules.

7        So I don't think anything I said was

8    untrue.  And I didn't accuse their law firm of

9    anything ever.  Now, we are not a client, and

10   they did a personal claims block on some of our

11   clients on all kinds of issues.  But we do not

12   accuse this law firm of anything.  We say

13   "Defendant," and we mean Defendant.  Lampo

14   Group.

15       THE COURT:  Okay.  So it sounds like you

16   had taken the reference necessarily to be to

17   these 900 and something documents.  Mr. Street

18   is saying, well, I wasn't referring to that.  I

19   was referring to something else.

20       Does that sound credible to you?

21       MS. SANDERS:  I don't know what he's

22   referring to.

23       THE COURT:  Okay.

24       MS. SANDERS:  But he did say "Lampo and

25   their attorneys."  So I do know that.  And --

1    but you're right, Your Honor.  We didn't hide

2    documents.  He has all 51,000 pages of the

3    documents that we produced in this case.

4        THE COURT:  Okay.  All right.  Well, I

5    believe that we need more than a hearing to

6    focus out on that particular piece because it

7    sort of gets, I think, to the rancor that's

8    going on.  You know, if you're the judge, you

9    always want there to be a Kumbaya moment between

10   counsel and the two sides.  And it's not an

11   attorney's job to have a Kumbaya moment.

12       I would say, however, that hopefully moving

13   forward, if there's bad karma between the two

14   sides, that's -- that can be set aside to see if

15   there isn't a solution that provides mutual

16   benefits.

17       And to that end, we'll grant a continuance.

18   We'll pitch a couple of dates and then talk

19   about a deadline to hold a mediation and a

20   deadline thereafter to report back as to the

21   status.

22       What about April 19th, 2026?  It's a ways

23   out, I know.

24       THE CLERK:  April 21st.

25       MR. STREET:  Your Honor, we have a trial

1    set that date, but if it's the only option, it's

2    far enough out.  And this case is still in the

3    very early proceedings.  It's in Memphis, our

4    jury trial is.  So we can ask for that one to be

5    continued.

6         THE COURT:  All right.  The best option

7    besides that would be May 19th.  We definitely

8    could offer you that date without anything

9    interfering with it.

10         MR. STREET:  We're fine.

11         MS. SANDERS:  Yes, Your Honor, that works

12    for us.  We had a trial set, but I believe it

13    has settled.  We're good that week.

14         THE COURT:  Great.  We'll reset this for

15    trial May 19th.

16         MS. SANDERS:  I'm sorry, Your Honor.  I

17    thought we were still on the April date.

18         THE COURT:  Sorry.

19         MS. SANDERS:  I'm sorry.  That's even

20    better.

21         THE COURT:  Great.  May 19th.  May 11th for

22    pretrial conference.  8:30 a.m.

23         Does that work?

24         MR. STREET:  Your Honor, I have one

25    question.  When you said that the Court would

1     administratively strike.  What about the rulings

2     that you made yesterday?

3          THE COURT:  You know, here are my thoughts.

4     If counsel want me to document those now, I'll

5     go ahead and do that.  If not, I can keep them

6     open.  I have my notes about what we did.  But

7     I'm happy to document those to resolve them as

8     Motions in Limine.

9          Would that be helpful?

10          MR. STREET:  It would, Your Honor.  Because

11     it may -- it's always hard to remember exactly

12     what was said in court.

13          THE COURT:  Yeah.  I'm fine with that.

14          MR. STREET:  Thank you, Your Honor.

15          THE COURT:  We'll get that done.

16          All right.  Pretrial conference May 11th,

17     8:30 a.m., and I'll order resetting the trial.

18     I will probably set some dates for any

19     amendments to or additional motions in limine.

20     You know, hopefully those can actually be sort

21     of cut back rather than, you know, a whole new

22     flood of motions in limine.  But we'll set an

23     order well in advance of trial for additional or

24     modification of motions in limine.

25          Then regarding mediation.  My thought would

1    be to give you a fair amount of time to pick

2    someone and do it.  I mean, I was thinking of

3    giving you all -- I could even give you five

4    months if you wanted that much time.

5         How much time do you think you need?

6         MS. SANDERS:  Your Honor, I think

7    earlier -- did you say that we would file the

8    pre-trial briefs three months before trial?

9         THE COURT:  Yes.  Regarding what your view

10   of the scope of the issues, yes.  If you want me

11   to move it up even further in advance of that, I

12   would.  But I think it should come after the

13   mediation.

14        MS. SANDERS:  I was actually going to ask

15   if we could come before the mediation so we know

16   what the -- but there may not be a decision by

17   then.

18        THE COURT:  Well, yeah.  And I can

19   understand.  It's, like, well, if you kind of

20   know going into mediation, that would sort of

21   help.  But, you know, of course, the other

22   thought is that it could be complex.  It may

23   contribute to the justifiable sense that there's

24   litigative risk on both sides.

25        Mr. Street, what -- and it could be, from

1 the Court's perspective, helpful on the issue of

2 resources.

3  But, Mr. Street, what's your view?  Would

4 you like a ruling on the scope of claims before

5 or after mediation?

6  MR. STREET:  We don't have an opinion on

7 it, Your Honor.  If the Defendant wants to do it

8 before, that's fine.

9  THE COURT:  Is that your preference,

10 Ms. Sanders?

11  MS. SANDERS:  I think it would be,

12 Your Honor.  And I don't want to -- I don't want

13 to burden the Court with something before we do

14 mediation.  So I wouldn't say it's a strong

15 preference.  If the Court, for example, if we

16 said to set mediation in -- let me see.  The

17 trial is in May -- January or February, and the

18 Court hasn't decided that, I don't want to say

19 that it's critical.  I just thought it might be

20 helpful.

21  THE COURT:  What if we did this.  We could

22 have the parties file their notices.  You can

23 file it as a notice of your views of the scope

24 of the religious beliefs at issue.  I think I

25 know what the claims are; right?  They're

1    religious discrimination, religious

2    non-conformity, and religious -- failure to

3    accommodate.  But the scope are the religious

4    beliefs at issue for each of those claims.  If

5    we do it for, like, three months out, I'll

6    decide before the mediation deadline.

7         From my perspective, if you find law that

8    says anything different, that's fine.  To me, it

9    may boil down to, sort of, you know, taking a

10   look at just what the complaint says and what

11   has been represented to prior Courts about

12   what's at issue in this case.

13        So, in other words, you know, a party's

14   belief as to the proper scope of the claims, it

15   may be based on sort of some relatively simple

16   concepts.  Well, look at what's in the

17   complaint.  Look at what the parties have said

18   this litigation is about and look at what the

19   Sixth Circuit indicated.

20        So whatever your basis is, it doesn't have

21   to be any more complex than it needs to be, but

22   do state what you think the scope is.  And

23   whatever your legal and factual basis is for

24   that belief, just set it out.  And then based on

25   the parties' submissions, the Court's view of

1    the law and the record, then I'll make the

2    determination.

3          But we can have the notices due in, let's

4    say, three months, which would be October the

5    8th.

6          And then the mediation deadline, let's say,

7    since we said May 19th, what about -- what if we

8    had mid-January.  January 15th, maybe?  How

9    about January 15th for a mediation deadline?

10         Then January 30th for a status update as to

11    where the case stands after mediation.  It can

12    be joint, if possible.  Separate status updates

13    if necessary, but ideally joint.

14         So we'll get out an order, or maybe

15    multiple orders, setting out that that's how

16    we're going to proceed.

17         Okay.  Mr. Street, from your perspective,

18    anything else we need to discuss?

19         MR. STREET:  Your Honor, just briefly.  The

20    motions in limine, there won't be any major

21    issues to resolve.  The motions outside -- I

22    think there's a Motion to Bifurcate, a Motion to

23    Strike, the Motion for Show Cause, and maybe one

24    more I'm not recalling right now, but those are

25    not going to be stricken, or will they need to

1    be refiled?

2        THE COURT:  Those would be the same thing.

3    We would terminate them the same way.  And then

4    if we need to resolve them, then we'll instruct

5    the clerk's office to make them active again,

6    and I'll resolve them.

7        Does that make sense?

8        MR. STREET:  It does.  I mean, so if -- let

9    me just make sure I'm clear.  If they are being

10   dissolved, like, for our Motion to Strike, we

11   would like to get a ruling on that.  So do we

12   need to refile it?

13       THE COURT:  Well, are you saying you want

14   one before trial, or you're saying you want it

15   now?

16       MR. STREET:  No.  I'm saying before trial.

17       THE COURT:  Yeah.  Before trial, you

18   wouldn't have to refile it.

19       MR. STREET:  We wouldn't have to refile it?

20       THE COURT:  No.  No.  So we'll terminate

21   them all, and then all the ones that were --

22   that are currently listed as active after we do

23   orders resolving, you know, the few motions we

24   did yesterday, those will be shown as active,

25   and, therefore, will be deemed something to be

1        decided without the need to refile anything.

2                MR. STREET:  Okay.

3                THE COURT:  Yeah, if that makes sense.

4                Now, since you brought it up, on the issue

5        of bifurcation, do you oppose that?

6                MR. STREET:  We do.

7                THE COURT:  Would bifurcation, though,

8        could it be the situation where the second

9        phase -- if the first phase includes a

10       determination as to whether punitive damages are

11       appropriate, the evidentiary phase could be

12       limited to just financial information?  Meaning

13       everything else that goes towards whether there

14       should be punitive damages, you know, which, of

15       course, would be only the -- could only be the

16       case if there was liability anyway; right?  But

17       all other evidence about liability, including

18       whether there's liability for punitive damages,

19       would go into phase one.

20               Phase two would be limited to just evidence

21       of the financial means of the Defendant.  And

22       also, you know, jury instructions and a jury

23       determination regarding what the punitive

24       damages amount should be.

25               So if you go to phase two, which you don't

1     get to unless there is a finding by the jury

2     that punitive damages are appropriate, phase two

3     would amount only to evidence of the financial

4     means of the Defendant, and then the Court would

5     instruct as to how the jury is to assess

6     punitive damages.

7          And then there would be a phase two jury

8     verdict form, where the jury verdict on punitive

9     damages is rendered to be cut back, of course,

10    based on the statutory cap, if appropriate.

11         If we do it that way, I think a couple

12    things happen.  I think the Defendant gets

13    something out of it because I think it's legit

14    to say, look -- it's a privately held company;

15    right?

16         MR. STREET:  Right.

17         THE COURT:  So I wouldn't put information

18    about the finances out there if not necessary.

19    And that's, I think, important to most privately

20    held Defendants.

21         From the Plaintiff's perspective, things

22    aren't going to be held up greatly.  Just

23    because there are two phases doesn't mean it's

24    going to be this big, separate thing.

25         The two phases are going to be

1    differentiated by not a whole lot.  There won't

2    be a whole lot to do after completing the first

3    phase if there's liability for punitive damages.

4         What do you think about that, Mr. Street?

5         MR. STREET:  I think that's fine,

6    Your Honor.

7         THE COURT:  Okay.  Does that work for you,

8    Ms. Sanders?

9         MS. SANDERS:  Yes, Your Honor.  And I

10   suspect that if we get to that point, there

11   would be stipulations.  So I don't think that it

12   will effectively be an issue.

13        THE COURT:  You know, one of the things to

14   note is -- and I don't know the Defendant's

15   financial means, right, but there's been some

16   references here to a pretty large company.  The

17   reality is, is that even though the jury is

18   going to be told about the statutory cap, the

19   financial means of the Defendant really

20   shouldn't be a very material thing.  If there is

21   a way, in the event there is a finding of

22   punitive damages, liability, if there is a way

23   to convey what needs to be conveyed to the jury

24   without getting into the Defendant's finances, I

25   think that would be appropriate.

1    Defendant can get something out of that.

2    It gets to keeps its information totally

3    confidential regarding finances.  In return,

4    maybe the Plaintiff gets something in terms of

5    an instruction to the jury that's helpful to the

6    Plaintiff on this point, which is sort of like,

7    I would think something along the lines of,

8    you know -- and I'm just throwing this out

9    there.  I'm not saying that it's necessarily

10   appropriate or both sides would agree to it, but

11   something like, "You should assume that the

12   Defendant has the financial means to pay any

13   punitive damage you may award."

14       That would give the Plaintiff, I think --

15   something like that would give the Plaintiff

16   what they need so that a jury feels unrestricted

17   by this notion that, gee, maybe the award we

18   have in mind is too punitive based on the

19   Defendant's financial means.  An instruction

20   like that would prevent the jury from thinking

21   that way, and that's good for Plaintiffs.

22       From the Defendant's perspective, they're

23   not really prejudiced by that anyway.  They get

24   the confidentiality, and it is, in fact, the

25   case that if there's going to be a liability

1     finding -- if the Plaintiff's finance -- excuse

2     me -- if the Defendant's finances are like they

3     may seem to be, it would be accurate to say that

4     the Defendant could pay any amount of punitive

5     damages underneath the cap, and the jury's

6     amount of punitive damages should not be

7     restricted by those concerns.

8         That's something to think about.

9         Does that make sense, Mr. Street?

10         MR. STREET:  Yes, Your Honor.

11         THE COURT:  Does that make sense,

12     Ms. Sanders?

13         MS. SANDERS:  Yes, Your Honor.

14         THE COURT:  Okay.  All right.

15         Mr. Street, anything else from you?

16         MR. STREET:  No, Your Honor.

17         THE COURT:  Ms. Sanders, anything else from

18     you?

19         MS. SANDERS:  No, Your Honor.  Thank you.

20         THE COURT:  All right.  Thank you, Counsel.

21     We'll get out those orders accordingly, and I

22     look forward to seeing what happens.

23         I would, on mediation, after we get out our

24     order about the scope, you know, here's hoping

25     that if there's a way to resolve this, where

1    both sides get least, at a minimum, what they

2    need, then so be it.

3           All right.  Thank you, Counsel.  And I

4    think that is all we have to do.  And we'll

5    proceed accordingly consistent with our

6    discussion.  Thank you.

7           (Hearing adjourned at 2:08 p.m.)

```
1                        CERTIFICATE

2

3          I, Richard D. Ehrlich, Official Court

4    Reporter for the United States District Court for the

5    Middle District of Tennessee, with offices at

6    Nashville, do hereby certify:

7              That I reported on the stenotype shorthand

8    machine the proceedings held in open court on July 8,

9    2025.

10             The proceedings in connection with the

11   hearing were reduced to typewritten form by me;

12             That the foregoing transcript is a true and

13   accurate record of the proceedings to the best of my

14   skills and abilities;

15             This 23rd day of July, 2025.

16

17             _____

18             Richard D. Ehrlich
               Registered Merit Reporter
               Certified Realtime Reporter
19             Licensed Court Reporter

20

21

22

23

24

25
```