UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 3:21-cv-00923 |
| | ) Judge Richardson |
| THE LAMPO GROUP, LLC, | ) Jury Demand |
|     Defendant. | ) |

**PLAINTIFF'S PRE-TRIAL BRIEF REGARDING CLAIMS**

Plaintiff, Brad Amos, by and through counsel, and at the request of the court submits this Pre-Trial brief setting out the claims they plan on presenting at trial in this matter:

**I. Preliminary Matters**

    **a. Scope of Claims Extends to All Discovery**

The pleadings should not be the beginning and end of the analysis related to the scope of religious beliefs in this matter. Instead, the entirety of discovery should also be considered. There are two parts of a claim: its factual basis and its legal basis. *U.S. v. Crum*, 2010 WL 3909247, at *1 (W.D. Ky.); *Taylor v. Valentine*, 2021 WL 8153646, at *2 (6th Cir.). Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim[.]" As interpreted by the Sixth Circuit Court of Appeals, the factual basis within pleadings must merely be sufficient to implicate the legal theories of recovery. *Smith v. City of Salem, OH*, 378 F.3d 566, 577 (6th Cir. 2004). Therefore, the factual basis behind legal theories need not be "spelled out." *Id.* The standard required for pleadings is designed to provide notice to the parties, as compared to discovery which is designed to prepare a party for trial. *Hickman v. Taylor*, 329

U.S. 495, 501 (1947). As such, discovery defines and clarifies the issues in the case. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

It is therefore implicit in the liberal pleading standard established by the Federal Rules of Civil Procedure that discovery is necessary to frame a claim. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (explaining that to survive a motion to dismiss the party need only allege "'factual matter (taken as true) to suggest' a cognizable cause of action.").

As such, in this matter, the scope of the claims remaining must be defined and framed by the full extent of the information revealed during discovery. While the pleadings filed in this case were extensive, they, in themselves, do not contain the full breadth of the issues. Comparatively, discovery produced more than fifty thousand (50,000) items, hundreds of hours of video, and eleven (11) depositions. The issue here is not whether the pleadings themselves were insufficient, but what are the scope of the claims presented. As evidenced by the Federal Rules of Civil Procedure and the specific purposes of each the pleadings and discovery, it is necessary to conclude that discovery can, and should, be used to frame the claims.

b. **Title VII Standard**

Title VII defines religion as follows: "The term "religion" includes **all aspects of religious observance and practice, as well as belief,** unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. (42 U.S.C. § 2000e(j)(emphasis added)). This definition is necessarily broad to encompass the rich tapestry of religions and belief systems that make up America.

Given the breadth of Title VII's definition of religion, *all aspects* of *both* Plaintiff and Defendant's religious practice, observance, and belief may be relevant. This is especially true as it relates to the religious nonconformity claim where "the focus of the claim is on "the religious beliefs of the employer, and the fact that [the employee] does not share them"—not on the specific religious beliefs of the employee himself. (*Amos v. Lampo Grp., LLC,* No. 24-5011, 2024 WL 3675601, at *2 (6th Cir. Aug. 6, 2024) citing *Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1038 (10th Cir. 1993)). Further, the Supreme Court has ruled against separating practice, observation, and belief. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015).

## II. Plaintiff's Causes of Action

### a. General Religious Discrimination

The first claim as outlined by the Court is general religious discrimination. Transcript of July 8, 2025 Pretrial Conference at 29:24-30:2. Title VII makes it unlawful, in pertinent part, for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[.]" 42 U.S.C. § 2000e-2(a)(1); *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943-944 (6th Cir. 2024).

In his Amended Complaint, Mr. Amos alleged that he was raised in a Christian home and continues to practice Christian beliefs. Doc. 21 at ¶ 15. Mr. Amos regularly practices and values his personal Christian religious beliefs. *Id.* at ¶ 34. Mr. Amos's Christian beliefs include caring for his family and doing unto others as you would have them do unto you. *Id.* at ¶ 16. Mr. Amos possesses a religious devotion to maintaining the health, safety, and wellbeing of his children and wife. *Id.* at ¶¶ 35,124. Mr. Amos's religious beliefs include the belief that, "God helps those that help themselves." *Id.* at ¶ 338. Additionally, Mr. Amos's religious beliefs include respecting the

safety of others and his community. *Id.* at ¶¶ 36,126-127.

Plaintiff has continuously held and actively practiced these values throughout his life. *Id.* at ¶ 37. Mr. Amos did not share Defendant's beliefs that taking actions to protect his family from COVID-19 demonstrated "weakness of spirit." *Id.* at ¶145. Mr. Amos's religious beliefs require him to heed the advice of science to protect his family from a deadly disease, whether it be COVID-19 or any other disease. *Id.* at ¶ 155. Following recommended guidelines and working from home during COVID-19 aligned with Mr. Amos's religious belief of maintaining the health, safety, and wellbeing of his children and wife. *Id.* at ¶¶ 124,148. Mr. Amos decided that working from home would be safest for his family and consistent with his religious beliefs to protect his family. *Id.* at ¶¶ 164-165.

Mr. Amos disagreed with Defendant's repeated attempts to exert control over every aspect of its employee's lives, as his deeply held religious beliefs require him personally to be responsible for family decisions. *Id.* at ¶¶ 215-216. During several one-on-one meetings during and after March 2020, Mr. Amos expressed that Defendant's COVID-19 policies were at odds with his own religious beliefs. *Id.* at ¶ 248.

Further, during the deposition of Mr. Amos, he once again stated his sincere and deeply held religious beliefs that faith is a personal matter. Deposition of Brad Amos at 241:20-21.[1] Mr. Amos also stated that he believes you should do unto others as you want done to yourself, and that faith in itself is to not adhere to someone else's belief system blindly. Amos Dep. at 246:18-25.

---

[1] Given that some depositions have already been filed under seal, Plaintiff has only cited to the depositions of Brad Amos, Laura Johnson, and Armando Lopez as Lampo's 30(b)(6) corporate representative. Plaintiff is happy to provide excerpts should the court request them and in the manner the court desires.

As shown above, Plaintiff's deeply and sincerely held religious beliefs were stated throughout the pleadings and discovery. General Religious Discrimination under Title VII is based on the religious convictions held by the Plaintiff, and therefore the scope of this claim encompasses all of Plaintiff's sincerely held religious beliefs stated throughout the pleadings and discovery. Eventually, Plaintiff was terminated by Defendant for practicing these religious beliefs.

      b.   **Non-Conforming Religious Discrimination Claims**

The second claim as outlined by the Court is discriminatory treatment toward Plaintiff based on his nonconformity with Defendant's religious viewpoint. Transcript of July 8, 2025 Pretrial Conference at 29:24-30:2. With non-conforming religious discrimination claims, the Sixth Circuit in this case has held the adverse employment actions "were taken because of a discriminatory motive based upon the employee's failure to hold or follow her employer's religious beliefs." *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022); *see also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) ("Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity."). Accordingly, the focus of the claim is on "the religious beliefs of the employer, and the fact that [the employee] does not share them"—not on the specific religious beliefs of the employee himself. *Shapolia*, 992 F.2d at 1038. *Amos*, 2024 WL 3675601, at *2. The nonconforming religious claims stem from both the hostile work environment created by Defendant, the retaliation based on Plaintiff's nonconformity, and Defendant's failure to accommodate.

1. **Hostile Work Environment**

To prevail on a hostile work environment claim, a plaintiff must show 1) he or she was a member of a protected class, 2) he or she was subjected to unwanted religious harassment, 3) the harassment was based on the plaintiff's religion, 4) the harassment resulted in a hostile work environment and 5) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999).

In his Amended Complaint, Mr. Amos claimed the Defendant created a hostile work environment by requiring all of his employees to comply with his religious beliefs and practices. The Defendant forced his practices upon employees including Mr. Amos s in many ways, creating a "cult-like" atmosphere. Doc. 21 at ¶ 40. One way was through his "onboarding" process which was designed to indoctrinate employees to constantly praise the Defendant and "The Ramsey Way." *Id.* at ¶¶ 57-58. "The Ramsey Way" was developed to encourage constant praise for the Defendant's CEO Dave Ramsey and was implemented through "Dave Stories" in which people shared deeply personal moments where the Defendant or his program significantly changed a person's life. *Id.* at ¶¶ 59-62. These testimonials and worship-like practice were required by the Defendant as part of company practice.

Furthermore, during the onboarding process, the Defendant introduced its "14-Point Philosophy" outlining the company's culture and values. *Id.* at ¶ 63. One "value" the Defendant required compliance with was "No Gossip," however, in practice this prohibition applied only to negative comments about the Defendant or its management decisions. *Id.* at ¶¶ 64-65. This prohibition actively enforced a practice similar to worship in which followers express the supreme value of a deity.

Defendant also required weekly "one-on-one" meetings to ensure adherence to its beliefs and prod into private details of its employees' lives. *Id.* at ¶ 96-98. Mr. Amos was consistently

asked what negative comments he heard about the Defendant and what he thought of such items. *Id.* at ¶ 247. Defendant encouraged employees' spouses to participate in the "Lampo Ladies" Facebook Group which it monitored for indications that any employee or their spouse was not conducting themselves in line with the Defendant's views. *Id.* at ¶¶ 68-70. Any views or expressions that did not comport with the Defendant's religious beliefs were critically judged and rejected. *Id.* at ¶ 108. Additionally, any indication by employees of disagreement with the "Ramsey Way", whether it was professionally or personally related, prompted additional required meetings. *Id.* at ¶ 94. This cult-like behavior demonstrates a religiously hostile work environment.

Despite Mr. Amos's superior work, he was forced to attend meetings of a "spiritual and personal nature" to make him submit to the Defendant both as an employer and source of religious leadership. *Id.* at ¶¶ 244-246. These practices imposed severe discomfort and created a hostile work environment for Mr. Amos. For example, during a one-on-one meeting, Mr. Amos was asked to include more information about his relationship with his wife to an extent extremely personal in nature. *Id.* at ¶¶ 107-108.

During COVID, the Defendant coerced compliance with its religious views that precautionary COVID measures were unnecessary and reflected a weakness of the spirit. *Id.* at ¶¶ 130-131, 135-137. Defendant, through CEO Dave Ramsey, declared that preventative measures were against the will of God and prayer was the proper way to avoid COVID infection. *Id.* at ¶ 138, 154. Defendant promoted its belief that the proper attitude was to "pray away the disease." *Id.* at ¶ 261. Defendant's beliefs persisted even with confirmed cases of COVID in the office. *Id.* at ¶¶ 146-152. The Defendant terminated or demoted employees who did not agree with its religious beliefs or otherwise held beliefs in contravention of its own. *Id.* at ¶ 129.

Defendant actively dismissed and discriminated against the Plaintiff's religious views that he needed to protect his family and heed to the advice of science because they were contrary to Defendant's belief that the only proper response to the pandemic was of a spiritual nature. *Id.* at ¶¶ 154-155. Defendant compelled compliance with its beliefs of "pray and keep moving forward" by refusing to allow the Plaintiff to quarantine from his family in his garage claiming that "appearance" would be contrary to the Defendant's established religious practice. *Id.* at ¶¶ 177-179. Defendant also retaliated against anyone who did not comply with its beliefs, as evidenced by its CEO's mocking of an employee who attempted to report violations under the CDC guidelines. *Id.* at ¶¶ 267-271. Additionally, after Mr. Amos's wife's posted a comment on Facebook contrary to Defendant's views on COVID, Mr. Amos was prompted to get his wife "on the same page." *Id.* at ¶¶ 183, 212. Mr. Amos was repeatedly told to talk to his wife about their commitment to Lampo. *Id.* at ¶ 236.

Further, during the deposition of Mr. Amos and others, additional and clarifying facts were disclosed. For example, during the onboarding process, new employees were guided through a "museum of Dave's life" Defendant maintained upstairs and shown where a Bible was buried on the grounds. Amos Dep. at 207:16-24. New employees were also expected to read multiple books. Among those books, at least one is specifically about the "relationship between business and faith." 30(b)(6) Deposition of Armando Lopez at 26:3-6, 25:7-11. Employees were further required to attend weekly staff meetings and a weekly "devotional." 30(b)(6) Dep. at 165:7-13. During devotional meetings, the motivational speakers presented to the employees and were centered around religion. *Id.* at 166: 9-11. "Around 85 percent of the people that speak are pastors from either local or national churches, and the other 15 percent are motivational

speakers." *Id.* at 166: 24 – 167: 4. Every meeting ended with a Christian prayer. Deposition of Laura Johnson at 61:13-25.

The Defendant further required employees to maintain a "Bible Journal" to share at the weekly devotionals. Amos Dep. 194:13–195:7. The Bible Journals were meant to be filled with the private thoughts and prayers that Defendant's employees had throughout the week so that they could be shared publicly at the devotionals. *Id.* at 194:13–195:7. Mr. Amos attempted to speak out against this practice and the publication of its contents, to no avail. *Id.* at 239:18 – 240:5. Rather, Mr. Amos was then required to attend a great deal of one-on-one meetings where Defendant would question his faith, beliefs, and marriage, all while trying to convince Mr. Amos that his way of practicing religion was incorrect and that Defendant's way of expressing faith is the correct way. *Id.* at 243:2-17.

Between March and June 2020, Chief Creative Officer Luke LeFevre and Mr. Ramsey sent daily emails to the entire company. Titled and stylized "HOPE Daily," these messages included details on scheduling, work from home information, data about latest COVID numbers, and passages tied to Traditional Judeo-Christian Values. Bible verses, letters from pastors, prayers, and frequent mention of God or Jesus explicitly evidence the religious overtone of the emails. *See* LAMPO11829, 12568-70, 12595-97.[2] The Defendant actively promoted the mantra "HOPE > Fear" as a source of inspiration. *See* LAMPO12391, 13187-90. The HOPE Daily emails also contained information about the religious lens through which Lampo viewed the Coronavirus and those who had different feelings than the organization's leadership. *See* LAMPO13211-12 (discussing praying for country leaders and working with state officials to be deemed an exempt workplace), 15296-97 (last HOPE email on 6/12/20 talking about the

---

[2] The referenced HOPE Daily emails are attached as Exhibit 1.

"dawning of a new day"), 16127-28 (statements regarding employees being on a "CRUSADE" and needing to "defend Ramsey during COVID).

The "No Gossip" rule created a directive to praise Defendant in private and public, as employees were told not to talk about Defendant or its leadership to their spouses. Amos Dep. at 63:25-64:3. This effectively operated as a "universal gag order" on any thoughts that contradicted the Defendant's decisions. *Id.* at 285:6-12. Employees were also told to disregard any negative outside comments about Defendant, and instead blindly believe Defendant's management. *Id.* at 64:14-21. The cult-like behavior of Defendant clearly led to a hostile work environment for all employees who dare to exercise independent religious beliefs guaranteed by the First Amendment to the Constitution. Plaintiff was ultimately terminated for his failure to accede to this cult like behavior.

2. Retaliation:

Plaintiff suffered illegal retaliation based on his nonconformity with Defendant's religious views. To show retaliation, the plaintiff must show that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." .... So in the retaliation context, the plaintiff must show that he faced an adverse action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Bilyeu v. UT-Battelle, LLC,* No. 24-5418, 2025 WL 2754017, at *6 (6th Cir. Sept. 29, 2025) (internal citations omitted).

As set out *infra* and *supra*, Mr. Amos and Defendant had incompatible religious views regarding the appropriate response to COVID-19, the publicization of worship, the ability to

think freely and speak out against Defendant's religious practices, and the role of Defendant in its employee's personal, spiritual, and marital lives. These fundamental religious disagreements culminated in Mr. Amos refusing to conform to Defendant's specific religious views, which led to Defendant requiring Mr. Amos to attend one-on-one meetings fashioned to force their religion upon him. Amos Dep. at 239:18 – 240:5. After Mr. Amos refused to abandon his own religious beliefs to conform to Defendant's, Defendant demoted and then terminated Mr. Amos. Doc. 21 at ¶ 322.

Mr. Amos's Amended Complaint alleges that he did not agree with Defendant's views on the appropriate response to the COVID-19 outbreak. *Id.* at ¶ 145. After expressing his concerns to Defendant's management, Mr. Amos was told that he could work from home. *Id.* at ¶ 180. However, Defendant demoted Mr. Amos for requesting to work from home and told him that he would only be reinstated to the Senior Video Editor position upon returning to work in person. *Id.* at ¶ 180.

Mr. Amos further alleged in his Amended Complaint that he was terminated for failing to adhere to *all* of the religious beliefs that Defendant held. *Id.* at ¶¶ 222-223, 318-322. This necessarily includes his speaking out against the one-on-one meetings designed to force him to adhere to the Ramsey Way, the Bible Journaling Mr. Amos spoke out against, and the constant pressure on how to handle his home life that Mr. Amos spoke out against, among Defendant's other religious beliefs outlined herein.

### c. Failure to Accommodate

Plaintiff's last claim as outlined by the Court is failure to accommodate based on religion. Transcript of July 8, 2025 Pretrial Conference at 29:24-30:2. This claim involves information tied to both the general religious discrimination and the religious nonconformity claims. Title VII

"requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023). A plaintiff in the Sixth Circuit must show that he: "(1) holds a sincere religious belief that conflicts with an employment requirement; (2) has informed the employer about the conflicts; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)(citing *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987)). Under Sixth Circuit case law, a plaintiff cannot satisfy prong three of this test without showing that he has suffered "some independent harm caused by a conflict between his employment obligation and his religion." *Reed v. UAW*, 569 F.3d 576, 581 (6th Cir. 2009).

The relevant facts here have been detailed at length above. Mr. Amos had a clear picture of his religion and its incumbent practices, observances, and beliefs. Mr. Amos voiced his concerns and discomfort over journaling his innermost thoughts and prayers and praying publicly. Whereas Mr. Amos would rather keep his family life separate from work, Lampo repeatedly requested that he "talk to his wife" about things she had said. And Mr. Amos undoubtedly made his aversion to Lampo's approach to COVID mitigation known. Lampo refused to accommodate Mr. Amos based on his beliefs and terminated him because of these beliefs.

### III. Conclusion

The above items related to the religious practices, observances, and beliefs should all be considered in the scope of Plaintiff's claims. In keeping with Title VII, an expansive view of religion is appropriate in this matter. The evidence presented in this matter supports claims for general discrimination, non-conforming discrimination, retaliation, failure to accommodate, and

hostile work environment. Plaintiff plans to present any admissible evidence uncovered in filings and the discovery process in his case in chief.

Respectfully Submitted,

**THE EMPLOYMENT AND COMMERCE LAW GROUP,**

**/s/ *Jonathan A. Street***
**JONATHAN A. STREET, BPR No. 027172**
**G. BRANDON HALL, BPR No. 034027**
**ZACHARY W. BROWN, BPR No. 037509**
1625 Broadway, Suite 601
Nashville, TN 37203
(615) 850-0632

Anne Hunter
Hunter Law Firm PLC
5115 Maryland Way, Suite 125
Brentwood, TN 37027
(615) 592-2977
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was served electronically via the Court's CM/ECF system this 17th day of October 2025 to the following:

Leslie Goff Sanders (TN #18973)
Daniel C. Crowell (TN #31485)
Stephen C. Stovall (TN #37002)
Eric C. Lyons (TN #36105)
Molli A. Guinn (TN # 41258)
BARTON LLP
611 Commerce Street, Suite 2911
Nashville, TN 37203
Tel.: (615) 340-6790
*Attorneys for Defendant*

/s/ Jonathan A. Street
Jonathan A. Street