UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRAD AMOS, | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-00923 |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Holmes |
| THE LAMPO GROUP, LLC, | ) | Jury Demand |
| Defendant. | ) | |

### DEFENDANT'S TRIAL BRIEF ON SCOPE OF PLAINTIFF'S RELIGIOUS DISCRIMINATION CLAIMS

Defendant, The Lampo Group, LLC, files this trial brief regarding the proper scope of claims in accordance with the Court's Orders on August 13, 2025 and September 26, 2025 (Docs. 299 and 300).

This lawsuit has always been about Plaintiff's frustration with Defendant's response to COVID. Yet, on the eve of trial, Plaintiff claimed, for the first time, that this case "is not about COVID." (Doc. No. 245 at PageID #5772). Instead, Plaintiff argued to the Court that because Plaintiff's "religious beliefs extend beyond the pandemic and into how [sic] general principles of how people should be treated," this lawsuit should as well. (Doc. No. 245 at PageID #5772). But Plaintiff does not have free reign to put on evidence of anything remotely related to religion simply because he asserted a religious discrimination claim. This is not a trial of Defendant's religious beliefs. Instead, it is a trial of the *only* religious discrimination claim Plaintiff has asserted – his views regarding COVID. He cannot invent new claims, assert other people's claims or continue to fish for claims at trial.

Plaintiff first filed this lawsuit on July 11, 2023. Most of Plaintiff's claims have been dismissed, including those against Defendant's CEO, Dave Ramsey. Indeed, the only remaining

claims that the parties will litigate at trial are religious discrimination claims (general religious discrimination, religious accommodation, and religious non-conformity) against Defendant. The pleadings and evidence are clear – only alleged religious views related to COVID are at issue.

As a starting point, the Amended Complaint, which is the operative complaint for trial, makes it clear that this case is about COVID. Plaintiff used the term "COVID" over sixty (60) times in the Amended Complaint:

- ¶ 128: "Despite the alarming spread of this highly infectious virus, Mr. Ramsey and other leadership at Lampo spoke against other actors taking preventative **COVID-19** measures."

- ¶ 150: "Plaintiff expressed concern that Lampo had not taken any effort to implement any precautions against **COVID-19** despite the proximity to an infected employee."

- ¶ 154: "Lampo expected its employees to adopt the religious view of Mr. Ramsey that taking **COVID-19** precautions demonstrated "weakness of spirit" and prayer was the proper way to avoid **COVID-19** infection."

- ¶ 162: "Plaintiff asked if that was an option and expressed his concerns about **COVID** since his son, wife, and mother were all considered 'high risk.'"

- ¶ 166: "Plaintiff elected to work from home for one week, and then evaluate whether or not he felt safe enough to return to the office based on the number of **COVID-19** cases."

- ¶ 183: "On March 22, 2020 Plaintiff's wife shared a post criticizing the Tennessee government's weak response to **COVID-19**, presumably seen by Lampo employees."

- ¶ 192: "From daily updates from Mr. LeFevre, Plaintiff discovered five more people at Lampo had become infected with **COVID-19.**"

- ¶ 259: "Specifically, the CDC urged the use of masks and social distancing as primary deterrents for the spread of **COVID-19** infection."

- ¶ 272: "Despite the struggles with **COVID-19** measures at work, Mr. Amos continued to provide his best effort to any projects assigned to him."

2

Case 3:21-cv-00923   Document 302   Filed 10/17/25   Page 2 of 12 PageID #: 6450

(Doc. No. 21)(emphasis added). And when discussing religious beliefs, both those of the Plaintiff and of the Defendant, the Amended Complaint addresses COVID and nothing else:

- ¶ 35: "Plaintiff possesses a *religious devotion to maintaining the health, safety, and wellbeing* of his children and wife."

- ¶ 36: "Additionally, Plaintiff's *religious beliefs reflect a respectful treatment for the safety* of others and his community."

- ¶ 72: "Eventually, this included reporting to Defendants Lampo and Ramsey any views which may split with any *religious view* Defendants had on *COVID*."

- ¶ 124: "Plaintiff had a deep *religious devotion to protect the health and safety* of his family."

- ¶ 125: "As such, Plaintiff exercised extreme caution and made personal measures not to potentially infect his family with *this virus*."

- ¶ 126: "Plaintiff had a deep *religious devotion* to respect and care for the *health and safety* of others in his community, to follow the "golden rule" to do no harm to others."

- ¶ 127: "As such, Plaintiff exercised additional caution not to potentially spread *the virus* to his coworkers and friends outside of work."

- ¶ 135: "Despite the growing public concern for safety and need to exercise *COVID-19* precautions, Mr. Ramsey and other leadership continued to express their belief that these measures were not aligned with the *religious principles* held by Lampo or Ramsey."

- ¶ 146: "Mr. Ramsey's stated *beliefs regarding COVID* were amplified on his radio show numerous times."

- ¶ 148: "In this confrontation, Plaintiff mentioned other alternatives for safe working conditions during *COVID*, including working from home, that were aligned with his own *religious beliefs*."

- ¶ 165: "Plaintiff decided working from home was consistent with his *religious beliefs* considering Defendants' refusal to comply with *COVID-19* precautions."

- ¶ 179: "Mr. Ramsey continued to promote his *religious beliefs* by saying any *COVID-19 precautions* showed "weakness of the spirit" and encouraged employees to refrain from taking COVID-19 precautions but instead "pray and keep moving forward."

- ¶ 222: "Mr. LeFevre clearly meant Plaintiff should give up his *personal beliefs* in exchange for the beliefs of the company leader; specifically the way he chose to handle personal family issues and choosing to not put his family in danger because Ramsey believed taking *COVID precautions* demonstrated "weakness of spirit""

- ¶ 248: "During several of these meetings occurring during and after March 2020, Plaintiff expressed to Defendant Lampo that Defendant Lampo's current *COVID-19 policies were at odds with his religious beliefs* and created strife in his family life."

- ¶ 316: "Lampo, at Ramsey's direction, would regularly and aggressively promote their own *religious beliefs against COVID-19 precautions* while also demeaning Plaintiff's *religious beliefs supporting these measures* to care for the wellbeing and safety of his family."

- ¶ 317: "Defendant Lampo, at Ramsey's direction, also criticized Plaintiff's exercise of his *religious beliefs such as social distancing and wearing a mask*."

- ¶ 339: "Lampo's *religious convictions* that individuals should "pray away the disease" rather than taking proper precautions and taking precautions *against COVID* demonstrated "weakness of spirit" were not followed by the Plaintiff."

- ¶ 340: "Lampo terminated Plaintiff for taking scientifically prescribed precautions, as required by his sincerely held *religious beliefs, in the COVID pandemic* rather than relying on prayer alone to protect himself."

- ¶ 341: "This action was taken in violation of Plaintiff's *Christian belief* that the precautions suggested by the CDC, State of Tennessee, Medical Doctors and others were the proper way to *avoid COVID*."

- ¶ 344: "Plaintiff maintained his own *religious beliefs in his efforts to avoid infection* in addition to prayer, and as a result was terminated from his position."

(Doc. No. 21 (emphasis added)). Even when the Amended Complaint generally refers to Defendant's "religious beliefs," Plaintiff clearly indicates beliefs about COVID and what he thought were the appropriate preventative measures:

- ¶ 136: "In fact, Mr. Ramsey and other Lampo leadership actively denigrated any opposing *religious beliefs* that supported taking *preventative measures*."

4

- ¶ 152: "As Mr. LeFevre and Defendants were aware, Plaintiff's *religious beliefs* require him to **protect his family's health and safety.**"

- ¶ 155: "In contrast, Plaintiff's ***religious beliefs*** required him to heed the advice of science to protect his family from ***a deadly disease***."

Plaintiff argued to the Court that when it alleged "particular views" throughout the Amended Complaint, it meant *any* religious views, including those that have no relation to this lawsuit. Plaintiff knows that is not what he meant. He was not using COVID as an example of religious beliefs. In fact, it is a stretch for Plaintiff to assert that his views on COVID were religious in nature. The phrase "particular views" is repeatedly used by Plaintiff in conjunction with beliefs about COVID. If Plaintiff truly intended his phrasing in the Amended Complaint to be all-encompassing, he would not have used "particular" when describing the views at issue. Instead, he would have used a descriptor that was as broad as possible. Moreover, the phrasing used by Plaintiff speaks for itself:

- ¶ 342: "Plaintiff was terminated for failing to follow ***Lampo's particular view*** that prayer was the exclusive way to prevent ***COVID infection***."

- ¶ 343: "Plaintiff was terminated for failing to follow ***Lampo's particular view*** that taking precautions other than prayer against ***COVID infection*** would make a person fall out of God's favor."

- ¶ 345: "Lampo's termination of Plaintiff was motivated by his refusal to adhere to ***Lampo's particular religious views and abandon his on COVID*** and therefore suffered religious discrimination."

- ¶ 346: "Because Plaintiff did not adhere to Defendant's ***particular set of religious beliefs***, he was terminated."

In Count II of the Complaint, Plaintiff alleges that Defendant wrongfully terminated Plaintiff for his nonadherence to Defendant's particular religious convictions and violated Title VII by refusing to respect and/or accommodate Plaintiff's strongly held religious belief that "God helps those that help themselves." (Doc. 21 at ¶¶ 337-338). In explaining those strongly held

5

religious beliefs and how they relate to his religious claims, Plaintiff only discussed religious beliefs as they relate to COVID:

- ¶ 339: "Lampo's *religious convictions* that individuals should 'pray away the disease' rather than taking proper precautions and taking precautions *against COVID* demonstrated 'weakness of spirit' were not followed by the Plaintiff."

- ¶ 340: "Lampo terminated Plaintiff for taking scientifically prescribed precautions, as required by his sincerely held *religious beliefs, in the COVID pandemic* rather than relying on prayer alone to protect himself."

- ¶ 341: "This action was taken in violation of Plaintiff's *Christian belief* that the precautions suggested by the CDC, State of Tennessee, Medical Doctors and others were the proper way to *avoid COVID*."

- ¶ 342: "Plaintiff was terminated for failing to follow *Lampo's particular view* that prayer was the exclusive way to prevent *COVID infection*."

- ¶ 343: "Plaintiff was terminated for failing to follow *Lampo's particular view* that taking precautions other than prayer against *COVID infection* would make a person fall out of God's favor."

- ¶ 344: "Plaintiff maintained his own *religious beliefs in his efforts to avoid infection* in addition to prayer, and as a result was terminated from his position."

- ¶ 345: "Lampo's termination of Plaintiff was motivated by his refusal to adhere to *Lampo's particular religious views and abandon his on COVID* and therefore suffered religious discrimination."

- ¶ 346: "Because Plaintiff did not adhere to Defendant's *particular set of religious beliefs*, he was terminated."

In Count III, which has been dismissed as to Defendant Ramsey, Plaintiff specifically claims that "Defendant Ramsey retaliated against Plaintiff for not following his religious belief that taking covid precautions 'showed weakness of spirit; Plaintiff followed his own religious beliefs in protecting the safety of his family and Ramsey directed Lampo to terminate him." (Doc. 21 at ¶ 354). Plaintiff's religious discrimination claims have always been solely about COVID.

While the Court need look no further than the Amended Complaint to determine that Plaintiff's religious claim is entirely related to COVID, Plaintiff's own deposition continues the theme. When Plaintiff was questioned about the basis of his complaint under oath, Plaintiff's sole focus was the difference in views on COVID, not religion generally:

- Amos Dep. 56:1-5: "But there were lots of -- you know, after **COVID** started in March, you know, I think the -- kind of the corrosiveness of a lot of those speeches had intensified a lot in which I didn't have a lot of understanding of why or what -- what the problem was."

- Amos Dep. 221:1-15: "I'm like, 'Well, I mean, somebody got really deathly sick next to us. We don't know anything about the disease, and it seems like it's killing people. What do we need to be doing here? I mean, it seems like there's a lot of questions, and I'm not hearing a lot of answers. I'm not saying we need to shut down, but do we all need to be tested? What are we doing? What's the plan?' And he's like, 'Don't worry. Don't worry. We've got this. We're watching. It's not a big deal.' I'm like, okay. And after that moment, everything got very different with the way that Luke treated me, and then this original question started with a question about a missed deadline. Because, again, this deadline had not been talked about."

- Amos Dep. 241:14-20: "But it became more and more and more aggressive the -- more and more and more, especially when **COVID** happened because there you have a direct instance where now somebody's beliefs about something and the adherence to the fact of not questioning things of -- you know, which is ***not kind of what I believe***."

- Amos Dep. 242:16-243:1: "But they did get sick there, and the reaction, though, was one of, well, trust me; it's okay. ***Let's pray it away.*** We'll be fine. Somebody else is driving the car and got their hand on the wheel. And in my life and ***in my belief system there's a lot more free will and a lot less predest --predetermination about things.*** And the way that people do things is very impactful, and the lack of doing things and my adhering to these beliefs could have put everybody at a lot of risk."

- Amos Dep. 299:21-25: "And never let, you know, whatever my feelings are personally about ***my own religious, you know, objections to not having any objections to COVID*** interfere with anything I was doing at the office."

- Amos Dep. 316:4-14: "***Do I need to stay away from my family? Do I need to quarantine?*** I have people who may be high risk. What is high risk? We don't know anything. So this – I think you, because kind of had come in here and said, 'Hey, everybody, good? Y'all take a breath. Are you good? Okay. Great. Cool.

> Let's pray.' That literally was what is was, and when he said no response, I said "Actually, I do have a response."

- Amos Dep. 320:7-11: "You know, people knew my positions about, you know, *religion*. They knew where I stood on things. You know, it – I didn't have to keep beating the table about, you know, ***the COVID response.***"

There was no indication from Plaintiff, at all, that he thought some other aspect of his religious beliefs were at odds with Defendant's. And when discussing his own termination, Plaintiff was still talking about COVID:

- Amos Dep. 60:20-23: "I think there was a standup ***the day I was fired*** on the 31st, and they had talked about that there were people who were leaving today because of ***COVID***-related reasons."

- Amos Dep. 337:6: "I asked him, 'Is this about ***COVID***?'"

- Amos Dep. 337:9: "And he said, 'No, it's not about ***COVID***.'"

Just like in his Amended Complaint, Plaintiff used "COVID" fifty-three (53) times in his deposition. What is clear is that Plaintiff believes COVID is the basis of his religious discrimination claims, which was the singular focus of his answers in deposition.

In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 121), Plaintiff again asserts that COVID is the sole basis for the religious claims. In fact, Plaintiff summarizes his religious claims in the Response – "when Plaintiff challenged Defendant's policy of relying on prayer and faith to deal with COVID 19, he was treated very differently. He was ultimately demoted and terminated for challenging these beliefs." (Doc. 121 at PageID #2738). Plaintiff alleges in the "Traditional Religious Discrimination" section of his Response that he "was demoted and ultimately terminated for not accepting Lampo's COVID policy which was based on relying solely on prayer and faith to respond to the epidemic." (Doc. 121 at PageID #2739). In the "Religious Discrimination – Retaliation" section, Plaintiff alleges that:

> In his March 16, 2020 meeting he also informed Luke LeFevre of his unhappiness with Lampo's attitude toward COVID of using prayer and faith to fight the disease rather than following the guidance of the CDC and other organizations recommendations. After Mr. Amos informed Defendant of his position, his relationship with Defendant deteriorated quickly despite no change in the quality or quantity of his work as set out above. He was ultimately demoted and terminated thereafter, for pretextual reasons.

(Doc. 121 at PageID # 2741).[1]

In the "Religious Discrimination – Failure to Accommodate" section of Plaintiff's Response, he bases his claim on Defendant's alleged failure to accommodate his beliefs on COVID. (Doc. 121 at PageID #2741-42). In asserting this claim, Plaintiff points to his own deposition testimony in which he makes various statements regarding Defendant's alleged failure to accommodate his requests based on COVID:

- "Defendant knew he had a high-risk family member and told him it was ok if he worked from home." (Doc. 121 at PageID #2741)(citing Plaintiff's deposition at 222:8-24).

- "In response, Mr. Amos began suggesting possible accommodation which included sleeping in his basement to avoid putting his family's health at risk." (Doc. 121 at PageID #2741-42)(citing Amos Dep. at 223:11-13).

- "Defendant denied this suggestion and proposed switching Mr. Amos' role instead." (Doc. 121 at PageID #2742)(citing Amos Dep. at 224:7-12)

Finally, Plaintiff ends the section by alleging that, "after requesting this accommodation, Defendant changed in their attitude toward Plaintiff which led to his demotion and eventual termination." (Doc. 121 at PageID #2742). The "accommodation" referred to COVID and nothing else.

---

[1] Similarly, in Plaintiff's Response to Defendant Lampo's Second Motion to Dismiss, Plaintiff's defense of his religious claim is related exclusively to his alleged religious beliefs related to COVID. (Doc. 37 at PageID #1134-1136).

9

In Plaintiff's supplement to his EEOC charge, he alleges that because he had a high-risk child living at home, he was "uncomfortable with Lampo's religious response to his COVID inquiry and suggested he could work from home" and was demoted for making this suggestion. (Doc. 121 at PageID #2724, Exhibit A).

In fact, during the meeting between Plaintiff and Luke LeFevre, in which Plaintiff was ultimately terminated, Plaintiff admits that he believed the meeting and his ultimate termination were related to COVID. "I asked him, 'Is this about *COVID*?'" (Amos Dep. 337:1 – 338:12).

The scope of Plaintiff's religious claims was also clear to the Sixth Circuit. In discussing whether Plaintiff satisfies his pleading burden to state a claim for religious nonconformity, the Sixth Circuit stated that:

> He does. Amos claims that in March 2020, Lampo leadership "express[ed] their belief that [precautionary COVID] measures were not aligned with the religious principles held by Lampo or Ramsey" and that Ramsey "believed taking preventative measures were [sic] against the will of God." DE 21 at 13. Specifically, Amos states that "Lampo expected its employees to adopt the religious view of Mr. Ramsey that taking COVID-19 precautions demonstrated 'weakness of spirit' and prayer was the proper way to avoid COVID-19 infection." *Id.* at 15. And because of these beliefs, Lampo "terminat[ed] or demot[ed] employees who did not agree with [its] spiritual beliefs ...." *Id.* at 13.

*Amos v. Lampo Grp., LLC*, No. 24-5011, 2024 WL 3675601, at *3 (6th Cir. Aug. 6, 2024). In pretrial motions, Plaintiff took one sentence out of the Sixth Circuit's opinion out of context and concluded that he now has free reign to litigate all beliefs of Defendant. (Doc. 245 at PageID #5772). Plaintiff conveniently ignores the paragraph immediately preceding in which the Sixth Circuit explains that the alleged religious belief in question relates exclusively to COVID. *Amos*, 2024 WL 3675601, at *3. The Sixth Circuit summarized Plaintiff's religious discrimination claim as follows:

10

> In short, Amos pleads that his deeply held religious beliefs required him to take COVID precautions to avoid inflicting injury on others, as well as to protect his family – and that Lampo did not allow him to do so and ultimately terminated him.

*Id*. at *4.

Plaintiff's claim is about COVID. Discovery was all about COVID. Plaintiff's responses to dispositive motions focused exclusively on COVID. The Sixth Circuit understood Plaintiff's claim to be about COVID. Plaintiff now claims this case is not about COVID. The Sixth Circuit opinion did not give Plaintiff carte blanche leave to raise new allegations or new theories of religious discrimination. Plaintiff's attempt to make this a trial about any and all views of Defendant (including those that have nothing to do with Plaintiff) is unsupported by Plaintiff's pleadings and is contradicted by his own sworn testimony. This case is and has always been about Brad Amos, his views on COVID and his assertion that Lampo disagreed with his views.

Respectfully submitted,

/s/*Stephen C. Stovall*
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
Eric Lyons (TN #36105)
Stephen Stovall (TN #37002)
Molli Guinn (TN #41258)
Barton LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
elyons@bartonesq.com
sstovall@bartonesq.com
mguinn@bartonesq.com

*Attorneys for Defendant*

11

## CERTIFICATE OF SERVICE

I certify that, on October 17, 2025, I filed the foregoing document via the Court's electronic filing system, which will automatically notify and send a copy to:

Jonathan Street
Zachary Brown
Brandon Hall
Cullen Hamlin
EMPLOYMENT & COMMERCE LAW GROUP

*Attorneys for Plaintiff*

/s/*Stephen C. Stovall*
Stephen C. Stovall (TN #37002)
*Attorney for Defendant*