IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00923 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| THE LAMPO GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**AMENDED ORDER**[1]

Pending before the Court is "Plaintiff's Motion in Limine No. 11" (Doc. No. 315, "Motion") filed by Plaintiff, Brad Amos. Via the Motion, Plaintiff moves the Court to strike the "Motion for an Order to Show Cause" (Doc. No. 225, "Show Cause Motion") filed by Defendant, the Lampo Group, LLC. Also via the Motion, Plaintiff moves the Court for sanctions against Defendant pursuant to Fed. R. Civ. P. 37(c)(1).[2] Defendant has filed a response (Doc. No. 269, "Response") in opposition to the Motion. Plaintiff has filed a reply (Doc. No. 277, "Reply") in further support of the Motion.[3]

For the reasons described herein, the Court **DENIES** the Motion.[4]

---

[1] This Order amends and supersedes the Court's prior order (Doc. No. 317), which contained a scrivener's error.

[2] Although Plaintiff references Rule 37 and Rule 37(c) generally in his Motion, Plaintiff cites (and quotes) Rule 37(c)(1) specifically in his argument, and so the Court treats the Motion as being brought (for the purpose of seeking sanctions) specifically under Rule 37(c)(1).

[3] Filed with the Motion, Response, and Reply are copies of various records that shed light on the course of the dispute underlying this Motion. These records are filed at Docket Nos. 233-2, 269-1, 269-2, 269-3, 269-4, 277-1, and 277-2. At times, the Court will cite these records below.

[4] The Court notes that the Response and the Reply also contain arguments directed at "Plaintiff's Second Motion to Allow Late Filed Motion in Limine" (Doc. No. 233, "Motion to Allow") wherein Plaintiff sought

BACKGROUND

As will be explained below, what is really before the Court is a discovery dispute. Below, the Court will first review the parties' competing narratives and arguments underlying this dispute, and then untangle those narratives.

1. The Parties' Arguments and Narratives

This Motion arises out of what Plaintiff characterizes as "Defendant's failure to produce nearly a thousand pages of discovery until less than three weeks before trial." (Doc. No. 315 at 3).[5] In brief, Plaintiff asserts that Defendant "failed to produce" documents "bates stamped 717-1631." (*Id.* at 2).[6] Further, Plaintiff asserts:

> Plaintiff informed Defendant in January 2023 of the need to produce [the Disputed Documents], to which Defendant maintained that the documents were accessible with a link they had sent. However, the Defendant's link [provided access only to] documents starting with Bates stamp no. 1632.
> Numerous times in January 2023 Plaintiff informed Defendant the link was not [providing access to the Disputed Documents]. Defendant never produced [the Disputed Documents] until . . . June 26, 2025—more than two years after Plaintiff had reminded Defendant of the deficiency. This production of [the Disputed Documents] comes [l]ess than 3 weeks before trial and proves, in fact, that Defendant failed to produce emails they were required to [produce] in discovery.

(*Id.* at 2).

Plaintiff argues that this purported failure to produce the Disputed Documents "is greatly prejudicial against Plaintiff. It severely diminishes his ability to put on the case he should have been able to put on except for Defendant's failure. Plaintiff was unable to utilize the newly-produced records during depositions of Defendant witnesses [or] in any dispositive motions. This

---

leave to file the present Motion. The Court has already granted the Motion to Allow, (Doc. No. 314), and accordingly does not address any of the arguments in the Response and the Reply directed specifically at whether the Motion to Allow should be granted or denied.
[5] The Court notes that since the Motion was filed, the scheduled trial in this action has been moved from July 15, 2025 (Doc. No. 185) to May 19, 2026 (Doc. No. 300).

[6] Herein, the Court will refer to the documents bates stamped 717-1631 as the "Disputed Documents."

failure to produce and honor the continuing obligation to provide material casts a shadow of doubt over the entirety of Defendant's production." (*Id.* at 3).

Based on this purported failure to produce the Disputed Documents and the purported prejudice suffered by Plaintiff, Plaintiff requests that the Court impose sanctions pursuant to Fed. R. Civ. P. 37(c)(1) and "(1) enter an order allowing Plaintiff to introduce evidence that Defendant failed to disclose discovery materials; (2) enter a judgment striking Defendant's ability to introduce certain items into evidence at trial in this matter; (3) enter a judgment against Defendant for liability and set this matter for a hearing on damages; and (4) have Defendant pay Plaintiff's attorney fees," or, alternatively, "that [Plaintiff] be allowed to make a negative inference to the jury based on the Defendant's failure to produce relevant documents." (Doc. No. 315 at 1).

Naturally, Defendant takes umbrage with this description of the alleged facts, asserting that it timely produced the Disputed Documents and that:

> Defendant first produced [the Disputed Documents] on December 16, 2022, via Dropbox link. The same link was forwarded to Plaintiff again on January 20, 2023, after Plaintiff's counsel, Jonathan A. Street, stated that he had not received the documents included in the link. Mr. Street confirmed at 5:05pm on January 20, 2023, that he was able to open the link and that he "recovered several documents" but that the "the specific bates stamped numbered documents listed were not in the production." At 5:20pm on January 20, 2023, Mr. Street stated that "I think maybe we are only getting the first pages of these documents? They appear cut off". Defendant's counsel extracted one of the documents to verify whether all pages were included and confirmed the same. Mr. Street confirmed that it worked and further stated that "I'm working from my iPad, let me have Brandon try to download the rest Monday morning and I can let you know if that doesn't work." Defendant's counsel responded, "Sounds good." After this email correspondence on January 20, 2023, Mr. Street did not follow up with Defendant [to assert] that he did not receive [the Disputed Documents] until June 26, 2025, more than two years after the documents were first produced. Defendant sent [the Disputed Documents] for a third time on June 26, 2025.

(Doc. No. 269 at 4-5) (citations and footnotes omitted).

Defendant then asserts that any prejudice that Plaintiff suffered was a result of Plaintiff's own delay, noting that "there were at least three discovery disputes conferences after [the above-described events of] January 20, 2023, and two motions related to discovery in which Plaintiff does not mention that Defendant failed to produce [the Disputed Documents]. Plaintiff could have notified Defendant that he was missing these documents at any time during the 29 months between January 2023 and now, and Defendant would have produced [them] immediately just as it did on June 26, 2025." (Doc. No. 269 at 6).

2. <u>The Dispute as Evidenced by the Record</u>

As noted above, the parties have provided the Court with competing narratives of the events underlying this dispute. Accordingly, the Court will below reconstruct the nature and timing of events underlying this dispute, by examining the copies of the various (and, at times, confusing) records that were filed with the Motion, Response, and Reply.

In December 2022, Defendant's counsel worked with their "third-party e-discovery vendor, TrustPoint" (Doc. No. 269 at 3) to prepare a production of the Disputed Documents. (Doc. No. 269-3). On December 16, 2022, Defendant's counsel sent Plaintiff's counsel a Dropbox link, thereby supposedly providing access to the Disputed Documents. (Doc. No. 277-1 at 4). On January 20, 2023, Plaintiff's counsel informed Defendant's counsel via email that certain documents, including the Disputed Documents, were missing from the production. (Doc. No. 233-2 at 8). Defendant's counsel sent some of the missing documents (though none of the Disputed Documents) to Plaintiff's counsel via email attachment, (Doc. No. 233-2 at 1, 4), and resent (also via email) the Dropbox link mentioned above. (Doc. No. 277-1 at 4). However, Plaintiff's counsel insisted via email that he still did not have access to the Disputed Documents. (Doc. No. 233-2 at 1). The last email that Plaintiff's counsel sent on January 20, 2023 with respect to this dispute

confirmed that he could access the email attachments sent by Defendant's counsel, while not mentioning the Disputed Documents. (269-1 at 1). After January 20, 2023, Plaintiff's counsel did not follow up with Defendant's counsel regarding the Disputed Documents until June 2025, (Doc. No. 269 at 4-5; Doc. No. 277 at 3-4), and on June 26, 2025, the Disputed Documents were undeniably and successfully (as far as the parties' briefing on the Motion indicates) produced to Plaintiff. (Doc. No. 269 at 5; Doc. No. 277 at 4). Oddly, Plaintiff filed the instant Motion only on June 27, 2025, *after* receiving the Disputed Documents.

The dispute (and, indeed, correspondence) between Plaintiff's counsel and Defendant's counsel regarding whether the Disputed Documents were produced apparently has been replete with confusion. This confusion was amplified by the use of multiple overlapping email chains between counsel regarding this dispute, the various means Defendant's counsel used to produce documents (i.e., producing documents variously both via a Dropbox link and as email attachments), and Plaintiff's counsel's failure to follow up with Defendant's counsel regarding the Disputed Documents for over *two years* after the initial discussion about the Disputed Documents in January 2023. It is also unclear from the record whether the Disputed Documents *were or were not* actually produced in December 2022 and January 2023. Defendant insists that the Disputed Documents were produced at such time, (Doc. No. 269 at 4-5), and even if Defendant is wrong about this, it is apparent that such failure was not intentional and was remedied immediately upon Plaintiff's counsel's follow up regarding the Disputed Documents in June 2025.

DISCUSSION

Plaintiff moves for sanctions pursuant to Fed. R. Civ. P. 37(c)(1).[7] Fed. R. Civ. P. 37(c)(1) provides in full:[8]

> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

As is critical for the present dispute, Fed. R. Civ. P. 37(c)(1) provides that the Court must impose sanctions—in the form of at least either exclusion of particular information or some alternative thereto—on a party if it has "fail[ed]" to produce information or identify a witness, *and* such failure is neither substantially justified nor harmless.[9] With respect to the "harmless[ness]" prong of Rule 37(c)(1), "the advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on

---

[7] As noted in a footnote above, although Plaintiff references Rule 37 and Rule 37(c) generally in his Motion, Plaintiff cites (and quotes) Rule 37(c)(1) specifically in his argument, and so the Court treats the Motion as being brought specifically under Rule 37(c)(1) and for sanctions as provided for in that rule.

[8] It is unclear from the briefing whether the Disputed Documents actually "provide information or identify a witness as required by Rule 26(a) or (e)" such as to implicate Fed. R. Civ. P. 37(c)(1). However, because Plaintiff has moved for sanctions pursuant to Fed. R. Civ. P. 37(c)(1), and Defendant does not dispute that Fed. R. Civ. P. 37(c)(1) is applicable to this dispute, the Court will assume that Fed. R. Civ. P. 37(c)(1) is the applicable Rule of Civil Procedure and proceed with its analysis under that rule.

[9] Notably, what is required to trigger mandatory sanctions under Rule 37(c)(1) is not mere *non-production* of the information, but a "fail[ure]" to produce the information—a term that connotes that the non-producing party must be *at fault* for the non-production. As explained further in a footnote below, for the purposes of its analysis herein, the Court is merely assuming *arguendo* that such a failure to produce occurred here.

the part of the other party."[10] *Cincinnati Holding Co., LLC v. Fireman's Fund Ins. Co.*, No. 1:17-cv-105, 2020 WL 635655, at *5 (S.D. Ohio Feb. 11, 2020) (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)) (internal quotation marks omitted).

Here, the Court concludes that any non-production of the Disputed Documents, assuming that it actually occurred and could be deemed a "fail[ure]" on the part of Defendant, was harmless.[11] The Court so concludes both because the failure to produce the Disputed Documents appears to be an honest mistake and because Plaintiff undoubtedly had sufficient knowledge of such failure to produce the Disputed Documents.

First, it appears that the non-production of the Disputed Documents was, if a failure at all, certainly an honest mistake on the part of Defendant's counsel. As the review of the record above shows, Defendant's counsel was not deliberately attempting to prevent Plaintiff from receiving the Disputed Documents. Indeed, internal emails between Defendant's counsel and their third-party vendor, TrustPoint, detail the preparation of a production of the Disputed Documents. (Doc. No.

---

[10] This concept of "harmless[ness]" entails one thing (the aggrieved party's sufficient knowledge of a failure to produce) that certainly relates to harmlessness; a failure to produce is harmless to the extent that the aggrieved party has sufficient knowledge of the failure to effectively remedy the failure and thus avoid prejudice to itself. But this concept of "harmless[ness]" entails another thing (an honest mistake on the part of the failing party) that actually appears to have nothing at all to do with harmlessness and everything to do with "substantial justification," the existence of which can save the failing party from sanctions even if the failure to produce was *not* harmless. But as noted, the Sixth Circuit (based on its perception of the advisory committee's note) has stated that both of these things are required for a failure to produce to be "harmless." And the Court must apply that statement herein, even if the Court suspects that the Sixth Circuit's definition of "harmless" in part unwittingly conflates "harmless[ness]" with "substantial justification."

[11] The Court notes that the "party seeking sanctions under Rule 37 bears the burden to show that an opposing party failed to comply with discovery-related obligation[s] under the federal rules or a court order." *Kelly v. Corizon Health Inc.*, No. 22-10589, 2023 WL 2058644, at *2 (E.D. Mich. Feb. 16, 2023). Here, it is unclear whether Plaintiff has actually met his burden to show that a "fail[ure]" to produce the Disputed Documents occurred, and the Court herein does not find that there was such a failure. Rather, the Court assumes for the purposes of its analysis below that Defendant did "fail" to produce the Disputed Documents and yet still finds, for the reasons detailed below, that Plaintiff is not entitled to his requested sanctions.

269-3). Moreover, when Plaintiff's counsel raised the issue of the Disputed Documents with Defendant's counsel for the first time on January 20, 2023, Defendant's counsel forwarded Plaintiff's counsel the Dropbox link that Defendant's counsel appeared to believe would provide access to the Disputed Documents. (Doc. No. 277-1 at 4). As Plaintiff concedes, "Defendant might have believed they did send the [Disputed Documents]." (Doc. No. 277 at 3-4). It is difficult to conclude that any "fail[ure]" to produce the Disputed Documents was not an honest mistake, particularly given Plaintiff's counsel's failure to follow up with Defendant's counsel regarding the Disputed Documents for nearly *two and a half years* (i.e., until June 2025) after Plaintiff's counsel first discovered that he did not have the Disputed Documents in January 2023. Indeed, a reasonable attorney would be justified in thinking that lack of follow-up by Plaintiff's counsel regarding the Disputed Documents meant that Plaintiff's counsel had managed to access the Disputed Documents through the Dropbox link that Defendant's counsel had previously sent. Furthermore, once Plaintiff's counsel finally did follow up regarding the Disputed Documents in June 2025, the Disputed Documents were rapidly (and indisputably) produced on June 26, 2025. (Doc. No. 233-2 at 17; Doc. No. 269 at 5; Doc. No. 277 at 4).

Moreover, it is undeniable that Plaintiff had "sufficient knowledge" of the non-production of the Disputed Documents. *Cincinnati Holding Co.*, 2020 WL 635655, at *5. Indeed, it was Plaintiff's counsel who first raised the issue of the Disputed Documents in January 2023, and who (after waiting nearly two and a half years) again raised the issue of the Disputed Documents in June 2025. *Cf. Roberts ex rel. Johnson v. Galen of Virginia*, 325 F.3d 776, 783 (6th Cir. 2003) (suggesting that when (1) a plaintiff's counsel knew of defendant's failure to disclose under Rule 26, (2) plaintiff's counsel failed to ask for the at issue disclosures or otherwise seek to compel disclosure, (3) plaintiff's counsel waited five months to make an objection to the lack of disclosure

and (4) defendant's counsel was not aware of that failure to disclose, whatever failures to disclose that occurred were "substantially justified or harmless" such as to render sanctions unjustified under Rule 37(c)(1)). The record before the Court leaves no doubt that Plaintiff had sufficient knowledge of the non-production of the Disputed Documents and yet took *no* steps to remedy that failure between January 2023 and June 2025. Instead, as Plaintiff admits, "he did not follow up in January 2023 as the issue slipped his mind." (Doc. No. 277 at 3). Under these circumstances, were the Court to grant Plaintiff's request for sanctions, it would be sending the wrong message—namely, that if counsel believes that he has not received documents that should have been produced, the best strategy is *not* to raise the issue with opposing counsel promptly so as to get as those documents quickly, but rather to lie in the weeds for years and then sandbag the other party and the court with a complaint about the non-production. To put the matter mildly, the Court absolutely declines to send this message.

Accordingly, the Court finds that the non-production of the Disputed Documents is (even if a "fail[ure]" on Defendant's part) harmless within the meaning of Fed. R. Civ. P. 37(c)(1) and will not grant any of Plaintiff's requested sanctions under Fed. R. Civ. P. 37(c)(1). The Court is aware that Plaintiff has also argued that he is entitled to sanctions because the purported failure to produce the Disputed Documents has prejudiced him. This argument is unavailing for three reasons. First, although (as suggested in the footnote above) a "harmless" failure will not prejudice the aggrieved party, the Sixth Circuit's above-described two-part test for "harmless[ness]" transcends a simple inquiry into whether the aggrieved party was prejudiced. Second, as discussed above, in the present case, application of that test reveals that the non-production here was "harmless." And finally, any prejudice that Plaintiff did suffer in the aftermath of the non-production was actually not the result of the non-production itself, but rather was self-inflicted

through the failure of Plaintiff's counsel to raise the issue of the Disputed Documents for nearly two and a half years after January 2023, when the parties had a colloquy about the non-production that placed the onus on Plaintiff to clarify that he was asserting that the non-production had not been remedied.[12]

## CONCLUSION

Therefore, for the reasons discussed herein, Plaintiff's Motion (Doc. No. 315) is **DENIED**.

IT IS SO ORDERED.



ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] As noted above, via the Motion, Plaintiff also requests the Court to strike the Show Cause Motion (Doc. No. 225) filed by Defendant. In support of that request, Plaintiff presents the following (brief) argument:

> Defendant blatantly accused counsel for the Plaintiff of lying [in the Show Cause Motion] when he [Plaintiff's counsel] stated emails were not produced in discovery in a Reddit post allowed under the Tennessee Rules of Professional Conduct. Yet as it turns out, Plaintiff was truthful when he said Defendant did not produce all emails they were required to do so in discovery. Allowing the falsities in the [Show Cause Motion] to remain public would clearly prejudice the jury pool against Plaintiff in this matter. As such, the [Show Cause Motion] should be stricken as it is now a public record containing falsehoods that potential jurors may see.

(Doc. No. 315 at 2-3).

"Motions to strike are disfavored under the Federal Rules and will only be granted in extraordinary circumstances." *Reyes v. Seaton Enters., L.L.C.*, No. 1:07-CV-196, 2008 WL 400452, at *6 (E.D. Tenn. Feb. 12, 2008). *See also Hill v. Accordia Life & Annuity Co.*, No. 21-CV-2241, 2021 WL 5435250, at *2 (W.D. Tenn. Nov. 19, 2021) ("Motions to strike are disfavored and not frequently granted." (citing *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015))). Plaintiff asserts that the Show Cause Motion will somehow prejudice the jury pool against Plaintiff, but this assertion is made without reference to caselaw, without much reasoning, and without explanation as to why potential jurors would be at all likely to be familiar with the Show Cause Motion or why any juror who somehow does have familiarity could not be stricken for cause. This is plainly not enough to justify the Court granting such extraordinary relief in the form of striking the Show Cause Motion, and the Court will not concoct arguments where Plaintiff has failed to do so in order to justify such relief. *See Roe v. Lowe*, No. 3:24-CV-00368, 2024 WL 4778042, at *8 n.12 (M.D. Tenn. Nov. 13, 2024) ("Ultimately, it is not the Court's role to construct a plaintiff's legal arguments").

Accordingly, the Court will not grant Plaintiff's request to strike the Show Cause Motion.