IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRAD AMOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 3:21-cv-00923 |
| V. | ) |
| | ) Judge Richardson |
| THE LAMPO GROUP, LLC, | ) |
| | ) JURY DEMAND |
| Defendant. | ) |

**REPLY IN SUPPORT OF NON-PARTY SUZANNE SIMMS'S MOTION TO QUASH**

Defendant, The Lampo Group, LLC, through counsel, replies in support of the Motion to

Quash and Award of Sanctions filed by non-party Suzanne Simms (Doc. No. 388). Plaintiff relies

entirely on Simms' deposition testimony in an unrelated case as the basis for calling her as a

witness in the present case.

**I.**     **Simms did not draft any "Core Values" policy and cannot personally testify about Plaintiff's termination.**

In open court at the May 11 pre-trial conference, Plaintiff's counsel proclaimed that Simms

should testify at trial because she wrote Defendant's "Core Values" policy. Nothing that Plaintiff

cites in Simms' deposition transcript supports the claim that Simms wrote or engineered any such

policy. In fact, few of Plaintiff's cites to Simms' deposition actually say what he asserts. Most

importantly, Defendant's core value at issue in the other lawsuit is not at issue in this lawsuit.

Specifically, Defendant's view on sex outside of marriage has no correlation to Plaintiff's or

Defendant's views regarding COVID. There is no legitimate basis for Plaintiff to call a witness to

trial who gave deposition testimony in an unrelated case about an unrelated policy that was applied

to an unrelated employee.

**II.** **Other former employees of Defendant who have been subpoenaed for trial can testify as to the all of the subjects for which Plaintiff claims he needs Simms' to testify.**

Plaintiff argues that he needs Simms' testimony at trial, notwithstanding her lack of personal knowledge regarding Plaintiff, because she was on the Human Resources Committee and possesses "board-level knowledge of Defendant's employment policies[.]" (Doc. No. 398, PageID # 6986, 6991–92). But Plaintiff does not explain how Simms has any unique knowledge that is not possessed by the numerous other witnesses he has already subpoenaed and who have already testified at discovery depositions in this matter, including, without limitation: the *Head of the Human Resources Committee* and *Operating Board* member Jack Galloway; the *Head of Human Resources* Armando Lopez, who was also Defendant's Rule 30(b)(6) witness in this matter; and *Operating Board* member Luke LeFevre, who was also the sole decisionmaker who decided to terminate Plaintiff. Each of these three individuals can testify regarding the circumstances of this particular case and answer any questions that Simms could answer. Plaintiff does not identify any "knowledge that is […] particular to [her] role" or unique to her as to opposed to other current and former employees who have been subpoenaed for trial. (*Cf. id.*, PageID # 6991).

Plaintiff also asks the Court to permit Simms to testify regarding "any training or instruction [she] received regarding how to apply Defendant's religious beliefs when making employment decisions, including terminations." (Doc. No. 397, PageID # 6992). Again, Simms did not have anything to do with the decision to terminate Plaintiff. Furthermore, Simms testified that Mr. Lopez (who has been subpoenaed to testify at trial) was one of the leaders who conducted Title VII training. (Doc. No. 397-1 at 15:21–16:3).

Given that Mr. Galloway, Mr. Lopez, and Mr. LeFevre possess all of the information that Plaintiff seeks to glean from Simms and given Plaintiff's citation to Simms' so-called "candid prior testimony," it is apparent that Plaintiff wants to introduce Simms' testimony solely so that he can

110361579v4

try to ask her out-of-context "gotcha" questions about her testimony obtained by another attorney in another case about the intersection of Title VII and sex outside of marriage—*not* because Simms is uniquely knowledgeable about Plaintiff's termination or Defendant's policies. That is not a proper purpose for which to call a witness, particularly given that Plaintiff seeks to call three other witnesses who share her experience or held even higher roles within Defendant's organization.

### III.    The evidence Plaintiff seeks to introduce is inadmissible propensity evidence and violates this Court's Order on other acts/"me too" evidence.

Plaintiff argues that Simms's testimony "is Necessary Because She Openly Addresses Possible Title VII Violations of Her Conduct [*sic*]," and Plaintiff seeks to introduce Simm's testimony because she "engaged in the termination of prior employees by implementing the Ramsey 'Core Values.' " (*Id.*, PageID # 6991, 6985–86). The testimony Plaintiff seeks to introduce is precisely the kind of propensity evidence prohibited by the Federal Rules of Evidence, and the Court should not indulge this request. *Cf.* Fed. R. Evid. 404(a)(1).

Plaintiff also asserts that Simms' testimony establishes that Defendant terminated another employee because of conflicts with Defendant's core values. (*Cf.* Doc. No. 397, PageID # 6985 (citing Doc. No. 397-1, 40:2–6)). Simms' testimony about the termination of other employees is plainly "other acts"/"me-too" evidence relating to alleged discrimination against non-party employees. The parties have extensively briefed the propriety of such evidence.  (Doc. Nos. 209, 244). This Court ordered that, "with respect to any proposed 'me too' evidence," Plaintiff had to "at least three weeks prior" to trial, file a notice, which among other things, "identify[s] with reasonable specificity, witness by witness […] the substance of such testimony," "the purpose of such evidence[,] and how such purpose is a proper one given the matters actually to be decided at this trial." (Doc. No. 328, PageID # 6564). Plaintiff identified four me-too witnesses – he later withdrew three of them and the Court struck the other one. By seeking to introduce testimony from

Page 3 of 6

Simms raising the specter that she "engaged in the termination of prior employees by implementing the Ramsey 'Core Values,' " (Doc. No. 397, PageID # 6985–86), Plaintiff is attempting to bypass the Court's Order on "other acts"/"me too" evidence by introducing conjectural evidence regarding other people who were terminated.

**IV.**      **Simms did not testify that Defendant violated Title VII, and her testimony regarding legal conclusions is immaterial.**

Plaintiff also misconstrues Simms' testimony on Title VII. Plaintiff asserts that Simms' testimony "show[s] that [Defendant] admitted they operated in violation of Title VII," and that Simm's testimony is "independently inconsistent" with Defendant's and its other employees' "uniform[ ] den[ial]" that Defendant's "policies reflect discriminatory religious-based policy or that their enforcement could give rise to a Title VII violation." (Doc. No. 397, PageID # 6991).

But Plaintiff mischaracterizes Simms' testimony and its alleged contradiction of Defendant's position. Simms did not testify that Defendant has violated Title VII; quite the contrary, Simms testified in no uncertain terms that she *did not* believe Defendant's policies violate Title VII. (Doc. No. 397-1 at 17:12–18:2).

Simms also did not testify, as Plaintiff claims, "that the HR Committee implemented the 'Core Values' with the understanding that doing so imposed Defendant's religious beliefs on employees." (*Cf.* Doc. No. 397, PageID # 6992). Simms opined that "terminating an employee based on a biblically-based core value" would not be the same as "terminating them because of the employer's religious beliefs."[1] (*Id.* at 17:21–18:20). Simms' testimony as to what she subjectively believed to be the scope of "rights" afforded to Defendant by the law is not the same

---

[1] Plaintiff also argues that Simms should testify because she "acknowledged that she did not believe this implementation [of its policies] violated Title VII." (Doc. No. 397, PageID # 6991). Respectfully, Plaintiff does not need Simms to testify that Defendant did *not* believe that its policies violate Title VII—that is readily apparent from Defendant's pleadings in this case and should be abundantly clear to the jury from the Defendant's counsel's opening statement onward.

110361579v4

as an admission that Defendant engaged in any particular conduct, much less unlawful conduct. Simms' testimony as to her subjective understanding of the law is also not material to the outcome of the trial; the determination of questions of law is the purview of this Court, not non-party witnesses, and particularly not non-party witnesses who have no firsthand knowledge as to Plaintiff's termination. *Simms provided no testimony whatsoever about Defendant's policies related to COVID.*

**V.      Defendant's core values are not on trial in this case.**

Plaintiff asks the Court to permit Simms to testify regarding "the content and scope of the Ramsey 'Core Values'" because, he asserts, she "testified nonadherence with the company's 'Core Values' can result in termination." (Doc. No. 397, PageID # 6992, 6986). But while Plaintiff argues that Defendant terminated *other employees* for failing to adhere to its core values, Plaintiff does not allege that Defendant terminated *him* for specifically failing to adhere to Defendant's core values; indeed, the only core value referenced in the operative Complaint is "No Gossip." And there is no evidence that the core values are all religious in nature (because they are not). The transcript of Simms' testimony offered by Plaintiff does not at any point address whether any of the core values, including "No Gossip," relate to COVID-19, social distancing, scientific views on pandemics, the Golden Rule, or any other topic directly or tangentially related to Plaintiff's allegations in this case. At best, Plaintiff's request to permit testimony from Simms on the "content and scope" of Defendant's core values is an untimely post-discovery fishing expedition; at worst, it is a transparent attempt to circumvent this Court's April 17 Order on the scope of trial.

Plaintiff's Response makes clear that he wants to use Simms' testimony about a different case with distinct issues to try to bootstrap his claims into something they are not. The exemplar testimony offered by Plaintiff buttresses Simms' argument in her Motion to Quash that the trial subpoena amounts to no more than an attempt to conduct an untimely "discovery deposition from

110361579v4

the witness stand." (*Cf.* Doc. No. 397, PageID # 6984). Defendant has separately filed an objection to Simms being called as a witness (Doc. No. 385) and expressly reserves all of its rights to object to the introduction of any testimony of Simms in the event that the Motion to Quash is denied.

Respectfully submitted,

*/s/ Leslie Goff Sanders*
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Eric C. Lyons (TN #036105)
Stephen C. Stovall (TN #37002)
Molli A. Guinn (TN #41258)
BUCHALTER LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
Tel: (629) 224-6600
lsanders@buchalter.com
dcrowell@buchalter.com
elyons@buchalter.com
sstovall@buchalter.com
mguinn@buchalter.com

Patty A. Eakes (*Admitted Pro Hac Vice*)
Thomas A. Linthorst (*Admitted Pro Hac Vice*)
Tjitske Dekker (*Admitted Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Tel: (206) 274-6400
patty.eakes@morganlewis.com
thomas.linthorst@morganlewis.com
tjitske.dekker@morganlewis.com

*Attorneys for Defendant*

110361579v4